EN EL TRIBUNAL SUPREMO DE PUERTO RICO

|  |  |
|---|---|
| *In re:*<br><br>Aprobación del Libro de Instrucciones al Jurado; Agradecimiento al Comité para la Revisión del Manual de Instrucciones al Jurado; designación de miembros del Comité Asesor Permanente de Instrucciones al Jurado | 2022 TSPR 33<br><br>208 DPR \_\_\_\_\_ |

Número del Caso:  EC-2022-01


Fecha:  25 de marzo de 2022


Materia:  Resolución del Tribunal.


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re:*

Aprobación del Libro de Instrucciones al Jurado; Agradecimiento al Comité para la Revisión del Manual de Instrucciones al Jurado; designación de miembros del Comité Asesor Permanente de Instrucciones al Jurado

EC-2022-01

RESOLUCIÓN

En San Juan, Puerto Rico, a 25 de marzo de 2022.

Mediante Resolución de 3 de marzo de 2017, EC-2017-02, este Tribunal reconstituyó el Comité para la Revisión del Manual de Instrucciones al Jurado (Comité), adscrito al Secretariado de la Conferencia Judicial y Notarial (Secretariado). Ello, con el propósito de revisar y actualizar al ordenamiento penal vigente el contenido del Proyecto del Libro de Instrucciones al Jurado que se presentó en septiembre de 2008.

Acorde con lo requerido, el Comité presentó el Proyecto de Instrucciones al Jurado el 4 de marzo de 2019. En su comparecencia, el Comité solicitó la colaboración de la Oficina de la Compiladora y Publicista de Jurisprudencia del Tribunal Supremo (Compiladora) para la edición y revisión lingüística del documento. Asimismo, recomendó que el Secretariado, con la colaboración de la Academia Judicial Puertorriqueña (AJP), realizara un proceso de validación del Proyecto de Instrucciones al Jurado. Esta Curia concedió ambas peticiones.[1]

---

[1] *In re Comité de Revisión del Manual de Instrucciones al Jurado*, 202 DPR 231 (2019).

La Compiladora cumplió con su encomienda oportunamente y remitió al Comité sus recomendaciones de edición lingüística y lenguaje inclusivo. Conforme autorizamos, el Secretariado lideró el ejercicio de validación que se le encomendó mediante la celebración de una jornada de grupos focales virtuales con personas legas y de la comunidad jurídica. Finalizado este proceso, el Secretariado presentó al Comité un informe sobre los hallazgos y el insumo derivado de esta jornada.

Así las cosas, el Comité revisó el Proyecto de Instrucciones al Jurado tras evaluar las recomendaciones lingüísticas de la Compiladora y los hallazgos del ejercicio de validación que llevó a cabo el Secretariado. Concluida esta fase, el 19 de marzo de 2021, el Comité presentó una versión actualizada del proyecto inicial que denominó Manual de Instrucciones al Jurado. Posteriormente, el 14 de octubre de 2021, el Comité presentó una versión actualizada del contenido en consideración a los cambios normativos que introdujo la aprobación de la Ley Núm. 40-2021 y la jurisprudencia derivada de *Pueblo v. Reyes Carrillo*, 207 DPR 1056 (2021), y *Pueblo v. Centeno*, 2021 TSPR 133, 208 DPR ___ (2021). Con la presentación de este documento actualizado, que hoy se renombra Libro de Instrucciones al Jurado, se da por cumplida la encomienda del Comité.

Este Tribunal agradece a los y las profesionales del Derecho que integraron el Comité por la labor realizada en ejecutar oportunamente esta gestión tan importante, a saber:[2]

1. Hon. Julio de la Rosa Rivé, como su Presidente
2. Hon. Wanda Cruz Ayala
3. Hon. Ana Paulina Cruz Vélez
4. Lcda. Berthaida Seijo Ortiz
5. Lcdo. José Andréu Fuentes
6. Lcdo. Harry Anduze Montaño
7. Prof. Ernesto L. Chiesa Aponte
8. Lcdo. Félix Fumero Pugliessi
9. Lcda. Blanca T. Portela Martínez, designada como representante de la Fiscal General
10. Lcdo. Héctor Quiñones Vargas
11. Lcda. Ygrí Rivera de Martínez
12. Lcda. Bárbara M. Sanfiorenzo Zaragoza
13. Lcda. Ana María Strubbe Ramírez, designada como representante del Director Ejecutivo de la Sociedad para Asistencia Legal

Con miras a mantener la revisión continua del Libro de Instrucciones al Jurado, y preservar su vigencia, se

---

[2] Se hace constar que el Lcdo. Asdrúbal Domenech Rosa y la Lcda. Alma Méndez Ríos formaron parte del Comité y sus aportaciones se reconocieron públicamente por este Tribunal. Véanse: In re Designación Miembro del Comité de Revisión del Manual de Instrucciones al Jurado, 200 DPR 664 (2018) e In re Renuncia al Comité para la Revisión del Manual de Instrucciones al Jurado, 2021 TSPR 25.

constituye por vez primera al Comité Asesor Permanente de Instrucciones al Jurado (Comité de Instrucciones al Jurado).[3] Este quedará conformado por las personas antes mencionadas, en reconocimiento a su trayectoria profesional y a su labor en el cumplimiento oportuno de las encomiendas delegadas al Comité para la Revisión del Manual de Instrucciones al Jurado, así como por su compromiso profesional al asesorar a este Tribunal. Se acoge, igualmente, la recomendación en torno al nombramiento de la Lcda. Blanca T. Portela Martínez y la Lcda. Ana M. Strubbe Ramírez en su carácter personal como miembros del Comité de Instrucciones al Jurado constituido aquí.

Simultáneamente, y para salvaguardar la participación necesaria del Jefe o de la Jefa de la Oficina de Fiscales y de la Sociedad para Asistencia Legal (SAL), se reservarán permanentemente dos espacios en carácter representativo. En específico, se autoriza la participación del Jefe o de la Jefa de Fiscales y del Director Ejecutivo o de la Directora Ejecutiva de la SAL o la persona a quien cada uno o una designe como su representante.

El Comité de Instrucciones al Jurado estará adscrito al Secretariado. En conjunto, se les faculta para determinar la organización y el funcionamiento interno del Comité de Instrucciones al Jurado, a los fines de cumplir con el propósito de su creación acorde con lo aquí dispuesto.

Previa aprobación de este Tribunal y cuando sea convocado por el Secretariado, la encomienda y la esfera de la actividad del Comité de Instrucciones al Jurado, se centrará en lo siguiente:

    (1)  Considerar y revisar de manera continua el ordenamiento penal vigente con el objetivo de mantener actualizado el Libro de Instrucciones al Jurado.

    (2)  Formular y recomendar las enmiendas o modificaciones que sean propias o necesarias para facilitar el proceso de impartir las instrucciones al Jurado.

    (3)  Atender las consultas que le refiera el Secretariado para considerar propuestas de enmiendas al Libro de Instrucciones al Jurado.

    (4)  Llevar a cabo cualquier otra encomienda que le delegue el Tribunal Supremo en relación con este asunto.

---

[3] Como es sabido, este cuerpo asesor se creó desde el 1975, denominado en aquel entonces como el Comité Especial sobre Instrucciones al Jurado de la Conferencia Judicial de Puerto Rico.

Por otro lado, concluimos que el diseño metódico del proyecto del Libro de Instrucciones al Jurado viabiliza impartir instrucciones acordes con las etapas del procedimiento penal mediante un lenguaje inclusivo y accesible a la audiencia receptora. Este documento abarca la mayoría de los delitos tipificados en el Código Penal y en las Leyes Penales Especiales, así como instrucciones atinentes al Derecho Probatorio, al ordenamiento procesal y constitucional. Comprende, asimismo, comentarios explicativos que contextualizan cada instrucción, lo que favorece su examen por parte de la comunidad legal. En síntesis, su estructura provee un marco esquematizado a la Judicatura que apoyará el desarrollo de las instrucciones que no se desprendan del documento y la adaptación de aquellas que así lo ameriten, a tenor con las circunstancias particulares de cada caso.

En fin, y tras estudiar detenidamente el contenido del proyecto del Libro de Instrucciones al Jurado, así como los hallazgos del ejercicio de validación con el apoyo del Secretariado, este Tribunal aprueba con enmiendas el documento, el cual se incluye como parte integral de esta Resolución.

Como es sabido, los jueces y las juezas del Tribunal de Primera Instancia tienen discreción para aplicar el Libro de Instrucciones al Jurado aprobado. Ahora bien, este instrumento facilitará la fase de deliberación del Jurado con miras a lograr veredictos correctos en Derecho. Así, su contenido tendrá carácter persuasivo y sus preceptos e instrucciones gozarán de una presunción de corrección. Ello, sin perjuicio de la autonomía de cada juez o jueza de instancia para adecuar su contenido a los hechos particulares de cada caso, según proceda en Derecho, y sin menoscabo de la facultad de este Tribunal de pasar juicio definitivo sobre cualquier controversia relativa a las instrucciones consignadas en el Libro de forma general o en casos específicos.

Por último, autorizamos que el Secretariado, con el apoyo de la Oficina de Comunicación de la Oficina de Administración de los Tribunales, divulgue el Libro de Instrucciones al Jurado en el Portal del Poder Judicial.

Esta Resolución tendrá vigencia inmediata.

Notifíquese al Director Administrativo de los Tribunales, a la Directora de la Oficina de Comunicación de la Oficina de la Administración de los Tribunales, la Directora Ejecutiva de la Academia Judicial Puertorriqueña, a los y las miembros del Comité para la Revisión del Libro de Instrucciones al Jurado y a la Directora del Secretariado de la Conferencia Judicial y Notarial.

Publíquese.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Estrella Martínez emite la expresión particular siguiente:

"De entrada, tal y como lo hace la *Resolución* aprobada en el día de hoy, reconozco la inmensa aportación y la ardua labor del Comité para la Revisión del Libro de Instrucciones al Jurado. Por tal razón, expreso mi respaldo absoluto con que se le imparta carácter permanente a este Comité, a fin de procurar una revisión continua y cabal del Libro.

El Libro que hoy se aprueba es fruto de un esfuerzo encomiable de colaboración y colegiación entre miembros del Comité, quienes a su vez representan a los diversos sectores que integran el sistema de administración de la justicia penal. Su diversidad de criterio durante las deliberaciones de múltiples instrucciones, y su empeño en armonizar tales diferencias para un resultado cohesivo y ecuánime, quedó consignado en las minutas e informes que fueron presentados ante este Tribunal.

Tal ejercicio es un reflejo de la divergencia de opinión en materias penales y de procedimiento criminal que aflora entre los miembros de este Foro y que consta en el récord público jurisprudencial; tales discrepancias y discordancias son inherentes al trámite ordinario en cuerpos colegiados. Mas, es necesario distinguir en esta instancia el ánimo loable de mis compañeros y compañeras de estrado en convenir y realizar un esfuerzo concertado con respecto al desarrollo de este Libro. Por tanto, agradezco que se acogiera una vasta mayoría de las enmiendas propuestas por este servidor durante el Pleno especial para impartir la aprobación final al Libro. Es por ello que, esencialmente, estoy conforme con este y reconozco cuán imprescindible es introducir en nuestro ordenamiento gran parte de la normativa y el lenguaje recopilado en las nuevas instrucciones al jurado.

No obstante, entiendo necesario emitir esta expresión particular con el fin de reafirmar el interés en que este Tribunal siempre esté guiado por la aspiración a alcanzar un mayor grado de sincronización y consistencia en la búsqueda de un reconocimiento más abarcador de las garantías constitucionales aplicables a los procedimientos penales. En ese sentido, no puedo pasar por alto algunas preocupaciones y objeciones que deben ser materia de consideración posterior, tanto por la comunidad jurídica como por este Tribunal. A modo de ejemplo, destaco la Instrucción 26.2 sobre la deliberación y el veredicto absolutorio por

unanimidad. Según lo hice constar en mi disenso en *Pueblo v. Centeno*, 2021 TSPR 133, 208 DPR ___ (2021), exigir la unanimidad en el veredicto del jurado para la absolución del acusado estremece los cimientos de nuestro ordenamiento penal y da un golpe debilitante a las protecciones conferidas a los acusados y las acusadas. Por tales razones, reitero mi oposición a tal instrucción y no puedo avalar su inclusión en el Libro.

A mi juicio, el Derecho es un instrumento de justicia social forjado para satisfacer las necesidades de la sociedad a la que sirve. Nuestra encomienda, como garantes de los derechos individuales, es guiar a los tribunales en la protección y la vindicación de las garantías legales que les amparan a todos los miembros de nuestra sociedad. A la luz de tal encargo, espero que, al momento de atender controversias futuras, tengamos la oportunidad de pautar nueva jurisprudencia que se alinee con tal principio y, a su vez, sirva de herramienta para que el Comité permanente continúe procurando el mayor balance posible entre los intereses que permean los procedimientos penales. Hoy, reafirmo mi compromiso con tal mandato."

El Juez Asociado señor Colón Pérez emite las siguientes expresiones:

"El Libro de Instrucciones al Jurado que hoy se aprueba es el resultado de esfuerzos inconmensurables por parte de los miembros que componen el Comité de Revisión de éste. Sin duda, con dicho instrumento, nuestro ordenamiento jurídico en materia de derecho penal y procedimiento criminal da un paso de avanzada.

En ese sentido, vaya nuestro especial agradecimiento y reconocimiento a todos los actores involucrados en esta encomienda, una en la cual hubo representación de distintos sectores de la comunidad jurídica del País, a saber, miembros de la Judicatura, del Ministerio Público, abogados y abogadas de defensa y de la Academia. Ante ello, afirmamos que el referido Libro recoge una multiplicidad de voces, con intereses distintos y conocimientos diversos, las cuales tienen el efecto de enriquecer y hacer más completo su contenido. Por eso, expresamos nuestra conformidad con el resultado alcanzado.

Ahora bien, aun cuando estamos conformes -- en gran medida -- con la aprobación de este nuevo Libro de Instrucciones al Jurado, hacemos constar que no podemos estar de acuerdo con parte de lo dispuesto

en la Instrucción 26.2. En particular, con aquella porción de ésta que requiere que se le informe al Jurado que, para considerar un veredicto de no culpabilidad como válido, éste debe ser unánime. De esa parte disentimos. Ello, por los mismos fundamentos expresados en nuestra Opinión Disidente en el caso *Pueblo v. Centeno*, 2021 TSPR 133, 208 DPR ___ (2021)."


                              Javier O. Sepúlveda Rodríguez
                              Secretario del Tribunal Supremo



**Poder Judicial de Puerto Rico**

**Tribunal Supremo**

Secretariado de la Conferencia Judicial y Notarial

# LIBRO DE INSTRUCCIONES AL JURADO

**PRESENTADO EN MARZO 2021**

**ACTUALIZADO EN FEBRERO 2022**

**Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su acceso electrónico se hace como un servicio público a la comunidad.**

Secretariado de la Conferencia Judicial y Notarial
Comité para la Revisión del Manual de Instrucciones al Jurado

# LIBRO DE INSTRUCCIONES AL JURADO

**Miembros del Comité para la Revisión del Manual de Instrucciones al Jurado**

Hon. Julio de la Rosa Rivé, *Presidente*
Hon. Wanda Cruz Ayala
Hon. Ana Paulina Cruz Vélez
Hon. Berthaida Seijo Ortiz
Lcdo. José Andréu Fuentes
Lcdo. Harry Anduze Montaño
Prof. Ernesto L. Chiesa Aponte
Lcdo. Félix Fumero Pugliessi
Lcda. Blanca T. Portela Martínez
Lcdo. Héctor Quiñones Vargas
Lcda. Ygrí Rivera de Martínez
Lcda. Bárbara M. Sanfiorenzo Zaragoza
Lcda. Ana María Strubbe Ramírez

**Miembros del Secretariado de la Conferencia Judicial y Notarial**

Lcda. Melissa A. Pagán Osorio, *Directora*
Lcda. Sonia L. Rivera Chaparro, *Asesora Legal*

**Estado Libre Asociado de Puerto Rico**
**TRIBUNAL SUPREMO**
**Comité para la Revisión del Manual de Instrucciones al Jurado**
**PO Box 9022392**
**San Juan, Puerto Rico 00902-2392**



Prof. Julio de la Rosa Rivé, Presidente
Hon. Wanda Cruz Ayala
Hon. Ana Paulina Cruz Vélez
Hon. Berthaida Seijo Ortiz
Lcdo. José Andréu Fuentes
Lcdo. Harry Anduze Montaño
Prof. Ernesto L. Chiesa Aponte

Lcdo. Félix Fumero Pugliessi
Lcda. Blanca T. Portela Martínez
Lcdo. Héctor Quiñones Vargas
Lcda. Ygrí Rivera de Martínez
Lcda. Bárbara M. Sanfiorenzo Zaragoza
Lcda. Ana María Strubbe Ramírez

17 de marzo de 2021

Hon. Maite D. Oronoz Rodríguez, Jueza Presidenta
Hon. Rafael L. Martínez Torres, Juez Asociado
Hon. Mildred G. Pabón Charneco, Jueza Asociada
Hon. Erick V. Kolthoff Caraballo, Juez Asociado
Hon. Edgardo Rivera García, Juez Asociado
Hon. Roberto Feliberti Cintrón, Juez Asociado
Hon. Luis F. Estrella Martínez, Juez Asociado
Hon. Ángel Colón Pérez, Juez Asociado

**MANUAL DE INSTRUCCIONES AL JURADO**

Al Honorable Tribunal Supremo:

El 3 de marzo de 2017, este Tribunal Supremo emitió la Resolución EC-2017-2 mediante la cual reconstituyó el Comité para la Revisión del Manual de Instrucciones al Jurado (Comité), adscrito al Secretariado de la Conferencia Judicial y Notarial (Secretariado) en virtud de la Resolución emitida el 30 de junio de 1987.[1] Se le encomendó al Comité actualizar el contenido del *Proyecto de Libro de Instrucciones al Jurado*, presentado al Tribunal Supremo en septiembre de 2008, "en conformidad con el ordenamiento penal vigente".

En cumplimiento con la encomienda delegada por este Máximo Foro, el 4 de marzo de 2019, el Comité presentó el *Proyecto de Instrucciones al Jurado* (Proyecto).[2] Este Tribunal refirió la edición y revisión lingüística del Proyecto a la Oficina de la Compiladora y Publicista de Jurisprudencia del Tribunal Supremo (Compiladora).

---

[1] *In re Comité Rev. Manual Jurado*, 197 DPR 532 (2017); *In re Conferencia Judicial*, 119 DPR 449 (1987).

[2] *In re Comité de Revisión del Manual de Instrucciones al Jurado*, 202 DPR 231 (2019).

También delegó en el Secretariado el proceso de su validación, con la colaboración de la Academia Judicial Puertorriqueña (AJP).

Culminados los trabajos del Comité, tras evaluar las recomendaciones de la Compiladora y el insumo de grupos focales celebrados por el Secretariado, presentamos ante este Tribunal el *Manual de Instrucciones al Jurado*.

Este se compone de veintiséis capítulos, organizados según el orden secuencial en el que generalmente trascurre el juicio. El primer capítulo contiene las instrucciones preliminares que, a su vez, se subdividen en instrucciones generales y especiales. Por su parte, el capítulo dos contiene las instrucciones para la etapa final que se diseñaron como antesala al proceso de deliberación. El tercer capítulo se compone de principios y reglas del Derecho Probatorio que el tribunal podría impartir, cuando lo amerite, durante el proceso. Mientras que el cuarto capítulo contiene instrucciones relativas a los elementos del delito y la conducta delictiva. Los siguientes ocho capítulos compilan la gran mayoría de los delitos tipificados en la parte especial del Código Penal que aparejan el derecho a juicio por Jurado. Los doce capítulos subsiguientes recopilan instrucciones para aquellos delitos graves tipificados en las leyes penales especiales de mayor envergadura por su uso frecuente. Luego, se incluye un capítulo de instrucciones relacionadas a las defensas aplicables y un capítulo final que cubre las instrucciones que deben impartirse a modo de clausura.

Cabe destacar que a las instrucciones le antecede una guía titulada Introducción y Sugerencias para el Uso. Su propósito es presentar observaciones generales y, además, describir las estrategias de estilo y formato utilizados en las instrucciones para distinguir textos alternativos o sugeridos.

Como podrá apreciarse, el trabajo no se limitó a la revisión jurídica de las instrucciones propuestas en el proyecto anterior. Constituye una restructuración, expansión y rearticulación de las instrucciones para simplificar, en lo posible, el lenguaje técnico del Derecho. Confiamos que el producto del trabajo que, con sumo respeto, hoy presentamos para la consideración de esta Alta Curia, cumplirá con asistir a los tribunales en su deber ministerial de proporcionar explicaciones a preceptos jurídicos que, no solo se ajusten al ordenamiento vigente, sino que atiendan de manera ecuánime las preocupaciones de ambas partes en el proceso adversativo ante un Jurado.

Es menester reconocer la valiosa aportación de la Lcda. Alma Méndez Ríos y del Lcdo. Asdrúbal Domenech Rosa mientras fungieron como miembros del Comité. Igualmente, cabe recordar y agradecer la participación de miembros de la Judicatura, de la profesión jurídica y de la Academia que, de alguna manera, enriquecieron los debates del Comité, ya sea por aceptar una invitación a participar de reuniones de subcomités, al compartir propuestas específicas o al colaborar en el ejercicio de validación. En especial, distinguimos a las personas siguientes: Hon. Gisela Alfonso Fernández, Hon. Eloína Torres Cancel, Hon. Jorge L. Toledo Reyna, Hon. Carmen Otero Ferreiras, Hon. Roberto Rodríguez Casillas, Hon. Francisco Borelli Irizarry, Prof. Carmen A. Pesante Martínez, Prof. Oscar Miranda Miller, Lcda. Vivian Durieux

Rodríguez, Lcdo. Enrique Silva Avilés, Lcda. Vilmary Soler Suárez, Lcda. Jackeline López González, Lcda. Kenya Cabán Aquino y Lcdo. Juan J. Troche Villeneuve.

Un reconocimiento especial a la Lcda. Verónica N. Vélez Acevedo, directora del Secretariado, y a su personal asesor, pasado y presente. La asistencia técnica y jurídica de las licenciadas Laura L. García Sierra, Melanie L. Kinch Pérez, Melissa A. Pagán Osorio y Sonia L. Rivera Chaparro resultó esencial para la satisfactoria conclusión del ambicioso plan de trabajo del Comité y la presentación oportuna de este *Manual de Instrucciones al Jurado*. Asimismo, extendemos nuestro agradecimiento al personal que laboró con el Secretariado durante esta gesta. En particular, a las ayudantes administrativas Mildred Ocasio Franqui, Odalys Aponte Jiménez y Diana Otaño Vázquez, así como a la Sra. María L. Monclova Santana, quien asumió estas tareas durante su destaque en el Secretariado. Igualmente reconocemos al Sr. Rubén Muñoz González, director auxiliar de la Oficina de Planificación, Presupuesto y Recursos Externos, por su colaboración instrumental en la herramienta evaluativa para el ejercicio de validación; a la Lcda. Tamara Vargas Ortiz, directora ejecutiva de la AJP, por el apoyo provisto en la jornada de grupos focales, y a la Sra. Mabel Valentín Cruz, correctora legal de la Compiladora, por el rigor en la revisión lingüística del Proyecto.

Para culminar, consignamos el agradecimiento a este Máximo Foro por la confianza depositada en nosotros y la distinción de servir como miembros del Comité. Esfuerzos como estos reafirman nuestro compromiso con el mejoramiento del ordenamiento jurídico y de los procesos e instituciones legales de nuestro país, como bien exigen los preceptos éticos que rigen nuestra profesión. Reiteramos nuestra disposición de asistir al Tribunal Supremo con la expansión y revisión continua de este documento, según lo ameriten los cambios implementados en el ordenamiento jurídico.

Quedamos a las órdenes de este Honorable Tribunal Supremo para cualquier trámite ulterior relacionado con la consideración del *Manual de Instrucciones al Jurado*.

Cordialmente,


Julio de la Rosa Rivé
*Presidente*

Wanda Cruz Ayala

Ana Paulina Cruz Vélez

Berthaida Seijo Ortiz

José Andréu Fuentes

Harry Anduze Montaño

Ernesto L. Chiesa Aponte

Félix Fumero Pugliessi

Héctor Quiñones Vargas

Ygrí Rivera de Martínez

Bárbara M. Sanfiorenzo Zaragoza

Blanca T. Portela Martínez
*Representante designada por la Fiscal
General del Departamento de Justicia*

Ana María Strubbe Ramírez
*Representante designada por el
Director Ejecutivo de la Sociedad
para Asistencia Legal*

# TABLA DE CONTENIDO

INTRODUCCIÓN Y SUGERENCIAS DE USO..........................................................................................1

## CAPÍTULO 1
### INSTRUCCIONES PRELIMINARES

**A. GENERALES**

1.1    Instrucción Introductoria y Orden del Juicio.......................................................4

1.2    Función del Jurado ...................................................................................................5

1.3    Comportamiento del Jurado ...................................................................................6

1.4    Evidencia....................................................................................................................7

1.5    Objeciones y su Resolución.....................................................................................8

1.6    Credibilidad de Testigos .........................................................................................9

1.7    Elementos del Delito.............................................................................................. 11

1.8    Presunción de Inocencia, Derecho a la No Autoincriminación, Peso de
       la Prueba y Duda Razonable ................................................................................ 11

**B. ESPECIALES**

1.9    Advertencia sobre Cobertura Mediática............................................................ 13

1.10   Secuestro del Jurado.............................................................................................. 13

1.11   Ausencia de la Persona Acusada......................................................................... 14

## CAPÍTULO 2
### INSTRUCCIONES PARA LA ETAPA FINAL

2.1    Informes Finales..................................................................................................... 16

2.2    Introducción ........................................................................................................... 16

# CAPÍTULO 3
# EVIDENCIA

## A. REGLAS GENERALES

3.1     Evidencia Directa y Circunstancial; Inferencias ............................................. 18

3.2     Admisibilidad Limitada ................................................................................... 19

3.3     Credibilidad de Testigos ................................................................................. 20

## B. VALORACIÓN DE LA PRUEBA Y CREDIBILIDAD DE TESTIGOS

3.4     Testigo que Falta a la Verdad; Incongruencia en el Testimonio ................ 22

3.5     Impugnación Mediante Declaraciones Anteriores del (de la) Testigo No Admisibles en Evidencia como Prueba Sustantiva .................................... 22

3.6     Impugnación Mediante Declaraciones Anteriores del (de la) Testigo Admisibles en Evidencia como Prueba Sustantiva ........................................ 24

3.7     Carácter del (de la) Testigo en Cuanto a Veracidad o Mendacidad .......... 25

3.8     Impugnación de Testigos Mediante Evidencia de una Condena por Delito ................................................................................................................ 25

3.9     Impugnación de Testigos Mediante Evidencia de Parcialidad ................... 26

3.10    Evaluación y Suficiencia de la Prueba ......................................................... 27

3.11    Rehusarse a Testificar Basándose en un Privilegio Legal ........................... 28

3.12    Testimonio del (de la) Juez(a) ...................................................................... 29

3.13    Presencia de Intercesores(as) o de Técnicos(as) de Asistencia a Víctimas y Testigos Durante el Testimonio de una Alegada Víctima de Incidentes de Violencia Doméstica o de una Persona Menor de Edad ... 29

3.14    Intérpretes .......................................................................................................... 31

## C. CONOCIMIENTO PERSONAL

3.15    Conocimiento Personal del (de la) Testigo ................................................. 32

3.16    Evidencia Condicionada a que se Pruebe el Conocimiento Personal del (de la) Testigo ......................................................................................... 33

**D. Evidencia de Carácter, Conducta no Imputada y Hábito**

3.17   Evidencia del Carácter de la Persona Acusada.................................. 33

3.18   Evidencia sobre los Rasgos del Carácter de la Alegada Víctima................ 35

3.19   Evidencia de Otros Delitos o Actos de la Persona Acusada........................ 38

3.20   Evidencia de Hábito.................................................................... 41

3.21   Evidencia de Práctica Rutinaria.................................................... 42

**E.  Evidencia de Síndromes que afectan Defensas o Credibilidad**

3.22   Evidencia del Síndrome de Niño(a) Abusado(a) Sexualmente.................. 42

**F. Inferencias Particulares**

3.23   Evidencia Voluntariamente Suprimida.............................................. 44

3.24   Actos de la Persona Acusada Después del Crimen o Delito........................ 45

3.25   Evidencia de Motivo.................................................................... 45

3.26   Silencio de la Persona Acusada...................................................... 46

**G. Testimonio en corte y declaraciones anteriores de la persona acusada**

3.27   Declaraciones o Manifestaciones de la Persona Acusada Fuera del Tribunal.............................................................................. 46

3.28   Prueba de Circunstancias Relativas al Peso y a la Credibilidad de Declaraciones y Manifestaciones de la Persona Acusada Fuera del Tribunal.............................................................................. 48

3.29   Declaración o Testimonio de la Persona Acusada en el Juicio.................. 48

**H. Testimonio y Prueba Pericial**

3.30   Testimonio Pericial.................................................................... 49

3.31   Experimento Pericial en Corte Abierta............................................ 50

3.32   Fundamentos del Testimonio Pericial.............................................. 50

3.33   Personas Peritas del Tribunal...................................................... 52

**I. Evidencia Demostrativa**

3.34   Evidencia Ilustrativa.................................................................................. 53

**J. Pertinencia Condicionada**

3.35   Pertinencia Condicionada ....................................................................... 54

**K. Cadena de Custodia**

3.36   Cadena de Custodia.................................................................................. 55

**L. Conocimiento Judicial y Estipulaciones**

3.37   Conocimiento Judicial ............................................................................. 56
3.38   Estipulaciones........................................................................................... 57

**M. Presunciones**

3.39   Presunciones (presunción particular aplicable)............................................ 57
3.40   Presunción de Inocencia; Derecho a la No Autoincriminación; Peso de la Prueba; Duda Razonable ......................................................... 60

**N. Identificación de la Persona Acusada**

3.41   Identificación de la Persona Acusada .................................................. 62

**Ñ. Prueba sobre el Contenido de Escritos, Grabaciones o Fotografías**

3.42   Instrucción sobre la Regla 1008 de Evidencia ................................... 66

# CAPÍTULO 4
## DE LOS ELEMENTOS DEL DELITO Y DE LA CONDUCTA DELICTIVA

**A. DEL ESTABLECIMIENTO DE LA RESPONSABILIDAD PENAL Y DE LA CULPABILIDAD – PARTE OBJETIVA**

4.1 Formas de Comisión ........................................................................... 68

4.2 Acción Voluntaria; Posesión.............................................................. 69

4.3 Causalidad ........................................................................................... 70

4.4 Comisión por Omisión ....................................................................... 71

**B. DEL ESTABLECIMIENTO DE LA RESPONSABILIDAD PENAL Y DE LA CULPABILIDAD – PARTE SUBJETIVA**

4.5 Elementos Subjetivos del Delito; a propósito, con conocimiento o temerariamente........................................................................................ 73

4.6 Delito por Negligencia ....................................................................... 77

4.7 Error en la Persona ............................................................................. 78

**C. DE LA PARTICIPACIÓN**

4.8 Persona Responsable .......................................................................... 79

4.9 Autores(as); definición....................................................................... 79

4.10 Cooperadores(as) ............................................................................... 81

4.11 Coautores(as)...................................................................................... 83

4.12 Testimonio del (de la) Coautor(a)...................................................... 83

**D. DE LA TENTATIVA**

4.13 Tentativa ............................................................................................. 84

4.14 Desistimiento ..................................................................................... 88

**E. DE LOS DELITOS Y SUS ELEMENTOS**

4.15 Los Delitos y sus Elementos .............................................................. 91

## CAPÍTULO 5
## DELITOS CONTRA LA VIDA

**A. ASESINATOS**

5.1     Asesinato en Primer Grado a propósito o con conocimiento (Art. 93(a) del Código Penal de 2012)...................................................... 92

5.2     Asesinato en Primer Grado por medio de veneno (Art. 93(a) del Código Penal de 2012)...................................................................... 94

5.3     Asesinato en Primer Grado por acecho (Art. 93(a) del Código Penal de 2012) ...................................................................................... 96

5.4     Asesinato en Primer Grado por tortura (Art. 93(a) del Código Penal de 2012) ...................................................................................... 98

5.5     Asesinato en Primer Grado durante la comisión de ciertos delitos graves (Art. 93(b) del Código Penal de 2012) .................................... 99

5.6     Asesinato en Primer Grado de funcionarios(as) del orden público y otros(as) (Art. 93(c) del Código Penal de 2012) ............................102

5.7     Asesinato en Primer Grado al disparar un arma de fuego desde un vehículo de motor o en un lugar abierto al público (Art. 93(d) del Código Penal de 2012)....................................................................105

5.8     Asesinato en Primer Grado; feminicidio (Art. 93(e) del Código Penal de 2012) ....................................................................................107

5.9     Asesinato en Primer Grado; transfeminicidio (Art. 93(f) del Código Penal de 2012)....................................................................113

5.10    Tentativa de Asesinato en Primer Grado (Art. 93 del Código Penal de 2012) .............................................................................................118

5.11    Asesinato en Segundo Grado como delito imputado (Art. 93 del Código Penal de 2012)....................................................................119

5.12    Asesinato en Segundo Grado ante acusación de Asesinato en Primer Grado; modalidad a propósito o con conocimiento (Art. 93 del Código Penal de 2012)....................................................................121

5.13    Asesinato atenuado como delito imputado (Art. 95 del Código Penal de 2012) ....................................................................................122

5.14    Asesinato Atenuado como delito menor incluido (Art. 95 del Código Penal de 2012) ...........................................................................127

**B. HOMICIDIO NEGLIGENTE**

5.15   Homicidio Negligente menos grave (Art. 96 del Código Penal de 2012) ............................................................................................128

5.16   Homicidio Negligente grave al conducir un vehículo de motor con claro menosprecio de la seguridad de los demás (Art. 96 del Código Penal de 2012)..........................................................................130

5.17   Homicidio Negligente grave al conducir un vehículo de motor bajo los efectos de sustancias controladas (Art. 96 del Código Penal de 2012) ...........................................................................................132

5.18   Homicidio Negligente al conducir un vehículo de motor bajo los efectos de bebidas embriagantes (Art. 96 del Código Penal de 2012) ...........................................................................................134

5.19   Homicidio Negligente grave al conducir un vehículo de motor con claro menosprecio de la seguridad de los demás, como delito menor incluido (Art. 96 del Código Penal de 2012) ....................................136

5.20   Homicidio Negligente menos grave como delito menor incluido (Art. 96 del Código Penal de 2012)..................................................137

**C. INCITACIÓN AL SUICIDIO**

5.21   Incitación al Suicidio (Art. 97 del Código Penal de 2012).........................138

**D. ABORTO POR FUERZA O VIOLENCIA**

5.22   Aborto por Fuerza o Violencia (Art. 100 del Código Penal de 2012) ....140

CAPÍTULO 6
# DELITOS CONTRA LA INTEGRIDAD CORPORAL

6.1   Agresión Grave; hospitalización o tratamiento prolongado (Art. 109 del Código Penal de 2012) ...............................................................142

6.2   Agresión Grave; transmisión de enfermedad (Art. 109 del Código Penal de 2012)..........................................................................143

6.3   Agresión Grave; lesión mutilante (Art. 109 del Código Penal de 2012) ...........................................................................................145

6.4   Agresión Grave Atenuada; hospitalización o tratamiento prolongado, como delito imputado (Art. 109A del Código Penal de 2012) ................147

6.5    Agresión Grave Atenuada; lesión mutilante, como delito imputado (Art. 109A del Código Penal de 2012) ................................................................150

6.6    Agresión Grave Atenuada; como delito menor incluido (Art. 109A del Código Penal de 2012) ..............................................................152

6.7    Agresión menos grave (Art. 108 del Código Penal de 2012) ....................153

6.8    Lesión Negligente menos grave; hospitalización o tratamiento prolongado, como delito imputado (Art. 110 del Código Penal de 2012) ................................................................................................................154

6.9    Lesión Negligente; lesión mutilante, como delito imputado (Art. 110 del Código Penal de 2012) ................................................................155

6.10   Lesión Negligente como delito menor incluido (Art. 110 del Código Penal de 2012) ................................................................................................157

6.11   Prácticas Lesivas a la Integridad Corporal en los Procesos de Iniciación (Art. 111 del Código Penal de 2012) ............................................159

CAPÍTULO 7
**DELITOS CONTRA LA FAMILIA**

**A. DE LA PROTECCIÓN DEBIDA A LOS MENORES**

7.1    Abandono de Menores (Art. 118 del Código Penal de 2012) ....................162

7.2    Secuestro de Menores (Art. 120 del Código Penal de 2012) ....................164

7.3    Privación Ilegal de Custodia; modalidad grave (Art. 121 del Código Penal de 2012) ................................................................................................167

7.4    Adopción a Cambio de Dinero (Art. 122 del Código Penal de 2012) .....168

7.5    Corrupción de Menores (Art. 123 del Código Penal de 2012) .................171

7.6    Seducción, Persuasión, Atracción y Coacción de Menores a través de la Internet o Medios Electrónicos (Art. 124 del Código Penal de 2012) ................................................................................................................172

**B. DE LA PROTECCIÓN DEBIDA A LAS PERSONAS DE EDAD AVANZADA E INCAPACITADOS**

7.7    Abandono de Personas de Edad Avanzada e Incapacitados (Art. 126 del Código Penal de 2012) ...........................................................................176

7.8    Negligencia en el Cuidado de Personas de Edad Avanzada e Incapacitados (Art. 127 del Código Penal de 2012) ....................................178

7.9 Maltrato a Personas de Edad Avanzada (Art. 127-A del Código Penal de 2012) ..................................................................180

7.10 Maltrato a Personas de Edad Avanzada mediante amenaza (Art. 127-B del Código Penal de 2012)..............................................182

7.11 Explotación Financiera de Personas de Edad Avanzada (Art. 127-C del Código Penal de 2012) ....................................................184

7.12 Fraude de Gravamen contra Personas de Edad Avanzada (Art. 127-D del Código Penal de 2012) ..............................................186

## C. DEL RESPETO A LOS MUERTOS

7.13 Profanación de Cadáver o Cenizas (Art. 128 del Código Penal de 2012) ..........................................................................187

## CAPÍTULO 8
## DELITOS CONTRA LA INDEMNIDAD SEXUAL

## A. DE LOS DELITOS DE VIOLENCIA SEXUAL

8.1 Agresión Sexual (Art. 130 del Código Penal de 2012)................................189

8.2 Incesto (Art. 131 del Código Penal de 2012) ....................................193

8.3 Actos Lascivos (Art. 133 del Código Penal de 2012) ..................................196

8.4 Bestialismo (Art. 134 Código Penal de 2012)....................................199

## B. DE LA PROSTITUCIÓN Y ACTIVIDADES AFINES

8.5 Proxenetismo, Rufianismo y Comercio de Personas (Art. 141 del Código Penal de 2012)........................................................200

8.6 Proxenetismo, Rufianismo y Comercio de Personas Agravado (Art. 142 del Código Penal de 2012) ....................................203

## C. DE LA OBSCENIDAD Y LA PORNOGRAFÍA INFANTIL

8.7 Envío, Transportación, Venta, Distribución, Publicación, Exhibición o Posesión de Material Obsceno (Art. 144 del Código Penal de 2012) ....206

8.8 Espectáculos Obscenos (Art. 145 del Código Penal de 2012) ..................210

8.9 Producción de Pornografía Infantil (Art. 146 del Código Penal de 2012) .................................................................................213

8.10 Posesión y Distribución de Pornografía Infantil (Art. 147 del Código Penal de 2012)........................................................................214

8.11 Utilización de un Menor para Pornografía Infantil (Art. 148 del Código Penal de 2012)................................................................217

8.12 Exhibición y Venta de Material Nocivo a Menores (Art. 149(c) del Código Penal de 2012)................................................................219

8.13 Propaganda de Material Obsceno o de Pornografía Infantil (Art. 150 del Código Penal de 2012) ......................................................221

8.14 Venta; Distribución Condicionada (Art. 151 del Código Penal de 2012) .................................................................................224

8.15 Transmisión o Retransmisión de Material Obsceno o de Pornografía Infantil (Art. 152 del Código Penal de 2012) .................................226

CAPÍTULO 9
**DELITOS CONTRA LOS DERECHOS CIVILES**

**A. DE LAS RESTRICCIONES A LA LIBERTAD**

9.1 Restricción de Libertad Agravada (Art. 156 del Código Penal de 2012) .................................................................................229

9.2 Secuestro; modalidad de sustracción (Art. 157 del Código Penal de 2012) .................................................................................232

9.3 Secuestro; modalidad de retención y ocultación (Art. 157 del Código Penal de 2012)........................................................................234

9.4 Secuestro Agravado; modalidad de sustracción (Art. 158 del Código Penal de 2012)........................................................................235

9.5 Secuestro Agravado; modalidad de retención y ocultación (Art. 158 del Código Penal de 2012) ......................................................237

9.6 Trata Humana con Fines de Servidumbre Involuntaria o Esclavitud, y Otros Tipos de Explotación (Art. 159 del Código Penal de 2012).......239

9.7 Trata Humana con Fines de Explotación Sexual (Art. 160 del Código Penal de 2012)........................................................................243

9.8 Demora en Examen del Arrestado (Art. 161 del Código Penal de 2012) .................................................................................247

**B. DE LOS DELITOS CONTRA EL DERECHO A LA INTIMIDAD**

9.9     Grabación Ilegal de Imágenes (Art. 168 del Código Penal de 2012)......249

## CAPÍTULO 10
## **DELITOS CONTRA LA PROPIEDAD**

**A. DE LAS APROPIACIONES ILEGALES**

10.1    Apropiación Ilegal Agravada (Art. 182 del Código Penal de 2012) .......252

10.2    Ratería o Hurto de Mercancía en Establecimientos Comerciales (Art. 184 del Código Penal de 2012) ................................................................255

10.3    Interferencia con Contadores y Sistemas de Distribución (Art. 185 del Código Penal de 2012) ................................................................................257

10.4    Uso o Interferencia con Equipo y Sistema de Comunicación o Difusión de Televisión por Paga (Art. 186 del Código Penal de 2012) ................................................................................................259

10.5    Operación Ilegal de Cualquier Aparato de Grabación o Transferencia de Imágenes y Sonido (Art. 187 del Código Penal de 2012) ......................260

10.6    Reproducción y Venta sin el Nombre y la Dirección Legal del Fabricante (Art. 188 del Código Penal de 2012) ..........................................261

**B. DE LOS ROBOS**

10.7    Robo (Art. 189 del Código Penal de 2012) .......................................................263

10.8    Robo Agravado (Art. 190 del Código Penal de 2012) ................................265

**C. DE LA EXTORSIÓN**

10.9    Extorsión (Art. 191 del Código Penal de 2012) .............................................271

**D. DEL RECIBO Y LA DISPOSICIÓN DE BIENES**

10.10   Recibo, Disposición y Transportación de Bienes Objeto de Delito (Art. 192 del Código Penal de 2012) ................................................................272

**E. DE LOS ESCALAMIENTOS Y OTRAS ENTRADAS ILEGALES**

10.11 Escalamiento (Art. 194 del Código Penal de 2012)....................................274

10.12 Escalamiento Agravado (Art. 195 del Código Penal de 2012) ................277

10.13 Usurpación (Art.196 del Código Penal de 2012)..........................................279

10.14 Entrada en Heredad Ajena (Art. 197 del Código Penal de 2012)............280

**F. DE LOS DAÑOS A LA PROPIEDAD**

10.15 Daño Agravado (Art. 199 del Código Penal de 2012)..................................282

10.16 Obstrucción o Paralización de Obras (Art. 200 del Código Penal de 2012) ........................................................................................................................284

**G. DE LAS DEFRAUDACIONES**

10.17 Fraude (Art. 202 del Código Penal de 2012)..................................................285

10.18 Fraude en la Ejecución de Obras (Art. 204 del Código Penal de 2012) ........................................................................................................................287

**H. DE LA USURPACIÓN DE IDENTIDAD**

10.19 Apropiación Ilegal de Identidad (Art. 209 del Código Penal de 2012) ........................................................................................................................289

**I. DE LAS FALSIFICACIONES**

10.20 Falsificación de Documentos (Art. 211 del Código Penal de 2012) .......291

10.21 Falsedad Ideológica (Art. 212 del Código Penal de 2012) .........................293

10.22 Posesión y Traspaso de Documentos Falsificados (Art. 217 del Código Penal de 2012)........................................................................................295

**J. DE LOS DELITOS CONTRA LA SEGURIDAD DE LAS TRANSACCIONES COMERCIALES**

10.23 Insuficiencia de Fondos (Art. 222 del Código Penal de 2012) .................297

## CAPÍTULO 11
## DELITOS CONTRA LA SEGURIDAD COLECTIVA

**A. DE LOS INCENDIOS**

11.1   Incendio (Art. 230 del Código Penal de 2012) ...............................................301

11.2   Incendio Agravado (Art. 231 del Código Penal de 2012)...........................303

11.3   Incendio Forestal (Art. 232 del Código Penal de 2012)..............................305

**B. DELITOS CONTRA EL ORDEN PÚBLICO O EL RESPETO A LA AUTORIDAD PÚBLICA**

11.4   Motín (Art. 242 del Código Penal de 2012) .....................................................307

11.5   Conspiración (Art. 244 del Código Penal de 2012) ......................................308

11.6   Empleo de Violencia o Intimidación contra la Autoridad Pública
(Art. 245 del Código Penal de 2012) ...................................................................310

## CAPÍTULO 12
## DELITOS CONTRA LA FUNCIÓN GUBERNAMENTAL

**A. DE LOS DELITOS CONTRA EL EJERCICIO DEL CARGO PÚBLICO**

12.1   Soborno (Art. 259 del Código Penal de 2012)................................................313

12.2   Oferta de Soborno (Art. 260 del Código Penal de 2012) ............................315

12.3   Influencia Indebida (Art. 261 del Código Penal de 2012).........................317

12.4   Malversación de Fondos Públicos (Art. 264 del Código Penal de
2012) ...........................................................................................................................319

**B. DELITOS CONTRA LA FUNCIÓN JUDICIAL**

12.5   Perjurio (Art. 269 del Código Penal de 2012) ...............................................321

12.6   Perjurio Agravado (Art.  270 del Código Penal de 2012).........................325

12.7   Fuga (Art.  275 del Código Penal de 2012) .....................................................329

12.8   Posesión e Introducción de Objetos a un Establecimiento Penal
(Art. 277 del Código Penal de 2012) ...................................................................332

12.9   Encubrimiento (Art. 280 del Código Penal de 2012)...................................335

13.1   Armas de Asalto Automáticas o Semiautomáticas y Ametralladoras, Silenciador, Fabricación, Importación, Distribución, Venta, Posesión y Transferencia(Art. 2.16)..................................................................338

13.2   Condiciones para Operaciones de Armeros; Constancias de Transacciones. (Art. 4.03 (d))..................................................................341

13.3   Fabricación, Importación, Venta y Distribución de Armas (Art. 6.02) ......................................................................................343

13.4   Prohibición a la Venta de Armas de Fuego a Personas sin Licencia (Art. 6.03) ......................................................................................344

13.5   Comercio de Armas de Fuego Automáticas (Art. 6.04)...............................346

13.6   Portación, Transportación o Uso de Armas de Fuego sin Licencia (Art. 6.05) ......................................................................................347

13.7   Portación y Uso de Armas Blancas (Art. 6.06) ...............................................352

13.8   Fabricación y Distribución de Armas Blancas (Art. 6.07)..........................353

13.9   Posesión de Armas de Fuego sin Licencia (Art. 6.08)..................................354

13.10  Portación, Posesión o Uso Ilegal de Armas Largas Semiautomáticas, Automáticas o Escopeta de Cañón Cortado (Art. 6.09)...............................356

13.11  Posesión o Venta de Accesorios para Silenciar (Art. 6.10).........................358

13.12  Facilitación de Armas a Terceros (Art. 6.11) ...................................................359

13.13  Número de Serie o Nombre de Dueño en Arma de Fuego; Remoción o Mutilación (Art. 6.12) ............................................................................360

13.14  Disparar o Apuntar Armas de Fuego (Art. 6.14) ..........................................368

13.15  Armas al Alcance de Menores (Art. 6.16)........................................................370

13.16  Apropiación Ilegal de Armas de Fuego o Municiones, Robo (Art. 6.17) ......................................................................................373

13.17  Alteración de Vehículos para Ocultar Armas de Fuego (Art. 6.18) ........375

13.18  Comercio de Armas de Fuego y Municiones sin Licencia de Armero (Art. 6.19) ......................................................................................377

13.19  Disparar desde un Vehículo (Art. 6.20)............................................................378

13.20  Conspiración para el Tráfico Ilegal de Armas de Fuego y/o Municiones (Art. 6.21)..............................................................................379

13.21  Fabricación, Distribución, Posesión y Uso de Municiones; Importación de Municiones (Art. 6.22)................................................................380

13.22 Venta de Municiones a Personas sin Licencia (Art. 6.23) ..........................382

13.23 Compra de Municiones de Calibre Distinto (Art.  6.24)..............................384

13.24 Notificación por Porteador, Almacenista o Depositario de Recibo de Armas; Penalidades (Art. 6.25) ..........................................................................385

13.25 Presunciones (Art. 6.26) ..................................................................................386

## CAPÍTULO 14
### LEY PARA LA PREVENCIÓN E INTERVENCIÓN CON LA VIOLENCIA DOMÉSTICA

14.1 Incumplimiento de Órdenes de Protección (Art. 2.8) .................................389

14.2 Maltrato (Art. 3.1)..............................................................................................390

14.3 Maltrato Agravado (Art. 3.2) ...........................................................................393

14.4 Maltrato Mediante Amenaza (Art. 3.3)...........................................................399

14.5 Maltrato Mediante Restricción de la Libertad (Art. 3.4) ............................402

14.6 Agresión Sexual Conyugal (Art. 3.5)................................................................405

## CAPÍTULO 15
### LEY PARA LA SEGURIDAD, BIENESTAR Y PROTECCIÓN DE MENORES

15.1 No informar; dejar de realizar un acto requerido por ley o impedir que otra persona lo realice; suministrar información falsa o aconsejar a otra persona que la suministre (Art. 57)..................................409

15.2 Maltrato Intencional (Art. 59) .........................................................................410

15.3 Maltrato por Negligencia (Art. 60)..................................................................419

15.4 Incumplimiento de Órdenes de Protección (Art. 70) .................................422

## CAPÍTULO 16
### LEY CONTRA EL ACECHO EN PUERTO RICO

16.1 Acecho (Art. 4(b)).............................................................................................423

16.2 Incumplimiento de Órdenes de Protección como delito menor incluido al delito de Acecho cuando medie una orden de protección (Art. 10) ...............................................................................................................427

## CAPÍTULO 17
### LEY DE SUSTANCIAS CONTROLADAS DE PUERTO RICO

17.1 Artículo 401 ................................................................................429

17.2 Artículo 403 ................................................................................438

17.3 Artículo 404 ................................................................................441

17.4 Distribución a Personas Menores de Dieciocho Años (Art. 405)............443

17.5 Tentativa y Conspiración (Art. 406)................................................445

17.6 Empresa Criminal Continua (Art. 408) ...........................................446

17.7 Funcionarios(as) o empleados(as) (Art. 409) ..................................447

17.8 Engaño en las Transacciones de Sustancias Controladas; Transacciones de Sustancias Controladas Adulteradas (Art. 410) ........450

17.9 Empleo de Menores (Art. 411) ......................................................452

17.10 Introducción de Drogas en Escuelas o en Instituciones Recreativas (Art. 411A) ...............................................................................454

17.11 Parafernalia Relacionada con Sustancias Controladas (Art. 412) ..........458


## CAPÍTULO 18
### LEY PARA LA PROTECCIÓN DE LA PROPIEDAD VEHICULAR

18.1 Comercio Ilegal de Vehículos y Piezas (Art. 15) ..............................464

18.2 Apropiación Ilegal de un Vehículo; medidas penales especiales (Art. 18) ....................................................................................467

18.3 Apropiación Ilegal de una Pieza de un Vehículo (Art. 19) .................469

18.4 Mutilación, Alteración, Destrucción o Modificación de los Números de Identificación (Art. 20) ..............................................................471

18.5 Entrada de Información Falsa al Sistema de Computadoras o Expedientes (Art.25) ..................................................................472


## CAPÍTULO 19
### LEY ORGÁNICA DE LA OFICINA DE ÉTICA GUBERNAMENTAL

19.1 Utilizar el Cargo para Obtener un Beneficio no Permitido por Ley (Art. 4.2(b)).................................................................................474

19.2 Aceptar o Solicitar un Beneficio como Pago por los Deberes y las Responsabilidad del Empleo (Art. 4.2(c)).......................................476

19.3   Aceptar o Solicitar un Beneficio a Cambio de que sus Actos estén Influenciados a Favor de una Persona o de un Negocio (Art. 4.2(d)) ................................................................479

19.4   Asegurar o Pretender Tener Influencia en el Ejercicio de las Funciones de otro(a) Servidor(a) Público(a) a Cambio de un Beneficio (Art. 4.2(e)) ...............................................481

19.5   Revelar o Usar Información o Documento Confidencial para Obtener un Beneficio (Art. 4.2(f))...............................................483

19.6   Exigir o Solicitar a otro(a) Servidor(a) Público(a) que Haga Contribución Económica o Emplee su Tiempo en una Actividad Política (Art. 4.2(m)) ....................................485

19.7   Solicitar o Aceptar un Beneficio para una Actividad Política (Art. 4.2(n)).....................................................................488

19.8   Usurpar un Cargo o una Encomienda, o Ejercer Obstinadamente Funciones después de Cumplido el Término (Art. 4.2(o)) ........................490

19.9   Alterar, Destruir, Mutilar, Remover u Ocultar Propiedad Pública Bajo Custodia (Art. 4.2(p))................................................493

19.10  Expedir como Verdadera una Certificación o Documento que Contenga Declaraciones que le Conste que son Falsas (Art. 4.2(q)) .....495

19.11  Aceptar o Mantener un Empleo o unas Relaciones Contractuales con una Persona o un Negocio que tenga Relaciones con la Agencia (Art. 4.3(b)) ................................................................497

19.12  Intervención o Participación en el Perfeccionamiento del Contrato en que se tenga un Interés Pecuniario (Art. 4.3(c)) .......................................500

19.13  Falsificar o Dejar de Presentar o de Divulgar la Información Requerida en el Informe Financiero (Art. 5.7)...............................502

CAPÍTULO 20
## CÓDIGO ANTICORRUPCIÓN PARA EL NUEVO PUERTO RICO

20.1   Ofrecer o Entregar Regalos a un(a) Servidor(a) Público(a) de una Agencia Ejecutiva (Art. 3.2(f)) ................................................505

20.2   Hacer Gestiones para la Concesión Indebida de Ventajas (Art. 3.2(j)) ................................................................508

20.3   Utilizar Información Confidencial para Fines Ajenos a la Encomienda Contratada (Art. 3.2(k)) ...............................................510

20.4 Solicitar que un(a) Funcionario(a), Servidor(a) o Empleado(a) Público(a) Represente sus Intereses Privados o Ejerza Influencia (Art. 3.2(o)) ..................................................................513

20.5 Prohibición de Represalias contra Personas que Denuncien Actos de Corrupción (Art. 4.2) .......................................................................516

20.6 Proveer Información Falsa con respecto a Condenas para fines del Registro de Personas Convictas por Corrupción (Art. 6.7) ......................521

## CAPÍTULO 21
## LEY PARA EL BIENESTAR Y LA PROTECCIÓN DE LOS ANIMALES

21.1 Abandono de Animal (Cap. II, Art. 1) ...........................................524

21.2 Negligencia Agravada contra Animales (Cap. II, Art. 4).............................526

21.3 Maltrato de Animales (Cap. II, Art. 5) ..........................................529

21.4 Maltrato de Animales de Tercer Grado (Cap. II, Art. 6) ..............................532

21.5 Maltrato Agravado de Animales (Cap. II, Art. 7)......................................534

21.6 Peleas de Animales (Cap. II, Art. 8).............................................537

21.7 Envenenamiento (Cap. II, Art. 11).............................................540

21.8 Trampas para Capturar Animales (Cap. II, Art. 12)....................................542

21.9 Eutanasia (Cap. II, Art. 13) ................................................544

21.10 Cirugías cosméticas (Cap. II, Art. 14) .........................................546

21.11 Órdenes de Protección (Cap. II, Art. 15) .......................................547

21.12 Criadores de Animales (Cap. II, Art. 17) .......................................548

## CAPÍTULO 22
## LEY DE REGISTRO DE EXISTENCIAS DE MATERIALES METÁLICOS

22.1 Dejar de Llevar y de Anotar en el Registro (Art. 4(a)) ...............................549

22.2 Dejar de Suministrar Información a la Policía (Art. 4(b)) .........................550

22.3 Anotar Información Falsa en el Registro o Remitir Información Falsa a la Policía (Art. 4(c)) ........................................................552

22.4 No colocar ni Exhibir Anuncios (Art. 4(d))........................................553

22.5 Apropiación Ilegal de Metales (Art. 4(e))........................................554

22.6 Poseer Metales a Sabiendas de que Fueron Obtenidos Mediante Apropiación Ilegal o Mediante Cualquier Forma Ilícita (Art. 4(f)).........556

22.7    Comprar Material que no esté en su Forma Original (Art. 4(g)).............559

22.8    Operar un Negocio fuera del Horario Establecido (Art. 4(h))...................560

CAPÍTULO 23
**LEY PARA ESTABLECER RESTRICCIONES AL USO DE TELÉFONOS CELULARES A PERSONAS CONFINADAS EN LAS INSTITUCIONES PENALES DE PUERTO RICO**

23.1    Restricción de Comunicaciones: posesión de un equipo de telecomunicaciones por persona ingresada en una institución penal (Art. 2).........................561

23.2    Restricción de Comunicaciones: posesión de un equipo o aditamento por persona ingresada en una institución penal (Art. 2) ...........................563

23.3    Restricción de Comunicaciones: transferencia no autorizada de un equipo de t elecomunicación por persona ajena a la institución penal (Art. 2)...............564

23.4    Restricción de Comunicaciones: posesión de un equipo de telecomunicación por persona ajena con la intención de transferirlo a la institución penal (Art. 2)...............566

CAPÍTULO 24
**LEY DE VEHÍCULOS Y TRÁNSITO DE PUERTO RICO**

24.1    No detener el vehículo o no prestar ayuda a la víctima en un accidente de tránsito (Art. 4.02)..................569

24.2    Causar daño corporal o grave daño corporal durante carreras de competencia, concursos de velocidad o de aceleración (Art. 5.06) .......571

24.3    Imprudencia o Negligencia (Art. 5.07) ...............572

24.4    Causar daño corporal al manejar un vehículo de motor bajo los efectos de bebidas embriagantes, drogas o sustancias controladas (Art. 7.05) ...............577

24.5    Causar grave daño corporal al manejar un vehículo de motor bajo los efectos de bebidas embriagantes, drogas o sustancias controladas (Art. 7.06) ...............581

# CAPÍTULO 25
**DEFENSAS**

## A. Causas de Exclusión de Responsabilidad Penal

25.1   Legítima Defensa; muerte ........................................................................587

25.2   Legítima Defensa; agresión.......................................................................591

25.3   Legítima Defensa; agresión en defensa de la morada, del vehículo o del lugar de negocios o de empleo; cuando no se causa la muerte ........593

25.4   Legítima Defensa; defensa de bienes o de derechos....................................597

25.5   Legítima Defensa; síndrome de la mujer maltratada ..................................599

25.6   Estado de Necesidad..................................................................................600

25.7   Ejercicio de un Derecho o el Cumplimiento de un Deber ..........................603

25.8   Obediencia Jerárquica...............................................................................604

25.9   Error Acerca de un Elemento del Delito ....................................................605

25.10 Ignorancia de la Ley Penal .......................................................................608

25.11 Entrampamiento.......................................................................................609

25.12 Intimidación o Violencia ..........................................................................612

25.13 Intimidación en Caso de Fuga...................................................................615

25.14 Temor Insuperable....................................................................................616

25.15 Conducta Insignificante............................................................................617

## B. Causas de Inimputabilidad

25.16 Incapacidad Mental...................................................................................618

25.17 Trastorno Mental Transitorio....................................................................621

25.18 Intoxicación Voluntaria.............................................................................622

## C. Coartada

25.19 Coartada ...................................................................................................624

## CAPÍTULO 26
## **CLAUSURA**

26.1  Resumen de la Evidencia ........................................................................625

26.2  Deliberación y Veredicto .....................................................................625

26.3  Agravantes............................................................................................628

## INTRODUCCIÓN Y SUGERENCIAS DE USO

El *Libro de Instrucciones al Jurado* constituye un instrumento de trabajo para facilitar la labor de los jueces y las juezas que presiden salones de sesiones en asuntos de lo penal en los juicios que se celebran ante Jurado. La intención del Comité es que estas instrucciones sirvan de orientación a la comunidad jurídica, además de fomentar la uniformidad y garantía de seguridad jurídica en la aplicación del ordenamiento penal vigente. Valga aclarar que este documento de ninguna manera representa la posición del Tribunal Supremo de Puerto Rico respecto a la interpretación del ordenamiento jurídico penal que corresponda ante un caso o una controversia en específico.

Debe destacarse, además, que las instrucciones provistas abarcan una amplia gama de situaciones y delitos, pero no pretenden disponer sobre todos los posibles escenarios o asuntos jurídicos sobre los cuales amerita instruir a un Jurado. Cada caso es único y presenta circunstancias especiales. Por ello, los jueces y las juezas deberán formular aquellas instrucciones adicionales que estimen necesarias, o que les soliciten las partes, así como evaluar la suficiencia de la instrucción provista ante las singularidades del caso. Cabe señalar que el formato utilizado para explicar los asuntos al Jurado puede adaptarse para elaborar instrucciones para casos excepcionales.

El tribunal debe impartir instrucciones solicitadas por las partes solo cuando la prueba lo justifica, conforme al derecho sustantivo aplicable y a la prueba presentada en el juicio. Véase *Pueblo v. Rosario*, 160 DPR 592, 604-606 (2003). Por tal razón, el tribunal no debe negarse a impartir una instrucción por no darle crédito a la prueba de la parte que la solicita, pues eso es función del Jurado. Véase *Pueblo v. Tufiño Cruz*, 96 DPR 225, 230 (1968). Ahora bien, el tribunal puede negarse a ofrecer la instrucción si estima que, aun dando crédito a la prueba presentada por las partes, no se justifica la instrucción habida cuenta del derecho penal sustantivo aplicable. Véanse *Pueblo v. Rodríguez Vicente*, 173 DPR 292, 298 (2008); *Pueblo v. Negrón Ayala*, 171 DPR 406, 414-415 (2007); *Pueblo v. Saltari*, 53 DPR 893, 910 (1938). Es importante advertir que, aunque una instrucción parezca beneficiar a una parte, esta puede solicitar que no se imparta.

Las instrucciones al Jurado deben cubrir los elementos de aquellos delitos inferiores al imputado o comprendidos dentro de este, siempre y cuando la prueba lo justifique así. La instrucción sobre los delitos inferiores no se impartirá automáticamente; es necesario que exista evidencia de la cual el Jurado pueda inferir razonablemente que la persona acusada es culpable del delito inferior. Véanse *Pueblo v. Rosario,* supra, 604-605; *Pueblo v. Rodríguez Santana*, 146 DPR 860, 886 (1998); *Pueblo v. Lorio Ormsby I*, 137 DPR 722, 727 (1994); *Pueblo v. López Guzmán*, 131 DPR 867, 887 (1992); *Pueblo v. Bonilla Ortiz*, 123 DPR 434 (1989); *Pueblo v. González Colón*, 110 DPR 812, 815 (1981); *Beck v. Alabama*, 447 US 625 (1980); Regla 147 de Procedimiento Criminal (34 LPRA Ap. II). La norma sobre lo que constituye un delito menor incluido se recoge en *Pueblo v. Soto Molina*, 191 DPR 209 (2014), y en *Pueblo v. Ayala García*, 186 DPR 196 (2012).

El empleo estricto de estas Instrucciones al Jurado no es compulsorio, por lo que el tribunal tiene libertad para modificar una instrucción y adecuarla a las circunstancias

del caso, a su estilo o a su preferencia. No obstante, cuando se provea en estas Instrucciones al Jurado una instrucción que aplique al caso y el juez o la jueza determine que el Jurado debe recibir una instrucción sobre un asunto particular, se recomienda el uso de la instrucción provista, salvo que se identifique una alternativa que se ajuste al estado de derecho y lo explique de forma más fiel, precisa y clara al jurado lego.

Debe brindarse atención particular a las instrucciones provistas para que se ajusten a las alegaciones del pliego acusatorio y a las modalidades específicas aplicables. En las instrucciones sobre delitos que incluyen varias modalidades, se debe impartir la parte de la instrucción que corresponde a la modalidad pertinente. Con este fin, se emplean corchetes para indicar un texto alternativo o suplementario que se deberá impartir conforme las circunstancias o modalidades del delito alegadas en la acusación. También se singularizan entre corchetes las recomendaciones dirigidas a los jueces y las juezas, las cuales se destacan, además, en negrillas. Cuando se presente una secuencia de corchetes, el juez o la jueza deberá examinar las instrucciones con detenimiento y compararla con la tipificación del delito para evitar así errores u omisiones indebidas.

Es preciso tener presente que quienes integran un Jurado desconocen el Derecho y necesitan orientación inteligible para que cumplan su encomienda. Corresponde a los jueces y a las juezas ofrecerles la orientación necesaria. Para facilitarles esta tarea, en ocasiones se incluyen, para la consideración del tribunal, textos discrecionales a modo de ejemplo o vocabulario simplificado entre corchetes para aclarar conceptos.

Al elaborar estas Instrucciones al Jurado se empleó un lenguaje inclusivo por género reduciendo al mínimo la técnica del desdoblamiento. En ocasiones se añaden también las concordancias lingüísticas de género y número entre paréntesis.

A todas las instrucciones le sigue una sección de referencia, en la cual se recogen las fuentes jurídicas que sirvieron de base para su elaboración. Se incluye la cita del delito tipificado sobre el cual se instruye, así como disposiciones adicionales que sustentan las definiciones incluidas y los asuntos relacionados con los preceptos que provienen de la parte general del Código Penal, según aplique. Igualmente, se remite a la instrucción homóloga en publicaciones anteriores a modo ilustrativo, entiéndase, el *Proyecto de Libro de Instrucciones al Jurado* de 2008 y las *Instrucciones al Jurado para el Tribunal Superior de Puerto Rico* de 1976.

Por su parte, la mayoría de las instrucciones contienen una sección adicional de comentarios. Estos abarcan discusiones de análisis doctrinal, fuentes jurisprudenciales o advertencias particulares que el Comité para la Revisión del Manual de Instrucciones al Jurado estimó pertinentes para la consideración del Tribunal Supremo. Al impartir las instrucciones, deben omitirse estas secciones de referencias y comentarios, así como las recomendaciones al tribunal destacadas entre corchetes y en negrillas, y los títulos de las instrucciones.

Estas Instrucciones al Jurado se pueden clasificar en cinco categorías. La primera engloba las instrucciones que se impartirán luego de configurado el Jurado y antes del

desfile de la prueba (Capítulo 1). La segunda categoría agrupa las instrucciones que se impartirán luego de presentada toda la prueba (Capítulos 2 y 26). Una tercera categoría de instrucciones se circunscribe a los principios de evidencia y valoración de la prueba y sobre los elementos del delito (Capítulos 3 y 4). El grueso de las instrucciones provistas trata de las instrucciones sobre los delitos en particular, tanto del Código Penal de 2012 como de las principales leyes penales especiales (Capítulos 5 al 24). La última categoría recoge las defensas que pueda argumentar la parte acusada durante el juicio (Capítulo 25).

Si bien las instrucciones aplicables dependerán de las circunstancias particulares de cada caso, se sugiere contemplar ciertas instrucciones para todo caso. Por ejemplo, al inicio del caso deben evaluarse las instrucciones generales (Instrucciones 1.1 a 1.8). Una vez completado el desfile de la prueba, conviene examinar las instrucciones siguientes: (1) *Introducción* (Instrucción 2.2); (2) *Evidencia directa y circunstancial; inferencias* (Instrucción 3.1); (3) *Credibilidad de testigos* (Instrucción 3.3); (4) *Testigo que falta a la verdad; incongruencia en el testimonio* (Instrucción 3.4); (5) *Impugnación mediante declaraciones anteriores del (de la) testigo no admisibles en evidencia como prueba sustantiva* (Instrucción 3.5); (6) *Evaluación y suficiencia de la prueba* (Instrucción 3.10); (7) *Evidencia de motivo* (Instrucción 3.25); (8) *Silencio de la persona acusada* (Instrucción 3.26) o *Declaración o testimonio de la persona acusada en el juicio* (Instrucción 3.29); (9) *Evidencia ilustrativa* (Instrucción 3.34); (10) *Presunción de inocencia; derecho a la no autoincriminación; peso de la prueba; duda razonable* (Instrucción 3.40); (11) *Identificación de la persona acusada* (Instrucción 3.41); (12) *Elementos subjetivos del delito; a propósito, con conocimiento o temerariamente* (Instrucción 4.5) o *Delito por negligencia* (Instrucción 4.6); (13) *Los delitos y sus elementos* (Instrucción 4.15), y (14) *Deliberación y veredicto* (Instrucción 26.2).

CAPÍTULO 1
**INSTRUCCIONES PRELIMINARES**

**A.    GENERALES**

**1.1    Instrucción Introductoria y Orden del Juicio**

Damas y caballeros del Jurado, corresponde que les imparta unas instrucciones introductorias sobre el proceso para ayudarles en su función de juzgar los hechos.

Durante el juicio utilizaré algunas palabras o términos que tal vez no han escuchado anteriormente. Me referiré a los abogados y las abogadas de la persona acusada como "los abogados y las abogadas de Defensa". En cuanto al o a la Fiscal, a veces me referiré a él o a ella como "Ministerio Público" o "Pueblo de Puerto Rico". A la persona acusada, a su abogado o abogada y al Ministerio Público los llamaré, en ocasiones, "las partes". También, en ocasiones, me nombraré a mí mismo [misma] como "el tribunal".

Después de estas instrucciones se leerá(n) la(s) acusación(es). El propósito de una acusación es notificar formalmente a la persona acusada del delito que se le imputa.

Luego, el Ministerio Público podrá ofrecer un informe inicial en el cual resumirá la prueba que se propone presentar. Entonces comenzará el desfile de su prueba, con la que pretende establecer la culpabilidad de la persona acusada más allá de duda razonable. La prueba podría incluir testigos, documentos u otros medios de prueba.

La Defensa no está obligada a presentar prueba durante el juicio. Sin embargo, si decidiera hacerlo, podrá ofrecer previamente un informe inicial.

Presentada toda la evidencia, el Ministerio Público y la Defensa podrán presentar sus informes finales.

Después, el tribunal les explicará las instrucciones sobre el Derecho aplicable al caso y ustedes se retirarán al salón de deliberaciones para llegar a un veredicto. Las discusiones durante el proceso de deliberación y sus votos serán secretos.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 1.8 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con la Regla 34 (*Definiciones*), la Regla 128 (*Juicio; orden de la prueba*), la Regla 136 (*Juicio; informes al Jurado*) y la Regla 137 (*Juicio; instrucciones*) de Procedimiento Criminal de 1963 (34 LPRA Ap. II).

**COMENTARIO:**

Esta Instrucción inicia las Instrucciones al Jurado para que sirva como marco conceptual al proceso. Ello propende a una lectura secuencial, fluida y organizada de las instrucciones que se ofrecen al Jurado.

En las instrucciones se sustituye la referencia al término en desuso "Ministerio Fiscal", con preferencia por el término "Ministerio Público" o "Fiscal". También se considera "Pueblo de Puerto Rico", término de rango constitucional (Art. VI, Sec. 18, Const. ELA, LPRA, Tomo 1).

## 1.2    Función del Jurado

Es el deber de ustedes considerar todas y cada una de las instrucciones que reciban de este tribunal, en conjunto y en su totalidad, sin descartar alguna. El orden en que se impartan las instrucciones no significa que una sea más importante que la otra.

Corresponde a ustedes determinar si la persona acusada es culpable o no culpable. A tales fines, deben considerar y evaluar, única y exclusivamente, la prueba presentada y admitida por el tribunal.  Ustedes son los(as) únicos(as) juzgadores(as) de los hechos. Nadie, ni siquiera este tribunal, puede intervenir en su apreciación. Tienen la responsabilidad de decidir el valor de la prueba para luego aplicar la ley a los hechos que consideren probados. Sin embargo, en cuanto a la ley, deben aplicarla conforme las instrucciones que se les impartan.

Ustedes no pueden dejarse llevar por sentimientos de piedad, simpatía, pasión o prejuicio hacia la persona acusada, la(s) alegada(s) víctima(s), los (las) testigo(s), el (la) abogado(a), el (la) fiscal o cualquier persona que participe de este proceso penal.

Tampoco pueden tener prejuicio alguno contra la persona acusada porque **[seleccione la(s) aplicable(s):**

- haya sido acusada

- sea sometida a juicio

- se encuentre detenida. **[Cuando la persona se encuentre detenida por no prestar fianza, el tribunal deberá añadir lo siguiente:**

    Toda persona acusada por delito con derecho a juicio por Jurado tiene que prestar fianza para permanecer en libertad mientras se celebra el juicio. El hecho de que la persona acusada esté confinada significa que la fianza no fue prestada**]**.

- se encuentre bajo supervisión electrónica (grillete)

- no se encuentre presente**]**.

Ninguna de estas circunstancias es evidencia de su culpabilidad. Ustedes no pueden inferir, considerar ni especular que por esa razón es más probable que la persona acusada sea culpable o no culpable.

Tanto el Ministerio Público como la persona acusada tienen el derecho de exigir, y así lo esperan, que ustedes consideren y evalúen toda la evidencia y apliquen la ley sin dejarse llevar por emociones para que lleguen a un veredicto justo sin importar su consecuencia.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 1.1 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con la Regla 6.1 (*Fianza hasta que se dicte sentencia; cu*[*á*]*ndo se exigirá*), la Regla 125 (*Jurados; juramento definitivo*), la Regla 137 (*Juicio; instrucciones*), la Regla 146 (*Jurado; veredicto; forma*) y la Regla 218 (*Fianza y condiciones, cu*[*a*]*ndo se requieran; criterios de fijación; revisión de cuantía, o condiciones; en general*) de Procedimiento Criminal de 1963 (34 LPRA Ap. II); la Regla 110 (*Evaluación y suficiencia de la prueba*) de Evidencia de 2009 (32 LPRA Ap. VI), y el Art. II, Sec. 11 de la Constitución del Estado Libre Asociado de Puerto Rico, LPRA, Tomo 1. Véanse, además, *Pueblo v. Negrón Ayala*, 171 DPR 406, 413-414 (2007); y *Pueblo v. Rosario*, 160 DPR 592, 603 (2003).

## 1.3    Comportamiento del Jurado

Nuestro sistema de justicia requiere que se garantice un juicio justo e imparcial. Para lograrlo, deben observar el siguiente comportamiento en todo momento, hasta que rindan el veredicto.

No hablarán entre ustedes, ni con sus familiares o personas allegadas, ni con persona alguna sobre el caso. Tampoco compartirán información del caso, bien sea por escrito, mediante correo electrónico, teléfono, internet, red social, o por algún otro medio de comunicación.

En ningún momento tendrán comunicación alguna con la persona acusada, testigos, abogados, abogadas, fiscales, víctimas o con alguien que tenga alguna relación con estas personas. Tampoco pueden permitir que alguna persona les hable o se comunique por algún medio sobre el caso.  Si alguien intenta hacerlo, es su obligación terminar inmediatamente la comunicación e informarlo al tribunal.

Si alguna persona trata de influenciarles, directa o indirectamente, o ustedes conocen que alguien lo ha intentado con alguna persona que sea miembro del Jurado, es su obligación informarlo de inmediato al tribunal.  Si cualquiera de ustedes necesita comunicar algo al tribunal relacionado con el proceso, lo hará mediante un escrito firmado y a través del (de la) alguacil. Ningún suceso que ocurra fuera del tribunal puede afectar su ánimo al evaluar la evidencia.

No realizarán investigaciones o búsquedas de información sobre este caso o asuntos relacionados ni harán pruebas o experimentos.

Durante el juicio, no pueden escuchar, leer o ver reportajes de noticias o comentarios acerca del caso o sobre alguna persona relacionada.  Deberán descartar totalmente y no considerar cualquier información obtenida por alguno de esos medios o por cualquier otra fuente fuera del tribunal. Tampoco comentarán o discutirán esa información entre ustedes o con otras personas.

Ustedes escucharán referencias e información sobre uno o varios lugares relacionados con los hechos. Sin embargo, en ninguna circunstancia visitarán estos lugares

durante el juicio. Si el tribunal determina que es importante que vean algún lugar, ordenará la inspección, junto con todas las partes, bajo la custodia de los(las) alguaciles.

Mientras estén en sala, deberán mantener su completa atención a los procedimientos y no podrán conversar entre ustedes. Si alguien tuviese alguna dificultad para escuchar o apreciar la prueba, deberá levantar la mano y notificarlo al tribunal para corregir la situación.

Durante el juicio, no podrán tomar notas ni hacer preguntas sobre los hechos de este caso.

Ustedes tienen el deber de mantener sus mentes abiertas. Por lo tanto, no harán determinación sobre asunto alguno ni llegarán a alguna conclusión sobre cuál será el veredicto hasta que se presente toda la prueba, reciban las instrucciones del Derecho que aplica y se retiren a deliberar. Será entonces cuando podrán discutir el caso, únicamente en el salón de deliberaciones y mientras estén presentes todos(as) ustedes como Jurado.

El cumplimiento con estas normas es indispensable para mantener su imparcialidad como jurados.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 1.2 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con la Regla 132 (*Suspensión de sesión; advertencia al [J]urado*), la Regla 134 (*Jurado; inspección ocular*), la Regla 138 (*Jurado; custodia*), y la Regla 144 (*Jurado; disolución*) de Procedimiento Criminal de 1963 (34 LPRA Ap. II), y con el Art. II, Sec. 11 de la Constitución del Estado Libre Asociado de Puerto Rico, LPRA, Tomo 1. Adopta principios de la Instrucción 101 de las *Judicial Council of California Criminal Jury Instructions*, CALCRIM, 2016.

**COMENTARIO:**

En torno a la toma de notas, se reitera su prohibición por los riesgos que representa su práctica, según se recoge adecuadamente en el Comentario a la Instrucción 1.3 del Proyecto de Libro de Instrucciones al Jurado de 2008. Se suprime la referencia a la excepcionalidad de una pregunta a un(a) testigo por parte del Jurado. En *Pueblo v. Martín Aymat*, 105 DPR 528 (1977), nuestro Tribunal Supremo atendió la preocupación de permitir preguntas a personas legas, extrañas a la práctica forense, en contravención a las estrategias de las partes y el peso de la prueba. A su vez, tendría implicaciones significativas en los supuestos en que el tribunal rechaza formular una pregunta del Jurado.

## 1.4    Evidencia

Ustedes son los únicos jueces y las únicas juezas de los hechos. A tales fines, en sus deliberaciones considerarán únicamente la evidencia admitida en el juicio, la cual puede consistir en declaraciones, testimonios, documentos u objetos, entre otra.

Cuando un documento u objeto es admitido como evidencia, se marca y se le llama *exhibit*. Los *exhibits* se evaluarán en sala y luego se les entregarán para el proceso de deliberación. Ahora bien, la prueba que el tribunal resuelva que es inadmisible no podrá considerarse para propósito alguno.

No constituyen evidencia la acusación, los informes orales ni las argumentaciones o expresiones hechas por el Ministerio Público o por la Defensa durante el juicio.

**REFERENCIA:**

Esta Instrucción es nueva. Proviene de la Instrucción 104 de las *Judicial Council of California Criminal Jury Instructions*, CALCRIM, 2016, y recoge los principios que emanan de la Instrucción 1.6 y la última oración de la Instrucción 1.1, ambas del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con la Regla 140 (*Jurado; deliberación; uso de evidencia*) de Procedimiento Criminal de 1963 (34 LPRA Ap. II) y con la Regla 110 (*Evaluación y suficiencia de la prueba*) de Evidencia de 2009 (32 LPRA Ap. VI).

**COMENTARIO:**

Se incorpora una referencia general al concepto "evidencia", así como a lo que no la constituye. Sirve de antesala a las instrucciones subsiguientes.

## 1.5 Objeciones y su Resolución

En ocasiones, el Ministerio Público o la Defensa objetará o se opondrá a alguna pregunta, respuesta o prueba que pretenda presentar la otra parte. Corresponderá al tribunal examinar los planteamientos y decidir si se admite para la consideración del Jurado.

Cuando una parte objete una pregunta y el tribunal la declare "ha lugar", esto significa que no se permite la pregunta, por lo que el (la) testigo no podrá responder y se dará por no formulada. En cambio, si el tribunal declara "no ha lugar" la objeción, esto significa que se permite la pregunta y que deberá contestarse.

Cuando una parte objete una respuesta y el tribunal la declare "ha lugar", significa que la respuesta deberá descartarse y ustedes no podrán considerarla para propósito alguno. Si el tribunal declara "no ha lugar" la objeción, significa que la respuesta deberá considerarse al deliberar.

Cuando una parte objete la admisibilidad de un objeto o documento y el tribunal la declare "ha lugar", significa que la prueba no se admitirá. Por lo tanto, ustedes no podrán considerarla. Si el tribunal declara "no ha lugar" la objeción, esto significa que el documento u objeto se admitirá y se marcará en evidencia como *exhibit* y que ustedes lo tomarán en consideración al momento de sus deliberaciones.

Ustedes no podrán considerar los razonamientos del tribunal al resolver los planteamientos y las objeciones de las partes. No deberán interpretar que el tribunal tiene algún prejuicio en contra o a favor de cualquiera de las partes por la determinación que tome o porque les amoneste durante el proceso.

Habrá ocasiones en que ustedes se retirarán de sala para que el tribunal escuche y resuelva los planteamientos o las objeciones. Esto es necesario para evitar confusión y asegurar que consideren exclusivamente la evidencia admitida.

**REFERENCIA:**

Esta Instrucción proviene de las Instrucciones 1.5 y 1.6 y del penúltimo párrafo de la Instrucción 1.1, todas del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con la Regla 104 (*Admisión o exclusión errónea de evidencia*) de Evidencia de 2009 (32 LPRA Ap. VI) y adopta los principios de la Instrucción 104 de las *Judicial Council of California Criminal Jury Instructions*, CALCRIM, 2016.

**COMENTARIO**:

Durante la validación de esta instrucción se acreditó cierta dificultad en la comunidad lega participante para diferenciar los términos "ha lugar" y "no ha lugar". Esta instrucción preliminar se imparte al inicio del juicio en su fondo. Se enfatiza la conveniencia de explicar nuevamente estos términos durante el juicio, en las instancias iniciales en que se objete una pregunta, respuesta, objeto o documento, para asegurar la comprensión de estas expresiones. El Comité entendió pertinente que la Judicatura y el resto de la comunidad jurídica conozcan este hallazgo.

## 1.6    Credibilidad de Testigos

Toda persona que declara bajo juramento se considera testigo. Corresponde a ustedes evaluar la credibilidad y decidir qué importancia o peso le darán a su declaración. Decidirán si creen todo, parte o nada de lo que dice. Es decir, los miembros del Jurado pueden dar credibilidad a una porción del testimonio y no necesariamente a la totalidad. En caso de que no crean una parte del testimonio deben considerar que esto no significa que deberán descartar todo el testimonio.

Al decidir sobre la credibilidad de cada testigo, deben examinar todo su testimonio y pueden considerar, entre otros, los aspectos siguientes:

(1)    Su comportamiento mientras declara y la forma como lo hace.
(2)    La naturaleza o el carácter del testimonio.
(3)    Su grado de capacidad para percibir, observar, recordar o comunicar cualquier asunto sobre el cual declara. Pueden considerar la edad de la persona testigo.
(4)    La existencia, o inexistencia de cualquier prejuicio, interés u otro motivo de parcialidad. Pueden considerar cualquier motivo de animosidad o antipatía, así como cualquier beneficio que recibiría la persona con su testimonio.
(5)    Sus declaraciones anteriores en cuanto a las semejanzas o diferencias con su testimonio en corte, con el testimonio de otros (otras) testigos o con otra evidencia admitida.

(6) El carácter, reputación o conducta de cada testigo en cuanto a decir o no la verdad.

(7) Que haya sido encontrada culpable anteriormente por un delito que implique falsedad.

(8) La existencia o inexistencia, falsedad, ambigüedad o imprecisión de un hecho sobre el cual haya declarado.

La determinación de si se probó un hecho no depende del número de testigos que declaren sobre ese hecho. Una sola persona que testifique y les merezca credibilidad puede ser suficiente para probarlo.

**REFERENCIA:**

Esta Instrucción proviene de las Instrucciones 1.10 y 2.3 del Proyecto de Libro de Instrucciones al Jurado de 2008 y de las Instrucciones al Jurado para el Tribunal Superior de Puerto Rico de 1976, pág. 17. Guarda relación con la Regla 110 (*Evaluación y suficiencia de la prueba*), la Regla 608(b) (*Credibilidad e impugnación de testigos*; *Medios de prueba*), la Regla 609 (*Impugnación mediante carácter y conducta específica*) y la Regla 610(a) (*Condena por delito*) de Evidencia de 2009 (32 LPRA Ap. VI). Véanse *Berríos Falcón v. Torres Merced*, 175 DPR 962 (2009); *Pueblo v. Galindo González*, 129 DPR 627 (1991); *Pueblo v. Cortés del Castillo*, 86 DPR 220 (1962). También adopta principios de la Instrucción 1.08 de las *Pattern Jury Instruction, Criminal Cases*, Décimo Circuito, 2011.

**COMENTARIO:**

La Regla 608(b) de Evidencia permite la impugnación de un(a) testigo mediante cualquier evidencia pertinente al asunto de credibilidad. Los medios enumerados son los modos tradicionales de impugnación. La impugnación por omisión está incluida en la Regla 608(b)(4) de Evidencia como declaración anterior incongruente. En *Pueblo v. Cortés del Castillo*, supra, pág. 225, el Tribunal Supremo estableció que procede impugnar la credibilidad de un(a) testigo por haber omitido en una ocasión anterior declaraciones sobre un hecho esencial si era natural y razonable que expusiera el hecho omitido y no lo hizo. Por otro lado, la Regla 401 de Evidencia establece que es pertinente cualquier "evidencia que sirva para impugnar o sostener la credibilidad de una persona testigo o declarante". 32 LPRA Ap. VI.

En la Regla 608(b) se enumeran, a modo de ejemplo, los medios tradicionales de impugnación de testigos. La lista es tal que resulta difícil pensar en otros medios de impugnación. Algunos medios de impugnación mencionados en el listado de esa regla figuran como disposiciones particulares en otras. Así, la Regla 609 de Evidencia regula la evidencia de carácter y de conducta específica para fines de impugnación de testigos. El uso sustantivo de evidencia de carácter y de conducta específica como evidencia circunstancial de los hechos en controversia se discute en la Regla 609 de Evidencia, 32 LPRA Ap. VI, mientras que el caso particular de evidencia de condena criminal de un(a) testigo para impugnar su credibilidad está codificado por una regla especial, la Regla 610 de Evidencia, supra. Por otro lado, la Regla 611 de Evidencia, 32 LPRA Ap. VI, contiene disposiciones especiales sobre el uso de declaraciones anteriores y de evidencia de parcialidad del (de la)

testigo, para fines de impugnar su credibilidad. En cuanto a impugnar o sostener la credibilidad de un(a) testigo mediante evidencia de sus creencias religiosas o falta de ellas, la Regla 612 de Evidencia, 32 LPRA Ap. VI, establece una regla de exclusión de evidencia, cuyo efecto es la inadmisibilidad, independientemente de la cuestión de pertinencia.

## 1.7    Elementos del Delito

**[Esta instrucción se puede impartir antes de tomarle el juramento final al Jurado y se puede repetir cuando el juez o la jueza lo entienda necesario].**

Damas y caballeros del Jurado, contra **[indique el nombre de la persona acusada]** se ha(n) presentado **[indique la cantidad]** acusación(es) por el (los) delito(s) de **[indique el (los) delito(s)]**.

Cada delito tiene sus elementos o requisitos particulares. Los elementos del delito son el conjunto de requisitos o componentes que deben ser probados más allá de duda razonable por el Ministerio Público para que la persona acusada pueda ser encontrada culpable.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 1.7 del Proyecto de Libro de Instrucciones al Jurado de 2008. El libro de Instrucciones al Jurado para el Tribunal Superior de Puerto Rico de 1976 no establecía una instrucción preliminar sobre los elementos del delito.

**COMENTARIO:**

El propósito de esta instrucción es ilustrar al Jurado, con una explicación general sobre el significado del concepto "elementos del delito". Esta Instrucción, al igual que la Instrucción 4.15, sirven de antesala a las instrucciones de los delitos particulares.

## 1.8    Presunción de Inocencia, Derecho a la No Autoincriminación, Peso de la Prueba y Duda Razonable

En nuestro sistema de justicia, es un principio fundamental que la persona acusada se presume inocente hasta tanto el Ministerio Público pruebe su culpabilidad más allá de duda razonable. La presunción de inocencia acompaña a la persona acusada desde el inicio del proceso, durante el juicio y continúa durante la deliberación, hasta que se rinda el veredicto.

La persona acusada no tiene la obligación de testificar ni de presentar prueba para demostrar su inocencia, por lo que, si no declara o no presenta prueba, ustedes no harán inferencia alguna ni lo tomarán en consideración. El peso de la prueba corresponde al Ministerio Público, es decir, que este tiene que establecer todos los elementos del delito por el cual se acusa y su conexión con la persona acusada más allá de duda razonable.

"Duda razonable" es una duda fundada, producto del análisis cuidadoso de todos los elementos de juicio incluidos en el caso. No es cualquier duda ni meramente una duda posible, especulativa o imaginaria. La duda que justifica un veredicto de no culpable no solo debe estar basada en el uso de la razón, sino que debe surgir de una consideración serena, justa e imparcial de toda la evidencia del caso.

Si después de un cuidadoso análisis, examen y comparación de toda la evidencia, el ánimo de ustedes queda en tal situación que no pueden decidir sobre la culpabilidad o no culpabilidad del (de la) acusado(a), significa que existe duda razonable. Esto no quiere decir que el Ministerio Público tiene que establecer la culpabilidad de la persona acusada con certeza matemática, sino que la evidencia debe producir la seguridad, el convencimiento o la firmeza que dirige la inteligencia y satisface la razón.

**REFERENCIA:**

Esta Instrucción proviene de las Instrucciones 1.9, 2.32 y 22.2 del Proyecto de Libro de Instrucciones al Jurado de 2008 y de las Instrucciones al Jurado para el Tribunal Superior de Puerto Rico de 1976, pág. 42. Guarda relación con la Regla 304(1) (*Presunciones específicas*), la Regla 501 (*Privilegios de la persona acusada*) y la Regla 502 (*Autoincriminación*) de Evidencia de 2009 (32 LPRA Ap. VI); la Regla 110 (*Presunción de inocencia y duda razonable*) de Procedimiento Criminal de 1963 (34 LPRA Ap. II), y con el Art. II, Sec. 11 de la Constitución del Estado Libre Asociado de Puerto Rico, LPRA, Tomo 1. Véanse *Pueblo v. Bigio Pastrana*, 116 DPR 748, 761 (1985), citando las Instrucciones al Jurado y citado con aprobación en *Pueblo v. Irizarry*, 156 DPR 780 (2002); *Pueblo v. Agostini Rodríguez*, 151 DPR 426 (2000); *Pueblo v. Meléndez Rodríguez*, 136 DPR 587 (1994); *Pueblo v. Rivera Rodríguez*, 130 DPR 897 (1992); *Pueblo v. Gagot Mangual*, 96 DPR 625, 627 (1968).

**COMENTARIO:**

Según ha expresado el Tribunal Supremo, *duda razonable* no significa que toda duda posible tenga que ser destruida y que la culpabilidad de la persona acusada tenga que establecerse con certeza matemática, sino que la prueba establezca 'aquella certeza moral que convence, dirige la inteligencia y satisface la razón. Duda razonable es una duda fundada, producto del raciocinio de todos los elementos de juicio envueltos en el caso. No debe ser pues, una duda especulativa o imaginaria'. *Pueblo v. Bigio Pastrana*, supra, pág. 761. Véanse *Pueblo v. Irizarry*, supra; *Pueblo v. Gagot Mangual*, supra, pág. 627.

De igual modo, el Tribunal Supremo ha definido la *duda razonable* como "aquella insatisfacción o intranquilidad en la conciencia del juzgador de los hechos sobre la culpabilidad del acusado luego de desfilada la totalidad de la prueba […]". *Pueblo v. Maisonave Rodríguez,* 129 DPR 49, 65 (1991).; Véase *Pueblo v. Robles González*, 125 DPR 750 (1990). Véase, además, E. Stoffelmayr y S.S. Diamond, *The Conflict Between Precision and Flexibility in Explaining "Beyond a Reasonable Doubt"*, 6 Psychol. Pub. Pol'y & L. 769 (septiembre 2000).

**B.** **Especiales**

## 1.9 Advertencia sobre Cobertura Mediática

Este caso ha sido objeto de noticias o publicaciones. Es importante enfatizar que tienen que descartar totalmente y que no podrán considerar, comentar o discutir entre ustedes o con otras personas la información transmitida en la prensa, en internet, en las redes sociales, en la televisión o en la radio que esté relacionada con este caso. Esa información que puedan haber leído, visto o escuchado no constituye evidencia y, por lo tanto, ustedes no pueden considerarla. Tampoco pueden dejarse influenciar de manera alguna por lo expuesto en los medios de comunicación.

No pueden considerar información de fuentes ajenas al tribunal bajo ninguna circunstancia porque no es prueba de culpabilidad o de no culpabilidad, y podría afectar la imparcialidad de la decisión de ustedes como Jurado. Solo pueden considerar la evidencia presentada y admitida por el tribunal.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 1.12 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con la Regla 132 (*Suspensión de sesión; advertencia al jurado*), la Regla 134 (*Jurado; inspección ocular*) y la Regla 138 (*Jurado; custodia*) de Procedimiento Criminal de 1963 (34 LPRA Ap. II) (2016), y con el Art. II, Sec. 11, de la Constitución del Estado Libre Asociado de Puerto Rico, LPRA, Tomo 1. Adopta los principios de la Instrucción 101 de las *Judicial Council of California Criminal Jury Instructions*, CALCRIM, 2016.

**COMENTARIO:**

Si bien la Instrucción 1.3 incluye la advertencia sobre publicidad, según reformulada, se preserva una instrucción específica e individual para supuestos de publicidad excesiva. Se reformula el título para suprimir la referencia a que la advertencia es "al Jurado", puesto que todas las advertencias consignadas en las instrucciones van dirigidas a este.

Es cónsono con el Memorando Núm. 145, Año Fiscal 2010-2011, emitido por la Oficina de Administración de los Tribunales el 24 de febrero de 2011, "Modelo de instrucciones al Jurado sobre el uso de tecnología electrónica, Internet y redes sociales como *Facebook*, *Twitter*, *MySpace*, *YouTube* y otros".

## 1.10 Secuestro del Jurado

Evaluadas las circunstancias particulares de este caso, el Tribunal ha concluido que es indispensable que ustedes permanezcan juntos en todo momento. Por eso, he ordenado el secuestro del Jurado. Ello significa que, durante el resto del proceso, ustedes permanecerán bajo la custodia del Tribunal, acompañados por los (las) alguaciles.

**[En casos de una cobertura mediática amplia, el tribunal debe impartir la instrucción siguiente:**

En casos de una cobertura mediática amplia, como en este caso, es necesario que el tribunal tome medidas adicionales para evitar que el Jurado reciba, de manera directa o indirecta, cualquier información que pueda contaminar su criterio individual].

Con esta determinación evitamos que los y las miembros del Jurado se expongan a situaciones que puedan influir o comprometer su criterio y garantizamos que su decisión esté basada exclusivamente en la evidencia admitida por el tribunal.

El secuestro del Jurado no tiene relación con la culpabilidad o no culpabilidad de la persona acusada. Tampoco constituye, de forma alguna, una expresión de la opinión del tribunal sobre el caso.

**[El tribunal debe explicar cómo se llevará a cabo esta medida].**

REFERENCIA:

Esta Instrucción proviene de la Instrucción 1.14 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con la Regla 132 (*Suspensión de sesión; advertencia al Jurado*) y la Regla 138 (*Jurado; custodia*) de Procedimiento Criminal de 1963 (34 LPRA Ap. II).

## 1.11   Ausencia de la Persona Acusada

En este caso, la persona acusada no estuvo presente [en] [durante parte de] este juicio.

Ustedes, miembros del Jurado, no pueden considerar la ausencia de la persona acusada para determinar si cometió o no los hechos por los cuales se le acusa ni considerar o discutir su ausencia durante sus deliberaciones ni cuando emitan el veredicto. Ustedes tampoco deben cuestionar el porqué o especular sobre la razón de su ausencia, ya que ello no constituye evidencia pertinente para probar si es o no culpable.

Para llegar a un veredicto, solo deberán considerar la prueba desfilada y admitida en este caso.

REFERENCIA:

Esta Instrucción es nueva. Guarda relación con la Regla 243 (*Presencia del acusado*) de Procedimiento Criminal de 1963 (34 LPRA Ap. II) y el Art. II, Sec. 11, de la Constitución del Estado Libre Asociado de Puerto Rico, LPRA, Tomo 1. Véase *Pueblo v. Irizarry*, 156 DPR 780, 787-788 (2002).

**COMENTARIO:**

La Instrucción 1.2 (*Función del Jurado*) complementa esta Instrucción cuando la persona acusada no esté presente durante el juicio, ya sea al inicio o en algún otro momento durante el proceso penal. Sobre el derecho a no estar presente, véase E.L. Chiesa Aponte, *Procedimiento Criminal y la Constitución: etapa adjudicativa*, San Juan, Ed. Situm, 2018, Sec. 5.2, págs. 175-179.

CAPÍTULO 2
**INSTRUCCIONES PARA LA ETAPA FINAL**

**2.1    Informes Finales**

Corresponde ahora la etapa de los informes finales al Jurado. Miembros del Jurado les recuerdo que estos informes no constituyen prueba en el caso.

En los informes, el Ministerio Público y la Defensa pueden comentar la evidencia presentada y tienen libertad para hacer inferencias, deducciones y argumentos derivados de la prueba. Independientemente de lo que las partes expresen, son ustedes quienes deben evaluar la prueba desfilada y llegar a sus propias conclusiones.

Las partes harán sus informes comenzando con el Ministerio Público, quien podrá, además, cerrar brevemente el debate limitándose a reaccionar al informe de la Defensa.

**[En este momento el tribunal debe recordar a las partes el tiempo concedido a cada una].**

Proceda el Ministerio Público con su informe final.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 1.1 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con la Regla 136 (*Juicio; informes al Jurado*) de Procedimiento Criminal de 1963 (34 LPRA Ap. II).

**2.2    Introducción**

Miembros del Jurado, en estos momentos les impartiré las instrucciones finales, que servirán para guiar el proceso de deliberación.

Es el deber de ustedes considerar todas y cada una de las instrucciones que reciban de este tribunal, en conjunto y en su totalidad, sin descartar alguna.  El orden en que se impartan las instrucciones no significa que una sea más importante que la otra. El propósito de estas es proveerles las normas necesarias para que puedan rendir un veredicto en conformidad con la ley y los hechos.

Corresponde a ustedes determinar si la persona acusada es culpable o no culpable. A tales fines, deben considerar y evaluar, única y exclusivamente, la prueba presentada y admitida por el tribunal.  Ustedes son los(as) únicos(as) juzgadores(as) de los hechos. Nadie, ni siquiera este tribunal, puede intervenir en su apreciación. Tienen la responsabilidad de decidir el valor de la prueba para luego aplicar la ley a los hechos que consideren probados. Sin embargo, en cuanto a la ley, deben aplicarla conforme las instrucciones que se les impartan.

Siendo así, es importante reiterarles unas normas de derecho que son parte de nuestro ordenamiento jurídico y de nuestra Constitución.

Ustedes no pueden dejarse llevar por sentimientos de piedad, simpatía, pasión o prejuicio hacia la persona acusada, la(s) alegada(s) víctima(s), los (las) testigo(s), el (la) abogado(a), el (la) fiscal o cualquier persona que participe de este proceso penal.

Tampoco pueden tener prejuicio alguno contra la persona acusada porque **[seleccione la(s) aplicable(s):**

- haya sido acusada

- sea sometida a juicio

- se encuentre detenida. **[Cuando la persona se encuentre detenida por no prestar fianza, el tribunal deberá añadir lo siguiente:**

  Toda persona acusada por delito con derecho a juicio por Jurado tiene que prestar fianza para permanecer en libertad mientras se celebra el juicio. El hecho de que la persona acusada esté confinada significa que la fianza no fue prestada**]**.

- se encuentre bajo supervisión electrónica (grillete)

- no se encuentre presente**]**.

Ninguna de estas circunstancias es evidencia de su culpabilidad. Ustedes no pueden inferir, considerar ni especular que por esa razón es más probable que la persona acusada sea culpable o no culpable.

Tanto el Ministerio Público como la persona acusada tienen el derecho de exigir, y así lo esperan, que ustedes consideren y evalúen toda la evidencia y apliquen la ley sin dejarse llevar por emociones para que lleguen a un veredicto justo sin importar su consecuencia.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 1.1 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con la Regla 6.1 (*Fianza hasta que se dicte sentencia; cu*[*á*]*ndo se exigirá*), la Regla 125 (*Jurados; juramento definitivo*), la Regla 137 (*Juicio; instrucciones*), la Regla 146 (*Jurado; veredicto; forma*), la Regla 218 (*Fianza y condiciones, cu*[*a*]*ndo se requieran; criterios de fijación; revisión de cuantía, o condiciones; en general*) de Procedimiento Criminal de 1963 (34 LPRA Ap. II), la Regla 110 (*Evaluación y suficiencia de la prueba*) de Evidencia de 2009 (32 LPRA Ap. VI) y el Art. II, Sec. 11, de la Constitución del Estado Libre Asociado de Puerto Rico, LPRA, Tomo 1.

**COMENTARIO:**

Esta Instrucción sirve de apertura a las instrucciones finales y es una adaptación de la Instrucción 1.2 (*Función del Jurado*) de este tratado. Se sugiere el orden siguiente al impartir instrucciones finales: (a) introducción; (b) principios probatorios; (c) instrucción general sobre el delito y sus elementos; (d) instrucciones específicas sobre los delitos objeto de la acusación; (e) defensas (si aplica); (f) clausura: deliberación y veredicto.

CAPÍTULO 3
**EVIDENCIA**


A.  **REGLAS GENERALES**

**3.1  Evidencia Directa y Circunstancial; Inferencias**

Existen dos clases de pruebas en las que el Jurado puede basar su veredicto. Una se conoce como *evidencia directa* y la otra como *evidencia indirecta* o *circunstancial*.

*Evidencia directa* es aquella que, de ser creída, prueba el (los) hecho(s) de manera concluyente sin necesidad de inferir ni presumir algo. **[El tribunal podría ilustrar lo anterior con el ejemplo siguiente:** *El (la) testigo declaró que cuando salió de su casa vio que estaba lloviendo. Ello, de ser creído, es prueba directa de que llovía***]**.

La *evidencia circunstancial* o *indirecta* es aquella evidencia que, de ser creída, tiende a establecer un hecho a base de inferencias.

Una *inferencia* es una deducción de un hecho que surge lógica y razonablemente de otro hecho o de un grupo de hechos establecidos por la evidencia. **[El tribunal podría ilustrar lo anterior con el ejemplo siguiente**: *El (la) testigo declaró que se encontraba encerrado(a) en su habitación con aire acondicionado y entró su hermana empapada con una sombrilla chorreando agua. Ello, de ser creído, es prueba indirecta de que estaba lloviendo***]**.

No es necesario que se prueben los hechos del caso solamente por evidencia directa. También se pueden probar por evidencia circunstancial o por una combinación de evidencia directa y evidencia circunstancial. Ambas evidencias (directa y circunstancial) se aceptan como medios de prueba y se evalúan con el mismo criterio.

Ustedes pueden llegar a las conclusiones e inferencias razonables que estén justificadas a base de su propia experiencia y que surjan de los hechos que ustedes consideren o estimen probados.

Para producir un veredicto de culpable, la evidencia —de la naturaleza que sea (directa, circunstancial o una combinación de ambas)— debe probar que la persona acusada es culpable más allá de duda razonable.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 2.1 del Proyecto de Libro de Instrucciones al Jurado de 2008 y de las Instrucciones al Jurado para el Tribunal Superior de Puerto Rico de 1976, pág. 14. Guarda relación con: Regla 110 (Evaluación y suficiencia de la prueba) de Evidencia de 2009 (32 LPRA Ap. VI) (2010). Véase *Pueblo v. Ortiz Rodríguez*, 100 DPR 972 (1972).

**COMENTARIO:**

Existen tres clases de circunstancias de las cuales puede inferirse la culpabilidad de una persona acusada, si se prueban los hechos más allá de duda razonable:

*Circunstancias prospectivas* – Hechos anteriores a la comisión del delito y que apuntan a su futura comisión (motivo, plan, preparativos, etc.).

*Circunstancias concomitantes* – Hechos contemporáneos con la comisión del delito que permiten que la persona acusada lo lleve a cabo (presencia de la persona acusada en el lugar, al tiempo en que este se cometió, acceso de la persona acusada a la víctima, etc.).

*Circunstancias retrospectivas* – Hechos posteriores a la comisión del delito que sugieren que la persona acusada lo cometió (fuga, ocultación o destrucción de evidencia, etc.). *Pueblo v. Ortiz Rodríguez*, supra, pág. 979.

## 3.2    Admisibilidad Limitada

En este caso se admitió como evidencia **[indique la evidencia admitida]** solo para los propósitos siguientes: **[especifique]**. Al momento de admitirse esa evidencia se les instruyó sobre su alcance limitado. Ahora vuelvo a instruirles en el sentido de que solo deberán considerar esa evidencia para fines de **[especifique]** y para ningún otro propósito.

**REFERENCIA:**

Esta Instrucción proviene, en parte, de la Instrucción 2.2 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con la Regla 107 (*Admisibilidad limitada*) de Evidencia de 2009 (32 LPRA Ap. VI). Véase *Bruton v. United States*, 391 US 123 (1968).

**COMENTARIO:**

Toda evidencia se admite para un fin determinado. De ordinario, ese fin está implícito; la evidencia se ofrece contra la parte adversa, bien para fines sustantivos o para fines de impugnar a un(a) testigo o a una persona declarante. Cuando hay más de dos partes, puede ocurrir que la prueba pueda admitirse contra una parte, pero no contra otra. En ciertos casos, la evidencia se admite solo para fines de impugnar el testimonio o declaración de un(a) testigo o de una declarante, pero no se admite como prueba sustantiva o de cargo. En esos casos, cuando se trata de un caso criminal por Jurado, generalmente hay que impartir una "instrucción limitativa" al Jurado, en conformidad con la Regla 107 de Evidencia.

Cuando la evidencia se admite solo contra una parte o únicamente para un fin determinado, la Regla 107 de Evidencia permite al tribunal dos opciones: (1) admitir la evidencia solo para el fin o propósito legítimo, o (2) excluirla totalmente al amparo de la Regla 403 de Evidencia. En casos por Jurado, se imparte la instrucción correspondiente en relación con el uso limitado de la evidencia, bien en cuanto a la parte contra la cual se admite o bien para el propósito legítimo (impugnación, pero no prueba sustantiva).

El caso paradigmático de admisibilidad limitada —en casos por Jurado— es la situación cuando el Ministerio Público presenta como prueba de impugnación determinada declaración de la persona acusada para impugnar su credibilidad, pero que no es admisible como prueba sustantiva. Un caso típico es impugnar la credibilidad del testimonio de la persona acusada mediante sus declaraciones en la etapa investigativa, que son inadmisibles como prueba sustantiva. Así ocurre con las declaraciones obtenidas en violación a las normas establecidas en *Miranda v. Arizona,* 384 US 436 (1966), pero sin coacción. Véanse *Harris v. New York*, 401 US 222 (1971); y *Oregon v. Hass*, 420 US 714 (1975). Igual ocurre bajo la Regla 109(d) de Evidencia, 32 LPRA Ap. VI, al establecer que las declaraciones de la persona acusada en la vista de supresión o en la vista para determinar la admisibilidad de la prueba son admisibles para impugnar su testimonio en juicio, pero no como prueba sustantiva. *Simmons v. United States,* 390 US 377 (1968).

Una situación especialmente sensitiva es cuando se presenta evidencia de delitos o de mala conducta de la persona acusada, distinta a la imputada en la acusación, al amparo de la Regla 404(b) de Evidencia, 32 LPRA Ap. VI. El tribunal debe instruir al Jurado del propósito particular pertinente de esta prueba, con mandato de prohibición de usar esta evidencia como indicio de la inclinación o propensión de la persona acusada a incurrir en ese tipo de conducta (*uncharged misconduct*). Sin embargo, cuando se trata de personas coacusadas en el mismo juicio por Jurado, la cláusula de confrontación que dispone la Sexta Enmienda impide la alternativa de admisibilidad limitada.

En *Bruton v. United States*, supra, el Tribunal Supremo de Estados Unidos aborda lo relativo a una declaración de una persona acusada de delito que sería admisible en su contra, pero inadmisible contra una persona coacusada —en un juicio por Jurado contra ambos— por su derecho a confrontarse en el juicio con quien hizo la declaración, pero que ejerce su derecho a no testificar en el juicio. En ese escenario no puede recurrirse a la "admisibilidad limitada", dado el riesgo de que el Jurado no pueda asimilar la instrucción de no usar la declaración contra la persona coacusada.

Por su parte, en *Pueblo v. Serrano Morales*, 201 DPR 454 (2018), el Tribunal Supremo de Puerto Rico resuelve que, a tenor de la referida Regla 404(b) de Evidencia, es admisible contra la persona acusada la evidencia de conducta delictiva distinta a la imputada, aunque hubiera sido ya absuelto por la acusación fundada en esa conducta. Por supuesto, ante esta situación, si el juicio es por Jurado, hay que impartir una instrucción cuidadosa sobre el uso legítimo de la evidencia, con énfasis en que no puede usarse para una inferencia fundada en la propensión del acusado a incurrir en ese tipo de conducta. Se trata de la "instrucción limitativa" a la que se alude en la Regla 107 de Evidencia. Véanse *Pueblo v. Virkler*, 172 DPR 115 (2007); *Dowling v. United States*, 493 US 342 (1990).

## 3.3   Credibilidad de Testigos

Toda persona que testifica bajo juramento o afirmación de decir la verdad es testigo. Corresponde exclusivamente a ustedes determinar la credibilidad de cada testigo y el valor probatorio de sus testimonios.

Al decidir sobre la credibilidad de cada testigo, deben examinar todo su testimonio y pueden considerar, entre otros, los aspectos siguientes:

**[El tribunal debe leer los aspectos que apliquen conforme a la prueba presentada**:

(1) Su comportamiento mientras declara y la forma como lo hace.

(2) La naturaleza o el carácter del testimonio.

(3) Su grado de capacidad para percibir, observar, recordar o comunicar cualquier asunto sobre el cual declara. Pueden considerar la edad de la persona testigo.

(4) La existencia, o inexistencia de cualquier prejuicio, interés u otro motivo de parcialidad. Pueden considerar cualquier motivo de animosidad o antipatía, así como cualquier beneficio que recibiría la persona con su testimonio.

(5) Sus declaraciones anteriores en cuanto a las semejanzas o diferencias con su testimonio en corte, con el testimonio de otros (otras) testigos o con otra evidencia admitida.

(6) El carácter, reputación o conducta de cada testigo en cuanto a decir o no la verdad.

(7) Que haya sido encontrada culpable anteriormente por un delito que implique falsedad.

(8) La existencia o inexistencia, falsedad, ambigüedad o imprecisión de un hecho sobre el cual haya declarado**]**.

**REFERENCIA:**

Esta Instrucción proviene de las Instrucciones 1.10 y 2.3 del Proyecto de Libro de Instrucciones al Jurado de 2008 y de las Instrucciones al Jurado para el Tribunal Superior de Puerto Rico de 1976, pág. 17. Guarda relación con la Regla 110 (*Evaluación y suficiencia de la prueba*), la Regla 608(b) (*Credibilidad e impugnación de testigos*; *Medios de prueba*), la Regla 609 (*Impugnación mediante carácter y conducta específica*) y la Regla 610(a) (*Condena por delito*) de Evidencia de 2009 (32 LPRA Ap. VI). Véanse *Berríos Falcón v. Torres Merced*, 175 DPR 962 (2009); *Pueblo v. Galindo González*, 129 DPR 627 (1991); *Pueblo v. Cortés del Castillo*, 86 DPR 220 (1962). También adopta principios de la Instrucción 1.08 de las *Pattern Jury Instruction, Criminal Cases*, Décimo Circuito, 2011.

**COMENTARIO:**

Esta Instrucción sobre credibilidad de testigos debe ser complementada con la instrucción específica pertinente sobre medios de impugnación que se hayan utilizado en el caso.

Refiérase el comentario de la Instrucción 1.6.

**B.**     VALORACIÓN DE LA PRUEBA Y CREDIBILIDAD DE TESTIGOS

### 3.4     Testigo que Falta a la Verdad; Incongruencia en el Testimonio

Cualquier testigo que haya faltado a la verdad en una parte esencial de su declaración podrá ponerse en duda respecto a sus otras declaraciones, pero ello no quiere decir que su testimonio en corte deba rechazarse por completo. Si ustedes, en el ejercicio de su discreción, se convencen de que el resto de la declaración es verdadera, pueden considerarla para rendir el veredicto.

Incongruencias o contradicciones en la declaración de cualquier testigo, o entre su propio testimonio y las declaraciones de otras personas, si las hubiera, no significa que ese testimonio debe rechazarse por ese motivo. Las contradicciones en la declaración de cualquier testigo sobre cuestiones que no son fundamentales no obligan al Jurado a rechazar el resto de su testimonio. La credibilidad no queda afectada porque no recuerde exactamente todo lo que ocurrió en una ocasión determinada, máxime si lo olvidado es sobre un aspecto irrelevante en relación con el delito por el cual se juzga a la persona acusada.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 2.4 del Proyecto de Libro de Instrucciones al Jurado de 2008 y de las Instrucciones al Jurado para el Tribunal Superior de Puerto Rico de 1976, pág. 19. Guarda relación con la Regla 110 (*Evaluación y suficiencia de la prueba*) de Evidencia de 2009 (32 LPRA Ap. VI).

### 3.5     Impugnación Mediante Declaraciones Anteriores del (de la) Testigo No Admisibles en Evidencia como Prueba Sustantiva

La credibilidad de los (las) testigos puede impugnarse mediante sus declaraciones anteriores que sean incompatibles con su testimonio en corte o que difieran en aspectos significativos con ese testimonio.

**[Si la impugnación ha sido por omisión, se deberá añadir lo siguiente:**

Esta incompatibilidad o diferencias entre la declaración anterior y el testimonio en corte puede ser producto de que, en su testimonio en corte, el (la) testigo haya aludido a uno o más hechos que no incluyó en una declaración anterior, si ustedes estiman que era natural que los hubiera incluido en la declaración anterior**].**

En este caso **[indique el nombre del (de la) testigo]** prestó testimonio y se admitió en evidencia ciertas declaraciones anteriores suyas. Si ustedes estiman que, en efecto, el (la) testigo hizo tales declaraciones, las pueden usar para evaluar la credibilidad que este(a) testigo les merece. Ustedes deben prestar especial atención a alguna incompatibilidad o diferencia significativa entre el testimonio en corte y las declaraciones anteriores, tomando en consideración que el hecho de que haya faltado a la verdad en parte de su testimonio no es razón suficiente para rechazarlo en su totalidad.

Ustedes podrán considerar las declaraciones anteriores de testigos solo para evaluar la credibilidad, pero nunca como prueba de la verdad de lo declarado anteriormente.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 2.5 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con la Regla 608(b) (*Credibilidad e impugnación de testigos*; *Medios de prueba*), la Regla 611(b) (*Impugnación y evidencia extrínseca*), y la Regla 802(a) y (b) (*Declaraciones anteriores*) de Evidencia de 2009 (32 LPRA Ap. VI). Véanse *Pueblo v. López Reyes*, 109 DPR 379 (1980); *United States v. Owens*, 484 US 554 (1988).

**COMENTARIO:**

La Regla 802 de Evidencia alteró significativamente la Regla 63 de Evidencia de 1979, en relación con la admisibilidad de declaraciones anteriores de testigos como prueba sustantiva. A tenor de la anterior Regla 63 anterior, se admitía toda declaración anterior de un(a) testigo como excepción a la regla general de exclusión de prueba de referencia, sin importar, entre otras instancias, el asunto objeto de la declaración ni si fue hecha bajo juramento. El único requisito era que la persona declarante testificara en el juicio sujeta a contrainterrogatorio sobre su declaración anterior. La actual Regla 802 distingue entre declaraciones congruentes o incompatibles ("consistentes" o "inconsistentes") con el testimonio en corte y alude al caso particular en que la declaración se refiere a la identificación de una persona como el autor o la autora de unos hechos.

En el caso de personas que testifiquen en corte que no recuerdan algún asunto relacionado con los hechos pertinentes, a pesar de haber prestado una declaración sobre esos hechos, la admisibilidad de esa declaración para fines de impugnar la credibilidad del testimonio en corte (en cuanto a que no recuerda) fue atendida por el Tribunal Supremo en *Pueblo v. López Reyes*, supra. Le corresponde al tribunal hacer, en ausencia del Jurado, una determinación de admisión o exclusión al amparo de la Regla 109(a) de Evidencia, 32 LPRA Ap. VI. Si el tribunal determina que la persona realmente no recuerda algo sobre los hechos relatados en su declaración anterior, esta no se admite para impugnar al (a la) testigo en corte. Por otro lado, si se determina que la persona no dice la verdad cuando testifica que no recuerda, se admitirá la declaración para fines de impugnación y se leerá la declaración anterior al Jurado. Dejar que sea el Jurado quien determine si el (la) testigo realmente recuerda o no resulta es peligroso, pues el Jurado se entera de la declaración, aunque determine que es falso el testimonio de que no recuerda.

En cuanto a la admisión de la declaración anterior como prueba sustantiva contra una persona acusada de delito, cuando alguien testifica que no recuerda algo sobre los hechos hay que considerar la cláusula constitucional sobre el derecho de la persona acusada a confrontarse con quienes testifican en su contra, al menos cuando se trata de "declaraciones testimoniales". El Tribunal Supremo de Estados Unidos abordó el problema en *United States v. Owens*, supra. El Tribunal Supremo de Puerto Rico discutió el asunto en *Pueblo v. Esteves Rosado*, 110 DPR 334, 345-346 esc. 28 (1980). De todos modos, el Jurado no participa en la determinación de admisibilidad de la declaración anterior como prueba sustantiva.

Lo relativo a la impugnación por manifestaciones anteriores incompatibles debido a omisión se basa en lo resuelto en los casos *Pueblo v. Cortés del Castillo*, 86 DPR 220, 225 (1962), y *Ruiz v. San Juan Racing Assn*., 102 DPR 45, 51 (1974). En relación con la admisibilidad de la declaración anterior como prueba sustantiva, véanse, además, *Pueblo v. Adorno Cabrera*, 133 DPR 839 (1993); *Pueblo v. Stevenson Colón*, 113 DPR 634 (1982), y *Pueblo v. Esteves Rosado*, supra. En cuanto al problema de personas que testifican no recordar, véanse los casos *Pueblo v. Esteves Rosado*, supra, pág. 345 esc. 28, y *Pueblo v. López Reyes*, supra.

## 3.6 Impugnación Mediante Declaraciones Anteriores del (de la) Testigo Admisibles en Evidencia como Prueba Sustantiva

La credibilidad de los (las) testigos puede impugnarse por sus declaraciones anteriores que resulten incompatibles con su testimonio en corte o que sean distintas en aspectos significativos con ese testimonio.

**[Si la impugnación ha sido por omisión, se deberá añadir lo siguiente:**

Esta incompatibilidad o estas diferencias entre la declaración anterior y el testimonio en corte puede darse porque en el testimonio en corte el (la) testigo aludió a uno o más hechos que no incluyó en su declaración anterior, si ustedes estiman que era natural o lógico que los hubiera incluido en la declaración anterior**].**

En este caso **[indique el nombre del (de la) testigo]** prestó testimonio y se admitieron en evidencia ciertas declaraciones anteriores prestadas por ese (esa) testigo. Si ustedes entienden que, en efecto, el (la) testigo hizo tales declaraciones, las pueden usar para evaluar la credibilidad que este(a) les merece. Ustedes deben prestar especial atención a la incompatibilidad o a las diferencias significativas entre el testimonio en corte y las declaraciones anteriores, tomando en consideración que el hecho de que haya faltado a la verdad en parte de su testimonio no es razón suficiente para rechazarlo en su totalidad.

Además, ustedes pueden aceptar o rechazar esas declaraciones anteriores del (de la) testigo como evidencia de la verdad de los hechos declarados junto con el resto de la evidencia presentada durante el juicio.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 2.5 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con la Regla 802(a) y (b) (*Declaraciones anteriores*) de Evidencia de 2009 (32 LPRA Ap. VI). Véanse *Pueblo v. López Reyes*, 109 DPR 379 (1980); *United States v. Owens*, 484 US 554 (1988).

**COMENTARIO:**

Refiérase al Comentario de la Instrucción 3.5 sobre la impugnación mediante declaraciones anteriores que no son admisibles en evidencia como prueba sustantiva.

### 3.7 Carácter del (de la) Testigo en Cuanto a Veracidad o Mendacidad

Para evaluar la credibilidad de cualquier testigo, ustedes pueden considerar su carácter en cuanto a la veracidad o falta de ella; es decir, si tiende a decir la verdad o no. La prueba para sostener o poner en duda la veracidad de cualquier testigo puede presentarse mediante una opinión o por reputación.

La prueba mediante opinión es la declaración de una persona sobre lo que piensa, a base de su conocimiento personal de cierto testigo. La prueba de reputación es la declaración de una persona sobre la fama del (de la) testigo en la comunidad en que reside o en el grupo con el cual se asocia. La prueba de opinión o reputación siempre se limitará a la tendencia de cierto(a) testigo a decir la verdad o a no decirla.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 2.6 del Proyecto de Libro de Instrucciones al Jurado de 2008 y las enmiendas de 1980 a las Instrucciones al Jurado para el Tribunal Superior de Puerto Rico de 1976. Guarda relación con la Regla 609 (*Impugnación mediante carácter y conducta específica*), la Regla 701 (*Opiniones o interferencias por testigos no peritos*) y la Regla 805(u) (*Excepciones a la regla de prueba de referencia, aunque la persona declarante esté disponible como testigo*; *Reputación sobre carácter*) de Evidencia de 2009 (32 LPRA Ap. VI).

**COMENTARIO:**

La Regla 609 de Evidencia permite impugnar o sostener la credibilidad de los (de las) testigos mediante evidencia de su carácter en cuanto a veracidad o mendacidad. Se permite la evidencia de carácter no solo en la forma de reputación, sino también en la forma de opinión de una persona que conozca al (a la) testigo. En cuanto a la reputación sobre el carácter veraz o mendaz, la Regla 805(u) de Evidencia hace admisible la evidencia de reputación no solo en la comunidad en la que reside el (la) testigo, sino también entre un grupo con el cual la persona se asocie; por ejemplo, la escuela, el trabajo y otros.

La opinión sobre el carácter o el rasgo de carácter de una persona es una que pueden emitir testigos sin ser peritos o peritas, en conformidad con la Regla 701 de Evidencia.

### 3.8 Impugnación de Testigos Mediante Evidencia de una Condena por Delito

La credibilidad de testigos puede ser impugnada mediante evidencia de que la persona que testificó ha sido convicta por un delito que implique falsedad.

En este caso se presentó evidencia de que **[indique el nombre del (de la) testigo]** fue convicto(a) por haber cometido el delito **[indique el delito]**. Ustedes podrán considerar la evidencia de la condena solamente a los fines de evaluar la credibilidad de ese (esa) testigo; es decir, que pueden tomar en cuenta esa prueba como factor al considerar la credibilidad que merece el testimonio de ese (esa) testigo.

El hecho de la condena del (de la) testigo por ese delito no necesariamente destruye su credibilidad. Se trata solo de que tal condena puede ser considerada por ustedes como uno de los elementos para evaluar su credibilidad como testigo.

**[Cuando el testimonio que se impugna es el de la persona acusada, el tribunal debe impartir la instrucción limitativa siguiente:**

Ustedes no podrán usar la evidencia de la condena anterior de la persona acusada como indicio de culpabilidad por los hechos que ahora se le imputan, sino solamente como factor para evaluar la credibilidad de su testimonio].

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 2.8 del Proyecto de Libro de Instrucciones al Jurado de 2008 y de las enmiendas de 1980 a las Instrucciones al Jurado para el Tribunal Superior de Puerto Rico de 1976. Guarda relación con la Regla 610 (*Condena por delito*) de Evidencia de 2009 (32 LPRA Ap. VI). Véase *Pueblo v. Álvarez Rosario*, 108 DPR 112 (1978).

**COMENTARIO:**

Debe impartirse una instrucción limitativa cuando se admite, contra una persona acusada la prueba de una condena anterior para impugnar su credibilidad. Si la evidencia de otro delito se admite al amparo de la Regla 404 de Evidencia de 2009 (32 LPRA Ap. VI), debe impartirse la Instrucción 3.19 sobre evidencia de otros delitos o actos de la persona acusada.

## 3.9     Impugnación de Testigos Mediante Evidencia de Parcialidad

Otro de los criterios que ustedes, miembros del Jurado, pueden considerar al evaluar la credibilidad de un(a) testigo es la existencia de cualquier prejuicio, interés u otro motivo de parcialidad. Para ello podrán considerar si existen factores tales como **[refiérase a aquellos factores que se ajusten a la prueba desfilada por las partes;** por ejemplo: lazos de amistad, de parentesco o familiares; relación amorosa; vínculos de trabajo; intereses económicos; motivos de venganza, de animosidad o de rivalidad; membresía común en una organización, u otros factores similares que denoten prejuicio o parcialidad].

Al evaluar la credibilidad de un(a) testigo que presentó el Ministerio Público, ustedes podrán considerar cualquier beneficio que recibiría con su testimonio o cualquier interés o motivo de animosidad, prejuicio o parcialidad en contra de la persona acusada, de cualquier miembro de su familia o de una persona allegada.

Al evaluar la credibilidad de un(a) testigo que presentó la Defensa o testificó en forma favorable a la persona acusada, ustedes podrán considerar cualquier elemento de parcialidad [prejuicio] [interés] a favor de la persona acusada, de cualquier miembro de su familia o de una persona allegada.

**REFERENCIA:**

Esta Instrucción proviene esencialmente de la Instrucción 2.9 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con la Regla 608(b)(5) (*Credibilidad e impugnación de testigos*) de Evidencia de 2009 (32 LPRA Ap. VI). Véase *Pueblo v. Figueroa Gómez*, 113 DPR 138 (1982).

## 3.10   Evaluación y Suficiencia de la Prueba

Ustedes no tienen la obligación de decidir por la cantidad de testigos que hayan declarado. Una sola persona que testifique y que les merezca entero crédito es suficiente para probar cualquier hecho. Esto no quiere decir que están en libertad de descartar el testimonio de un mayor número de testigos por mero capricho o prejuicio, o por el deseo de favorecer a una parte sobre otra.  Lo que esto significa es que ustedes no pueden resolver este caso por el simple proceso de contar el número de testigos de las partes. El criterio determinante al evaluar la evidencia es su fuerza persuasiva y no la cantidad de personas que testifiquen.

Para establecer un hecho, la ley no exige el grado de prueba que excluya la posibilidad de error y que produzca una certeza absoluta. La ley solo exige la certeza o convicción de una persona que no tenga prejuicios.

Al evaluar finalmente la totalidad de la prueba, si ustedes tienen el convencimiento de la culpabilidad de la persona acusada más allá de duda razonable, deben rendir un veredicto de culpable. Por el contrario, si existe duda razonable respecto a la culpabilidad de la persona acusada, deben rendir un veredicto de no culpable.

**[El tribunal debe impartir esta Instrucción acompañada de la Instrucción 3.40].**

**REFERENCIA:**

Esta Instrucción proviene esencialmente de la Instrucción 2.10 del Proyecto de Libro de Instrucciones al Jurado de 2008 y las enmiendas de 1980 a las Instrucciones al Jurado para el Tribunal Superior de Puerto Rico de 1976. Guarda relación con la Regla 110 de Evidencia de 2009 (32 LPRA Ap. VI).

**COMENTARIO:**

Se incorporan en esta Instrucción algunos principios generales de evaluación y suficiencia de la prueba establecidos en la Regla 110 (*Evaluación y suficiencia de la prueba*) de Evidencia de 2009.

### 3.11   Rehusarse a Testificar Basándose en un Privilegio Legal

Cuando un(a) testigo, en el ejercicio de un privilegio legal, rehúsa testificar sobre determinada materia, ustedes no deben hacer inferencia alguna sobre su credibilidad por ese solo hecho.

**REFERENCIA:**

Esta Instrucción proviene de las Instrucciones 2.11 y 2.12 del Proyecto de Libro de Instrucciones al Jurado de 2008 y de las Instrucciones al Jurado para el Tribunal Superior de Puerto Rico de 1976, págs. 22-23. Guarda relación con la Regla 109(a) (*Determinaciones preliminares a la admisibilidad de evidencia*), la Regla 501 (*Privilegios de la persona acusada*), la Regla 502 (*Autoincriminación*), la Regla 503 (*Relación abogada o abogado y cliente*), la Regla 504 (*Relación contadora o contador público autorizado y cliente*), la Regla 505 (*Renuncia a los privilegios de abogada o abogado-cliente; contadora o contador público autorizado-cliente; renuncia al privilegio para el producto del trabajo realizado por una parte o sus representantes en anticipación o como parte de un litigio*), la Regla 506 (*Relación médico y paciente*), la Regla 507 (*Relación consejera o consejero y víctima de delito*), la Regla 508 (*Privilegio de psicoterapeuta y paciente*), la Regla 509 (*Privilegio del cónyuge testigo*), la Regla 510 (*Privilegio de las comunicaciones confidenciales matrimoniales*), la Regla 511 (*Relación religiosa o religioso y creyente*), la Regla 512 (*Voto político*), la Regla 513 (*Secretos del negocio*), la Regla 514 (*Privilegio sobre información oficial*), la Regla 515 (*Privilegio en cuanto a la identidad de la persona informante*), la Regla 516 (*Privilegio de los procesos de métodos alternos para la solución de conflictos*), la Regla 517 (*Renuncia a privilegios*), la Regla 518 (*Interpretación restrictiva*) y la Regla 608(A) (*Credibilidad e impugnación de testigos*; *Quién puede impugnar*) de Evidencia de 2009 (32 LPRA Ap. VI), y el Art. II, Sec. 11, de la Constitución del Estado Libre Asociado de Puerto Rico, LPRA, Tomo 1.

**COMENTARIO:**

La instrucción parte de la premisa de que, aunque se trate de un privilegio que no sea de rango constitucional, el Jurado —o el juez o la jueza en los casos ante tribunal de derecho— no debe usar como prueba el hecho de que el (la) testigo invocó un privilegio para negarse a contestar. Esta premisa, aunque es objeto de debate, constituye la norma más aceptada por los tratadistas y por la jurisprudencia. Véase *McCormick on Evidence*, (Hornbook Series), (K.S. Broun, ed.), 7ma ed., West Academic Publishing, 2014, Sec. 74.1, págs. 167-169. En la medida en que se permitan las inferencias fundadas en el reclamo del privilegio, se menoscaba el interés público que le sirve de fundamento. Debe presumirse que el reconocimiento del privilegio obedece a adelantar determinado interés público, aunque se menoscabe la búsqueda de la verdad. La determinación de si procede el reclamo del privilegio debe hacerse en ausencia del Jurado y, si se reconoce, no se divulgará al Jurado. Si se entera, no debe permitirse la inferencia basada en la invocación del privilegio. Valga citar *McCormick on Evidence*, (Hornbook Series), *op. cit.*, págs. 168-169:

> The cases, rather naturally, are in dispute. It is submitted that the best solution is to recognize only privileges that are soundly based in policy and to accord those privileges the fullest

protection. Thus comment, whether by judge or by counsel, or its equivalent of requiring the claim to be made in the presence of the jury, and the drawing of inferences from the claim, all would be foreclosed.

## 3.12    Testimonio del (de la) Juez(a)

En este caso declaró el (la) juez(a) **[indique el nombre]** como testigo. Su testimonio es parte de la prueba y ustedes deben tomarlo en consideración de la misma forma en que consideran el testimonio de cualquier testigo. El hecho de que el (la) testigo sea un(a) juez(a) no le da mayor credibilidad a su testimonio ni su evaluación merece consideraciones especiales.

Ustedes deberán considerar su testimonio del mismo modo que consideran el de cualquier testigo. Le brindarán la credibilidad que merezca de acuerdo con toda la evidencia y con las instrucciones dadas previamente sobre la manera de evaluar la credibilidad de testigos.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con la Regla 110 (*Evaluación y suficiencia de la prueba*) de Evidencia de 2009 (32 LPRA Ap. VI).

**COMENTARIO:**

En aquellos casos en que un juez o una jueza testifique —porque no aplica la Regla 605 de Evidencia— es conveniente instruir al Jurado en cuanto a que no deben inferir que su testimonio tiene mayor credibilidad que el de otro (otra) testigo por el hecho de ser un juez o una jueza.

## 3.13    Presencia de Intercesores(as) o de Técnicos(as) de Asistencia a Víctimas y Testigos Durante el Testimonio de una Alegada Víctima de Incidentes de Violencia Doméstica o de una Persona Menor de Edad

### A.  Cuando testifique una alegada víctima de incidentes de violencia doméstica

En este caso declaró **[indique el nombre del (de la) testigo]** como testigo. El tribunal permitió que durante su testimonio estuviese presente **[indique el nombre del personal de apoyo]** en su carácter de personal de apoyo. Se permitió la presencia de esta persona con el único propósito de facilitar la declaración del (de la) testigo **[indique el nombre del (de la) testigo]**, pero no para influenciar en la credibilidad de su testimonio. Cualquier gesto, acto, comunicación verbal o no verbal de la persona facilitadora no puede ser considerado por ustedes, ya que no constituye prueba. El hecho de que se haya permitido la presencia de este personal durante la declaración del (de la) testigo no le da mayor credibilidad a su testimonio ni su evaluación merece consideraciones especiales.

Ustedes deberán considerar su testimonio como el de cualquier testigo y brindarle la credibilidad que merezca de acuerdo con toda la evidencia presentada y las instrucciones brindadas previamente sobre la manera de evaluar la credibilidad de testigos.

## B. Cuando testifique una persona menor de edad

En este caso declaró **[indique el nombre del (de la) testigo menor de edad]** como testigo. El tribunal permitió que durante su testimonio estuviese presente **[indique el nombre del personal de apoyo]** en su carácter de personal de apoyo. La persona de apoyo podrá ser un (una) familiar o persona conocida del (de la) menor de edad, un (una) profesional o el personal técnico que intervino o brindó asistencia al (a la) menor en las diferentes etapas del proceso. Se permitió la presencia de esta persona con el único propósito de facilitar la declaración del (de la) testigo menor de edad **[indique el nombre del (de la) testigo menor de edad]**, pero no para influenciar en la credibilidad de su testimonio ni protegerle físicamente de la persona acusada. Mientras el (la) testigo menor de edad preste testimonio, el tribunal podrá autorizar que la persona facilitadora permanezca al lado del (de la) testigo menor de edad y que realice acciones tales como **[sentar a la persona testigo en la falda o darle las manos]**. Cualquier gesto, acto, comunicación verbal o no verbal de la persona facilitadora no puede ser considerado por ustedes, ya que no constituye prueba. El hecho de que se haya permitido la presencia de este personal durante la declaración del (de la) testigo menor de edad no le da mayor credibilidad a su testimonio ni su evaluación merece consideraciones especiales.

Ustedes deberán considerar su testimonio como el de cualquier testigo y brindarle la credibilidad que merezca de acuerdo con toda la evidencia presentada y las instrucciones brindadas previamente sobre la manera de evaluar la credibilidad de testigos.

**REFERENCIA**:

Esta Instrucción es nueva. Guarda relación con el Artículo 1.3 (*Definiciones*), el Artículo 3.10 (*Asistencia a la víctima de maltrato*), el Artículo 5.3 (*Reglas para las acciones civiles y penales*) de la Ley para la Prevención e Intervención con la Violencia Doméstica, Ley Núm. 54 de 15 de agosto de 1989, según enmendada por la Ley 18-2017 (8 LPRA secs. 602, 640 y 663), y la Regla 131.3 (*Testigos menores de edad; asistencia durante el testimonio)* de Procedimiento Criminal de 1963 (34 LPRA Ap. II).

**COMENTARIO:**

La Ley 18-2017 enmendó los Artículos 1.3, 3.10 y 5.3 de la Ley para la Prevención e Intervención con la Violencia Doméstica para permitir la presencia de personal técnico para la asistencia a víctimas y testigos, intercesores(as) o cualquier otro personal de apoyo para que permanezca junto a la víctima mientras esta presta testimonio en el juicio. Se estableció, además, que en los juicios por Jurado el tribunal tendría que impartir instrucciones especiales para aclarar las funciones de este personal de apoyo, "enfatizando en el hecho de

que su presencia tiene el propósito de facilitar la declaración de la víctima y no de influenciar a favor de su credibilidad". 2017 (Parte 1) Leyes de Puerto Rico 647.

Por otro lado, la Regla 131.3 de Procedimiento Criminal de 1963, 34 LPRA Ap. II, pág. 623 (ed. 2016), dispone que "[e]n los casos de juicio por jurado, el tribunal deberá impartir instrucciones especiales para aclarar las funciones de la persona de apoyo, enfatizando en el hecho de que su presencia tiene el propósito de facilitar la declaración del menor y no el de protegerlo físicamente del acusado ni de influir a favor de su credibilidad".

## 3.14   Intérpretes

Se presentarán testigos en este caso que declararán en **[especifique el idioma, lenguaje de señas u otro tipo de comunicación]**, por lo que se utilizará un(a) intérprete para traducir su testimonio. Deberán considerar como evidencia la traducción al español admitida por el tribunal.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con la Regla 614 (*Intérpretes*) de Evidencia de 2009, según enmendada por la Ley 174-2018 (32 LPRA Ap. VI). Véanse *Pueblo v. Branch*, 154 DPR 575 (2001); *Pueblo v. Moreno González*, 115 DPR 298 (1984). Adopta principios de la Instrucción 1.12 del *Manual of Model Criminal Jury Instructions for the District Courts of the Ninth Circuit* (2016), la Instrucción T4 de las *Pattern Jury Instructions, Criminal Cases, Eleventh Circuit* (2016), la Instrucción 121 de las *Judicial Council of California Criminal Jury Instructions, CALCRIM* (2016) , las Instrucciones 2.1(b), 2.9 y 2.12 de las *Florida Standard Jury Instructions in Criminal Cases* (2015), las Instrucciones 1.2-13 a 1.2-15 de las *Connecticut Judicial Branch Criminal Jury Instructions* (2016), la Instrucción 1.02 de las *Hawaii Criminal Jury Instructions* (2005) y la Instrucción 1.270 de las *Massachusetts District Court Criminal Jury Instructions* (2016).

**COMENTARIO:**

Es conveniente impartir la instrucción justo antes del comienzo del testimonio que se interpretará. Se sugiere tomar el juramento a la persona que fungirá como intérprete en presencia del Jurado, de modo que sirva para delimitar su rol.

Sobre intérpretes, véase E.L. Chiesa Aponte, *Procedimiento criminal y la Constitución: etapa adjudicativa*, San Juan, Ed. Situm, 2018, Sec. 5.2, págs. 174-175.

**C.**     **CONOCIMIENTO PERSONAL**

**3.15   Conocimiento Personal del (de la) Testigo**

**[El tribunal debe impartir esta Instrucción solamente cuando exista una controversia sobre el conocimiento personal del (de la) testigo y su testimonio fue admitido al amparo de la Regla 109(b)].**

La ley dispone que un(a) testigo —excepto un(a) perito(a)— solo podrá declarar sobre la materia de la cual tenga conocimiento personal. En este juicio testificó **[indique el nombre del (de la) testigo]**. Corresponde a ustedes determinar si tenía conocimiento personal sobre los hechos narrados en su testimonio. Si ustedes creen que el (la) testigo tenía ese conocimiento personal, evaluarán el valor probatorio de su testimonio conforme las instrucciones sobre la credibilidad y el valor probatorio de la prueba testifical. Por el contrario, si ustedes determinan que no tenía conocimiento personal sobre determinados hechos, tienen que ignorar o descartar su testimonio sobre esos hechos.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con la Regla 109(b) (*Determinaciones preliminares a la admisibilidad de evidencia*; *Pertinencia condicionada a los hechos*) y la Regla 602 (*Conocimiento personal del testigo*) de Evidencia de 2009 (32 LPRA Ap. VI).

**COMENTARIO:**

La determinación de si el (la) testigo tiene conocimiento personal sobre la materia se realiza al amparo de la Regla 109(b) de Evidencia de 2009. De ahí que, en caso de alguna controversia, la determinación final es del Jurado. Por lo tanto, ante una objeción fundada en que el (la) testigo no tiene conocimiento personal, el tribunal solo hace una determinación inicial de que hay evidencia suficiente para que la persona pueda declarar como testigo, pero la determinación final es del Jurado. Véase C.B. Mueller y L.C. Kirkpatrick, *Evidence*, (Aspen Student Treatise Series), 5ta ed., Maryland, Wolters Kluwer Law and Business, 2012, págs. 446-447:

> The qualification of a person to be a witness is a matter for the court under FRE 104 (a), but personal knowledge is a "mixed question" for the judge and jury under FRE 104 (b). The only responsibility of the judge, before letting a witness testify, is to ensure that enough evidence has been offered to support a decision by the jury that the witness has personal knowledge, and a judge bars testimony under FRE 602 only where the proponent fails to satisfy the standard. Even if the witness saw the event only for a split second, or from a great distance, or in darkness, normally such factors go to credibility rather than admissibility, provided that a jury could find that the witness did in fact perceive the event. The jury, rather than the court, makes the ultimate determination whether the witness has personal knowledge, and the jury may disregard the testimony if it is not persuaded on this point. If cross examination or other evidence shows that the witness lacked knowledge so a reasonable jury could not find that she had knowledge, then the court may strike the testimony and tell the jury to disregard it.

En igual sentido, véase *McCormick on Evidence*, (Hornbook Series, (K.S. Broun, ed.), 7ma ed., West Academic Publishing, 2014, Sec. 10, pág. 27. El Prof. Ernesto L. Chiesa Aponte expone lo mismo en su *Tratado de derecho probatorio*, República Dominicana, Ed. Corripio, [s. año], T. I, Sec. 5.3, págs. 351-352.

### 3.16 Evidencia Condicionada a que se Pruebe el Conocimiento Personal del (de la) Testigo

**[El tribunal deber impartir esta Instrucción antes de admitir la evidencia de forma condicionada y repetirla al momento de leer las instrucciones finales].**

En este caso se admitió el testimonio de **[indique el nombre del (de la) testigo]**, con la condición de que posteriormente se probara que el (la) testigo tenía conocimiento personal de los hechos sobre los que declaró. Al momento de evaluar su testimonio, corresponde a ustedes determinar si se cumplió con la condición y si se probó que el (la) testigo efectivamente tenía conocimiento personal de los hechos declarados. En la eventualidad de que ustedes entiendan que la condición no fue satisfecha y que no se presentó evidencia suficiente que les permitiera concluir que el (la) testigo tenía conocimiento personal de lo declarado, ustedes deben descartar el testimonio en su totalidad y no podrán considerarlo al tomar su decisión en este caso.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con la Regla 109(b) (*Determinaciones preliminares a la admisibilidad de evidencia*; *Pertinencia condicionada a los hechos*) y la Regla 602 (*Conocimiento personal del testigo*) de Evidencia de 2009 (32 LPRA Ap. VI).

### D.   Evidencia de Carácter, Conducta no Imputada y Hábito

### 3.17 Evidencia del Carácter de la Persona Acusada

Se presentó evidencia sobre los rasgos de carácter pertinentes de la persona acusada a base de su reputación o de la opinión de testigos que lo (la) conocen. Ustedes pueden considerar el buen carácter o el rasgo de carácter de la persona acusada, incompatible con la conducta que se le imputa en la acusación, al decidir sobre la culpabilidad o no culpabilidad del (de la) acusado(a). Ustedes podrían razonar que una persona de tal carácter probablemente no cometería el tipo de conducta que se le imputa en la acusación. Esto podría ser suficiente para crear duda razonable sobre su culpabilidad; de ser así, deberán emitir un veredicto de no culpable. Sin embargo, ustedes pueden considerar que, a pesar de la evidencia de carácter de la persona acusada presentada por la Defensa, el (la) acusado(a) cometió el delito por el cual se le acusa y, si tienen el convencimiento de ello más allá de duda razonable, deben rendir un veredicto de culpable.

**[Si el Ministerio Público presentó testigos de carácter para refutar la prueba de carácter presentada por la Defensa, se debe impartir esta Instrucción:**

Se presentó prueba testifical para refutar la evidencia de carácter presentada por la Defensa. Esta prueba tiende a establecer que el carácter de la persona acusada es contrario al que surge de los y las testigos de Defensa y que el carácter de la persona acusada es compatible con la conducta que se le imputa. Corresponde a ustedes resolver este conflicto en la prueba sobre el carácter o rasgo de carácter de la persona acusada**].**

**[Si la Defensa presentó prueba de carácter de la alegada víctima y, para refutarla, el Ministerio Público presentó prueba sobre el mismo rasgo de carácter de la persona acusada, se debe impartir esta Instrucción:**

La Defensa presentó evidencia sobre el carácter de la alegada víctima, que consiste en **[indique]**. Para contrarrestar esa prueba, el Ministerio Público presentó prueba del mismo rasgo de carácter de la persona acusada. Ustedes pueden considerar si la alegada víctima, el (la) acusado(a) o ambos(as) actuaron en conformidad con tal rasgo de carácter**].**

**[Si en el contrainterrogatorio de testigos de carácter se inquirió sobre alguna conducta de la persona acusada que sea incompatible con la evidencia de carácter (por ejemplo, al (a la) testigo que declaró que la persona acusada es pacífica o que tiene reputación de serlo, se le preguntó sobre si conoce o ha oído sobre determinados actos de violencia de la persona acusada), debe impartirse una instrucción en estos términos:**

Se le preguntó a un(a) testigo de Defensa si conoce o ha oído de cierta conducta de la persona acusada que sea incompatible con el rasgo de carácter según descrito por el (la) testigo. Ustedes solo pueden considerar las contestaciones del (de la) testigo a las preguntas del Ministerio Público sobre este asunto para determinar el valor probatorio de su testimonio en relación con el rasgo del carácter de la persona acusada**].**

Al determinar o pasar juicio sobre la culpabilidad de la persona acusada, deberán tener presente que su responsabilidad penal se limita a la conducta que se le imputa en la acusación. Por ello, no pueden declarar culpable a la persona acusada solo por los rasgos negativos de su carácter o por una mala conducta distinta a la imputada en la acusación.

**REFERENCIA:**

Esta Instrucción proviene esencialmente de la Instrucción 2.13 del Proyecto de Libro de Instrucciones al Jurado de 2008, la cual se inspiró en la Sección 2.42 del *California Jury Instructions: Criminal* de 2003. Guarda relación con la Regla 404(a) (*Evidencia de carácter no es admisible para probar conducta; excepciones; evidencia sobre la comisión de otros delitos*) de Evidencia de 2009 (32 LPRA Ap. VI). Véase *Pueblo v. Fradera Olmo*, 122 DPR 67 (1988).

**COMENTARIO:**

La Regla 404(a) de Evidencia permite a una persona acusada ofrecer evidencia de un rasgo pertinente de su carácter como evidencia circunstancial de su inocencia; es decir, como indicio de que no es culpable del delito que se le imputa. La regla permite al Ministerio Público refutar tal evidencia esa prueba de carácter presentada por la persona acusada.

La persona acusada también puede ofrecer evidencia de un rasgo pertinente del carácter de la víctima. Cuando la persona acusada de delito presente prueba de carácter de la alegada víctima, el Ministerio Público puede refutarla mediante la evidencia de un rasgo pertinente del carácter de la víctima o de la propia persona acusada, aun cuando la persona acusada no haya presentado prueba de su buen carácter. Debe instruirse al Jurado sobre el alcance de este tipo de evidencia.

Refiérase a *Pueblo v. Fradera Olmo*, supra, sobre el contrainterrogatorio de testigos de carácter y la inadmisibilidad de evidencia extrínseca sobre la conducta de la persona acusada incompatible con el carácter descrito por el (la) testigo.

### 3.18   Evidencia sobre los Rasgos del Carácter de la Alegada Víctima

**[El tribunal debe impartir la instrucción que aplique conforme a la prueba presentada].**

### A.   Regla 404 (a)(2)

**[Si la Defensa presenta alguna evidencia del carácter de la víctima para demostrar agresividad o violencia, se debe dar la instrucción siguiente:**

Se presentó evidencia de que la alegada víctima era una persona agresiva o violenta. Si ustedes creen esa evidencia, podrían inferir que la alegada víctima actuó agresiva o violentamente al momento de los hechos, pero no tienen la obligación de hacer esta inferencia. Ese tipo de evidencia podría crear una duda razonable sobre la culpabilidad de la persona acusada. Sin embargo, noten que aquí no se está juzgando qué tipo de persona era la alegada víctima, sino si el (la) acusado(a) cometió el delito**].**

**[Si se trata de otro rasgo de carácter de la víctima que sea pertinente a los hechos imputados, la instrucción habría que modificarla así:**

Se presentó prueba de que la alegada víctima era una persona **[indique el rasgo de carácter pertinente; por ejemplo, persona descuidada, tramposa, etc.].** Si ustedes creen esa evidencia, podrían inferir que la alegada víctima actuó en conformidad con ese carácter al momento de los hechos, pero no tienen la obligación de hacer esta inferencia. Ese tipo de evidencia podría crear duda razonable sobre la culpabilidad de la persona acusada. Sin embargo, noten que aquí no se está juzgando qué tipo de persona era la alegada víctima, sino si el (la) acusado(a) cometió el delito**].**

## B. Regla 404(a)(4)

**[Si el Ministerio Público presenta evidencia de carácter de la alegada víctima para refutar la evidencia presentada por la Defensa, debe darse la instrucción siguiente:**

Se presentó evidencia de que la alegada víctima era una persona pacífica y tranquila. Si ustedes creen esa evidencia, podrían inferir que la víctima actuó de forma pacífica al momento de los hechos y tomar eso en cuenta al momento de evaluar si el (la) acusado(a) actuó en legítima defensa. Sin embargo, noten que aquí no se está juzgando qué tipo de persona era la víctima, sino si el (la) acusado(a) cometió el delito o actuó en legítima defensa**].**

**[Si se trata de otro rasgo de carácter de la alegada víctima que sea pertinente a los hechos imputados, la instrucción habría que modificarla así:**

Se presentó evidencia de que la alegada víctima era una persona **[indique el rasgo de carácter pertinente; por ejemplo, persona descuidada, tramposa, etc.]**. Si ustedes creen esa evidencia, podrían inferir que la alegada víctima actuó en conformidad con ese rasgo de carácter y tomar eso en cuenta al momento de evaluar si el (la) acusado(a) cometió el delito por el cual se le acusa, pero no tienen la obligación de hacer esta inferencia. Sin embargo, noten que aquí no se está juzgando qué tipo de persona era la víctima, sino si el (la) acusado(a) cometió el delito**].**

## C. Regla 404(a)(5)

**[Si el Ministerio Público presenta evidencia de carácter de la alegada víctima para refutar la prueba de defensa de que la víctima fue el primer agresor, se debe dar la siguiente instrucción siguiente:**

Se presentó evidencia para establecer que la alegada víctima fue quien agredió primero en el incidente que dio lugar a la acusación. Para refutar eso, el Ministerio Público presentó evidencia de que la alegada víctima era una persona pacífica y tranquila. Para estimar si la víctima fue quien agredió primero, ustedes podrán considerar toda la prueba, incluyendo la presentada por el Ministerio Público, de que la víctima era una persona tranquila y pacífica. Corresponde a ustedes evaluar la credibilidad de los (las) testigos que declararon sobre esto**].**

**REFERENCIA:**

Para un historial de esta Instrucción, refiérase a las Instrucciones 2.14 y 2.15 del Proyecto de Libro de Instrucciones al Jurado de 2008 y de las enmiendas de 1980 a Instrucciones al Jurado para el Tribunal Superior de Puerto Rico de 1976. Guarda relación con la Regla 404(a)(2), (4) y (5) (*Evidencia de carácter no es admisible para probar conducta; excepciones*; *evidencia sobre la comisión de otros delitos*) de Evidencia de 2009 (32 LPRA Ap. VI). Véase *Pueblo v. Martínez Solís*, 128 DPR 135 (1991).

**COMENTARIO:**

La instrucción se subdivide en tres instrucciones separadas para atender los tres escenarios distintos en los que se permite presentar evidencia de carácter de la víctima, a saber: Regla 404(a)(2), Regla 404(a)(4) y Regla 404(a)(5) de Evidencia.

La Regla 404(a) de Evidencia define la evidencia de carácter de una persona como la prueba circunstancial de conducta correspondiente al rasgo de carácter de la persona. Se crea una regla general de exclusión de evidencia, fundada en el escaso valor probatorio de esa evidencia; esto es, que la inferencia es muy dudosa. Sin embargo, existe otro fundamento para la regla de exclusión: el riesgo sustancial de que el juzgador particularmente un(a) miembro del Jurado— adjudique la controversia a base del carácter de esa persona, aunque la evidencia sobre la conducta en controversia sea muy débil. Se optó por no dejar el asunto a la interpretación caso a caso a tenor de la Regla 403, sino crear la regla de exclusión. En fin, cuando está en controversia la conducta de determinada persona en cierto incidente, se excluye el carácter de esa persona como evidencia circunstancial de esa conducta.

La Regla 404(a) reconoce cinco excepciones a esta regla general de exclusión, todas en casos penales; la regla no reconoce excepciones en casos civiles. Estas cinco excepciones se refieren al carácter de la persona acusada o al carácter de la víctima.

La Regla 404(a) permite la evidencia de carácter de la víctima en tres escenarios, a saber:

### 1. Regla 404(a)(2)

Se permite a la persona acusada que presente evidencia de un rasgo de carácter de la víctima, que sea pertinente a los hechos imputados en la acusación. Esto es un derecho sin restricción alguna, salvo lo dispuesto en la Regla 412 respecto a la conducta sexual de la víctima. El caso paradigmático de la Regla 404(a) es cuando se imputa asesinato u homicidio y la persona acusada alega legítima defensa. La evidencia de que la víctima era una persona agresiva y violenta se presenta para que el Jurado —o el juez o la jueza en los casos ante tribunal de derecho— infiera que actuó en conformidad con ese rasgo de carácter al momento de los hechos —es decir, violentamente—, lo que fortalece la teoría de legítima defensa. También puede presentarse, como prueba de defensa, la evidencia sobre el carácter de la víctima cuando la persona acusada trata de negar el elemento de causalidad mediante evidencia de que la causa del resultado delictivo fue la negligencia de la víctima, como podría ocurrir en casos de accidentes de automóviles. Por ejemplo, la persona acusada quiere presentar evidencia, en la forma de opinión o reputación, de que la víctima conduce descuidadamente. Alguien ha sugerido el ejemplo de que la víctima es una persona "tramposa", cuando la acusación es por delitos "económicos".

### 2. Regla 404(a)(4)

Se permite al Ministerio Público presentar evidencia de cierto rasgo pertinente del carácter de la víctima para refutar la evidencia presentada por la Defensa de que la víctima era una persona de carácter opuesto. El caso paradigmático es, de nuevo, asesinato u homicidio cuando la persona acusada alega legítima defensa. La persona acusada presenta evidencia de carácter al amparo de la Regla 404(a), de que la víctima era una persona agresiva y violenta. Esto le permite al Ministerio Público presentar evidencia de que la víctima era

una persona tranquila y pacífica para que el Jurado infiera que actuó en conformidad con ese rasgo de carácter al momento de los hechos, lo que debilita la teoría de legítima defensa. Esta evidencia la presenta el Ministerio Público en su turno de refutación.

3. Regla 404(a)(5)

Se permite al Ministerio Público que presente evidencia de que la víctima era una persona tranquila y pacífica para refutar la prueba de la Defensa de que la víctima fue quien agredió primero. Esta Instrucción solo se activa si la prueba de la defensa tiende a establecer que la víctima fue el primer agresor o la primera agresora. No se requiere que la Defensa hubiera presentado evidencia de que la víctima era una persona agresiva y violenta. De nuevo, el caso paradigmático es la acusación por homicidio o asesinato cuando la persona acusada alega legítima defensa.

En los tres casos, la evidencia se presenta mediante prueba testifical, bien en la forma de opinión o en la forma de reputación. Se trata del tipo de opinión que puede emitir un(a) testigo sin ser perito o perita, conforme la Regla 701 de Evidencia. En cuanto al testimonio de reputación, no procede una objeción fundamentada en prueba de referencia, pues la Regla 805(u) de Evidencia crea una excepción a la regla general de exclusión de prueba de referencia.

Valga señalar que la admisibilidad de evidencia de carácter de la víctima, como prueba de defensa, no está condicionada a que la persona acusada conociera de ese rasgo de carácter de la víctima al momento de los hechos imputados. Distinto es el caso cuando la persona acusada, en el contexto de legítima defensa, pretende traer evidencia de actos de violencia de la víctima. En ese caso se requiere que la persona acusada conociera de esos hechos al momento de los hechos imputados, pues esto afecta la razonabilidad de la creencia del (la) acusado(a) de que estaba en inminente peligro de muerte o de grave daño corporal. Véase *Pueblo v. Cruz*, 65 DPR 172 (1945).

Adviértase que, si la víctima es testigo, su credibilidad puede impugnarse mediante evidencia de su carácter mendaz, conforme a la Regla 609(a) de Evidencia. También puede sostenerse su credibilidad mediante evidencia de que es persona veraz, en la medida en que lo permite esa Regla 609(a). Esto es materia de impugnación y no de lo que se regula en la Regla 404(a) de Evidencia.


### 3.19   Evidencia de Otros Delitos o Actos de la Persona Acusada

En este caso se presentó evidencia para demostrar que el (la) acusado(a) cometió acto(s) o delito(s) distinto(s) a aquel(los) por el (los) cual(es) se le juzga en este caso. Si ustedes la creen, no pueden considerarla para probar que el (la) acusado(a) tenía la inclinación a incurrir en este tipo de conducta y de ahí inferir que se actuó en conformidad con esa inclinación. Sin embargo, pueden considerar esa evidencia con el único y limitado propósito de determinar si tiende a demostrar **[indique solo la circunstancia que corresponde al propósito para el cual se presentó la evidencia:**

(1) La identidad de la persona que cometió el delito.
(2) Un motivo para cometer el delito imputado.

(3) La intención necesaria para cometer el delito imputado.

(4) Que el (la) acusado(a) tenía conocimiento de la naturaleza de las cosas halladas en su posesión.

(5) Que el (la) acusado(a) tenía conocimiento o poseía los medios útiles o necesarios para cometer el delito imputado.

(6) Un método, plan o designio característico en la comisión de actos criminales que sea similar al método, plan o esquema usado al cometer el delito imputado en este caso.

(7) Que el (la) acusado(a) tuvo la oportunidad de cometer el delito imputado.

(8) Que los actos que se imputan al (a la) acusado(a) no fueron el resultado de un error o un accidente.

(9) Que la defensa de **[especifique la defensa]** planteada por el (la) acusado(a) no procede**].**

Ustedes deberán evaluar esta evidencia para el propósito limitado por el cual fue admitida; asimismo, deben evaluar cualquier otra evidencia admitida en el caso. Si determinan que la conducta distinta a la que se imputa en la acusación no ocurrió, la descartarán como evidencia.

**REFERENCIA:**

Esta Instrucción proviene esencialmente de la Instrucción 2.18 del Proyecto de Libro de Instrucciones al Jurado de 2008 y las enmiendas de 1980 a las Instrucciones al Jurado para el Tribunal Superior de Puerto Rico de 1976. Guarda relación con la Regla 404(b) (*Evidencia de carácter no es admisible para probar conducta; excepciones; evidencia sobre la comisión de otros delitos*) de Evidencia de 2009 (32 LPRA Ap. VI).

**COMENTARIO:**

La Regla 404(b) de Evidencia permite que el Ministerio Público presente evidencia de otros delitos o actos cometidos por la persona acusada cuando resulten pertinentes al caso que se ventila. Si el tribunal no excluye esa prueba al amparo de la Regla 109 de Evidencia, debe impartir una instrucción explicativa sobre el alcance y los fines de la evidencia admitida. El tribunal no tiene que hacer referencia a todos los asuntos enumerados en la instrucción, sino solo a los que sean pertinentes en el caso específico.

La lista de usos legítimos de evidencia de *uncharged conduct* en la Regla 404(b) es ilustrativa. Hay muchos casos de uso legítimo de la evidencia que no están en la regla como, por ejemplo, refutar la defensa de entrampamiento mediante evidencia sobre la predisposición de la persona acusada a cometer el delito, probar reincidencia, entre otros usos legítimos.

La Regla 404(b) regula la admisión de evidencia de conducta específica distinta a la imputada como prueba sustantiva, a modo de evidencia circunstancial de la conducta imputada; por eso se habla de *uncharged misconduct*. Esto es distinto a la evidencia de conducta mendaz para fines de impugnar el testimonio de una persona, materia que rigen las Reglas 608(b)(7), 609(b) y 611 de Evidencia de 2009 (32 LPRA Ap. VI). La regla se aplica tanto en casos civiles

como en casos criminales. Sin embargo, en el ámbito de lo penal se produce mucha jurisprudencia, pues al amparo de la Regla 404(b) es que el Ministerio Público logra que se admita evidencia de otros delitos de la persona acusada, aunque esta no haya abierto las puertas para eso al sentarse a declarar o al presentar evidencia de carácter a tenor de la Regla 404(a) de Evidencia.

Asimismo, la Regla 404(b) acumula dos reglas: una de admisión y otra de exclusión de evidencia. La primera oración es una regla de exclusión de evidencia: no es admisible la evidencia de conducta (*misconduct*) para inferir la conducta imputada en la acusación, aunque se trate de evidencia pertinente. De ahí que el Ministerio Público no pueda presentar evidencia de actos de violencia de la persona acusada para que tribunal o el Jurado, según corresponda, infiera la conducta violenta imputada en la acusación. Pero la segunda oración crea una excepción a esa regla general de exclusión: es admisible la evidencia de conducta no imputada (*uncharged misconduct*) cuando no se ofrece para que se infiera la inclinación o la propensión de la persona acusada a incurrir en ese tipo de conducta, sino para un fin legítimo distinto. La regla entonces, a modo de ejemplos (no de lista cerrada), menciona varios fines legítimos para admitir la evidencia.

El tribunal tiene discreción para excluir la evidencia, aunque satisfaga alguno de los fines legítimos, si estima que su valor probatorio para ese fin no supera el riesgo de que el Jurado la use indebidamente. La Regla 403 de Evidencia, 32 LPRA Ap. VI, permite una inferencia basada en la propensión. Usar la Regla 403 para excluir la evidencia supone que el tribunal estime que no es suficiente con una instrucción limitativa. No obstante, si aplica uno de los fines reconocidos en la regla, la norma general es que se admita la evidencia con una instrucción limitativa, al amparo de la Regla 107 de Evidencia, 32 LPRA Ap. VI. Para ejemplos de cada uno de los fines legítimos de evidencia conforme esta regla, véase E.L. Chiesa Aponte, *Reglas de Evidencia*, San Juan, Ed. Situm, 2016, págs. 97-101. En cuanto al *quantum* de la prueba para pasar la evidencia al Jurado, se aplicaría la Regla 109(b). Véanse Chiesa Aponte, *op. cit.*, págs. 101-102; *Huddleston v. United States*, 485 US 681 (1988).

Por lo general, el Ministerio Público presenta evidencia de otros delitos de la persona acusada —al amparo de esta Regla 404(b)— en su turno de refutación por la Defensa haber abierto la puerta. Veamos algunos ejemplos. (1) La persona acusada presenta evidencia para establecer la defensa de entrampamiento. En su turno de refutación, el Ministerio Público trae evidencia de otros delitos de la persona acusada para refutar esa defensa; esto es, en cuanto a que la persona acusada estaba predispuesta a cometer el delito. (2) La persona acusada presenta evidencia para sostener la defensa de error de tipo (Artículo 29 del Código Penal, 33 LPRA sec. 5042). En su turno de refutación, el Ministerio Público trae evidencia de otros delitos cometidos contra la misma víctima. Así ocurriría en caso de imputar una relación sexual con una joven de quince años, si la persona acusada presenta prueba para apoyar su creencia razonable de que tal joven había cumplido ya los dieciséis años. El Ministerio Público podría presentar prueba de una condena de la persona acusada contra la misma víctima, como la condena por actos lascivos por razón de la edad. (3) Si la persona acusada sostiene que el disparo fatal fue un accidente, el Ministerio Público podría refutar esa defensa con prueba de la condena de la persona acusada por tentativa de asesinato de contra la misma víctima. Sin embargo, en su turno inicial de prueba (*case in chief*), el Ministerio Público podría traer prueba de otros delitos cometidos por la persona acusada

para probar el motivo, la oportunidad, el plan, la identidad o el conocimiento. Véase algunos ejemplos en Chiesa Aponte, *op. cit.*, págs. 97-100.

Un caso particularmente importante es cuando se admite contra la persona acusada evidencia de mala conducta no imputada (*uncharged misconduct*) —como, por ejemplo, conducta delictiva distinta a la imputada— al amparo de la Regla 404(b) de Evidencia. Esa regla no permite esa evidencia si el propósito es que el (la) juez(a) haga una inferencia fundada en la propensión de la persona acusada a incurrir en ese tipo de conducta, invitando a inferir que también incurrió en la conducta imputada. La regla reconoce varios fines legítimos para la admisión de ese tipo de evidencia. Véase *Pueblo v. Serrano Morales*, 201 DPR 454 (2018). En ese caso, el Tribunal Supremo de Puerto Rico resolvió que, a tenor de esa Regla 404(b) de Evidencia, es admisible contra la persona acusada evidencia de una conducta delictiva distinta a la imputada, aunque haya sido absuelta por una acusación fundada en esa conducta. Se sigue lo resuelto por el Tribunal Supremo de Estados Unidos en *Dowling v. United States*, 493 US 342 (1990). Por supuesto, en este tipo de caso, si el juicio es por Jurado, hay que impartir una instrucción cuidadosa sobre el uso legítimo de la evidencia, enfatizando que no puede usarse para una inferencia fundada en la propensión de la persona acusada a incurrir en ese tipo de conducta. Se trata de la "instrucción limitativa" a la que se alude en la Regla 107 de Evidencia.

### 3.20   Evidencia de Hábito

En este caso se presentó prueba que tiende a demostrar que [la persona acusada] [el (la) testigo] tiene el hábito de **[describa la conducta habitual]**. Ustedes pueden considerar un hábito determinado de una persona para decidir si la conducta de esa persona, en una ocasión en particular, se llevó a cabo en conformidad con ese hábito. Ustedes podrían razonar que una persona con ese hábito en una ocasión particular actuó probablemente según este. **[El tribunal podría ilustrar lo anterior con el ejemplo siguiente:** El (la) esposo(a) del (de la) acusado(a) declaró que este(a) tiene el hábito de caminar hacia el trabajo todos los días. Si se creyera ese testimonio, ustedes podrían razonar que en determinada ocasión en particular el acusado (la acusada) llegó caminando ese día a su trabajo**]**.

A ustedes corresponde evaluar la credibilidad de la prueba presentada sobre el particular y determinar si es suficiente para entender que [el (la) acusado(a)] [el (la) testigo] tiene determinado hábito y si en la ocasión particular actuó según este.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con la Regla 406 (*Hábito o práctica rutinaria*) de Evidencia de 2009 (32 LPRA Ap. VI).

**COMENTARIO:**

La evidencia de hábito se rige por la Regla 406 de Evidencia y es distinta a la prueba de carácter.

## 3.21 Evidencia de Práctica Rutinaria

En este caso se presentó evidencia que tiende a demostrar que en **[describa la organización]** existe la práctica rutinaria de **[describa la conducta rutinaria]**. A ustedes corresponde determinar si existe esa práctica y si la organización actuó o no conforme a ella.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con la Regla 406 (*Hábito o práctica rutinaria*) de Evidencia de 2009 (32 LPRA Ap. VI).

## E. EVIDENCIA DE SÍNDROMES QUE AFECTAN DEFENSAS O CREDIBILIDAD

## 3.22 Evidencia del Síndrome de Niño(a) Abusado(a) Sexualmente

**[Para impartir la instrucción sobre el testimonio pericial en general, véase la Instrucción 3.30].**

El Ministerio Público presentó prueba pericial sobre el Síndrome del Niño Abusado Sexualmente. Según este síndrome, un niño o una niña que ha sido abusado o abusada sexualmente exhibe, de ordinario, unas características propias de esa situación que un perito o una perita puede reconocer. Este testimonio pericial les ayudará a evaluar el testimonio del niño o de la niña.

**[El Ministerio Público podría presentar prueba sobre todos los asuntos que se incluyen a continuación o sobre algunos de ellos. El tribunal debe referirse a los asuntos sobre los que se haya presentado prueba].**

Mediante el testimonio de una persona cualificada como perito(a), el Ministerio Público presentó prueba sobre [las características generales que exhiben las víctimas de abuso sexual] [si la alegada víctima exhibe o no estas características] [la opinión del (de la) perito(a) que testificó respecto a si el (la) menor ha sido o no víctima de abuso sexual].

**[En los casos en los que la Defensa presente la evidencia pericial en contrario, el tribunal debe impartir la instrucción del párrafo siguiente:**

El (la) acusado(a) presentó un testimonio pericial para contradecir el testimonio del (de la) perito(a) que presentó el Ministerio Público. Al resolver cualquier conflicto que pueda

existir entre ambos testimonios, ustedes deberán tener en cuenta los hechos y las razones ofrecidas para fundamentar sus opiniones periciales, así como las calificaciones (preparación o experiencia) de cada uno y la credibilidad que les merezca sus testimonios**].**

El Jurado no tiene la obligación de aceptar la opinión pericial como concluyente. Deben dar al testimonio el peso que a su juicio les merezca, como se hace con el testimonio de cualquier testigo. Ustedes pueden descartar la opinión pericial si no les convence.

Corresponde a ustedes evaluar la prueba pericial presentada sobre el Síndrome del Niño Abusado Sexualmente para que, junto con el análisis cuidadoso de toda la prueba presentada y admitida en evidencia, y en conformidad con las instrucciones que les impartí, determinen la culpabilidad o no culpabilidad de la persona acusada.

**REFERENCIA:**

Esta Instrucción proviene esencialmente de la Instrucción 2.17 del Proyecto de Libro de Instrucciones al Jurado de 2008 y de las Instrucciones al Jurado para el Tribunal Superior de Puerto Rico de 1976, pág. 38. Véase *Pueblo v. Olmeda Zayas*, 176 DPR 7, 17 (2009); *Pueblo v. Arocho Soto*, 137 DPR 762 (1994); *Pueblo v. Canino Ortiz*, 134 DPR 796 (1993).

**COMENTARIO:**

La evidencia pericial sobre el Síndrome del Niño Abusado Sexualmente ha sido reconocida como admisible en nuestra jurisdicción para suplir la dificultad que plantea probar un caso en el que la víctima, por su temprana edad, no puede ofrecer un testimonio articulado y detallado. El testimonio pericial constituye una ayuda significativa para que el tribunal o el Jurado, según corresponda, pueda determinar la culpabilidad o no culpabilidad de la persona acusada de delito.

El Tribunal Supremo ha dispuesto que los tribunales de instancia deben permitir que, mediante el testimonio de una persona perita cualificada, se presente prueba sobre:

> (1) las características generales que muestran los niños que son abusados sexualmente (opinión clásica sobre el síndrome); (2) si la presunta víctima, en el caso particular, las exhibe (opinión concreta sobre la existencia de circunstancias indicativas del síndrome), y (3) si, a su juicio, la presunta víctima ha sido abusada (opinión o conclusión diagnóstica de abuso sexual). *Pueblo v. Olmeda Zayas*, supra, pág. 17.

Solo en el testimonio correspondiente al último supuesto procedería autorizar que una persona perita de la Defensa examine a la presunta víctima si es necesario para refutar la opinión diagnóstica de abuso sexual ofrecida por la persona perita del Ministerio Público. Íd. Por otro lado, el Tribunal Supremo ha determinado que los tribunales no deben permitir que la persona perita opine sobre la veracidad de la versión de la persona menor de edad o sobre la confiabilidad de su testimonio. Véase *Pueblo v. Canino Ortiz*, supra, págs. 805-806.

**F.**     **INFERENCIAS PARTICULARES**

## 3.23   Evidencia Voluntariamente Suprimida

La ley establece que cuando una parte anuncia un(a) testigo, que luego no declara ni se pone a disposición de la otra parte, es porque su testimonio le sería desfavorable. Esto puede refutarse mediante prueba o explicación razonable.

En este caso se anunció como testigo a **[indique el nombre de la persona]** quien no declaró ni se puso a disposición de la otra parte.

Corresponde a ustedes determinar si el (la) testigo fue eliminado(a) voluntariamente o si se justificó su ausencia.

**REFERENCIA:**

Esta Instrucción proviene, en parte, de la Instrucción 2.20 del Proyecto de Libro de Instrucciones al Jurado de 2008 y de las Instrucciones al Jurado para el Tribunal Superior de Puerto Rico de 1976, pág. 31. Guarda relación con las Reglas 301 (*Presunción-Definiciones*) y 304(5) (*Presunciones específicas*) de Evidencia de 2009 (32 LPRA Ap. VI).

**COMENTARIO**:

En principio, la presunción reconocida en la Regla 304(5) de Evidencia —que toda evidencia voluntariamente suprimida resultará adversa si se ofrece— no se limita a anunciar que se presentará determinado testigo; esa es la aplicación más invocada. En principio, la presunción se aplica cuando una parte anuncia que va a presentar un documento o cierta prueba real —o se le ordena que la presente— y la parte opta por no presentarla. También podría invocarse la presunción cuando una parte rehúsa someterse a exámenes o a ciertas pruebas científicas. Véase *McCormick on Evidence*, (Hornbook Series), (K.S. Broun, ed.), 7ma ed., West Academic Publishing, 2014, Sec. 264, págs. 589-591. No obstante, fuera del caso de supresión de testimonio, la aplicación de la presunción es objeto de cierto escepticismo. En el caso de anunciar testigos y no usarlos, la aplicación de la regla no causa mayor dificultad: la parte contra la cual se aplica la presunción (en puridad, se trata de una inferencia permisible) debe poner al (a la) testigo a disposición de la parte contraria, so pena de que se active la inferencia con instrucción al Jurado.

La Regla 304(5) no distingue entre prueba de Defensa y prueba del Ministerio Público. Sin embargo, habida cuenta de que la Regla 52 de Procedimiento Criminal, 34 LPRA Ap. II, pág. 527 (ed. 2016), dispone que a la persona acusada, en el acto de lectura, "[s]e le entregará una copia de la acusación con una lista de los testigos, antes de que se le requiera que formule alegación alguna", esto hace que aplique la presunción, pues el Ministerio Público ha anunciado testigos. Por ende, si no sienta a la persona a declarar y no pone al (a la) testigo y sus declaraciones juradas a disposición de la Defensa, se activa la presunción de testimonio adverso.

## 3.24    Actos de la Persona Acusada Después del Crimen o Delito

[La huida o fuga inexplicada] [La ocultación de prueba] [El hacer manifestaciones engañosas o falsas] por parte de la persona acusada son circunstancias que, si ustedes entienden que se probaron, pueden considerarse como indicio de culpabilidad. El tribunal enfatiza que dicha prueba por sí sola no es suficiente para establecer la culpabilidad de la persona acusada más allá de duda razonable. Corresponde a ustedes determinar su alcance, así como el peso que merezca, considerando toda la evidencia presentada.

**REFERENCIA:**

Esta Instrucción proviene esencialmente de la Instrucción 2.19 del Proyecto de Libro de Instrucciones al Jurado de 2008 y de las Instrucciones al Jurado para el Tribunal Superior de Puerto Rico de 1976, pág. 30. Véase *Pueblo v. Báez Cintrón*, 102 DPR 30, 35 (1974).

**COMENTARIO:**

Se trata de instancias particulares de evidencia circunstancial que han recibido trato especial por la jurisprudencia. *Pueblo v. Ortiz Rodríguez*, 100 DPR 972 (1972); *Pueblo v. Castro*, 75 DPR 672 (1953).

## 3.25    Evidencia de Motivo

Aunque el motivo que pueda haber tenido el (la) acusado(a) para cometer el delito que se le imputa no es un elemento de este delito, la evidencia del motivo constituye un factor que, junto a otros, puede considerarse para determinar si el (la) acusado(a) es culpable del delito que se le imputa.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 2.21 del Proyecto de Libro de Instrucciones al Jurado de 2008. Véase *Pueblo v. Ortiz Rodríguez*, 100 DPR 972 (1972).

**COMENTARIO:**

En *Pueblo v. Ortiz Rodríguez*, supra, págs. 981-982, el Tribunal Supremo se expresó así sobre la importancia de la prueba de motivo de la persona acusada o sobre la falta de ella para cometer el delito que se imputa:

> No se adujo por el Pueblo ninguna motivación posible para el crimen.  Cierto es que probar la motivación no es indispensable para una condena, pero es igualmente cierto que si el Estado prueba tal motivación ello constituye un factor que junto a otros puede considerarse para probar la culpabilidad. De hecho, constituye un factor importante cuando se produce una condena a base de evidencia circunstancial, el que exista un motivo comprobado para el crimen, tal como el lucro, la venganza o la cólera producida por una riña.

## 3.26 Silencio de la Persona Acusada

En este caso, el (la) acusado(a) no testificó.

Nuestra Constitución y la Quinta Enmienda de la Constitución de Estados Unidos establecen el derecho de un(a) acusado(a) a no declarar y a que su silencio no pueda tenerse en cuenta ni comentarse en su contra.

Ustedes deben tener presente en sus deliberaciones que el (la) acusado(a) tiene el derecho a declarar o a no hacerlo, según su deseo. También deben tener presente siempre que el hecho de no haber declarado no puede considerarse como un indicio o una aceptación de culpabilidad. Recuerden en todo momento, en sus deliberaciones, que a pesar de que el (la) acusado(a) no haya declarado, el Ministerio Público tiene la obligación de probar su culpabilidad más allá de duda razonable.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 2.22 del Proyecto de Libro de Instrucciones al Jurado de 2008 y de las Instrucciones al Jurado para el Tribunal Superior de Puerto Rico de 1976, pág. 33. Guarda relación con la Regla 501 (*Privilegios de la persona acusada*) y la Regla 502 (*Autoincriminación*) de Evidencia de 2009 (32 LPRA Ap. VI); el Artículo 7 (*Autoincriminación; restricción antes de sentencia*) del Código Enjuiciamiento Criminal de 1935 (34 LPRA sec. 7); la Regla 110 (*Presunción de inocencia y duda razonable*) de Procedimiento Criminal de 1963 (34 LPRA Ap. II), y el Art. II, Sec. 11, de la Constitución del Estado Libre Asociado de Puerto Rico, LPRA, Tomo 1. Véase *Pueblo v. Santiago Lugo*, 134 DPR 623, 629-630 (1993).

## G.   TESTIMONIO EN CORTE Y DECLARACIONES ANTERIORES DE LA PERSONA ACUSADA

## 3.27 Declaraciones o Manifestaciones de la Persona Acusada Fuera del Tribunal

En el presente caso se presentó y admitió en evidencia una(s) declaración(es) [manifestación(es)] que el (la) acusado(a) hizo fuera del tribunal.

Corresponde a ustedes juzgar, examinar y pesar toda la prueba. La(s) declaración(es) [manifestación(es)] del (de la) acusado(a) fuera del tribunal es (son) parte de la prueba y ustedes pueden considerarla(s) en relación con el resto de la evidencia, y de acuerdo con su conciencia y los principios de ley.

Las declaraciones incriminatorias del (de la) acusado(a) no son suficientes para probar su culpabilidad más allá de duda razonable. Se requiere corroboración de esas declaraciones con evidencia independiente. Esa evidencia de corroboración no tiene que ser suficiente para probar la culpabilidad del (de la) acusado(a), pero debe apuntar hacia la confiabilidad de las admisiones, en cuanto a que se cometió el delito y fue la persona acusada quien lo cometió.

La regla de que un testimonio debe considerarse en su totalidad no obliga al Jurado a dar credibilidad a cada parte de la(s) declaración(es) [manifestación(es)] del (de la) acusado(a) fuera del tribunal. Ustedes pueden rechazar cualquier parte que no les merezca confianza.

Corresponde a ustedes determinar el peso que deben dar a tal(es) declaración(es) [manifestación(es)] de la persona acusada fuera del tribunal, como en el caso de cualquier otra evidencia debidamente admitida.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 2.23 del Proyecto de Libro de Instrucciones al Jurado de 2008 y de las Instrucciones al Jurado para el Tribunal Superior de Puerto Rico de 1976, pág. 34. Guarda relación con la Regla 151.1 (*Juicio; confesión del acusado*) de Procedimiento Criminal de 1963 (34 LPRA Ap. II).

**COMENTARIO:**

El requisito de corroboración de la admisión o confesión de la persona acusada no es de rango constitucional. El Tribunal Supremo de Estados Unidos ha resuelto, para la jurisdicción federal, que un fallo o veredicto de culpabilidad no puede sostenerse únicamente con las admisiones o la confesión de la persona acusada (bien antes del juicio o en el juicio). Se requiere alguna otra evidencia que tienda a corroborar la confesión. La norma trata de evitar confesiones falsas o no confiables (aunque admisibles). Véanse *Opper v. United States*, 348 US 84 (1954); *Smith v. United States*, 348 US 147 (1954). El Tribunal Supremo de Puerto Rico ha seguido esta exigencia. Véanse *Pueblo v. Hernández Mercado*, 126 DPR 427, 446 (1990); *Pueblo v. Fradera Olmo*, 122 DPR 67, 73-75 (1988).

Existe discusión en cuanto a qué consiste la corroboración. Cierta jurisprudencia solo requiere alguna prueba sobre el "cuerpo del delito" (*corpus delicti*), lo que incluye que se produjo el daño y que fue causado criminalmente. Por ejemplo, en el caso de una confesión de un asesinato, la corroboración consiste en que murió la presunta víctima y que fue producto de un acto criminal. En caso de agresión sexual, la prueba del *corpus delicti* consiste en que hubo la relación sexual y que constituyó un delito. Otros casos exigen, además, alguna prueba de que fue la persona acusada quien cometió el delito. Otros casos solo exigen alguna evidencia que tienda a establecer la confiabilidad de la confesión. Esto último parece suficiente, según las autoridades. Véase *McCormick on Evidence*, (Hornbook Series), *McCormick on Evidence*, (Hornbook Series), (K.S. Broun, ed.), 7ma ed., West Academic Publishing, 2014, Secs. 144-148, págs. 291-299.

También hay discusión sobre si compete al Jurado determinar si hubo la corroboración requerida. En la jurisdicción federal se favorece excluir al Jurado de la participación. El tribunal que recibe la evidencia sobre la corroboración de la admisión o confesión solo permite que la confesión vaya al Jurado si estima que se dio la correspondiente corroboración. Se considera peligroso que el Jurado reciba la evidencia de la confesión con la instrucción de descartarla si el tribunal estima que no hubo suficiente corroboración. Si el tribunal admite la confesión, se presenta al Jurado junto con la evidencia que tienda a corroborarla o a hacerla confiable. Véase *McCormick on Evidence, op. cit.*,

Sec. 145, págs. 294-295. Sin embargo, la jurisprudencia del Tribunal Supremo de Puerto Rico ha optado por lo que se conoce como "corroboración de *corpus delicti*". Véanse *Pueblo v. Hernández Mercado*, supra, pág. 445; *Pueblo v. Fradera Olmo*, supra, págs. 73-74. En *Fradera Olmo*, el Tribunal Supremo se refiere a corroboración en el sentido de prueba sobre el *corpus delicti* y prueba que tienda a establecer la veracidad de las admisiones, como si fuera la misma cosa. *Hernández Mercado* remite a *Fradera Olmo*, sin elaborar.

Cuando la persona acusada presente prueba relativa al peso o a la credibilidad de las declaraciones o manifestaciones fuera del tribunal y a las circunstancias en las cuales estas se obtuvieron, deberá impartirse la Instrucción 3.28 sobre prueba de circunstancias relativas al peso y a la credibilidad de declaraciones o manifestaciones de la persona acusada fuera del tribunal.

### 3.28 Prueba de Circunstancias Relativas al Peso y a la Credibilidad de Declaraciones y Manifestaciones de la Persona Acusada Fuera del Tribunal

En este caso se presentó prueba sobre las circunstancias en que la persona acusada hizo la(s) declaración(es) [manifestación(es)] fuera del tribunal. Esta prueba se presentó para que ustedes determinen el valor y la credibilidad que deban merecerle(s) tal(es) declaración(es) [manifestación(es)] y las circunstancias en las cuales fue (fueron) obtenida(s).

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 2.24 del Proyecto de Libro de Instrucciones al Jurado de 2008 y de las Instrucciones al Jurado para el Tribunal Superior de Puerto Rico de 1976, pág. 36. Guarda relación con la Regla 151.1 (*Juicio; confesión del acusado*) de Procedimiento Criminal de 1963 (34 LPRA Ap. II) y la Regla 109(C) y (E) (*Determinaciones preliminares a la admisibilidad de evidencia*; *Determinaciones en ausencia del* [*J*]*urado cuando medie confesión de la persona acusada*; *Valor probatorio y credibilidad*) de Evidencia de 2009 (32 LPRA Ap. VI).

### 3.29 Declaración o Testimonio de la Persona Acusada en el Juicio

En este caso el (la) acusado(a) declaró como testigo en su propia defensa. Su testimonio es parte de la prueba y el Jurado debe tomarlo en consideración como el de cualquier testigo.

Ustedes deberán considerar el testimonio de la persona acusada junto con el resto de la prueba admitida, según se les ha instruido.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 2.25 del Proyecto de Libro de Instrucciones al Jurado de 2008 y de las Instrucciones al Jurado para el Tribunal Superior de Puerto Rico de 1976, pág. 37.

**H.     TESTIMONIO Y PRUEBA PERICIAL**

## 3.30   Testimonio Pericial

Una persona está cualificada para testificar como perito o perita si tiene conocimientos especiales, destrezas, experiencia, entrenamiento o instrucción suficiente para cualificar como persona experta en la materia a la que se refiere su testimonio.

Las personas debidamente cualificadas como peritos o peritas pueden opinar en un juicio sobre las cuestiones en controversia con el propósito de ayudarles a decidir. Ustedes pueden considerar la opinión dada por el perito o la perita juntamente con las razones ofrecidas, si algunas, para sostenerlas.

Al evaluar el testimonio pericial, ustedes deberán considerar sus credenciales (preparación o experiencia) y la credibilidad que les merezca. Deberán tener en cuenta las razones ofrecidas por la persona perita para fundamentar su opinión, si su testimonio está basado en hechos o información suficiente, si es el resultado de principios y métodos confiables, si aplicó adecuadamente esos principios o métodos confiables a los hechos del caso, si el principio en que se basó se ha aceptado generalmente en la comunidad científica y si su testimonio podría estar afectado por parcialidad o alguna motivación para favorecer a cualquiera de las partes.

No tienen la obligación de aceptar ninguna opinión pericial. Sin embargo, deben dar al testimonio el peso que, a su juicio, les merezca, como se hace con el de cualquier testigo. Ustedes pueden descartar cualquier opinión pericial si no les convence.

**[En caso de que se presente el testimonio de más de una persona perita, el tribunal deberá añadir lo siguiente:**

Al resolver cualquier conflicto que pueda existir entre opiniones periciales, ustedes deberán compararlas a base de los principios antes mencionados].

**REFERENCIA:**

Esta Instrucción proviene esencialmente de la Instrucción 2.26 del Proyecto de Libro de Instrucciones al Jurado de 2008 y de las Instrucciones al Jurado para el Tribunal Superior de Puerto Rico de 1976, pág. 38. Guarda relación con la Regla 702 (*Testimonio pericial*) de Evidencia de 2009 (32 LPRA Ap. VI).

### 3.31    Experimento Pericial en Corte Abierta

En relación con la demostración que se propone hacer el perito (la perita), se les instruye que ustedes no deberán presumir como un hecho que eso fue lo que en efecto ocurrió. La demostración servirá única y exclusivamente para ilustrar la declaración que ha ofrecido el testigo.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 2.27 del Proyecto de Libro de Instrucciones al Jurado de 2008 y de las Instrucciones al Jurado para el Tribunal Superior de Puerto Rico de 1976, pág. 38. Guarda relación con la Regla 708(b) (*Experimentos*) de Evidencia de 2009 (32 LPRA Ap. VI). Véase *Pueblo v. Lebrón López*, 96 DPR 274 (1968).

**COMENTARIO:**

Se aconseja que la instrucción se imparta antes de realizar el experimento. Si no se hizo así, deberá cubrirse este aspecto en el turno usual de instrucciones con las modificaciones de rigor.


### 3.32    Fundamentos del Testimonio Pericial

Se admitió como evidencia la siguiente opinión del (de la) perito(a) **[indique el nombre]**.

**[Inserte la opinión pericial]**.

El (la) perito(a) emitió esa opinión basándose en lo siguiente: **[inserte los hechos o datos en los que la persona perita basó su opinión]**. Ustedes solo podrán usar esa información [hechos o datos] para evaluar el valor probatorio de la opinión de la persona perita o su credibilidad, pero no podrán presumir que esa información [hechos o datos] es cierta o que los hechos ocurrieron.

**REFERENCIA**:

Esta Instrucción es nueva. Guarda relación con la Regla 704 (*Fundamentos del testimonio pericial*) de Evidencia de 2009 (32 LPRA Ap. VI). (2010). Véase *Williams v. Illinois*, 567 US 50 (2012).

**COMENTARIO:**

La Regla 704 de Evidencia de Puerto Rico –Regla 703 de Evidencia federal– regula las bases permitidas para una opinión pericial. El primer párrafo de la regla admite tres posibles bases o fundamentos para la opinión o inferencia que propone la persona perita:

(1) Hechos o datos percibidos por la persona perita o dentro de su conocimiento personal.

(2) Hechos o datos informados a la persona perita durante el juicio o vista.
(3) Hechos o datos informados u obtenidos por la persona perita antes del juicio.

El segundo fundamento es posible porque la persona perita podría estar presente durante la presentación de la prueba sin que tenga que ser excluida de sala mientras no testifica; así lo permite la Regla 607(g)(2) de Evidencia de Puerto Rico.

Puede ocurrir que los hechos o datos en los que la persona perita basa su opinión o inferencia no se hayan admitido como evidencia en el juicio y puede que hasta resulten inadmisibles por la aplicación de una regla de exclusión. En lo pertinente, la Regla 704 de Evidencia de Puerto Rico provee:

> Si se trata de materia de naturaleza tal que las personas expertas en ese campo razonablemente descansan en ella para formar opiniones o hacer inferencias sobre el asunto en cuestión, los hechos o datos no tienen que ser admisibles en evidencia.
>
> La persona proponente de una opinión o inferencia fundamentada en hechos o datos que no sean admisibles de otra manera, no revelará al Jurado esos hechos o datos, a menos que el tribunal determine que su valor probatorio para asistir al jurado en la evaluación del testimonio pericial es sustancialmente mayor que su efecto perjudicial.

Lo que se quiere es que la persona perita pueda hacer en corte lo que hace regularmente en el ejercicio de su profesión. Por ejemplo, un médico puede emitir una opinión sobre un diagnóstico o tratamiento médico a base de la información en los récords del hospital, independientemente de que esa información sea admisible como evidencia en un juicio. Lo mismo hace un(a) tasador(a) al emitir una opinión sobre el valor de una propiedad a base de las ventas comparables que surgen del Registro de la Propiedad, independientemente de que la información que surge del registro sea admisible como evidencia en un juicio. Un(a) pediatra emite una opinión sobre el diagnóstico o tratamiento a un(a) bebé a base de la información que recibe por teléfono de parte del padre o de la madre, aunque las declaraciones del padre o de la madre del bebé sean prueba de referencia inadmisible en el juicio si no testifica. Lo mismo ocurre cuando una persona perita determina que una mujer padece del Síndrome de la Mujer Maltratada solo a base de lo que le ha contado esa mujer u otras personas, aunque esa información sea prueba de referencia inadmisible.

Cuando en un juicio por Jurado la persona perita va a emitir una opinión o a sugerir una inferencia basada en información que no sea admisible en evidencia, pero que sea de tal naturaleza que las personas peritas en esa materia descansan razonablemente en ella en el ejercicio de su profesión, el tribunal tiene tres alternativas, conforme nuestra Regla 704 de Evidencia:

1. Excluir la opinión pericial, como lo permite la Regla 403 y la propia Regla 704 de Evidencia, 32 LPRA Ap. VI. El tribunal puede estimar que es necesario que el Jurado conozca la base de esta opinión, pero que no hay forma de que comprendan una instrucción limitativa (esto es, que pueden usar la información solo para evaluar el valor probatorio de la opinión de la persona perita, pero no dar como cierta esa información).
2. Admitir la opinión sin revelarle al Jurado la información que el (la) perito(a) usó como base. Eso lo permite expresamente la Regla 704 y parece ser la opción preferible.

3. Admitir la opinión y revelarle al Jurado la información que usó la persona perita, esto, si el tribunal determina que su valor probatorio para asistir al Jurado en la evaluación del testimonio pericial es sustancialmente mayor que su efecto perjudicial. Así se dispone expresamente en la Regla 704. Se trata de una estimación del tribunal de que, aunque sea difícil para el Jurado asimilar una instrucción limitativa, es preferible esa opción a admitir la opinión pericial sin revelar su base al Jurado o, sencillamente, a excluir la opinión.

Esta Instrucción se requiere cuando el tribunal opta por la tercera alternativa. El ejemplo siguiente ilustra el tercer supuesto: Una perita química emite su opinión pericial a base de un informe preparado por otro químico, informe que resulta ser prueba de referencia inadmisible por la ausencia del perito autor del informe. "Se ha admitido como evidencia la opinión de la perita X de que la sustancia que presuntamente le fue ocupada a la persona acusada era cocaína; esta opinión estaba fundada en el informe preparado por el perito Y. Les instruyo a que ustedes solo pueden usar ese informe para evaluar el valor probatorio de la opinión emitida por la perita X, pero no pueden presumir como cierta la información contenida en ese informe".

Lo anterior se aprecia en *Williams v. Illinois*, supra. Una persona perita del Estado emitió una opinión sobre ADN (*match*) basada parcialmente en un informe realizado por un perito de laboratorio privado, quien no testificó. No obstante, el caso no fue por Jurado.

## 3.33   Personas Peritas del Tribunal

**[Si el tribunal, en el ejercicio de su discreción, divulga al Jurado que es un perito o una perita del Tribunal, previa oportunidad de las partes a expresarse, se debe ofrecer esta Instrucción].**

En este caso declaró como testigo el (la) perito(a) **[indique el nombre]**. El tribunal nombró este(a) perito(a). El hecho de que el tribunal haya designado el (la) perito(a) no significa que tienen que aceptar su opinión si no les convence. Ustedes deben darle el peso que les merezca su opinión al igual que la declaración de cualquier testigo.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con la Regla 709(c) (*Nombramiento de persona perita por el tribunal*; *Divulgación de nombramiento*) de Evidencia de 2009 (32 LPRA Ap. VI).

**COMENTARIO:**

La Regla 709(c) de Evidencia dispone que es el tribunal el que tiene la discreción de revelar al Jurado que determinada persona es el (la) perito(a) del Tribunal.

**I.** **EVIDENCIA DEMOSTRATIVA**

## 3.34 Evidencia Ilustrativa

El tribunal admitió como evidencia **[describa la evidencia ilustrativa**; por ejemplo: croquis, modelos, maquetas, fotografías**]**. Sobre esta prueba se les instruye que fue admitida con el solo propósito de clarificar, ilustrar o hacer más comprensible(s) la(s) declaración(es) de **[indique el nombre del (de la) testigo]**, o la evidencia [documental] [pericial] [cualquier otra que aplique] presentada previamente por [el (la) acusado(a)] [el Ministerio Público]. Deben considerar esta prueba juntamente con el resto de la prueba admitida. Corresponde a ustedes darle el valor probatorio y la credibilidad que les merezca.

**[En el caso de la evidencia ilustrativa con potencial inflamatorio —como podrían ser fotografías de una persona muerta, entre otras pruebas— el tribunal debe dar la instrucción siguiente:**

El tribunal admitió como evidencia **[describa la evidencia ilustrativa con potencial inflamatorio]**. Se les instruye que se admitió esta prueba con el solo propósito de clarificar, ilustrar o hacer más comprensible(s) la(s) declaración(es) del (de la) testigo **[indique el nombre del (de la) testigo]** o la evidencia [documental] [pericial] [**cualquier otra que aplique**] presentada previamente por [el (la) acusado(a)] [el Ministerio Público]. No deben dejarse impresionar indebidamente por esta. Esta prueba deben considerarla juntamente con el resto de la evidencia admitida. Corresponde a ustedes darle el valor probatorio y la credibilidad que les merezca**]**.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con Regla 1101 (*Objetos perceptibles a los sentidos*) de Evidencia de 2009 (32 LPRA Ap. VI). Véase *Pueblo v. Nazario Hernández*, 138 DPR 760, 774 (1995).

**COMENTARIO:**

Para evitar confusión en el Jurado, el tribunal debe instruir sobre el alcance de la evidencia ilustrativa que se presente en el caso.

En el tratado *Práctica procesal puertorriqueña*, el Prof. Ernesto L. Chiesa Aponte expone lo siguiente sobre la evidencia ilustrativa:

> En el caso de la evidencia ilustrativa, cuyo fin es ilustrar o clarificar un testimonio, como por ejemplo un croquis, un *chart*, una fotografía, lo único que el proponente debe establecer es que tal evidencia es de ayuda al juzgador para entender otra evidencia, particularmente el testimonio de un testigo. En estos casos el origen de la evidencia ilustrativa tiene poca o ninguna importancia. Lo mismo da que un testigo vaya a la pizarra y el mismo haga un dibujo que ilustre su testimonio o utilice un modelo, croquis, etc. preparado por él u otra persona. Lo único importante es que el tribunal entienda que la evidencia ilustrativa hace más comprensible la otra evidencia. E.L. Chiesa, *Práctica procesal puertorriqueña: evidencia*, San Juan, Pubs. JTS, 1987, Vol. I, pág. 514.

La evidencia ilustrativa tiene el propósito de "enseñar, instruir, representar o hacer más comprensible un testimonio u otra evidencia". *Pueblo v. Nazario Hernández*, supra, pág. 774. En conformidad con la Regla 1101 de Evidencia, la evidencia demostrativa ilustrativa es admisible siempre que (1) sea pertinente a tenor de la Regla 401 de Evidencia; (2) sea identificada o autenticada previamente, autenticada; y (3) no sea necesario excluirla por fundamentos de la Regla 403 de Evidencia. "Esto es, una vez superados los problemas de pertinencia y autenticación, el tribunal deberá sopesar el valor probatorio de la evidencia demostrativa *vis-à-vis* el perjuicio, la confusión o la desorientación que podría acarrear su admisión.". *Pueblo v. Echevarría Rodríguez I*, 128 DPR 299, 351 (1991).

### J.     PERTINENCIA CONDICIONADA

### 3.35   Pertinencia Condicionada

En este caso, el tribunal ha admitido preliminarmente **[indique la evidencia]**, condicionado a que ustedes den por probado(s) **[indique el (los) hecho(s)]**. Si ustedes concluyen que no se probó **[indique el (los) hecho(s)]**, entonces deben descartar **[indique la evidencia]** y no podrán considerarla en modo alguno.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 2.29 del Proyecto de Libro de Instrucciones al Jurado de 2008 y de las enmiendas de 1980 a las Instrucciones al Jurado para el Tribunal Superior de Puerto Rico de 1976. Guarda relación con la Regla 109(b) (*Determinaciones preliminares a la admisibilidad de evidencia*; *pertinencia condicionada a los hechos*) de Evidencia de 2009 (32 LPRA Ap. VI).

**COMENTARIO:**

Esta Instrucción atiende lo dispuesto en la Regla 109(b) de Evidencia. Distinto al caso bajo la Regla 109(a), el hecho del que depende la admisión de la evidencia es central a la controversia y el Jurado debe resolverla finalmente. El tribunal solo hace una determinación inicial de que existe suficiente evidencia para que cualquier jurado razonable infiera que ese hecho ocurrió. El caso paradigmático es el de "pertinencia condicionada", como ocurre con la autenticación de evidencia: el arma que usó la persona acusada, la sustancia ocupada y analizada por la persona perita, la máscara usada por la persona acusada al asaltar el banco, entre otras.

El requisito de "conocimiento personal" que dispone la Regla 602 de Evidencia, 32 LPRA Ap. VI, se rige también por la Regla 109(b). Lo mismo ocurre con cierto tipo de hecho según la Regla 1008 de Evidencia, 32 LPRA Ap. VI. También corresponde al Jurado la determinación final de la evidencia de mala conducta no imputada (*uncharged misconduct evidence)*. Véanse Regla 404(b) de Evidencia, *supra*; *McCormick on Evidence*, (Hornbook

Series), (K.S. Broun, ed.), 7ma ed., West Academic Publishing, 2014, Sec. 53, pág. 131; *Huddleston v. United States*, 485 US 681 (1985).

La Regla 109(b) de Evidencia se ha interpretado en el sentido de que el Jurado debe participar en la determinación final de la admisibilidad de una evidencia, cuando ello depende de que se satisfaga una mera cuestión de hecho. Esa cuestión de hecho es esencial para establecer la pertinencia de la evidencia, condición *sine qua non* para su admisibilidad. Por eso se habla de *pertinencia condicionada*. Por ejemplo, si la admisibilidad de una carta depende del hecho de si Jaime la escribió—si no la escribió Jaime, la carta es impertinente y, luego, inadmisible— el Jurado, como juzgador de los hechos, debe determinar finalmente si Jaime escribió o no la carta. En conformidad con la Regla 109(B), el tribunal, en presencia de evidencia *prima facie* a favor de que Jaime escribió la carta, la admite sujeto a que el Jurado finalmente decida si Jaime escribió o no la carta. Si el Jurado decide que Jaime no escribió la carta, no debe considerarla. Si decide que, efectivamente, Jaime escribió la carta, entonces debe considerarla con el resto de la evidencia.

El tribunal no solo ha de incluir la evidencia principal cuya pertinencia está condicionada por la cuestión de hecho, sino toda otra evidencia subordinada cuya pertinencia dependa, a su vez, de la pertinencia de la evidencia principal. En el ejemplo de la carta, si el Jurado estima que Jaime no escribió la carta, entonces no deberá considerar en modo alguno dicha carta como prueba, como tampoco otra evidencia cuya pertinencia dependa de la pertinencia de la carta. La instrucción debe impartirse en esos términos.

Valga aclarar que el tribunal debe, de ordinario, escuchar el testimonio o la evidencia base para determinar si existe evidencia *prima facie* a favor de que la condición debe satisfacerse. Si la persona proponente no puede ofrecer ante el tribunal alguna evidencia para sostener la condición, el tribunal debe excluir la evidencia y terminar así el asunto. Solo cuando la persona proponente produce esa evidencia preliminar, el tribunal ha de pasar el asunto a la consideración del Jurado.

### K.    Cadena de Custodia

### 3.36   Cadena de Custodia

En este caso se presentó en evidencia demostrativa **[detalle la evidencia]** que estuvo sujeta a una cadena de custodia. La cadena está compuesta por los eslabones o eventos consecutivos en la custodia de la evidencia desde que se ocupa hasta que se presenta en el pleito. Cada eslabón o evento debe incluir el momento de custodia, de quién se recibió la evidencia y a quién se le pasó, así como las medidas tomadas para asegurar la evidencia y evitar su alteración. La cadena de custodia tiene el propósito de evitar que se cometa un error en la identificación de algún objeto y demostrar que la evidencia presentada no cambió sustancialmente desde que se ocupó.

Corresponde a ustedes, miembros del Jurado, determinar si el proponente de la evidencia probó o no una cadena de custodia adecuada y el peso o valor que darán a la evidencia.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con: la Regla 901(11) (*Requisito de autenticación o identificación*) de Evidencia de 2009 (32 LPRA Ap. VI). (2010). Véanse *Pueblo v. Carrasquillo Morales*, 123 DPR 690 (1989); *Pueblo v. Bianchi Álvarez*, 117 DPR 484 (1986). Adopta principios de la Instrucción 4.12 del *Model Criminal Jury Instructions* para el Tercer Circuito.

**COMENTARIO:**

La instrucción es pertinente a supuestos en que el tribunal admite la evidencia, por lo que corresponde al Jurado determinar su peso o valor probatorio. No es imprescindible establecer la cadena de custodia ante objetos que son fácilmente identificables, como por ejemplo un arma u otro objeto con número de serie. Es diferente el caso de evidencia de naturaleza fungible, como líquidos, polvos o píldoras, que resultan imposibles de marcar o identificar. También es diferente ante evidencia que, aunque no sea fungible, no posee características distintivas, al igual que objetos cuya condición es lo relevante (películas, grabaciones) y son fácilmente susceptibles de alteración. Véase *Pueblo v. Carrasquillo Morales*, supra, págs. 699-700. Véanse, además, E.L. Chiesa Aponte, *Reglas de Evidencia comentadas*, San Juan, Ed. Situm, 2016, págs. 353-355; E.L. Chiesa Aponte, *La cadena de custodia bajo nuestro derecho probatorio*, 59 (Núm. 2) Rev. Jur. UPR 453 (1990).

**L.     CONOCIMIENTO JUDICIAL Y ESTIPULACIONES**

### 3.37   Conocimiento Judicial

La ley permite que el tribunal acepte como ciertos unos hechos sin necesidad de que se presente prueba por ser esta de conocimiento general o de fácil corroboración. Esto se conoce como "conocimiento judicial". En este caso, el tribunal ha tomado conocimiento judicial de **[describa el hecho del cual el tribunal tomó conocimiento judicial]**. Ustedes podrán tomar como cierto ese hecho, aunque no se hubiera presentado prueba para sostenerlo. Sin embargo, no tienen la obligación de tomarlo como cierto.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 2.30 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con la Regla 201 (*Conocimiento judicial de hechos adjudicativos*) de Evidencia de 2009 (32 LPRA Ap. VI). Véase *Lluberas v. Mario Mercado e hijos*, 75 DPR 7, 19-21 (1953).

**COMENTARIO:**

La Regla 201(f) de Evidencia dispone expresamente que, en casos por Jurado, el tribunal instruirá a sus miembros de que pueden, pero no tienen la obligación de, aceptar como probado cualquier hecho del cual se haya tomado conocimiento judicial.

## 3.38   Estipulaciones

El Ministerio Público y la Defensa pueden estipular hechos, testimonios, documentos u objetos. *Estipular* quiere decir que ambas partes están de acuerdo con que un hecho, testimonio o documento se admita como evidencia.

En este caso, el Ministerio Público y la Defensa estipularon lo siguiente: **[enumere los hechos, testimonios, documentos u objetos que se estipularon].**

Por lo tanto, ustedes deben considerar ese [hecho] [documento] [objeto] junto con el resto de la evidencia.

**REFERENCIA:**

Esta Instrucción proviene de las Instrucciones 1.13 y 22.3 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con la Regla 95.1 (*Conferencia con antelación al juicio*) y la Regla 137 (*Juicio; instrucciones*) de Procedimiento Criminal de 1963 (34 LPRA Ap. II).

**COMENTARIO:**

Solo procede la instrucción en aquellos casos donde media una estipulación, en cuyo caso debe definirse primero el concepto para, acto seguido, informar al Jurado sobre la naturaleza de la estipulación.

Es pertinente recordar las distinciones entre las funciones que cumple una estipulación, según expresó el Tribunal Supremo en *Rivera Menéndez v. Action Service*, 185 DPR 431 (2012).

## M.   PRESUNCIONES

## 3.39   Presunciones (presunción particular aplicable)

**[El tribunal debe ofrecer esta Instrucción cuando la Defensa o el Ministerio Público expresamente invoquen la aplicabilidad de alguna presunción específica].**

La ley dispone **[indique la presunción específica que aplica al caso]**.

**A. Si la presunción perjudica al (a la) acusado(a), el tribunal debe impartir esta Instrucción:**

En este caso, se presentó prueba que pretende establecer **[indique el hecho básico]**. Si ustedes estiman que se probó ese hecho, la ley les autoriza, pero no les obliga, a inferir que **[indique el hecho presumido]**. Al determinar si han de hacer tal inferencia, deben tener en cuenta que basta con que el (la) acusado(a) produzca duda razonable sobre **[indique el hecho presumido]** para que ustedes no lo infieran. También deben tener en cuenta que el (la) acusado(a) para evitar que se infiera que **[indique el hecho presumido]**, no está obligado a producir evidencia para refutar o rebatirlo. Así pues, si tienen duda razonable sobre **[indique el hecho presumido]**, no deben inferirlo; es decir, no lo tendrán como establecido o probado, independientemente de si el (la) acusado(a) presentó o no prueba para refutarlo.

**B. Cuando se haya intentado establecer una presunción que beneficia al (a la) acusado(a), debe impartirse una de las dos instrucciones siguientes — dependiendo de si el Ministerio Público presentó o no prueba para rebatir el hecho presumido—:**

**[Si el Ministerio Público no presentó evidencia para rebatir o refutar el hecho presumido:**

En este caso, el (la) acusado(a) presentó prueba que pretende establecer **[indique el hecho básico]**. El Ministerio Público no ha presentado prueba para rebatir o refutar **[indique el hecho presumido]**. En esta situación, si ustedes estiman probado que **[indique el hecho básico],** tienen la obligación de inferir el **[indique el hecho presumido]]**.

**[Si el Ministerio Público presentó evidencia para rebatir o refutar el hecho presumido:**

En este caso, el (la) acusado(a) presentó prueba que pretende establecer que **[indique el hecho básico]**. El Ministerio Público ha presentado prueba para rebatir o refutar **[indique el hecho presumido]**. Si ustedes estiman se probó que **[indique el hecho básico]**, entonces, para decidir si han de inferir o no que **[indique el hecho presumido]**, deben determinarlo a base de qué es lo más probable que haya ocurrido. Si ustedes consideran que lo más probable es que **[indique el hecho presumido]** no ocurrió, entonces no inferirán tal hecho. De lo contrario, deben inferirlo, pues le corresponde al Ministerio Público persuadirles de que **[indique el hecho presumido]** no ocurrió**].**

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 2.31 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con la Regla 303 (*Efecto de las presunciones en casos criminales*) y la Regla 304 (*Presunciones específicas*) de Evidencia de 2009 (32 LPRA Ap. VI).

**COMENTARIO:**

Las Reglas de Evidencia establecen que una "presunción" es una deducción de un hecho que la ley autoriza a hacer o que requiere que se haga de otro hecho o grupo de hechos previamente establecidos. A ese hecho o grupo de hechos previamente establecidos se les denomina "hecho básico"; al hecho que se deduce mediante la presunción se le denomina "hecho presumido".

En otras palabras, en algunos casos la ley permite —o puede requerir— que si se dan por probados determinados hechos, a los cuales la ley llama "hechos básicos", se deduzca o se infiera de dichos hechos una conclusión, que es a lo que la ley se refiere como el "hecho presumido".

Con miras a proteger la validez constitucional de una presunción que el Ministerio Público utiliza contra una persona acusada, se regula expresamente el efecto de una presunción en un caso penal (Regla 303 de Evidencia). La Regla 303(b)(2) explícitamente se refiere a la instrucción que debe impartirse al Jurado. Así pues, la instrucción es requerida y absolutamente necesaria.

A mayor efecto de la presunción en contra de la persona acusada, mayor dificultad constitucional. La instrucción persigue proteger los derechos constitucionales de quien opta por que su caso sea visto ante Jurado, sobre todo la presunción de su inocencia y su derecho a no declarar. Se reduce el efecto de la presunción a una inferencia permisible. Sobre el efecto de una inferencia permisible, véase *Pueblo v. Batista Maldonado*, 100 DPR 936 (1972). En un caso ante Jurado, aunque la persona acusada no presente evidencia alguna para refutar el hecho presumido, no puede instruirse al Jurado en términos de que exista una obligación de deban inferir el hecho presumido.

En *Pueblo v. Sánchez Molina*, 134 DPR 577 (1993), el Tribunal Supremo discute ampliamente la naturaleza de las distintas presunciones y su validez constitucional en los procedimientos penales. A estos efectos, concluye que "nuestra Constitución prohíbe que las presunciones aplicables en los procedimientos criminales eximan al Estado de cumplir con su deber de probarle al juzgador de los hechos que el acusado es culpable más allá de toda duda razonable. También prohíbe que se le imponga al acusado el deber de presentar prueba para probarle al juzgador que es inocente". Íd., pág. 590.

No es necesario instruir sobre las definiciones. Solo es necesario instruir sobre el efecto de la presunción que aplica al caso si la parte beneficiada por la instrucción quiere valerse de la presunción y solicita la instrucción.

Hay cuatro posibles situaciones:

1. La presunción beneficia a la persona acusada y el Ministerio Público no presentó evidencia para refutar el hecho presumido.

2. La presunción beneficia la persona acusada y el Ministerio Público presentó evidencia para refutar el hecho presumido.

3. La presunción beneficia al Ministerio Público y la Defensa no presentó evidencia para refutar el hecho presumido.

4. La presunción beneficia al Ministerio Público y la Defensa presentó evidencia para refutar el hecho presumido.

Conviene utilizar como ejemplo la presunción establecida en la Regla 304 (23) de Evidencia, de que se presume que una carta dirigida y cursada por correo debidamente se recibió oportunamente.

El esquema de la instrucción sería el siguiente:

1. La Defensa presentó prueba de que envió una carta por correo a la dirección correcta y con los sellos debidos. Si se cree que eso ocurrió, tienen que inferir que la carta se recibió.

2. La Defensa ha presentado prueba de que envió una carta por correo a la dirección correcta y con los sellos debidos. El Ministerio Público presentó evidencia de que el destinatario no recibió la carta. Corresponde a ustedes decidir si la carta fue recibida o no a base de qué es lo más probable. Deben inferir que la carta se recibió, a menos que estimen que lo más probable es que no haya sido así.

3. El Ministerio Público presentó prueba de que se envió una carta por correo, a la dirección correcta y con los sellos debidos. La Defensa no presentó evidencia de que la carta no se recibió. Les instruyo que pueden inferir que la carta fue recibida, pero no están obligados a hacer tal inferencia.

4. El Ministerio Público presentó evidencia de que se envió una carta por correo a la dirección correcta y con los sellos debidos. La Defensa presentó evidencia de que la carta no se recibió. Corresponde a ustedes evaluar la prueba y resolver si la carta fue recibida o no. Ante la duda razonable de que la carta se recibió, deben concluir que no fue recibida.

### 3.40   Presunción de Inocencia; Derecho a la No Autoincriminación; Peso de la Prueba; Duda Razonable

En nuestro sistema de justicia, es un principio fundamental que el (la) acusado(a) se presume inocente hasta tanto el Ministerio Público pruebe su culpabilidad más allá de duda razonable. La presunción de inocencia acompaña al (a la) acusado(a) desde el inicio del proceso, durante el juicio y continúa durante la deliberación, hasta que se rinda el veredicto.

**[El tribunal debe impartir esta Instrucción, cuando aplique:**

El (la) acusado(a) no está obligado(a) a testificar ni a presentar prueba para demostrar su inocencia, por lo que, si no declaró o no presentó prueba, ustedes no harán inferencia alguna ni lo tomarán en consideración**].**

El peso de la prueba corresponde al Ministerio Público, es decir, que es este quien tiene que establecer todos los elementos del delito por el cual se acusa y su conexión con el (la) acusado(a) más allá de duda razonable.

"Duda razonable" es una duda fundada, producto del análisis cuidadoso de todos los elementos de juicio incluidos en el caso. No es cualquier duda ni meramente una duda posible, especulativa o imaginaria. La duda que justifica un veredicto de no culpable no solo debe estar basada en el uso de la razón, sino que debe surgir de una consideración serena, justa e imparcial de toda la evidencia del caso.

Si después de un cuidadoso análisis, examen y comparación de toda la evidencia, el ánimo de ustedes queda en tal situación que no pueden decidir sobre la culpabilidad o no culpabilidad del (de la) acusado(a), significa que existe duda razonable.

Esto no quiere decir que el Ministerio Público tiene que establecer la culpabilidad del (de la) acusado(a) con certeza matemática, sino que la evidencia debe producir la seguridad, el convencimiento o la firmeza que dirige la inteligencia y satisface la razón.

En resumen, si se han convencido de la culpabilidad del (de la) acusado(a) más allá de duda razonable, deben rendir un veredicto de culpable. Por el contrario, si existe duda razonable respecto a la culpabilidad del (de la) acusado(a), deben rendir un veredicto de no culpable.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 1.9, 2.32 y 22.2 del Proyecto de Libro de Instrucciones al Jurado de 2008 y de las Instrucciones al Jurado para el Tribunal Superior de Puerto Rico de 1976, pág. 42. Guarda relación con la Regla 304(1) (*Presunciones específicas*), la Regla 501 (*Privilegios de la persona acusada*) y la Regla 502 (*Autoincriminación*) de Evidencia de 2009 (32 LPRA Ap. VI); la Regla 110 (*Presunción de inocencia y duda razonable*) de Procedimiento Criminal de 1963 (34 LPRA Ap. II); y el Art. II, Sec. 11, de la Constitución del Estado Libre Asociado de Puerto Rico, LPRA, Tomo 1. Véanse *Pueblo v. Agostini Rodríguez*, 151 DPR 426 (2000); *Pueblo v. Meléndez Rodríguez*, 136 DPR 587 (1994); *Pueblo v. Rivera Rodríguez,* 130 DPR 897 (1992); *Pueblo v. Bigio Pastrana*, 116 DPR 748, 761 (1985), citando las *Instrucciones al Jurado* y citado con aprobación en *Pueblo v. Irizarry*, 156 DPR 780 (2002); *Pueblo v. Gagot Mangual*, 96 DPR 625, 627 (1968).

**COMENTARIO:**

Según ha expresado el Tribunal Supremo, "duda razonable" no significa que toda duda posible tenga que ser destruida y que la culpabilidad de la persona acusada tenga que establecerse con certeza matemática, sino que la prueba establezca 'aquella certeza moral que convence, dirige la inteligencia y satisface la razón'. *Pueblo v. Bigio Pastrana¸* supra, pág. 761. Se trata de una duda fundada, producto del raciocinio de todos los elementos de juicio involucrados en el caso. " 'No debe pues ser una duda especulativa o imaginaria' ". *Pueblo v. Gagot Mangual*, supra, pág. 627. Véanse también *Pueblo v. Irizarry*, supra; *Pueblo v. Bigio Pastrana¸* supra.

De igual modo, el Tribunal Supremo ha definido la "duda razonable" como "aquella insatisfacción o intranquilidad en la conciencia del juzgador de los hechos sobre la culpabilidad del acusado luego de desfilada la totalidad de la prueba [...]".

*Pueblo v. Maisonave Rodríguez,* 129 DPR 49, 65 (1991). Véase *Pueblo v. Robles González*, 125 DPR 750 (1990). Véase, además, E. Stoffelmayr y S.S. Diamond, *The Conflict Between Precision and Flexibility in Explaining "Beyond a Reasonable Doubt"*, 6 Psychol. Pub. Pol'y & L. 769 (septiembre 2000).

**N.      IDENTIFICACIÓN DE LA PERSONA ACUSADA**

**3.41   Identificación de la Persona Acusada**

El Ministerio Público tiene la obligación de probar más allá de duda razonable todos los elementos del delito, incluyendo la identificación de la persona que lo cometió. El testimonio de testigos en cuanto a la identificación del acusado o de la acusada debe examinarse a conciencia. Ustedes deben estar satisfechos más allá de duda razonable de que la persona acusada es [el (la) autor(a)] [cooperador(a)] del delito antes de emitir un veredicto de culpable. Si, luego de considerar todas las circunstancias que rodearon la identificación, no están convencidos y convencidas más allá de duda razonable de que el acusado o la acusada fue la persona que [lo cometió] [participó en la comisión del delito], deben declararla no culpable.

**[El tribunal debe impartir la instrucción que aplique conforme a la prueba de identificación admitida].**

**A.   Prueba de identificación; rueda de detenido o de fotografía**

El testimonio sobre identificación expresa la creencia, percepción o impresión de quien testifica, por lo que su valor depende de la oportunidad que se tuvo para observar a la persona mientras cometía el delito y para hacer después una identificación confiable.

Al considerar la identificación de la persona acusada por el (la) testigo, ustedes deberán tomar en cuenta lo siguiente:

(1) La capacidad y oportunidad que tuvo el (la) testigo de observar a la persona que cometió el delito por el cual se acusa, incluyendo el estado de ánimo del (de la) testigo al momento de la observación, el tiempo que duró la observación, la distancia entre el (la) testigo y la persona acusada, la iluminación y otras condiciones atmosféricas o de visibilidad.

(2) Si la identificación que el (la) testigo hace es producto de su propio recuerdo o pudo ser influenciada por las circunstancias en que le presentaron [al (a la) acusado(a) [la foto del (de la) acusado(a)] para que lo (la) identificara, incluyendo el tiempo transcurrido entre la comisión del delito y la próxima oportunidad que tuvo el (la) testigo de ver al (a la) acusado(a).

(3) La certeza —o falta de ella— demostrada por el (la) testigo al hacer la identificación.

**[Se debe instruir sobre un cuarto factor en los casos que aplique:**

(4) Si el (la) testigo falló en identificar a la persona acusada en cualquier otra ocasión o hizo una identificación incongruente con la que se lleva a cabo en el juicio**].**

En resumen, deben considerar la totalidad de las circunstancias que pudieron afectar la identificación.

Finalmente, ustedes deben evaluar la credibilidad de testigos de identificación del mismo modo que la de cualquier testigo.

El Ministerio Público tiene el peso de la prueba de establecer más allá de duda razonable la identificación del (de la) acusado(a) como [el (la) autor(a)] [cooperador(a)] del delito por el que se le acusa. Si, considerada toda la prueba, queda en ustedes duda razonable respecto a la certeza de la identificación, deberán rendir un veredicto de no culpable.

## B. Prueba de identificación por voz

El testimonio sobre identificación por voz expresa la opinión, creencia, percepción o impresión de quien testifica, por lo que su valor depende de la oportunidad que esta tuvo para escuchar a la persona mientras cometía el delito y para hacer después una identificación confiable o la relación o contactos con el (la) acusado(a) que permita establecer la confiabilidad de la identificación por voz.

Al considerar la identificación de la persona acusada por el (la) testigo, ustedes deberán tomar en cuenta lo siguiente:

(1) La capacidad y oportunidad que tuvo el (la) testigo de escuchar a la persona que cometió el delito por el cual se acusa, incluyendo el estado de ánimo del (de la) testigo al momento de escuchar a la persona, el tiempo que duró, la distancia entre el (la) testigo y la persona acusada, el ruido ambiental y otras condiciones que puedan afectar la capacidad de escuchar del (de la) testigo.

(2) Si la identificación que hace el (la) testigo es producto de su propio recuerdo o pudo ser influenciada por las circunstancias en que le presentaron la voz del (de la) acusado(a) para que lo (la) identificara, incluyendo el tiempo transcurrido entre la comisión del delito y la próxima oportunidad que tuvo el (la) testigo de escuchar a la persona acusada.

(3) La relación o contactos del (de la) testigo con la persona acusada que permita establecer que ha tenido la oportunidad de conocer la voz del (de la) acusado(a).

(4) La certeza —o falta de ella— demostrada por el (la) testigo al hacer la identificación, además de todos los factores mencionados anteriormente sobre la credibilidad de testigos.

**[Se debe instruir, además, sobre un quinto factor en los casos que apliquen**:

(5) Si el (la) testigo falló en identificar al (a la) acusado(a) en cualquier otra ocasión o hizo una identificación incongruente con la que se lleva a cabo en el juicio**].**

En resumen, deben considerar la totalidad de las circunstancias que pudieron afectar la identificación y su confiabilidad.

Finalmente, ustedes deben evaluar la credibilidad de testigos de identificación del mismo modo que la de cualquier testigo.

El Ministerio Público tiene el peso de la prueba de establecer más allá de duda razonable la identificación del (de la) acusado(a) como [el (la) autor(a)] [cooperador(a)] del delito por el que se le acusa. Si, considerada toda la prueba, queda en ustedes duda razonable respecto a la certeza de la identificación, deberán rendir un veredicto de no culpable.

## C. Prueba de identificación mediante huellas dactilares

La identificación de la persona acusada de delito puede hacerse mediante la prueba de huellas dactilares para vincularla con su comisión.

La prueba de las huellas de un dedo, mano o pie encontradas en el lugar donde se cometió el delito, correspondientes a las del (de la) acusado(a), pueden ser prueba suficiente de su identificación para rendir un veredicto de culpable, bajo circunstancias tales como que solamente pudieran haber sido impresas cuando el delito fue cometido.

Para rendir un veredicto de culpable única o principalmente a base de la evidencia de huellas dactilares, debe demostrarse que las huellas dactilares del (de la) acusado(a) se encontraron bajo circunstancias tales que excluyan cualquier posibilidad razonable compatible con su inocencia. Si las huellas dactilares correspondientes a las del (de la) acusado(a) se encontraron en el lugar donde se ha cometido un delito de modo que queda eliminada toda hipótesis razonable excepto que las huellas dactilares fueron impresas en el momento cuando el delito se cometió, puede entonces rendirse un veredicto de culpable basado únicamente en esas huellas dactilares.

El Ministerio Público tiene el peso de la prueba de establecer más allá de duda razonable la identificación de la persona acusada como [el (la) autor(a)] [cooperador(a)] del delito por el que se le acusa. Si, considerada toda la prueba, queda en ustedes duda razonable respecto a la certeza de la identificación, deberán rendir un veredicto de no culpable.

## D. Prueba de identificación mediante prueba de ADN

La identificación de la persona que cometió un delito puede hacerse mediante evidencia de ADN para vincular a la persona acusada con su comisión.

En este caso, ustedes escucharon el testimonio de un(a) perito(a) en cuanto al análisis de ADN. Esta persona emitió su opinión para ayudarles a decidir si la muestra de origen

desconocido levantada en la escena del crimen tiene el ADN de la persona acusada. Ustedes determinarán el valor probatorio que le merece la opinión del (de la) perito(a).

El Ministerio Público tiene el peso de la prueba de establecer más allá de duda razonable la identificación del (de la) acusado(a) como [el (la) autor(a)] [cooperador(a)] del delito por el que se le acusa. Si, considerada toda la prueba, queda en ustedes duda razonable respecto a la certeza de la identificación, deberán rendir un veredicto de no culpable.

**REFERENCIA:**

Esta Instrucción proviene, en parte, de las Instrucciones 2.33 y 2.34 del Proyecto de Libro de Instrucciones al Jurado de 2008 y de las enmiendas de 1980 a las Instrucciones al Jurado para el Tribunal Superior de Puerto Rico de 1976. Véase *Pueblo v. Toledo Barbosa*, 105 DPR 290 (1976).

**COMENTARIO:**

La instrucción sobre la identificación por voz incorpora la norma jurisprudencial del Tribunal Supremo en *Pueblo v. Hernández González*, 175 DPR 274 (2009). La parte de la instrucción sobre la identificación mediante evidencia de ADN es nueva, se inspira en la Instrucción 4.13 de las instrucciones modelos del Tercer Circuito del Tribunal de Apelaciones de Estados Unidos. Véase, además, *Williams v. Illinois,* 567 US 50 (2012), para una controversia sobre la prueba por identificación por ADN y el derecho a la confrontación. En cuanto a la instrucción sobre las huellas dactilares, véase *Pueblo v. Sánchez Delgado*, 99 DPR 260 (1970).

Para rendir un veredicto de culpabilidad, el Jurado debe estar convencido más allá de duda razonable de los elementos constitutivos del delito y de que la persona acusada lo cometió o participó en su comisión. En cuanto a lo segundo, la mayoría de las veces se presenta evidencia testifical para identificar a la persona acusada de delito. La instrucción persigue clarificar los elementos de valor probatorio para esos casos. Debe clarificarse que no siempre la identificación de la persona acusada se hace mediante evidencia directa de testigos; lo que se exige es prueba más allá de duda razonable de la conexión de la persona acusada con el delito. Esto puede establecerse mediante prueba circunstancial, incluyendo la prueba científica.

En cuanto a la identificación mediante voz, en *Pueblo v. Hernández González*, supra, págs. 308-309, el Tribunal Supremo estableció el procedimiento y los requisitos que deben seguir la celebración de una rueda de identificación de voz, a saber:

> [U]na rueda de identificación de voces debe ser la excepción y celebrarse tan sólo en circunstancias extraordinarias en las que el testigo verdaderamente lo necesite o cuando no haya otro modo de identificación. Además, debe procurarse una descripción previa de la voz que escuchó el testigo, de manera que las voces que se escojan para la rueda tengan características similares. Deben participar en ésta al menos cinco personas, incluyendo al acusado o sospechoso. Los testigos no pueden ver a los componentes de la rueda, y si hay más de un testigo, no pueden comunicarse entre ellos. También deben grabarse las voces de los componentes de la rueda para perpetuarlas, de manera que el tribunal revisor pueda considerar si hubo algún factor sugestivo. Incluso, debe evitarse el uso de las palabras o de

los sonidos que fueron emitidos durante el crimen. Finalmente, en la medida de lo posible y si surge de los hechos delictivos, debe reproducirse en la rueda cualquier acción, o utilizarse cualquier pieza de ropa o aparato que pueda alterar la voz de los participantes de manera que las voces se aproximen a la escuchada durante los hechos.

### Ñ. PRUEBA SOBRE EL CONTENIDO DE ESCRITOS, GRABACIONES O FOTOGRAFÍAS

### 3.42 Instrucción sobre la Regla 1008 de Evidencia

**[El tribunal debe impartir la instrucción que aplique conforme a la prueba presentada].**

#### A. Cuando esté en controversia la existencia de cierta evidencia

En este caso está en controversia la existencia de **[especifique la evidencia en controversia;** por ejemplo: una carta, una confesión escrita, un contrato, una fotografía o una grabación]**. Corresponde a ustedes determinar si [ese escrito] [esa fotografía] [esa grabación] alguna vez existió. Si consideran que existió, podrán evaluar la evidencia de su contenido, que ha sido admitida y le darán el valor probatorio que les merezca. Sin embargo, si ustedes estiman que [ese escrito] [esa fotografía] [esa grabación] nunca existió, no podrán considerar su contenido como evidencia para ningún fin.

#### B. Cuando existe controversia sobre si el escrito, la grabación o la fotografía producido es el original

En este caso hay controversia sobre si **[especifique la evidencia en controversia]** es un original. Se presentó prueba sobre su contenido y corresponde a ustedes determinar si **[especifique la evidencia en controversia]** es el original.

#### C. Cuando se presenta un escrito, una grabación o una fotografía no disponible

En este caso se presentó prueba sobre el contenido de un escrito que no estuvo disponible para ser presentado en el juicio. Corresponde a ustedes determinar si la evidencia presentada como prueba de su contenido refleja correctamente lo que contenía el documento.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con la Regla 1008 (*Funciones de la jueza o del juez y el Jurado*) de Evidencia de 2009 (32 LPRA Ap. VI).

**COMENTARIO:**

La Regla 1008 de Evidencia requiere que sea el Jurado quien determine la existencia de ciertos hechos de los que depende la admisibilidad de cierta evidencia secundaria relacionada con el contenido de un escrito, una grabación o una fotografía. En ausencia de esa regla especial, aplicaría la regla general —entiéndase, la Regla 109(a)—, de manera que será el tribunal quien determine que se admita la evidencia secundaria.

Cuando existe controversia, por ejemplo, sobre la alegada existencia de una carta que no aparece, corresponde al Jurado la determinación de la existencia o no de esa carta. Lo mismo sucede con la alegada admisión o confesión escrita de una persona acusada de delito. Solo si se concluye que ese documento existió, se permitirá evidencia secundaria de su contenido. Igualmente, cuando existe controversia respecto a si determinado documento es un "original" a tenor de la Regla 1001(c) de Evidencia, corresponde al Jurado determinar ese hecho. En caso de que la determinación del Jurado sea contraria a la evidencia que se propone admitir (por ejemplo, que no existió tal documento), deberán ignorar la evidencia secundaria admitida (por ejemplo, el testimonio sobre el contenido del documento, de la carta o de la confesión).

CAPÍTULO 4
## DE LOS ELEMENTOS DEL DELITO Y DE LA CONDUCTA DELICTIVA

**A.** **DEL ESTABLECIMIENTO DE LA RESPONSABILIDAD PENAL Y DE LA CULPABILIDAD –**
**PARTE OBJETIVA**

### 4.1 Formas de Comisión

Una persona puede ser condenada por la comisión de un delito si su conducta incluye una acción u omisión voluntaria que produce un resultado contrario a la ley.

Los siguientes comportamientos no son actos voluntarios:

(1) Un movimiento corporal que ocurre como consecuencia de un reflejo o convulsión.

(2) Un movimiento corporal que ocurre durante un estado de inconsciencia o sueño.

(3) Conducta que resulta como consecuencia de un estado hipnótico.

(4) Cualquier otro movimiento corporal que no sea producto del esfuerzo o de la determinación de la persona.

Una persona solamente puede ser condenada por una omisión voluntaria si:

(a) una ley expresamente ordena hacer algo que la persona no hace, o

(b) tenía un deber legal de hacer algo para evitar un resultado delictivo y no lo hizo.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 18 (1), (2) y (3) (*Formas de comisión*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA sec. 5031).

**COMENTARIO:**

El primer requisito para satisfacer el elemento objetivo de un delito es que haya ocurrido una acción u omisión voluntaria por parte de la persona imputada. A modo de ejemplo, si la acción de la persona acusada se debió a una fuerza física irresistible, —como cuando fue empujada por otro sujeto con el efecto de caer sobre la víctima—, falta la acción voluntaria. Igual ocurre cuando se actúa por hipnosis o en estado de sonambulismo. Tampoco hay acción voluntaria si se trata de un reflejo o convulsión, como ocurre con los ataques de epilepsia.

En cuanto a la omisión pura, podrá utilizar como ejemplo la omisión de rendir planilla cuando haya la obligación legal de hacerlo. Respecto a la omisión impura, sirven de ejemplo la obligación de un padre de alimentar a sus hijos y el deber de socorro que tienen salvavidas y bomberos.

## 4.2    Acción Voluntaria; Posesión

Una persona puede ser condenada por la comisión de un delito si su conducta incluye una acción voluntaria que produce un resultado contrario a la ley.

La posesión constituye una forma de comisión delictiva solamente cuando:

(1) la persona voluntariamente adquirió o recibió la cosa poseída, o

(2) la persona conocía que la cosa estaba en su posesión y tuvo tiempo suficiente para terminar la posesión.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 18 (*Formas de comisión*) del Código Penal de 2012, Ley 146-2012, enmendado por la Ley 246-2014 (33 LPRA sec. 5031). Véanse *Pueblo en interés del menor F.S.C.*, 128 DPR 931 (1991); *Pueblo v. Cruz Rivera*, 100 DPR 345, 349 (1971); *Pueblo v. Cruz Rosado*, 97 DPR 513, 515 (1969); *Pueblo v. Rivera Márquez*, 96 DPR 758 (1968).

**COMENTARIO:**

El Artículo 18(4) del Código Penal aplica cuando se imputa la posesión ilegal de determinada cosa. Se exige que la persona imputada (1) haya adquirido o recibido la cosa voluntariamente o (2) que era consciente de su posesión con el tiempo suficiente como para terminar la posesión o desprenderse de la cosa. De ahí que no incurre en el delito de posesión de un arma quien solo la posee incidental a una legítima defensa. Véase *Pueblo v. Mojica Márquez*, 108 DPR 102 (1978). Tampoco es responsable penalmente quien tiene la cosa en su poder por un tiempo breve, sin tiempo para desprenderse de ella. Digamos que Juan está en una barra y Pedro saca un arma. Juan le dice a Pedro "déjame verla", y en el momento en que tiene esa breve posesión entra un policía y lo arresta por la posesión del arma. Juan podría invocar el Artículo 18(4)(b) del Código Penal.

Cuando la posesión es un elemento del delito es imprescindible que el Ministerio Público pruebe más allá de duda razonable que la persona imputada tenía la posesión; es decir, que tenía el dominio, el control o la tenencia física sobre el objeto ilegal. *Pueblo en interés del menor F.S.C.*, supra, pág. 939. Ahora bien, la posesión también se podría dar mediante la llamada "posesión constructiva"; entiéndase, la que surge cuando una persona no tiene la posesión inmediata o física del objeto pero sí ejerce el control o dominio sobre este. Íd., pág. 940.

## 4.3    Causalidad

**[Esta Instrucción debe ofrecerse tanto en los delitos por comisión como en los delitos por omisión].**

En los delitos que incluyen un resultado determinado, hay que establecer si la acción u omisión del (de la) acusado(a) es la causa del resultado delictivo. La conducta de una persona es la causa de un resultado si este no es demasiado remoto o accidental y si su ocurrencia no depende demasiado de algún acto voluntario de una tercera persona. Corresponde a ustedes concluir si el Ministerio Público probó más allá de duda razonable la relación entre el acto u omisión y el resultado.

**[Solo cuando la prueba lo justifique se debe instruir sobre el último párrafo del Artículo 7 del Código Penal, relativo a la coautoría**:
Cuando la conducta de dos o más personas contribuye a un resultado y la conducta de cada persona hubiese sido suficiente para causarlo, el requisito de causalidad se cumple con relación a cada persona que contribuyó al resultado**].**

**REFERENCIA**:

Esta Instrucción es nueva. Guarda relación con el Artículo 7 (*Relación de causalidad*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA sec. 5007).

**COMENTARIO**:

El Artículo 7 del Código Penal de 2012 pretende regular el elemento objetivo de causalidad en los delitos de resultado. Usualmente, se presenta el problema cuando se imputa asesinato u homicidio negligente, pues se exige un vínculo causal entre la acción u omisión de la persona imputada y la muerte de la víctima. El párrafo final del Artículo 7 atiende la situación poco usual en la cual no hay que satisfacer el requisito de condición *sine qua non*. Este es el caso cuando dos sujetos disparan una o más veces a la víctima actuando independientemente, puesto que los actos de cualquiera de los sujetos hubieran sido suficientes para causar la muerte de la víctima. Otro ejemplo lo es los muchos disparos hechos por un "pelotón de fusilamiento". En todos estos casos se estima satisfecho el requisito de causalidad.

En el inciso (a) del Artículo 7 se excluye la causalidad cuando el resultado es demasiado remoto o accidental. Esto puede ocurrir ante muchas causas interventoras entre la acción u omisión de la persona imputada y el resultado delictivo. En el inciso (b) se atiende la situación de que el resultado delictivo depende demasiado de una tercera persona. Ese puede ser el caso, por ejemplo, de un tratamiento médico tan deficiente que pueda considerarse como la causa de la muerte de la víctima de cierta agresión. Sin embargo, la jurisprudencia del Tribunal Supremo de Puerto Rico de ordinario sostiene que las complicaciones médicas no eximen de responsabilidad. Véase *Pueblo v. Santiago Cedeño*, 106 DPR 663, 668 (1978).

En cuanto a las situaciones en las que el resultado es, en buena medida, atribuible a la víctima, hay que considerar lo dispuesto en el Artículo 6 del Código Penal: "El consentimiento de la víctima no exime de responsabilidad penal, salvo que dicho consentimiento niegue un elemento del delito". 33 LPRA sec. 5006. De aquí que no pueda invocarse el consentimiento de la víctima cuando se imputa asesinato u homicidio como consecuencia de jugar "ruleta rusa". Por supuesto, el consentimiento de la víctima constituye una defensa cuando un elemento del delito es la falta de consentimiento, como ocurre con el delito de agresión sexual (Artículo 130 del Código Penal, 33 LPRA sec. 5191) y con la fijación de carteles sin el consentimiento del dueño o del encargado de la propiedad (Artículo 201 del Código Penal, 33 LPRA sec. 5271).

Para satisfacer el requisito de causalidad, el resultado debe ser la realización de un riesgo suficiente y no permitido por la acción u omisión que se le imputa a la persona acusada. Digamos que la persona imputada golpea una noche a la víctima y la deja tirada en la carretera. Esto crea un riesgo suficiente y no permitido de que la víctima sea arrollada por un vehículo, lo que en efecto ocurre y muere la víctima. La muerte es la concreción o realización del riesgo suficiente y no permitido de que eso ocurriera. Pero si lo que ocurre es que la víctima es llevada al hospital y, ya fuera de peligro, ocurre un fuego o terremoto que causa la muerte de la víctima, esta no murió como consecuencia de la concreción del riesgo creado por la persona imputada. Puede hablarse de que se trata de una causa interventora que rompe el vínculo causal.

## 4.4    Comisión por Omisión

En este caso se le imputa a la persona acusada haber producido el resultado delictivo **[especifique el resultado**; por ejemplo, daño, muerte de una persona, etc.**]** porque no hizo lo que era su deber para evitarlo **[especifique el deber jurídico]**. La ley impone responsabilidad penal a quien tenía la obligación de hacer algo y, por no haberlo hecho, se produjo el resultado delictivo. **[El tribunal podría ilustrar este elemento con el siguiente ejemplo:** Tal sería el caso de un (una) salvavidas**]**.  Sin embargo, no es que la ley imponga a las personas el deber de auxiliar al prójimo. Presenciar, por ejemplo, que una persona se está ahogando y no hacer nada para salvarla, aunque tuviera la capacidad para ello, no constituye delito.

Si ustedes entienden que la persona acusada tenía la obligación legal de evitar el peligro o riesgo para **[especifique el bien jurídico**, por ejemplo, la vida, la salud, la propiedad, etc.**]** y no hizo lo que tenía la obligación de hacer para evitarlo, podrán encontrarla responsable del delito por el cual se le acusa, siempre que concluyan que, de haber actuado conforme a su deber, se hubiera evitado el resultado. El Ministerio Público tendrá que establecer más allá de duda razonable la relación entre el acto omitido y el resultado. La conducta de una persona es la causa de un resultado si este no es demasiado remoto o accidental y si su ocurrencia no depende demasiado de algún acto voluntario de una tercera persona.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 4.1 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con el Artículo 7 (*Relación de causalidad*) y el Artículo 18 (*Formas de comisión*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5007 y 5031). Véase *Pueblo v. Ruiz Ramos*, 125 DPR 365 (1990).

**COMENTARIO:**

En los casos en los que se imputa a la persona acusada un delito por omisión, es necesario referirse al Artículo 18(3) del Código Penal de 2012:

> (3) Una omisión puede generar responsabilidad penal solamente si:
>
> (a) Una ley expresamente dispone que el delito puede ser cometido mediante omisión, o
> (b) el omitente tenía un deber jurídico de impedir la producción del hecho delictivo.

El apartado que aplica a la instrucción es el segundo, que regula la llamada "omisión impura" o "comisión por omisión". Es aquí donde la doctrina penal alude al deber de garante, como el caso *Pueblo v. Sustache Sustache*, 176 DPR 250 (2009).

El Artículo 19 del Código Penal de 2004 disponía:

> Los delitos que tipifican la producción de un resultado sólo podrán cometerse por omisión cuando la no evitación del mismo equivalga a su producción activa.
> Para determinar la equivalencia de la omisión a la acción se tendrá en cuenta la existencia de un deber específico de evitar el resultado y si una acción anterior del omitente hace posible imputarle la situación de riesgo en que se encontraba el bien jurídico lesionado. 33 LPRA sec. 4647.

Ese segundo párrafo se refiere a las dos modalidades de la "comisión por omisión", que son:

(1)	El "deber de garante" que puede surgir de todo el ordenamiento jurídico, como por ejemplo, una ley, un contrato, etc. entre otras situaciones.
(2)	El riesgo creado por una acción precedente.

Las modalidades "deber del garante" y "riesgo creado por una acción precedente" de la comisión por omisión pueden explicarse al Jurado mediante los ejemplos siguientes:

*Deber del garante*

Hay personas quienes, por su particular condición u oficio, tienen la obligación de garantizar ciertos auxilios a terceros. Así, los padres y las madres tienen la obligación de alimentar a sus hijos e hijas menores de edad. Si muere un(a) hijo(a) como consecuencia del incumplimiento con esa obligación, responden penalmente por esa muerte. Lo mismo ocurre con los deberes del (de la) doctor(a) hacia sus pacientes, del (de la) salvavidas hacia bañistas o de un(a) maestro(a) hacia sus estudiantes en grados primarios. En este caso,

ustedes deben determinar si la persona acusada faltó a ese deber de garante y si la omisión causó el resultado delictivo que se le imputa.

*Riesgo creado por una acción precedente*

Aunque no exista el deber de garante, la ley impone a la persona el deber de actuar para evitar cierto riesgo, cuando ese riesgo ha sido producto de una acción anterior de esa persona. Así ocurre cuando una persona arrolla a otra al conducir un vehículo de motor, pues surge el deber de auxiliar a la víctima para evitar mayor daño, o sea, la muerte. Si la persona arrollada no recibe la atención debida y muere a causa de ello, la persona que conducía el vehículo es responsable por omisión.

También se pone en la situación de garante la persona que exhorta a otra a realizar actividades peligrosas, como irse a surfear en el mar peligroso, a escalar una montaña alta o a iniciarse en una fraternidad. No obstante, no hay deber general de buen samaritano.

## B. DEL ESTABLECIMIENTO DE LA RESPONSABILIDAD PENAL Y DE LA CULPABILIDAD – PARTE SUBJETIVA

### 4.5 Elementos Subjetivos del Delito; a propósito, con conocimiento o temerariamente

**[Esta Instrucción aplica a delitos que cobijen las tres modalidades. En los casos que no apliquen las tres modalidades, el tribunal debe impartir la(s) que corresponda(n)].**

La ley dispone que una persona solo puede ser sancionada penalmente por el delito que se le acusa si lo realizó con intención criminal.

El requisito de intención se puede satisfacer de tres maneras, bien sea porque se demuestra que la persona acusada actuó "a propósito", "con conocimiento" o "temerariamente". Cualquiera de las modalidades es suficiente para establecer la intención.

(1) Una persona actúa "a propósito" cuando su acción u omisión va dirigida expresamente a la producción del resultado delictivo o cuando cree que una circunstancia existe.

(2) Una persona actúa "con conocimiento" cuando está prácticamente segura de que su conducta produciría el resultado o cuando está prácticamente segura de la existencia de una circunstancia.

(3) Una persona actúa "temerariamente" cuando es consciente de que su conducta genera un riesgo sustancial e injustificado de que se produzca el resultado o la circunstancia prohibida por ley, y a pesar de conocer el riesgo, la persona continúa con su acción u omisión. Al evaluar si era consciente del riesgo, deberán determinar si había previsto la posibilidad de que existiese ese riesgo. Al momento de evaluar si un riesgo fue sustancial, deberán considerar la

probabilidad de que se produjera el daño, el resultado o la circunstancia, y la magnitud del daño. Al evaluar si un riesgo fue injustificado, deberán considerar lo que motivó a la persona a asumir el riesgo.

[Una circunstancia es una característica de la conducta de la persona que cometió el delito o de la víctima. También se refiere a la descripción del entorno o el contexto en el cual ocurre la conducta].

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no a propósito, con conocimiento o temerariamente. Pueden inferir o deducir razonablemente de la prueba presentada y admitida el propósito, el conocimiento o la temeridad. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona.

**[Cuando el delito sea de resultado y se requiera una explicación adicional, puede considerarse el lenguaje siguiente**:

En fin, se actúa "a propósito" cuando se quiere el resultado; "con conocimiento" cuando se conoce que es prácticamente seguro que la conducta produciría el resultado; y "temerariamente" cuando se actúa a conciencia de que se ha creado un riesgo sustancial e injustificado de que se produzca el resultado**].**

**REFERENCIA:**

Esta Instrucción proviene, en parte, de la Instrucción 4.2 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con el Artículo 14 (*Definiciones*), el Artículo 22 (*Elementos subjetivos del delito*) y el Artículo 23 (*Disposiciones misceláneas relacionadas a los elementos subjetivos del delito*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5014, 5035 y 5036), y las Secciones 2.02(2)(b) y 2.02(7) del Código Penal Modelo. Véanse *Pueblo v. Ocasio Hernández*, 139 DPR 84 (1995); *Pueblo v. Flores Betancourt*, 124 DPR 867 (1989); *Pueblo v. Castañón Pérez*, 114 DPR 532 (1983); *Pueblo v. Colón Soto*, 109 DPR 545 (1980).

**COMENTARIO:**

El Artículo 22 del Código Penal vigente, según enmendado por la Ley 246-2014, proviene de la Sección 2.02 del Código Penal Modelo, el cual define cuatro estados mentales: "a propósito" (*purposely*), "con conocimiento" (*knowingly*), "temerariamente" (*recklessly*), y "negligentemente" (*negligently*). Indica la Dra. Dora Nevares-Muñiz que esta enmienda al Artículo 22 sustituyó el concepto de "intención" por las tres modalidades antes indicadas y reformuló la negligencia para fines penales. Añadió que el efecto de esta enmienda es:

> [...] identificar de forma más clara los distintos grados de culpabilidad que en los Códigos anteriores se trataban como intención o negligencia. Ello supone el abandono de la terminología anterior que establecía una línea divisoria entre "intención y negligencia", o en terminología continental, "dolo y culpa". D. Nevares-Muñiz, *Código Penal de Puerto Rico*, 4ta ed. rev., San Juan, Ed. Instituto para el Desarrollo del Derecho, 2019, pág. 44.

El Artículo 22 del Código Penal también adopta el esquema del Código Penal Modelo para cada uno de los cuatro estados mentales en relación con el elemento de "circunstancia" o de "resultado". Ambos términos se definen en el Artículo 14 como sigue: "*Circunstancia* [es] (a) una característica de la conducta, del autor o de la víctima, o (b) una descripción del entorno o contexto en el cual ocurre la conducta". "*Resultado* [es] una circunstancia que [cambia por] la conducta del actor". 33 LPRA sec. 5014(j-1) y (kk.1).

Valga aclarar, además, que con la Ley 246-2014 también se enmendaron los tipos penales. "Esto es importante para fines del elemento subjetivo que se requiere en figuras como la coautoría del Artículo 44(d), la tentativa, el asesinato en primer grado, las defraudaciones, entre otros. En estos casos no bastaría la temeridad, sino que se requieren los estados mentales de propósito o conocimiento". Nevares-Muñiz, *op. cit.*, pág. 45.

Para facilitar la definición de cada modalidad, pueden considerarse los ejemplos siguientes:

(1)   *A propósito*: Cuando el hecho fue realizado por una conducta dirigida voluntariamente a ejecutarlo. El tribunal podría ilustrar este elemento en delitos de resultado con los ejemplos siguientes: (i) una persona le dispara a otra con el propósito de matarla y esa persona muere por causa del disparo, de manera que la muerte se considera a propósito porque la conducta iba dirigida voluntariamente a realizar ese hecho, y (ii) una persona le pone veneno a otra persona con el propósito de causarle la muerte.

(2)   *Con conocimiento*: Cuando el hecho es una consecuencia prácticamente segura de la conducta del (de la) autor(a). En este caso, la conducta del (de la) autor(a) no va dirigida a producir ese resultado, pero sí va dirigida a producir un hecho cuya consecuencia prácticamente segura es ese resultado. Por ejemplo, cuando se coloca una bomba en un avión con el propósito de que muera una persona, esa bomba estalla en el avión y mata, no solo a la persona a la que se quería matar, sino también a otras personas que se encontraban en el avión en ese momento. Aunque la acción no iba dirigida voluntariamente a producir ese resultado, la ley considera que la persona mató con conocimiento a las demás personas.

(3)   *Temerariamente*: Cuando el (la) autor(a) actuó consciente de que generaba un riesgo sustancial, injustificado y no permitido de producir el hecho delictivo, el cual efectivamente se produce. El ejemplo paradigmático en delitos de resultado es la ruleta rusa. Se podría ilustrar también con el ejemplo de una persona, sin indicios de trastorno mental u otra condición extraordinaria, que conduce un vehículo de motor a cien millas por hora en una zona escolar. Sería razonable inferir que lo hacía consciente del riesgo de producir un accidente.

En los casos de circunstancias, el tribunal podría considerar los ejemplos siguientes: la edad de la víctima en un caso de agresión sexual, el valor de los bienes hurtados en un caso de apropiación ilegal, el parentesco en un caso de incesto, entre otros.

En los comentarios de la doctora Nevares-Muñiz sobre la temeridad, se mencionan las disposiciones del Código Penal Modelo: "para determinar la sustancialidad y no justificación del riesgo, el juzgador debe evaluar la magnitud del riesgo creado y las razones del actor para crear ese riesgo, en términos de si su indiferencia consciente hacia el riesgo creado constituyó una desviación considerable (*gross*) del estándar de cuidado que se espera de una

persona cumplidora de la ley en esas circunstancias". Nevares-Muñiz, *op. cit.*, pág. 46. Esto guarda relación con la definición general de *temeridad* del Código Penal Modelo, en su Sección 2.02(c), la cual dispone:

> A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a law abiding person would observe.

En cuanto a las disposiciones del Artículo 23 del Código Penal, la doctora Nevares-Muñiz especifica que se entenderá que un delito requiere el elemento mental subjetivo de "a propósito", "con conocimiento" o "temerariamente" cuando el delito no indica el elemento subjetivo requerido. Nevares-Muñiz, *op. cit.*, pág. 49. Añade que, excepto que el delito disponga expresamente lo contrario, el elemento mental que se requiere para los elementos de resultado y de circunstancias será el mismo. Ilustra este asunto con el ejemplo siguiente:

> [E]n delitos como el escalamiento, que requiere propósito de cometer un delito grave o apropiación ilegal, se entiende que, en cuanto a los otros elementos de circunstancias, también aplica el a propósito. Íd.

La doctora Nevares-Muñiz particulariza el inciso (c) del Artículo 23 y explica que "quien pudo probar un estado mental más reprochable, satisfa[ce] el elemento mental del tipo que requiera un estado mental menos reprochable". Íd. Esto significa lo siguiente:

(1) Si el elemento subjetivo es la negligencia, queda satisfecho si se prueba la negligencia o algo más que la negligencia, esto es, a propósito, con conocimiento o con temeridad.

(2) Si el elemento subjetivo es la temeridad, queda satisfecho si se prueba la temeridad o algo más que temeridad, esto es, a propósito o con conocimiento. No basta con probar solo la negligencia.

(3) Si el elemento subjetivo es "con conocimiento", queda satisfecho si se prueba tal conocimiento o que se actuó "a propósito". No bastaría la temeridad o la negligencia.

(4) Si el elemento subjetivo es "a propósito", no basta con probar el conocimiento, la temeridad o la negligencia.

El inciso (d) del Artículo 23 establece que en las circunstancias en que la ley dispone que la persona debe actuar con conocimiento de un resultado o de una circunstancia, queda probado si la persona no tiene duda razonable de su existencia. Nevares-Muñiz, *op. cit.*, págs. 49-50. En particular, el Prof. Luis E. Chiesa Aponte expone que este inciso atiende el problema de la ignorancia deliberada (*willful blindness*), esto es, cuando la persona imputada no quiere averiguar determinada circunstancia o resultado. Véase la ponencia presentada por el Prof. Luis E. Chiesa Aponte ante la Asamblea Legislativa intitulada *Comentarios al P. del S. 1210* [*y*] *P de la C. 2155*, de 27 de octubre de 2014, pág. 15. Además, con el siguiente ejemplo, el Prof. Luis E. Chiesa Aponte explica el texto del inciso:

En estas instancias, el sujeto no conoce con certeza matemática la existencia de cierta circunstancia (que el televisor nuevo que un extraño le está vendiendo a precio de quemarropa es hurtado), pero se sospecha que la circunstancia de hecho existe (que el televisor de hecho es hurtado). Además, el sujeto no hace indagaciones para averiguar si la circunstancia de hecho existe. Bajo las definiciones del Artículo 22, dicha persona parece actuar "temerariamente" y no "con conocimiento", puesto que la persona está consciente de que existe un riesgo de que el televisor sea hurtado, pero no está "prácticamente seguro" de que lo es. Mediante el inciso (4) del Artículo 23 se aclara que no se requiere certeza matemática de que la circunstancia exista para actuar con conocimiento de la circunstancia. [Es suficiente] que el sujeto no tenga duda razonable de la existencia de la misma. Este precepto permitiría, en principio, concluir que quien recibe el televisor hurtado "conocía" que era hurtado, aunque no estaba "prácticamente seguro" de que lo era. Siempre, claro está, que se pruebe que el sujeto no tenía duda razonable de que era hurtado. Íd., págs. 15-16.

Igual ejemplo sería una persona a la que le ofrecen diez mil dólares por entregar cierto paquete, mas no quiere averiguar lo que contiene, aunque cree o sospeche que contiene drogas o contrabando.

## 4.6 Delito por Negligencia

El delito por el que se acusa a la persona se puede cometer mediante negligencia criminal.

La ley dispone que un delito se comete por negligencia cuando la persona debió saber que su conducta ocasionaría un riesgo sustancial e injustificado que causaría el resultado dañino o la circunstancia prohibida por ley.

El riesgo debe de ser de tal grado que, considerando la naturaleza y el propósito de la conducta y las circunstancias conocidas por la persona, la acción u omisión constituye una desviación crasa del estándar de cuidado que observaría una persona razonable en su misma posición.

La negligencia criminal es el incumplimiento del deber de cuidado que la ley impone; no es una mera falta de cuidado. Se falta a ese deber cuando la persona ni siquiera se da cuenta del riesgo o peligro que se le exigía advertir o cuando, a pesar de haberlo reconocido, confía imprudentemente en que no se producirá el resultado. La negligencia de la víctima no es suficiente para exonerar o librar de culpa a la persona acusada a menos que esta sea la única causa del resultado.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no negligentemente. Pueden inferir o deducir razonablemente de la prueba presentada y admitida la negligencia. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 4.3 del Proyecto de Libro de Instrucciones al Jurado de 2008 y de las Instrucciones al Jurado para el Tribunal Superior de Puerto Rico de 1976, pág. 51. Guarda relación con el Artículo 22(4) (*Elementos subjetivos del delito*) y el Artículo 23 (*Disposiciones misceláneas relacionadas a los elementos subjetivos del delito*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5035 y 5036).

**COMENTARIO:**

La *negligencia* se define en conformidad con el Código Penal Modelo, de manera que pueda distinguirse de la *temeridad*. En la temeridad, se es consciente de la creación del riesgo sustancial e injustificado creado por la conducta, mientras que, en la negligencia, el sujeto activo no es consciente del riesgo creado, sino que debió haber sabido. Esta evaluación debe realizarse desde el estándar objetivo de la persona promedio en la situación de la persona actora. Únicamente habrá responsabilidad penal por negligencia cuando expresamente lo disponga el tipo penal. Véase E.L. Chiesa Aponte, *Ponencia sobre el P. del S. 1210 y P. de la C. 2155*, 29, de 27 de octubre de 2014, pág. 4 ("Se mantiene que el Código es un sistema cerrado a la negligencia, lo que se había ya dispuesto desde el Código de 2004").

Para facilitar la definición de esta modalidad, pueden considerar el ejemplo siguiente: una farmacéutica despacha un medicamento únicamente a base de la apariencia similar del envase y la sustancia deseada, sin constatar su etiqueta, y resulta que en realidad es un veneno. *Pueblo v. Rivera Rivera*, 123 DPR 739 (1989).

Comenta la doctora Nevares-Muñiz:

> Otra distinción entre la negligencia criminal y la negligencia civil es que en los casos criminales la negligencia de la víctima no es suficiente para exonerar al acusado, a menos que ésta sea la única causa del resultado; aunque crea una duda razonable sobre la culpabilidad del acusado capaz de impedir que el fiscal rebata la presunción de inocencia. D. Nevares-Muñiz, *Código Penal de Puerto Rico*, 4ta ed. rev., San Juan, Ed. Instituto para el Desarrollo del Derecho, 2019, págs. 47-48.

## 4.7   Error en la Persona

La persona que, por error o accidente, comete delito en perjuicio de una persona distinta de aquella a quien dirigió su acción original, será responsable en la misma medida que si hubiera logrado su propósito.

Esto significa que, cuando la acción delictiva va dirigida contra una persona determinada pero, por error o accidente, se comete el delito contra una persona distinta de aquella contra quien iba dirigida la acción original, la persona acusada será responsable en la misma medida que si hubiese logrado su propósito contra la persona a quien dirigió su acción original.

**REFERENCIA:**

Esta Instrucción proviene del comentario a la Instrucción 6.1 del Proyecto de Libro de Instrucciones al Jurado de 2008 y de las Instrucciones al Jurado para el Tribunal Superior de Puerto Rico de 1976, pág. 54. Guarda relación con el Artículo 24 (*Error en la persona*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA sec. 5037), y el Artículo 17 del Código Penal de 1974, Ley Núm. 115 de 22 de julio de 1974.

**COMENTARIO:**

El Código Penal de 1974 establecía el "error en la persona" en su Artículo 17. El Código Penal de 2004 eliminó esta clasificación de error. El Código Penal de 2012 incorporó el error en la persona nuevamente en su Artículo 24 con un lenguaje bastante similar al del Artículo 17 del Código Penal de 1974, pero le añadió la responsabilidad en grado de tentativa por los actos ejecutorios realizados contra quien el sujeto dirigió su acción original. Esta parte quedó suprimida por la Ley 246-2014. Esta clasificación de error en la persona no constituye un error excusable de responsabilidad criminal.

En *Pueblo v. Rodríguez Pagán*, 182 DPR 239 (2011), el Tribunal Supremo discutió la doctrina de intención transferida del Artículo 17 del Código Penal de 1974. Cabe recordar que "la doctrina del derecho norteamericano conocida como la intención transferida, no exime de responsabilidad penal, pues la intención criminal del sujeto activo, dirigida contra determinado sujeto pasivo, se traslada a la persona que, en efecto, recibió la acción. Es decir, la intención criminal dirigida contra el blanco original se atribuye al sujeto activo, aunque la víctima real del acto sea otra". (Escolio omitido). Íd., pág. 251.

**C.     DE LA PARTICIPACIÓN**

**4.8     Persona Responsable**

En nuestro sistema de derecho, son responsables de delito los(as) autores(as) y cooperadores(as).

**4.9     Autores(as); definición**

Se consideran autores(as) del delito las personas que **[indique solamente las modalidades que apliquen]**:

> (1) toman parte directa en la comisión del delito **[el tribunal podría ilustrar esto con el ejemplo siguiente**: Por ejemplo, quien dispara el arma de fuego**]**;
>
> (2) fuerzan, provocan, instigan o inducen a otra persona a cometer el delito **[el tribunal podría ilustrar esto con el ejemplo siguiente**: Por ejemplo, quien contrata a una persona para matar a otra**]**;

(3) se valen de una persona inimputable, es decir, a quien no se puede acusar, para cometer el delito **[el tribunal podría ilustrar esto con el ejemplo siguiente**: Por ejemplo, como valerse de una persona incapacitada mentalmente**]**;

(4) a propósito o con conocimiento, cooperan con actos anteriores, simultáneos o posteriores a la comisión del delito, y que contribuyen significativamente a la consumación del hecho delictivo, aumentando considerablemente la probabilidad de que se cometa el delito **[el tribunal podría ilustrar esto con el ejemplo siguiente**: Por ejemplo, quien aguanta a la víctima mientras otro comete la agresión**]**;

(5) se valen de una persona jurídica para cometer el delito **[el tribunal podría ilustrar esto con el ejemplo siguiente**: Por ejemplo, de una corporación, sociedad o asociación**]**;

(6) actúan en representación de otra como miembro, director(a), agente o propietario(a) de una persona jurídica, siempre que haya una ley que tipifique el delito **[el tribunal podría ilustrar esto con el ejemplo siguiente**: Por ejemplo, un(a) presidente(a) que decide no remitir al Departamento de Hacienda las contribuciones recaudadas por las ventas de bienes o servicios**]**;

(7) ayudan o fomentan a propósito para que otra persona lleve a cabo la conducta que culmina en la producción de un resultado prohibido por ley, siempre que actúen con el estado mental **[indique el elemento subjetivo del delito]** requerido por el delito que se le acusa con relación al resultado **[el tribunal podría ilustrar lo anterior con el siguiente ejemplo**: Por ejemplo, un pasajero de un vehículo que incita a que quien conduce maneje a exceso de velocidad**]**.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 3.2 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con el Artículo 44 (*Autores*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA sec. 5067); el Artículo 35 (*Autores*) del Código Penal de 1974, Ley Núm. 115 de 22 de julio de 1974. Véanse *Pueblo v. Cancel Peraza*, 106 DPR 28 (1977); *Pueblo v. Santiago*, 49 DPR 673 (1936).

**COMENTARIO:**

La Ley 146-2012 mantuvo el texto de los incisos (a) al (f) del Artículo 43 del Código Penal de 2004 sobre autores y propuso un nuevo texto para el inciso (g), que sanciona como autores a las personas quienes promueven que otras realicen conductas peligrosas que culminan en la producción de un resultado prohibido por ley. La persona se castiga como autora si tenía el propósito de fomentar o ayudar la conducta de la otra, siempre que actúe con el estado mental requerido por el delito imputado con relación al resultado. L.E. Chiesa Aponte, *Comentarios al P del S. 1210 [y] P de la C. 2155*, 27 de octubre de 2014, pág. 21. En su ponencia, el Prof. Luis E. Chiesa Aponte ilustra este tipo de autoría con el ejemplo siguiente:

El ejemplo clásico es el de un pasajero de un vehículo que incita a que el conductor maneje a exceso de velocidad. El conductor inicialmente se rehúsa a acelerar la marcha, pero eventualmente accede a las insistentes peticiones del pasajero. Debido a la alta velocidad a la que manejaba, el conductor choca violentamente con otro vehículo, causándole la muerte a una persona. Tanto al conductor como al pasajero se le imputa la comisión del delito de homicidio negligente. ¿Puede el pasajero ser hallado culpable de homicidio negligente? De conformidad con el inciso (g) del Artículo 44, el pasajero puede ser castigado por homicidio negligente, puesto que (1) fomentó y tenía el propósito de fomentar la conducta del conductor (manejar a alta velocidad), y (2) actuó con el elemento mental que requiere el delito imputado con relación al resultado (el pasajero fue negligente con relación al riesgo de muerte). Se trata de la solución que se ha impuesto en la mayor parte de las jurisdicciones de Estados Unidos y que se adopta en la [Sección] 2.06(4) del Código Penal Modelo. Íd., págs. 21-22.

Para que dos o más personas sean consideradas autoras de un delito, no es necesario el acuerdo previo entre estas, pues surge la unidad en la intención de cometer el delito en el momento mismo de la comisión. Véase *Pueblo v. Santiago*, supra. El designio común no tiene que probarse con prueba directa. Véase *Pueblo v. Cancel Peraza*, supra, pág. 33.

En conformidad con el Artículo 46 del Código Penal, 33 LPRA sec. 5069, son penalmente responsables de delito las personas jurídicas organizadas según las leyes del Estado Libre Asociado de Puerto Rico o autorizadas para actuar en su jurisdicción, y toda sociedad o asociación no incorporada, lo cual no excluye la posible responsabilidad individual de sus miembros, agentes o representantes de la persona jurídica.

En casos de obediencia jerárquica, entrampamiento, intimidación o violencia, será responsable del hecho delictivo la persona que ha inducido, compelido o coaccionado a realizarlo al que invoca la defensa. Véanse Artículos 28, 31 y 32 del Código Penal de 2012, según enmendado, 33 LPRA secs. 5041, 5044 y 5045.

## 4.10   Cooperadores(as)

Son cooperadores y cooperadoras las personas que, a propósito o con conocimiento, cooperan mediante actos u omisiones que no contribuyen significativamente a la consumación del delito. Una contribución es significativa cuando aumenta considerablemente la probabilidad de que se cometa el delito.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 3.3 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con el Artículo 45 (*Cooperador*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA sec. 5068); el Artículo 44 (*Cooperador*) del Código Penal de 2004, Ley 149-2004 (33 LPRA sec. 4672). Véase *Pueblo v. Sustache Sustache*, 176 DPR 250 (2009).

**COMENTARIO:**

La figura del cooperador, codificada en el Artículo 45 del Código Penal, *supra,* tiene el propósito de responsabilizar a las personas que participaron de un hecho delictivo mediante omisiones o actos que no son significativos. Las personas que contribuyen significativamente al hecho delictivo se castigan como autoras al amparo del Artículo 44(d) del precitado cuerpo normativo.

La figura del (de la) cooperador(a) garantiza que una persona responda en proporción a la colaboración provista. Esta figura permite que el Ministerio Público emprenda una causa penal contra una persona cuya participación no cumpla con los requisitos para ser considerada autora, pero que, aunque contribuyó, no fue una contribución significativa para la consumación del delito. Véase Informe de la Comisión Conjunta para la Revisión del Código Penal y para la Reforma de las Leyes Penales sobre el P. del S. 1210, Senado de Puerto Rico, 12 de noviembre de 2014, pág. 85.

El Artículo 45 impone responsabilidad penal a las personas que contribuyen a la consumación de un delito con actos triviales o de poca monta que no merecen el castigo reservado para los(as) autores(as). De igual forma, la persona cooperadora debe actuar a propósito o con conocimiento y, por lo tanto, no es posible acusarla por contribuir al hecho delictivo mediante temeridad. El Prof. Luis E. Chiesa Aponte ejemplifica la cooperación que no es significativa:

> [U]na persona […] proporciona un fósforo para quemar una estructura. Este supuesto constituye un caso de cooperación en lugar de autoría, ya que los fósforos se consiguen en cualquier lugar […] En vista de lo fácil que es conseguir fósforos, proporcionar dicho bien no contribuye de forma decisiva a la comisión del delito y, por ende, debe castigarse mediante la pena menor que se le impone al cooperador. L.E. Chiesa Aponte, *Comentarios al P del S. 1210 [y] P de la C. 2155*, 27 de octubre de 2014, pág. 22.

Es cooperador(a) únicamente "si […] no tiene duda de que el fósforo será usado para causar un incendio o si […] desea que el fósforo sea utilizado de ese modo. No obstante, el sujeto no sería castigado como cooperador si está consciente—sin estar seguro—de que el fósforo puede ser utilizado para quemar una estructura". Íd., págs. 22-23.

Otro ejemplo sobre la figura del (de la) cooperador(a) a tenor del Artículo 45 lo ofrece la Dra. Dora Nevares-Muñiz:

> [L]a persona que presta su vehículo sabiendo que lo usarán en un delito, pero no tiene los detalles ni el marco completo del plan delictivo; su colaboración no es significativa ya que un vehículo es un bien de fácil acceso. Sin embargo, si lo que presta es un arma de fuego, conociendo que se utilizará para matar a una persona, entonces sería coautor bajo el Art. 44(d), pues contribuyó de manera significativa [al] hecho delictivo al proveer un bien escaso y además, tenía el estado mental (propósito o conocimiento) requerido para este grado de coautoría. D. Nevares-Muñiz, *Código Penal de Puerto Rico*, 4ta ed. rev., San Juan, Ed. Instituto para el Desarrollo del Derecho, 2019, págs. 93-94.

En ambos ejemplos se utiliza la teoría de los bienes escasos como criterio para ayudar a determinar cuándo la asistencia del cooperador o de la cooperadora se considera

significativa o no. Aunque la teoría de bienes escasos es un punto de partida para su determinación, el Prof. Luis E. Chiesa Aponte expone que, en ciertos casos, la prestación de un bien escaso no necesariamente aumenta en forma significativa la probabilidad de que se consuma un delito y, por lo tanto, la ayuda provista por el (la) cooperador(a) no se considera significativa. Véase L.E. Chiesa Aponte, *Autores y cooperadores*, 79 (Núm. 4) Rev. Jur. UPR 1163, 1179 (2010).

## 4.11   Coautores(as)

En este juicio se están juzgando a **[indique la cantidad]** acusados(as).

Si a ustedes se les demuestra, más allá de duda razonable, que todos los (las) acusados(as) se unieron para realizar o ejecutar el acto que se les imputa y que contribuyeron significativamente a la comisión del delito, ante la ley son coautores(as) y responsables del mismo delito, aunque una sola persona haya producido el resultado. Si, por el contrario, no se demuestra la unión de voluntades de todas las personas acusadas en la realización del acto, entonces la responsabilidad habrá de recaer sobre quienes actuaron conjuntamente o sobre quien lo realizó por sí solo(a).

Cuando se trata de dos o más personas acusadas, el Jurado no está obligado a rendir el mismo veredicto para cada una de ellas. Ustedes deben resolver, de acuerdo con la apreciación de la prueba, en cuanto a cada acusado(a) en particular y, a base de ello, deberán determinar su culpabilidad o no culpabilidad por separado.

**[Si la prueba lo justifica, el tribunal debe impartir la Instrucción 4.10 sobre cooperadores(as)].**

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 3.4 del Proyecto de Libro de Instrucciones al Jurado de 2008 y de las Instrucciones al Jurado para el Tribunal Superior de Puerto Rico de 1976, pág. 46. Guarda relación con la Regla 150 (*Jurado; veredicto parcial*) de Procedimiento Criminal de 1963 (34 LPRA Ap. II). Véanse *Pueblo v. Serrano Pagán*, 85 DPR 684 (1962); *Pueblo v. Pacheco Stevenson*, 83 DPR 842 (1961); *Pueblo v. Nicole*, 71 DPR 866 (1950); *Pueblo v. Escobar*, 55 DPR 505 (1939).

## 4.12   Testimonio del (de la) Coautor(a)

En este caso el Ministerio Público presentó, como testigo de cargo, a una persona que alegadamente participó voluntaria e intencionalmente en la comisión del delito por el cual se está juzgando a la persona acusada. Debido a su supuesta participación en el acto delictivo, el (la) testigo de cargo está sujeto(a) a ser procesado(a) o encausado(a) por el mismo delito que la persona acusada aquí.

Por esta razón, su testimonio debe examinarse con desconfianza. Ustedes darán el peso y la credibilidad que les merezca luego de examinar su testimonio con cautela juntamente con toda la evidencia presentada en el caso.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 3.5 del Proyecto de Libro de Instrucciones al Jurado de 2008 y de las Instrucciones al Jurado para el Tribunal Superior de Puerto Rico de 1976, pág. 47. Guarda relación con la Regla 156 (*Juicio; testimonio del coautor y cooperador*) de Procedimiento Criminal de 1963 (34 LPRA Ap. II). Véase *Cool v. US*, 409 US 100 (1972).

**COMENTARIO:**

Esta Instrucción se debe impartir por imperativo de la Regla 156 de Procedimiento Criminal, *supra*. Esta regla dispone expresamente que "[e]l testimonio de un coautor o del cooperador será examinado con desconfianza y se le dará el peso que estime el juez o el jurado luego de examinarlo con cautela a la luz de toda la evidencia presentada en el caso. En los casos celebrados por jurado se le ofrecerán al Jurado instrucciones a esos efectos". 34 LPRA Ap. II, pág. 678 (ed. 2016). Aunque la regla no parece distinguir entre el (la) coautor(a) que declara en su defensa y el (la) coautor(a) que se sienta a declarar por el Ministerio Público, la jurisprudencia que la discute, analiza e interpreta se refiere al segundo caso. El caso ordinario es cuando el (la) coautor(a) cuenta con inmunidad o con alguna otra promesa del Ministerio Público.

## D.  De la Tentativa

### 4.13  Tentativa

**[Debe impartirse esta Instrucción cuando se imputa un delito cometido a propósito o con conocimiento].**

En este caso se le imputa al (a la) acusado(a) el delito de tentativa de **[indique el delito]**.

La ley dispone que existe tentativa cuando una persona actúa con el propósito de realizar el delito o con conocimiento de que producirá el delito, y esta persona lleva a cabo acciones inequívocas e inmediatamente dirigidas a cometer un delito, el cual no se completa por circunstancias ajenas a su voluntad.

La tentativa de delito requiere que la persona:

(1) actúe con el propósito o con conocimiento de producir el delito;

(2) incurra en actos que sin duda alguna vayan dirigidos a cometer el delito;

(3) realice acciones que se producen inmediatamente antes de la consumación del delito,

(4) que no se completó el delito por circunstancias ajenas a voluntad de la persona acusada.

**[Cuando se trate de una tentativa imposible, el tribunal deberá añadir lo siguiente:**

Una persona también puede incurrir en tentativa de delito aun cuando no era posible lograr el resultado deseado. Esto ocurre cuando los actos están, sin duda alguna (inequívocamente), dirigidos a cometer un delito y una persona promedio, en la misma posición de la persona acusada, entendería que sus actos eran adecuados para lograr el delito.

Sin embargo, no se configurará la tentativa si la persona acusada conocía de antemano que por las circunstancias era imposible cometer el delito.

Al realizar este análisis, ustedes deberán ubicarse en la misma posición de la persona acusada al momento de llevar a cabo el acto, y considerar el propósito, las circunstancias y el contexto en que actuó**].**

Si después de evaluar cuidadosamente toda la prueba presentada y admitida ustedes consideran que el Ministerio Público probó más allá de duda razonable cada uno de los cuatro elementos mencionados, entonces deberán declarar a la persona acusada culpable del delito de tentativa de **[indique el delito].**

Si del resultado del análisis cuidadoso de toda la prueba presentada y admitida ustedes consideran que el Ministerio Público no probó más allá de duda razonable cada uno de los cuatro elementos mencionados **[en casos de tentativa imposible, el tribunal deberá añadir lo siguiente:** o que la persona acusada conocía de antemano que por las circunstancias era imposible cometer el delito**]**, entonces deberán declarar a la persona acusada no culpable del delito de tentativa de **[indique el delito].**

**REFERENCIA:**

Esta Instrucción proviene, en parte, de la Instrucción 5.1 del Proyecto de Libro de Instrucción al Jurado de 2008 y del libro de Instrucciones al Jurado para el Tribunal Superior de Puerto Rico de 1976, pág. 56. Guarda relación con el Artículo 35 (*Definición de la tentativa*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA sec. 5048). Véase *Pueblo v. Carmona, Rivera*, 143 DPR 907 (1997).

**COMENTARIO:**

El Artículo 35 del Código Penal de 2012 mantuvo como requisito de la tentativa que "la persona realiza acciones inequívoca e inmediatamente dirigidas a la comisión de un delito que no se consuma por circunstancias ajenas a su voluntad". Ahora bien, la Ley 246-2014 se refiere ahora al tipo subjetivo de la tentativa: a propósito o con conocimiento. Por lo tanto,

es insuficiente con la temeridad. Por supuesto, no hay tentativa en delitos de negligencia, como lo sería la tentativa de homicidio negligente. Véase *Pueblo v. Carmona, Rivera*, supra.

La exigencia de propósito o, al menos, de conocimiento, con la implicación de que no basta con la temeridad, se advierte en casos como *Pueblo v. Colón Soto*, 109 DPR 545 (1980). Un sujeto hace alarde de que puede volarle la gorra de un disparo a una persona que estaba tranquilamente sentada en el lugar. El sujeto dispara y muere la víctima. El Tribunal Supremo confirma una sentencia por homicidio involuntario y nota que pudo haber sido responsable por el asesinato, mas lo que ahora nos concierne es qué ocurre si, en efecto, el sujeto tiene éxito en su acción y le vuela la gorra de un disparo a la potencial víctima sin que esta sufra daño. ¿Habría tentativa de asesinato? Debido a que el Artículo 35 exige, al menos, conocimiento (que el sujeto crea que la muerte de la víctima es una consecuencia segura o casi segura de su acción), no hay responsabilidad penal por tentativa de asesinato, pues lo más que puede decirse es que el sujeto actuó con temeridad. Si el sujeto mata a la víctima con el disparo, habría temeridad y asesinato.

En conformidad con el Artículo 35 del Código Penal de 2012, *supra*, habría tentativa de asesinato si la persona imputada actuó con el propósito de que la víctima muriera, pero también respondería por tentativa de asesinato, aunque no tuviera el propósito de matar a la víctima, si sabía que era una consecuencia casi segura de que la víctima moriría. No obstante, sería insuficiente si la persona imputada solo actuó temerariamente en relación con el resultado. En otras palabras, que en Puerto Rico no hay tentativa de delito si la persona imputada solo actuó con temeridad o negligencia en relación con el resultado.

Los elementos de (1) acciones *inequívocamente* dirigidas a la consumación del delito y (2) acciones *inmediatamente* dirigidas a la consumación del delito establecidos en el Artículo 35, *supra*, son dos cosas separadas y hay que cumplir con ambas. Estos requisitos se refieren a los elementos objetivos para la tentativa.

El concepto "inequívocamente" se refiere a que los actos imputados a la persona acusada reflejen sin ambigüedad que van dirigidos a la comisión del delito. Se trata de que no haya ambigüedad en la acción u omisión de la persona imputada. Digamos que se imputa tentativa de hurto de un carro estacionado en una plazoleta. La conducta de la persona acusada de delito consiste en que miraba al interior del carro y contemplaba su exterior, conducta que no refleja manifiesta criminalidad, por razón de su ambigüedad. La conducta es compatible con mirar entusiasmado el carro porque es un modelo que le gusta y considera comprar uno igual. Otro ejemplo que suele usarse es el caso de tentativa de incendio de una casa. La conducta de la persona imputada de pararse frente a la casa y sacar un encendedor es compatible con que va a encender un cigarrillo; hay ambigüedad. Más importante es el elemento de "inmediatez". Esto se refiere a la gran polémica en cuanto a en qué punto ya la acción es suficiente para la tentativa. Unos colocan ese punto bien temprano, lo que le permite a la Policía intervenir prontamente con el sujeto. Otros colocan ese punto bien cercano a la comisión del delito, con más oportunidad del sujeto para desistir antes de haber incurrido en la tentativa del delito, pero impide la pronta acción de la Policía para intervenir o arrestar. Se cita con frecuencia a *People v. Rizzo*, 158 NE 888 (NY 1927), para ilustrar este modelo. Cuando el Artículo 35 adopta la exigencia de acciones *inmediatamente* dirigidas a la comisión del delito, opta por el modelo *Rizzo*, en cuanto sitúa la tentativa muy cerca de la comisión del delito. El Código Penal Modelo optó por "paso sustancial" (*substantial step*)

como suficiente para el elemento subjetivo de la tentativa. Este modelo permite la responsabilidad por tentativa antes de lo que se requiere para la "inmediatez", como se hace en nuestro Artículo 35.

Se trata de determinar en qué momento posterior a los actos preparativos ya se satisface el elemento objetivo de la tentativa. Aquí hay que considerar el plan del (de la) autor(a). Se satisface el requisito de la "inmediatez" cuando ya, conforme a ese plan, se comenzó a realizar el *último acto necesario para producir el resultado*. El requisito de inmediatez se ilustra con el ejemplo que sigue: Jaime quiere matar a Juan tendiéndole una trampa que lo hace caer en un hoyo y lo inmoviliza, para que muriera de inanición. En efecto, Juan cayó en la trampa. Pero poco antes de morir por inanición, Juan fue salvado por unas personas que oyeron sus gritos de auxilio. Hay tentativa de asesinato pues el autor realizó el último acto necesario conforme su plan. No obstante, si el plan de Jaime es que Juan cayera en la trampa para luego sacarlo y llevarlo a un lugar desolado para matarlo a tiros, no se satisface el elemento de "inmediatez". Véase L.E. Chiesa Aponte, *Derecho penal sustantivo*, 2da ed., San Juan, Publicaciones JTS, 2013, pág. 206.

Lo importante es que se comenzó a realizar el último acto necesario para producir el resultado del delito, conforme el plan del autor. Si el autor (Jaime) fue sorprendido al estar tendiendo la trampa, se satisface el requisito.

Este requisito de la inmediatez pone el tipo objetivo muy cerca del delito consumado, lo que hace más difícil el arresto antes de la consumación. En el Código Penal Modelo, Sec. 5.01(c), se opta por el concepto de "paso sustancial":

> (c) purposely does or omits to do anything that, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime.

El problema consiste en determinar cuándo terminan los planes preparatorios y comienzan los actos de ejecución suficientes para la tentativa. Hay dos maneras o enfoques para abordar esto: (1) cuánto falta por hacer y (2) cuánto ya se ha hecho. La teoría de la "inmediatez" se fija más en lo primero: todavía queda mucho por hacer conforme el plan del (de la) autor(a). Otras teorías consideran que lo ya hecho es suficiente para la tentativa, con el efecto de que permiten desde más temprano la intervención de la Policía.

Si la prueba lo justifica en cuanto a que la defensa sostiene que el delito no se consumó por desistimiento voluntario del acusado, procede la Instrucción 4.14 sobre desistimiento voluntario.

También hay que instruir al Jurado sobre qué significa que el delito no se consuma por *causas ajenas a su voluntad*. Si la persona desiste ante las circunstancias incompatibles con el éxito de su propósito, se trata de *causas ajenas a su voluntad*. "Quiero, pero no puedo" no exime de responsabilidad por tentativa; "puedo, pero no quiero" tiende a eximir de responsabilidad. No obstante, se trata de materia muy compleja.

La doctrina distingue entre "tentativa acabada" y "tentativa inacabada". En la tentativa acabada, conforme el plan de la persona autora, esta ha hecho todo lo que debía hacer para que se produjera el resultado. Un ejemplo sería colocar el veneno en la bebida que todas las

noches se toma la víctima. Otro ejemplo es dispararle a la víctima con el propósito de matarla. En la tentativa no acabada, la persona autora no ha terminado con todo cuanto se proponía hacer conforme su plan. Ejemplos: el (la) autor(a) no pudo poner el veneno en el vaso porque fue sorprendido por el (la) ayudante doméstico(a); el (la) autor(a) planificaba secuestrar a la víctima para luego matarla, pero vio frustrado su plan de secuestrar a la víctima. En el caso de la tentativa acabada, ya no es posible desistir y solo cabe el arrepentimiento eficaz. Tal sería el caso de quien pone el veneno en la bebida y luego se arrepiente y retira el vaso con el veneno.

En cuanto al tema de la tentativa imposible, también llamada tentativa inidónea o delito imposible, el Tribunal Supremo de Puerto Rico resolvió en *Pueblo v. Reyes Carrillo*, 2021 TSPR 130, que nuestro ordenamiento penal permite la punición de este tipo de tentativa. En este caso, el señor Reyes Carrillo adquirió lo que suponía era un paquete de cocaína, pero que realmente era harina de trigo.

En su análisis, el Tribunal Supremo determinó que en nuestro ordenamiento penal la figura de la tentativa imposible se regirá por la teoría civilista que incorpora los elementos objetivos y subjetivos. Nuestro Más Alto Foro concluyó lo siguiente:

> [...] se interpretará que bajo la figura de la tentativa inidónea existen acciones inequívocamente dirigidas a cometer un delito cuando el peligro de lesión al bien jurídico protegido fuese patente para una persona promedio que, estando en la misma posición del actor, pensaría que la acción ejecutada razonablemente tenía una probabilidad real de producir el resultado pretendido. Aplicando este análisis, cumplirán con el requisito de inequivocidad aquellas acciones que de su faz razonablemente constituyan para un observador objetivo evidencia suficiente de la intención criminal del acusado, a pesar de que fuesen inidóneas para el fin propuesto.

> En la situación que el actor conociera la imposibilidad de consumarse un delito, sus acciones no serían punibles como tentativa. Esto porque sus actuaciones no podrían considerarse que estaban inequívocamente dirigidas a cometer determinado delito cuando desde el inicio conocía que era imposible delinquir.

Otros ejemplos que sirven para ilustrar la figura de la tentativa inidónea son: disparar a un cadáver (víctima muere un segundo antes de los disparos); meter la mano en un bolsillo vacío para hurtar dinero; disparar a una estatua de cera, y disparar a un carro blindado.

## 4.14   Desistimiento

La ley dispone que, si la persona desiste voluntariamente de cometer el delito o si, luego de haber comenzado su ejecución, evita su resultado, no estará sujeta a pena alguna, excepto por los actos realizados que constituyen delitos por sí mismos. Esto significa que, si la persona acusada voluntaria y espontáneamente desiste o se arrepiente de cometer el delito, no se le impondrá responsabilidad criminal.

La ley establece dos situaciones en las cuales procede el desistimiento:

(1) Cuando la persona ha empezado a cometer el delito, pero se arrepiente y no sigue adelante con sus actos dirigidos a producir el resultado.

(2) Cuando, después de haber terminado los actos dirigidos a producir el resultado, la persona hace gestiones claras para impedir que ese resultado se produzca.

En ambos casos a la persona acusada no se le impondrá responsabilidad por el delito de **[indique el delito].**

**[Si en el curso de los hechos imputados la persona acusada incurrió en otros delitos por los cuales hubo acusación, el tribunal debe impartir la instrucción correspondiente a esos delitos].**

Si hubo otra razón que lo (la) obligara a [abandonar el lugar] [interrumpir los actos que estaba empezando a realizar] [estaba realizando] [acababa de realizar], entonces no se entenderá que hubo desistimiento.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable que la persona acusada cometió los hechos por los que se le acusa y que no desistió voluntariamente de cometer el delito, deberán rendir un veredicto de culpable.

Si, por el contrario, la evidencia en apoyo al desistimiento voluntario, considerada junto con toda la prueba, crea en ustedes duda razonable de que la persona acusada desistió voluntariamente de cometer el delito, deberán rendir un veredicto de no culpable.

En cambio, si la evidencia en apoyo del desistimiento voluntario, considerada junto con toda la prueba, crea en ustedes duda razonable de que la persona acusada desistió voluntariamente de cometer el delito **[indique el delito]**, pero que el Ministerio Público probó más allá de duda razonable los otros delitos imputados **[especifique el (los) delito(s) imputado(s)]**, deberán rendir un veredicto de culpable en el delito **[indique el (los) delito(s)]**, pero no en cuanto al delito **[indique el delito].**

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 5.2 del Proyecto de Libro de Instrucciones al Jurado de 2008 y de las Instrucciones al Jurado para el Tribunal Superior de Puerto Rico de 1976, pág. 57. Guarda relación con el Artículo 37 (*Desistimiento*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA sec. 5050); el Artículo 37 (*Desistimiento*) del Código Penal de 2004, Ley 149-2004 (33 LPRA sec. 4665); el Artículo 28 (*Desistimiento*) del Código Penal de 1974, Ley 115 de 22 de julio de 1974. Véanse *Pueblo v. Suárez Fernández*, 116 DPR 842 (1986); *Pueblo v. Lucret Quiñones*, 111 DPR 716 (1981); *Pueblo v. Lamboy*, 38 DPR 230 (1928).

**COMENTARIO:**

El concepto *desistimiento* consiste en la interrupción que el autor o la autora realiza por obra de su espontánea y propia voluntad en el proceso del delito, evitando así su perfección.

El desistimiento voluntario que exonera de responsabilidad penal es el nacido de la voluntad de la persona y no el impuesto por circunstancias independientes de su libre determinación, aunque hayan influido en esta. *Pueblo v. Lucret Quiñones*, supra.

*La figura jurídica del desistimiento en la punibilidad de la tentativa; naturaleza jurídica del desistimiento en la tentativa*

Por definición del Artículo 35 del Código Penal, 33 LPRA sec. 5048, la punibilidad por tentativa ocurre cuando el delito se frustra por causas ajenas a la voluntad del autor o de la autora. Por lo tanto, si la frustración del resultado se debe a una actividad intencional del autor o de la autora, el acto ejecutorio no permite la responsabilidad en grado de tentativa.

*Modalidades de desistimiento*

El Artículo 37 del Código Penal, *supra*, provee dos modalidades de desistimiento de la consumación del delito: el desistimiento propiamente dicho y la evitación del resultado. En ambos casos, el desistimiento debe ser voluntario o producto de una decisión propia del autor o de la autora.

*El desistimiento propiamente dicho (la tentativa incompleta)*

Como vimos, para que se pueda configurar la responsabilidad en grado de tentativa, se requiere el inicio de actos ejecutorios. A esos efectos, la primera modalidad provista por el Artículo 37 del Código Penal se refiere a los casos en que el autor o la autora, luego de haber iniciado la ejecución, cambia de parecer o propósito e interrumpe su actividad delictiva, entendiéndose que se arrepiente y no continúa la ejecución de actos que pongan en peligro real e inmediato el bien jurídico.

*La evitación del resultado (tentativa completa)*

Conforme esta modalidad, el autor o la autora termina el acto ejecutorio causando un daño o peligro inmediato al bien jurídico, pero, luego de ejecutarlo, por arrepentimiento y mediante actos manifiestos, evita que el resultado constituyente del momento consumativo del delito se verifique.

*El elemento de voluntariedad*

La figura central del desistimiento recae sobre un elemento mental que debe probarse a través de actos que demuestren la intención del autor o de la autora de no continuar con los actos ejecutorios o de evitar los resultados de los actos ejecutorios completados. En cuanto a la prueba de desistimiento según los elementos mencionados, el Tribunal Supremo ofreció unos criterios guías en el caso *Pueblo v. Lamboy*, supra, pág. 236, que se resumen como sigue:

(1) El abandono de la tentativa no puede probarse mediante meras conjeturas o mediante declaraciones de un cambio mental. Al igual que la declaración de la intención de hacer algo no constituye una tentativa penable, la declaración de una intención de abandonar la tentativa tampoco constituye desistimiento.

(2) Deben haberse realizado actos tendentes a demostrar que en realidad hubo tal abandono (tentativa incompleta). Si el abandono es causado por el temor de ser detenido, ello no constituye defensa alguna si la tentativa llegó a tal punto de ser ejecutada que sería penable *per se* antes de ser abandonada (tentativa completa).

Estas guías se refieren a la prueba del desistimiento propiamente dicho o tentativa incompleta. Para evitar la punibilidad por tentativa en el caso de la modalidad correspondiente a la evitación del resultado, la prueba debe demostrar las diligencias o los actos reales practicados por el acusado o la acusada para evitar la consumación del delito.

El reconocimiento del desistimiento como una causa que excluye la punibilidad de la tentativa es un acto de voluntad legislativa para prevenir la comisión de delitos. Por ello, se exige prueba de la voluntariedad del autor o de la autora de abandonar la empresa o evitar los resultados. Esta prueba se basará en los criterios del Artículo 21 del Código Penal, 33 LPRA sec. 5034, según el cual, el elemento mental se manifiesta por las circunstancias relacionadas con el hecho, la capacidad mental, las manifestaciones y la conducta de la persona. Así, para que se pueda determinar si el abandono del curso de conducta o la evitación del resultado son voluntarias, habrá que determinar si al momento de tomar su decisión, el autor o la autora estaba libre de ejercer su selección de continuar con el delito o dejar que se verificara el resultado.

## E.    DE LOS DELITOS Y SUS ELEMENTOS

### 4.15    Los Delitos y sus Elementos

Contra **[indique el nombre de la persona acusada]** se ha(n) presentado **[indique la cantidad]** acusación(es) por el (los) delito(s) de **[indique el (los) delito(s)]**.

Todo delito tiene sus elementos o requisitos particulares. Cada elemento y la conexión de la persona acusada con el delito tienen que ser probados por el Ministerio Público más allá de duda razonable.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 1.7 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con el Artículo 18 (*Formas de comisión*), el Artículo 19 (*Lugar del delito*), el Artículo 20 (*Tiempo del delito*), el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*), y el Artículo 22 (*Elementos subjetivos del delito*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5031-5035).

**COMENTARIO:**

Esta Instrucción sirve de antesala a las instrucciones de los delitos particulares.

CAPÍTULO 5
## DELITOS CONTRA LA VIDA

A.    ASESINATOS

### 5.1    Asesinato en Primer Grado a propósito o con conocimiento (Art. 93(a) del Código Penal de 2012)

Contra la persona acusada se ha presentado una acusación por el delito de Asesinato en Primer Grado. Se le acusa de dar muerte a un ser humano a propósito o con conocimiento.

Los elementos de este delito son los siguientes:

> (1) Dar muerte a un ser humano,
>
> (2) a propósito o con conocimiento.

"Dar muerte a un ser humano" significa que los actos o las omisiones de una persona ocasionaron la muerte a un ser humano y que la muerte no fue un resultado demasiado lejano o accidental, ni dependió demasiado de algún acto voluntario de otra persona.

El propósito y el conocimiento son estados mentales.

Una persona actúa "a propósito" cuando su objetivo consciente es causar la muerte a un ser humano. **[El tribunal podría ilustrar este elemento con el ejemplo siguiente:** cuando una persona le pone veneno a otra persona con el propósito de causarle la muerte**]**.

Una persona actúa "con conocimiento" cuando es consciente que la producción de la muerte es una consecuencia prácticamente segura de su conducta. **[El tribunal podría ilustrar este elemento con el ejemplo siguiente:** cuando se coloca una bomba en un avión con el propósito de que muera una persona, esa bomba estalla en el avión y mata no solo a la persona que se quería matar sino también a otras personas que se encontraban en el avión en ese momento. Aunque la acción no iba dirigida voluntariamente a producir ese resultado, la ley considera que la persona mató con conocimiento a las demás personas**]**.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no a propósito o con conocimiento. Pueden inferir o deducir razonablemente de la prueba presentada y admitida el propósito o el conocimiento al dar muerte a un ser humano. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable que la persona acusada dio muerte a un ser humano, y que actuó a propósito o con conocimiento, deberán rendir un veredicto de culpable por Asesinato en Primer Grado.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran

que el Ministerio Público no probó más allá de duda razonable que la persona acusada dio muerte a un ser humano, y que actuó a propósito o con conocimiento, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por Asesinato en Primer Grado.

**REFERENCIA:**

Esta Instrucción proviene de las Instrucciones 7.1, 7.2 y 7.3 del Proyecto de Libro de Instrucciones al Jurado de 2008 y de la instrucción equivalente del libro de Instrucciones al Jurado para el Tribunal Superior de Puerto Rico de 1976, págs. 103-104. Guarda relación con el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*), el Artículo 22 (*Elementos subjetivos del delito*), el Artículo 92 (*Asesinato*) y el Artículo 93(a) (*Grados de asesinato*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5034, 5035, 5141 y 5142); el Artículo 105 (*Asesinato*) y el Artículo 106 (*Grados de asesinato*) del Código Penal de 2004, Ley 149-2004 (33 LPRA secs. 4733 y 4734); el Artículo 82 (*Asesinato*) y el Artículo 83 (*Grados de asesinato*) del Código Penal de 1974, Ley Núm. 115 de 22 de julio de 1974 (1974 [Parte 1] Leyes de Puerto Rico 474).

**COMENTARIO:**

La Ley 246-2014 enmendó el Artículo 93(a) del Código Penal de 2012 para sustituir el elemento de premeditación por *a propósito* o *con conocimiento*, elementos subjetivos del delito que encuentran su origen en el Código Penal Modelo. Ello, naturalmente, requirió una modificación sustancial de la instrucción pertinente que se centraba en definir el principio de premeditación cobijado por el Código Penal de 2004.

Por otra parte, el Proyecto de Libro de Instrucciones al Jurado de 2008 desglosaba en tres Instrucciones los principios que se cobijan en esta Instrucción. Por un lado, en la Instrucción 7.1 definía, a modo general, el término "asesinato" y en la Instrucción 7.2 definía las modalidades de intención seguidas de la instrucción específica en torno a los elementos del delito particular imputado. Esto no brindaba información al Jurado sobre los elementos inaplicables a la modalidad de asesinato imputado, lo cual tenía el potencial de generar confusión en este aspecto tan complejo del Derecho.

Para un trasfondo histórico del delito de asesinato, refiérase a O.E. Miranda Miller, *Premeditación y grados de asesinato: Propuesta para un cambio*, 82 Rev. Jur. UPR 943 (2013).

Adviértase que los principios de la Instrucción 4.5 se recogen en la Instrucción 5.1 atemperados al delito de asesinato, por lo que no es necesario impartir también la Instrucción 4.5.

Toda instrucción de los delitos particulares debe ir precedida de la Instrucción 4.15, que alude a la definición del concepto "elementos del delito".

**5.2    Asesinato en Primer Grado por medio de veneno**
**(Art. 93(a) del Código Penal de 2012)**

Contra la persona acusada se ha presentado una acusación por el delito de Asesinato en Primer Grado por medio de veneno.

"Asesinato", según lo define la ley, es dar muerte a un ser humano a propósito, con conocimiento o temerariamente.

Los elementos de este delito son los siguientes:

(1) Dar muerte a un ser humano,

(2) por medio del uso de veneno y

(3) que la persona actuó a propósito, con conocimiento o temerariamente.

"Dar muerte a un ser humano" significa que los actos o las omisiones de una persona ocasionaron la muerte a un ser humano y que la muerte no fue un resultado demasiado lejano o accidental, ni dependió demasiado de algún acto voluntario de otra persona.

"Veneno" es cualquier sustancia que, introducida en un ser vivo, es capaz de producir graves alteraciones funcionales e incluso la muerte.

El propósito, el conocimiento y la temeridad son estados mentales.

Una persona actúa "a propósito" cuando su objetivo consciente es causar la muerte a un ser humano. **[El tribunal podría ilustrar este elemento con el ejemplo siguiente:** cuando una persona, a corta distancia, dispara a la cabeza de otra persona con un arma de fuego**]**.

Una persona actúa "con conocimiento" cuando es consciente que la muerte es una consecuencia prácticamente segura de su conducta. **[El tribunal podría ilustrar este elemento con el ejemplo siguiente:** cuando se coloca una bomba en un avión con el propósito de que muera una persona, esa bomba estalla en el avión y mata no solo a la persona que se quería matar, sino también a otras personas que se encontraban en el avión en ese momento. Aunque la acción no iba dirigida voluntariamente a producir ese resultado, la ley considera que la persona mató con conocimiento a las demás personas**]**.

Una persona actúa "temerariamente" cuando es consciente de que su conducta genera un riesgo sustancial e injustificado de que se produzca la muerte, y a pesar de conocer el riesgo, la persona continúa con su acción u omisión. Al evaluar si era consciente del riesgo, deberán determinar si había previsto la posibilidad de que existiese ese riesgo. Al momento de evaluar si un riesgo fue sustancial, deberán considerar la probabilidad de que se produjera la muerte. Al evaluar si un riesgo fue injustificado, deberán considerar lo que motivó a la persona a asumir el riesgo que produjo la muerte. **[El tribunal podría ilustrar estos elementos con el ejemplo siguiente:** cuando una persona conduce un vehículo de motor a cien millas por hora, en una zona escolar, sin una razón**]**.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no a propósito, con conocimiento o temerariamente. Pueden inferir o deducir razonablemente de

la prueba presentada y admitida el propósito, el conocimiento o la temeridad al dar muerte a un ser humano. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les he impartido, consideran que el Ministerio Público probó más allá de duda razonable que la persona acusada dio muerte a un ser humano por medio del uso de veneno, y que actuó a propósito, con conocimiento o temerariamente, deberán rendir un veredicto de culpable por Asesinato en Primer Grado.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada dio muerte a un ser humano por medio del uso de veneno, y que actuó a propósito, con conocimiento o temerariamente, o si tienen duda razonable sobre su culpabilidad, deberán rendir un veredicto de no culpable por Asesinato en Primer Grado.

**REFERENCIA:**

Esta Instrucción proviene de las Instrucciones 7.1, 7.2 y 7.4 del Proyecto de Libro de Instrucciones al Jurado de 2008 y de la instrucción equivalente del libro de Instrucciones al Jurado para el Tribunal Superior de Puerto Rico de 1976, págs. 106-108. Guarda relación con el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*), el Artículo 22 (*Elementos subjetivos del delito*), el Artículo 92 (*Asesinato*), el Artículo 93(a) (*Grados de asesinato*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5034, 5035, 5141 y 5142); el Artículo 105 (*Asesinato*) y el Artículo 106(a) (*Grados de asesinato*) del Código Penal de 2004, Ley 149-2004 (33 LPRA secs. 4733 y 4734); el Artículo 82 (*Asesinato*) y Artículo 83(a) (*Grados de asesinato*) del Código Penal de 1974, Ley Núm. 115 de 22 de julio de 1974 (1974 [Parte 1] Leyes de Puerto Rico 474).

**COMENTARIO:**

Se adopta la definición de *veneno* provista por el Diccionario de la Real Academia Española, https://dle.rae.es/?id=bWvfiiZ (última visita, 16 de febrero de 2021).

La temeridad es uno de los elementos mentales que admite este delito. Cabe señalar que, al definir el elemento subjetivo "temerariamente", ni el Código Penal de 2012 ni su historial legislativo aluden al requerimiento de demostrar "extremo menosprecio al valor de la vida humana". Sin embargo, este criterio se emplea en la Sección 210.2 del Código Penal Modelo para definir la temeridad cuando se aplica al asesinato en primer grado (*murder*), cuya definición se incluye a continuación:

(1) Except as provided in Section 210.3(1)(b), criminal homicide constitutes murder when:
  a. it is committed purposely or knowingly; or
  b. it is committed recklessly under circumstances manifesting extreme *indifference to the value of human life*. Such recklessness and indifference are presumed if the

actor is engaged or is an accomplice in the commission of, or an attempt to commit, or flight after committing or attempting to commit robbery, rape or deviate sexual intercourse by force or threat of force, arson, burglary, kidnapping or felonious escape.

(2) Murder is a felony of the first degree [but a person convicted of murder may be sentenced to death, as provided in Section 210.6]. (Énfasis suplido). American Law Institute, *A.L.I. Model Penal Code* Art. 210.2, pág. 13 (1980).

Toda instrucción de los delitos particulares debe ir precedida de la Instrucción 4.15, que alude a la definición del concepto "elementos del delito".

### 5.3    Asesinato en Primer Grado por acecho (Art. 93(a) del Código Penal de 2012)

Contra la persona acusada se ha presentado una acusación por el delito de Asesinato en Primer Grado por acecho.

"Asesinato", según lo define la ley, es dar muerte a un ser humano a propósito, con conocimiento o temerariamente.

Los elementos de este delito son los siguientes:

(1) Dar muerte a un ser humano,

(2) luego de acecharlo y

(3) que la persona actuó a propósito, con conocimiento o temerariamente.

"Dar muerte a un ser humano" significa que los actos o las omisiones de una persona ocasionaron la muerte a un ser humano y que la muerte no fue un resultado demasiado lejano o accidental, ni dependió demasiado de algún acto voluntario de otra persona.

El término "acecho" se refiere a vigilar y esperar el momento oportuno para atacar a la víctima por sorpresa.

El propósito, el conocimiento y la temeridad son estados mentales.

Una persona actúa "a propósito" cuando su objetivo consciente es causar la muerte a un ser humano. **[El tribunal podría ilustrar este elemento con el ejemplo siguiente:** cuando una persona le pone veneno a otra persona con el propósito de causarle la muerte**].**

Una persona actúa "con conocimiento" cuando es consciente que la producción de la muerte es una consecuencia prácticamente segura de su conducta. **[El tribunal podría ilustrar este elemento con el ejemplo siguiente:** cuando se coloca una bomba en un avión con el propósito de que muera una persona, esa bomba estalla en el avión y mata, no solo a la persona que se quería matar, sino también a otras personas que se encontraban en el avión en ese momento. Aunque la acción no iba dirigida voluntariamente a producir ese resultado, la ley considera que la persona mató con conocimiento a las demás personas**].**

Una persona actúa "temerariamente" cuando es consciente de que su conducta genera un riesgo sustancial e injustificado de que se produzca la muerte, y a pesar de conocer el riesgo, la persona continúa con su acción u omisión. Al evaluar si era consciente del riesgo,

deberán determinar si había previsto la posibilidad de que existiese ese riesgo. Al momento de evaluar si un riesgo fue sustancial, deberán considerar la probabilidad de que se produjera la muerte. Al evaluar si un riesgo fue injustificado, deberán considerar lo que motivó a la persona a asumir el riesgo que produjo la muerte. **[El tribunal podría ilustrar estos elementos con el ejemplo siguiente:** cuando una persona conduce un vehículo de motor a cien millas por hora, en una zona escolar, sin una razón**].**

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no a propósito, con conocimiento o temerariamente. Pueden inferir o deducir razonablemente de la prueba presentada y admitida el propósito, el conocimiento o la temeridad al dar muerte a un ser humano. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable que la persona acusada dio muerte a un ser humano, luego de acecharle, y que actuó a propósito, con conocimiento o temerariamente, deberán rendir un veredicto de culpable por Asesinato en Primer Grado.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que persona acusada dio muerte a un ser humano luego de acecharle, y que actuó a propósito, con conocimiento o temerariamente, o si tienen duda razonable sobre su culpabilidad, deberán rendir un veredicto de no culpable por Asesinato en Primer Grado.

**REFERENCIA:**

Esta Instrucción proviene de las Instrucciones 7.1, 7.2 y 7.4 del Proyecto de Libro de Instrucciones al Jurado de 2008 y de la instrucción equivalente del libro de Instrucciones al Jurado para el Tribunal Superior de Puerto Rico de 1976, págs. 106-108. Guarda relación con el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*), el Artículo 22 (*Elementos subjetivos del delito*), el Artículo 92 (*Asesinato*) y el Artículo 93(a) (*Grados de asesinato*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5034, 5035, 5141 y 5142); el Artículo 105 (*Asesinato*) y el Artículo 106(a) (*Grados de asesinato*) del Código Penal de 2004, Ley 149-2004 (33 LPRA secs. 4733 y 4734); el Artículo 82 (*Asesinato*) y el Artículo 83(a) (*Grados de asesinato*) del Código Penal de 1974, Ley Núm. 115 de 22 de julio de 1974, según enmendada, 1974 (Parte 1) Leyes de Puerto Rico 474.

**COMENTARIO:**

Para la definición de *acecho*, en el contexto del delito de Asesinato en Primer Grado, refiérase a *Pueblo v. Santiago Cedeño*, 106 DPR 663 (1978), y *El Pueblo v. Alméstico*, 18 DPR 320 (1912).

Toda instrucción de los delitos particulares debe ir precedida de la Instrucción 4.15, que alude a la definición del concepto "elementos del delito".

## 5.4    Asesinato en Primer Grado por tortura (Art. 93(a) del Código Penal de 2012)

Contra la persona acusada se ha presentado una acusación por el delito de Asesinato en Primer Grado por tortura.

"Asesinato", según lo define la ley, es dar muerte a un ser humano a propósito, con conocimiento o temerariamente.

Los elementos de este delito son los siguientes:

(1) Dar muerte a un ser humano,

(2) mediante el uso de tortura y

(3) que la persona actuó a propósito, con conocimiento o temerariamente.

"Dar muerte a un ser humano" significa que los actos o las omisiones de una persona ocasionaron la muerte a un ser humano y que la muerte no fue un resultado demasiado lejano o accidental, ni dependió demasiado de algún acto voluntario de otra persona.

"Tortura" es causar intencionalmente dolor o sufrimientos graves, ya sean físicos o mentales, a una persona que se tenga bajo custodia o control.

El propósito, el conocimiento y la temeridad son estados mentales.

Una persona actúa "a propósito" cuando su objetivo consciente es causar la muerte a un ser humano. **[El tribunal podría ilustrar este elemento con el ejemplo siguiente:** cuando una persona le pone veneno a otra persona con el propósito de causarle la muerte].

Una persona actúa "con conocimiento" cuando es consciente que la producción de la muerte es una consecuencia prácticamente segura de su conducta. **[El tribunal podría ilustrar este elemento con el ejemplo siguiente:** cuando se coloca una bomba en un avión con el propósito de que muera una persona, esa bomba estalla en el avión y mata, no solo a la persona que se quería matar, sino también a otras personas que se encontraban en el avión en ese momento. Aunque la acción no iba dirigida voluntariamente a producir ese resultado, la ley considera que la persona mató con conocimiento a las demás personas].

Una persona actúa "temerariamente" cuando es consciente de que su conducta genera un riesgo sustancial e injustificado de que se produzca la muerte, y a pesar de conocer el riesgo, la persona continúa con su acción u omisión. Al evaluar si era consciente del riesgo, deberán determinar si había previsto la posibilidad de que existiese ese riesgo. Al momento de evaluar si un riesgo fue sustancial, deberán considerar la probabilidad de que se produjera la muerte. Al evaluar si un riesgo fue injustificado, deberán considerar lo que motivó a la persona a asumir el riesgo que produjo la muerte. **[El tribunal podría ilustrar estos elementos con el ejemplo siguiente:** cuando una persona conduce un vehículo de motor a cien millas por hora, en una zona escolar, sin una razón].

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no a propósito, con conocimiento o temerariamente. Pueden inferir o deducir razonablemente de la prueba presentada y admitida el propósito, el conocimiento o la temeridad al dar muerte a un ser humano. A estos fines, se les permite considerar las circunstancias relacionadas con

los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable que la persona acusada dio muerte a un ser humano mediante el uso de tortura, y que actuó a propósito, con conocimiento o temerariamente, deberán rendir un veredicto de culpable por Asesinato en Primer Grado.

Si, por el contrario, después de ustedes analizar toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada dio muerte a un ser humano, mediante el uso de tortura, y que actuó a propósito, con conocimiento o temerariamente, o si tienen duda razonable sobre su culpabilidad, deberán rendir un veredicto de no culpable por Asesinato en Primer Grado.

**REFERENCIA:**

Esta Instrucción proviene de las Instrucciones 7.1, 7.2 y 7.4 del Proyecto de Libro de Instrucciones al Jurado de 2008 y de la instrucción equivalente del libro de Instrucciones al Jurado para el Tribunal Superior de Puerto Rico de 1976, págs. 106-108. Guarda relación con el Artículo 14 (*Definiciones*), el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*), el Artículo 22 (*Elementos subjetivos del delito*), el Artículo 92 (*Asesinato*) y el Artículo 93(a) (*Grados de asesinato*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5014, 5034, 5035, 5141 y 5142); el Artículo 105 (*Asesinato*) y el Artículo 106(a) (*Grados de asesinato*) del Código Penal de 2004, Ley 149-2004 (33 LPRA secs. 4733 y 4734); el Artículo 82 (*Asesinato*) y el Artículo 83(a) (*Grados de asesinato*) del Código Penal de 1974, Ley Núm. 115 de 22 de julio de 1974, según enmendada, 1974 (Parte 1) Leyes de Puerto Rico 474.

**COMENTARIO:**

La definición de "tortura" proviene del Artículo 14(pp) del Código Penal, donde también se define lo que no se considera tortura, al señalar que "no se entenderá por tortura el dolor a los sufrimientos que se deriven únicamente de sanciones lícitas o que sean consecuencia normal o fortuita de ellas". Esta definición de lo que no es tortura se omite de la definición provista en la instrucción por ser propio de una causa de exclusión de responsabilidad penal.

Toda instrucción de los delitos particulares debe ir precedida de la Instrucción 4.15, que alude a la definición del concepto "elementos del delito".

## 5.5 Asesinato en Primer Grado durante la comisión de ciertos delitos graves (Art. 93(b) del Código Penal de 2012)

Contra la persona acusada se ha presentado una acusación por Asesinato en Primer Grado durante la comisión o el intento de comisión de un delito grave.

Los elementos de este delito son los siguientes:

(1) Causar la muerte a un ser humano;

(2) que la muerte se haya producido como consecuencia de haberse cometido o intentado cometer el delito de **[indique el delito que aplica:**

- Incendio Agravado

- Agresión Sexual

- Robo

- Escalamiento Agravado

- Secuestro

- Secuestro de un Menor

- Estrago (excluyendo la modalidad negligente)

- Envenenamiento de Aguas de Uso Público (excluyendo la modalidad negligente)

- Agresión Grave

- Fuga

- Maltrato (excluyendo la modalidad negligente)

- Abandono de un Menor

- Maltrato (según definido en la Ley de Prevención e Intervención con la Violencia Doméstica)

- Maltrato Agravado (según definido en la Ley de Prevención e Intervención con la Violencia Doméstica)

- Maltrato Mediante Restricción de la Libertad (según definido en la Ley de Prevención e Intervención con la Violencia Doméstica)

- Agresión Sexual Conyugal (según definido en la Ley de Prevención e Intervención con la Violencia Doméstica),

(3) y que, al cometer o al intentar cometer el delito de **[indique el delito aplicable]**, la persona era consciente de que con su conducta generaba un riesgo sustancial e injustificado de que se produjera la muerte.

Al evaluar la causa de la muerte, ustedes deberán decidir si fue demasiado lejana o accidental al delito **[especifique el delito que aplica]**, ni dependió demasiado de un acto de otra persona (no participante en el delito).

Al examinar si la persona era consciente del riesgo, deberán determinar si había previsto la posibilidad de que existiese ese riesgo. Al momento de evaluar si un riesgo fue sustancial, deberán considerar la probabilidad de que se produjera la muerte. El riesgo debe ser de tal grado que, considerando la naturaleza y el propósito de la conducta y las circunstancias conocidas por la persona, la acción u omisión constituye una desviación crasa del estándar de cuidado que observaría una persona razonable en su posición. Al evaluar si un riesgo fue injustificado, deberán considerar lo que motivó a la persona a asumir el riesgo que produjo la muerte.

Esta modalidad del delito de Asesinato en Primer Grado requiere que ustedes hagan una determinación inicial de que se cometió o se intentó cometer el delito **[indique y defina el delito que aplica]**.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que impartí, consideran que el Ministerio Público probó más allá de duda razonable que la persona acusada cometió o intentó cometer el delito **[indique el delito que aplica]**, lo que generó un riesgo sustancial e injustificado de que se produjera la muerte a un ser humano, y que ello fue la causa de la muerte, deberán rendir un veredicto de culpable por Asesinato en Primer Grado.

Si, por el contrario, después de ustedes analizar toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que el acusado cometió o intentó cometer el delito **[indique el delito que aplica]** y que generó un riesgo sustancial e injustificado de que se produjera la muerte a un ser humano, o si tienen duda razonable que ello fue la causa de la muerte, deberán rendir un veredicto de no culpable por Asesinato en Primer Grado.

**REFERENCIA:**

Esta Instrucción proviene de las Instrucciones 7.1, 7.2 y 7.5 del Proyecto de Libro de Instrucciones al Jurado de 2008 y de la instrucción equivalente del libro de Instrucciones al Jurado para el Tribunal Superior de Puerto Rico de 1976, págs. 109-110. Guarda relación con el Artículo 7 (*Relación de causalidad*), el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*), el Artículo 22 (*Elementos subjetivos del delito*), el Artículo 92 (*Asesinato*) y el Artículo 93(b) (*Grados de asesinato*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5007, 5034, 5035, 5141 y 5142); el Artículo 105 (*Asesinato*) y el Artículo 106(b) (*Grados de asesinato*) del Código Penal de 2004, Ley 149-2004 (33 LPRA secs. 4733 y 4734); el Artículo 82 (*Asesinato*) y el Artículo 83(a) (*Grados de asesinato*) del Código Penal de 1974, Ley Núm. 115 de 22 de julio de 1974, según enmendada, 1974 (Parte 1) Leyes de Puerto Rico 474. Véanse *Pueblo en interés del menor ESMR*, 189 DPR 787 (2013); *Pueblo v. González,* 165 DPR 675 (2005). En torno a la causalidad véanse, además, *Pueblo v. Torres Ramos*, 121 DPR 747 (1988); *Pueblo v. Rivera Torres*, 121 DPR 128 (1988).

**COMENTARIO:**

En *Pueblo en interés del menor ESMR*, supra, pág. 799, al interpretar el Artículo 106(b) del Código Penal de 2004, *supra*, el Tribunal Supremo destacó lo siguiente:

[N]o hay lugar para acusar en situaciones en las cuales ocurre una *muerte casual*, aunque sobrevenga mientras se comete o se intenta cometer uno de los delitos base. Ello, pues el legislador fue claro e intencionalmente plasmó en el Código Penal de 2004 la palabra "asesinato" en sustitución de "muerte". Por lo tanto, el asesinato, al requerir intención, tiene que producirse ya sea como consecuencia natural de los actos del sujeto —no por el azar— o cuando su actuación contiene un riesgo conocido y aceptado por el sujeto que decide actuar, es decir, conoce la peligrosidad objetiva de su conducta. (Énfasis en el original).

La norma resulta igualmente aplicable al vigente Artículo 93(b), en consideración a que recuperó el uso del vocablo "asesinato", más sustituyó "consecuencia natural" por "causado", que en unión al principio de relación de causalidad representa un equivalente funcional.

Si el delito base es en la modalidad de tentativa, refiérase a las instrucciones sobre Tentativa.

Toda instrucción de los delitos particulares debe ir precedida de la Instrucción 4.15, que alude a la definición del concepto "elementos del delito".

### 5.6 Asesinato en Primer Grado de funcionarios(as) del orden público y otros(as) (Art. 93(c) del Código Penal de 2012)

Contra la persona acusada se ha presentado una acusación por el delito de Asesinato en Primer Grado al dar muerte a **[especifique el cargo o la posición de la víctima]** mientras se encontraba en el cumplimiento de su deber.

"Asesinato", según lo define la ley, es dar muerte a un ser humano a propósito, con conocimiento o temerariamente.

Los elementos de este delito son los siguientes:

(1) Dar muerte a un(a) **[especifique la(s) que aplique(n) según lo alegado en el pliego acusatorio:**
- funcionario(a) del orden público
- guardia de seguridad privada
- fiscal(a)
- procurador(a) de menores
- procurador(a) de asuntos de familia
- juez(a)
- oficial de custodia**]**

(2) mientras se encontraba en el cumplimiento de su deber y

(3) que la persona actuó a propósito, con conocimiento o temerariamente.

"Dar muerte a un ser humano" significa que los actos o las omisiones de una persona ocasionaron la muerte a un ser humano y que la muerte no fue un resultado demasiado lejano o accidental, ni dependió demasiado de algún acto voluntario de otra persona.

La ley define como "funcionario del orden público" a la persona que tiene a su cargo proteger a las personas y a la propiedad, y mantener el orden y la seguridad pública. Esto incluye a toda y todo miembro de la Policía de Puerto Rico y de la Policía Municipal, agentes del Negociado de Investigaciones Especiales del Departamento de Justicia y alguaciles de la Rama Judicial. Se considera también "funcionario(a) del orden público", de carácter limitado, a todo(a) empleado(a) público(a) del gobierno estatal o federal, con autoridad expresa en ley para efectuar arrestos en el desempeño de sus funciones y responsabilidades especiales.

El propósito, el conocimiento y la temeridad son estados mentales.

Una persona actúa "a propósito" cuando su objetivo consciente es causar la muerte a un ser humano. **[El tribunal podría ilustrar este elemento con el ejemplo siguiente:** cuando una persona le pone veneno a otra persona con el propósito de causarle la muerte**].**

Una persona actúa "con conocimiento" cuando es consciente que la producción de la muerte es una consecuencia prácticamente segura de su conducta. **[El tribunal podría ilustrar este elemento con el ejemplo siguiente:** cuando se coloca una bomba en un avión con el propósito de que muera una persona, esa bomba estalla en el avión y mata, no solo a la persona que se quería matar, sino también a otras personas que se encontraban en el avión en ese momento. Aunque la acción no iba dirigida voluntariamente a producir ese resultado, la ley considera que la persona mató con conocimiento a las demás personas**].**

Una persona actúa "temerariamente" cuando es consciente de que su conducta genera un riesgo sustancial e injustificado de que se produzca la muerte, y a pesar de conocer el riesgo, la persona continúa con su acción u omisión. Al evaluar si era consciente del riesgo, deberán determinar si había previsto la posibilidad de que existiese ese riesgo. Al momento de evaluar si un riesgo fue sustancial, deberán considerar la probabilidad de que se produjera la muerte. Al evaluar si un riesgo fue injustificado, deberán considerar lo que motivó a la persona a asumir el riesgo que produjo la muerte. **[El tribunal podría ilustrar estos elementos con el ejemplo siguiente:** cuando una persona conduce un vehículo de motor a cien millas por hora, en una zona escolar, sin una razón**].**

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no a propósito, con conocimiento o temerariamente. Pueden inferir o deducir razonablemente de la prueba presentada y admitida el propósito, el conocimiento o la temeridad al dar muerte a un ser humano. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable que la persona acusada dio muerte a un(a) [funcionario(a) del orden público] [guardia de seguridad privada] [fiscal(a)] [procurador(a) de menores] [procurador(a) de asuntos de familia] [juez(a)] [oficial de custodia] mientras se encontraba en el cumplimiento de su deber, y que actuó a propósito, con conocimiento o temerariamente, deberán rendir un veredicto de culpable por Asesinato en Primer Grado.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada dio muerte a un(a) [funcionario(a) del orden público] [guardia de seguridad privada] [fiscal(a)] [procurador(a) de menores] [procurador(a) de asuntos de familia] [juez(a)] [oficial de custodia] mientras se encontraba en el cumplimiento de su deber, y que actuó a propósito, con conocimiento o temerariamente, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por Asesinato en Primer Grado.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 7.6 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*), el Artículo 22 (*Elementos subjetivos del delito*), el Artículo 92 (*Asesinato*) y el Artículo 93(c) (*Grados de asesinato*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5034, 5035, 5141 y 5142); el Artículo 105 (*Asesinato*) y el Artículo 106(c) (*Grados de asesinato*) del Código Penal de 2004, Ley 149-2004 (33 LPRA secs. 4733 y 4734); el Artículo 82 (*Asesinato*) y el Artículo 83(b) (*Grados de asesinato*) del Código Penal de 1974, Ley Núm. 115 de 22 de julio de 1974, según enmendada, 1974 (Parte 1) Leyes de Puerto Rico 474.

**COMENTARIO:**

Para fines de interpretación, conviene tener presente el tracto histórico reciente.

El Artículo 106(c) del Código Penal de 2004 definía Asesinato en Primer Grado como sigue:

> Todo *asesinato* de un miembro de la Policía, guardia escolar, guardia o policía municipal, alguacil, fiscal, procurador de menores, procurador de familia especial para situaciones de maltrato, juez u oficial de custodia que se encuentre en el cumplimiento de su deber, *cometido al consumar, intentar o encubrir un delito grave*. (Énfasis suplido). 33 LPRA sec. 4734.

Con la reforma de 2012 se ampliaron las modalidades de Asesinato en Primer Grado y se sustituyó *todo asesinato* por *toda muerte*, cambio que el Tribunal Supremo tuvo ocasión de interpretar en *Pueblo en interés del menor ESMR*, 189 DPR 787 (2013). Así las cosas, se retomó, en esencia, el lenguaje del Código Penal de 1974, que ubicamos en el Artículo 93(c) del Código Penal de 2012 y que dispone lo siguiente:

> Toda *muerte* de un funcionario del orden público o guardia de seguridad privado, fiscal, procurador de menores, procurador de asuntos de familia, juez u oficial de custodia que se encuentre en el cumplimiento de su deber, *causada al consumar, intentar o encubrir un delito grave*. (Énfasis suplido). 2012 (Parte 2) Leyes de Puerto Rico 1369.

Al proponerse la reforma de 2014, que redundó en la Ley 246-2014, se propuso sustituir nuevamente *toda muerte* por *todo asesinato*. Adviértase que, al momento de esta reforma, era conocida la interpretación del Tribunal Supremo en torno a las implicaciones de emplear el vocablo "muerte" vis a vis "asesinato", en el marco de los elementos subjetivos del delito aplicables. Originalmente se propuso el lenguaje siguiente:

> Todo *asesinato* de un funcionario del orden público o guardia de seguridad privado, fiscal, procurador de menores, procurador de asuntos de familia, juez u oficial de custodia que se encuentre en el cumplimiento de su deber. (Énfasis suplido). 33 LPRA sec. 5142(c).

La versión aprobada como Ley 246-2014 no refleja la enmienda propuesta originalmente. La Asamblea Legislativa retomó el vocablo "muerte", exclusivamente para esta modalidad de

Asesinato en Primer Grado, pero sin reincorporar el requisito final que impartía la relación causal ("causada al consumar, intentar o encubrir un delito grave"). Por lo tanto, consecuente con el Artículo 93(c) en vigor, constituye asesinato en primer grado:

> Toda *muerte* de un funcionario del orden público o guardia de seguridad privado, fiscal, procurador de menores, procurador de asuntos de familia, juez u oficial de custodia que se encuentre en el cumplimiento de su deber. (Énfasis suplido). 33 LPRA sec. 5142(c).

El Código Penal de 2012, según enmendado, distinto al Código Penal de 1974, es cerrado a la negligencia, según dispone el Artículo 23(a). Esto implica que todos los delitos requieren que se actúe a propósito, con conocimiento o temerariamente, salvo que expresamente se disponga que da cabida a la actuación negligente. Abona a lo anterior, que estamos ante una modalidad de lo que constituye asesinato en primer grado, lo cual por su propia definición implica una muerte causada a propósito, o con conocimiento, o temerariamente.

Mientras el Código Penal de 1974 no era un sistema cerrado a la negligencia, el Artículo 23(a) del Código Penal de 2012 sí lo es en el sentido de que no hay responsabilidad penal por conducta negligente salvo que la definición del delito expresamente lo permita; como mínimo se exige ahora temeridad. De ahí que de acuerdo con el Artículo 83(b) del Código de 1974, *supra*, era posible concebir una modalidad negligente de este delito, pero no así bajo el Código Penal de 2012. Así pues, a pesar de la expresión "toda muerte" en el Artículo 93(c), se requiere temeridad en relación con la muerte de la víctima.

La instrucción refleja este tracto histórico y hermenéutico, en la medida que constituye Asesinato en Primer Grado no solo la muerte de los (las) funcionarios(as) indicados(as) en el inciso (c) causada a propósito o con conocimiento, sino también la muerte que es producto de la temeridad.

Toda instrucción de los delitos particulares debe ir precedida de la Instrucción 4.15, que alude a la definición del concepto "elementos del delito".

## 5.7 Asesinato en Primer Grado al disparar un arma de fuego desde un vehículo de motor o en un lugar abierto al público (Art. 93(d) del Código Penal de 2012)

Contra la persona acusada se ha presentado una acusación por el delito de Asesinato en Primer Grado por disparar un arma de fuego desde un vehículo de motor o en lugar público o abierto al público.

"Asesinato", según lo define la ley, es dar muerte a un ser humano a propósito, con conocimiento o temerariamente.

Los elementos de este delito son los siguientes:

(1) Dar muerte a un ser humano,

(2) que la muerte sea producto de un disparo de un arma de fuego,

(3) que el disparo se hizo desde un vehículo de motor, o en un lugar público o abierto al público, ya sea a un punto determinado o indeterminado, y

(4) que la persona actuó a propósito, con conocimiento o temerariamente.

"Dar muerte a un ser humano" significa que los actos o las omisiones de una persona ocasionaron la muerte a un ser humano y que la muerte no fue un resultado demasiado lejano o accidental, ni dependió demasiado de algún acto voluntario de otra persona.

"Arma de fuego" es cualquier arma, sin importar el nombre, que sea capaz de lanzar un proyectil o proyectiles por acción de una explosión. El término arma de fuego incluye, pero no se limita a, pistola, revolver, escopeta, rifle, carabina, incluyendo el marco, armazón o el receptor donde el manufacturero coloca el número de serie de tales armas.

El propósito, el conocimiento y la temeridad son estados mentales.

Una persona actúa "a propósito" cuando su objetivo consciente es causar la muerte a un ser humano. **[El tribunal podría ilustrar este elemento con el ejemplo siguiente:** cuando una persona le pone veneno a otra persona con el propósito de causarle la muerte]**.

Una persona actúa "con conocimiento" cuando es consciente que la producción de la muerte es una consecuencia prácticamente segura de su conducta. **[El tribunal podría ilustrar este elemento con el ejemplo siguiente:** cuando se coloca una bomba en un avión con el propósito de que muera una persona, esa bomba estalla en el avión y mata, no solo a la persona que se quería matar, sino también a otras personas que se encontraban en el avión en ese momento. Aunque la acción no iba dirigida voluntariamente a producir ese resultado, la ley considera que la persona mató con conocimiento a las demás personas]**.

Una persona actúa "temerariamente" cuando es consciente de que su conducta genera un riesgo sustancial e injustificado de que se produzca la muerte, y a pesar de conocer el riesgo, la persona continúa con su acción u omisión. Al evaluar si era consciente del riesgo, deberán determinar si había previsto la posibilidad de que existiese ese riesgo. Al momento de evaluar si un riesgo fue sustancial, deberán considerar la probabilidad de que se produjera la muerte. Al evaluar si un riesgo fue injustificado, deberán considerar lo que motivó a la persona a asumir el riesgo que produjo la muerte. **[El tribunal podría ilustrar estos elementos con el ejemplo siguiente:** cuando una persona conduce un vehículo de motor a cien millas por hora, en una zona escolar, sin una razón]**.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no a propósito, con conocimiento o temerariamente. Pueden inferir o deducir razonablemente de la prueba presentada y admitida el propósito, el conocimiento o la temeridad al dar muerte a un ser humano. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable que la persona acusada dio muerte a un ser humano al disparar un arma de fuego desde un vehículo de motor o en un lugar público o abierto al público, a un punto determinado o indeterminado, y que actuó a propósito, con conocimiento o temerariamente, deberán rendir un veredicto de culpable por Asesinato en Primer Grado.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada dio muerte a un ser humano al disparar un arma de fuego desde un vehículo de motor o en un lugar público o abierto al público, a un punto determinado o indeterminado, y que actuó a propósito, con conocimiento o temerariamente, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por Asesinato en Primer Grado.

**REFERENCIA:**

Esta Instrucción es nueva, aunque proviene, en parte, de las Instrucciones 7.1, 7.2 y 7.11.2 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*), el Artículo 22 (*Elementos subjetivos del delito*), el Artículo 92 (*Asesinato*) y el Artículo 93(d) (*Grados de asesinato*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5034, 5035, 5141 y 5142); el Artículo 1.02 (*Definiciones*) de la Ley de Armas de Puerto Rico de 2020, Ley 168-2019.

**COMENTARIO:**

En el Código Penal de 2004 se clasificaba como homicidio negligente el ocasionar una muerte al apuntar o disparar con un arma de fuego hacia un punto indeterminado. Uno de los aspectos principales de la reforma del Código Penal de 2012 fue la reclasificación de esa conducta como Asesinato en Primer Grado. No obstante, como corolario de la Ley 246-2014, se sustituyó el vocablo "muerte" por "asesinato", por lo cual ahora se requiere que se cause la muerte a propósito, con conocimiento o temerariamente. Para el alcance de este cambio, refiérase a *Pueblo en interés del menor ESMR*, 189 DPR 787 (2013).

La definición de "arma de fuego" proviene del Artículo 1.02(e) de la Ley de Armas de Puerto Rico de 2020, Ley 168-2019 donde también se define lo que no constituye un arma de fuego, al excluir "aquellos artefactos tales como, pero sin limitarse a, las pistolas de clavos utilizadas en la construcción, artefactos para lanzar señales de pirotecnia o líneas, mientras se utilicen con fines de trabajo, arte, oficio o deporte".

Toda instrucción de los delitos particulares debe ir precedida de la Instrucción 4.15, que alude a la definición del concepto "elementos del delito".

## 5.8    Asesinato en Primer Grado; feminicidio (Art. 93(e) del Código Penal de 2012)

Contra la persona acusada se ha presentado una acusación por el delito de Asesinato en Primer Grado en su modalidad de feminicidio.

"Asesinato", según lo define la ley, es dar muerte a un ser humano a propósito, con conocimiento o temerariamente.

La ley dispone que comete el delito de feminicidio la persona que da muerte a una mujer [cuando la muerte haya ocurrido al cometer algún delito de maltrato, maltrato

agravado, maltrato mediante restricción de libertad o agresión sexual conyugal en contra de la alegada víctima, según definidos por la Ley para la Protección e Intervención de la Violencia Doméstica] [que presente signos de violencia sexual de cualquier tipo] [a quien se le haya infligido lesiones o mutilaciones, previas o posteriores a la privación de la vida o actos de necrofilia] [cuando la persona acusada tenga antecedentes penales por cualquier delito relacionado con violencia y/o agresiones en el ámbito familiar, laboral, escolar, académico o cualquier otro en contra de la alegada víctima] [cuando la persona acusada haya realizado actos o manifestaciones esporádicas o reiteradas, de violencia en contra de la alegada víctima, independientemente de que los hechos fueran denunciados o no por ella] [cuando la persona acusada haya tenido o haya intentado establecer o restablecer con la alegada víctima una relación sentimental, conyugal, de pareja, amistad, convivencia, intimidad, afectiva, de noviazgo, de confianza o cualquier otra relación de hecho] [cuando existan datos que establezcan que la persona acusada amenazó a la alegada víctima con el hecho delictivo, acoso, acecho o lesiones] [cuando la persona acusada haya privado a la alegada víctima de establecer cualquier tipo de comunicación verbal, escrita o visual con otras personas en cualquier periodo de tiempo previo a la privación de la vida] [cuando la persona acusada haya abandonado, expuesto o depositado el cuerpo de la alegada víctima en un lugar público] [cuando entre la persona acusada y la alegada víctima exista o haya existido una relación laboral, docente o cualquier otra que implique superioridad, ventaja o establezca una relación de poder a favor la persona acusada] [en presencia de las hijas o hijos de la alegada víctima].

Los elementos de este delito son los siguientes:

(1) Dar muerte a una mujer,

(2) **[El tribunal debe leer la(s) circunstancia(s) que aplique(n) según lo alegado en el pliego acusatorio:**

- que la muerte ocurrió al cometer algún delito de maltrato, maltrato agravado, maltrato mediante restricción de libertad o agresión sexual conyugal, según definidos por la Ley para la Protección e Intervención de la Violencia Doméstica,
- que presentó signos de violencia sexual de cualquier tipo,
- que la persona acusada le infligió lesiones o mutilaciones, previas o posteriores a la privación de la vida o cometió necrofilia, es decir, algún acto sexual con el cadáver,
- que la persona acusada tenga antecedentes penales por cualquier delito relacionado con violencia y/o agresiones en el ámbito familiar, laboral, escolar, académico o cualquier otro en contra de la alegada víctima,
- que la persona acusada realizó actos o manifestaciones esporádicas o reiteradas, de violencia en contra de la alegada víctima independientemente de que los hechos fueran denunciados o no por ella,
- que la persona acusada tuvo o intentó establecer o restablecer con la alegada víctima una relación sentimental, conyugal, de pareja, amistad,

convivencia, intimidad, afectiva, de noviazgo, de confianza o cualquier otra relación de hecho,

- que existan datos que establezcan que la persona acusada amenazó a la alegada víctima con el hecho delictivo, acoso, acecho o lesiones,
- que la persona acusada privó a la alegada víctima de establecer cualquier tipo de comunicación verbal, escrita o visual con otras personas en cualquier periodo de tiempo previo a la privación de la vida,
- que la persona acusada abandonó, expuso o depositó el cuerpo de la alegada víctima en un lugar público,
- que entre la persona acusada y la alegada víctima existe o existió una relación laboral, docente o cualquier otra que implique superioridad, ventaja o establezca una relación de poder a favor de la persona acusada,
- que la muerte ocurrió en presencia de las hijas o hijos de la alegada víctima],

(3) y que la persona actuó a propósito, con conocimiento o temerariamente.

**[El tribunal debe leer las definiciones que correspondan según lo alegado en el pliego acusatorio].**

"Dar muerte a un ser humano" significa que los actos o las omisiones de una persona ocasionaron la muerte a un ser humano y que la muerte no fue un resultado demasiado lejano o accidental, ni dependió demasiado de algún acto voluntario de otra persona.

["Maltrato" significa emplear fuerza física o violencia sicológica, intimidación o persecución contra su cónyuge, excónyuge, la persona con quien cohabita o haya cohabitado, con quien sostenga o haya sostenido una relación consensual, o con quien haya procreado un(a) hijo(a) —independientemente del sexo, estado civil, orientación sexual, identidad de género o estatus migratorio de cualquiera de las personas involucradas en la relación—, para causarle daño físico o grave daño emocional a su persona, a los bienes apreciados por esta (excepto los que pertenecen privadamente a la persona ofensora) o a otra persona].

["Violencia sicológica" significa un patrón de conducta constante ejercitada en deshonra, descrédito o menosprecio al valor personal, limitación irrazonable al acceso y manejo de los bienes comunes, chantaje, vigilancia constante, aislamiento, privación de acceso a la alimentación o descanso adecuado, amenazas de privar de la custodia de los hijos o hijas, o destrucción de objetos apreciados por la persona, excepto los que pertenecen privativamente a la persona ofensora].

["Intimidación" significa toda acción o palabra que, manifestada en forma repetitiva, tenga el efecto de ejercer una presión moral sobre el ánimo de una persona, la que por temor a sufrir algún daño físico o emocional en su persona, sus bienes o en otra persona, es obligada a llevar a cabo un acto contrario a su voluntad].

["Persecución" significa mantener a una persona bajo vigilancia constante o frecuente con su presencia en los lugares inmediatos o relativamente cercanos al hogar, residencia,

escuela, trabajo o vehículo en el cual se encuentre la persona, lo que infundiría temor o miedo en el ánimo de una persona prudente y razonable].

["Cohabitar" es sostener una relación consensual de pareja similar a la de cónyuges (personas casadas legalmente) en cuanto al aspecto de convivencia, independientemente del sexo, estado civil, orientación sexual, identidad de género o estatus migratorio de cualquiera de las personas involucradas en la relación de pareja].

["Grave Daño emocional" significa y surge cuando, como resultado de la violencia doméstica, haya evidencia prueba de que la persona muestra en forma repetitiva una o varias de las características siguientes: miedo paralizador, sentimientos de desamparo o desesperanza, sentimientos de frustración y fracaso, sentimientos de inseguridad, desamparo, aislamiento, autoestima debilitada u otra conducta similar, cuando sea producto de actos u omisiones reiteradas].

["Maltrato agravado" significa emplear fuerza física o violencia sicológica, intimidación o persecución contra su cónyuge, excónyuge, la persona con quien cohabita o haya cohabitado, con quien sostenga o haya sostenido una relación consensual, o con quien haya procreado un(a) hijo(a) —independientemente del sexo, estado civil, orientación sexual, identidad de género o estatus migratorio de cualquiera de las personas involucradas en la relación—, para causarle daño físico o grave daño emocional a su persona, a los bienes apreciados por esta (excepto los que pertenecen privadamente a la persona ofensora) o a otra persona y medie alguna de las circunstancias siguientes:(a) se penetra en la morada de la persona o en el lugar donde esté albergada y se comete el maltrato allí, en el caso de cónyuges o cohabitantes, independientemente del sexo, estado civil, orientación sexual, identidad de género o estatus migratorio de cualquiera de las personas involucradas en la relación, cuando estén separados o cuando medie una orden de protección que ordene a una de las partes el desalojo de la residencia; (b) se causa grave daño corporal a la persona; (c) se comete con un arma mortífera en circunstancias que no revisten la intención de matar o mutilar; (d) se comete en la presencia de menores de edad; (e) se comete luego de mediar una orden de protección o resolución contra la persona acusada expedida en auxilio de la víctima del maltrato; (f) se induce, incita u obliga a la persona a drogarse con sustancias controladas, o con cualquier otra sustancia o medio que altere la voluntad de la persona, o a intoxicarse con bebidas embriagantes; (g) se comete y, simultáneamente, se incurre en maltrato de una persona menor de edad (según definido en la Ley 246-2011); (h) a la víctima se le obliga o induce mediante maltrato, violencia física o sicológica a participar o involucrarse en una relación sexual no deseada con terceras personas; (i) se comete contra una mujer embarazada, (j) se comete contra una persona menor de 16 años y la persona agresora tiene 18 años o más].

[La penetración prohibida se refiere al lugar de residencia de la víctima, al lugar donde se alberga o reside temporeramente. No es necesario que esté en un albergue o una institución que provee protección, seguridad, servicios de apoyo y alojamiento a víctimas de violencia doméstica].

["Menor de edad" es una persona que al momento de los hechos no ha cumplido 18 años].

["Orden de protección" es todo mandato expedido por escrito bajo el sello de un tribunal en la cual se dictan las medidas a una persona que comete una agresión para que no incurra o lleve a cabo determinados actos o conducta constitutivos de violencia doméstica].

["Relación sexual" significa toda penetración sexual, sea vaginal, anal, orogenital, digital o instrumental. Incluye el sexo oral, y cualquier penetración sexual por la vagina o el ano, sea con el pene, el dedo o un instrumento].

["Maltrato mediante restricción de libertad" significa utilizar violencia o intimidación contra su cónyuge, excónyuge, la persona con quien cohabita o haya cohabitado, con quien sostiene o haya sostenido una relación consensual, con quien haya procreado un(a) hijo(a) —independientemente del sexo, estado civil, orientación sexual, identidad de género o estatus migratorio de cualquiera de las personas involucradas en la relación— o que utilice pretexto de que esta, o una de las personas antes mencionadas, padece de enfermedad o defecto mental para restringir su libertad con el conocimiento de la víctima].

["Violencia" significa un acometimiento personal, es decir, el empleo de fuerza física].

["Agresión sexual conyugal" significa incurrir en una relación sexual no consentida con su cónyuge, excónyuge, la persona con quien cohabita o haya cohabitado, con quien sostenga o haya sostenido una relación consensual, o con quien haya procreado un(a) hijo(a) —independientemente del sexo, estado civil, orientación sexual, identidad de género o estatus migratorio de cualquiera de las personas involucradas en la relación— en cualquiera de las circunstancias siguientes: (a) si se ha obligado a incurrir en una relación sexual mediante el empleo de fuerza, violencia, intimidación o amenaza de daño corporal grave e inmediato, (b) si se ha anulado o disminuido sustancialmente su capacidad de consentir a través de medios hipnóticos, narcóticos, deprimentes o estimulantes, o sustancias o medios similares sin su conocimiento o sin su consentimiento, (c) si por enfermedad o incapacidad mental, temporal o permanente, la víctima está incapacitada para comprender la naturaleza del acto en el momento de su realización, o (d) si se le obliga o induce mediante maltrato, violencia física o sicológica a participar o involucrarse en una relación sexual no deseada con terceras personas].

El propósito, el conocimiento y la temeridad son estados mentales.

Una persona actúa "a propósito" cuando su objetivo consciente es causar la muerte a un ser humano. **[El tribunal podría ilustrar este elemento con el ejemplo siguiente:** cuando una persona le pone veneno a otra persona con el propósito de causarle la muerte**].**

Una persona actúa "con conocimiento" cuando es consciente que la producción de la muerte es una consecuencia prácticamente segura de su conducta. **[El tribunal podría ilustrar este elemento con el ejemplo siguiente:** cuando se coloca una bomba en un avión con el propósito de que muera una persona, esa bomba estalla en el avión y mata, no solo a la persona que se quería matar, sino también a otras personas que se encontraban en el avión en ese momento. Aunque la acción no iba dirigida voluntariamente a producir ese resultado, la ley considera que la persona mató con conocimiento a las demás personas**].**

Una persona actúa "temerariamente" cuando es consciente de que su conducta genera un riesgo sustancial e injustificado de que se produzca la muerte, y a pesar de conocer el riesgo, la persona continúa con su acción u omisión. Al evaluar si era consciente del riesgo,

deberán determinar si había previsto la posibilidad de que existiese ese riesgo. Al momento de evaluar si un riesgo fue sustancial, deberán considerar la probabilidad de que se produjera la muerte. Al evaluar si un riesgo fue injustificado, deberán considerar lo que motivó a la persona a asumir el riesgo que produjo la muerte. **[El tribunal podría ilustrar estos elementos con el ejemplo siguiente:** cuando una persona conduce un vehículo de motor a cien millas por hora, en una zona escolar, sin una razón**]**.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no a propósito, con conocimiento o temerariamente. Pueden inferir o deducir razonablemente de la prueba presentada y admitida el propósito, el conocimiento o la temeridad al dar muerte a un ser humano. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable que la persona acusada dio muerte a una mujer, **[el tribunal debe leer la(s) circunstancia(s) que aplique(n) según lo alegado en el pliego acusatorio]**, y que actuó a propósito, con conocimiento o temerariamente, deberán rendir un veredicto de culpable por Asesinato en Primer Grado, en su modalidad de feminicidio.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada dio muerte a una mujer, **[el tribunal debe leer la(s) circunstancia(s) que aplique(n) según lo alegado en el pliego acusatorio]**, y que actuó a propósito, con conocimiento o temerariamente, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por Asesinato en Primer Grado, en su modalidad de feminicidio.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*), el Artículo 22 (*Elementos subjetivos del delito*), el Artículo 92 (*Asesinato*) y el Artículo 93(e) (*Grados de asesinato*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 y la Ley 40-2021 (33 LPRA secs. 5034, 5035, 5141 y 5142).

**COMENTARIO:**

En esta Instrucción está incluida la modalidad de femicidio o feminicidio. Si bien esta modalidad se concibió para supuestos en los que un hombre da muerte a una mujer, con posterioridad se ha desarrollado el derecho para aplicar la Ley para la Prevención e Intervención con la Violencia Doméstica (Ley Núm. 54 de 15 de agosto de 1989) a parejas del mismo sexo. Por lo tanto, cabe argumentar que una mujer podría ser sujeto activo. No obstante, tratándose de un feminicidio, solo se contempla a la mujer como sujeto pasivo.

Toda instrucción de los delitos particulares debe ir precedida de la Instrucción 4.15, que alude a la definición del concepto "elementos del delito".

**5.9    Asesinato en Primer Grado; transfeminicidio (Art. 93(f) del Código Penal de 2012)**

Contra la persona acusada se ha presentado una acusación por el delito de Asesinato en Primer Grado en su modalidad de transfeminicidio.

"Asesinato", según lo define la ley, es dar muerte a un ser humano a propósito, con conocimiento o temerariamente.

La ley dispone que comete el delito de transfeminicidio la persona que da muerte a otra persona cuya identidad o expresión de género, real o percibida, no corresponde con aquella asignada al nacer [cuando la muerte haya ocurrido al cometer algún delito de maltrato, maltrato agravado, maltrato mediante restricción de libertad o agresión sexual conyugal, según definidos por la Ley para la Protección e Intervención de la Violencia Doméstica] [cuando presente signos de violencia sexual de cualquier tipo] [a quien le haya infligido lesiones o mutilaciones, previas o posteriores, a la privación de la vida o actos de necrofilia] [cuando la persona acusada tenga antecedentes penales por cualquier delito relacionado con violencia y/o agresiones en el ámbito familiar, laboral, escolar, académico o cualquier otro en contra de la alegada víctima] [cuando la persona acusada haya realizado actos o manifestaciones esporádicas o reiteradas, de violencia en contra de la alegada víctima, independientemente de que los hechos fueran denunciados o no por esta] [con quien haya tenido o haya intentado establecer o restablecer una relación sentimental, conyugal, de pareja, amistad, convivencia, intimidad, afectiva, de noviazgo, de confianza o cualquier otra relación de hecho] [cuando existan datos que establezcan que la persona acusada amenazó a la alegada víctima con el hecho delictivo, acoso, acecho o lesiones] [cuando la persona acusada haya privado a la alegada víctima de establecer cualquier tipo de comunicación verbal, escrita o visual con otras personas en cualquier periodo de tiempo previo a la privación de la vida] [cuando la persona acusada haya abandonado, expuesto o depositado el cuerpo de la alegada víctima en un lugar público] [cuando entre la persona acusada y la alegada víctima exista o haya existido una relación laboral, docente o cualquier otra que implique superioridad, ventaja o establezca una relación de poder a favor de la persona acusada] [cuando ocurra en presencia de las hijas o hijos de la alegada víctima].

Los elementos de este delito son los siguientes:

(1) Dar muerte a una persona cuya identidad o expresión de género, real o percibida, no corresponde con aquella asignada al nacer,

(2) **[El tribunal debe leer la(s) circunstancia(s) que aplique(n) según lo alegado en el pliego acusatorio:**

- que la muerte ocurrió al cometer algún delito de maltrato, maltrato agravado, maltrato mediante restricción de libertad o agresión sexual conyugal, según definidos por la Ley para la Protección e Intervención de la Violencia Doméstica,

- que presentó signos de violencia sexual de cualquier tipo,

- que la persona acusada le infligió lesiones o mutilaciones, previas o posteriores a la privación de la vida o cometió actos de necrofilia, es decir, algún acto sexual con el cadáver,
- que la persona acusada tenga antecedentes penales por cualquier delito relacionado con violencia y/o agresiones en el ámbito familiar, laboral, escolar, académico o cualquier otro en contra de la alegada víctima,
- que la persona acusada realizó actos o manifestaciones esporádicas o reiteradas, de violencia en contra de la alegada víctima, independientemente de que los hechos fueran denunciados o no por esta,
- que la persona acusada tuvo o intentó establecer o restablecer con la alegada víctima una relación sentimental, conyugal, de pareja, amistad, convivencia, intimidad, afectiva, de noviazgo, de confianza o cualquier otra relación de hecho,
- que existan datos que establezcan que la persona acusada amenazó a la alegada víctima con el hecho delictivo, acoso, acecho o lesiones,
- que la persona acusada privó a la alegada víctima de establecer cualquier tipo de comunicación verbal, escrita o visual con otras personas en cualquier periodo de tiempo previo a la privación de la vida,
- que la persona acusada abandonó, expuso o depositó el cuerpo de la alegada víctima en un lugar público,
- que entre la persona acusada y la alegada víctima existe o existió una relación laboral, docente o cualquier otra que implique superioridad, ventaja o establezca una relación de poder a favor de la persona acusada,
- que la muerte ocurrió en presencia de las hijas o hijos de la alegada víctima],

(3) y que la persona actuó a propósito, con conocimiento o temerariamente.

**[El tribunal debe leer las definiciones que correspondan según lo alegado en el pliego acusatorio].**

"Dar muerte a un ser humano" significa que los actos o las omisiones de una persona ocasionaron la muerte a un ser humano y que la muerte no fue un resultado demasiado lejano o accidental, ni dependió demasiado de algún acto voluntario de otra persona.

["Maltrato" significa emplear fuerza física o violencia sicológica, intimidación o persecución contra su cónyuge, excónyuge, la persona con quien cohabita o haya cohabitado, con quien sostenga o haya sostenido una relación consensual, o con quien haya procreado un(a) hijo(a) —independientemente del sexo, estado civil, orientación sexual, identidad de género o estatus migratorio de cualquiera de las personas involucradas en la relación—, para causarle daño físico o grave daño emocional a su persona, a los bienes apreciados por esta (excepto los que pertenecen privadamente a la persona ofensora) o a otra persona].

["Violencia sicológica" significa un patrón de conducta constante ejercitada en deshonra, descrédito o menosprecio al valor personal, limitación irrazonable al acceso y manejo de los bienes comunes, chantaje, vigilancia constante, aislamiento, privación de acceso a la alimentación o descanso adecuado, amenazas de privar de la custodia de los hijos o hijas, o destrucción de objetos apreciados por la persona, excepto los que pertenecen privativamente a la persona ofensora].

["Intimidación" significa toda acción o palabra que, manifestada en forma repetitiva, tenga el efecto de ejercer una presión moral sobre el ánimo de una persona, la que por temor a sufrir algún daño físico o emocional en su persona, sus bienes o en otra persona, es obligada a llevar a cabo un acto contrario a su voluntad].

["Persecución" significa mantener a una persona bajo vigilancia constante o frecuente con su presencia en los lugares inmediatos o relativamente cercanos al hogar, residencia, escuela, trabajo o vehículo en el cual se encuentre la persona, lo que infundiría temor o miedo en el ánimo de una persona prudente y razonable].

["Cohabitar" es sostener una relación consensual de pareja similar a la de cónyuges (personas casadas legalmente) en cuanto al aspecto de convivencia, independientemente del sexo, estado civil, orientación sexual, identidad de género o estatus migratorio de cualquiera de las personas involucradas en la relación de pareja].

["Grave Daño emocional" significa y surge cuando, como resultado de la violencia doméstica, haya evidencia prueba de que la persona muestra en forma repetitiva una o varias de las características siguientes: miedo paralizador, sentimientos de desamparo o desesperanza, sentimientos de frustración y fracaso, sentimientos de inseguridad, desamparo, aislamiento, autoestima debilitada u otra conducta similar, cuando sea producto de actos u omisiones reiteradas].

["Maltrato agravado" significa emplear fuerza física o violencia sicológica, intimidación o persecución contra su cónyuge, excónyuge, la persona con quien cohabita o haya cohabitado, con quien sostenga o haya sostenido una relación consensual, o con quien haya procreado un(a) hijo(a) —independientemente del sexo, estado civil, orientación sexual, identidad de género o estatus migratorio de cualquiera de las personas involucradas en la relación—, para causarle daño físico o grave daño emocional a su persona, a los bienes apreciados por esta (excepto los que pertenecen privadamente a la persona ofensora) o a otra persona y medie alguna de las circunstancias siguientes:(a) se penetra en la morada de la persona o en el lugar donde esté albergada y se comete el maltrato allí, en el caso de cónyuges o cohabitantes, independientemente del sexo, estado civil, orientación sexual, identidad de género o estatus migratorio de cualquiera de las personas involucradas en la relación, cuando estén separados o cuando medie una orden de protección que ordene a una de las partes el desalojo de la residencia; (b) se causa grave daño corporal a la persona; (c) se comete con un arma mortífera en circunstancias que no revisten la intención de matar o mutilar; (d) se comete en la presencia de menores de edad; (e) se comete luego de mediar una orden de protección o resolución contra la persona acusada expedida en auxilio de la víctima del maltrato; (f) se induce, incita u obliga a la persona a drogarse con sustancias controladas, o con cualquier otra sustancia o medio que altere la voluntad de la persona, o a intoxicarse con bebidas embriagantes; (g) se comete y, simultáneamente, se incurre en

maltrato de una persona menor de edad (según definido en la Ley 246-2011); (h) a la víctima se le obliga o induce mediante maltrato, violencia física o sicológica a participar o involucrarse en una relación sexual no deseada con terceras personas; (i) se comete contra una mujer embarazada, (j) se comete contra una persona menor de 16 años y la persona agresora tiene 18 años o más].

[La penetración prohibida se refiere al lugar de residencia de la víctima, al lugar donde se alberga o reside temporeramente. No es necesario que esté en un albergue o una institución que provee protección, seguridad, servicios de apoyo y alojamiento a víctimas de violencia doméstica].

["Menor de edad" es una persona que al momento de los hechos no ha cumplido 18 años].

["Orden de protección" es todo mandato expedido por escrito bajo el sello de un tribunal en la cual se dictan las medidas a una persona que comete una agresión para que no incurra o lleve a cabo determinados actos o conducta constitutivos de violencia doméstica].

["Relación sexual" significa toda penetración sexual, sea vaginal, anal, orogenital, digital o instrumental. Incluye el sexo oral, y cualquier penetración sexual por la vagina o el ano, sea con el pene, el dedo o un instrumento].

["Maltrato mediante restricción de libertad" significa utilizar violencia o intimidación contra su cónyuge, excónyuge, la persona con quien cohabita o haya cohabitado, con quien sostiene o haya sostenido una relación consensual, con quien haya procreado un(a) hijo(a) —independientemente del sexo, estado civil, orientación sexual, identidad de género o estatus migratorio de cualquiera de las personas involucradas en la relación— o que utilice pretexto de que esta, o una de las personas antes mencionadas, padece de enfermedad o defecto mental para restringir su libertad con el conocimiento de la víctima].

["Violencia" significa un acometimiento personal, es decir, el empleo de fuerza física].

["Agresión sexual conyugal" significa incurrir en una relación sexual no consentida con su cónyuge, excónyuge, la persona con quien cohabita o haya cohabitado, con quien sostenga o haya sostenido una relación consensual, o con quien haya procreado un(a) hijo(a) —independientemente del sexo, estado civil, orientación sexual, identidad de género o estatus migratorio de cualquiera de las personas involucradas en la relación— en cualquiera de las circunstancias siguientes: (a) si se ha obligado a incurrir en una relación sexual mediante el empleo de fuerza, violencia, intimidación o amenaza de daño corporal grave e inmediato, (b) si se ha anulado o disminuido sustancialmente su capacidad de consentir a través de medios hipnóticos, narcóticos, deprimentes o estimulantes, o sustancias o medios similares sin su conocimiento o sin su consentimiento, (c) si por enfermedad o incapacidad mental, temporal o permanente, la víctima está incapacitada para comprender la naturaleza del acto en el momento de su realización, o (d) si se le obliga o induce mediante maltrato, violencia física o sicológica a participar o involucrarse en una relación sexual no deseada con terceras personas].

El propósito, el conocimiento y la temeridad son estados mentales.

Una persona actúa "a propósito" cuando su objetivo consciente es causar la muerte a un ser humano. **[El tribunal podría ilustrar este elemento con el ejemplo siguiente:** cuando una persona le pone veneno a otra persona con el propósito de causarle la muerte**].**

Una persona actúa "con conocimiento" cuando es consciente que la producción de la muerte es una consecuencia prácticamente segura de su conducta. **[El tribunal podría ilustrar este elemento con el ejemplo siguiente:** cuando se coloca una bomba en un avión con el propósito de que muera una persona, esa bomba estalla en el avión y mata, no solo a la persona que se quería matar, sino también a otras personas que se encontraban en el avión en ese momento. Aunque la acción no iba dirigida voluntariamente a producir ese resultado, la ley considera que la persona mató con conocimiento a las demás personas**].**

Una persona actúa "temerariamente" cuando es consciente de que su conducta genera un riesgo sustancial e injustificado de que se produzca la muerte, y a pesar de conocer el riesgo, la persona continúa con su acción u omisión. Al evaluar si era consciente del riesgo, deberán determinar si había previsto la posibilidad de que existiese ese riesgo. Al momento de evaluar si un riesgo fue sustancial, deberán considerar la probabilidad de que se produjera la muerte. Al evaluar si un riesgo fue injustificado, deberán considerar lo que motivó a la persona a asumir el riesgo que produjo la muerte. **[El tribunal podría ilustrar estos elementos con el ejemplo siguiente:** cuando una persona conduce un vehículo de motor a cien millas por hora, en una zona escolar, sin una razón**].**

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no a propósito, con conocimiento o temerariamente. Pueden inferir o deducir razonablemente de la prueba presentada y admitida el propósito, el conocimiento o la temeridad al dar muerte a un ser humano. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable que la persona acusada dio muerte a una persona cuya identidad o expresión de género, real o percibida, no corresponde con aquella asignada al nacer, **[el tribunal debe leer la(s) circunstancia(s) que aplique(n) según lo alegado en el pliego acusatorio]**, y que actuó a propósito, con conocimiento o temerariamente, deberán rendir un veredicto de culpable por Asesinato en Primer Grado, en su modalidad de transfeminicidio.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada dio muerte a una persona cuya identidad o expresión de género, real o percibida, no corresponde con aquella asignada al nacer, **[el tribunal debe leer la(s) circunstancia(s) que aplique(n) según lo alegado en el pliego acusatorio]**, y que actuó a propósito, con conocimiento o temerariamente, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por Asesinato en Primer Grado, en su modalidad de transfeminicidio.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*), el Artículo 22 (*Elementos subjetivos del delito*), el Artículo 92 (*Asesinato*) y el Artículo 93(f) (*Grados de asesinato*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 y la Ley 40-2021 (33 LPRA secs. 5034, 5035, 5141 y 5142).

**COMENTARIO:**

Toda instrucción de los delitos particulares debe ir precedida de la Instrucción 4.15, que alude a la definición del concepto "elementos del delito".

## 5.10   Tentativa de Asesinato en Primer Grado (Art. 93 del Código Penal de 2012)

Contra la persona acusada se ha presentado una acusación por el delito de Tentativa de Asesinato en Primer grado.

La ley dispone que existe tentativa cuando una persona actúa con el propósito de producir la muerte o con el conocimiento de que se producirá la muerte, y realiza acciones inequívoca e inmediatamente dirigidas a iniciar la ejecución del delito, que no se completa por circunstancias ajenas a su voluntad.

Los elementos del delito de Tentativa de Asesinato en Primer Grado son los siguientes:

(1) Que la persona actuó con el propósito de dar muerte a un ser humano o con el conocimiento de que daría muerte a un ser humano;

(2) que realizó actos claramente (indudablemente) dirigidos a iniciar o cometer el delito, es decir, que empezó a cometer el delito o realizó actos que iban más allá de una mera preparación;

(3) que los actos se dan inmediatamente antes de que se complete el delito, y

(4) que el delito no se completó por circunstancias ajenas a la voluntad de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Tentativa de Asesinato en Primer grado.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su

culpabilidad, deberán rendir un veredicto de no culpable por Tentativa de Asesinato en Primer Grado.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 35 (*Definición de la tentativa*), el Artículo 37 (*Desistimiento*), el Artículo 92 (*Asesinato*) y el Artículo 93 (*Grados de asesinato*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5048, 5050, 5141 y 5142); el Artículo 35 (*Definición de la tentativa*), el Artículo 37 (*Desistimiento*), el Artículo 105 (*Asesinato*) y el Artículo 106 (*Grados de asesinato*) del Código Penal de 2004, Ley 149-2004 (33 LPRA secs. 4663, 4665, 4733 y 4734); el Artículo 26 (*Definición de la tentativa*), el Artículo 28 (*Desistimiento*), el Artículo 82 (*Asesinato*) y el Artículo 83 (*Grados de asesinato*) del Código Penal de 1974, Ley Núm. 115 de 22 de julio de 1974 (1974 [Parte 1] Leyes de Puerto Rico 458 y 474).

**COMENTARIO:**

Esta Instrucción se presenta como complemento a las Instrucciones 4.13 (*Tentativa*) y 4.14 (*Desistimiento*), ceñida al caso particular de la Tentativa de Asesinato en Primer Grado en los supuestos en que el elemento subjetivo se configura a propósito o con conocimiento.

La tentativa de delito solo se contempla en los delitos que se cometan a propósito o con conocimiento; no da cabida a la temeridad. Por lo tanto, es importante que el tribunal ejerza cuidado y prudencia al adaptar la Instrucción al supuesto particular ante la consideración del Jurado.

Es concebible una Tentativa de Asesinato Atenuado en la medida que el Asesinato Atenuado puede configurarse con cualquiera de los tres elementos subjetivos: a propósito, con conocimiento o temerariamente. Salvo que surja claramente que optaron por temerariamente como estado mental, sería congruente un veredicto de Tentativa de Asesinato Atenuado.

La Tentativa Asesinato en Segundo Grado no existe, puesto que la tentativa se circunscribe al elemento subjetivo a propósito y con conocimiento, mientras que el Asesinato en Segundo Grado se reserva para muertes correspondientes al elemento subjetivo temerariamente.

Toda instrucción de los delitos particulares debe ir precedida de la Instrucción 4.15, que alude a la definición del concepto "elementos del delito".

### 5.11 Asesinato en Segundo Grado como delito imputado (Art. 93 del Código Penal de 2012)

Contra la persona acusada se ha presentado una acusación por el delito de Asesinato en Segundo Grado.

Constituye Asesinato en Segundo Grado el dar muerte a un ser humano temerariamente.

Los elementos de este delito son los siguientes:

(1) Dar muerte a un ser humano,

(2) temerariamente.

"Dar muerte a un ser humano" significa que los actos o las omisiones de una persona ocasionaron la muerte a un ser humano y que la muerte no fue un resultado demasiado lejano o accidental, ni dependió demasiado de algún acto voluntario de otra persona.

La temeridad es un estado mental.

Una persona actúa "temerariamente" cuando es consciente de que su conducta genera un riesgo sustancial e injustificado de que se produzca la muerte, y a pesar de conocer el riesgo, la persona continúa con su acción u omisión. Al evaluar si era consciente del riesgo, deberán determinar si había previsto la posibilidad de que existiese ese riesgo. Al momento de evaluar si un riesgo fue sustancial, deberán considerar la probabilidad de que se produjera la muerte. Al evaluar si un riesgo fue injustificado, deberán considerar lo que motivó a la persona a asumir el riesgo que produjo la muerte. **[El tribunal podría ilustrar estos elementos con el ejemplo siguiente:** cuando una persona conduce un vehículo de motor a cien millas por hora, en una zona escolar, sin una razón**]**.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no temerariamente. Pueden inferir o deducir razonablemente de la prueba presentada y admitida la temeridad al dar muerte a un ser humano. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable que la persona acusada dio muerte a un ser humano y que actuó temerariamente, deberán rendir un veredicto de culpable por Asesinato en Segundo Grado.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada dio muerte a un ser humano y que actuó temerariamente, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por Asesinato en Segundo Grado.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 7.7 del Proyecto de Libro de Instrucciones al Jurado de 2008 y la instrucción equivalente del libro de Instrucciones al Jurado para el Tribunal Superior de Puerto Rico de 1976, pág. 111. Guarda relación con el Artículo 23 (*Disposiciones misceláneas relacionadas a los elementos subjetivos del delito*), el Artículo 92 (*Asesinato*) y el Artículo 93 (*Grados de asesinato*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5036, 5141 y 5142); el Artículo 105 (*Asesinato*) y el Artículo 106 (*Grados de asesinato*) del Código Penal de 2004, Ley 149-2004

(33 LPRA secs. 4733 y 4734); el Artículo 82 (*Asesinato*) y el Artículo 83 (*Grados de asesinato*) del Código Penal de 1974, Ley Núm. 115 de 22 de julio de 1974 (1974 [Parte 1] Leyes de Puerto Rico 474).

**COMENTARIO:**

Toda instrucción de los delitos particulares debe ir precedida de la Instrucción 4.15, que alude a la definición del concepto "elementos del delito".

### 5.12    Asesinato en Segundo Grado ante acusación de Asesinato en Primer Grado; modalidad a propósito o con conocimiento (Art. 93 del Código Penal de 2012)

**[El tribunal debe impartir esta Instrucción cuando la prueba lo justifique].**

La ley también establece que incurre en el delito de Asesinato en Segundo Grado una persona que da muerte a un ser humano temerariamente.

Los elementos de este delito son los siguientes:

(1) Dar muerte a un ser humano,

(2) temerariamente.

La temeridad es un estado mental.

Una persona actúa "temerariamente" cuando es consciente de que su conducta genera un riesgo sustancial e injustificado de que se produzca la muerte, y a pesar de conocer el riesgo, la persona continúa con su acción u omisión. Al evaluar si era consciente del riesgo, deberán determinar si había previsto la posibilidad de que existiese ese riesgo. Al momento de evaluar si un riesgo fue sustancial, deberán considerar la probabilidad de que se produjera la muerte. Al evaluar si un riesgo fue injustificado, deberán considerar lo que motivó a la persona a asumir el riesgo que produjo la muerte. **[El tribunal podría ilustrar estos elementos con el ejemplo siguiente:** cuando una persona conduce un vehículo de motor a cien millas por hora, en una zona escolar, sin una razón**].**

La diferencia entre un grado y otro de asesinato lo constituye el estado mental. Cuando se causa una muerte a propósito o con conocimiento, se constituye el Asesinato en Primer Grado. En cambio, cuando se causa una muerte temerariamente, constituye Asesinato en Segundo Grado. En el Asesinato en Primer Grado, la persona quería la muerte de la persona o conocía que la muerte era una consecuencia prácticamente segura de su conducta. Mientras, en el Asesinato en Segundo Grado, no se quería la muerte ni se conocía que era una consecuencia prácticamente segura, pero la persona actúa a conciencia de que se creó un riesgo sustancial e injustificado de que se produjera la muerte.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no temerariamente. Pueden inferir o deducir razonablemente de la prueba presentada y admitida la temeridad al dar muerte a un ser humano. A estos fines, se les permite considerar

las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable que la persona acusada dio muerte a un ser humano y que actuó temerariamente, pero que no probó más allá de duda razonable que actuó a propósito o con conocimiento, deberán rendir un veredicto de culpable por Asesinato en Segundo Grado.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada dio muerte a un ser humano y que actuó temerariamente, o si tienen duda razonable en cuanto su culpabilidad, deberán rendir un veredicto de no culpable por Asesinato en Segundo Grado.

**REFERENCIA:**

Esta Instrucción proviene, en parte, de la Instrucción 7.8 del Proyecto de Libro de Instrucciones al Jurado de 2008 y la equivalente del libro de Instrucciones al Jurado para el Tribunal Superior de Puerto Rico de 1976, pág. 112. Guarda relación con el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*), el Artículo 22 (*Elementos subjetivos del delito*); el Artículo 92 (*Asesinato*) y el Artículo 93 (*Grados de asesinato*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5034, 5035, 5141 y 5142); el Artículo 105 (*Asesinato*) y el Artículo 106 (*Grados de asesinato*) del Código Penal de 2004, Ley 149-2004 (33 LPRA sec. 4733 y 4734); el Artículo 82 (*Asesinato*) y el Artículo 83 (*Grados de asesinato*) del Código Penal de 1974, Ley Núm. 115 de 22 de julio de 1974 (1974 [Parte 1] Leyes de Puerto Rico 474).

**COMENTARIO:**

El Proyecto de Libro de Instrucciones al Jurado de 2008 incorporaba una instrucción para exponer sucintamente la diferencia entre el asesinato en primer grado y el asesinato en segundo grado, ceñida a supuestos de premeditación. Mediante la Ley 246-2014 se sustituyó la premeditación por "a propósito" o "con conocimiento", mientras que el segundo grado se definió como cualquier otra muerte causada temerariamente. Refiérase al Artículo 23 del Código Penal de 2012, según enmendado, en torno a las disposiciones misceláneas relacionadas con los elementos subjetivos de delito.

## 5.13   Asesinato atenuado como delito imputado (Art. 95 del Código Penal de 2012)

Contra la persona acusada se ha presentado una acusación por el delito de Asesinato Atenuado.

Constituye Asesinato Atenuado toda muerte causada a propósito, con conocimiento o temerariamente, que se produce cuando una persona actúa como consecuencia de [una

perturbación mental o emocional suficiente, para la cual hay una explicación o excusa razonable] [súbita pendencia].

"Dar muerte a un ser humano" significa que los actos o las omisiones de una persona ocasionaron la muerte a un ser humano y que la muerte no fue un resultado demasiado lejano o accidental, ni dependió demasiado de algún acto voluntario de otra persona. El propósito, el conocimiento y la temeridad son estados mentales.

Una persona actúa "a propósito" cuando su objetivo consciente es causar la muerte a un ser humano. **[El tribunal podría ilustrar este elemento con el ejemplo siguiente:** cuando una persona le pone veneno a otra persona con el propósito de causarle la muerte**]**.

Una persona actúa "con conocimiento" cuando es consciente que la producción de la muerte es una consecuencia prácticamente segura de su conducta. **[El tribunal podría ilustrar este elemento con el ejemplo siguiente:** cuando se coloca una bomba en un avión con el propósito de que muera una persona, esa bomba estalla en el avión y mata, no solo a la persona que se quería matar, sino también a otras personas que se encontraban en el avión en ese momento. Aunque la acción no iba dirigida voluntariamente a producir ese resultado, la ley considera que la persona mató con conocimiento a las demás personas**]**.

Una persona actúa "temerariamente" cuando es consciente de que su conducta genera un riesgo sustancial e injustificado de que se produzca la muerte, y a pesar de conocer el riesgo, la persona continúa con su acción u omisión. Al evaluar si era consciente del riesgo, deberán determinar si había previsto la posibilidad de que existiese ese riesgo. Al momento de evaluar si un riesgo fue sustancial, deberán considerar la probabilidad de que se produjera la muerte. Al evaluar si un riesgo fue injustificado, deberán considerar lo que motivó a la persona a asumir el riesgo que produjo la muerte. **[El tribunal podría ilustrar estos elementos con el ejemplo siguiente:** cuando una persona conduce un vehículo de motor a cien millas por hora, en una zona escolar, sin una razón**]**.

**[El tribunal debe leer la definición que aplique:**

El término "perturbación mental o emocional suficiente" se refiere a una pérdida del control para la cual media una explicación razonable. Se trata de un trastorno mental o emocional, no necesariamente una enfermedad, que no le permite a la persona ejercer control pleno sobre lo que hace. A su vez, se requiere una explicación o excusa razonable para ese trastorno; es decir, que una persona promedio, en las circunstancias en que se hallaba la persona acusada al momento de incurrir en la conducta por la que se le acusa, probablemente hubiese sufrido un disturbio emocional similar.

El término "súbita pendencia" se refiere a una reacción repentina o sin reflexión previa**]**.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no a propósito, con conocimiento o temerariamente. Pueden inferir o deducir razonablemente de la prueba presentada y admitida el propósito, el conocimiento o la temeridad al dar muerte a un ser humano. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable que la persona acusada dio muerte a un ser humano, y que actuó a propósito, con conocimiento o temerariamente, aunque ello como consecuencia de [una perturbación mental o emocional suficiente para la cual hay una explicación o excusa razonable] [súbita pendencia], deberán rendir un veredicto de culpable por el delito de Asesinato Atenuado.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada dio muerte a un ser humano, y que actuó a propósito, con conocimiento o temerariamente, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por Asesinato Atenuado.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 7.9 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*), el Artículo 22 (*Elementos subjetivos del delito*), y el Artículo 95 (*Asesinato atenuado*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5034, 5035 y 5144); el Artículo 108 (*Asesinato atenuado*) del Código Penal de 2004, Ley 149-2004 (33 LPRA sec. 4736); el Artículo 85 (*Homicidio*) del Código Penal de 1974, Ley Núm. 115 de 22 de julio de 1974 (1974 [Parte 1] Leyes de Puerto Rico 474). Véase *People v. Casassa*, 49 N.Y.2d 668 (1980).

**COMENTARIO:**

La reforma del Código Penal en el 2014 tuvo el claro propósito de relajar el rigor del Asesinato Atenuado (antes Homicidio), al sustituir el elemento "arrebato de cólera" por "perturbación mental o emocional suficiente para la cual hay una explicación o excusa razonable". Así queda plasmado en múltiples ponencias durante la consideración de la medida legislativa que culminó en la aprobación de la Ley 246-2014, donde se hace referencia expresa a la jurisprudencia de Nueva York, citada a modo de referencia.

El nuevo concepto proviene del Código Penal Modelo y es más amplio que el "arrebato de cólera". De esta forma se afectó la doctrina del enfriamiento. Da paso a que una persona que padezca de un síndrome de maltrato pueda reclamar la modalidad atenuada en supuestos en que no prospere una legítima defensa. El Código Penal Modelo lo trata como una defensa afirmativa que debe ser probada por la persona acusada de asesinato. Para una síntesis útil de este concepto, incluyendo la comparación con el concepto clásico de "arrebato de cólera o súbita pendencia", véase J. Dressler, *Understanding Criminal Law*, 6ta ed., Ed. LexisNexis, 2012, págs. 539-541.

Igual principio se adoptó para la Agresión Grave Atenuada (Artículo 109A del Código Penal de 2012, según enmendado, 33 LPRA sec. 5162a).

Cuando se acusa expresamente por Asesinato Atenuado, el Ministerio Público imputa dar muerte a un ser humano a propósito, con conocimiento o temerariamente, pero parecería admitir o estipular lo relativo a que la persona acusada actuó afectada por la perturbación mental o emocional. En cambio, cuando la acusación imputa Asesinato en Primer o Segundo Grado y es la Defensa quien invoca el trastorno mental o emocional, se complica en lo relativo a las cargas probatorias. En puridad, de lo que se trata es de una eximente parcial de responsabilidad penal, en el contexto del delito de asesinato. La incapacidad mental y el trastorno mental transitorio (Artículos 40 y 41 del Código Penal, 33 LPRA secs. 5063 y 5064) son eximentes que exculpan totalmente, mientras que la perturbación mental o emocional solo excusa parcialmente. Por consiguiente, la duda razonable en torno a la perturbación mental o emocional, ya probados los elementos del asesinato, implicaría una condena por el Asesinato Atenuado.

Obsérvese que la Regla 157 de Procedimiento Criminal de 1963 establece lo siguiente:

> En un proceso por asesinato, una vez probado que la muerte fue causada por el acusado, recaerá sobre éste la obligación de probar que han mediado circunstancias atenuantes o circunstancias que excusen o justifiquen el hecho de la muerte, a menos que la propia prueba de El Pueblo tienda a demostrar que el delito cometido es un homicidio [ahora asesinato atenuado] o que el acusado tenía justificación o excusa para haber cometido el hecho. 34 LPRA Ap. II, pág. 182 (ed. 2016).

En términos similares se expresan el Prof. Oscar E. Miranda Miller y el Lcdo. Alvin Padilla Babilonia, en *Derecho penal sustantivo,* 85 (Núm. 2) Rev. Jur. UPR 501, 506 (2016):

> [L]a relación entre los delitos de asesinato y asesinato atenuado, evidencia que la naturaleza de la *perturbación mental o emocional* suficiente (al igual que el antiguo arrebato de cólera) no es diáfana. No nos queda claro que la perturbación mental o emocional suficiente deba ser concebida como un elemento del delito en propiedad. Podría por ejemplo, ser considerada una defensa o causa de exculpación parcial. Aunque quizás tenga más sentido considerarla un atenuante de aplicación limitada a los delitos de asesinato y agresión. (Escolio omitido y énfasis en el original).

Los autores añaden la discusión siguiente vía escolios:

> **20** En el derecho penal europeo continental se suelen reconocer eximentes incompletas "cuando se dan situaciones de disminución de la capacidad intelectiva y volitiva sin la suficiente entidad como para llegar a anularla". Francisco Muñoz Conde & Mercedes García Arán, *Derecho Penal: Parte General* 481 (2007). Por ejemplo, en su artículo 21, el Código Penal Español reconoce entre las circunstancias que atenúan la responsabilidad criminal que la persona haya obrado "por causas o estímulos tan poderosos que hayan producido arrebato, obcecación u otro estado pasional de entidad semejante". Ley Núm. 10 de 23 de noviembre de 1995 (BOE 1995, 25444) (España). Se ha dicho que esa circunstancia atenuante "[s]uele interpretarse como un caso de disminución de la imputabilidad producido por estímulos externos que no alcanza la intensidad del trastorno mental transitorio". Muñoz Conde & García Arán, *supra*, en la pág. 482. En nuestro ordenamiento, la perturbación mental o emocional suficiente podría quizás hacer las veces, respecto a los delitos de asesinato y

agresión, de esa causa de exculpación parcial o incompleta de aplicación general en el derecho español.

**21** Que la perturbación mental o emocional suficiente no sea concebida como un elemento del delito sería cónsono con que en un juicio por asesinato la fiscalía no viniese obligada a negar ausencia de perturbación mental suficiente (o arrebato de cólera), sino a probar temeridad, conocimiento o propósito. La perturbación mental o emocional suficiente podría ser concebida como un atenuante *sui generis* que reduce la responsabilidad penal de quienes de otra manera responderían por asesinato (o agresión). Así mismo, en un juicio por asesinato atenuado la fiscalía no vendría obligada a probar perturbación mental o emocional suficiente para obtener una convicción por dicho delito. En la medida en que ese "elemento" sea en realidad un atenuante podría bastar con [que] se pruebe que la persona acusada causó la muerte de un ser humano obrando con temeridad, conocimiento o propósito. Nótese que sería un tanto extraño concluir que, de no probarse la perturbación mental o emocional suficiente, procedería absolver al acusado habiéndose probado los elementos de un asesinato. Sin embargo, nos parece coherente requerir que, de surgir durante un juicio por asesinato prueba sobre perturbación mental o emocional suficiente (ya sea de la prueba de defensa o la propia prueba de cargo), la fiscalía venga obligada a negar más allá de duda razonable la suficiencia de dicho atenuante. Miranda Miller y Padilla Babilonia, *supra*, págs. 506-507.

Refiérase, además, a los comentarios al Código Penal Modelo respecto a la perturbación mental o emocional extrema para la cual hay una explicación o excusa razonable ("extreme mental or emotional disturbance for which there is reasonable explanation or excuse").Este concepto emana de la doctrina del *common law* sobre la provocación (análoga a la figura del "arrebato de cólera"), pero esta última es más limitada en su alcance. American Law Institute, *A.L.I. Model Penal Code* Art. 210.3, págs. 53-54 (1980). A tenor de las disposiciones del Código Penal Modelo, no se requiere que la persona a quien se le ocasiona la muerte haya creado el estado de la perturbación emocional en el sujeto a consecuencia de un daño, un agravio u otra forma de provocación. Se admite la mitigación de la responsabilidad penal cuando la parte actora cree que la víctima es responsable de alguna injusticia hacia otra persona. Admite, además, la muerte provocada a un mero transeúnte por una rabia cegadora. Íd., págs. 60-61.

Así pues, la Sección 210.3 del Código Penal Modelo introduce una figura sin antecedentes en el *common law* y da al traste con las normas estrictas que limitaban a ciertas circunstancias la aplicación de la regla de la provocación. Por consiguiente, ante prueba de perturbación mental o emocional extrema, corresponde al Jurado —o al (a la) juez(a) ante un tribunal de derecho— decidir si existe una explicación o excusa razonable que justifique el estado mental del actor a la luz de la totalidad de las circunstancias del caso. *Model Penal Code*, supra, pág. 61.

Al evaluar la razonabilidad de la explicación o excusa, debe partirse del punto de vista subjetivo de la persona, considerando la situación conforme esta la entendía. *Model Penal Code*, supra, pág. 54. Se adoptó este análisis con el fin de prescindir de la necesidad de categorizar conductas y flexibilizar la "rigurosa objetividad con la que el *common law* determinaba lo que constituye una provocación adecuada". (Traducción nuestra). Íd. págs. 61-62. El comentario al Código Penal Modelo ofrece como ejemplo el hombre que,

de manera razonable pero equivocada, identifica al agresor de su esposa y mata a la persona equivocada. Si su perturbación emocional extrema es, por lo demás, razonablemente explicable o excusable, puede ser elegible para la mitigación. Íd. pág. 62.

La definición del término súbita pendencia proviene de *Pueblo v. Rivera Alicea*, 125 DPR 37, 47 (1989).

Toda instrucción de los delitos particulares debe ir precedida de la Instrucción 4.15, que alude a la definición del concepto "elementos del delito".

### 5.14   Asesinato Atenuado como delito menor incluido
   (Art. 95 del Código Penal de 2012)

**[El tribunal debe impartir esta Instrucción, cuando la prueba lo justifique, como delito menor incluido].**

La ley también establece que incurre en el delito de Asesinato Atenuado una persona que causa la muerte a otra y actúa a propósito, con conocimiento o temerariamente, pero ello como consecuencia de [una perturbación mental o emocional suficiente, para la cual hay una explicación o excusa razonable] [súbita pendencia].

**[El tribunal debe leer la definición que aplique:**

El término "perturbación mental o emocional suficiente" se refiere a una pérdida del control para la cual media una explicación razonable.  Se trata de un trastorno mental o emocional —no necesariamente una enfermedad— que no le permite a la persona ejercer control pleno sobre lo que hace.  A su vez, se requiere una explicación o excusa razonable para ese trastorno; es decir, que una persona promedio, en las circunstancias en que se hallaba la persona acusada al momento de incurrir en la conducta por la que se le acusa, probablemente hubiese sufrido un disturbio emocional similar.

El término "súbita pendencia" se refiere a una reacción repentina o sin reflexión previa**].**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable que la persona acusada dio muerte a un ser humano, y que actuó a propósito, con conocimiento o temerariamente, pero tienen duda razonable si ello fue como consecuencia de [una perturbación mental o emocional suficiente para la cual hay una explicación o excusa razonable] [súbita pendencia], deberán entonces rendir un veredicto de culpable por el delito de Asesinato Atenuado.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada dio muerte a un ser humano, y que actuó a propósito, con conocimiento o temerariamente, o si

tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por Asesinato Atenuado.

**REFERENCIA:**

Esta Instrucción es nueva, aunque proviene, en parte, de la Instrucción 7.9 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con el Artículo 95 (*Asesinato atenuado*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA sec. 5144); el Artículo 108 (*Asesinato atenuado*) del Código Penal de 2004, Ley 149-2004 (33 LPRA sec. 4736). Véase *People v. Casassa*, 49 N.Y.2d 668 (1980).

**COMENTARIO:**

En torno a cuándo procede impartir la instrucción, véase *Pueblo v. Rodríguez Vicente*, 173 DPR 292 (2008).

Refiérase al comentario que acompaña la Instrucción 5.13 del delito de Asesinato Atenuado, como delito imputado.

## B.    HOMICIDIO NEGLIGENTE

### 5.15   Homicidio Negligente menos grave (Art. 96 del Código Penal de 2012)

Contra la persona acusada se ha presentado una acusación por el delito de Homicidio Negligente. Se le acusa de haber ocasionado la muerte a una persona de forma negligente.

Los elementos de este delito son los siguientes:

(1) Causar la muerte a un ser humano,
(2) por actuar de forma negligente.

"Causar la muerte a un ser humano" significa que los actos o las omisiones de una persona ocasionaron la muerte a un ser humano y que la muerte no fue un resultado demasiado lejano o accidental, ni dependió demasiado de algún acto voluntario de otra persona.

La negligencia es un estado mental.

La ley dispone que un delito se comete por negligencia cuando la persona debió saber que su conducta ocasionaría un riesgo sustancial e injustificado de que se produjera la muerte.

El riesgo debe de ser de tal grado que, considerando la naturaleza y el propósito de la conducta y las circunstancias conocidas por la persona, la acción u omisión constituye una desviación crasa del estándar de cuidado que observaría una persona razonable en su misma posición.

La negligencia criminal es el incumplimiento del deber de cuidado que la ley impone; no es una mera falta de cuidado. Se falta a ese deber cuando la persona ni siquiera se da cuenta del riesgo o peligro que le era exigible advertir, o cuando, a pesar de haberlo reconocido, confía imprudentemente en que no se producirá la muerte. La negligencia de la víctima no es suficiente para exonerar o librar de culpa a la persona acusada, a menos que esta sea la única causa del resultado.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no negligentemente. Pueden inferir o deducir razonablemente de la prueba presentada y admitida la negligencia al producirse la muerte. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable que la persona acusada causó la muerte a un ser humano y que actuó negligentemente, deberán rendir un veredicto de culpable por Homicidio Negligente.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada causó la muerte a un ser humano y que actuó negligentemente, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por Homicidio Negligente.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 7.10 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*), el Artículo 22 (*Elementos subjetivos del delito*) y el Artículo 96 (*Homicidio negligente*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5034, 5035 y 5145); el Artículo 109 (*Homicidio negligente*) del Código Penal de 2004, Ley 149-2004 (33 LPRA sec. 4737), y el Artículo 86 (*Homicidio involuntario*) del Código Penal de 1974, Ley Núm. 115 de 22 de julio de 1974 (1974 [Parte 1] Leyes de Puerto Rico 475).

**COMENTARIO:**

Toda instrucción de los delitos particulares debe ir precedida de la Instrucción 4.15, que alude a la definición del concepto "elementos del delito".

Adviértase que se recoge en la instrucción el elemento subjetivo de negligencia, por lo que no es necesario impartir también la Instrucción 4.6.

**5.16 Homicidio Negligente grave al conducir un vehículo de motor con claro menosprecio de la seguridad de los demás (Art. 96 del Código Penal de 2012)**

Contra la persona acusada se ha presentado una acusación por el delito de Homicidio Negligente. Se le acusa de haber ocasionado la muerte a una persona al conducir un vehículo de motor de forma negligente y en circunstancias que demuestran un claro menosprecio de la seguridad de los demás.

Los elementos de este delito son los siguientes:

(1) Causar la muerte a un ser humano,

(2) al conducir un vehículo de motor,

(3) de forma negligente y

(4) que demuestre claro menosprecio de la seguridad de los demás.

"Causar la muerte a un ser humano" significa que los actos o las omisiones de una persona ocasionaron la muerte a un ser humano y que la muerte no fue un resultado demasiado lejano o accidental, ni dependió demasiado de algún acto voluntario de otra persona.

La negligencia es un estado mental.

La ley dispone que un delito se comete por negligencia cuando la persona debió saber que su conducta ocasionaría un riesgo sustancial e injustificado de que se produjera la muerte.

El riesgo debe de ser de tal grado que, considerando la naturaleza y el propósito de la conducta y las circunstancias conocidas por la persona, la acción u omisión constituye una desviación crasa del estándar de cuidado que observaría una persona razonable en su misma posición.

La negligencia criminal es el incumplimiento del deber de cuidado que la ley impone; no es una mera falta de cuidado. Se falta a ese deber cuando la persona ni siquiera se da cuenta del riesgo o peligro que se le exigía advertir o cuando, a pesar de haberlo reconocido, confía imprudentemente en que no se producirá el resultado. La negligencia de la víctima no es suficiente para exonerar o librar de culpa a la persona acusada a menos que esta sea la única causa del resultado.

"Claro menosprecio de la seguridad de los demás" implica actuar con una indiferencia absoluta por el bienestar de los demás bajo circunstancias que probablemente producirían daños a otras personas. No es una mera falta de cuidado, sino que significa un total abandono de las reglas de diligencia.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no negligentemente y en claro menosprecio de la seguridad de los demás. Pueden inferir o deducir razonablemente de la prueba presentada y admitida la negligencia y el claro menosprecio por la seguridad de los demás al producir la muerte. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable que la persona acusada causó la muerte a un ser humano al conducir un vehículo de motor de forma negligente y en circunstancias que demuestren un claro menosprecio por la seguridad de los demás, deberán rendir un veredicto de culpable por Homicidio Negligente al conducir un vehículo de motor en claro menosprecio de la seguridad de los demás.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada causó la muerte a un ser humano al conducir un vehículo de motor de forma negligente y en circunstancias que demuestren un claro menosprecio por la seguridad de los demás, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por Homicidio Negligente al conducir un vehículo de motor en claro menosprecio de la seguridad de los demás.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 7.11.1 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*), el Artículo 22 (*Elementos subjetivos del delito*) y el Artículo 96 (*Homicidio negligente*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5034, 5035 y 5145); el Artículo 109 (*Homicidio negligente*) del Código Penal de 2004, Ley 149-2004 (33 LPRA sec. 4736), y el Artículo 87 (*Imprudencia crasa o temeraria al conducir vehículo de motor*) del Código Penal de 1974, Ley Núm. 115 de 22 de julio de 1974 (1974 [Parte 1] Leyes de Puerto Rico 475).

**COMENTARIO:**

La referencia a lo que significa el concepto "claro menosprecio de la seguridad de los demás" emana de los pronunciamientos del Tribunal Supremo en *Pueblo v. Barrio*, 57 DPR 942, 947-948 (1941) y *Pueblo v. Ortiz*, 60 DPR 536, 540 (1942), que a su vez guardan relación con el Artículo 87 del Código Penal de 1974, *supra*. El Artículo 1.103 de la Ley de Vehículos y Tránsito de Puerto Rico, Ley Núm. 22-2000 (9 LPRA sec. 5001(101)), provee una definición de "vehículo de motor". En torno a la aplicación de la Ley 22-2000, refiérase a *Pueblo v. Figueroa Pomales*, 172 DPR 403 (2007).

Toda instrucción de los delitos particulares debe ir precedida de la Instrucción 4.15, que alude a la definición del concepto "elementos del delito".

Adviértase que se recoge en la Instrucción el elemento subjetivo de negligencia, por lo que no es necesario impartir también la Instrucción 4.6.

**5.17   Homicidio Negligente grave al conducir un vehículo de motor bajo los efectos de sustancias controladas (Art. 96 del Código Penal de 2012)**

Contra la persona acusada se ha presentado una acusación por el delito de Homicidio Negligente.  Se le acusa de haber ocasionado la muerte a una persona al conducir un vehículo de motor de forma negligente y bajo los efectos de sustancias controladas.

Los elementos de este delito son los siguientes:

(1) Causar la muerte a un ser humano,

(2) al conducir un vehículo de motor,

(3) de forma negligente y

(4) bajo los efectos de sustancias controladas.

"Causar la muerte a un ser humano" significa que los actos o las omisiones de una persona ocasionaron la muerte a un ser humano y que la muerte no fue un resultado demasiado lejano o accidental, ni dependió demasiado de algún acto voluntario de otra persona.

"Sustancia controlada" se refiere a toda droga o sustancia prohibida o regulada por la Ley de Sustancias Controladas.

**[Cuando se presente prueba de que existe una prescripción médica, se debe impartir la instrucción siguiente:**

El hecho de que la persona acusada tuviera o haya tenido derecho a usar una sustancia controlada no necesariamente le exime de responsabilidad respecto al delito por el que se le acusa].

"Bajo los efectos de sustancias controladas" significa una disminución o pérdida de las facultades físicas y mentales de la persona causada por la presencia de sustancias controladas en el cuerpo.

La negligencia es un estado mental.

La ley dispone que un delito se comete por negligencia cuando la persona debió saber que su conducta ocasionaría un riesgo sustancial e injustificado de que se produjera la muerte.

El riesgo debe de ser de tal grado que, considerando la naturaleza y el propósito de la conducta y las circunstancias conocidas por la persona, la acción u omisión constituye una desviación crasa del estándar de cuidado que observaría una persona razonable en su misma posición.

La negligencia criminal es el incumplimiento del deber de cuidado que la ley impone; no es una mera falta de cuidado. Se falta a ese deber cuando la persona ni siquiera se da cuenta del riesgo o peligro que le era exigible advertir, o cuando, a pesar de haberlo reconocido, confía imprudentemente en que no se producirá la muerte. La negligencia de la

víctima no es suficiente para exonerar o librar de culpa a la persona acusada, a menos que esta sea la única causa del resultado.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no negligentemente. Pueden inferir o deducir razonablemente de la prueba presentada y admitida la negligencia al producirse la muerte. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable que la persona acusada causó la muerte a un ser humano al conducir un vehículo de motor de forma negligente y bajo los efectos de sustancias controladas, deberán rendir un veredicto de culpable por Homicidio Negligente al conducir un vehículo de motor bajo los efectos de sustancias controladas.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada causó la muerte a un ser humano al conducir un vehículo de motor de forma negligente y bajo los efectos de sustancias controladas, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por Homicidio Negligente al conducir un vehículo de motor bajo los efectos de sustancias controladas.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 7.11.1 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*), el Artículo 22 (*Elementos subjetivos del delito*) y el Artículo 96 (*Homicidio negligente*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5034, 5035 y 5145); el Artículo 109 (*Homicidio negligente*) del Código Penal de 2004, Ley 149-2004 (33 LPRA sec. 4736), y el Artículo 102 (*Definiciones*) de la Ley de Sustancias Controladas de Puerto Rico, Ley Núm. 4 de 23 de junio de 1971, según enmendada, 24 LPRA sec. 2102.

**COMENTARIO:**

La definición de "sustancia controlada" proviene del Artículo 102(7) de la Ley de Sustancias Controladas de Puerto Rico, Ley Núm. 4 de 23 de junio de 1971, según enmendada, mientras que la explicación del concepto "bajo los efectos de sustancias controladas" surge del caso *Pueblo v. Figueroa Pomales*, 172 DPR 403, 430 (2007).

Obsérvese que el Artículo 7.03 de la Ley de Vehículos y Tránsito de Puerto Rico, Ley 22-2000, 9 LPRA sec. 5203, prohíbe conducir vehículos de motor bajo los efectos de drogas o sustancias controladas.

Toda instrucción de los delitos particulares debe ir precedida de la Instrucción 4.15, que alude a la definición del concepto "elementos del delito".

Adviértase que se recoge en la Instrucción el elemento subjetivo de negligencia, por lo que no es necesario impartir también la Instrucción 4.6.

### 5.18 Homicidio Negligente al conducir un vehículo de motor bajo los efectos de bebidas embriagantes (Art. 96 del Código Penal de 2012)

Contra la persona acusada se ha presentado una acusación por el delito de Homicidio Negligente. Se le acusa de haber ocasionado la muerte a una persona al conducir un vehículo de motor de forma negligente bajo los efectos de bebidas embriagantes.

Los elementos de este delito son los siguientes:

> (1) Causar la muerte a un ser humano,
> (2) al conducir un vehículo de motor,
> (3) de forma negligente y
> (4) bajo los efectos de bebidas embriagantes.

"Causar la muerte a un ser humano" significa que los actos o las omisiones de una persona ocasionaron la muerte a un ser humano y que la muerte no fue un resultado demasiado lejano o accidental, ni dependió demasiado de algún acto voluntario de otra persona.

"Bajo los efectos de bebidas embriagantes" significa una disminución o pérdida de las facultades físicas y mentales del individuo, causada por la presencia de alcohol en el cuerpo, en violación a lo que establece la Ley de Vehículos y Tránsito de Puerto Rico. Esta ley prohíbe conducir con un nivel o concentración de alcohol en la sangre de ocho centésimas del uno por ciento (0.08%) o más a personas de 21 años o más. También prohíbe conducir con un nivel o concentración de alcohol en la sangre de dos centésimas del uno por ciento (0.02%) o más en casos de:

> (a) personas entre los 18 y 20 años, ambos inclusive;
> (b) conductores de camiones, motocicletas, ómnibus escolares, vehículos pesados de servicio público o vehículos pesados de motor, y
> (c) empleados(as) o funcionarios(as) públicos(as) mientras conducen un vehículo de motor propiedad del gobierno de Puerto Rico.

A su vez, la ley prohíbe cualquier concentración de alcohol en la sangre cuando se trata de menores de 18 años.

Sin embargo, se podrá presentar otra evidencia competente sobre si al tiempo de cometer el delito la persona que conducía el vehículo estaba o no bajo los efectos de bebidas embriagantes. Se pueden considerar otros factores tales como la forma en que se conducía el vehículo hasta el momento del accidente, la condición que mostró después del accidente en cuanto a sus destrezas físicas y motoras, su dominio del habla, el olor de su aliento, la condición y apariencia de sus ojos, así como cualquier otro factor que refleje el estado de sus facultades físicas y mentales, y el grado de control que se ejercía sobre sí misma.

La negligencia es un estado mental.

La ley dispone que un delito se comete por negligencia cuando la persona debió saber que su conducta ocasionaría un riesgo sustancial e injustificado de que se produjera la muerte.

El riesgo debe de ser de tal grado que, considerando la naturaleza y el propósito de la conducta y las circunstancias conocidas por la persona, la acción u omisión constituye una desviación crasa del estándar de cuidado que observaría una persona razonable en su misma posición.

La negligencia criminal es el incumplimiento del deber de cuidado que la ley impone; no es una mera falta de cuidado. Se falta a ese deber cuando la persona ni siquiera se da cuenta del riesgo o peligro que le era exigible advertir, o cuando, a pesar de haberlo reconocido, confía imprudentemente en que no se producirá la muerte. La negligencia de la víctima no es suficiente para exonerar o librar de culpa a la persona acusada a menos que esta sea la única causa del resultado.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no negligentemente. Pueden inferir o deducir razonablemente de la prueba presentada y admitida la negligencia al producirse la muerte. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable que la persona acusada causó la muerte a un ser humano al conducir un vehículo de motor de forma negligente y bajo los efectos de bebidas embriagantes, deberán rendir un veredicto de culpable por Homicidio Negligente al conducir un vehículo de motor bajo los efectos de bebidas embriagantes.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada causó la muerte a un ser humano al conducir un vehículo de motor de forma negligente y bajo los efectos de bebidas embriagantes, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por Homicidio Negligente al conducir un vehículo de motor bajo los efectos de bebidas embriagantes.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 7.11.1 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*), el Artículo 22 (*Elementos subjetivos del delito*) y el Artículo 96 (*Homicidio negligente*) del Código Penal de 2012 Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5034, 5035 y 5145); el Artículo 109 (*Homicidio negligente*) del Código Penal de 2004, Ley 149-2004 (33 LPRA sec. 4736), y el Artículo 7.02 (*Manejo de vehículos de motor bajo los efectos de bebidas embriagantes*) de la Ley de Vehículos y Tránsito

de Puerto Rico, Ley 22-2000 (9 LPRA sec. 5202). Véase *Pueblo v. Figueroa Pomales*, 172 DPR 403 (2007).

**COMENTARIO:**

En *Pueblo v. Figueroa Pomales*, 172 DPR 403 (2007), se interpretó el Artículo 109 (*Homicidio negligente*) del Código Penal de 2004, supra, en conformidad con los postulados de la Ley de Vehículos y Tránsito de Puerto Rico. Sin embargo, el Artículo 96 (*Homicidio negligente*) del Código Penal, *supra*, vigente acoge expresamente la disposición y definición de la Ley de Vehículos y Tránsito de Puerto Rico. En conformidad, se incluyó en esta Instrucción la definición de "bajo efectos de bebidas embriagantes" que proviene del Artículo 7.02 de la Ley de Vehículos y Tránsito de Puerto Rico, *supra*.

Toda instrucción de los delitos particulares debe ir precedida de la Instrucción 4.15, que alude a la definición del concepto "elementos del delito".

Adviértase que se recoge en esta Instrucción el elemento subjetivo de negligencia, por lo que no es necesario impartir también la Instrucción 4.6.

### 5.19 Homicidio Negligente grave al conducir un vehículo de motor con claro menosprecio de la seguridad de los demás, como delito menor incluido (Art. 96 del Código Penal de 2012)

**[El tribunal debe impartir esta Instrucción, cuando la prueba lo justifique, como delito menor incluido].**

La ley también establece que incurre en el delito de Homicidio Negligente, en su modalidad de claro menosprecio de la seguridad de los demás, una persona que causa la muerte a otra persona al conducir un vehículo de motor de forma negligente y en circunstancias que demuestren un claro menosprecio de la seguridad de los demás.

Los elementos de este delito son los siguientes:

> (1) Causar la muerte a un ser humano,
> (2) al conducir un vehículo de motor
> (3) de forma negligente y
> (4) que demuestre claro menosprecio de la seguridad de los demás.

"Claro menosprecio de la seguridad de los demás" implica actuar con una absoluta indiferencia por el bienestar de las demás personas bajo circunstancias que probablemente producirían daños a otras. No es una mera falta de cuidado, sino que significa un total abandono de las reglas de diligencia.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no negligentemente y que demostró un claro menosprecio de la seguridad de los demás. Pueden inferir o deducir razonablemente de la prueba presentada y admitida la negligencia y el claro

menosprecio de la seguridad de los demás al producir la muerte. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable que la persona acusada causó la muerte a otra persona al conducir un vehículo de motor negligentemente y en circunstancias que demuestren un claro menosprecio de la seguridad de los demás, pero que no probó más allá de duda razonable que estaba bajo los efectos de [sustancias controladas] [bebidas embriagantes], deberán rendir un veredicto de culpable por Homicidio Negligente en su modalidad de claro menosprecio de la seguridad de los demás.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que impartí consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada causó la muerte de otra persona al conducir un vehículo de motor negligentemente y en circunstancias que demuestren un claro menosprecio de la seguridad de los demás, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por Homicidio Negligente en su modalidad de claro menosprecio de la seguridad de los demás.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 7.11.1 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*), el Artículo 22 (*Elementos subjetivos del delito*) y el Artículo 96 (*Homicidio negligente*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5034, 5035 y 5145), y el Artículo 109 (*Homicidio negligente*) del Código Penal de 2004, Ley 149-2004 (33 LPRA sec. 4736).

**COMENTARIO:**

Por tratarse de una instrucción sobre delito menor incluido, se excluye la referencia a los principios incorporados en las instrucciones de las modalidades agravadas.

## 5.20  Homicidio Negligente menos grave como delito menor incluido (Art. 96 del Código Penal de 2012)

**[El tribunal debe impartir esta Instrucción, cuando la prueba lo justifique, como un delito menor incluido].**

La ley también establece que incurre en el delito de Homicidio Negligente, en su modalidad menos grave, una persona que causa la muerte a otra persona, de forma negligente, en circunstancias en las que no se conduce un vehículo de motor [con claro

menosprecio de la seguridad de los demás] [bajo los efectos de sustancias controladas] [bajo los efectos de bebidas embriagantes].

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable que la persona acusada causó la muerte a otra persona y que actuó negligentemente, pero que no probó más allá de duda razonable que conducía un vehículo de motor [en claro menosprecio de la seguridad de los demás] [bajo los efectos de sustancias controladas] [bajo los efectos de bebidas embriagantes], deberán rendir un veredicto de culpable por Homicidio Negligente en su modalidad menos grave.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada causó la muerte a otra persona y que actuó negligentemente, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por Homicidio Negligente en su modalidad menos grave.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 7.10 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*), el Artículo 22 (*Elementos subjetivos del delito*) y el Artículo 96 (*Homicidio negligente*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5034, 5035 y 5145), y el Artículo 109 (*Homicidio negligente*) del Código Penal de 2004, Ley 149-2004 (33 LPRA secs. 4737).

**COMENTARIO:**

Por tratarse de una instrucción sobre delito menor incluido, se excluye la referencia a los principios incorporados en las instrucciones de las modalidades agravadas.

## C.   INCITACIÓN AL SUICIDIO

### 5.21   Incitación al Suicidio (Art. 97 del Código Penal de 2012)

Contra la persona acusada se ha presentado una acusación por el delito de Incitación al Suicidio. Se le acusa de haber ayudado o incitado a otra persona a cometer o a iniciar la ejecución de un suicidio y de haber actuado a propósito.

Los elementos de este delito son los siguientes:

> (1) Ayudar o incitar a otra persona a cometer o a iniciar la ejecución de un suicidio y
> (2) actuar a propósito.

"Ayudar" significa cooperar con la persona suicida para conseguir los medios, indicarle cómo hacerlo o apoyarla en su propósito de quitarse la vida.

"Incitar" implica provocar a la persona suicida a quitarse o a intentar quitarse la vida. No es requisito que la persona en efecto se haya suicidado para que se cometa el delito.

El propósito es un estado mental.

Una persona actúa "a propósito" cuando su objetivo consciente es causar la muerte a un ser humano.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no a propósito. Pueden inferir o deducir razonablemente de la prueba presentada y admitida el propósito de producir el resultado delictivo. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable que la persona acusada, a propósito, ayudó o incitó a otra persona a cometer o iniciar la ejecución de un suicidio, deberán rendir un veredicto de culpable por Incitación al Suicidio.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada, a propósito, ayudó o incitó a otra persona a cometer o iniciar la ejecución de un suicidio, o si tienen duda en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por Incitación al Suicidio.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 7.12 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*), el Artículo 22 (*Elementos subjetivos del delito*) y el Artículo 97 (Incitación al suicidio) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5034, 5035 y 5146); el Artículo 110 (*Incitación al suicidio*) del Código Penal de 2004, Ley 149-2004 (33 LPRA sec. 4738), y el Artículo 90 (*Incitación al suicidio*) del Código Penal de 1974, Ley Núm. 115 de 22 de julio de 1974 (1974 [Parte 1] Leyes de Puerto Rico 476).

**COMENTARIO:**

Según la Dra. Dora Nevares-Muñiz, en la modalidad de "ayudar", la persona acusada no puede haber ejecutado los actos que causaron la muerte del suicida, puesto que sería asesinato. En cuanto a la modalidad de "incitar", señala que es necesario que se haya convencido directamente a la persona suicida de quitarse la vida y que, en efecto, lo haya hecho o intentado. D. Nevares-Muñiz, *Código Penal de Puerto Rico*, 4ta ed. rev., San Juan, Ed. Instituto para el Desarrollo del Derecho, 2019, pág. 167.

Toda instrucción de los delitos particulares debe ir precedida de la Instrucción 4.15, que alude a la definición del concepto "elementos del delito".

Adviértase que se recoge en la Instrucción el elemento subjetivo de propósito, por lo que no es necesario impartir también la Instrucción 4.5.

### D.    ABORTO POR FUERZA O VIOLENCIA

### 5.22    Aborto por Fuerza o Violencia (Art. 100 del Código Penal de 2012)

Contra la persona acusada se ha presentado una acusación por el delito de Aborto por Fuerza o Violencia.  Se le acusa de haber infligido daño a una mujer embarazada mediante fuerza o violencia, causándole un parto prematuro [con consecuencias nocivas para] [causándole la muerte a] la criatura.

Los elementos de este delito son los siguientes:

(1) Causar daño a una mujer embarazada,

(2) mediante el empleo de fuerza o de violencia,

(3) **[El tribunal debe leer la modalidad que aplique según lo alegado en el pliego acusatorio:**

- que se produzca un parto prematuro con efectos dañinos a la criatura

- que se cause la muerte a la criatura**]**

(4) y que la persona haya actuado a propósito, con conocimiento o temerariamente.

El propósito, el conocimiento y la temeridad son estados mentales.

Una persona actúa "a propósito" cuando su objetivo consciente es la producción del resultado delictivo.

Una persona actúa "con conocimiento" cuando es consciente que la producción del resultado es una consecuencia prácticamente segura de su conducta o cuando es consciente que la existencia de una circunstancia es prácticamente segura.

Una persona actúa "temerariamente" cuando es consciente de que su conducta genera un riesgo sustancial e injustificado de que se produzca el resultado, y a pesar de conocer el riesgo, la persona continúa con su acción. Al evaluar si era consciente del riesgo, deberán determinar si la persona acusada había previsto la posibilidad de que existiese ese riesgo. Al momento de evaluar si un riesgo fue sustancial, deberán considerar la probabilidad de que se produjera el daño o resultado y la magnitud del daño. Al evaluar si un riesgo fue injustificado, deberán considerar lo que motivó a la persona a asumir el riesgo que produjo tal daño o resultado.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no a propósito, con conocimiento o temerariamente. Pueden inferir o deducir razonablemente de

la prueba presentada y admitida el propósito, el conocimiento o la temeridad al producir el resultado. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable que la persona acusada, a propósito, con conocimiento o temerariamente, causó daño a una mujer embarazada mediante el uso de fuerza o de violencia, [lo que produjo un parto prematuro con efectos dañinos a la criatura] [causándole la muerte a la criatura], deberán rendir un veredicto de culpable por el delito de Aborto por Fuerza o Violencia.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada causó daño a propósito, con conocimiento o temerariamente a una mujer embarazada mediante el uso de fuerza o de violencia, [lo que produjo un parto prematuro con efectos dañinos a la criatura] [causándole la muerte a la criatura], o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Aborto por Fuerza o Violencia.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 7.13 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*), el Artículo 22 (*Elementos subjetivos del delito*) y el Artículo 100 (*Aborto por fuerza o violencia*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5034, 5035 y 5149), y el Artículo 113 (*Por fuerza o violencia*) del Código Penal de 2004, Ley 149-2004 (33 LPRA sec. 4741).

**COMENTARIO:**

Toda instrucción de los delitos particulares debe ir precedida de la Instrucción 4.15, que alude a la definición del concepto "elementos del delito".

Adviértase que se recogen en la Instrucción los elementos subjetivos del delito, por lo que no es necesario impartir también la Instrucción 4.5.

CAPÍTULO 6
**DELITOS CONTRA LA INTEGRIDAD CORPORAL**

**6.1** **Agresión Grave; hospitalización o tratamiento prolongado (Art. 109 del Código Penal de 2012)**

Contra la persona acusada se ha presentado una acusación por el delito de Agresión Grave. Se le acusa de haber lesionado la integridad corporal de una persona a propósito, con conocimiento o temerariamente, lo que hizo necesario la hospitalización o un tratamiento prolongado.

Los elementos de este delito son los siguientes:

(1) Causar ilegalmente una lesión o un daño al cuerpo de otra persona,

(2) que como consecuencia de esa lesión o daño **[refiérase a la(s) circunstancia(s) que aplique(n) según lo alegado en el pliego acusatorio:**
- haya sido necesaria la hospitalización
- haya sido necesario un tratamiento médico prolongado**]**

(3) y que la persona acusada actuó a propósito, con conocimiento o temerariamente.

El propósito, el conocimiento y la temeridad son estados mentales.

Una persona actúa "a propósito" cuando su objetivo consciente es causar una lesión corporal a una persona.

Una persona actúa "con conocimiento" cuando es consciente de que la producción del resultado, o sea, la lesión al cuerpo de una persona, es una consecuencia prácticamente segura de su conducta.

Una persona actúa "temerariamente" cuando es consciente de que su conducta genera un riesgo sustancial e injustificado de que se produzca la lesión corporal, y a pesar de conocer el riesgo, la persona continúa con su acción u omisión. Al evaluar si era consciente del riesgo, deberán determinar si había previsto la posibilidad de que existiese ese riesgo. Al momento de evaluar si un riesgo fue sustancial, deberán considerar la probabilidad de que se produjera la lesión y la magnitud del daño. Al evaluar si un riesgo fue injustificado, deberán considerar lo que motivó a la persona a asumir el riesgo que produjo la lesión o el daño.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no a propósito, con conocimiento o temerariamente. Pueden inferir o deducir razonablemente de la prueba presentada y admitida el propósito, el conocimiento o la temeridad de producir la lesión corporal. A estos fines, si les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable que la persona acusada causó una lesión corporal que requirió la hospitalización o un tratamiento prolongado, y que actuó a propósito, con conocimiento o temerariamente, deberán rendir un veredicto de culpable por Agresión Grave.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada causó una lesión corporal que requirió la hospitalización o un tratamiento prolongado, y que actuó a propósito, con conocimiento o temerariamente, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por Agresión Grave.

**REFERENCIA:**

Esta Instrucción proviene de las Instrucciones 8.1 y 8.2 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con el Artículo 14 (*Definiciones*), el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*), el Artículo 22 (*Elementos subjetivos del delito*) y el Artículo 109 (*Agresión grave*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5014, 5034, 5035 y 5162), y el Artículo 122 (*Agresión grave*) del Código Penal de 2004, Ley 149-2004 (33 LPRA sec. 4750).

**COMENTARIO:**

El Artículo 14(z) del Código Penal define "ilegalmente" como "todo acto en contravención de alguna ley, norma, reglamento, ordenanza, u orden promulgada por una autoridad competente del Estado en el ejercicio de sus funciones". 33 LPRA sec. 5014(z). Sin embargo, no se incorpora a la Instrucción para evitar confusión, al considerar los Artículos 25, 26 y 27 del Código Penal de 2012 (33 LPRA secs. 5038, 5039 y 5040).

Toda instrucción de los delitos particulares debe ir precedida de la Instrucción 4.15, que alude a la definición del concepto "elementos del delito".

Adviértase que se recogen en la Instrucción los elementos subjetivos del delito, por lo que no es necesario impartir también la Instrucción 4.5.

## 6.2    Agresión Grave; transmisión de enfermedad (Art. 109 del Código Penal de 2012)

Contra la persona acusada se ha presentado una acusación por el delito de Agresión Grave. Se le acusa de haber lesionado la integridad corporal de una persona al transmitirle una enfermedad al actuar a propósito, con conocimiento o temerariamente.

Los elementos de este delito son los siguientes:

(1) Causar ilegalmente una lesión o un daño al cuerpo de otra persona,

(2) que, como consecuencia de esa lesión o ese daño, se haya transmitido una enfermedad,

(3) que la persona acusada conocía que tenía una enfermedad que se podía transmitir y

(4) que la persona acusada actuó a propósito, con conocimiento o temerariamente.

El propósito, el conocimiento y la temeridad son estados mentales.

Una persona actúa "a propósito" cuando su objetivo consciente es transmitir una enfermedad a otra persona.

Una persona actúa "con conocimiento" cuando es consciente que la producción del resultado, o sea, la transmisión de la enfermedad a otra persona, es una consecuencia prácticamente segura de su conducta.

Una persona actúa "temerariamente" cuando es consciente de que su conducta genera un riesgo sustancial e injustificado de que se produzca la transmisión de la enfermedad a otra persona, y a pesar de conocer el riesgo, la persona continúa con su acción u omisión. Al evaluar si era consciente del riesgo, deberán determinar si había previsto la posibilidad de que existiese ese riesgo. Al momento de evaluar si un riesgo fue sustancial, deberán considerar la probabilidad de que se produjera la lesión, o sea, la transmisión de la enfermedad y la magnitud del daño. Al evaluar si un riesgo fue injustificado, deberán considerar lo que motivó a la persona a asumir el riesgo que produjo la lesión, es decir, la transmisión de la enfermedad.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no a propósito, con conocimiento o temerariamente. Pueden inferir o deducir razonablemente de la prueba presentada y admitida el propósito, el conocimiento o la temeridad de producir la lesión corporal mediante la transmisión de la enfermedad. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable que la persona acusada causó una lesión corporal al transmitir una enfermedad a otra persona, que la persona que transmitió la enfermedad conocía que la tenía, y que actuó a propósito, con conocimiento o temerariamente, deberán rendir un veredicto de culpable por Agresión Grave.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada causó una lesión corporal al transmitir una enfermedad a otra persona, que la persona que transmitió la enfermedad conocía que la tenía, y que actuó a propósito, con conocimiento o

temerariamente, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por Agresión Grave.

**REFERENCIA:**

Esta Instrucción proviene de las Instrucciones 8.1 y 8.2 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*), el Artículo 22 (*Elementos subjetivos del delito*) y el Artículo 109 (*Agresión grave*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5034, 5035 y 5162), y el Artículo 122 (*Agresión grave*) del Código Penal de 2004, Ley 149-2004 (33 LPRA sec. 4750).

**COMENTARIO:**

El Artículo 109 del Código Penal, *supra*, define dos modalidades de Agresión Grave. Una modalidad recoge las lesiones que requieren la hospitalización o un tratamiento prolongado que, a su vez, cobija los supuestos de transmisión de enfermedad, mientras que otra modalidad agravada reconoce la lesión mutilante.

El Artículo 14(z) del Código Penal define "ilegalmente" como "todo acto en contravención de alguna ley, norma, reglamento, ordenanza, u orden promulgada por una autoridad competente del Estado en el ejercicio de sus funciones". 33 LPRA sec. 5014(z). Sin embargo, no se incorpora a la Instrucción para evitar confusión, al considerar los Artículos 25, 26 y 27 del Código Penal de 2012 (33 LPRA secs. 5038, 5039 y 5040).

Toda instrucción de los delitos particulares debe ir precedida de la Instrucción 4.15, que alude a la definición del concepto "elementos del delito".

Adviértase que se recogen en la Instrucción los elementos subjetivos del delito, por lo que no es necesario impartir también la Instrucción 4.5.

## 6.3   Agresión Grave; lesión mutilante (Art. 109 del Código Penal de 2012)

Contra la persona acusada se ha presentado una acusación por el delito de Agresión Grave. Se le acusa de haber lesionado la integridad corporal de una persona a propósito, con conocimiento o temerariamente, y que la lesión fue mutilante.

Los elementos de este delito son los siguientes:

(1) Causar ilegalmente una lesión o un daño al cuerpo de otra persona,

(2) que, como consecuencia de esa lesión o ese daño, se haya mutilado a la otra persona y

(3) que la persona acusada actuó a propósito, con conocimiento o temerariamente.

Una "lesión mutilante" es ocasionar un daño permanente en cualquier parte del cuerpo de una persona, desfigurar su rostro o inutilizar permanentemente su capacidad de oír, ver o hablar.

El propósito, el conocimiento y la temeridad son estados mentales.

Una persona actúa "a propósito" cuando su objetivo consciente es causar la lesión mutilante a una persona.

Una persona actúa "con conocimiento" cuando es consciente que la producción del resultado, o sea, la lesión mutilante a una persona, es una consecuencia prácticamente segura de su conducta.

Una persona actúa "temerariamente" cuando es consciente de que su conducta genera un riesgo sustancial e injustificado de que se produzca la lesión corporal mutilante, y a pesar de conocer el riesgo, la persona continúa con su acción u omisión. Al evaluar si era consciente del riesgo, deberán determinar si había previsto la posibilidad de que existiese ese riesgo. Al momento de evaluar si un riesgo fue sustancial, deberán considerar la probabilidad de que se produjera la lesión mutilante y la magnitud del daño. Al evaluar si un riesgo fue injustificado, deberán considerar lo que motivó a la persona a asumir el riesgo que produjo la lesión mutilante.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no a propósito, con conocimiento o temerariamente. Pueden inferir o deducir razonablemente de la prueba presentada y admitida el propósito, el conocimiento o la temeridad de producir la lesión corporal mutilante. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable que la persona acusada causó una lesión mutilante al [ocasionar un daño permanente en cualquier parte del cuerpo de una persona] [desfigurar el rostro] [inutilizar permanentemente su capacidad para oír, ver o hablar], y que actuó a propósito, con conocimiento o temerariamente, deberán rendir un veredicto de culpable por Agresión Grave en la modalidad de lesión mutilante.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada causó una lesión mutilante al [ocasionar un daño permanente en cualquier parte del cuerpo de una persona] [desfigurar el rostro] [inutilizar permanentemente su capacidad para oír, ver o hablar], y que actuó a propósito, con conocimiento o temerariamente, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por Agresión Grave en la modalidad de lesión mutilante.

**REFERENCIA:**

Esta Instrucción proviene de las Instrucciones 8.1 y 8.2 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con el Artículo 21 (*Formas de culpabilidad:*

*requisito general del elemento subjetivo*), el Artículo 22 (*Elementos subjetivos del delito*) y el Artículo 109 (*Agresión grave*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5034, 5035 y 5162), y el Artículo 122 (*Agresión grave*) del Código Penal de 2004, Ley 149-2004 (33 LPRA sec. 4750).

**COMENTARIO:**

El Artículo 109 del Código Penal, *supra*, define dos modalidades de Agresión Grave. Una modalidad recoge las lesiones que requieren la hospitalización o un tratamiento prolongado que, a su vez, cobija los supuestos de transmisión de enfermedad, mientras que otra modalidad agravada reconoce las lesiones mutilantes.

El Artículo 14(z) del Código Penal define "ilegalmente" como "todo acto en contravención de alguna ley, norma, reglamento, ordenanza, u orden promulgada por una autoridad competente del Estado en el ejercicio de sus funciones". 33 LPRA sec. 5014(z). Sin embargo, no se incorpora a la Instrucción para evitar confusión, al considerar los Artículos 25, 26 y 27 del Código Penal de 2012 (33 LPRA secs. 5038, 5039 y 5040).

Por otro lado, la definición de "lesión mutilante" proviene del propio Artículo 109 del Código Penal, *supra*, vigente.

Toda instrucción de los delitos particulares debe ir precedida de la Instrucción 4.15, que alude a la definición del concepto "elementos del delito".

Adviértase que se recogen en la Instrucción los elementos subjetivos del delito, por lo que no es necesario impartir también la Instrucción 4.5.

### 6.4 Agresión Grave Atenuada; hospitalización o tratamiento prolongado, como delito imputado (Art. 109A del Código Penal de 2012)

Contra la persona acusada se ha presentado una acusación por el delito de Agresión Grave Atenuada, en su modalidad de hospitalización o tratamiento prolongado. Se le acusa de haber causado ilegalmente una lesión al cuerpo de otra persona, lo cual requirió hospitalización o tratamiento médico prolongado, y que la persona actuó a propósito, con conocimiento o temerariamente, pero como consecuencia de [una perturbación mental o emocional suficiente, para la cual hay una explicación o excusa razonable] [súbita pendencia].

El propósito, el conocimiento y la temeridad son estados mentales.

Una persona actúa "a propósito" cuando su objetivo consciente es causar la lesión corporal de una persona.

Una persona actúa "con conocimiento" cuando es consciente de que la producción del resultado, o sea, la lesión al cuerpo de una persona, es una consecuencia prácticamente segura de su conducta.

Una persona actúa "temerariamente" cuando es consciente de que su conducta genera un riesgo sustancial e injustificado de que se produzca la lesión corporal, y a pesar de

conocer el riesgo, la persona continúa con su acción u omisión. Al evaluar si era consciente del riesgo, deberán determinar si había previsto la posibilidad de que existiese ese riesgo. Al momento de evaluar si un riesgo fue sustancial, deberán considerar la probabilidad de que se produjera la lesión y la magnitud del daño. Al evaluar si un riesgo fue injustificado, deberán considerar lo que motivó a la persona a asumir el riesgo que produjo la lesión.

**[El tribunal debe leer la definición que aplique:**

El término "perturbación mental o emocional suficiente" se refiere a una pérdida del control para la cual media una explicación razonable. Se trata de un trastorno mental o emocional, no necesariamente una enfermedad, que no le permite a la persona ejercer control pleno sobre lo que hace. A su vez, se requiere una explicación o excusa razonable para ese trastorno; es decir, que una persona promedio, en las circunstancias en que se hallaba la persona acusada al momento de incurrir en la conducta por la que se le acusa, probablemente hubiese sufrido un disturbio emocional similar.

El término "súbita pendencia" se refiere a una reacción repentina o sin reflexión previa**].**

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no a propósito, con conocimiento o temerariamente. Pueden inferir o deducir razonablemente de la prueba presentada y admitida el propósito, el conocimiento o la temeridad de producir la lesión corporal. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable que la persona acusada causó una lesión corporal que requirió la hospitalización o un tratamiento prolongado, y que actuó a propósito, con conocimiento o temerariamente pero como consecuencia de [una perturbación mental o emocional suficiente, para la cual hay una explicación o excusa razonable] [súbita pendencia], deberán rendir un veredicto de culpable por Agresión Grave Atenuada en la modalidad de hospitalización o tratamiento prolongado.

Si, por el contrario, ustedes estiman, luego de un análisis cuidadoso de toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, que el Ministerio Público no probó más allá de duda razonable que la persona acusada causó una lesión corporal que requirió la hospitalización o un tratamiento prolongado, y que actuó a propósito, con conocimiento o temerariamente, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por Agresión Grave Atenuada.

**REFERENCIA:**

Esta Instrucción proviene de las Instrucciones 8.1 y 8.2 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*), el Artículo 22 (*Elementos subjetivos del delito*) y el Artículo 109 (*Agresión grave*) del Código Penal de 2012, Ley 146-2012, según enmendada

por la Ley 246-2014 (33 LPRA secs. 5034, 5035 y 5162), y el Artículo 122 (*Agresión grave*) del Código Penal de 2004, Ley 149-2004 (33 LPRA secs. 4750).

**COMENTARIO:**

La reforma de 2014 restableció la Agresión Grave Atenuada del Artículo 123 del Código Penal de 2004 (33 LPRA sec. 4751), aunque con el claro propósito de relajar su rigor de entonces. Así quedó plasmado en múltiples ponencias durante la consideración de la medida, en el contexto del Asesinato Atenuado. Al igual que en el Artículo 95 del Código Penal vigente, 33 LPRA sec. 5144, se sustituyó el elemento "arrebato de cólera" por "perturbación mental o emocional suficiente para la cual hay una explicación o excusa razonable". Sobre la "perturbación mental o emocional suficiente", refiérase al comentario que acompaña la Instrucción 5.13 del delito de Asesinato Atenuado como delito imputado.

El nuevo concepto proviene del Código Penal Modelo y es más amplio que el "arrebato de cólera". De esta forma se afectó la doctrina del enfriamiento. Da paso a que una persona que padezca de un síndrome de maltrato pueda reclamar la modalidad atenuada en supuestos en que no prospere una legítima defensa. El Código Penal Modelo lo trata como una defensa afirmativa que debe ser probada por la persona acusada de asesinato. Para una síntesis útil de este concepto, incluyendo la comparación con el concepto clásico de "arrebato de cólera o súbita pendencia", véase J. Dressler, *Understanding Criminal Law*, 6ta ed., Ed. LexisNexis, 2012, págs. 539-541.

Cuando se acusa expresamente por Agresión Grave Atenuada, el Ministerio Público imputa haber causado ilegalmente una lesión corporal a propósito, con conocimiento o temerariamente, pero parecería admitir o estipular lo relativo a que la persona acusada actuó afectada por la perturbación mental o emocional. En cambio, cuando la acusación imputa una Agresión Grave y es la Defensa quien invoca el trastorno mental o emocional, se complica en lo relativo a las cargas probatorias. En puridad, de lo que se trata es de una eximente parcial de responsabilidad penal, en el contexto del delito de Agresión Grave. La incapacidad mental y el trastorno mental transitorio (Artículos 40 y 41 del Código Penal, 33 LPRA secs. 5063 y 5064) son eximentes que exculpan totalmente, mientras que la perturbación mental o emocional solo excusa parcialmente. Por consiguiente, la duda razonable en torno a la perturbación mental o emocional, ya probados los elementos de la Agresión Grave, implicaría una condena por Agresión Grave Atenuada.

El Artículo 14(z) del Código Penal de 2012 define "ilegalmente" como "todo acto en contravención de alguna ley, norma, reglamento, ordenanza, u orden promulgada por una autoridad competente del Estado en el ejercicio de sus funciones". 33 LPRA sec. 5014(z). Sin embargo, no se incorpora a la Instrucción para evitar confusión al considerar los Artículos 25, 26 y 27 del Código Penal de 2012 (33 LPRA secs. 5038, 5039 y 5040).

La definición del término "súbita pendencia" proviene de *Pueblo v. Rivera Alicea*, 125 DPR 37, 47 (1989).

La modalidad de la Agresión Grave imputada es importante en el contexto de la Agresión Grave Atenuada, por tratarse de modalidades con penas diferentes.

Toda instrucción de los delitos particulares debe ir precedida de la Instrucción 4.15, que alude a la definición del concepto "elementos del delito".

Adviértase que se recogen en la Instrucción los elementos subjetivos del delito, por lo que no es necesario impartir también la Instrucción 4.5.

### 6.5    Agresión Grave Atenuada; lesión mutilante, como delito imputado (Art. 109A del Código Penal de 2012)

Contra la persona acusada se ha presentado una acusación por el delito de Agresión Grave Atenuada en su modalidad de lesión mutilante. Se la acusa de haber causado ilegalmente una lesión mutilante a otra persona y que se actuó a propósito, con conocimiento o temerariamente, pero como consecuencia de [una perturbación mental o emocional suficiente, para la cual hay una explicación o excusa razonable] [súbita pendencia].

La "lesión mutilante" es un daño permanente en cualquier parte del cuerpo de una persona, desfigurarle el rostro o inutilizar permanentemente su capacidad de oír, ver o hablar.

El propósito, el conocimiento y la temeridad son estados mentales.

Una persona actúa "a propósito" cuando su objetivo consciente es causar la lesión mutilante a una persona.

Una persona actúa "con conocimiento" cuando es consciente de que la producción del resultado, o sea, la lesión mutilante a una persona, es una consecuencia prácticamente segura de su conducta.

Una persona actúa "temerariamente" cuando es consciente de que su conducta genera un riesgo sustancial e injustificado de que se produzca la lesión corporal mutilante, y a pesar de conocer el riesgo, la persona continúa con su acción u omisión. Al evaluar si era consciente del riesgo, deberán determinar había previsto la posibilidad de que existiese ese riesgo. Al momento de evaluar si un riesgo fue sustancial, deberán considerar la probabilidad de que se produjera la lesión mutilante y la magnitud del daño. Al evaluar si un riesgo fue injustificado, deberán considerar lo que motivó a la persona a asumir el riesgo que produjo la lesión mutilante.

**[El tribunal debe leer la definición que aplique:**

El término "perturbación mental o emocional suficiente" se refiere a una pérdida del control para la cual media una explicación razonable. Se trata de un trastorno mental o emocional, no necesariamente una enfermedad, que no le permite a la persona ejercer control pleno sobre lo que hace. A su vez, se requiere una explicación o excusa razonable para ese trastorno; es decir, que una persona promedio, en las circunstancias en que se hallaba la persona acusada al momento de incurrir en la conducta por la que se le acusa, probablemente hubiese sufrido un disturbio emocional similar.

El término "súbita pendencia" se refiere a una reacción repentina o sin reflexión previa**].**

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no a propósito, con conocimiento o temerariamente. Pueden inferir o deducir razonablemente de la prueba presentada y admitida el propósito, el conocimiento o la temeridad de producir la lesión corporal mutilante. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable que a persona acusada causó una lesión mutilante al [ocasionar un daño permanente en cualquier parte del cuerpo de una persona] [desfigurar el rostro] [inutilizar permanentemente su capacidad para oír, ver o hablar], y que actuó a propósito, con conocimiento o temerariamente pero como consecuencia de [una perturbación mental o emocional suficiente, para la cual hay una explicación o excusa razonable] [súbita pendencia], deberán rendir un veredicto de culpable por Agresión Grave Atenuada en la modalidad de lesión mutilante.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada causó una lesión mutilante al [ocasionar un daño permanente en cualquier parte del cuerpo de una persona] [desfigurar el rostro] [inutilizar permanentemente su capacidad para oír, ver o hablar], y que actuó a propósito, con conocimiento o temerariamente, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por Agresión Grave Atenuada.

**REFERENCIA:**

Esta Instrucción proviene de las Instrucciones 8.1 y 8.2 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*), el Artículo 22 (*Elementos subjetivos del delito*), el Artículo 109 (*Agresión grave*) y el Artículo 109A (*Agresión grave atenuada*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5034, 5035, 5162 y 5162a), y el Artículo 122 (*Agresión grave*) y el Artículo 123 (*Agresión grave atenuada*) del Código Penal de 2004, Ley 149-2004 (33 LPRA secs. 4750 y 4751).

**COMENTARIO:**

Refiérase al comentario que acompaña la Instrucción 6.4 del delito de Agresión Grave Atenuada como delito imputado.

### 6.6 Agresión Grave Atenuada; como delito menor incluido
(Art. 109A del Código Penal de 2012)

**[El tribunal debe impartir esta Instrucción, cuando la prueba lo justifique, como delito menor incluido].**

La ley establece que si la Agresión Grave se comete como consecuencia de una perturbación mental o emocional suficiente para la cual haya una explicación o excusa razonable, o como consecuencia de súbita pendencia, entonces el delito de Agresión Grave se considerará atenuado.

**[El tribunal debe leer la definición que aplique:**

El término "perturbación mental o emocional suficiente" se refiere a una pérdida del control para la cual media una explicación razonable. Se trata de un trastorno mental o emocional, no necesariamente una enfermedad, que no le permite a la persona ejercer control pleno sobre lo que hace. A su vez, se requiere una explicación o excusa razonable para ese trastorno; es decir, que una persona promedio, en las circunstancias en que se hallaba la persona acusada al momento de incurrir en la conducta por la que se le acusa, probablemente hubiese sufrido un disturbio emocional similar.

El término "súbita pendencia" se refiere a una reacción repentina o sin reflexión previa**].**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable que la persona acusada cometió el delito de Agresión Grave en la modalidad de [hospitalización o tratamiento prolongado] [lesión mutilante], pero tienen duda razonable sobre si ello fue como consecuencia de [una perturbación mental o emocional suficiente, para la cual hay una explicación o excusa razonable] [súbita pendencia], deberán rendir entonces un veredicto de culpable por Agresión Grave Atenuada en la modalidad de [hospitalización o tratamiento prolongado] [lesión mutilante].

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada causó una [lesión corporal que requirió hospitalización o tratamiento prolongado] [lesión mutilante], y que actuó a propósito, con conocimiento o temerariamente, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por Agresión Grave Atenuada.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 8.2 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con el Artículo 109 (*Agresión grave*) y el Artículo 109A (*Agresión grave atenuada*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5162 y 5162a); el Artículo 122 (*Agresión grave*) y el

Artículo 123 (*Agresión grave atenuada*) del Código Penal de 2004, Ley 149-2004 (33 LPRA secs. 4750 y 4751).

**COMENTARIO:**

Refiérase al comentario que acompaña la Instrucción 6.4 del delito de Agresión Grave Atenuada como delito imputado.

### 6.7    Agresión menos grave (Art. 108 del Código Penal de 2012)

**[El tribunal debe impartir esta Instrucción, cuando la prueba lo justifique, como delito menor incluido].**

La ley también establece que incurre en el delito de Agresión, en su modalidad menos grave, la persona que ilegalmente ocasiona una lesión corporal al actuar a propósito, con conocimiento o temerariamente en circunstancias en que la lesión no requiere la hospitalización o un tratamiento prolongado.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable que la persona acusada causó una lesión corporal a propósito, con conocimiento o temerariamente, pero que no probó más allá de duda razonable que a consecuencia de la lesión se haya requerido la hospitalización o un tratamiento prolongado, deberán rendir un veredicto de culpable por Agresión en su modalidad menos grave.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada causó ilegalmente una lesión corporal, y que actuó a propósito, con conocimiento o temerariamente, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por Agresión en su modalidad menos grave.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 8.1 del Proyecto de Libro de Instrucciones al Jurado de 2008.  Guarda relación con el Artículo 108 (*Agresión*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA sec. 5161), y el Artículo 121 (*Agresión*) del Código Penal de 2004, Ley 149-2004 (33 LPRA sec. 4749).

**COMENTARIO:**

Esta Instrucción solo se impartirá cuando la prueba lo justifique. Es decir, se ofrecerá en los casos en que, en conformidad con la prueba, el Jurado pueda razonablemente inferir que la persona acusada es culpable del delito inferior incluido. Véanse *Pueblo v. Rosario*, 160 DPR 592 (2003); *Pueblo v. Bonilla Ortiz*, 123 DPR 434 (1989).

No se reiteran los elementos subjetivos del delito, puesto que esta Instrucción acompaña necesariamente otra instrucción de modalidad grave en donde se recogen los estados mentales que aplican.

### 6.8   Lesión Negligente menos grave; hospitalización o tratamiento prolongado, como delito imputado (Art. 110 del Código Penal de 2012)

Contra la persona acusada se ha presentó una acusación por el delito de Lesión Negligente. Se le acusa de haber ocasionado una lesión a la integridad corporal de una persona actuando de forma negligente, lesión que requirió la hospitalización o un tratamiento prolongado.

Los elementos de este delito son los siguientes:

(1) Causar una lesión o un daño al cuerpo de otra persona,
(2) que como consecuencia de esa lesión o de ese daño, se requirió [la hospitalización] [un tratamiento prolongado,] y
(3) que la persona acusada actuó negligentemente.

La negligencia es un estado mental.

La ley dispone que un delito se comete por negligencia cuando la persona debió saber que su conducta ocasionaría un riesgo sustancial e injustificado y que causaría el resultado dañino o la circunstancia prohibida por ley.

El riesgo debe de ser de tal grado que, considerando la naturaleza y el propósito de la conducta y las circunstancias conocidas por la persona, la acción u omisión constituye una desviación crasa del estándar de cuidado que observaría una persona razonable en su misma posición.

La negligencia criminal es el incumplimiento del deber de cuidado que la ley impone; no es una mera falta de cuidado. Se falta a ese deber cuando la persona ni siquiera se da cuenta del riesgo o peligro que le era exigible advertir, o cuando, a pesar de haberlo reconocido, confía imprudentemente en que no se producirá el resultado. La negligencia de la víctima no es suficiente para exonerar o librar de culpa a la persona acusada a menos que esta sea la única causa del resultado.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no negligentemente. Pueden inferir o deducir razonablemente de la prueba presentada y admitida la negligencia al producir la lesión corporal. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable que la persona la acusada causó de forma negligente una

lesión corporal que requirió [la hospitalización] [un tratamiento prolongado], deberán rendir un veredicto de culpable por Lesión Negligente.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada causó de forma negligente una lesión corporal que requirió [la hospitalización] [un tratamiento prolongado], o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por Lesión Negligente.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 8.3 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*), el Artículo 22 (*Elementos subjetivos del delito*) y el Artículo 110 (*Lesión negligente*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 y la Ley 113-2017 (33 LPRA secs. 5034, 5035 y 5163), y el Artículo 124 (*Lesión negligente*) del Código Penal de 2004, Ley 149-2004 (33 LPRA sec. 4752).

**COMENTARIO:**

El Artículo 110 del Código Penal, *supra*, según enmendado por la Ley 113-2017, define dos modalidades de Lesión Negligente. La modalidad menos grave recoge las lesiones que requieren de hospitalización o de un tratamiento prolongado, mientras que la modalidad grave cobija las lesiones mutilantes.

A diferencia del Artículo 109 (33 LPRA sec. 5162), pertinente a la Agresión Grave, el referido Artículo 110, que contempla la Lesión Negligente, no menciona el supuesto en que se transmite una enfermedad. Sin embargo, el propio Artículo 109, *supra*, señala que la modalidad de hospitalización o de tratamiento prolongado incluye supuestos en que se transmite una enfermedad. De un análisis sistemático, se podría argumentar que la modalidad de transmisión de una enfermedad también se encuentra cobijada por las modalidades negligentes de hospitalización o de tratamiento prolongado.

Toda instrucción de los delitos particulares debe ir precedida de la Instrucción 4.15, que alude a la definición del concepto de "elementos del delito".

Adviértase que se recoge en la Instrucción el elemento subjetivo de negligencia, por lo que no es necesario impartir también la Instrucción 4.6.

## 6.9 Lesión Negligente; lesión mutilante, como delito imputado (Art. 110 del Código Penal de 2012)

Contra la persona acusada se ha presentado una acusación por el delito de Lesión Negligente. Se le acusa de haber ocasionado una lesión a la integridad corporal de una persona, al actuar de forma negligente y que la lesión causada fue mutilante.

Los elementos de este delito son los siguientes:

(1) Causar una lesión o un daño al cuerpo de otra persona,

(2) que como consecuencia de esa lesión o de ese daño, se haya mutilado a la otra persona y

(3) que la persona acusada actuó negligentemente.

Una "lesión mutilante" es ocasionar un daño permanente en cualquier parte del cuerpo de una persona, desfigurar el rostro o inutilizar permanentemente su capacidad de oír, ver o hablar.

La negligencia es un estado mental.

La ley dispone que un delito se comete por negligencia cuando la persona debió saber que su conducta ocasionaría un riesgo sustancial e injustificado que causaría el resultado dañino o la circunstancia prohibida por ley.

El riesgo debe de ser de tal grado que, considerando la naturaleza y el propósito de la conducta y las circunstancias conocidas por la persona, la acción u omisión constituye una desviación crasa del estándar de cuidado que observaría una persona razonable en su misma posición.

La negligencia criminal es el incumplimiento del deber de cuidado que la ley impone; no es una mera falta de cuidado. Se falta a ese deber cuando la persona ni siquiera se da cuenta del riesgo o peligro que le era exigible advertir, o cuando, a pesar de haberlo reconocido, confía imprudentemente en que no se producirá el resultado. La negligencia de la víctima no es suficiente para exonerar o librar de culpa a la persona acusada, a menos que esta sea la única causa del resultado.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no negligentemente. Pueden inferir o deducir razonablemente de la prueba presentada y admitida la negligencia al producir la lesión corporal mutilante. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable que la persona acusada causó una lesión mutilante al [ocasionar un daño permanente en cualquier parte del cuerpo de una persona] [desfigurar el rostro] [inutilizar permanentemente su capacidad para oír, ver o hablar], y que actuó negligentemente, deberán rendir un veredicto de culpable por Lesión Negligente en la modalidad de lesión mutilante.

Si, por el contrario, después de ustedes analizar toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada causó una lesión mutilante al [ocasionar un daño permanente en cualquier parte del cuerpo de una persona] [desfigurar el rostro] [inutilizar permanentemente su capacidad para oír, ver o hablar], y que actuó

negligentemente, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por Lesión Negligente en la modalidad de lesión mutilante.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 8.3 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*), el Artículo 22 (*Elementos subjetivos del delito*) y el Artículo 110 (*Lesión negligente*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 y la Ley 113-2017 (33 LPRA secs. 5034, 5035 y 5163), y el Artículo 124 (*Lesión negligente*) del Código Penal de 2004, Ley 149-2004 (33 LPRA sec. 4752).

**COMENTARIO:**

El Artículo 110 del Código Penal, según enmendado por la Ley 113-2017, *supra*, contempla dos modalidades de Lesión Negligente.  La modalidad menos grave recoge las lesiones que requieren de hospitalización o de un tratamiento prolongado, mientras que la modalidad grave cobija las lesiones mutilantes.

La definición de "lesión mutilante" proviene del propio Artículo 110, según enmendado por la Ley 113-2017, *supra*.

Toda instrucción de los delitos particulares debe ir precedida de la Instrucción 4.15, que alude a la definición del concepto "elementos del delito".

Adviértase que se recoge en la Instrucción el elemento subjetivo de negligencia, por lo que no es necesario impartir también la Instrucción 4.6.

### 6.10   Lesión Negligente como delito menor incluido
     (Art. 110 del Código Penal de 2012)

**[El tribunal debe impartir esta Instrucción, cuando la prueba lo justifique, como delito menor incluido].**

Si ustedes determinan que el Ministerio Público probó que la persona acusada causó una lesión corporal que [requirió hospitalización] [requirió tratamiento prolongado] [causó una lesión mutilante], pero que no probó más allá de duda razonable que actuó, al menos, temerariamente, es decir, que al menos fue consciente de haber generado un riesgo sustancial e injustificado de que se produjera la lesión, según les explicamos antes, deberán considerar entonces si la persona actuó negligentemente.

Actúa negligentemente la persona que, aunque no era consciente de ello, debió saber que su conducta generaba un riesgo sustancial e injustificado de que se produjera la lesión corporal.

El riesgo debe de ser de tal grado que, considerando la naturaleza y el propósito de la conducta y las circunstancias conocidas por la persona, la acción u omisión constituye una

desviación crasa del estándar de cuidado que observaría una persona razonable en su misma posición.

La negligencia criminal es el incumplimiento del deber de cuidado que la ley impone; no es una mera falta de cuidado. Se falta a ese deber cuando la persona ni siquiera se da cuenta del riesgo o peligro que le era exigible advertir, o cuando, a pesar de haberlo reconocido, confía imprudentemente en que no se producirá el resultado. La negligencia de la víctima no es suficiente para exonerar o librar de culpa a la persona acusada, a menos que esta sea la única causa del resultado.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no negligentemente. Pueden inferir o deducir razonablemente de la prueba presentada y admitida la negligencia al producir la lesión corporal. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable que la persona acusada causó una lesión corporal, de forma negligente, que [requirió hospitalización o tratamiento prolongado] [causó una lesión mutilante] deberán rendir un veredicto de culpable por Lesión Negligente en la modalidad de [hospitalización o tratamiento prolongado] [lesión mutilante].

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada causó una lesión corporal que [requirió hospitalización o tratamiento prolongado] [causó una lesión mutilante], y que actuó de forma negligente, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por Lesión Negligente.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 8.3 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con el Artículo 22 (*Elementos subjetivos del delito*) y el Artículo 110 (*Lesión negligente*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 y la Ley 113-2017 (33 LPRA secs. 5035 y 5163), y el Artículo 124 (*Lesión negligente*) del Código Penal de 2004, Ley 149-2004 (33 LPRA sec. 4752).

**COMENTARIO:**

Por tratarse de una instrucción en calidad de delito menor incluido, se excluye la referencia a los principios incorporados en las instrucciones de las modalidades agravadas.

A diferencia del Artículo 109 (33 LPRA sec. 5162), pertinente a la Agresión Grave, el referido Artículo 110, que contempla la Lesión Negligente, no menciona el supuesto en que se transmite una enfermedad. Sin embargo, el propio Artículo 109, *supra*, señala que la modalidad de hospitalización o de tratamiento prolongado incluye supuestos en que se transmite una enfermedad. De un análisis sistemático, se podría argumentar que la

modalidad de transmisión de una enfermedad también se encuentra cobijada por las modalidades negligentes de hospitalización o de tratamiento prolongado.

Adviértase que se recoge en la Instrucción el elemento subjetivo de negligencia, por lo que no es necesario impartir también la Instrucción 4.6.


## 6.11   Prácticas Lesivas a la Integridad Corporal en los Procesos de Iniciación (Art. 111 del Código Penal de 2012)

**[El tribunal debe impartir esta Instrucción, cuando la prueba lo justifique, como delito menor incluido].**

La ley también establece que incurre en el delito de Prácticas Lesivas a la Integridad Corporal en los Procesos de Iniciación la persona que de forma negligentemente haya puesto en riesgo la salud física o mental, o atente contra la dignidad humana, de cualquier aspirante a ser miembro de alguna organización, fraternidad o sororidad como parte de su proceso de iniciación.

Los elementos de este delito son los siguientes:

(1) Poner en riesgo la salud física o mental, o atentar contra la dignidad de cualquier aspirante a miembro de una organización, fraternidad o sororidad,

(2) como parte de un proceso de iniciación,

(3) mediante prácticas lesivas a la dignidad e integridad personal del (de la) aspirante y

(4) que [la persona] [la institución educativa] actuó negligentemente.

Se entenderá como "práctica lesiva a la dignidad o integridad personal" el consumo forzado de alimentos, licor, bebidas alcohólicas, drogas narcóticas o cualquier otra sustancia; someter a ejercicios físicos extenuantes; exposición riesgosa a las inclemencias del tiempo; privación extendida de alimento, descanso o sueño; aislamiento extendido; todo tipo de rasgadura, golpe azote, paliza, quemadura o marca, y todo trato que afecte adversamente la salud física o mental, o la seguridad del (de la) aspirante.

La negligencia es un estado mental.

La ley dispone que un delito se comete por negligencia cuando la persona debió saber que su conducta ocasionaría un riesgo sustancial e injustificado que causaría el resultado dañino o la circunstancia prohibida por ley.

El riesgo debe de ser de tal grado que, considerando la naturaleza y el propósito de la conducta y las circunstancias conocidas por la persona, la acción u omisión constituye una desviación crasa del estándar de cuidado que observaría una persona razonable en su misma posición.

La negligencia criminal es el incumplimiento del deber de cuidado que la ley impone; no es una mera falta de cuidado. Se falta a ese deber cuando la persona ni siquiera se da cuenta del riesgo o peligro que le era exigible advertir, o cuando, a pesar de haberlo reconocido, confía imprudentemente en que no se producirá el resultado. La negligencia de la víctima no es suficiente para exonerar o librar de culpa a la persona acusada, a menos que esta sea la única causa del resultado.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no negligentemente. Pueden inferir o deducir razonablemente de la prueba presentada y admitida la negligencia al producir la lesión corporal. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable que la persona acusada de forma negligente puso en riesgo la salud física o mental, o atentó contra la dignidad humana de un(a) aspirante a miembro de alguna organización, fraternidad o sororidad mediante unas prácticas lesivas a la dignidad e integridad personal de esa persona como parte de su proceso de iniciación, deberán rendir un veredicto de culpable por Práctica Lesiva a la Integridad Corporal en los Procesos de Iniciación.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada que la persona acusada de forma negligente puso en riesgo la salud física o mental, o atentó contra la dignidad humana de un(a) aspirante a miembro de alguna organización, fraternidad o sororidad mediante prácticas lesivas a la dignidad e integridad personal de esa persona como parte de su proceso de iniciación, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por Práctica Lesiva a la Integridad Corporal en los Procesos de Iniciación.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 8.4 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*), el Artículo 22 (*Elementos subjetivos del delito*) y el Artículo 111 (*Prácticas lesivas a la integridad corporal en los procesos de iniciación*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5034, 5035 y 5164), y el Artículo 125 (*Prácticas lesivas a la dignidad e integridad corporal en los procesos de iniciación de las fraternidades, sororidades, u organizaciones similares*) del Código Penal de 2004, Ley 149-2004 (33 LPRA sec. 4753). Refiérase a la Exposición de Motivos de la Ley 167-2009 (2009 [Parte 2] Leyes de Puerto Rico 1443) para fines del tracto legislativo.

**COMENTARIO:**

En conformidad con el Artículo 111 del Código Penal, *supra*, incurrirá en un delito igual cualquier institución educativa que permita los actos allí prohibidos en su propiedad o en cualquier lugar bajo su posesión, custodia o control.

Se comete el delito aunque la parte perjudicada haya consentido. *Pueblo v. Ruiz Ramos*, 125 DPR 365 (1990).

Toda instrucción de los delitos particulares debe ir precedida de la Instrucción 4.15, que alude a la definición del concepto "elementos del delito".

Adviértase que se recoge en la Instrucción el elemento subjetivo de negligencia, por lo que no es necesario impartir también la Instrucción 4.6.

CAPÍTULO 7
**DELITOS CONTRA LA FAMILIA**

**A.      DE LA PROTECCIÓN DEBIDA A LOS MENORES**

**7.1      Abandono de Menores (Art. 118 del Código Penal de 2012)**

Contra la persona acusada se ha presentado una acusación por el delito de Abandono de Menores.

La ley dispone que el padre o la madre de una persona menor de edad, o cualquier persona a quien se le ha confiado tal menor para su manutención o educación, que la abandone en cualquier lugar con el propósito de desampararla, comete el delito de Abandono de Menores.

Los elementos de este delito son los siguientes:

(1) Que el padre, la madre o cualquier persona a quien esté confiada una persona menor de edad para su manutención o educación,
(2) la deje o abandone en cualquier lugar,
(3) con el propósito de desampararla.

**[El tribunal debe leer la instrucción siguiente, si se alegó en el pliego acusatorio:**

Además de los elementos anteriores, deberán determinar si, por las circunstancias del abandono, se puso en peligro la vida, la salud, la integridad física o el desarrollo sexual adecuado del (de la) menor].

"Abandonar" es dejar a la persona menor de edad en cualquier lugar con el motivo de desampararla. Por el solo hecho de abandonar a propósito se comete el delito de Abandono de Menores.

"Menor de edad" es una persona que al momento de los hechos no ha cumplido 18 años.

Una persona actúa "a propósito" cuando su objetivo consciente es llevar a cabo un acto u omisión con el fin de obtener un resultado definido o cuando cree que una circunstancia existe.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no a propósito. Pueden inferir o deducir razonablemente de la prueba presentada y admitida el propósito de desamparar. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

**[El tribunal debe impartir la instrucción siguiente si surge prueba de la exclusión sobre la responsabilidad penal definida en el Artículo 119 del Código Penal 2012:**

No constituye el delito de Abandono de Menores la entrega de una persona menor de edad a una institución para el cuidado de menores, ya sea pública o privada, por parte del padre, la madre o tutor(a) encargado(a). Tampoco constituye el delito de Abandono de Menores la entrega de un(a) menor por su padre, madre o tutor(a) a una institución hospitalaria, pública o privada, en conformidad con las disposiciones de la Ley de Adopción**].**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Abandono de Menores.

**[El tribunal debe impartir esta Instrucción adicional cuando aplique:**

Si ustedes consideran, luego de un análisis cuidadoso de toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, que el Ministerio Público probó más allá de duda razonable la comisión del delito pero no que se puso en peligro la vida, salud, integridad física o desarrollo sexual adecuado del (de la) menor, entonces deberán rendir un veredicto de culpable del delito de Abandono de Menores sin esa circunstancia**].**

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Abandono de Menores

**REFERENCIA**:

Esta Instrucción proviene de la Instrucción 9.1 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*), el Artículo 22 (*Elementos subjetivos del delito*), el Artículo 118 (*Abandono de menores*) y el Artículo 119 (*Exclusión*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5034, 5035, 5177 y 5178); el Artículo 132 (*Abandono de menores*) del Código Penal de 2004, Ley 149-2004 (33 LPRA sec. 4760), y el Artículo 159 (*Abandono de menores y personas de edad avanzada*) del Código Penal de 1974, Ley Núm. 115 de 22 de julio de 1974 (1974 [Parte 1] Leyes de Puerto Rico 497).

**COMENTARIO:**

El Artículo 118 del Código Penal de 2012, *supra*, mantuvo la misma redacción del Artículo 132 del Código Penal 2004, *supra*, salvo la pena.

En el contexto de menores, el concepto "indemnidad sexual" trasciende su libertad sexual actual para cobijar la evolución normal y el desarrollo de su personalidad. Se prefiere el término "indemnidad" sobre la frase "libertad sexual", puesto que la ley considera que algunos menores carecen de autonomía para determinar su comportamiento en el ámbito sexual. F. Muñoz Conde, *Derecho penal: parte especial*, 22a ed., Valencia, Ed. Tirant Lo Blanch, 2019, págs. 203-204.

Explica la Dra. Dora Nevares-Muñiz que "[e]l delito se comete tan pronto se deja desamparado al menor con el propósito de desampararlo. No importa el motivo por el cual se desamparó al menor, el sólo hecho de abandonarlo a propósito configura el delito". D. Nevares-Muñiz, *Código Penal de Puerto Rico*, 4ta ed. rev., San Juan, Ed. Instituto para el Desarrollo del Derecho, 2019, pág. 194.

Para propósitos del Código Penal, se considera menor de edad cualquier persona que no haya cumplido 18 años. Refiérase a los Artículos 39 (*Minoridad*) (33 LPRA sec. 5062), 88 (*Delitos que no prescriben*) (33 LPRA sec. 5133) y 130 (*Agresión sexual*) (33 LPRA sec. 5191), entre otros, del Código Penal de 2012. La doctora Nevares-Muñiz aduce que, desde el Código Penal de 2004 se aumentó la edad de protección para cubrir todo el periodo en que la persona sea menor de 18 años. Íd., págs. 194-195.

Adviértase que el Artículo 119 (*Exclusión*) del Código Penal de 2012, *supra*, hace referencia a la Ley 186-2009, la cual se derogó mediante la aprobación de la Ley 61-2018, conocida como Ley de Adopción de Puerto Rico. Esta ley entró en vigor sesenta días a partir del 27 de enero de 2018, fecha cuando se aprobó. Véase Artículo 52 de la Ley 61-2018. Refiérase al Artículo 4 del Código Penal de 2012 (33 LPRA sec. 5004).

## 7.2    Secuestro de Menores (Art. 120 del Código Penal de 2012)

Contra la persona acusada se ha presentado una acusación por el delito de Secuestro de Menores.

La ley dispone que la persona que mediante fuerza, violencia, intimidación, fraude o engaño sustraiga a una persona menor de edad con el propósito de retenerla y ocultarla de su padre, madre, tutor(a) o de otra persona encargada de tal menor, comete el delito de Secuestro de Menores.

Los elementos de este delito son los siguientes:

(1) Sustraer a una persona menor de edad,
(2) por medio de fuerza, violencia, intimidación, fraude o engaño,
(3) con el propósito de retenerla y ocultarla de su padre, madre, tutor(a) o persona encargada

**[El tribunal debe leer la instrucción siguiente, limitándose a la(s) circunstancia(s) alegada(s) en el pliego acusatorio:**

Corresponde a ustedes, miembros del Jurado, determinar si además de los elementos anteriores se estableció más allá de duda razonable que la conducta prohibida se llevó a cabo en:

(a) una institución hospitalaria, pública o privada,

(b) una escuela elemental, intermedia o secundaria, pública o privada,

(c) un edificio ocupado o sus dependencias,

(d) un centro de cuidado de niños,

(e) un parque, área recreativa o centro comercial**].**

"Sustraer" significa apartar, separar o extraer.

Los términos "fuerza" y "violencia" conllevan cualquier uso de fuerza física o agresión.

La "intimidación" consiste en infundir miedo o temor por medio de amenazas. Es necesario que las circunstancias sean tales que lleven al ánimo de una persona razonable el temor del peligro.

El término "fraude" implica la realización de un acto mediante ardid, simulación, trama, treta o mediante cualquier forma de engaño.

El "engaño" comprende el hacer creer algo que no es verdad. Esta es una de las formas del fraude que consiste en la realización de un acto mediante ardid, simulación, trama o treta.

"Menor de edad" es una persona que al momento de los hechos no ha cumplido 18 años.

Una persona actúa "a propósito" cuando su objetivo consciente es llevar a cabo un acto u omisión con el fin de obtener un resultado definido o cuando cree que una circunstancia existe.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no a propósito. Pueden inferir o deducir razonablemente de la prueba presentada y admitida el propósito de retener u ocultar una persona menor de edad de su padre, madre, tutor(a) o persona encargada. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Secuestro de Menores.

**[El tribunal debe impartir esta Instrucción adicional cuando aplique:**

Si ustedes consideran, luego de un análisis cuidadoso de toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, que el Ministerio Público probó más allá de duda razonable la comisión del delito pero no que fue en **[indique la(s) circunstancia(s) que aplique(n) según lo alegado en el pliego acusatorio**:

(a) una institución hospitalaria, pública o privada;

(b) una escuela elemental, intermedia o secundaria, pública o privada;

(c) un edificio ocupado o sus dependencias;

(d) un centro de cuidado de niños,

(e) un parque, área recreativa o centro comercial,

deberán rendir un veredicto de culpable por el delito de Secuestro de Menores, sin esa(s) circunstancia(s)**].**

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Secuestro de Menores.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 9.2 del Proyecto de *Libro de Instrucciones al Jurado* de 2008. Guarda relación con el Artículo 14 (*Definiciones*), el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*), el Artículo 22 (*Elementos subjetivos del delito*), el Artículo 120 (*Secuestro de menores*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5014, 5034, 5035 y 5179); el Artículo 134 (*Secuestro de menores*) del Código Penal de 2004, Ley 149-2004 (33 LPRA sec. 4762), y el Artículo 160 (R*obo de menores*) del Código Penal de 1974, Ley Núm. 115 de 22 de julio de 1974 (1974 [Parte 1] Leyes de Puerto Rico 497).

**COMENTARIO:**

El Artículo 120 Código Penal de 2012, *supra*, mantuvo la misma redacción del Artículo 134 del Código Penal 2004, salvo la pena.

Explica la doctora Nevares-Muñiz que "[e]l sujeto activo del delito es cualquier persona que no sea uno de los siguientes: padre, tutor o persona legalmente encargada de un menor de edad. Distíngase que, cuando la persona que sustrae al menor es un progenitor, quien no tiene la custodia legal del menor, no comete este delito sino el [tipificado] en el Artículo 121 [...]". D. Nevares-Muñiz, *Código Penal de Puerto Rico*, 4ta ed. rev., San Juan, Ed. Instituto para el Desarrollo del Derecho, 2019, pág.196.

Para propósitos del Código Penal, se considera menor de edad cualquier persona que no haya cumplido 18 años. Refiérase a los Artículos 39 (*Minoridad*) (33 LPRA sec. 5062), 88 (*Delitos*

*que no prescriben*) (33 LPRA sec. 5133) y 130 (Agresión sexual) (33 LPRA sec. 5191), entre otros del Código Penal de 2012. La doctora Nevares-Muñiz aduce que desde el Código Penal de 2004 se aumentó la edad de protección para cubrir todo el periodo en que la persona sea menor de 18 años. Íd., págs. 194-195.

### 7.3    Privación Ilegal de Custodia; modalidad grave
### (Art. 121 del Código Penal de 2012)

**[El tribunal debe impartir la instrucción siguiente cuando el pliego acusatorio impute el delito de Privación Ilegal de Custodia en su modalidad grave].**

Contra la persona acusada se ha presentado una acusación por el delito de Privación Ilegal de Custodia.

La ley dispone que la persona que, sin tener derecho a ello, prive a un padre, a una madre o a otra persona o entidad de la custodia legal de una persona menor de edad comete el delito de Privación Ilegal de Custodia.

Los elementos de este delito son los siguientes:

(1) A propósito, con conocimiento o temerariamente,

(2) privar a un padre, a una madre o a otra persona o entidad de la custodia legal de una persona menor de edad, sin tener derecho a ello y

(3) **[El tribunal debe leer la(s) circunstancia(s) que aplique(n) según lo alegado en el pliego acusatorio**:

(a) trasladar a la persona menor de edad fuera de la jurisdicción del Estado Libre Asociado de Puerto Rico.

(b) que el padre o madre sin custodia y no residente en Puerto Rico retenga a la persona menor de edad cuando le correspondía regresarla al hogar de quien tiene la custodia legítima.

(c) ocultar o no divulgar el paradero de la persona menor de edad que se ha evadido de la custodia del Estado o sobre quien exista una orden para ingresarle en alguna institución, conociendo su paradero**]**.

**[El tribunal debe impartir esta Instrucción acompañada de la Instrucción 4.5].**

"Menor de edad" es una persona que al momento de los hechos no ha cumplido 18 años.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Privación Ilegal de Custodia en su modalidad grave.

**[El tribunal debe impartir esta Instrucción adicional cuando aplique:**

Si ustedes consideran, luego de un análisis cuidadoso de toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, que el Ministerio Público probó más allá de duda razonable la comisión del delito pero no que [trasladó a la persona menor de edad fuera de la jurisdicción del Estado Libre Asociado de Puerto Rico] [retuvo a la persona menor de edad] [ocultó el paradero de la persona menor de edad], deberán rendir un veredicto de culpable por el delito de Privación Ilegal de Custodia en su modalidad menos grave**].**

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Privación Ilegal de Custodia.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 9.3 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con el Artículo 121 (*Privación ilegal de custodia*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA sec. 5180); el Artículo 135 (*Privación ilegal de custodia*) del Código Penal de 2004, Ley 149-2004 (33 LPRA sec. 4763), y el Artículo 161 (*Privación ilegal de custodia*) del Código Penal de 1974, Ley Núm. 115 de 22 de julio de 1974 (1974 [Parte 1] Leyes de Puerto Rico 497).

**COMENTARIO:**

Explica la doctora Nevares-Muñiz que "[c]uando el sujeto pasivo se traslada o es retenido fuera de la jurisdicción fuera de Puerto Rico por el progenitor no custodio, entonces el delito se convierte en grave y tiene una pena mayor". D. Nevares-Muñiz, *Código Penal de Puerto Rico*, 4ta ed. rev., San Juan, Ed. Instituto para el Desarrollo del Derecho, 2019, pág. 198.

No se incluye la referencia a la persona incapacitada debido a que no se configura la modalidad grave que justifique impartir una instrucción al Jurado.

## 7.4    Adopción a Cambio de Dinero (Art. 122 del Código Penal de 2012)

Contra la persona acusada se ha presentado una acusación por el delito de Adopción a Cambio de Dinero.

La ley dispone que la persona que, con el propósito de lucro, reciba, ofrezca o dé dinero u otros bienes a cambio de la entrega para adopción de una persona menor de edad en violación a la ley, comete el delito de Adopción a Cambio de Dinero.

Los elementos de este delito son los siguientes:

(1) Recibir, ofrecer o dar dinero u otros bienes,

(2) a cambio de la entrega para adopción de una persona menor de edad en violación a la ley,

(3) con el propósito de obtener un provecho o beneficio económico.

Corresponde a ustedes, miembros del Jurado, determinar si se probaron más allá de duda razonable los elementos descritos y si el (la) menor objeto de la adopción **[especifique la circunstancia que aplique según lo alegado en el pliego acusatorio:**

(a) era hijo(a) biológico(a) de la persona acusada.

(b) tenía una relación de parentesco hasta el segundo grado de consanguinidad o afinidad]**.**

Una persona actúa "a propósito" cuando su objetivo consciente es llevar a cabo un acto u omisión con el fin de obtener un resultado definido o cuando cree que una circunstancia existe.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no a propósito. Pueden inferir o deducir razonablemente de la prueba presentada y admitida el propósito de obtener un provecho o beneficio económico. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada*.*

**[El tribunal debe explicar los conceptos** *ascendiente*, *descendiente*, *colateral*, *consanguinidad* **y** *afinidad hasta el segundo grado*, **según aplique a la relación alegada en el pliego acusatorio:**

Son parientes ascendientes por consanguinidad (de sangre) hasta el segundo grado el padre, la madre y los(as) abuelos(as). Si estas personas fueran adoptadas, deben tratarse como si fueran parientes de sangre. Son parientes ascendientes por afinidad las personas con quienes se hayan casado estos(as) parientes de sangre, tales como el padrastro, la madrastra y los (las) abuelastros(as). También lo será la familia política, tales como el (la) suegro(a) y los (las) abuelos(as) políticos(as).

Son parientes descendientes por consanguinidad (de sangre) hasta el segundo grado los(as) hijos(as) y los(as) nietos(as). Si estas personas fueran adoptadas, deben tratarse como si fueran parientes de sangre. Son parientes descendientes por afinidad las personas con quienes se hayan casado estos(as) parientes de sangre y también los(as) hijastros(as) y los(as) nietos(as) políticos(as). Igualmente lo será la familia política, tales como los(as) cuñados(as), los yernos y las nueras.

Son parientes de segundo grado también los(as) hermanos(as)**]**.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona

acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Adopción a Cambio de Dinero.

**[El tribunal debe impartir esta Instrucción adicional cuando aplique:**

Si ustedes consideran, luego de un análisis cuidadoso de toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, que el Ministerio Público probó más allá de duda razonable la comisión del delito pero no que [el (la) menor objeto de la adopción era el (la) hijo(a) biológico(a) de la persona acusada] [existía un grado de parentesco entre la persona menor de edad y la persona acusada] deberán rendir un veredicto de culpable por el delito de Adopción a Cambio de Dinero sin esa circunstancia**].**

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Adopción a Cambio de Dinero.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*), el Artículo 22 (*Elementos subjetivos del delito*), el Artículo 122 (*Adopción a cambio de dinero*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5034, 5035 y 5181); el Artículo 136 (*Adopción a cambio de dinero*) del Código Penal 2004, Ley 149-2004 (33 LPRA sec. 4763), y el Artículo 162 (*Adopción a cambio de dinero*) del Código Penal de 1974, Ley Núm. 115 de 22 de julio de 1974 (1974 [Parte 1] Leyes de Puerto Rico 497).

**COMENTARIO:**

Se emplea como sinónimo de "lucro" la frase "provecho o beneficio económico". Esta determinación se inspira en la definición de "beneficio" dispuesta en el Artículo 1.2(i) de la Ley de Ética Gubernamental (3 LPRA sec. 1854(i)), según interpretado por el Tribunal Supremo en *Pueblo v. Arlequín Vélez*, 204 DPR 117 (2020).

Explica la doctora Nevares-Muñiz que "[s]e excluye del tipo el contrato de maternidad subrogada, así como las llamadas adopciones privadas supervisadas por agencias que operan con licencias expedidas por el Departamento de la Familia. Estos casos presuponen el cumplimiento del proceso legal de adopción". D. Nevares-Muñiz, *Código Penal de Puerto Rico*, 4ta ed. rev., San Juan, Ed. Instituto para el Desarrollo del Derecho, 2019, pág. 199.

**7.5    Corrupción de Menores (Art. 123 del Código Penal de 2012)**

Contra la persona acusada se ha presentado una acusación por el delito de Corrupción de Menores.

Los elementos de este delito son los siguientes:

(1) A propósito, con conocimiento o temerariamente,

(2) una persona **[El tribunal debe leer la(s) circunstancia(s) que aplique(n) según lo alegado en el pliego acusatorio:**

    (a) utilice a otra persona menor de 18 años para cometer un delito.

    (b) intoxique, induzca, aconseje, incite o ayude a intoxicar a otra persona que no ha cumplido 18 años.

    (c) autorice, induzca, permita u ordene a una persona que no ha cumplido 18 años a dedicarse a mendigar en público, a participar en juegos de azar o a permanecer en una casa de prostitución o de comercio de sodomía.

    (d) dueña, empresaria, administradora, gerente, directora, dependiente o empleada de un establecimiento o negocio público consienta o tolere que en dicho establecimiento se cometa cualquiera de los actos señalados en el subinciso (a).

    (e) dueña, administradora o encargada de cualquier establecimiento, utilizado en todo o en parte como salón de bebidas, casino o sala de juegos, permita a una persona que no ha cumplido 18 años tomar parte en los juegos de azar.

    (f)  dueña, administradora, empleada o encargada de una casa de prostitución o de comercio de sodomía permita la presencia de una persona que no ha cumplido 18 años**].**

**[El tribunal debe impartir esta Instrucción acompañada de la Instrucción 4.5].**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Corrupción de Menores.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Corrupción de Menores.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 9.4 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con el Artículo 123 (*Corrupción de menores*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA sec. 5182); el Artículo 137 (*Corrupción de menores*) del Código Penal de 2004, Ley 149-2004 (33 LPRA sec. 4765); el Artículo 163 (*Perversión de menores*) y el Artículo 164 (*Mendicidad pública por menores*) del Código Penal de 1974, Ley Núm. 115 de 22 de julio de 1974 (1974 [Parte 1] Leyes de Puerto Rico 498).

**COMENTARIO:**

El tribunal debe tomar en cuenta que el inciso (d) alude a "cualquiera de los actos señalados en el subinciso (a)". Sin embargo, más bien parece aplicar al inciso (b). Aquí puede presentarse un problema de principio de legalidad.

### 7.6 Seducción, Persuasión, Atracción y Coacción de Menores a través de la Internet o Medios Electrónicos (Art. 124 del Código Penal de 2012)

**[El tribunal debe leer la modalidad que aplique según lo alegado en el pliego acusatorio].**

#### A. Primera Modalidad

Contra la persona acusada se ha presentado una acusación por el delito Seducción, Persuasión, Atracción y Coacción de Menores a través de la Internet o Medios Electrónicos.

La ley dispone que comete el delito la persona que, a sabiendas, utilice cualquier medio de comunicación electrónico, red social, teléfono o Internet para [seducir] [persuadir] [inducir] [atraer] [tentar] [manipular] [coaccionar] [convencer] a una persona menor de edad para encontrarse con la persona, con el propósito de incurrir en una conducta sexual prohibida por ley.

Los elementos de este delito son los siguientes:

(1) A sabiendas,

(2) utilizar cualquier medio de comunicación electrónico, red social, teléfono o Internet,

(3) para [seducir] [persuadir] [inducir] [atraer] [tentar] [manipular] [coaccionar] [convencer] a una persona menor de edad a encontrarse,

(4) con el propósito de incurrir en una conducta sexual prohibida.

**[El tribunal debe impartir la instrucción siguiente cuando se alega en el pliego acusatorio que la persona acusada de cometer el delito mintió a la persona menor sobre su identidad o edad:**

Además, corresponde a ustedes determinar si la persona acusada mintió al (a la) menor sobre su identidad o edad**].**

"Menor de edad" es una persona que al momento de los hechos no ha cumplido 18 años.

"A sabiendas" es sinónimo de "con conocimiento". Una persona actúa "con conocimiento" cuando es consciente de que la producción del resultado es una consecuencia prácticamente segura de su conducta o cuando es consciente de que la existencia de la circunstancia es prácticamente segura.

Una persona actúa "a propósito" cuando su objetivo consciente es llevar a cabo un acto u omisión con el fin de obtener un resultado definido o cuando cree que una circunstancia existe.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no con conocimiento o a propósito. Pueden inferir o deducir razonablemente de la prueba presentada y admitida el conocimiento o el propósito. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Seducción, Persuasión, Atracción y Coacción de Menores a través de la Internet o Medios Electrónicos.

**[Cuando se alegue en el pliego acusatorio, el tribunal debe impartir esta Instrucción adicional:**

Si ustedes consideran, luego de un análisis cuidadoso de toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, que el Ministerio Público probó más allá de duda razonable la comisión del delito pero no que mintió sobre su identidad o edad al menor, entonces deberán rendir un veredicto de culpable por el delito de Seducción, Persuasión, Atracción y Coacción de Menores a través de la Internet o Medios Electrónicos, sin esa circunstancia**].**

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Seducción, Persuasión, Atracción y Coacción de Menores a través de la Internet o Medios Electrónicos.

### B. Segunda Modalidad

Contra la persona acusada se ha presentado una acusación por el delito Seducción, Persuasión, Atracción y Coacción de Menores a través de la Internet o Medios Electrónicos.

La ley dispone que comete el delito la persona que, a sabiendas, utilice cualquier medio de comunicación electrónico, red social, teléfono o Internet para [contactar] [seducir] [persuadir] [inducir] [atraer] [tentar] [manipular] [coaccionar] [convencer] a una persona menor de edad [para que le facilite material de pornografía infantil] [para que le muestre imágenes de pornografía infantil de su persona] [para que le muestre imágenes de pornografía infantil donde aparezca otra persona menor].

Los elementos de este delito son los siguientes:

(1) A sabiendas,

(2) utilizar cualquier medio de comunicación electrónico, red social, teléfono o Internet,

(3) para [contactar] [seducir] [persuadir] [inducir] [atraer] [tentar] [manipular] [coaccionar] [convencer] a una persona menor de edad,

(4) [para que le facilite material de pornografía infantil] [para que le muestre imágenes de pornografía infantil de su persona] [para que le muestre imágenes de pornografía infantil donde aparezca otra persona menor].

**[El tribunal debe impartir la instrucción siguiente cuando se alega en el pliego acusatorio que la persona acusada de cometer el delito mintió a la persona menor sobre su identidad o edad:**

Además, corresponde a ustedes determinar si la persona acusada mintió al (a la) menor sobre su identidad o edad**].**

"Menor de edad" es una persona que al momento de los hechos no ha cumplido 18 años.

"Pornografía infantil" es cualquier representación de conducta sexual explícita, todo acto de masturbación, abuso sadomasoquista, relaciones sexuales reales o simuladas, relaciones sexuales desviadas, bestialismo, homosexualismo, lesbianismo, actos de sodomía o exhibición de los órganos genitales llevados a cabo por personas menores de 18 años.

"Material" es cualquier libro, revista, periódico, material impreso, escrito; cualquier retrato, fotografía, dibujo, caricatura, película de movimiento, cinta cinematográfica u otra representación gráfica; cualquier representación oral o visual transmitida o retransmitida a través de los cables, ondas electromagnéticas, computadoras, tecnología digital o cualesquiera medios electrónicos o de comunicación telemática; cualquier estatua, talla, figura, o escultura; cualquier grabación, transmisión, reproducción mecánica, química o eléctrica, o cualquier otro artículo, equipo o máquina.

"A sabiendas" es sinónimo de "con conocimiento". Una persona actúa "con conocimiento" cuando es consciente de que la producción del resultado es una consecuencia

prácticamente segura de su conducta o cuando es consciente de que la existencia de la circunstancia es prácticamente segura.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no con conocimiento. Pueden inferir o deducir razonablemente de la prueba presentada y admitida el conocimiento. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Seducción, Persuasión, Atracción y Coacción de Menores a través de la Internet o Medios Electrónicos.

**[Cuando se alegue en el pliego acusatorio, el tribunal debe impartir esta Instrucción adicional:**

Si ustedes consideran, luego de un análisis cuidadoso de toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, que el Ministerio Público probó más allá de duda razonable la comisión del delito pero no que mintió sobre su identidad o edad al menor, entonces deberán rendir un veredicto de culpable por el delito de Seducción, Persuasión, Atracción y Coacción de Menores a través de la Internet o Medios Electrónicos, sin esa circunstancia**].**

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Seducción, Persuasión, Atracción y Coacción de Menores a través de la Internet o Medios Electrónicos.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 14 (*Definiciones*), el Artículo 21 (*Formas de culpabilidad: Requisito general del elemento subjetivo*), el Artículo 22 (*Elementos subjetivos del delito*) y el Artículo 124 (*Seducción, persuasión, atracción y coacción de menores a través de la Internet o medios electrónicos*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 65-2020 y el Artículo 143 (*Definiciones*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 y la Ley 65-2020 (33 LPRA secs. 5014, 5034, 5035, 5207 y 5204).

**COMENTARIO:**

Respecto a la primera modalidad de este delito, no es necesario que se lleve a cabo la conducta sexual, sino que basta con seducir a la persona menor de edad a encontrarse con el sujeto activo (además de los otros elementos del delito). D. Nevares-Muñiz, *Código Penal de*

*Puerto Rico*, 4ta ed. rev., San Juan, Ed. Instituto para el Desarrollo del Derecho, 2019, pág. 203.

Para propósitos del Código Penal, se considera menor de edad cualquier persona que no haya cumplido 18 años. Refiérase a los Artículos 39 (*Minoridad*) (33 LPRA sec. 5062), 88 (*Delitos que no prescriben*) (33 LPRA sec. 5133) y 130 (Agresión sexual) (33 LPRA sec. 5191), entre otros del Código Penal de 2012. La doctora Nevares-Muñiz aduce que desde el Código Penal de 2004 se aumentó la edad de protección para cubrir todo el periodo en que la persona sea menor de 18 años. Íd., págs. 194-195.

**B.** **DE LA PROTECCIÓN DEBIDA A LAS PERSONAS DE EDAD AVANZADA E INCAPACITADOS**

**7.7** **Abandono de Personas de Edad Avanzada e Incapacitados (Art. 126 del Código Penal de 2012)**

Contra la persona acusada se ha presentado una acusación por el delito de Abandono de Personas de Edad Avanzada e Incapacitados.

La ley dispone que comete este delito la persona que abandone en cualquier lugar a una persona de edad avanzada o incapacitada, que tenga a su cargo y que no pueda valerse por sí misma.

Los elementos de este delito son los siguientes:

(1) Abandonar en cualquier lugar,
(2) a una persona de edad avanzada o a una persona incapacitada que esté a su cargo y que no pueda valerse por sí misma
(3) con el propósito de desampararla.

**[El tribunal debe leer la instrucción siguiente si fue alegado así en el pliego acusatorio:**

Además de los elementos anteriores, deberán determinar si, por las circunstancias del abandono, se puso en peligro la vida, la salud, la integridad física o sexual de la persona].

"Persona de edad avanzada" es una persona de 60 años o más.

"No valerse por sí misma" significa que la persona, ya sea por su edad avanzada, porque tenga alguna incapacidad o por su condición física o mental, requiere del cuidado o de la alimentación por parte de la persona que la tiene a su cargo, independientemente de su edad.

Una persona actúa "a propósito" cuando su objetivo consciente es llevar a cabo un acto u omisión con el fin de obtener un resultado definido o cuando cree que una circunstancia existe.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no a propósito. Pueden inferir o deducir razonablemente de la prueba presentada y admitida el propósito de desamparar. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Abandono de Personas de Edad Avanzada e Incapacitados.

**[Cuando se alegue en el pliego acusatorio, el tribunal debe impartir esta Instrucción adicional:**

Si ustedes consideran, luego de un análisis cuidadoso de toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, que el Ministerio Público probó más allá de duda razonable la comisión del delito pero no que se puso en peligro su vida, salud, integridad física o sexual, entonces deberán rendir un veredicto de culpable por el delito de Abandono de Personas de Edad Avanzada e Incapacitados, sin esa circunstancia**].**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Abandono de Personas de Edad Avanzada e Incapacitados.

**REFERENCIA:**

Esta Instrucción proviene, en parte, de la Instrucción 9.5 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*), el Artículo 22 (*Elementos subjetivos del delito*), el Artículo 126 (*Abandono de personas de edad avanzada e incapacitados*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5034, 5035 y 5185); el Artículo 139 (*Abandono de personas de edad avanzada e incapacitadas*) del Código Penal de 2004, Ley 149-2004 (33 LPRA sec. 4767), y el Artículo 160 (*Abandono de menores y personas de edad avanzada*) del Código Penal de 1974, Ley Núm. 115 de 22 de julio de 1974 (1974 [Parte 1] Leyes de Puerto Rico 497).

**COMENTARIO:**

Este delito reitera la redacción del Artículo 139 del Código de 2004, *supra*, el cual, a su vez, procedía de los Artículos 159 y 160 del Código de 1974 (1974 [Parte 1] Leyes de Puerto Rico 497). Este artículo fue enmendado por la Ley 246-2014 para cambiar la pena y el elemento de intención por "propósito". Este artículo originalmente contenía la frase "con la intención de desampararla", pero ahora indica que es "con el propósito de desampararla".

La doctora Nevares-Muñiz entiende que en este artículo no se dispone la edad mínima, por lo que la protección se activa si la persona no puede valerse por sí misma, ya sea a causa de su edad o por alguna incapacidad. D. Nevares-Muñiz, *Código Penal de Puerto Rico*, 4ta ed. rev., San Juan, Ed. Instituto para el Desarrollo del Derecho, 2019, pág. 204.

En el Código Penal no se define lo que es una persona de edad avanzada. No obstante, la Ley 138-2014 define "persona de edad avanzada" en su Artículo 2(p) de la Ley Núm. 121 de 12 de julio de 1986, según enmendada, conocida como Carta de Derechos de la Persona de Edad Avanzada en Puerto Rico, 8 LPRA sec. 342(p). En este artículo se define "persona de edad avanzada" como una "persona de sesenta (60) años o más".

### 7.8    Negligencia en el Cuidado de Personas de Edad Avanzada e Incapacitados (Art. 127 del Código Penal de 2012)

Contra la persona acusada se ha presentado una acusación por el delito de Negligencia en el Cuidado de Personas de Edad Avanzada e Incapacitados.

La ley dispone que comete este delito la persona que, obrando con negligencia y teniendo la obligación legal o por orden de un tribunal de prestar alimentos y cuidado a una persona de edad avanzada o incapacitada, ponga en peligro su vida, salud, integridad física o sexual al no dar el debido cuidado.

Los elementos de este delito son los siguientes:

(1) Actuar con negligencia,

(2) tener la obligación legal, o por orden de un tribunal, de prestar alimentos y cuidado a una persona de edad avanzada o incapacitada y

(3) poner en peligro su vida, salud, integridad física o sexual al no darle el debido cuidado.

**[El tribunal debe añadir lo siguiente cuando así se alegue en el pliego acusatorio:** Este delito puede ser cometido por quien opere un hogar sustituto**].**

La conducta penalizada consiste en poner en peligro la vida, salud, integridad física o sexual de una persona de edad avanzada o incapacitada al actuar de forma negligente y no dar el debido cuidado que requiere la ley, teniendo la obligación legal de hacerlo.

"Persona de edad avanzada" es una persona de 60 años o más.

"Persona incapacitada" se refiere a la persona que no puede valerse por sí misma, independientemente de su edad.

En este caso se le imputa a la persona acusada un delito que se comete por negligencia. La negligencia es un estado mental.

La ley dispone que un delito se comete por negligencia cuando la persona debió saber que su conducta ocasionaría un riesgo sustancial e injustificado que causa el resultado dañino o la circunstancia prohibida por ley.

El riesgo debe de ser de tal grado que, considerando la naturaleza y el propósito de la conducta y las circunstancias conocidas por la persona acusada, la acción u omisión de la persona constituye una desviación crasa del estándar de cuidado que observaría una persona razonable en su misma posición.

La negligencia criminal es el incumplimiento del deber de cuidado que la ley impone; no es una mera falta de cuidado. Se falta a ese deber cuando la persona ni siquiera se da cuenta del riesgo o peligro que le era exigible advertir, o cuando, a pesar de haberlo reconocido, confía imprudentemente en que no se producirá el resultado. La negligencia de la víctima no es suficiente para exonerar o librar de culpa a la persona acusada, a menos que esta sea la única causa del resultado.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no negligentemente. Pueden inferir o deducir razonablemente de la prueba presentada y admitida la negligencia en el cuidado. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

**[Cuando se alegue en el pliego acusatorio, el tribunal debe impartir esta Instrucción adicional:**

Como habíamos indicado, este delito lo puede cometer un(a) operador(a) de un hogar sustituto. "Hogar sustituto" significa el hogar de una familia que, mediante paga, se dedique al cuidado diurno y en forma regular de un máximo de seis (6) personas de edad avanzada, no relacionadas con dicha familia, ya sea persona natural o jurídica**].**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Negligencia en el Cuidado de Personas de Edad Avanzada e Incapacitados.

**[Cuando se alegue en el pliego acusatorio, el tribunal debe impartir esta Instrucción adicional:**

Si ustedes consideran, luego de un análisis cuidadoso de toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, que el Ministerio Público probó más allá de duda razonable la comisión del delito pero no que la conducta prohibida fue cometida por un(a) operador(a) de un hogar sustituto, deberán rendir un veredicto de culpable por el delito de Negligencia en el Cuidado de Personas de Edad Avanzada e Incapacitados, sin esa circunstancia**].**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un

veredicto de no culpable por el delito de Negligencia en el Cuidado de Personas de Edad Avanzada e Incapacitados.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*), el Artículo 22 (*Elementos subjetivos del delito*) y el Artículo 127 (*Negligencia en el cuidado de personas de edad avanzada o incapacitados*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 138-2014 y la Ley 246-2014 (33 LPRA secs. 5034, 5035 y 5186).

**COMENTARIO:**

Se introduce este delito por primera vez en el Código Penal del 2012. La Ley 138-2014 incluyó el segundo párrafo referente a los operadores de hogares sustitutos y dispuso la pena aplicable a una persona jurídica. Las definiciones de "persona de edad avanzada" y "hogar sustituto" provienen de la Carta de Derechos de la Persona de Edad Avanzada en Puerto Rico, Ley Núm. 121 de 12 de julio de 1986, según enmendada, 8 LPRA sec. 342.

La doctora Nevares-Muñiz concluye que en este artículo no se dispone la edad mínima, por lo que la protección se activa si la persona no puede valerse por sí misma ya sea a causa de su edad o por alguna incapacidad. Véase D. Nevares-Muñiz, *Código Penal de Puerto Rico*, 4ta ed. rev., San Juan, Ed. Instituto para el Desarrollo del Derecho, 2019, pág. 204.

### 7.9 Maltrato a Personas de Edad Avanzada (Art. 127-A del Código Penal de 2012)

Contra la persona acusada se ha presentado una acusación por el delito de Maltrato a Personas de Edad Avanzada.

La ley dispone que incurre en este delito la persona que cometa abuso físico, emocional, financiero, agresión, robo, apropiación ilegal, amenaza, fraude o violación contra una persona de edad avanzada, causándole daño o exponiéndole al riesgo de sufrir daño a su salud, a su bienestar o a sus bienes.

Los elementos de este delito son los siguientes:

(1) A propósito, con conocimiento o temerariamente,

(2) cometer abuso físico, emocional o financiero, agresión, robo, apropiación ilegal, amenaza, fraude o violación

(3) contra una persona de edad avanzada,

(4) causándole daño o exponiéndola al riesgo de sufrir un daño a su salud, a su bienestar o a sus bienes.

"Persona de edad avanzada" es una persona de 60 años o más.

["Agresión" significa causar una lesión o daño corporal a una persona].

["Fraude" implica la realización de un acto mediante ardid, simulación, trama, treta o mediante cualquier forma de engaño].

**[El tribunal debe impartir esta Instrucción acompañada de la Instrucción 4.5].**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Maltrato a Personas de Edad Avanzada.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Maltrato a Personas de Edad Avanzada.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con del Artículo 127-A (*Maltrato a personas de edad avanzada*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 138-2014 (33 LPRA sec. 5186a).

**COMENTARIO:**

En el Código Penal no se define lo que es una persona de edad avanzada. No obstante, la Ley 138-2014 define "persona de edad avanzada" en su Artículo 2(p) de la Ley Núm. 121 de 12 de julio de 1986, según enmendada, conocida como Carta de Derechos de la Persona de Edad Avanzada en Puerto Rico, 8 LPRA sec. 342(p). En este artículo se define "persona de edad avanzada" como una "persona de sesenta (60) años o más".

Conviene tener presente la definición de ciertos conceptos conforme a la Carta de Derechos de la Persona de Edad Avanzada en Puerto Rico ante la tipificación del acto prescrito como abuso físico o emocional. En particular, "maltrato" se define en el Artículo 2(k) como sigue:

> Es aquel trato cruel o negligente a una persona de edad avanzada por parte de otra persona, que le cause daño o lo exponga al riesgo de sufrir daño a su salud, su bienestar o a sus bienes. El maltrato de personas de edad avanzada incluye abuso físico, emocional, financiero, negligencia, abandono, agresión, robo, apropiación ilegal, amenaza, fraude, violación de correspondencia, discrimen de edad, restricción de derechos civiles, explotación y abuso sexual, entre otros. El maltrato puede darse por acción o por omisión y puede ser perpetrado por un familiar, amigo, conocido o desconocido. 8 LPRA sec. 342(k).

Por su parte, según el Artículo 2(s) de la Ley Núm. 121, *supra*, constituye "violencia familiar"

> [...] aquella acción u omisión que tiene lugar en las relaciones entre los miembros de una familia, que produce o puede producir el quebranto y la perturbación de la paz de las relaciones de convivencia y armonía que entre éstos debe presumirse existentes. Se trata de una acción u omisión que cause o pueda causar daños o sufrimiento físico, sexual, sicológico, económico y patrimonial. 8 LPRA sec. 342(s).

## 7.10 Maltrato a Personas de Edad Avanzada mediante amenaza (Art. 127-B del Código Penal de 2012)

Contra la persona acusada se ha presentado una acusación por el delito de Maltrato a Personas de Edad Avanzada mediante amenaza.

La ley dispone que comete este delito cualquier persona que amenace a una persona de edad avanzada con causarle un daño determinado a su persona, a otra persona o a los bienes apreciados por esta.

Los elementos de este delito son los siguientes:

(1) A propósito, con conocimiento o temerariamente,

(2) amenazar a una persona de edad avanzada,

(3) con causarle un daño determinado a su persona, a otra persona o a los bienes apreciados por esta.

"Persona de edad avanzada" es una persona de 60 años o más.

"Amenaza" es la expresión intencional de que se llevará a cabo algún daño determinado. La amenaza puede ser verbal o escrita. El delito se configura con solo hacer la amenaza. No es requisito que, en efecto, se lleve a cabo.

**[El tribunal debe impartir esta Instrucción acompañada de la Instrucción 4.5].**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Maltrato a Personas de Edad Avanzada mediante amenaza.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Maltrato a Personas de Edad Avanzada mediante amenaza.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 127-B (*Maltrato a personas de edad avanzada mediante amenaza*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 138-2014 (33 LPRA sec. 5186b).

**COMENTARIO:**

En el Código Penal no se define lo que es una persona de edad avanzada. No obstante, la Ley 138-2014 define "persona de edad avanzada" en su Artículo 2(p) de la Ley Núm. 121 de 12 de julio de 1986, según enmendada, conocida como Carta de Derechos de la Persona de Edad Avanzada en Puerto Rico, 8 LPRA sec. 342(p). En este artículo se define "persona de edad avanzada" como una "persona de sesenta (60) años o más".

En *Pueblo v. Ayala García*, 186 DPR 196 (2012), el Tribunal Supremo de Puerto Rico tuvo la oportunidad de contrastar los Artículos 3.1 y 3.3 de la Ley 54 de 15 de agosto de 1989, según enmendada, 8 LPRA secs. 631 y 633, respectivamente. Señaló que "el Artículo 3.3 es más específico, pues se limita a castigar el maltrato psíquico que se realiza a través de amenazas, mientras que el 3.1 es más abarcador, pues prohíbe el abuso psicológico en general y, además, el abuso físico". Íd., págs. 212-213. Añadió el Tribunal que "el delito de maltrato mediante amenaza del Artículo 3.3 no requiere un patrón de conducta ni un efecto sobre el ánimo de la víctima". Íd., págs. 214-215. "[E]l Artículo 3.3 sólo exige que se haga una amenaza de causar un daño determinado". Íd., pág. 215.

En torno a la definición de "amenaza", el Tribunal Supremo reconoció en *Ayala García* que la palabra "no se define en la ley, por lo que se entiende que se utiliza con su acepción coloquial de dar a entender que se le quiere causar algún mal a alguien". Íd., pág. 215 esc. 49.

Esta conducta también está prevista en el Artículo 177 del Código Penal de 2012 (33 LPRA sec. 5243), que tipifica el delito de amenazas. Es objeto de debate si es necesario que la persona experimente temor por la amenaza o si basta solo la amenaza para que se configure el delito. Según el tratadista Muñoz Conde, "no es preciso que la amenaza llegue a intimidar al amenazado, sino que basta con que *objetivamente* sea adecuada para ello". F. Muñoz Conde, *Derecho penal: parte especial*, 22a ed., Valencia, Ed. Tirant Lo Blanch, 2019, pág. 144. En contrario, la profesora Nevares-Muñiz resalta la importancia de que "la amenaza llegue al conocimiento del amenazado y sienta la aprehensión o el temor propio de la amenaza". D. Nevares-Muñiz, *Derecho Penal Puertorriqueño: parte general*, 7ma ed. rev., San Juan, Ed. Instituto para el Desarrollo del Derecho, 2015, pág. 313. En similares términos, California vislumbra la *amenaza* como un delito de intención específica y requiere el efecto en la víctima ("causes that person reasonably to be in sustained fear"). Cal Pen Cod. Sec. 422 (*Criminal Threat*).

**7.11   Explotación Financiera de Personas de Edad Avanzada
(Art. 127-C del Código Penal de 2012)**

**[El tribunal debe leer la modalidad que aplique según lo alegado en el pliego acusatorio].**

### A.   Primera modalidad

Contra la persona acusada se ha presentado una acusación por el delito de Explotación Financiera de Personas de Edad Avanzada.

La ley dispone que comete este delito quien incurre en el uso impropio de fondos, de propiedad mueble o inmueble, o de recursos de una persona de edad avanzada, incluyendo, pero sin limitarse, a falsas pretensiones, malversación de fondos, coerción, enajenación de bienes o negación de acceso a bienes.

Los elementos de este delito son los siguientes:

(1) A propósito, con conocimiento o temerariamente,

(2) hacer uso impropio de los recursos, de los fondos o de la propiedad mueble o inmueble,

(3) de una persona de edad avanzada,

(4) incluyendo, pero sin limitarse, a falsas pretensiones, coerción, malversación de fondos, enajenación de bienes o negación de acceso a bienes.

"Coerción" significa la utilización de intimidación o violencia, fraude o falsedad.

"Malversar" significa apoderarse, o hacer propio en cualquier forma cualquier bien o cosa que no le pertenece, en forma temporal o permanente.

"Enajenación" significa privar, vender o ceder un bien.

"Persona de edad avanzada" es una persona de 60 años o más.

**[El tribunal debe impartir esta Instrucción acompañada de la Instrucción 4.5].**

Ustedes deberán determinar si la cantidad de fondos, los activos o la propiedad mueble o inmueble involucrados en la explotación financiera es de $2,500 o menos o de $2,501 o más.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Explotación Financiera de Personas de Edad Avanzada, especificando si el valor de los fondos, activos o propiedad mueble es de $ 2,500 o menos, o de $ 2,501 o más.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Explotación Financiera de Personas de Edad Avanzada.

### B. Segunda modalidad

Contra la persona acusada se ha presentado una acusación por el delito de Explotación Financiera de Personas de Edad Avanzada.

La ley dispone que comete este delito la persona que, conociendo sobre la incapacidad para consentir de una persona de edad avanzada o incapacitada, goce o no de una posición de confianza en relación con aquella, o tenga una relación de negocios con la persona, obtenga, utilice o conspire con un tercero, bien sea intencionalmente, mediante engaño o intimidación, para obtener o utilizar los fondos, activos, la propiedad mueble o inmueble de dicha persona de edad avanzada o con impedimento con el propósito de privarla temporera o permanentemente de su uso, beneficio o posesión, para el uso o beneficio propio o de terceros.

Los elementos de este delito son los siguientes:

(1) Conocer la incapacidad para consentir de la persona de edad avanzada o incapacitada,

(2) utilizar o conspirar con una tercera persona

(3) intencionalmente, mediante engaño o intimidación

(4) para obtener o utilizar fondos, activos o propiedad mueble e inmueble de la persona de edad avanzada o con impedimento

(5) con el propósito de privarla temporera o permanentemente de su uso, beneficio o posesión para el uso o beneficio propio o de terceros.

"Engaño" comprende el hacer creer algo que no es verdad. Es una de las formas de fraude que consiste en la realización de un acto mediante ardid, treta o simulación.

"Intimidación" consiste en provocar miedo o tomar alguna cosa por medio de amenazas. Es necesario que las circunstancias sean tales que lleven al ánimo de una persona razonable el temor del peligro.

"Persona de edad avanzada" es una persona de 60 años o más.

**[El tribunal debe impartir esta Instrucción acompañada de la Instrucción 4.5].**

Ustedes deberán determinar si la cantidad de fondos, activos o propiedad mueble o inmueble involucrados en la explotación financiera es de $2,500 o menos, o de $2,501 o más.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público

probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Explotación Financiera de Personas de Edad Avanzada, especificando si el valor de los fondos, activos o propiedad mueble es de $ 2,500 o menos, o de $ 2,501 o más.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Explotación Financiera de Personas de Edad Avanzada.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 14 (*Definiciones*) y el Artículo 127-C (*Explotación financiera de personas de edad avanzada*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 138-2014 (33 LPRA secs. 5014 y 5186c).

**COMENTARIO:**

La Ley 138-2014 añadió este delito. Otras disposiciones penales ya atendían las conductas tipificadas como la apropiación ilegal y el fraude.

Las definiciones "enajenar" y "malversar" se derivan del Artículo 14(g) del Código Penal de 2012, que define "apropiar".

## 7.12 Fraude de Gravamen contra Personas de Edad Avanzada (Art. 127-D del Código Penal de 2012)

Contra la persona acusada se ha presentado una acusación por el delito de Fraude de Gravamen contra Personas de Edad Avanzada.

La ley dispone que comete este delito quien, abusando de las necesidades, la inexperiencia, la enfermedad mental o la deficiencia psíquica de una persona de edad avanzada o incapacitada, con el fin de obtener para sí o para un tercero un beneficio, le haga enajenar o gravar un bien mueble o inmueble, aunque el acto sea nulo, y que este acto resulte en perjuicio de la persona de edad avanzada o de un tercero.

Los elementos de este delito son los siguientes:

(1) A propósito, con conocimiento o temerariamente,
(2) abusar de las necesidades, la inexperiencia, la enfermedad mental o la deficiencia psíquica de una persona de edad avanzada o incapacitada,
(3) con el fin de obtener un beneficio para sí o para otra persona,

(4) haciendo que la persona de edad avanzada o incapacitada enajene o grave un bien mueble o inmueble y que esto resulte en perjuicio de la persona de edad avanzada o de otra persona.

"Persona incapacitada" significa que la persona no puede valerse por sí misma, independientemente de su edad.

"Persona de edad avanzada" es una persona de 60 años o más.

**[El tribunal debe impartir esta Instrucción acompañada de la Instrucción 4.5].**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Fraude de Gravamen contra Personas de Edad Avanzada.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Fraude de Gravamen contra Personas de Edad Avanzada.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 127-D (*Fraude de gravamen contra personas de edad avanzada*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 138-2014 (33 LPRA sec. 5186d).

**COMENTARIO:**

En el Código Penal no se define lo que es una persona de edad avanzada. No obstante, la Ley 138-2014 define "persona de edad avanzada" en su Artículo 2(p) de la Ley Núm. 121 de 12 de julio de 1986, según enmendada, conocida como Carta de Derechos de la Persona de Edad Avanzada en Puerto Rico, 8 LPRA sec. 342(p). En este artículo se define "persona de edad avanzada" como una "persona de sesenta (60) años o más".

## C.    DEL RESPETO A LOS MUERTOS

### 7.13    Profanación de Cadáver o Cenizas (Art. 128 del Código Penal de 2012)

Contra la persona acusada se ha presentado una acusación por el delito de Profanación de Cadáver o Cenizas.

La ley dispone que comete este delito la persona que ilegalmente mutile, desentierre, remueva de su sepultura o del lugar en que se halle aguardando el momento de ser enterrado o cremado, o de alguna otra forma profane, el cadáver de un ser humano o parte de él, sus restos o sus cenizas.

Los elementos de este delito son los siguientes:

(1) A propósito, con conocimiento o temerariamente,

(2) de manera ilegal mutilar, desenterrar, remover de la sepultura o del lugar en que se halle aguardando el momento de ser enterrado o cremado, o de alguna otra forma se profane el cadáver de un ser humano o parte de él, sus restos o sus cenizas.

**[El tribunal debe impartir esta Instrucción acompañada de la Instrucción 4.5].**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Profanación de Cadáver o Cenizas.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de profanación de Cadáver o Cenizas.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 9.6 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con el Artículo 128 (*Profanación de cadáver o cenizas*) del Código Penal de 2012, Ley 146-2012 (33 LPRA sec. 5187); el Artículo 140 (*Profanación de cadáver o cenizas*) del Código Penal de 2004, Ley 149-2004 (33 LPRA sec. 4768), y el Artículo 155 (*Profanación de cadáver*) del Código Penal de 1974, Ley Núm. 115 de 22 de julio de 1974 (1974 [Parte 1] Leyes de Puerto Rico 494).

CAPÍTULO 8
**DELITOS CONTRA LA INDEMNIDAD SEXUAL**

A.      DE LOS DELITOS DE VIOLENCIA SEXUAL

## 8.1     Agresión Sexual (Art. 130 del Código Penal de 2012)

Contra la persona acusada se ha presentado una acusación por el delito de Agresión Sexual.

La ley dispone que comete este delito la persona que, a propósito, con conocimiento o temerariamente lleve a cabo o provoque que otra persona lleve a cabo, un acto orogenital o una penetración sexual vaginal o anal, ya sea genital, digital o instrumental, en cualquiera de las circunstancias siguientes:

(a) Si al momento del hecho la víctima no ha cumplido 16 años, salvo cuando la víctima sea mayor de 14 años y la diferencia de edad entre la víctima y el acusado es de 4 años o menos.

(b) Si por enfermedad o incapacidad mental, temporal o permanente, la víctima está incapacitada para comprender la naturaleza del acto en el momento de la realización.

(c) Si la víctima fue compelida al acto mediante el empleo de fuerza física, violencia, intimidación o amenaza de grave o inmediato daño corporal.

(d) Si a la víctima se le ha anulado o disminuido sustancialmente, sin su conocimiento o sin su consentimiento, su capacidad de consentir a través de medios hipnóticos, narcóticos, deprimentes o estimulantes, o de sustancias o medios similares.

(e) Si a la víctima se le obliga o induce mediante maltrato, violencia física o sicológica a participar o involucrarse en una relación sexual no deseada con terceras personas.

(f) Si al tiempo de cometerse el acto, la víctima no tenía conciencia de su naturaleza y la persona que cometió el delito conocía esa circunstancia.

(g) Si la víctima se sometió al acto mediante engaño, treta, simulación u ocultación en relación con la identidad de la persona que cometió el delito.

(h) Si la persona que cometió el delito se aprovechó de la confianza depositada en ella por la víctima mayor de 16 años porque existe una relación de superioridad por razón de tenerla bajo su custodia, tutela, educación primaria, secundaria o especial, tratamiento médico o sicoterapéutico, consejería de cualquier índole, o por exisr una relación de liderazgo de creencia religiosa o de cualquier índole con la víctima.

Los elementos de este delito son los siguientes:

(1) A propósito, con conocimiento o temerariamente,
(2) llevar a cabo o provocar que otra persona lleve a cabo en contra de la alegada víctima,
(3) un acto orogenital, es decir, sexo oral, o una penetración sexual vaginal o anal, ya sea con el pene, el dedo o cualquier instrumento, y
(4) **[refiérase solamente la(s) circunstancia(s) que aplique(n) según lo alegado en el pliego acusatorio]:**
    a. La alegada víctima no había cumplido los 16 años. No obstante, cuando la víctima es mayor de 14 años y la diferencia de edad entre la víctima y la persona es de 4 años o menos, no constituye delito, siempre que la relación sexual fuera un acto voluntario de ambos.
    b. Al momento de que ocurriera el acto, la alegada víctima no era capaz de entender la naturaleza del acto por padecer de una enfermedad o incapacidad mental temporal o permanente.
    c. La persona que cometió el delito utilizó fuerza física, violencia, intimidación o amenaza de grave o inmediato daño corporal para lograr realizar el acto sexual; en cuyo caso, no importa si la alegada víctima se resistió o no.
    d. Sin el conocimiento o la autorización de la alegada víctima, se anuló o disminuyó sustancialmente su capacidad para consentir utilizando hipnosis, drogas, deprimentes, estimulantes o cualquier otro medio o método similar.
    e. La alegada víctima fue obligada o inducida mediante maltrato o violencia física o sicológica a participar o a involucrarse en una relación sexual no deseada con terceras personas.
    f. Al tiempo de cometerse el acto, la alegada víctima no tenía conciencia de su naturaleza y la persona que cometió el delito conocía esa circunstancia.
    g. La alegada víctima se sometió al acto mediante engaño, treta, simulación u ocultación en relación con la identidad de la persona que cometió el delito.
    h. La persona se aprovechó de la confianza depositada en ella por la alegada víctima mayor de 16 años:
        (i) por existir una relación de superioridad;
        (ii) por ser quien la custodiaba, su tutor(a) o educador(a) de primaria, secundaria o especial;
        (iii) por ser su médico(a), sicoterapeuta, consejero(a) de cualquier índole, o
        (iv) por una relación de liderazgo por creencia religiosa o de cualquier otra índole.

**[Cuando se alegue(n) circunstancia(s) agravante(s) en el pliego acusatorio, el tribunal debe impartir esta Instrucción adicional:**

Además, corresponde a ustedes determinar si **[especifique solamente la(s) circunstancia(s) agravante(s) que aplique(n)]**:

(1) El acto se comete en el hogar de la alegada víctima o en cualquier otro lugar donde la víctima tenga una expectativa razonable de intimidad. Una persona tiene una "expectativa razonable de intimidad" cuando hay un entendimiento general en la sociedad de que en ese lugar y en esas circunstancias existe un derecho a la protección de su vida íntima, es decir, a su privacidad.

(2) El acto sexual resulta en un embarazo.

(3) El acto resulta en el contagio a la alegada víctima de alguna enfermedad venérea cuando la persona que cometió el delito conocía sobre esta condición.

(4) La persona ha sido cónyuge o conviviente, ha tenido relaciones de intimidad o noviazgo o tiene un hijo en común con la alegada víctima y utiliza fuerza física, violencia, intimidación o amenaza de grave o inmediato daño corporal**].**

Para que se cometa el delito se requiere el elemento mental de a propósito, con conocimiento o temeridad.

Una persona actúa "a propósito" cuando su objetivo consciente es llevar a cabo un acto u omisión con el fin de obtener un resultado definido o cuando cree que una circunstancia existe.

Una persona actúa "con conocimiento" cuando es consciente de que la producción del resultado o de la existencia de la circunstancia prohibida por ley es prácticamente segura.

Una persona actúa "temerariamente" cuando es consciente de que su conducta genera un riesgo sustancial e injustificado de que se produzca un resultado o la circunstancia prohibida por ley, y a pesar de conocer el riesgo, la persona continúa con su acción u omisión. Al evaluar si era consciente del riesgo, deberán determinar si había previsto la posibilidad de que existiese ese riesgo. Al momento de evaluar si un riesgo fue sustancial, deberán considerar la probabilidad de que se produjera el resultado o la circunstancia prohibida por ley. Al evaluar si un riesgo fue injustificado, deberán considerar lo que motivó a la persona a asumir el riesgo.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no a propósito, con conocimiento o temerariamente. Pueden inferir o deducir razonablemente de la prueba presentada y admitida, el propósito, el conocimiento o la temeridad. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

El delito consiste, esencialmente, en la agresión a la integridad física y sicoemocional y a la dignidad de la persona por un acto orogenital, es decir, sexo oral o penetración sexual. La penetración, por leve que sea, bastará para configurar el delito.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona

acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Agresión Sexual.

**[El tribunal debe impartir esta Instrucción adicional cuando aplique:**

Si ustedes consideran, luego de un análisis cuidadoso de toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, que el Ministerio Público probó más allá de duda razonable la comisión del delito pero no que **[indique la(s) circunstancia(s) agravante(s) que aplique(n)]**, deberán rendir un veredicto de culpable por el delito de Agresión Sexual sin esa circunstancia**]**.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Agresión Sexual.

**[Si se desfila prueba sobre la edad de la víctima y de la persona acusada tendente a demostrar la causa de exclusión del inciso (a), el tribunal debe impartir la instrucción siguiente**:

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que, al momento de los hechos la alegada víctima era mayor de 14 años y la diferencia de edad con la persona acusada era de 4 años o menos, siempre que la relación sexual fuera un acto voluntario de ambos, deberán rendir un veredicto de no culpable por el delito de Agresión sexual**]**.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 10.1 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*), el Artículo 22 (*Elementos subjetivos del delito*), el Artículo 130 (*Agresión sexual*) y el Artículo 132 (*Circunstancias esenciales del delito de agresión sexual e incesto*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5034, 5035, 5191 y 5193); el Artículo 142 (*Agresión sexual*) y el Artículo 143 (*Circunstancias esenciales del delito de agresión sexual*) del Código Penal de 2004, Ley149-2004 (33 LPRA secs. 4770 y 4771); el Artículo 99 (*Violación*), el Artículo 103 (*Sodomía*) y el Artículo 122 (*Incesto*) del Código Penal de 1974, Ley Núm. 115 de 22 de julio de 1974 (1974 [Parte 1] Leyes de Puerto Rico 479, 480 y 486, respectivamente).

**COMENTARIO:**

Comete el delito de Agresión Sexual tanto la persona que lleva a cabo el acto directamente como la persona que provoca a la realización del acto.

Obsérvese que las circunstancias (f), (g) y (h) conllevan una pena de 25 años. En torno al concepto "expectativa razonable de intimidad", refiérase al comentario que acompaña la Instrucción 9.9.

No es necesario mencionar la situación de la persona menor de edad juzgada como adulta, puesto que se refiere a una pena atenuada y corresponde al tribunal, no al Jurado, tomarlo en cuenta en la sentencia. Véase el último párrafo del Artículo 130 del Código Penal de 2012, *supra*.

### 8.2    Incesto (Art. 131 del Código Penal de 2012)

Contra la persona acusada se ha presentado una acusación por el delito de Incesto.

La ley prohíbe que personas que tengan una relación de parentesco por ser ascendiente o descendiente, por consanguinidad, adopción o afinidad, o colateral por consanguinidad o adopción hasta el tercer grado, por compartir o por poseer la custodia física o la patria potestad, lleven a cabo a propósito, con conocimiento o temerariamente un acto orogenital o una penetración sexual vaginal o anal, ya sea esta genital, digital o instrumental.

Los elementos de este delito son los siguientes:

(1) A propósito, con conocimiento o temerariamente,

(2) llevar a cabo un acto orogenital —es decir, sexo oral— o una penetración sexual vaginal o anal, ya sea genital, digital o instrumental —es decir, con el pene, con el dedo o con cualquier instrumento—

(3) cuando [existe una relación de parentesco, ascendiente o descendiente, por consanguinidad, adopción o afinidad, o colateral hasta el tercer grado] [comparte o posee la custodia física o la patria potestad de la víctima].

**[Cuando se alegue una circunstancia agravante en el pliego acusatorio, el tribunal debe impartir esta Instrucción adicional:**

Además de los elementos anteriores, corresponde a ustedes evaluar y determinar si **[indique solamente la(s) circunstancia(s) agravante(s) que aplique(n)]**:

(a) La alegada víctima quedó embarazada,

(b) la alegada víctima se contagió con alguna enfermedad venérea y la persona acusada conocía que tenía esa enfermedad**]**.

Para que se cometa el delito se requiere el elemento mental de a propósito, con conocimiento o temeridad.

Una persona actúa "a propósito" cuando su objetivo consciente es llevar a cabo un acto u omisión con el fin de obtener un resultado definido o cuando cree que una circunstancia existe.

Una persona actúa "con conocimiento" cuando es consciente de que la producción del resultado o la existencia de la circunstancia prohibida por ley es prácticamente segura.

Una persona actúa "temerariamente" cuando es consciente de que su conducta genera un riesgo sustancial e injustificado de que se produzca un resultado o la circunstancia

prohibida por ley, y a pesar de conocer el riesgo, la persona continúa con su acción u omisión. Al evaluar si era consciente del riesgo, deberán determinar si había previsto la posibilidad de que existiese ese riesgo. Al momento de evaluar si un riesgo fue sustancial, deberán considerar la probabilidad de que se produjera el resultado o la circunstancia prohibida por ley. Al evaluar si un riesgo fue injustificado, deberán considerar lo que motivó a la persona a asumir el riesgo.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no a propósito, con conocimiento o temerariamente. Pueden inferir o deducir razonablemente de la prueba presentada y admitida el propósito, el conocimiento o la temeridad. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

El delito consiste en la agresión a la integridad física, psicoemocional, y a la dignidad de la persona por un acto orogenital o penetración sexual. La penetración, por leve que sea, bastará para configurar el delito.

**[El tribunal debe explicar los conceptos *ascendiente*, *descendiente*, *consanguinidad*, *afinidad* y *colateral* hasta el tercer grado, según aplique a la relación alegada en el pliego acusatorio:**

Son parientes ascendientes por consanguinidad (de sangre) hasta el tercer grado: el padre, la madre, los(as) abuelos(as) y los(as) bisabuelos(as). Si estas personas fueran adoptadas, deben tratarse como si fueran parientes de sangre. Son parientes ascendientes por afinidad las personas con quienes se hayan casado estos(as) parientes de sangre, tales como el padrastro, la madrastra y los(as) abuelastros(as). También lo será la familia, tales como el (la) suegro(a) y los(as) abuelos(as) políticos(as).

Son parientes descendientes por consanguinidad (de sangre) hasta el tercer grado: los(as) hijos(as), los(as) nietos(as) y los(as) bisnietos(as). Si estas personas fueran adoptadas, deben tratarse como si fueran parientes de sangre. Son parientes descendientes por afinidad las personas con quienes se hayan casado estos(as) parientes de sangre y también los(as) hijastros(as) y los(as) nietos(as) políticos(as). Igualmente lo será la familia política, tales como los(as) cuñados(as), los yernos y las nueras.

Son parientes colaterales por consanguinidad (de sangre) hasta el tercer grado: los(as) hermanos(as), los(as) tíos(as) y los(as) sobrinos(as). Si estas personas fueran adoptadas, deben tratarse como si fueran parientes de sangre. Son parientes colaterales por afinidad las personas con quienes se hayan casado estos(as) parientes de sangre, así como la familia política, tales como los(as) tíos(as) políticos(as)**].**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Incesto.

**[El tribunal debe impartir esta Instrucción adicional cuando aplique:**

Si ustedes consideran, luego de un análisis cuidadoso de toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, que el Ministerio Público probó más allá de duda razonable la comisión del delito, pero no que [la víctima quedó embarazada] [la persona acusada le contagió una enfermedad venérea, conociendo de antemano su condición], entonces deberán rendir un veredicto de culpable por el delito de Incesto sin esa circunstancia**].**

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Incesto.

**REFERENCIA:**

Esta Instrucción proviene, en parte, de la Instrucción 10.1 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*), el Artículo 22 (*Elementos subjetivos del delito*), el Artículo 131 (*Incesto*) y el Artículo 132 (*Circunstancias esenciales del delito de agresión sexual e incesto*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5034, 5035, 5192 y 5193); el Artículo 142 (*Agresión sexual*) y el Artículo 143 (*Circunstancias esenciales del delito de agresión sexual*) del Código Penal de 2004, Ley 149-2004 (33 LPRA secs. 4770(h) y 4771), y el Artículo 122 (*Incesto*) del Código Penal de 1974, Ley Núm. 115 de 22 de julio de 1974 (1974 [Parte 1] Leyes de Puerto Rico 486).

**COMENTARIO:**

En el Código Penal de 2012 se restituyó el delito de incesto como un delito independiente de la agresión sexual.

La edad y el género de la víctima no son pertinentes por cuanto no constituyen un elemento de esta modalidad.

Explica la doctora Nevares-Muñiz que "se eliminó el segundo párrafo de su homólogo en el Art. 143 del Código [Penal] de 2004 que disponía que 'al considerar las circunstancias del delito se tomará en consideración el punto de vista de una persona igualmente situada con respecto a la edad y género de la víctima'". D. Nevares-Muñiz, *Código Penal de Puerto Rico*, 4ta ed. rev., San Juan, Ed. Instituto para el Desarrollo del Derecho, 2019, págs. 221.

**8.3    Actos Lascivos (Art. 133 del Código Penal de 2012)**

Contra la persona acusada se ha presentado una acusación por el delito de Actos Lascivos.

La ley prohíbe que, a propósito, con conocimiento o temerariamente y sin intentar consumar el delito de agresión sexual, se someta a otra persona a un acto que tienda a despertar, excitar o satisfacer la pasión o los deseos sexuales en cualquiera de las circunstancias siguientes:

(a) Si la víctima al momento del hecho es menor de 16 años.

(b) Si la víctima fue obligada al acto mediante el empleo de fuerza, violencia, amenaza de grave daño corporal, intimidación, o el uso de medios hipnóticos, narcóticos, deprimentes o estimulantes, o de sustancias o medios similares.

(c) Si la víctima, por enfermedad o defecto mental temporero o permanente, estaba incapacitada para comprender la naturaleza del acto.

(d) Si la víctima fue obligada al acto mediante el empleo de medios engañosos que anularon o disminuyeron sustancialmente, sin su conocimiento, su capacidad de consentir.

(e) Si al tiempo de cometerse el acto, la víctima no tuviera conciencia de su naturaleza y la persona que cometió el delito conocía esa circunstancia.

(f) Cuando exista una relación de parentesco con la víctima por ser esta ascendiente o descendiente, por consanguinidad, adopción o afinidad, o colateral por consanguinidad o adopción hasta el tercer grado, o por compartir o poseer la custodia física o la patria potestad.

(g) Cuando la persona se aprovecha de la confianza depositada en ella por la víctima porque existe una relación de superioridad al tenerla bajo su custodia, tutela, educación primaria, secundaria, universitaria o especial, tratamiento médico o sicoterapéutico o consejería de cualquier índole, o por existir una relación de liderazgo de creencia religiosa o de cualquier índole con la víctima.

Los elementos de este delito son los siguientes:

(1) A propósito, con conocimiento o temerariamente,

(2) someter a una persona a un acto que tienda a despertar, excitar o satisfacer los deseos sexuales de la persona que comete el delito,

(3) sin intentar consumar el delito de agresión sexual, y

(4) **[refiérase solamente la(s) circunstancia(s) que aplique(n) según lo alegado en el pliego acusatorio]:**

    (a) La alegada víctima es menor de 16 años.

    (b) La alegada víctima fue obligada mediante fuerza, violencia, intimidación, amenaza de grave o inmediato daño corporal, o por medios hipnóticos, narcóticos, deprimentes, estimulantes,

sustancias o cualquier otro medio similar, a tolerar la conducta de la persona que cometió el delito.

(c) La alegada víctima estaba incapacitada para comprender la naturaleza del acto por padecer de una enfermedad o incapacidad mental temporal o permanente.

(d) La capacidad de la alegada víctima para consentir, sin esta saberlo, fue disminuida sustancialmente o anulada por medios engañosos.

(e) La alegada víctima no tenía conciencia de su naturaleza al momento de cometerse el acto y esa circunstancia era conocida por la persona que cometió el delito.

(f) Existe una relación de parentesco ascendiente o descendiente con la víctima por consanguinidad, afinidad, adopción o colateral por consanguinidad o adopción hasta el tercer grado **[El tribunal debe explicar los conceptos** *ascendiente*, *descendiente*, *colateral*, *consanguinidad* y *afinidad* **hasta el tercer grado].**

(g) La persona se aprovechó de la confianza que la víctima depositó en ella:

    (i)   por existir una relación de superioridad con la víctima;

    (ii)  por ser su custodio(a), tutor(a) o educador(a) de escuela primaria, secundaria o especial;

    (iii) por ser su médico(a), sicoterapeuta o consejero(a) de cualquier índole, o

    (iv) por una relación de liderazgo por creencia religiosa o de cualquier índole con la víctima.

**[Cuando se alegue la circunstancia agravada en el pliego acusatorio, el tribunal debe impartir esta Instrucción adicional:**

Además, corresponde a ustedes determinar si el delito se cometió en el hogar de la víctima o en cualquier otro lugar donde esta tenía una expectativa razonable de intimidad. Una persona tiene una "expectativa razonable de intimidad" cuando hay un entendimiento general en la sociedad de que en ese lugar y en esas circunstancias existe un derecho a la protección de su vida íntima, es decir, a su privacidad**].**

Para que se cometa el delito se requiere el elemento mental de a propósito, con conocimiento o temeridad.

Una persona actúa "a propósito" cuando su objetivo consciente es llevar a cabo un acto u omisión con el fin de obtener un resultado definido o cuando cree que una circunstancia existe.

Una persona actúa "con conocimiento" cuando es consciente de que la producción del resultado o la existencia de la circunstancia prohibida por ley es prácticamente segura.

Una persona actúa "temerariamente" cuando es consciente de que su conducta genera un riesgo sustancial e injustificado de que se produzca un resultado o la circunstancia

prohibida por ley, y a pesar de conocer el riesgo, la persona continúa con su acción u omisión. Al evaluar si era consciente del riesgo, deberán determinar si había previsto la posibilidad de que existiese ese riesgo. Al momento de evaluar si un riesgo fue sustancial, deberán considerar la probabilidad de que se produjera el resultado o la circunstancia prohibida por ley. Al evaluar si un riesgo fue injustificado, deberán considerar lo que motivó a la persona a asumir el riesgo.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no a propósito, con conocimiento o temerariamente. Pueden inferir o deducir razonablemente de la prueba presentada y admitida el propósito, el conocimiento o la temeridad. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

**[El tribunal debe explicar los conceptos** *ascendiente*, *descendiente*, *colateral*, *consanguinidad* y *afinidad* **hasta el tercer grado, según aplique a la relación alegada en el pliego acusatorio, cuando se alegue la circunstancia del inciso (f):**

Son parientes ascendientes por consanguinidad (de sangre) hasta el tercer grado: el padre, la madre, los(as) abuelos(as) y los(as) bisabuelos(as). Si estas personas fueran adoptadas, deben tratarse como si fueran parientes de sangre. Son parientes ascendientes por afinidad las personas con quienes se hayan casado estos(as) parientes de sangre, tales como el padrastro, la madrastra y los(as) abuelastros(as). También lo será la familia política, tales como el (la) suegro(a) y los(as) abuelos(as) políticos(as).

Son parientes descendientes por consanguinidad (de sangre) hasta el tercer grado los(as) hijos(as), los(as) nietos(as) y los(as) bisnietos(as). Si estas personas fueran adoptadas, deben tratarse como si fueran parientes de sangre. Son parientes descendientes por afinidad las personas con quienes se hayan casado estos(as) parientes de sangre y también los(as) hijastros(as) y los(as) nietos(as) políticos. Igualmente lo será la familia política, tales como los(as) cuñados(as), los yernos y las nueras.

Son parientes colaterales por consanguinidad (de sangre) hasta el tercer grado los(as) hermanos(as), los(as) tíos(as) y los(as) sobrinos(as). Si estas personas fueran adoptadas, deben tratarse como si fueran parientes de sangre. Son parientes colaterales por afinidad las personas con quienes se hayan casado estos(as) parientes de sangre, así como la familia política, tales como los(as) tíos(as) políticos(as)**].**

Los actos de la persona que cometió el delito deben tender a satisfacer sus deseos o impulsos sexuales.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Actos Lascivos.

**[Cuando se alegue la circunstancia agravada en el pliego acusatorio, el tribunal debe impartir esta Instrucción adicional:**

Si ustedes consideran, luego de un análisis cuidadoso de toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, que el Ministerio Público probó más allá de duda razonable la comisión del delito, pero no que ocurrió en el hogar de la víctima o en cualquier otro lugar donde esta tenga una expectativa razonable de intimidad, deberán rendir un veredicto de culpable por el delito de Actos Lascivos sin esa circunstancia**].**

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Actos Lascivos.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 10.2 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*), el Artículo 22 (*Elementos subjetivos de delito*), el Artículo 133 (*Actos lascivos*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5034, 5035 y 5194); el Artículo 144 (*Actos lascivos*) del Código Penal de 2004, Ley 149-2004 (33 LPRA sec. 4772), y el Artículo 105 (*Actos lascivos o impúdicos*) del Código Penal de 1974, Ley Núm. 115 de 22 de julio de 1974 (1974 [Parte 1] Leyes de Puerto Rico 480).

**COMENTARIO:**

En el Código Penal de 2012 se añadió la condición de "[s]i al tiempo de comerse el acto, la víctima no tuviera conciencia de su naturaleza y esa circunstancia fuera conocida por el acusado". 33 LPRA sec. 5194(e).

El delito de Actos Lascivos incluye víctimas de ambos sexos. En torno al concepto "expectativa razonable de intimidad", refiérase al comentario que acompaña la Instrucción 9.9.

## 8.4    Bestialismo (Art. 134 Código Penal de 2012)

Contra la persona acusada se ha presentado una acusación por el delito de Bestialismo.

La ley establece que comete el delito de Bestialismo tanto la persona que lo lleva a cabo como la persona que ayuda, incita o coacciona u ayuda a llevar a cabo cualquier forma de penetración sexual en un animal.

Los elementos de este delito son los siguientes:

(1) A propósito, con conocimiento o temerariamente,

(2) llevar a cabo, incitar, coaccionar o ayudar a llevar a cabo,

(3) cualquier forma de penetración sexual en un animal.

**[El tribunal debe impartir esta Instrucción acompañada de la Instrucción 4.5].**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Bestialismo.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Bestialismo.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 10.3 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con el Artículo 134 (*Bestialismo*) del Código Penal de 2012, Ley 146-2012 (33 LPRA sec. 5195); el Artículo 145 (*Bestialismo*) del Código Penal de 2004, Ley 149-2004 (33 LPRA sec. 4773), y el Artículo 104 (*Bestialismo*) del Código Penal de 1974, Ley Núm. 115 de 22 de julio de 1974 (1974 [Parte 1] Leyes de Puerto Rico 480).

**B.     DE LA PROSTITUCIÓN Y ACTIVIDADES AFINES**

**8.5     Proxenetismo, Rufianismo y Comercio de Personas
          (Art. 141 del Código Penal de 2012)**

Contra la persona acusada se ha presentado una acusación por el delito de [Proxenetismo] [Rufianismo] [Comercio de Personas].

**[El tribunal debe leer la instrucción que aplique según lo alegado en el pliego acusatorio:**

**A. Proxenetismo**

La ley prohíbe que cualquier persona, con el propósito de lucro o para satisfacer la lascivia o deseo sexual ajeno, promueva o facilite la prostitución de otra persona aun con el consentimiento de esta.

Los elementos del delito de Proxenetismo son los siguientes:

(1) Con el propósito de lucro o para satisfacer la lascivia o deseo sexual ajeno,
(2) promover o facilitar la prostitución de otra persona, aun con el consentimiento de esta.

## B. Rufianismo

La ley prohíbe que cualquier persona haga de la prostitución ajena su medio habitual de vida.

Los elementos del delito de Rufianismo son los siguientes:

(1) Utilizar la prostitución ajena,
(2) con el propósito de hacerla su medio habitual de vida.

## C. Comercio de Personas

La ley prohíbe que cualquier persona promueva o facilite la entrada o salida del Estado Libre Asociado de Puerto Rico de otra persona, aun con el consentimiento de esta, para que ejerza la prostitución.

Los elementos del delito de Comercio de Personas son los siguientes:

(1) Promover o facilitar la entrada o salida del Estado Libre Asociado de Puerto Rico de otra persona, aun con el consentimiento de esta,
(2) para que ejerza la prostitución o el comercio de sodomía**].**

"Prostitución" es el acto de sostener, aceptar, ofrecer o solicitar sostener relaciones sexuales con otra persona por dinero, estipendio, remuneración o cualquier forma de pago. Pueden ser objeto de prostitución tanto hombres como mujeres".

Una persona actúa "a propósito" cuando su objetivo consciente es llevar a cabo un acto u omisión con el fin de obtener un resultado definido o cuando cree que una circunstancia existe.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no a propósito. Pueden inferir o deducir razonablemente el propósito de la prueba presentada y admitida. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona

acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de [Proxenetismo] [Rufianismo] [Comercio de Personas].

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de [Proxenetismo] [Rufianismo] [Comercio de Personas].

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*), el Artículo 22 (*Elementos subjetivos del delito*), el Artículo 141 (*Proxenetismo, rufianismo y comercio de personas*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5034, 5035 y 5202); el Artículo 152 (*Proxenetismo, rufianismo y comercio de personas*) del Código Penal de 2004, Ley 149-2004 (33 LPRA sec. 4780), y el Artículo 110 (*Proxenetismo, rufianismo, comercio de personas*) del Código Penal de 1974, Ley Núm. 115 de 22 de julio de 1974 (1974 [Parte 1] Leyes de Puerto Rico 482).

**COMENTARIO:**

Salvo la disposición respecto a la pena, el Código Penal de 2012 mantuvo la redacción del Artículo 152 del Código Penal de 2004, *supra*, la cual, a su vez, procede del Artículo 110 del Código Penal de 1974, *supra*. La Ley 246-2014, que enmendó el Código Penal de 2012, sustituyó en el inciso (a) la palabra "ánimo" por "propósito" y añadió la pena accesoria de la restitución.

En la modalidad de Proxenetismo, los elementos de este delito son promover o facilitar la prostitución de otra persona con el propósito de lucro o para satisfacer la lascivia ajena. Por "promover" se entiende engendrar en la persona la idea de llevar a cabo la prostitución o de iniciarse en esta. Se requieren actos positivos de consejo, auxilio o cooperación para que se configure este delito.

La modalidad de Rufianismo consiste en hacer de la prostitución ajena un medio habitual de vida. Este delito se prolonga por un lapso en vista de que requiere un elemento de habitualidad al hacer de la prostitución ajena su medio de vida.

La modalidad de Comercio de Personas consiste en promover o facilitar la entrada o salida de Puerto Rico de personas para ejercer la prostitución o el comercio de sodomía.

Se elimina la referencia al "comercio de sodomía" en la Instrucción porque no se distingue entre "casa de prostitución" y "comercio de sodomía" para fines de identificar la conducta prohibida en el Artículo 139 del Código Penal vigente, 33 LPRA sec. 5200. Lo anterior es coherente con la tipificación del delito de prostitución, la cual no admite como defensa el sexo de la persona que sostiene, acepta, ofrece o solicita sostener relaciones sexuales con otra persona por dinero. Véase Artículo 138 del Código Penal de 2012 (33 LPRA sec. 5199).

**8.6    Proxenetismo, Rufianismo y Comercio de Personas Agravado
        (Art. 142 del Código Penal de 2012)**

Contra la persona acusada se ha presentado una acusación por el delito de [Proxenetismo Agravado] [Rufianismo Agravado] [Comercio de Personas Agravado].

**[El tribunal debe leer la instrucción que aplique según lo alegado en el pliego acusatorio:**

**A.    Proxenetismo Agravado**

La ley prohíbe que cualquier persona, con el propósito de lucro o para satisfacer la lascivia o deseo sexual ajeno, promueva o facilite la prostitución de otra persona aun con el consentimiento de esta. El delito de Proxenetismo se considera Agravado cuando **[el tribunal debe referirse a la(s) circunstancia(s) que aplique(n) según lo alegado en el pliego acusatorio:**

(a) la persona es ascendiente, descendiente, cónyuge, hermano(a), tutor(a) o persona encargada de la educación, guarda o custodia de la víctima,

(b) se promovió o facilitó la prostitución de más de una persona**]**.

Los elementos del delito de Proxenetismo Agravado son los siguientes:

(1) Con el propósito de obtener un provecho o beneficio económico, o para satisfacer la lascivia o deseo sexual ajeno,

(2) promover o facilitar la prostitución de otra persona, aun con el consentimiento de esta,

(3) cuando **[refiérase a la(s) circunstancia(s) que aplique(n) según lo alegado en el pliego acusatorio]**

(a) la persona es ascendiente, descendiente, cónyuge, hermano(a), tutor(a) o persona encargada de la educación, guarda o custodia de la alegada víctima,

(b) se promovió o facilitó la prostitución de más de una persona.

**B.    Rufianismo Agravado**

La ley prohíbe que cualquier persona haga de la prostitución ajena su medio habitual de vida. El delito de Rufianismo se considera Agravado cuando **[el tribunal debe referirse a la(s) circunstancia(s) que aplique(n) según lo alegado en el pliego acusatorio:**

(a) la persona es ascendiente, descendiente, cónyuge, hermano(a), tutor(a) o persona encargada de la educación, guarda o custodia de la víctima,

(b) se promovió o facilitó la prostitución de más de una persona**]**.

Los elementos del delito de Rufianismo Agravado son los siguientes:

(1) Utilizar la prostitución ajena,

(2) con el propósito de hacerla su medio habitual de vida,

(3) cuando **[refiérase a la(s) circunstancia(s) que aplique(n) según lo alegado en el pliego acusatorio]**

(a) la persona es ascendiente, descendiente, cónyuge, hermano(a), tutor(a) o persona encargada de la educación, guarda o custodia de la alegada víctima,

(b) se promovió o facilitó la prostitución de más de una persona.

### C. Comercio de Personas Agravado

La ley prohíbe que cualquier persona promueva o facilite la entrada o salida del Estado Libre Asociado de Puerto Rico de otra persona, aun con el consentimiento de esta, para que ejerza la prostitución. El delito de Comercio de Personas se considera Agravado cuando **[el tribunal debe referirse a la(s) circunstancia(s) que aplique(n) según lo alegado en el pliego acusatorio:**

(a) la persona es ascendiente, descendiente, cónyuge, hermano(a), tutor(a) o persona encargada de la educación, guarda o custodia de la víctima,

(b) se promovió o facilitó la prostitución de más de una persona**]**.

Los elementos del delito de Comercio de Personas Agravado son los siguientes:

(1) Promover o facilitar la entrada o salida del Estado Libre Asociado de Puerto Rico de otra persona, aun con el consentimiento de esta,

(2) para que ejerza la prostitución o el comercio de sodomía

(3) cuando **[refiérase a la(s) circunstancia(s) que aplique(n) según lo alegado en el pliego acusatorio]**

(a) la persona es ascendiente, descendiente, cónyuge, hermano(a), tutor(a) o persona encargada de la educación, guarda o custodia de la alegada víctima,

(b) se promovió o facilitó la prostitución de más de una persona.

"Prostitución" es el acto de sostener, aceptar, ofrecer o solicitar sostener relaciones sexuales con otra persona por dinero, estipendio, remuneración o cualquier forma de pago. Pueden ser objeto de prostitución tanto hombres como mujeres".

**[El tribunal debe explicar los conceptos *ascendiente* y *descendiente* según aplique a la relación alegada en el pliego acusatorio:**

Son parientes ascendientes el padre, la madre, los(as) abuelos(as) y los(as) bisabuelos(as). Si estas personas fueran adoptadas, deben tratarse como si fueran parientes de sangre. Son parientes ascendientes las personas con quienes se hayan casado estos(as)

parientes de sangre, tales como el padrastro, la madrastra y los(as) abuelastros(as). También lo será la familia política, tales como el(la) suegro(a) y los(as) abuelos(as) políticos(as).

Son parientes descendientes los(as) hijos(as), los(as) nietos(as) y los(as) bisnietos(as). Si estas personas fueran adoptadas, deben tratarse como si fueran parientes de sangre. Son parientes descendientes las personas con quienes se hayan casado estos (as) parientes de sangre y los(as) hijastros(as) y los(as) nietos(as) políticos(as). Igualmente lo será la familia política, tales como los(as) cuñados(as), los yernos y las nueras**].**

Una persona actúa "a propósito" cuando su objetivo consciente es llevar a cabo un acto u omisión con el fin de obtener un resultado definido o cuando cree que una circunstancia existe.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no a propósito. Pueden inferir o deducir razonablemente el propósito de la prueba presentada y admitida. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de [Proxenetismo Agravado] [Rufianismo Agravado] [Comercio de Personas Agravado].

Si ustedes consideran, luego de un análisis cuidadoso de toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, que el Ministerio Público probó más allá de duda razonable la comisión del delito pero no que **[indique solamente la(s) circunstancia(s) que aplique(n) según lo alegado en el pliego acusatorio:**

> (a) la persona acusada es ascendiente, descendiente, cónyuge, hermana, tutora o encargada de la educación, guarda o custodia de la alegada víctima;
>
> (b) se promovió o facilitó la prostitución de más de una persona;**]**

deberán rendir un veredicto de culpable por el delito de [Proxenetismo] [Rufianismo] [Comercio de Personas].

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*), el Artículo 22 (*Elementos subjetivos del delito*), el Artículo 142 (*Proxenetismo, rufianismo y comercio de personas agravado*) del Código Penal

de 2012, Ley 146-2012 (33 LPRA secs. 5034, 5035 y 5203)**,** según enmendada por la Ley 159-2020; el Artículo 153 (*Proxenetismo, rufianismo y comercio de personas agravado*) del Código Penal de 2004, Ley 149-2004 (33 LPRA sec. 4781), y el Artículo 110 (*Delito agravado*) del Código Penal de 1974, Ley Núm. 115 de 22 de julio de 1974 (1974 [Parte 1] Leyes de Puerto Rico 482).

**COMENTARIO:**

Se elimina la referencia al "comercio de sodomía", puesto que no se establece la distinción entre "casa de prostitución" y "comercio de sodomía" para fines de identificar la conducta prohibida del Artículo 139 del Código Penal vigente, 33 LPRA sec. 5200. Lo anterior es coherente con la tipificación del delito de prostitución, la cual no admite como defensa el sexo de la persona que sostiene, acepta, ofrece o solicita sostener relaciones sexuales con otra persona por dinero. Véase el Artículo 138 del Código Penal de 2012 (33 LPRA sec. 5199).

**C.** **DE LA OBSCENIDAD Y LA PORNOGRAFÍA INFANTIL**

**8.7** **Envío, Transportación, Venta, Distribución, Publicación, Exhibición o Posesión de Material Obsceno (Art. 144 del Código Penal de 2012)**

Contra la persona acusada se ha presentado una acusación por el delito de [Enviar] [Transportar] [Vender] [Distribuir] [Publicar] [Exhibir] [Poseer] Material Obsceno en Puerto Rico**.**

La ley dispone que comete este delito la persona que, a sabiendas, envíe o haga enviar, transporte o haga transportar, traiga o haga traer material obsceno a Puerto Rico para la venta, exhibición, publicación o distribución, que posea, prepare, publique o imprima cualquier material obsceno en Puerto Rico, con el propósito de distribuirlo, venderlo, exhibirlo a otros u ofrecerlo para la distribución o la venta.

**[El tribunal debe referirse solamente a la modalidad que aplique según lo alegado en el pliego acusatorio:**

**A. Enviar, hacer enviar, transportar o hacer transportar material obsceno a Puerto Rico para la venta, exhibición, publicación o distribución**

En este caso, el Ministerio Público presentó una acusación por enviar, hacer enviar, transportar, hacer transportar, traer o hacer traer material obsceno a Puerto Rico para la venta, exhibición, publicación o distribución.

Los elementos de este delito son los siguientes:

(1) A sabiendas,
(2) enviar, hacer enviar, transportar, hacer transportar, traer o hacer traer material obsceno a Puerto Rico

(3) para la venta, exhibición, publicación o distribución

(4) cuando [se lleve a cabo para, o en presencia de, una persona menor de edad] [se emplee o se utilice a una persona menor de edad para hacer o ayudar en la conducta prohibida].

### B. Poseer, preparar, publicar o imprimir cualquier material obsceno en Puerto Rico para la venta, exhibición y distribución

En este caso, el Ministerio Público presentó una acusación por la modalidad de poseer, preparar, publicar o imprimir cualquier material obsceno en Puerto Rico para la venta, exhibición y distribución.

Los elementos de este delito son los siguientes:

(1) A sabiendas,

(2) poseer, preparar, publicar o imprimir cualquier material obsceno en Puerto Rico

(3) con el propósito de distribuirlo, venderlo, exhibirlo a otros u ofrecerlo para la distribución o la venta

(4) cuando [se lleve a cabo para, o en presencia de, una persona menor de edad] [se emplee o se utilice a una persona menor de edad para hacer o ayudar en la conducta prohibida**].**

"Menor de edad" es una persona que al momento de los hechos no ha cumplido 18 años.

"A sabiendas" es sinónimo de "con conocimiento". En este caso es el conocimiento personal de que el material es obsceno. Una persona actúa "con conocimiento" cuando es consciente de que la producción del resultado es una consecuencia prácticamente segura de su conducta o cuando es consciente de que la existencia de la circunstancia es prácticamente segura.

Este delito también requiere el elemento de "a propósito". Una persona actúa "a propósito" cuando su objetivo consciente es llevar a cabo un acto u omisión con el fin de obtener un resultado definido o cuando cree que una circunstancia existe.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no a propósito o con conocimiento. Pueden inferir o deducir razonablemente de la prueba presentada y admitida, el propósito o el conocimiento. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

"Material obsceno" es el aquel que, considerado en su totalidad por una persona promedio y que, al aplicar patrones comunitarios contemporáneos:

(a) apele al interés lascivo, o sea, a un interés morboso en la desnudez, sexualidad o funciones fisiológicas;

(b) represente o describa en una forma claramente ofensiva una conducta sexual y

(c) carezca de valor literario, artístico, político, religioso, científico o educativo serio.

La atracción del material al interés sexual se juzga con referencia a la persona adulta promedio y al grupo a quien va dirigido, a menos que surja de la naturaleza del material o de las circunstancias de su distribución o exhibición que está diseñada para grupos de desviados sexuales.

Si las circunstancias de la producción, presentación, venta, diseminación, distribución o publicidad indican que la persona acusada está explotando comercialmente el material por su atracción lasciva, la prueba de este hecho constituirá prueba de que no tiene un valor literario, artístico, político, religioso, científico o educativo serio.

**[El tribunal debe impartir esta Instrucción adicional cuando se alegue esta circunstancia en el pliego acusatorio:**

Cuando la conducta prohibida se lleve a cabo para, o en presencia de, una persona menor de edad, será suficiente que el material este dirigido a despertar un interés lascivo o deseo sexual**].**

**[El tribunal debe explicar al Jurado cualquier otra definición adicional que aplique según provista en el Artículo 143 del Código Penal de Puerto Rico de 2012].**

**[Si se desfila prueba tendente a demostrar las eximentes a continuación, el tribunal debe impartir la instrucción que sigue:**

No incurre en responsabilidad penal el (la) empleado(a), proyeccionista o persona que opera un aparato cinematográfico que ha sido empleado(a) y que está desempeñándose dentro del ámbito de su empleo siempre y cuando no tenga interés propietario alguno en el lugar o negocio en donde está empleado(a)**].**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de [Envío] [Transportación] [Venta] [Distribución] [Publicación] [Exhibición] [Posesión] de Material Obsceno**.**

**[El tribunal debe impartir esta Instrucción adicional cuando aplique:**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que la persona acusada cometió el delito pero que no estuvo de modo alguno involucrada una persona menor de edad, deberán rendir un veredicto de culpable por el delito de [Envío] [Transportación] [Venta] [Distribución] [Publicación] [Exhibición] [Posesión] de Material Obsceno sin esa circunstancia**].**

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de [Envío] [Transportación] [Venta] [Distribución] [Publicación] [Exhibición] [Posesión] de Material Obsceno.

**[Si desfiló alguna prueba sobre una eximente, debe impartirse la instrucción siguiente:**

Si ustedes, luego de un análisis cuidadoso de toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que la persona acusada se desempeñaba como **[indique la eximente que aplique]**, deberán rendir un veredicto de no culpable por el delito de [Envío] [Transportación] [Venta] [Distribución] [Publicación] [Exhibición] [Posesión] de Material Obsceno**].**

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 14 (*Definiciones*), el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*), el Artículo 22 (*Elementos subjetivos del delito*), el Artículo 144 (*Envío, transportación, venta, distribución, publicación, exhibición o posesión de material obsceno*), el Artículo 143 (*Definiciones*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5014, 5034, 5035, 5205 y 5204); el Artículo 154 (*Definiciones*), el Artículo 155 (*Envío, transportación, venta, distribución, publicación, exhibición o posesión de material obsceno*) del Código Penal de 2004, Ley 149-2004 (33 LPRA secs. 4782 y 4783) (2010); Artículo 113 (*Envío, transportación, venta, distribución, publicación, exhibición o posesión de material obsceno*), el Artículo 115 (*Protección a menores*), y el Artículo 112 (*Obscenidad* [materia obscena, conducta obscena, conducta sexual y términos relacionados]) del Código Penal de 1974, Ley Núm. 115 de 22 de julio de 1974 (1974 [Parte 1] Leyes de Puerto Rico 483-484).

**COMENTARIO:**

Este artículo mantiene la redacción del Artículo 155 del Código Penal de 2004, salvo la pena. Mediante la Ley 246-2014 se sustituyó la palabra "intención" por "propósito" y se dispone una pena para personas jurídicas. En el Código Penal de 2004 antecedieron los Artículos 113 y 115 del Código Penal de 1974, Leyes de Puerto Rico, *supra*.

La definición de "material obsceno" del Artículo 143 del Código Penal de 2012, *supra*, proviene de lo resuelto por el Tribunal Supremo de Estados Unidos en *Miller v. California,* 413 US 15 (1973).

Para propósitos del Código Penal, se considera menor de edad cualquier persona que no haya cumplido 18 años. Refiérase a los Artículos 39 (*Minoridad*), 88 (*Delitos que no prescriben*) y 130 (*Agresión sexual*), entre otros, del Código Penal de 2012 (33 LPRA secs. 5062, 5133 y 5191). La Dra. Dora Nevares-Muñiz aduce que, desde el Código Penal de 2004, se aumentó la edad de protección para cubrir todo el periodo en que la persona sea menor de 18 años.

D. Nevares-Muñiz, *Código Penal de Puerto Rico*, 4ta ed. rev., San Juan, Ed. Instituto para el Desarrollo del Derecho, 2019, pág. 194-195.

## 8.8    Espectáculos Obscenos (Art. 145 del Código Penal de 2012)

Contra la persona acusada se ha presentado una acusación por el delito de Espectáculos Obscenos para, o en presencia de, una persona menor de edad.

La ley prohíbe que cualquier persona a sabiendas, se dedique o participe en la administración, producción, patrocinio, presentación o exhibición de un espectáculo que contenga conducta obscena, o participe en una parte de dicho espectáculo o contribuya a su obscenidad. En este caso se acusa por llevar a cabo esos actos para, o en presencia de, una persona menor de edad.

**[El tribunal debe referirse solamente a la modalidad que aplique según lo alegado en el pliego acusatorio:**

### A. Dedicarse a participar en la administración, producción, patrocinio, presentación o exhibición de un espectáculo obsceno

En este caso, el Ministerio Público presentó una acusación por este delito en la primera modalidad.

Los elementos son los siguientes:

(1) A sabiendas,

(2) dedicarse o participar en la administración, producción, patrocinio, presentación o exhibición de un espectáculo que contenga conducta obscena

(3) para o en presencia de una persona menor de edad.

### B. Participar en una parte de un espectáculo obsceno

En este caso, el Ministerio Público presentó una acusación por este delito en la segunda modalidad.

Los elementos son los siguientes:

(1) A sabiendas,

(2) participar en una parte de un espectáculo que contenga conducta obscena o contribuya a su obscenidad,

(3) para o en presencia de, una persona menor de edad].

"A sabiendas" es sinónimo de "con conocimiento". En este caso, es el conocimiento de que el espectáculo contiene conducta obscena. Una persona actúa "con conocimiento" cuando es consciente de que la producción del resultado es una consecuencia prácticamente

segura de su conducta o cuando es consciente de que la existencia de la circunstancia es prácticamente segura.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no con conocimiento. Pueden inferir o deducir razonablemente de la prueba presentada y admitida el conocimiento de que realizaba la conducta prohibida para o en presencia de una persona menor de edad. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona.

"Conducta obscena" es cualquier actividad física del cuerpo humano, bien sea llevada a cabo solo o con otras personas, incluyendo, pero sin limitarse, a cantar, hablar, bailar, actuar, simular o hacer pantomimas, la cual considerada en su totalidad por la persona promedio, y según los patrones comunitarios contemporáneos,

> (a) apele al interés lascivo, o sea, al interés morboso en la desnudez, sexualidad o funciones fisiológicas;
>
> (b) represente o describa en una forma claramente ofensiva una conducta sexual, y
>
> (c) carezca de un valor literario, artístico, político, religioso, científico o educativo serio.

La atracción del material al interés lascivo o deseo sexual se juzga con referencia al adulto promedio, a menos que se desprenda de la naturaleza del material, o de las circunstancias de su distribución o exhibición, que está diseñada para grupos de desviados sexuales, en cuyo caso, dicha atracción se juzgará con referencia al grupo a quien va dirigido.

Si las circunstancias de la producción, presentación, venta, distribución o publicidad indican que la persona está explotando comercialmente la conducta obscena por su atracción lasciva, la prueba de este hecho constituirá prueba de que no tiene un valor literario, artístico, político, religioso, científico o educativo serio.

Cuando la conducta prohibida se lleve a cabo para o en presencia de una persona menor de edad, será suficiente que el material esté dirigido a despertar un interés lascivo o deseo sexual.

"Menor de edad" es una persona que al momento de los hechos no ha cumplido 18 años.

**[El tribunal debe explicar al Jurado cualquier otra definición adicional que aplique, según provistas en el Artículo 143 del Código Penal de Puerto Rico de 2012].**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Espectáculos Obscenos**.**

**[El tribunal debe impartir esta Instrucción adicional cuando aplique:**

Si ustedes consideran, luego de un análisis cuidadoso de toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, que el Ministerio Público probó más allá de duda razonable la comisión del delito pero no que fue para, o en presencia de, una persona menor de edad, entonces deberán rendir un veredicto de culpable por el delito de Espectáculos Obscenos sin esa circunstancia**].**

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Espectáculos Obscenos.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 14 (*Definiciones*), el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*), el Artículo 22 (*Elementos subjetivos del delito*), el Artículo 145 (*Espectáculos obscenos*), el Artículo 143 (*Definiciones*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5014, 5034, 5035, 5206 y 5204); el Artículo 156 (*Espectáculos obscenos*), el Artículo 154 (*Definiciones* [obscenidad y pornografía infantil]) del Código Penal de 2004, Ley 149-2004 (33 LPRA secs. 4784 y 4782); el Artículo 114 (*Espectáculos obscenos*), y el Artículo 112 (*Obscenidad* [materia obscena, conducta obscena, conducta sexual y términos relacionados]) del Código Penal de 1974, Ley Núm. 115 de 22 de julio de 1974 (1974) [Parte 1] Leyes de Puerto Rico 483).

**COMENTARIO:**

Este artículo mantiene la redacción del Artículo 156 del Código Penal de 2004, *supra*, salvo la pena.

La persona acusada tiene que haber cometido el delito a sabiendas o con conocimiento de la naturaleza obscena del espectáculo. Del mismo modo, cuando contribuye o toma parte en el espectáculo, se requiere el conocimiento previo del efecto de su conducta. Es solo entonces que su conducta es con conocimiento o a sabiendas. Véase D. Nevares-Muñiz, *Código Penal de Puerto Rico*, 4ta ed. rev., San Juan, Ed. Instituto para el Desarrollo del Derecho, 2019, pág. 243.

Para propósitos del Código Penal, se considera menor de edad cualquier persona que no haya cumplido 18 años. Refiérase a los Artículos 39 (*Minoridad*), 88 (*Delitos que no prescriben*) y 130 (*Agresión sexual*), entre otros, del Código Penal de 2012 (33 LPRA secs. 5062, 5133 y 5191). La Dra. Dora Nevares-Muñiz aduce que, desde el Código Penal de 2004, se aumentó la edad de protección para cubrir todo el periodo en que la persona sea menor de 18 años. Nevares-Muñiz, *op. cit.*, págs. 194-195.

**8.9     Producción de Pornografía Infantil (Art. 146 del Código Penal de 2012)**

Contra la persona acusada se ha presentado una acusación por el delito de Producción de Pornografía Infantil.

La ley prohíbe que, a sabiendas, se promueva, permita, participe o se contribuya directamente a la creación o producción de material o de un espectáculo de pornografía infantil.

Los elementos de este delito son los siguientes:

(1) A sabiendas,

(2) promover, permitir, participar o contribuir directamente a la creación o producción de material o de un espectáculo de pornografía infantil.

"A sabiendas" es sinónimo de "con conocimiento". En este caso es el conocimiento de que el espectáculo contiene conducta obscena. Una persona actúa "con conocimiento" cuando es consciente de que la producción del resultado es una consecuencia prácticamente segura de su conducta o cuando es consciente de que la existencia de la circunstancia es prácticamente segura.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no con conocimiento. Pueden inferir o deducir razonablemente de la prueba presentada y admitida el conocimiento de que promovía, permitía, participaba o contribuía directamente a la creación o producción de material o de un espectáculo de pornografía infantil. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

"Pornografía infantil" es cualquier representación de conducta sexual explícita, todo acto de masturbación, abuso sadomasoquista, relaciones sexuales reales o simuladas, relaciones sexuales desviadas, bestialismo, homosexualismo, lesbianismo, actos de sodomía o exhibición de los órganos genitales llevados a cabo por personas menores de 18 años.

"Material" es cualquier libro, revista, periódico, material impreso, escrito; cualquier retrato, fotografía, dibujo, caricatura, película de movimiento, cinta cinematográfica u otra representación gráfica; cualquier representación oral o visual transmitida o retransmitida a través de los cables, ondas electromagnéticas, computadoras, tecnología digital o cualesquiera medios electrónicos o de comunicación telemática; cualquier estatua, talla, figura, o escultura; cualquier grabación, transmisión, reproducción mecánica, química o eléctrica, o cualquier otro artículo, equipo o máquina.

**[El tribunal debe explicar al Jurado cualquier otra definición que aplique según provista en el Artículo 143 del Código Penal de Puerto Rico de 2012].**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona

acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Producción de Pornografía Infantil.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Producción de Pornografía Infantil.

**REFERENCIA**:

Esta Instrucción es nueva. Guarda relación con el Artículo 14 (*Definiciones*), el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*), el Artículo 22 (*Elementos subjetivos del delito*), el Artículo 146 (*Producción de pornografía infantil*), el Artículo 143 (*Definiciones*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5014, 5034, 5035, 5207 y 5204); el Artículo 157 (*Producción de pornografía infantil*), y el Artículo 154 (*Definiciones* del Código Penal de 2004, Ley 149-2004 (33 LPRA secs. 4785 y 4782) (2010). No tiene antecedentes en el Código Penal de 1974, Ley Núm. 115 de 22 de julio de 1974 (1974 [Parte 1] Leyes de Puerto Rico 449).

**COMENTARIO:**

Se mantuvo la misma redacción del Artículo 157 del Código Penal de 2004, *supra*, a excepción de las penas.

Es un elemento de este delito el que la persona lleve a cabo la conducta a sabiendas o con conocimiento de la naturaleza pornográfica del material.

### 8.10   Posesión y Distribución de Pornografía Infantil (Art. 147 del Código Penal de 2012)

Contra la persona acusada se ha presentado una acusación por el delito de Posesión y Distribución de Pornografía Infantil.

La ley establece que comete un delito la persona que a sabiendas posea o compre material o un espectáculo de pornografía infantil, o que a sabiendas imprima, venda, exhiba, distribuya, publique, transmita, traspase, envíe o circule material o un espectáculo de pornografía infantil.

Este delito tiene dos modalidades.

**[El tribunal debe referirse solamente a la modalidad que aplique según lo alegado en el pliego acusatorio:**

**A.  Poseer o comprar material o un espectáculo de pornografía infantil**

En este caso, el Ministerio Público presentó una acusación por poseer o comprar material o un espectáculo de pornografía infantil.

Los elementos de este delito son los siguientes:

(1) A sabiendas,

(2) poseer o comprar material o un espectáculo de pornografía infantil.

**B.  Imprimir, vender, exhibir, distribuir, publicar, transmitir, traspasar, enviar o circular material o un espectáculo de pornografía infantil**

En este caso, el Ministerio Público presentó una acusación por imprimir, vender, exhibir, distribuir, publicar, transmitir, traspasar, enviar o circular material o un espectáculo de pornografía infantil.

Los elementos de este delito son los siguientes:

(1) A sabiendas,

(2) imprimir, vender, exhibir, distribuir, publicar, transmitir, traspasar, enviar o circular material o un espectáculo de pornografía infantil**].**

"Pornografía infantil" es cualquier representación de conducta sexual explícita, todo acto de masturbación, abuso sadomasoquista, relaciones sexuales reales o simuladas, relaciones sexuales desviadas, bestialismo, homosexualismo, lesbianismo, actos de sodomía o exhibición de los órganos genitales llevados a cabo por personas menores de 18 años.

"Material" es cualquier libro, revista, periódico, material impreso, escrito; cualquier retrato, fotografía, dibujo, caricatura, película de movimiento, cinta cinematográfica u otra representación gráfica; cualquier representación oral o visual transmitida o retransmitida a través de los cables, ondas electromagnéticas, computadoras, tecnología digital o cualesquiera medios electrónicos o de comunicación telemática; cualquier estatua, talla, figura, o escultura; cualquier grabación, transmisión, reproducción mecánica, química o eléctrica, o cualquier otro artículo, equipo o máquina.

**[El tribunal debe explicar al Jurado cualquier otra definición que aplique según provista en el Artículo 143 del Código Penal de Puerto Rico de 2012].**

"A sabiendas" es sinónimo de "con conocimiento". En este caso es el conocimiento de que el espectáculo contiene conducta obscena. Una persona actúa "con conocimiento"

cuando es consciente de que la producción del resultado es una consecuencia prácticamente segura de su conducta o cuando es consciente de que la existencia de la circunstancia es prácticamente segura.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no con conocimiento. Pueden inferir o deducir razonablemente de la prueba presentada y admitida el conocimiento. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Posesión y Distribución de Pornografía Infantil.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Posesión y Distribución de Pornografía Infantil.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*), el Artículo 147 (*Posesión y distribución de pornografía infantil*), el Artículo 143 (*Definiciones*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5034, 5208 y 5204); el Artículo 158 (*Posesión y distribución de pornografía infantil*), y el Artículo 154 (*Definiciones* [obscenidad y pornografía infantil]) del Código Penal de 2004, Ley 149-2004 (33 LPRA secs. 4786 y 4782). No tiene antecedentes en el Código Penal de 1974, Ley Núm. 115 de 22 de julio de 1974 (1974 [Parte 1] Leyes de Puerto Rico 449).

**COMENTARIO:**

En este artículo se mantuvieron los elementos del delito tipificado en el Artículo 158 del Código Penal de 2004 (33 LPRA sec. 4786), pero redactado de manera que se dividen en dos modalidades, ambas de naturaleza grave, con penas distintas. La primera modalidad es: a sabiendas, el comprar material o un espectáculo de pornografía infantil. La sentencia es más severa en la segunda modalidad: imprimir, distribuir, vender, exhibir, enviar o circular el material de pornografía infantil.

### 8.11   Utilización de un Menor para Pornografía Infantil
### (Art. 148 del Código Penal de 2012)

Contra la persona acusada se ha presentado una acusación por el delito de Utilización de un Menor para Pornografía Infantil.

La ley dispone que comete este delito la persona que use, persuada o induzca a un menor a posar, modelar o ejecutar una conducta sexual con el propósito de preparar, imprimir o exhibir material de pornografía infantil o a participar en un espectáculo de esa naturaleza.

Los elementos de este delito son los siguientes:

(1) Usar, persuadir o inducir a una persona menor de edad,

(2) a posar, modelar o ejecutar conducta sexual,

(3) con el propósito de preparar, imprimir o exhibir material de pornografía infantil, o para participar en un espectáculo de pornografía infantil.

Además, corresponde a ustedes determinar si **[refiérase solamente a la(s) circunstancia(s) agravada(s) que aplique(n)]**:

(a) la persona tiene una relación de parentesco con la alegada víctima por ser ascendiente o descendiente, por consanguinidad, por adopción o por afinidad hasta el tercer grado;

(b) comparte o posee la custodia física o patria potestad,

(c) se comete en el hogar o lugar dedicado al cuidado de la alegada víctima.

"Pornografía infantil" es cualquier representación de conducta sexual explícita, todo acto de masturbación, abuso sadomasoquista, relaciones sexuales reales o simuladas, relaciones sexuales desviadas, bestialismo, homosexualismo, lesbianismo, actos de sodomía o exhibición de los órganos genitales llevados a cabo por personas menores de 18 años.

"Material" es cualquier libro, revista, periódico, material impreso, escrito; cualquier retrato, fotografía, dibujo, caricatura, película de movimiento, cinta cinematográfica u otra representación gráfica; cualquier representación oral o visual transmitida o retransmitida a través de los cables, ondas electromagnéticas, computadoras, tecnología digital o cualesquiera medios electrónicos o de comunicación telemática; cualquier estatua, talla, figura, o escultura; cualquier grabación, transmisión, reproducción mecánica, química o eléctrica, o cualquier otro artículo, equipo o máquina.

**[El tribunal debe explicar al Jurado cualquier otra definición que aplique según provista en el Artículo 143 del Código Penal de Puerto Rico de 2012].**

**[El tribunal debe explicar los conceptos *ascendiente*, *descendiente*, *consanguinidad*, *afinidad* y *colateral* hasta el tercer grado, cuando aplique:**

Son parientes ascendientes por consanguinidad (de sangre) hasta el tercer grado el padre, la madre, los(as) abuelos(as) y los(as) bisabuelos(as). Si estas personas fueran

adoptadas, deben tratarse como si fueran parientes de sangre. Son parientes ascendientes por afinidad las personas con quienes se hayan casado estos(as) parientes de sangre, tales como el padrastro, la madrastra y los(as) abuelastros(as). También lo será la familia política, tales como el (la) suegro(a) y los(as) abuelos(as) políticos(as).

Son parientes descendientes por consanguinidad (de sangre) hasta el tercer grado los(as) hijos(as), los(as) nietos(as) y los(as) bisnietos(as). Si estas personas fueran adoptadas, deben tratarse como si fueran parientes de sangre. Son parientes descendientes por afinidad las personas con quienes se hayan casado estos(as) parientes de sangre y los(as) hijastros(as) y los(as) nietos(as) políticos(as). Igualmente lo será la familia política, tales como los(as) cuñados(as), los yernos y las nueras.

Son, además, parientes por consanguinidad (de sangre) hasta el tercer grado los(as) hermanos(as), los(as) tíos(as) y los(as) sobrinos(as). Si estas personas fueran adoptadas, deben tratarse como si fueran parientes de sangre. Son parientes por afinidad las personas con quienes se hayan casado estos(as) parientes de sangre, así como la familia política, tales como los(as) tíos(as) políticos(as)**].**

Una persona actúa "a propósito" cuando su objetivo consciente es llevar a cabo un acto u omisión con el fin de obtener un resultado definido o cuando cree que una circunstancia existe.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no a propósito. Pueden inferir o deducir razonablemente el propósito de la prueba presentada y admitida. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Utilización de un Menor para Pornografía Infantil.

**[El tribunal debe impartir esta Instrucción adicional cuando aplique:**

Si ustedes consideran, luego de un análisis cuidadoso de toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, que el Ministerio Público probó más allá de duda razonable la comisión del delito, pero no que **[indique la(s) circunstancia(s) que aplique(n):**

(a) la persona acusada tiene relación de parentesco con la alegada víctima por ser ascendiente o descendiente, por consanguinidad, por adopción o por afinidad hasta el tercer grado;

(b) la persona acusada comparte o posee la custodia física o patria potestad,

(c) el delito se cometió en el hogar o lugar dedicado al cuidado de la alegada víctima,**]**

entonces deben rendir un veredicto de culpable por el delito de Utilización de un Menor para Pornografía Infantil sin esa circunstancia**].**

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Utilización de un Menor para Pornografía Infantil.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*), el Artículo 22 *(Elementos subjetivos del delito)*, el Artículo 148 (*Utilización de un menor para pornografía infantil*), el Artículo 143 (*Definiciones*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5034, 5035, 5209 y 5204); el Artículo 159 (*Utilización de un menor para pornografía infantil*), y el Artículo 154 (*Definiciones* [obscenidad y pornografía infantil]) del Código Penal de 2004, Ley 149-2004 (33 LPRA secs. 4787 y 4782. No tiene antecedentes en el Código Penal de 1974, Ley Núm. 115 de 22 de julio de 1974 (1974 [Parte 1] Leyes de Puerto Rico 449).

## 8.12   Exhibición y Venta de Material Nocivo a Menores
### (Art. 149(c) del Código Penal de 2012)

Contra la persona acusada se ha presentado una acusación por el delito de Exhibición y Venta de Material Nocivo a Menores.

La ley establece que comete este delito la persona que, a sabiendas, venda, arriende o preste a una persona menor de edad material con información o imágenes nocivas a menores.

Los elementos de este delito son los siguientes:

(1) A sabiendas,

(2) vender, arrendar o prestar,

(3) a una persona menor de edad,

(4) material que contenga información o imágenes nocivas a menores.

"A sabiendas" es sinónimo de "con conocimiento". En este caso implica conocimiento de que el espectáculo contiene conducta obscena. Una persona actúa "con conocimiento" cuando es consciente de que la producción del resultado es una consecuencia prácticamente segura de su conducta o cuando es consciente de que la existencia de la circunstancia es prácticamente segura.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no con conocimiento. Pueden inferir o deducir razonablemente de la prueba presentada y admitida el conocimiento. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

"Material" es cualquier libro, revista, periódico, material impreso, escrito; cualquier retrato, fotografía, dibujo, caricatura, película de movimiento, cinta cinematográfica u otra representación gráfica; cualquier representación oral o visual transmitida o retransmitida a través de los cables, ondas electromagnéticas, computadoras, tecnología digital o cualesquiera medios electrónicos o de comunicación telemática; cualquier estatua, talla, figura, o escultura; cualquier grabación, transmisión, reproducción mecánica, química o eléctrica, o cualquier otro artículo, equipo o máquina.

"Material nocivo a menores" es aquel que describa explícitamente la desnudez del cuerpo humano, manifestaciones de conducta o excitación sexual, o de una manera que, al considerarse en parte o en la totalidad de su contexto,

(a) apele predominantemente al interés lascivo o deseo sexual, vergonzoso o morboso en las personas menores de edad;

(b) resulte claramente ofensivo de acuerdo con los criterios contemporáneos de la comunidad adulta conforme a los mejores intereses de las personas menores de edad, y

(c) carezca de un valor social serio para las personas menores de edad.

"Menor de edad" es una persona que al momento de los hechos no ha cumplido 18 años.

**[El tribunal debe explicar al Jurado cualquier otra definición que aplique según provista en el Artículo 143 del Código Penal de Puerto Rico de 2012].**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Exhibición y Venta de Material Nocivo a Menores.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Exhibición y Venta de Material Nocivo a Menores.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 14 (*Definiciones*), el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*), el Artículo 22 (*Elementos*

*subjetivos del delito*), el Artículo 143 (*Definiciones*), el Artículo 149 (*Exhibición y venta de material nocivo a menores*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5014, 5034, 5035, 5204 y 5210); el Artículo 160 (*Exhibición y venta de material nocivo a menores*), el Artículo 154 (*Definiciones* [obscenidad y pornografía infantil]) del Código Penal de 2004, Ley 149-2004 (33 LPRA secs. 4788 y 4782); el Artículo 115A (*Exhibición y venta de material nocivo a menores–Definición*), y el Artículo 115B (*Penalidades*) del Código Penal de 1974, Ley Núm. 115 de 22 de julio de 1974.

**COMENTARIO:**

En este artículo se mantuvo la misma redacción del Artículo 160 del Código Penal de 2004, *supra*, respecto a los incisos (a) y (b), pero la modalidad de vender y traspasar material nocivo a menores se segregó a un inciso (c) para aumentar la pena. Explica la doctora Nevares-Muñiz lo siguiente:

> Este artículo sanciona a las personas responsables de que se exhiba, venda, preste o arriende material nocivo a menores de edad o se le exponga a este tipo de material, aun cuando tenga acceso al mismo como parte del público. Pueden ser sujeto activo del delito las personas que tienen la supervisión, el control o la custodia de un establecimiento comercial o negocio donde se exhiba o venda el material nocivo a los menores; así como también las personas que estén a cargo de salas de teatros donde se proyecten cintas cinematográficas con material nocivo a menores y permitan que el menor entre al lugar o le vendan una entrada al mismo. D. Nevares-Muñiz, *Código Penal de Puerto Rico*, 4ta ed. rev., San Juan, Ed. Instituto para el Desarrollo del Derecho, 2019, págs. 248-249.

Para propósitos del Código Penal, se considera menor de edad cualquier persona que no haya cumplido 18 años. Refiérase a los Artículos 39 (*Minoridad*) (33 LPRA sec. 5062), 88 (*Delitos que no prescriben*) (33 LPRA sec. 5133) y 130 (*Agresión sexual*) (33 LPRA sec. 5191), entre otros, del Código Penal de 2012. La Dra. Dora Nevares-Muñiz aduce que, desde el Código Penal de 2004, se aumentó la edad de protección para cubrir todo el periodo en que la persona sea menor de 18 años. Íd., págs. 194-195.

### 8.13   Propaganda de Material Obsceno o de Pornografía Infantil (Art. 150 del Código Penal de 2012)

Contra la persona acusada se ha presentado una acusación por el delito de Propaganda de Material Obsceno o de Pornografía Infantil.

La ley prohíbe preparar, exhibir, publicar, anunciar o solicitar a cualquier persona la publicación o exhibición de un anuncio de material obsceno, o de cualquier forma promover la venta o distribución de ese material, a propósito, con conocimiento o temerariamente.

En este caso, se le acusa específicamente de la(s) modalidad(es) siguiente(s) **[especifique solamente la(s) que aplique(n) según lo alegado en el pliego acusatorio]:**

(1) Preparar, exhibir, publicar o anunciar la publicación o exhibición de un anuncio de material obsceno.

(2) Solicitar a otra persona que prepare, exhiba, publique o anuncie la publicación o exhibición de un anuncio de material obsceno.

(3) Promover en cualquier otra forma la venta o distribución de material obsceno.

Además, corresponde a ustedes determinar si **[refiéranse solamente a la(s) circunstancia(s) que aplique(n)]:**

(a) la conducta se lleva a cabo en presencia de una persona menor de edad o

(b) el material es de pornografía infantil.

"Material obsceno" es aquel que considerado en su totalidad por una persona promedio y que al aplicar patrones comunitarios contemporáneos,

(a) apele al interés lascivo, o sea, al interés morboso en la desnudez, sexualidad o funciones fisiológicas;

(b) represente o describa en una forma claramente ofensiva una conducta sexual, y

(c) carezca de un valor literario, artístico, político, religioso, científico o educativo serio.

La atracción del material obsceno al interés lascivo o deseo sexual se juzga con referencia a la persona adulta promedio a menos que surja de la naturaleza del material o de las circunstancias de su distribución o exhibición, que está diseñada para grupos de desviados sexuales, en cuyo caso dicha atracción se juzgará con referencia al grupo a quien va dirigido.

Si las circunstancias de la producción, presentación, venta, distribución o publicidad indican que la persona está explotando comercialmente la conducta obscena por su atracción lasciva o deseo sexual, la prueba de este hecho constituirá prueba de que no tiene un valor literario, artístico, político, religioso, científico o educativo serio.

Cuando la conducta prohibida se lleve a cabo para, o en presencia de, una persona menor de edad, será suficiente que el material esté dirigido a despertar un interés lascivo o deseo sexual.

**[El tribunal debe leer la definición aplicable según la modalidad alegada en el pliego acusatorio:**

"Menor de edad" es una persona que al momento de los hechos no ha cumplido 18 años].

"Pornografía infantil" es cualquier representación de conducta sexual explícita, todo acto de masturbación, abuso sadomasoquista, relaciones sexuales reales o simuladas,

relaciones sexuales desviadas, bestialismo, homosexualismo, lesbianismo, actos de sodomía o exhibición de los órganos genitales llevados a cabo por personas menores de 18 años**].**

**[El tribunal debe explicar al Jurado cualquier otra definición que aplique según provista en el Artículo 143 del Código Penal de Puerto Rico de 2012].**

**[El tribunal debe impartir también la Instrucción 4.5].**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Propaganda de Material Obsceno o de Pornografía Infantil.

Si ustedes consideran, luego de un análisis cuidadoso de toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, que el Ministerio Público probó más allá de duda razonable la comisión del delito, pero no que [fue en presencia de una persona menor de edad] [el material se tratara de pornografía infantil], deberán rendir un veredicto de culpable por el delito de Propaganda de Material Obsceno o de Pornografía Infantil sin esa circunstancia.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Propaganda de Material Obsceno o de Pornografía Infantil.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 150 (*Propaganda de material obsceno o de pornografía infantil*), el Artículo 143 (*Definiciones*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5211 y 5204); el Artículo 161 (*Propaganda de material obsceno o de pornografía infantil*), el Artículo 154 (*Definiciones* [obscenidad y pornografía infantil]) del Código Penal de 2004, Ley 149-2004 (33 LPRA secs. 4789 y 4782), y el Artículo 116 (*Anuncios obscenos* [propaganda o promoción de venta y distribución; solicitación]) del Código Penal de 1974, Ley Núm. 115 de 22 de julio de 1974 (1974 [Parte1] Leyes de Puerto Rico 484).

**COMENTARIO:**

El delito es de naturaleza menos grave, pero si ocurre en presencia de una persona menor de edad o se trata de material de pornografía infantil, se convierte en delito grave. La amplitud del delito permite que se imponga responsabilidad tanto a la persona que prepara o escribe el anuncio obsceno como a quien exhibe o lo lleva donde otro para que lo publique.

Para propósitos del Código Penal, se considera menor de edad cualquier persona que no haya cumplido 18 años. Refiérase a los Artículos 39 (*Minoridad*) (33 LPRA sec. 5062), 88 (*Delitos*

*que no prescriben*) (33 LPRA sec. 5133) y 130 (*Agresión sexual*) (33 LPRA sec. 5191), entre otros, del Código Penal de 2012. La Dra. Dora Nevares-Muñiz aduce que desde el Código Penal de 2004 se aumentó la edad de protección para cubrir todo el periodo en que la persona sea menor de 18 años. D. Nevares-Muñiz, *Código Penal de Puerto Rico*, 4ta ed. rev., San Juan, Ed. Instituto para el Desarrollo del Derecho, 2019, págs. 194-195.

## 8.14   Venta; Distribución Condicionada (Art. 151 del Código Penal de 2012)

Contra la persona acusada se ha presentado una acusación por el delito de Venta o Distribución Condicionada de material obsceno o de pornografía infantil.

La ley prohíbe que, como condición para la venta, distribución, consignación o entrega para la reventa de cualquier diario, revista, libro, publicación u otra mercancía

(a) Se requiera que el (la) comprador(a) o el (la) consignatario(a) reciba cualquier material obsceno;

(b) Se deniegue, revoque o amenace con denegar o revocar una franquicia, o

(c) Se imponga una penalidad monetaria o de otra clase porque el (la) comprador(a) o el (la) consignatario(a) se haya negado a aceptar el material o por la devolución de tal material,

(d) siendo el material de pornografía infantil.

Los elementos de este delito son los siguientes:

(1) A propósito, con conocimiento o temerariamente,

(2) Condicionar la venta, distribución, consignación o entrega para la reventa de cualquier diario, revista, libro, publicación u otra mercancía

**(3) [El tribunal debe leer la circunstancia aplique según lo alegado en el pliego acusatorio:**

(i) Requerir que el comprador o consignatario reciba cualquier material obsceno;

(ii) denegar, revocar o amenazar con denegar o revocar una franquicia,

(iii)  imponer una penalidad monetaria o de otra clase porque el (la) comprador(a) o el (la) consignatario(a) se negó a aceptar el material o por la devolución de tal material**].**

Además, corresponde a ustedes determinar si el material se trata de pornografía infantil.

"Material obsceno" es aquel que, considerado en su totalidad por una persona promedio y que al aplicar patrones comunitarios contemporáneos,

(a) apele al interés lascivo, o sea, a un interés morboso en la desnudez, la sexualidad o las funciones fisiológicas;

(b) represente o describa en una forma claramente ofensiva una conducta sexual y

(c) carezca de un valor literario, artístico, político, religioso, científico o educativo serio.

La atracción del material al interés sexual se juzga con referencia a la persona adulta promedio y al grupo a quien va dirigido, a menos que surja de la naturaleza del material o de las circunstancias de su distribución o exhibición que está diseñada para grupos de desviados sexuales.

Si las circunstancias de la producción, presentación, venta, distribución o publicidad indican que la persona está explotando comercialmente la conducta obscena por su atracción lasciva, la prueba de este hecho constituirá prueba o de que no tiene un valor literario, artístico, político, religioso, científico o educativo serio.

Cuando la conducta prohibida se lleve a cabo para o en presencia de una persona menor de edad, será suficiente que el material esté dirigido a despertar un interés lascivo o deseo sexual.

"Pornografía infantil" es cualquier representación de conducta sexual explícita, todo acto de masturbación, abuso sadomasoquista, relaciones sexuales reales o simuladas, relaciones sexuales desviadas, bestialismo, homosexualismo, lesbianismo, actos de sodomía o exhibición de los órganos genitales llevados a cabo por personas menores de 18 años.

**[El tribunal debe explicar al Jurado cualquier otra definición que aplique según provista en el Artículo 143 del Código Penal de Puerto Rico de 2012].**

**[El tribunal debe impartir también la Instrucción 4.5].**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Venta o Distribución Condicionada de Material Obsceno o de Pornografía Infantil.

Si ustedes consideran, luego de un análisis cuidadoso de toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, que el Ministerio Público probó más allá de duda razonable la comisión del delito, pero no que se tratara de pornografía infantil, entonces deberán rendir un veredicto de culpable por el delito por el delito de Venta o Distribución Condicionada de Material Obsceno o de Pornografía Infantil sin esa circunstancia.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Venta o Distribución Condicionada de Material Obsceno o de Pornografía Infantil.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 151 (*Venta, distribución condicionada*), el Artículo 143 (*Definiciones*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5212 y 5204); el Artículo 161 (*Venta, distribución condicionada*), el Artículo 154 (*Definiciones* [obscenidad y pornografía infantil]) del Código Penal de 2004, Ley 149-2004 (33 LPRA secs. 4790 y 4782), y el Artículo 117 (Venta, distribución condicionada) del Código Penal de 1974, Ley Núm. 115 de 22 de julio de 1974 (1974 [Parte 1] Leyes de Puerto Rico 484).

## 8.15   Transmisión o Retransmisión de Material Obsceno o de Pornografía Infantil (Art. 152 del Código Penal de 2012)

Contra la persona acusada se ha presentado una acusación por el delito de Transmisión o Retransmisión de Material Obsceno o de Pornografía Infantil.

La ley prohíbe que, a sabiendas, se distribuya material obsceno o de pornografía infantil a través de cualquier medio de comunicación (sea telemático o cualquier otro medio).

Los elementos de este delito son los siguientes:

(1) A sabiendas,

(2) distribuir material obsceno o material de pornografía infantil

(3) a través de cualquier medio de comunicación (sea telemático o por cualquier otro medio).

"A sabiendas" es sinónimo de "con conocimiento". En este caso implica conocimiento de que el espectáculo contiene conducta obscena. Una persona actúa "con conocimiento" cuando es consciente de que la producción del resultado es una consecuencia prácticamente segura de su conducta o cuando es consciente de que la existencia de la circunstancia es prácticamente segura.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no con conocimiento. Pueden inferir o deducir razonablemente de la prueba presentada y admitida el conocimiento de distribuir material obsceno o material de pornografía infantil a través de un medio de comunicación. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

"Material" es cualquier libro, revista, periódico, material impreso, escrito; cualquier retrato, fotografía, dibujo, caricatura, película de movimiento, cinta cinematográfica u otra representación gráfica; cualquier representación oral o visual transmitida o retransmitida a través de los cables, ondas electromagnéticas, computadoras, tecnología digital o cualesquiera medios electrónicos o de comunicación telemática; cualquier estatua, talla,

figura, o escultura; cualquier grabación, transmisión, reproducción mecánica, química o eléctrica, o cualquier otro artículo, equipo o máquina.

"Material obsceno" es aquel que considerado en su totalidad por una persona promedio y que al aplicar patrones comunitarios contemporáneos,

(a) apele al interés lascivo, o sea, a un interés morboso en la desnudez, sexualidad o funciones fisiológicas;

(b) represente o describa en una forma claramente ofensiva una conducta sexual y

(c) carezca de un valor literario, artístico, político, religioso, científico o educativo serio.

La atracción del material al interés sexual se juzga con referencia a la persona adulta promedio y al grupo a quien va dirigido, a menos que surja de la naturaleza del material o de las circunstancias de su distribución o exhibición que está diseñada para grupos de desviados sexuales.

Si las circunstancias de la producción, presentación, venta, distribución o publicidad indican que la persona está explotando comercialmente la conducta obscena por su atracción lasciva, la prueba de este hecho constituirá prueba de que carece de un valor literario, artístico, político, religioso, científico o educativo serio.

Cuando la conducta prohibida se lleve a cabo para o en presencia de una persona menor de edad, será suficiente que el material esté dirigido a despertar un interés lascivo o deseo sexual.

"Pornografía infantil" es cualquier representación de conducta sexual explícita, todo acto de masturbación, abuso sadomasoquista, relaciones sexuales reales o simuladas, relaciones sexuales desviadas, bestialismo, homosexualismo, lesbianismo, actos de sodomía o exhibición de los órganos genitales llevados a cabo por personas menores de 18 años.

["Telemática" se refiere a la aplicación de las técnicas de la telecomunicación y de la informática a la transmisión a larga distancia de información computarizada].

**[El tribunal debe explicar al Jurado cualquier otra definición que aplique, según provista en el Artículo 143 del Código Penal de Puerto Rico de 2012].**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Transmisión o Retransmisión de Material Obsceno o de Pornografía Infantil.

Si ustedes consideran, luego de un análisis cuidadoso de toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, que el Ministerio Público probó más allá de duda razonable la comisión del delito, pero no que se tratara de pornografía infantil, entonces deberán rendir un veredicto de culpable por el delito de Transmisión o Retransmisión de Material Obsceno.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 14 (*Definiciones*), el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*), el Artículo 22 (*Elementos subjetivos del delito*), el Artículo 152 (*Transmisión o retransmisión de material obsceno o de pornografía infantil*), el Artículo 143 (*Definiciones*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 y por la Ley 27-2017 (33 LPRA secs. 5014, 5034, 5035, 5213 y 5204); el Artículo 163 (*Transmisión o retransmisión de material obsceno o de pornografía infantil*), el Artículo 154 (*Definiciones* [obscenidad y pornografía infantil]) del Código Penal de 2004, Ley 149-2004 (33 LPRA secs. 4791 y 4782), y el Artículo 117A (Transmisión o retransmisión de material obsceno) del Código Penal de 1974, según enmendado por la Ley Núm. 3 del 30 de septiembre de 1986, 33 LPRA sec. 4079a.

**COMENTARIO:**

La definición de "telemática" proviene de la definición contendida en el inciso (oo) del Artículo 14 del Código Penal de 2012 (33 LPRA sec. 5014).

CAPÍTULO 9
**DELITOS CONTRA LOS DERECHOS CIVILES**

**A.** **DE LAS RESTRICCIONES A LA LIBERTAD**

**9.1** **Restricción de Libertad Agravada (Art. 156 del Código Penal de 2012)**

Contra la persona acusada se ha presentado una acusación por el delito de Restricción de Libertad Agravada.

La persona que a propósito, con conocimiento y de forma ilegal restrinja e interfiera sustancialmente con la libertad de otra persona, comete el delito de Restricción de Libertad.

Los elementos de este delito son los siguientes:

(1) A propósito o con conocimiento,
(2) restringir ilegalmente e interferir de manera sustancial con la libertad de otra persona.

La restricción de libertad será agravada cuando se cometa estando presente(s) la(s) circunstancia(s) siguiente(s):

**[El tribunal debe leer solamente la(s) circunstancia(s) que aplique(n) al caso según lo alegado en el pliego acusatorio:**

(a) Que medie violencia, intimidación, fraude o engaño.

El término "violencia" conlleva cualquier uso de fuerza física o agresión.

La "intimidación" consiste en infundir miedo o temor por medio de amenazas. Es necesario que las circunstancias sean tales que afecten el ánimo de una persona razonable con el temor de un grave e inminente peligro, para sí misma o para otra persona. La intimidación puede darse mediante el uso de medios hipnóticos o sustancias que sean capaces de anular la voluntad de la persona.

El término "fraude" implica la realización de un acto mediante ardid, simulación, trama o treta, o mediante cualquier forma de engaño.

El "engaño" comprende el hacer creer algo que no es verdad. Esta es una de las formas del fraude, que consiste en la realización de un acto mediante ardid, simulación, trama o treta.

(b) Que quien limite la libertad simule ser autoridad pública.

En este caso, el "engaño" consiste en simular que se es autoridad pública, o sea, que ocupa un cargo o empleo dentro del gobierno de Puerto Rico, sus municipios, agencias, corporaciones públicas, subdivisiones políticas o dependencias públicas, cuyas funciones le permiten tener autoridad sobre otros en una relación de superior y subordinado.

(c) Que quien limite la libertad sea funcionario(a) o empleado(a) público(a) y lo haga en abuso de los poderes propios de su autoridad o de sus funciones.

"Funcionario(a) o empleado(a) público(a)" es la persona que ejerce un cargo o desempeña una función o encomienda, con o sin pago, permanente o temporeramente, debido a cualquier tipo de nombramiento, contrato o designación, para la Rama Legislativa, Ejecutiva o Judicial, o para el gobierno municipal del Estado Libre Asociado de Puerto Rico. Incluye a quienes representan el interés público y sean designadas para ocupar un cargo en una junta, corporación pública, entidad gubernamental y sus subsidiarias del Estado Libre Asociado de Puerto Rico, así como a los(as) notarios(as). El término "funcionario(a) público(a)" incluye las personas que ocupan cargos o empleos en el gobierno del Estado Libre Asociado y que están investidas de parte de la soberanía del gobierno, por lo que intervienen en la formulación e implantación de la política pública.

(d) Que el acto se haya realizado con el pretexto de que la persona restringida padece de alguna enfermedad o de algún defecto mental.

(e) Que la persona restringida no ha cumplido 18 años, esté discapacitada para valerse por sí misma o sufra una enfermedad mental.

La "discapacidad" consiste en la disminución de las facultades físicas de la persona. Se comete el delito si la víctima no ha cumplido 18 años, si está discapacitada o si sufre alguna enfermedad mental. No tienen que coincidir las tres circunstancias; basta con una de ellas.

(f) Que el acto se realice en la persona de quien la persona acusada es o ha sido cónyuge o conviviente, ha tenido o tiene relaciones de intimidad o noviazgo, o con la que tiene un(a) hijo(a) en común**].**

"Ilegalmente" es todo acto en violación de alguna ley, norma, reglamento, ordenanza u orden promulgada por una autoridad competente del Estado en el ejercicio de sus funciones.

Una persona actúa "a propósito" cuando su objetivo consciente es llevar a cabo un acto u omisión con el fin de obtener un resultado definido o cuando cree que una circunstancia existe.

Una persona actúa "con conocimiento" cuando es consciente de que la producción del resultado o la existencia de la circunstancia prohibida por ley es prácticamente segura.

No es suficiente la intención o el propósito de privar de libertad; es necesario que en efecto se haya privado a la víctima de su libertad. No es necesario que la víctima se dé cuenta de que fue privada de su libertad.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no a propósito o con conocimiento. Pueden inferir o deducir razonablemente de la prueba presentada y admitida el propósito o el conocimiento. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Restricción de Libertad Agravada.

Si ustedes consideran, luego de un análisis cuidadoso de toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, que el Ministerio Público probó más allá de duda razonable la comisión del delito, pero no que el acto se llevó a cabo **[indique la(s) circunstancia(s) que aplique(n):**

    (a) mediante violencia, intimidación, fraude o engaño;

    (b) simulando ser autoridad pública;

    (c) por un(a) funcionario(a) o empleado(a) público(a) con abuso de los poderes inherentes a su autoridad o funciones;

    (d) con el pretexto de que la persona restringida padece de alguna enfermedad o algún defecto mental;

    (e) en una persona que no ha cumplido 18 años, que tenga una incapacidad o que no pueda valerse por sí misma, o que tenga una enfermedad mental, o

    (f) en la persona de quien el (la) autor(a) es o ha sido cónyuge o conviviente, ha tenido o tiene relaciones de intimidad o noviazgo, o con la que tiene un(a) hijo(a) en común,**]**

deberán rendir un veredicto de culpable por el delito de Restricción de Libertad sin esa circunstancia.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Restricción de Libertad Agravada.

**REFERENCIA**:

Esta Instrucción proviene de la Instrucción 11.1 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con el Artículo 14 (*Definiciones*), el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*), el Artículo 22 (*Elementos subjetivos del delito*), el Artículo 156 (*Restricción de libertad agravada*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5014, 5034, 5035, 5223); el Artículo 168 (*Restricción de libertad agravada*) del Código Penal de 2004, Ley 149-2004 (33 LPRA sec. 4796), y el Artículo 131 (*Restricción de libertad agravada*) del Código Penal de 1974, Ley Núm. 115 de 22 de julio de 1974 (1974 [Parte 1] Leyes de Puerto Rico 488).

**COMENTARIO**:

En el Artículo 155 del Código Penal de 2012 se define el delito de Restricción de Libertad. La Ley 246-2014 enmendó dicho Artículo 155 para que el elemento subjetivo del delito sea "a propósito" o "con conocimiento", y le añadió "y de forma ilegal".

El delito no requiere el conocimiento de la víctima de que ha sido privada de su libertad. D. Nevares-Muñiz, *Código Penal de Puerto Rico*, 4ta ed. rev., San Juan, Ed. Instituto para el Desarrollo del Derecho, 2019, pág. 255.

El Artículo 156 establece seis (6) circunstancias en las que el delito de Restricción de Libertad, según definido en el Artículo 155, será de naturaleza grave. La Ley 246-2014 lo enmendó en cuanto a la pena y sustituyó la pena de ocho (8) años por una pena de tres (3) años.

Se observa que el delito admite prueba de embriaguez para negar el elemento subjetivo de "a propósito" o "con conocimiento", debido a que el Artículo 156 del Código Penal no dispone que este delito pueda cometerse temerariamente.


## 9.2    Secuestro; modalidad de sustracción (Art. 157 del Código Penal de 2012)

Contra la persona acusada se ha presentado una acusación por el delito de Secuestro.

La ley dispone que la persona que, mediante fuerza, violencia, intimidación, fraude o engaño, sustrae o retiene y oculta a otra privándola de su libertad, comete el delito de secuestro. Cuando se sustrae a la víctima del lugar en que se encuentre y se mueva del mismo, la sustracción de la víctima debe ser por un tiempo o una distancia sustancial y no meramente incidental a la comisión de otro delito.

En este caso se le imputa a la persona acusada el haber secuestrado a la víctima sustrayéndola.

Los elementos de este delito son los siguientes:

> (1) A propósito, con conocimiento o temerariamente,
> (2) sustraer a una persona, privándola de su libertad,
> (3) por un tiempo o una distancia sustancial y no meramente incidental a la comisión de otro delito,
> (4) por medio de fuerza, violencia, intimidación, fraude o engaño.

Por "sustracción" o "sustraer" se entiende apartar, separar, mover o trasladar a la persona de un sitio a otro.

Los términos "fuerza" y "violencia" conllevan cualquier uso de poder físico o de agresión.

La "intimidación" consiste en infundir miedo o temor por medio de amenazas.

El término "fraude" implica la realización de un acto mediante ardid, simulación, trama o treta, o mediante cualquier forma de engaño.

El "engaño" comprende el hacer creer algo que no es verdad. Esta es una de las formas del fraude que consiste en la realización de un acto mediante ardid, simulación, trama o treta.

No es suficiente la intención o el propósito de privar de libertad; es necesario que en efecto se haya privado a la alegada víctima de su libertad. No es necesario que la víctima se dé cuenta de que ha sido privada de su libertad.

No se comete el delito de Secuestro cuando la sustracción o el movimiento de la persona ocurre por razón de la comisión de otro delito, salvo que la sustracción de la alegada víctima

(a) haya sido a una distancia considerable u

(b) ocurra por un periodo prolongado de tiempo.

**[El tribunal debe impartir esta Instrucción acompañada de la Instrucción 4.5].**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Secuestro.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Secuestro.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 11.2 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con el Artículo 14 (*Definiciones*), el Artículo 157 (*Secuestro*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5014 y 5223); el Artículo 169 (*Secuestro*) del Código Penal de 2004, Ley 149-2004 (33 LPRA sec. 4797), y el Artículo 137 (*Secuestro*) del Código Penal de 1974, Ley Núm. 115 de 22 de julio de 1974 (1974 [Parte 1] Leyes de Puerto Rico 490).

**COMENTARIO:**

El delito de secuestro tiene dos modalidades: (1) la sustracción de la víctima y (2) retener y ocultar a la víctima. En ambas modalidades se requiere que se haya privado a la víctima de su libertad.

El delito no requiere que la víctima sepa que ha sido privada de su libertad. D. Nevares-Muñiz, *Código Penal de Puerto Rico*, 4ta ed. rev., San Juan, Ed. Instituto para el Desarrollo del Derecho, 2019, pág. 255.

La Ley 246-2014 introdujo un segundo párrafo al Artículo 157 del Código Penal de 2012, *supra*, conforme con la redacción del Artículo 169 del Código Penal de 2004, *supra*. Este párrafo segundo atiende las situaciones en las que el secuestro, en su modalidad de sustracción, es incidental a la comisión de otro delito o cuando la sustracción de la persona ocurre en el curso de la comisión de otros delitos, en cuyo caso se requiere que la sustracción de la víctima sea por distancia o por un tiempo sustancial. *Pueblo v. Rivera Nazario*, 141 DPR 865 (1996) (distancia sustancial); *Pueblo v. Navarro*, 141 DPR 761 (1996) (tiempo sustancial); *Pueblo v. Echevarría Rodríguez I*, 128 DPR 299 (1991) (distancia sustancial).

**9.3    Secuestro; modalidad de retención y ocultación**
**(Art. 157 del Código Penal de 2012)**

Contra la persona acusada se ha presentado una acusación por el delito de Secuestro.

La ley dispone que la persona que, mediante fuerza, violencia, intimidación, fraude o engaño, sustrae o retiene y oculta a otra privándola de su libertad, comete el delito de Secuestro.  Cuando se sustrae a la víctima del lugar en que se encuentre y se mueva del mismo, la sustracción de la víctima debe ser por un tiempo o una distancia sustancial y no meramente incidental a la comisión de otro delito.

En este caso se le imputa a la persona acusada el haber secuestrado a la alegada víctima, reteniéndola y ocultándola.

Los elementos de este delito son los siguientes:

(1) A propósito, con conocimiento o temerariamente,

(2) retener y ocultar a una persona, privándola de su libertad,

(3) por medio de fuerza, violencia, intimidación, fraude o engaño.

Por "retener" se entiende impedir la salida o movimiento de la persona del lugar donde se encuentra.

"Ocultar" es esconder; no permitir que la persona pueda ser vista, oída o sentida.

Los términos "fuerza" y "violencia" conllevan cualquier uso de poder físico o agresión.

La "intimidación" consiste en infundir miedo o temor por medio de amenazas.

El término "fraude" implica la realización de un acto mediante ardid, simulación, trama o treta, o mediante cualquier forma de engaño.

El "engaño" comprende el hacer creer algo que no es verdad. Esta es una de las formas del fraude que consiste en la realización de un acto mediante ardid, simulación, trama o treta.

Para que se cometa el delito de Secuestro en esta modalidad de retención y ocultación, no se requiere el movimiento de la alegada víctima de un lugar a otro; basta su detención y privación de libertad. No es necesario que la alegada víctima se dé cuenta de que fue privada de su libertad.

**[El tribunal debe impartir esta Instrucción acompañada de la Instrucción 4.5].**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Secuestro.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Secuestro.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 11.2 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con el Artículo 14 (*Definiciones*), el Artículo 157 (*Secuestro*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5014 y 5223); el Artículo 169 (*Secuestro*) del Código Penal de 2004, Ley 149-2004 (33 LPRA sec. 4797), y el Artículo 137 (*Secuestro*) del Código Penal de 1974, Ley Núm. 115 de 22 de julio de 1974 (1974 [Parte 1] Leyes de Puerto Rico 490).

## 9.4    Secuestro Agravado; modalidad de sustracción
   (Art. 158 del Código Penal de 2012)

Contra la persona acusada se ha presentado una acusación por el delito de Secuestro Agravado.

La ley dispone que la persona que mediante fuerza, violencia, intimidación, fraude o engaño sustrae, retiene y oculta a otra privándola de su libertad, comete el delito de secuestro. Cuando se sustrae a la víctima del lugar en que se encuentre y se mueva del mismo, la sustracción de la víctima debe ser por un tiempo o una distancia sustancial y no meramente incidental a la comisión de otro delito.

En este caso se le imputa a la persona acusada el haber secuestrado a la alegada víctima sustrayéndola.

Los elementos de este delito son los siguientes:

(1) A propósito, con conocimiento o temerariamente,

(2) sustraer a una persona, privándola de su libertad,

(3) por un tiempo o una distancia sustancial y no meramente incidental a la comisión de otro delito,

(4) por medio de fuerza, violencia, intimidación, fraude o engaño.

El delito de Secuestro se considera agravado cuando: **[refiérase solamente a la(s) que aplique(n) según lo alegado en el pliego acusatorio:**

(a) Se comete contra una persona que no ha cumplido 18 años, se trata de una persona con una discapacidad o que no puede valerse por sí misma, o es una persona que sufre de una enfermedad mental. La "discapacidad" consiste en la disminución de las facultades físicas de la persona. No tienen que coincidir las 3 circunstancias mencionadas, sino que basta con solo una de ellas para que se cometa el delito de Secuestro agravado, si están presentes los demás elementos del delito.

(b) Se comete contra el Gobernador o la Gobernadora de Puerto Rico o contra un(a) legislador(a), un(a) secretario(a) del gabinete, un(a) funcionario(a) principal de una agencia o corporación pública, un(a) juez(a), un(a) fiscal(a) especial independiente o un(a) procurador(a) del Departamento de Justicia de Puerto Rico, ya sea este(a) nombrado(a) por el Gobernador o la Gobernadora de Puerto Rico o designado(a) como tal por el (la) Secretario(a) de Justicia.

(c) Se comete con el propósito de exigir una compensación monetaria o para exigir que se realice algún acto contrario a la ley o a la voluntad de la persona secuestrada, o para exigir al Estado la liberación de alguna persona reclusa que cumpla sentencia o la liberación de una persona arrestada o acusada en relación con algún delito.

(d) El secuestro se inicie fuera de los límites territoriales del Estado Libre Asociado de Puerto Rico y se traiga o envíe a la persona a Puerto Rico**].**

Por "sustracción" o "sustraer" se entiende apartar, separar, mover o trasladar a la persona de un sitio a otro.

Los términos "fuerza" y "violencia" conllevan cualquier uso de poder físico o agresión.

La "intimidación" consiste en infundir miedo o temor por medio de amenazas.

El término "fraude" implica la realización de un acto mediante ardid, simulación, trama, treta o mediante cualquier forma de engaño.

El "engaño" comprende el hacer creer algo que no es verdad. Esta es una de las formas del fraude que consiste en la realización de un acto mediante ardid, simulación, trama o treta.

No es suficiente la intención o el propósito de privar de libertad; es necesario que en efecto se haya privado a la víctima de su libertad. No es necesario que la víctima se dé cuenta de que ha sido privada de su libertad.

No se comete el delito de Secuestro cuando la sustracción o el movimiento de la persona ocurre por razón de la comisión de otro delito, salvo que la sustracción de la víctima

(i) haya sido a una distancia considerable u

(ii) ocurra por un periodo prolongado de tiempo.

**[El tribunal debe impartir esta Instrucción acompañada de la Instrucción 4.5].**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Secuestro Agravado.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable que la persona acusada cometió el delito de Secuestro, pero no que **[indique la circunstancia que aplique]**, deberán rendir un veredicto de culpable por el delito de Secuestro sin esta circunstancia.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto un veredicto de no culpable.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 11.3 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con el Artículo 14 (*Definiciones*), el Artículo 158 (*Secuestro agravado*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5014 y 5224); el Artículo 170 (*Secuestro agravado*) del Código Penal de 2004, Ley 149-2004 (33 LPRA sec. 4798), y el Artículo 138 (*Secuestro fuera de Puerto Rico*) del Código Penal de 1974, Ley Núm. 115 de 22 de julio de 1974 (1974 [Parte 1] Leyes de Puerto Rico 490).

### 9.5 Secuestro Agravado; modalidad de retención y ocultación (Art. 158 del Código Penal de 2012)

Contra la persona acusada se ha presentado una acusación por el delito de Secuestro Agravado.

La ley dispone que la persona que mediante fuerza, violencia, intimidación, fraude o engaño sustrae o retiene y oculta a otra privándola de su libertad, comete el delito de Secuestro. Cuando se sustrae a la víctima del lugar en que se encuentre y se mueva del mismo, la sustracción de la víctima debe ser por un tiempo o una distancia sustancial y no meramente incidental a la comisión de otro delito.

En este caso se le imputa a la persona acusada haber secuestrado a la alegada víctima reteniéndola y ocultándola.

Los elementos de este delito son los siguientes:

(1) A propósito, con conocimiento o temerariamente,
(2) retener y ocultar a una persona, privándola de su libertad,

(3) por medio de fuerza, violencia, intimidación, fraude o engaño.

El delito de Secuestro se considera agravado cuando: **[refiérase solamente a la(s) circunstancia(s) que aplica(n) según lo alegado en el pliego acusatorio:**

(a) Se comete contra una persona que no ha cumplido 18 años, se trate de una persona discapacitada o que no puede valerse por sí misma, o que sufre de una enfermedad mental. La "discapacidad" consiste en la disminución de las facultades físicas de la persona. No tienen que coincidir las 3 circunstancias mencionadas, sino que basta con solo una de ellas para que se cometa el delito de secuestro agravado, si están presentes los demás elementos del delito.

(b) Se comete contra el Gobernador o la Gobernadora de Puerto Rico, contra un(a) legislador(a), un(a) secretario(a) del gabinete, un(a) funcionario(a) principal de una agencia o de una corporación pública, un(a) juez(a) un(a) fiscal(a) especial independiente o un(a) procurador(a) del Departamento de Justicia de Puerto Rico, ya sea nombrado(a) por el Gobernador o la Gobernadora de Puerto Rico o designado(a) como tal por el (la) Secretario(a) de Justicia.

(c) Se comete con el propósito de exigir una compensación monetaria, para exigir que se realice algún acto contrario a la ley o a la voluntad de la persona secuestrada o para exigir al Estado la liberación de alguna persona reclusa que cumpla sentencia o la liberación de una persona arrestada o acusada en relación con algún delito.

(d) El secuestro se inicia fuera de los límites territoriales del Estado Libre Asociado de Puerto Rico y se trae o envía a la persona a Puerto Rico**].**

Por "retener" se entiende impedir la salida o el movimiento de la persona del lugar donde se encuentra.

"Ocultar" es esconder; no permitir que la persona pueda ser vista, oída o sentida.

Los términos "fuerza" y "violencia" conllevan cualquier uso de poder físico o agresión.

La "intimidación" consiste en infundir miedo o temor por medio de amenazas.

El término "fraude" implica la realización de un acto mediante ardid, simulación, trama o treta, o mediante cualquier forma de engaño.

El "engaño" comprende el hacer creer algo que no es verdad. Esta es una de las formas de fraude que consiste en la realización de un acto mediante ardid, simulación, trama o treta.

Para que se cometa el delito de secuestro bajo esta modalidad de retención y ocultación no se requiere el movimiento de la víctima de un lugar a otro, sino que basta su detención y privación de libertad. No es necesario que la víctima se dé cuenta de que ha sido privada de su libertad.

**[El tribunal debe impartir esta Instrucción acompañada de la Instrucción 4.5].**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Secuestro Agravado.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable que la persona acusada cometió el delito de Secuestro, pero no que **[indique la circunstancia que aplique]**, deberán rendir un veredicto de culpable por el delito de Secuestro sin esta circunstancia.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 11.3 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con el Artículo 14 (*Definiciones*), el Artículo 158 (*Secuestro agravado*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5014 y 5224); el Artículo 170 (*Secuestro agravado*) del Código Penal de 2004, Ley 149-2004 (33 LPRA sec. 4798), y el Artículo 138 (*Secuestro fuera de Puerto Rico*) del Código Penal de 1974, Ley Núm. 115 de 22 de julio de 1974 (1974 [Parte 1] Leyes de Puerto Rico 490).

## 9.6 Trata Humana con Fines de Servidumbre Involuntaria o Esclavitud, y Otros Tipos de Explotación (Art. 159 del Código Penal de 2012)

Contra la persona acusada se ha presentado una acusación por el delito de Trata Humana con Fines de Servidumbre Involuntaria o Esclavitud, y Otros Tipos de Explotación.

La ley dispone que comete este delito la persona que, a sabiendas, **[el tribunal debe referirse a la modalidad que aplique, según lo alegado en el pliego acusatorio:**

(a) imponga sobre cualquier persona una condición de servidumbre, trabajos forzados o cualquier otro tipo de explotación, u obtenga cualquier tipo de trabajos o servicios;

(b) reclute, persuada, albergue, transporte, provea, mantenga o retenga a otra con el propósito de someterla o a sabiendas de que será sometida a algún tipo de explotación;

(c) se beneficie económicamente o mediante el recibo de cualquier cosa de valor, de labores o de servicios, a sabiendas de que se obtuvieron**];**

**[el tribunal debe referirse al medio que aplique, según lo alegado en el pliego acusatorio:**

(a) al ejercer fuerza, engaño, fraude, coacción física o emocional, coerción, intimidación, daño o amenaza de cualquiera de estos;

(b) mediante abuso de poder real o pretendido aprovechándose de la situación vulnerable de la víctima;

(c) mediante secuestro, restricción física, restricción de libertad, interferencia con los movimientos o comunicaciones, privación o destrucción de documentos de identidad de la víctima;

(d) al imponer sobre la víctima el trabajo o algún tipo de explotación como única alternativa de repago por una deuda propia o ajena**]**.

Los elementos de este delito son los siguientes:

(1)  A sabiendas,

(2)  **[El tribunal debe referirse solamente a la modalidad que aplique según lo alegado en el pliego acusatorio]:**

(a) imponer sobre cualquier persona una condición de servidumbre, trabajos forzados o cualquier otro tipo de explotación, u obtener cualquier tipo de trabajos o servicios;

(b) reclutar, persuadir, albergar, transportar, proveer, mantener o retener a una persona, [con el propósito de someterla] [a sabiendas de que será sometida] a cualquier tipo de explotación;

(c) beneficiarse económicamente o mediante el recibo de cualquier cosa de valor, de labores o de servicios, a sabiendas de que se obtuvieron por alguno de los medios prohibidos**]**;

(3)  **[El tribunal debe referirse al medio que aplique, según lo alegado en el pliego acusatorio:**

(a) al ejercer fuerza, engaño, fraude, coacción física o emocional, coerción, intimidación, daño o amenaza de cualquiera de estos.

Se entiende por "fuerza" el uso de poder físico o agresión.

El "engaño" comprende el hacer creer algo que no es verdad. Es una forma de fraude que consiste en la realización de un acto mediante ardid, simulación, trama o treta.

El término "fraude" implica la realización de un acto mediante ardid, simulación, trama o treta, o mediante cualquier forma de engaño.

La coacción o intimidación puede darse mediante el uso de medios hipnóticos o sustancias que sean capaces de anular la voluntad de la persona.

(b) mediante abuso de poder real o pretendido aprovechándose de la situación vulnerable de la alegada víctima.

"Situación vulnerable" se refiere a las circunstancias o los factores personales, sociales, económicos o políticos que hacen o propician que algunas personas o grupo de personas estén en alto riesgo de ser víctimas de diversas modalidades de explotación.

(c) mediante secuestro, restricción física, restricción de libertad, interferencia con los movimientos o comunicaciones, privación o destrucción de documentos de identidad de la alegada víctima.

"Secuestro" significa la utilización de fuerza, violencia, intimidación, fraude o engaño para sustraer o retener y ocultar a otra persona privándola ilegalmente de su libertad. La sustracción de la víctima debe ser por un tiempo o una distancia sustancial y no meramente incidental a la comisión de otro delito.

"Restricción de libertad" significa que se limita ilegalmente a otra persona interfiriendo sustancialmente con su libertad.

(d) al imponer sobre la alegada víctima el trabajo o algún tipo de explotación como única alternativa de repago por una deuda propia o ajena.

"Explotación" es sacar provecho de algo; sacar utilidad de un negocio o industria en provecho propio; utilizar en provecho propio, por lo general de un modo abusivo, las cualidades o sentimientos de una persona**]**.

**[El tribunal debe impartir la siguiente instrucción sobre modalidad agravada cuando aplique, según lo alegado en el pliego acusatorio:**

Además, corresponde a ustedes determinar si la persona que comete el acto es el padre, la madre, el (la) encargado(a) o el (la) tutor(a) legal de la alegada víctima [menor de edad] [incapacitada mental o físicamente].

["Menor de edad" es una persona que al momento de los hechos no ha cumplido 18 años]**].**

Los trabajos, servicios o explotación prohibidos incluyen los trabajos o servicios forzados, la servidumbre, servidumbre por deudas, el obligar a pedir limosna, el matrimonio servil o forzado, la adopción forzada, la esclavitud o sus prácticas análogas, o la extracción de órganos.

"A sabiendas" es sinónimo de "con conocimiento". Una persona actúa "con conocimiento" cuando es consciente de que la producción del resultado es una consecuencia prácticamente segura de su conducta o cuando es consciente de que la existencia de la circunstancia es prácticamente segura.

[Una persona actúa "a propósito" cuando su objetivo consciente es llevar a cabo un acto u omisión con el fin de obtener un resultado definido o cuando cree que una circunstancia existe].

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no con conocimiento [o a propósito]. Pueden inferir o deducir razonablemente de la prueba presentada y admitida el conocimiento [o el propósito]. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Trata Humana con Fines de Servidumbre Involuntaria o Esclavitud, y Otros Tipos de Explotación.

**[El tribunal debe impartir esta instrucción adicional cuando aplique:**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable la comisión del delito, pero no que la persona que cometió el acto es el padre, la madre, el (la) encargado(a) o el (la) tutor(a) legal de la alegada víctima [menor de edad] [incapacitada mental o físicamente] deberán rendir un veredicto de culpable por el delito de Trata Humana con Fines de Servidumbre Involuntaria o Esclavitud, y Otros Tipos de Explotación, sin esa circunstancia**]**.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Trata Humana con Fines de Servidumbre Involuntaria o Esclavitud, y Otros Tipos de Explotación.

**REFERENCIA**:

Esta Instrucción es nueva. Guarda relación con el Artículo 14 (*Definiciones*), el Artículo 159 (*Trata humana con fines de servidumbre involuntaria o esclavitud, y otros tipos de explotación*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5014 y 5225) y la Ley 159-2020, y el Artículo 166 (*Esclavitud*) del Código Penal de 2004, Ley 149-2004 (33 LPRA sec. 4794). No tiene antecedentes en el Código Penal de 1974, Ley Núm. 115 de 22 de julio de 1974 (1974 [Parte 1] Leyes de Puerto Rico 449).

**COMENTARIO:**

Para propósitos del Código Penal, se considera menor de edad cualquier persona que no haya cumplido 18 años. Refiérase a los Artículos 39 (*Minoridad*) (33 LPRA sec. 5062), 88 (*Delitos que no prescriben*) (33 LPRA sec. 5133) y 130 (Agresión sexual) (33 LPRA sec. 5191), entre

otros del Código Penal de 2012. La doctora Nevares-Muñiz aduce que desde el Código Penal de 2004 se aumentó la edad de protección para cubrir todo el periodo en que la persona sea menor de 18 años. D. Nevares-Muñiz, *Código Penal de Puerto Rico,* 4ta ed. rev., San Juan, Ed. Instituto para el Desarrollo del Derecho, 2019, págs. 194-195. A su vez, la Ley 159-2020 expresamente identifica como personas menores de edad a quienes tengan menos de 18 años.

### 9.7 Trata Humana con Fines de Explotación Sexual (Art. 160 del Código Penal de 2012)

Contra la persona acusada se ha presentado una acusación por el delito de Trata Humana con Fines de Explotación Sexual.

La ley dispone que comete este delito la persona que **[el tribunal debe referirse a la modalidad que aplique, según lo alegado en el pliego acusatorio:**

(a) reclute, persuada, albergue, transporte, provea, mantenga o retenga mediante fuerza, amenaza de fuerza, engaño, fraude, coacción, coerción, violencia, secuestro, abuso de poder o de autoridad, o valiéndose de cualquier otra situación de vulnerabilidad, a otra persona; con el propósito de someterla o a sabiendas de que será sometida, a una actividad sexual;

(b) obtenga cualquier tipo de beneficio de una actividad sexual, a sabiendas de que se obtuvo mediante fuerza, amenaza de fuerza, engaño, fraude, coacción, coerción, violencia, secuestro, abuso de poder o de autoridad, o valiéndose de cualquier otra situación de vulnerabilidad de la víctima;

(c) participe en una actividad sexual, a sabiendas de que medió fuerza, amenaza de fuerza, engaño, fraude, coacción, coerción, violencia, secuestro, abuso de poder o de autoridad, o valiéndose de cualquier otra situación de vulnerabilidad de la víctima.

**[El tribunal debe referirse solamente a la modalidad que aplique según lo alegado en el pliego acusatorio:**

### A. Primera modalidad

Los elementos de este delito son los siguientes:

(1) Reclutar, persuadir, albergar, transportar, proveer, mantener o retener a otra persona;

(2) mediante fuerza, amenaza de fuerza, engaño, fraude, coacción, coerción, violencia, secuestro, abuso de poder o de autoridad, o valiéndose de cualquier otra situación de vulnerabilidad;

(3) [con el propósito de someterla] [a sabiendas de que será sometida] a una actividad sexual.

### B. Segunda modalidad

Los elementos de este delito son los siguientes:

(1) Obtener cualquier tipo de beneficio de una actividad sexual,

(2) a sabiendas de que se obtuvo mediante fuerza, amenaza de fuerza, engaño, fraude, coacción, coerción, violencia, secuestro, abuso de poder o de autoridad, o valiéndose de cualquier otra situación de vulnerabilidad de la víctima.

### C. Tercera modalidad

Los elementos de este delito son los siguientes:

(1) Participar en una actividad sexual,

(2) a sabiendas de que medió fuerza, amenaza de fuerza, engaño, fraude, coacción, coerción, violencia, secuestro, abuso de poder o de autoridad, o valiéndose de cualquier otra situación de vulnerabilidad de la alegada víctima**]**.

**[El tribunal debe impartir la siguiente instrucción, refiriéndose solamente a la(s) circunstancia(s) que aplique(n) según lo alegado en el pliego acusatorio:**

Además, corresponde a ustedes determinar si:

(a) la actividad sexual implica pornografía infantil, incesto o agresión sexual;

(b) la persona que comete el acto es el padre, la madre, ascendiente, descendiente, cónyuge, hermano(a), encargado(a) o tutor(a) legal, encargado(a) de la educación, guarda o custodia de la alegada víctima;

(c) la alegada víctima es [menor de 18 años] [incapacitada mental o físicamente**]**.

Se considera como "actividad sexual" la prostitución, la pornografía, el matrimonio servil o forzado, bailes eróticos, embarazos forzados, y cualquier otro tipo de actividad de naturaleza sexual.

Se entiende por "fuerza" el uso de poder físico o agresión.

El término "fraude" implica la realización de un acto mediante ardid, simulación, trama o treta o mediante cualquier forma de engaño.

El "engaño" comprende el hacer creer algo que no es verdad. Es una forma de fraude que consiste en la realización de un acto mediante ardid, simulación, trama o treta.

"Secuestro" significa la utilización de fuerza, violencia, intimidación, fraude o engaño para sustraer, retener y ocultar a otra persona privándola de su libertad. La sustracción de la víctima debe ser por un tiempo o una distancia sustancial y no meramente incidental a la comisión de otro delito.

"Situación de vulnerabilidad" se refiere a las circunstancias o los factores personales, sociales, económicos o políticos que hacen o propician que algunas personas o grupo de personas estén en alto riesgo de ser víctimas de diversas modalidades de explotación.

**[El tribunal debe leer las definiciones y conceptos adicionales que correspondan según lo alegado en el pliego acusatorio].**

["Beneficio" es cualquier provecho, utilidad, ventaja, lucro o ganancia pecuniaria o material].

["Pornografía infantil" es cualquier representación de conducta sexual explícita, todo acto de masturbación, abuso sadomasoquista, relaciones sexuales reales o simuladas, relaciones sexuales desviadas, bestialismo, homosexualismo, lesbianismo, actos de sodomía o exhibición de los órganos genitales llevados a cabo por personas menores de 18 años].

[Son parientes ascendientes el padre, la madre, los(as) abuelos(as) y los(as) bisabuelos(as). Si estas personas fueran adoptadas, deben tratarse como si fueran parientes de sangre. Son parientes ascendientes las personas con quienes se hayan casado estos(as) parientes de sangre, tales como el padrastro, la madrastra y los(as) abuelastros(as). También lo será la familia política, tales como el(la) suegro(a) y los(as) abuelos(as) políticos(as)].

[Son parientes descendientes los(as) hijos(as), los(as) nietos(as) y los(as) bisnietos(as). Si estas personas fueran adoptadas, deben tratarse como si fueran parientes de sangre. Son parientes descendientes las personas con quienes se hayan casado estos(as) parientes de sangre y los(as) hijastros(as) y los(as) nietos(as) políticos(as). Igualmente lo será la familia política, tales como los(as) cuñados(as), los yernos y las nueras]**.**

[El consentimiento de una persona menor de 18 años a la actividad sexual no libera de responsabilidad por la comisión de este delito].

"A sabiendas" es sinónimo de "con conocimiento". Una persona actúa "con conocimiento" cuando es consciente de que la producción del resultado es una consecuencia prácticamente segura de su conducta o cuando es consciente de que la existencia de la circunstancia es prácticamente segura.

[Una persona actúa "a propósito" cuando su objetivo consciente es llevar a cabo un acto u omisión con el fin de obtener un resultado definido o cuando cree que una circunstancia existe].

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no con conocimiento [o a propósito]. Pueden inferir o deducir razonablemente de la prueba presentada y admitida el conocimiento [o el propósito]. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Trata Humana con Fines de Explotación Sexual.

**[El tribunal debe impartir la instrucción siguiente cuando aplique según lo alegado en el pliego acusatorio:**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí consideran que el Ministerio Público probó más allá de duda razonable que la persona cometió el delito de Trata Humana con Fines de Explotación Sexual, pero no que **[indique la(s) circunstancia(s) que aplique(n):**

(a) la actividad sexual implica pornografía infantil, incesto o agresión sexual;

(b) la persona que comete el acto es el padre, la madre, ascendiente, descendiente, cónyuge, hermano(a), encargado(a) o tutor(a) legal, encargado(a) de la educación, guarda o custodia de la alegada víctima;

(c) la alegada víctima es [menor de 18 años] [incapacitada mental o físicamente]**];**

deberán rendir un veredicto de culpable por el delito de Trata Humana con Fines de Explotación Sexual, sin esa circunstancia**].**

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Trata Humana con Fines de Explotación Sexual.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 14 (*Definiciones*), el Artículo 160 (*Trata humana con fines de explotación sexual*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5014 y 5226) y la Ley 159-2020, y el Artículo 166 (*Esclavitud*) del Código Penal de 2004, Ley 149-2004 (33 LPRA sec. 4794). No tiene antecedentes en el Código Penal de 1974, Ley Núm. 115 de 22 de julio de 1974 (1974 [Parte 1] Leyes de Puerto Rico 449).

**COMENTARIO:**

La trata humana es la explotación de un ser humano. El diccionario de la Real Academia Española define "explotación", en su acepción del término "explotar", como el acto de "[s]acar utilidad de un negocio o industria en provecho propio". *Diccionario de la lengua española*, 23ra ed., México, Ed. Espasa Libros, 2014, T. 1, pág. 994. Cónsono con ello, "[l]a trata humana es una modalidad delictiva en la que la víctima se convierte en el 'bien de valor o consumo', en la 'mercancía' mediante la cual los criminales devengan sus beneficios ilícitos, independientemente de que la trasladen o no del lugar en que se encuentre". M.A. Cassagnol Cornier, *Trata humana: Comparación del Art. 160 del Código Penal de Puerto Rico con la legislación federal, discusión de casos y otros apuntes*, 54 (Núm. 1) Rev. Der. Pur. 271, 281-282 (2015).

Existen distintas y variadas formas y modalidades de explotación de un ser humano. Algunas situaciones de vulnerabilidad que propician la explotación de seres humanos y algunas personas o grupo de personas que están en alto riesgo de ser víctimas de diversas modalidades de explotación incluyen:

- menores que han escapado de sus hogares, de hogares sustitutos o de centros de detención,
- menores sin escolaridad o desertores escolares,
- menores que trabajan en puntos de distribución y venta de drogas,
- deambulantes y personas sin hogar,
- disfunción y violencia familiar,
- víctimas de abuso sexual o incesto,
- alcoholismo y abuso de drogas,
- tráfico ilícito de migrantes,
- delincuencia y violencia social,
- desastres naturales (huracanes, tsunamis, terremotos),
- discrimen por género y discrimen por preferencia u orientación sexual,
- personas en estado de desamparo, pobreza extrema o miseria, y
- personas con discapacidad intelectual o incapacidad física o mental.

Las definiciones de "mendicidad" y "explotación" provienen del diccionario de la Real Academia Española. Por su parte, las definiciones de "engaño" y "fraude" provienen del Artículo 14(v) del Código Penal de 2012, *supra*, mientras que la definición de "beneficio" proviene del Artículo 14(h) del mismo Código, *supra*.

En torno a las modalidades agravadas de agresión sexual e incesto, refiérase a las instrucciones 8.1 y 8.2.

### 9.8    Demora en Examen del Arrestado (Art. 161 del Código Penal de 2012)

Contra la persona acusada se ha presentado una acusación por el delito de Demora en Examen del Arrestado.

La ley dispone que comete este delito todo funcionario público o persona que, habiendo arrestado a otra, la mantenga bajo custodia irrazonable e innecesariamente sin conducirlo ante un juez o una jueza. Para determinar la tardanza en conducir a una persona ante un juez o una jueza, se usará el criterio de tiempo razonable que requiere tal acto.

Los elementos de este delito son los siguientes:

(1) A propósito, con conocimiento o temerariamente,
(2) arrestar a una persona y mantenerla bajo custodia,

(3) demorarse o tardarse en llevarle ante un(a) juez(a) de forma innecesaria e irrazonable.

Corresponde a ustedes determinar si la tardanza en llevar a la persona arrestada ante un(a) juez(a) fue irrazonable e innecesaria.

Para evaluar la razonabilidad de la tardanza en llevar a la persona arrestada ante un(a) juez(a) o será necesario examinar el tiempo razonable que tal acto requiera en las circunstancias del caso.

**[El tribunal debe impartir esta Instrucción acompañada de la Instrucción 4.5].**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Demora en el Examen del Arrestado.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Demora en el Examen del Arrestado.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 161 (*Demora en examen del arrestado*) del Código Penal de 2012, Ley 146-2012 (33 LPRA sec. 5227); el Artículo 171 (*Demora en examen del arrestado*) del Código Penal de 2004, Ley 149-2004 (33 LPRA sec. 4799); el Artículo 132 (*Demora en examen del arrestado*) del Código Penal de 1974, Ley Núm. 115 de 22 de julio de 1974 (1974 [Parte 1] Leyes de Puerto Rico 488), y la Regla 22 (*Procedimiento ante el magistrado*) de Procedimiento Criminal de 1963 (34 LPRA Ap. II).

**COMENTARIO:**

El Artículo 161 del Código Penal de 2012 tipifica como delito el demorarse irrazonable e innecesariamente en llevar ante un juez o una jueza a una persona arrestada. En el segundo párrafo de dicho artículo se establece el criterio a utilizar para evaluar la razonabilidad de la tardanza en llevar al arrestado ante un juez o una jueza: el tiempo razonable que tal acto requiere.

La Dra. Dora Nevares-Muñiz, en su análisis editorial del Artículo 161, señala lo siguiente:

Para evaluar la razonabilidad de la tardanza por parte del sujeto activo en llevar al sujeto pasivo ante un juez, será necesario examinar el tiempo razonable que tal acto requiere. Esto lleva a evaluar cada caso individualmente para determinar cuál era el tiempo razonable para

llevar a la persona ante un juez en las circunstancias de ese caso. D. Nevares-Muñiz, *Código Penal de Puerto Rico*, 4ta ed. rev., San Juan, Ed. Instituto para el Desarrollo del Derecho, 2019, pág. 264.

La Regla 22 de Procedimiento Criminal, *supra*, dispone que la persona arrestada debe ser llevada sin demora innecesaria ante el (la) magistrado(a) más cercano(a). En *Pueblo v. Aponte*, 167 DPR 578 (2006), se resolvió que, a tenor de esta disposición y en ausencia de circunstancias extraordinarias, no debe transcurrir más de 36 horas desde el arresto para llevar a la persona ante un(a) jueza(a).

## B.    DE LOS DELITOS CONTRA EL DERECHO A LA INTIMIDAD

### 9.9    Grabación Ilegal de Imágenes (Art. 168 del Código Penal de 2012)

Contra la persona acusada se ha presentado una acusación por el delito de Grabación Ilegal de Imágenes.

La ley dispone que comete este delito la persona que, sin justificación legal o sin un propósito investigativo legítimo, utilice equipo electrónico o digital de video, con o sin audio, para realizar una vigilancia secreta en lugares privados o en cualquier otro lugar donde se reconozca una expectativa razonable de intimidad.

Los elementos de este delito son los siguientes:

(1) A propósito, con conocimiento o temerariamente,

(2) utilizar equipo electrónico o digital de video, con o sin audio,

(3) para realizar una vigilancia secreta en lugares privados o en cualquier otro lugar donde se reconozca una expectativa razonable de intimidad, sin justificación legal o propósito investigativo legítimo.

Una persona tiene una "expectativa razonable de intimidad" cuando hay un entendimiento general en la sociedad de que en ese lugar y en esas circunstancias existe un derecho a la protección de su vida íntima, es decir, a su privacidad.

**[El tribunal debe impartir esta Instrucción acompañada de la Instrucción 4.5].**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Grabación Ilegal de Imágenes.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada

cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Grabación Ilegal de Imágenes.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 168 (*Grabación ilegal de imágenes*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA sec. 5234); el Artículo 179 (*Grabación ilegal de imágenes*) del Código Penal de 2004, Ley 149-2004 (33 LPRA sec. 4808), y el Art. II, Secs. 1 y 8 de la Constitución del Estado Libre Asociado de Puerto Rico, LPRA, Tomo 1. No tiene antecedente en el Código Penal de 1974, Ley Núm. 155 de 22 de julio de 1974 (1974 [Parte 1] Leyes de Puerto Rico 449).

**COMENTARIO:**

La "expectativa razonable de intimidad" implica que:

- La persona exhibe una expectativa subjetiva de intimidad. No se trata de una simple reserva mental, sino de una conducta de actos afirmativos que demuestran, inequívocamente, la intención de alojar esa expectativa.
- La expectativa individual, así demostrada, es la que la sociedad reconoce como razonable.

La expectativa razonable de intimidad es el estándar que se utiliza al ponderar los reclamos de transgresión al derecho a la intimidad. El derecho a la intimidad es fundamental en nuestro ordenamiento constitucional y opera por fuerza propia (*ex propio vigore*). Tal y como ordena nuestra Constitución, el Estado está obligado a proteger a la persona de ataques a su honra y a su reputación cuando alguna persona intenta entrometerse en su vida privada y no respetar su expectativa a la intimidad. En *Pueblo v. Lebrón*, 108 DPR 324, 333-334 (1979), el Tribunal Supremo de Puerto Rico expresó lo siguiente:

> En torno al derecho a la vida íntima (privacidad) gira la protección constitucional provista tanto en la Cuarta Enmienda de la Constitución Federal como en la correspondiente Sec. 10, Art. II de la nuestra, contra registros y arrestos arbitrarios. Es premisa fundamental del concepto de privacidad que la misma no se extiende hasta donde quiera llevarla el individuo, sino que su expectativa se circunscribe al ámbito que un pueblo libre pueda legítimamente aceptar. No basta con que la persona haya exteriorizado una concreta aunque subjetiva expectativa de privacidad; es necesario que ésta tenga la calidad de aprobación general, que sea, en la frase del Juez Harlan "una que la sociedad está preparada para reconocer como 'razonable'." Opinión concurrente en *Katz* v. *United States*, 389 U.S. 347 (1967), a la pág. 361. "... La Corte sostuvo en *Katz* que la capacidad para invocar protección de la Enmienda Cuarta no depende de un derecho de propiedad en el sitio invadido, sino de la legítima expectativa de privacidad que en dicho sitio tenga la persona que reclama protección." (Escolio omitido).

Se añade en la misma opinión que "[l]a zona en la cual pueda la persona reclamar protección de su vida íntima no es [un] área delimitada con hitos inconfundibles, mas sí está restringida por los usos y costumbres que en la convivencia social forjan el concepto de lo que es

intimidad". Íd., pág. 335. Véase, además, *López Tristani v. Maldonado*, 168 DPR 838, 852 (2006), donde se reiteran los elementos que deben considerarse al evaluar una alegación de violación a la intimidad. Citando a *Pueblo v. Santiago Feliciano*, 139 DPR 361, 384 (1995), el Tribunal determinó que "es necesario que concurran dos elementos: (1) el subjetivo, mediante el cual el reclamante, según las circunstancias del caso, alberga una expectativa real de que su intimidad se respete, y (2) el criterio objetivo, es decir, si la sociedad considera razonable tener tal expectativa". *López Tristani v. Maldonado*, supra, pág. 852.

Valga recordar también las expresiones del Tribunal Supremo en *Pueblo v. Rivera Colón*, 128 DPR 672 (1991), respecto al análisis empleado para determinar si una entrada de agentes constituye un registro irrazonable y los cuatro factores para determinar la extensión del área circundante de una residencia (*curtilage*). Así, nuestro más alto Foro concluyó que "es razonable pensar que la expectativa de intimidad en el interior de una residencia es mayor y aumenta si las ventanas están entreabiertas o cerradas". Íd., pág. 687.

Para fines de la definición de "propósito investigativo legítimo", vale recordar que la Regla 304(2) de Evidencia establece una presunción de que "[t]odo acto ilegal fue cometido con intención ilegal". 32 LPRA Ap. VI.

CAPÍTULO 10
**DELITOS CONTRA LA PROPIEDAD**

**A.     DE LAS APROPIACIONES ILEGALES**

**10.1   Apropiación Ilegal Agravada (Art. 182 del Código Penal de 2012)**

Contra la persona acusada se ha presentado una acusación por el delito de Apropiación Ilegal Agravada.

La ley dispone que toda persona que ilegalmente se apropie, sin violencia ni intimidación, a propósito, con conocimiento o temerariamente, de bienes muebles pertenecientes a otra persona, comete el delito de Apropiación Ilegal.

En este caso, se acusa a la persona específicamente según la(s) siguiente(s) modalidad(es) **[especifique solamente la(s) que aplique(n) según lo alegado en el pliego acusatorio]**:

(1) Tomar o sustraer un bien sin el consentimiento del dueño o

(2) apropiarse o disponer de un bien que se haya recibido en depósito, comisión o administración, o por otro título que produzca obligación de entregarlos o devolverlos, o

(3) inducir mediante engaño a otra persona a realizar un acto de disposición de un bien.

Además, corresponde a ustedes determinar si **[refiérase solamente a la(s) circunstancia(s) que aplique(n) conforme al pliego acusatorio]**:

(a) se apropió de propiedad o fondos públicos sin ser un funcionario(a) o empleado(a) público(a);

(b) se apropió de bienes muebles cuyo valor sea de $10,000 o más o

(c) se apropió de bienes muebles cuyo valor sea menor de $10,000, pero mayor de $500.

Corresponde a ustedes, miembros del Jurado, determinar si se probó más allá de duda razonable los elementos anteriormente descritos y si el bien apropiado ilegalmente es **[especifique la(s) circunstancia(s) agravante(s) que aplique(n)]**:

(i)   ganado vacuno (relativo a la cría de toros y vacas)

(ii)  caballos

(iii) cerdos

(iv) conejos u ovejas

(v)  frutos o cosechas

(vi) aves

(vii) peces

(viii) mariscos

(ix) abejas

(x) animales domésticos o exóticos

(xi) maquinarias e implementos agrícolas que se encuentren en una finca agrícola o en un establecimiento para la producción o crianza de animales

(xii) cualquier otra maquinaria o implementos agrícolas que se encuentren en una finca privada, empresas o establecimiento agrícola

(xiii) cualquier artículo, instrumentos o piezas de maquinaria que se utilicen para esos fines.

"Apropiar" incluye malversar, defraudar, ejercer control ilegal, usar, sustraer, apoderarse o, en cualquier forma, hacer propio cualquier bien o cosa que no le pertenece en forma temporal o permanente.

"Ilegalmente" se define como todo acto en contravención de alguna ley, norma, reglamento, ordenanza u orden promulgada por una autoridad competente del gobierno en el ejercicio de sus funciones.

"Bienes muebles" incluye dinero, mercancías, semovientes (esto es, que se mueve por sí mismo), equipos, aparatos, sistemas de información y comunicación, servicios, vehículos de motor o cualquier objeto de locomoción, energía eléctrica, gas, agua u otro fluido, ondas, señales de comunicación móviles o electrónicas, números de identificación en soporte papel o electrónico, o cosas cuya posesión pueda pedirse en juicio, como comprobantes de crédito, documentos, o cualquier otro objeto susceptible de apropiación.

Para que se configure el delito no es necesario que la persona se lucre o se aproveche del bien mueble apropiado.

**[Cuando se presente prueba en torno al derecho de retención, se debe leer el párrafo siguiente:**

Quien fue contratado para ejecutar una obra o trabajo en un bien mueble, y así lo ha hecho, tiene el derecho a retenerlo hasta que se le pague lo acordado, por lo que no comete el delito de Apropiación Ilegal al hacerlo así**].**

**[Cuando se trate de Apropiación Ilegal de un bien mueble que no es un comprobante de crédito o algún documento, se le debe leer el párrafo siguiente:**

Para determinar el grado del delito, la valoración monetaria del bien se hará tomando en consideración su valor en el mercado y se presumirá el precio marcado**].**

**[Cuando se trate de Apropiación Ilegal de algún comprobante de crédito o algún documento, se leerá el párrafo siguiente:**

Si el bien apropiado es un comprobante de crédito o un documento, la suma de dinero representada o asegurada o el valor de la propiedad cuyo título justifique el documento constituye el valor de la cosa apropiada**].**

**[Cuando se trate de Apropiación Ilegal de fondos públicos, se debe leer el párrafo siguiente:**

Cuando la propiedad o los fondos apropiados pertenezcan al Pueblo de Puerto Rico (fondos públicos), no importa el valor monetario.

"Fondos públicos" incluye dinero, bonos u obligaciones, valores, sellos, comprobantes de rentas internas, comprobantes de deudas y propiedad perteneciente al gobierno del Estado Libre Asociado de Puerto Rico, sus departamentos, agencias, juntas y demás dependencias, corporaciones públicas y sus subsidiarias, los municipios y las divisiones políticas. También incluye el dinero recaudado por personas o entidades privadas que, mediante acuerdo o por autoridad de ley, realizan gestiones de cobro de patentes, derechos, impuestos, contribuciones, servicios o del dinero que se adeude al Estado Libre Asociado de Puerto Rico por cualquier otra obligación o cualquier otra gestión, o para el cobro de sellos o derechos para instrumentos públicos o documentos notariales.

Cuando se trate de bonos, obligaciones, valores y comprobantes de deuda, el término incluye no solo el documento que evidencie la obligación, sino también el dinero, los bonos, los valores o las obligaciones que se obtengan como producto de la emisión, compra, ejecución, financiamiento, refinanciamiento o por cualquier otra transacción**].**

**[El tribunal debe impartir esta Instrucción acompañada de la Instrucción 4.5].**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Apropiación Ilegal Agravada.

Si ustedes consideran, luego de un análisis cuidadoso de toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, que el Ministerio Público probó más allá de duda razonable la comisión del delito de Apropiación Ilegal pero no que **[indique la(s) circunstancia(s) que aplique(n):**

> (a) se apropió de propiedad o fondos públicos sin ser funcionario(a) o empleado(a) público(a);
> (b) se apropió de bienes muebles cuyo valor sea de $10,000 o más;
> (c) se apropió de bienes muebles cuyo valor sea menor de $10,000 pero mayor de $500,**]**

**[indique, además, la(s) circunstancia(s) agravante(s), si alguna]** deberán rendir un veredicto de culpable por el delito de [Apropiación Ilegal menos grave] [Apropiación Ilegal Agravada sin esa circunstancia].

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable.

**REFERENCIA:**

Esta Instrucción proviene de las Instrucciones 12.1 y 12.1.1 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con el Artículo 14 (*Definiciones*), el Artículo 181 (*Apropiación ilegal*), el Artículo 182 (*Apropiación ilegal agravada*), el Artículo 183 (*Determinación de valor de documentos de crédito*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 y la Ley 27-2017 (33 LPRA secs. 5014, 5251-5253); el Artículo 192 (*Apropiación ilegal*), el Artículo 193 (*Apropiación ilegal agravada*), el Artículo 194 (*Determinación de valor de documentos de crédito*) del Código Penal de 2004, Ley 149-2004 (33 LPRA secs. 4820-4822); el Artículo 165 (*Apropiación ilegal*), el Artículo 166 (*Apropiación ilegal agravada*), y el Artículo 167 (*Determinación de valor de documentos de crédito*) del Código Penal de 1974, Ley Núm. 115 de 22 de julio de 1974 (1974 [Parte 1] Leyes de Puerto Rico 499). Véanse *Pueblo v. Bonilla Peña*, 183 DPR 335 (2011); *Pueblo v. Santana Vélez*, 177 DPR 61 (2009); *Pueblo v. Ayala,* 163 DPR 835 (2005); *Pueblo v. Miranda Ortiz*, 117 DPR 188 (1986); *El Pueblo v. Santiago*, 28 DPR 234 (1920).

**COMENTARIO:**

La referencia del derecho de retención proviene del Artículo 1492 del Código Civil de Puerto Rico, 31 LPRA sec. 4133, conforme se aplica en *Pueblo v. Miranda Ortiz*, supra, pág. 195. La mención del valor en el mercado proviene de la opinión emitida en *Pueblo v. Ayala*, supra. Por su parte, la definición de "fondos públicos" proviene del Artículo 14 del Código Penal, 33 LPRA sec. 5014(u).

## 10.2 Ratería o Hurto de Mercancía en Establecimientos Comerciales (Art. 184 del Código Penal de 2012)

**[El tribunal solo debe impartir esta Instrucción cuando el caso, aun siendo menos grave, conllevara una pena de 3 años a causa de que la persona acusada haya sido convicta por el mismo delito].**

Contra la persona acusada se ha presentado una acusación por el delito de Ratería o Hurto de Mercancía en Establecimientos Comerciales.

La ley dispone que incurre en este delito la persona que, con el propósito de apropiarse ilegalmente de la mercancía de un establecimiento comercial, para sí o para otra persona, sin pagar el precio estipulado por el comerciante, cometa cualquiera de los actos siguientes:

(1) Oculte la mercancía en su persona, cartera, bolso, bultos u otro objeto similar o en la persona de una persona menor de edad, envejeciente, impedida o incapacitada bajo su control.

(2) Altere o cambie el precio adherido a la mercancía mediante etiqueta, barra de código o cualquier otra marca que permita determinar el precio de venta.

(3) Cambie la mercancía de un envase a otro que refleje un precio distinto.

(4) Remueva la mercancía de un establecimiento comercial.

(5) Ocasione que la caja registradora o cualquier instrumento que registre las ventas refleje un precio más bajo que el marcado.

El establecimiento comercial donde esté la mercancía deberá encontrarse abierto al público general, dentro del horario establecido para ofrecer servicios.

Una persona actúa "a propósito" cuando su objetivo consciente es llevar a cabo un acto u omisión con el fin de obtener un resultado definido o cuando cree que una circunstancia existe.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no a propósito. Pueden inferir o deducir razonablemente de la prueba presentada y admitida el propósito de apropiarse ilegalmente de mercancía de un establecimiento comercial. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona.

**[Cuando la persona acusada no acepte una condena previa por el mismo delito, el tribunal debe leer el párrafo siguiente:**

Además, corresponde a ustedes determinar si la persona acusada fue convicta anteriormente por el mismo delito].

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Ratería o Hurto de Mercancía en Establecimientos Comerciales.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Ratería o Hurto de Mercancía en Establecimientos Comerciales.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 12.1.2 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*), el Artículo 22 (*Elementos subjetivos del delito*), el Artículo 184 (*Ratería o hurto de mercancía en establecimientos comerciales*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 y la Ley 27-2017 (33 LPRA secs. 5034, 5035 y 5254); el Artículo 195 (*Ratería o hurto de mercancía en establecimientos comerciales*) del Código Penal de 2004, Ley 149-2004 (33 LPRA sec. 4823), y el Artículo 165C (*Ratería o hurto de mercancía en establecimientos comerciales*) del Código Penal de 1974, según enmendado por la Ley 249-1999, (33 LPRA sec. 4271c). Véanse, además, Reglas 48

(*Alegación de convicción anterior*) y 68 (*Alegaciones*) de Procedimiento Criminal de 1963 (34 LPRA Ap. II).

**COMENTARIO:**

En el Código Penal de 2012 se incluyó la pena de 3 años cuando la persona acusada haya sido convicta por ese mismo delito. Ese hecho, luego de ser correctamente alegado por el Ministerio Público, le confiere el derecho a un juicio por jurado. Posteriormente, al amparo de la Ley Núm. 27-2017, que enmienda el Código Penal de 2012, se especificó que el delito es menos grave con una pena de tres años.

### 10.3   Interferencia con Contadores y Sistemas de Distribución (Art. 185 del Código Penal de 2012)

Contra la persona acusada se ha presentado una acusación por el delito de Interferencia con Contadores y Sistemas de Distribución.

La ley dispone que comete este delito la persona que, a propósito, con conocimiento o temerariamente, altere, interfiera u obstruya el medidor o contador de agua, gas, electricidad u otro fluido con el propósito de defraudar a otro.

Los elementos de este delito son los siguientes:

(1) A propósito, con conocimiento o temerariamente,

(2) alterar, interferir u obstruir un medidor o contador de agua, gas, electricidad u otro fluido

(3) con el propósito de defraudar a otro.

Una persona actúa "a propósito" cuando su objetivo consciente es llevar a cabo un acto u omisión con el fin de obtener un resultado definido o cuando cree que una circunstancia existe.

Una persona actúa con "conocimiento" cuando es consciente de que la producción del resultado o la existencia de la circunstancia prohibida por ley es prácticamente segura.

Una persona actúa "temerariamente" cuando es consciente de que su conducta genera un riesgo sustancial e injustificado de que se produzca un resultado o la circunstancia prohibida por ley, y a pesar de conocer el riesgo, la persona continúa con su acción u omisión. Al evaluar si era consciente del riesgo, deberán determinar si había previsto la posibilidad de que existiese ese riesgo. Al momento de evaluar si un riesgo fue sustancial, deberán considerar la probabilidad de que se produjera el resultado o la circunstancia prohibida por ley. Al evaluar si un riesgo fue injustificado, deberán considerar lo que motivó a la persona a asumir el riesgo.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no a propósito, con conocimiento o temerariamente. Pueden inferir o deducir razonablemente de la prueba presentada y admitida el propósito, el conocimiento o la temeridad a base de las

circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

"Defraudar" es un acto que se comete mediante ardid, simulación o treta, o mediante cualquier forma de engaño.

Se considera como una alteración, interferencia u obstrucción, cualquier cambio, alteración, modificación, conexión o desconexión de cualquier medidor o contador cubierto por este artículo o de cualquier pieza, parte, elemento o componente de dicho medidor o contador, así como la remoción o instalación de cualesquiera equipos, mecanismos, artefactos, componentes, piezas o elementos ajenos o extraños a dicho medidor o contador en su estado normal u original, o que tengan el efecto de modificar o alterar el funcionamiento adecuado y correcto de este o la medición veraz o certera del suministro o consumo del fluido en cuestión, o que vaya dirigida a dar una lectura o medición falsa, alterada o engañosa del consumo real de dicho fluido o de la cantidad de dinero adecuada por dicho suministro o consumo.

Este delito también incluye la alteración, interferencia u obstrucción del sistema y de las vías de suministro y distribución de agua, gas, electricidad u otro fluido, con el propósito de defraudar a otro o para impedir la medición correcta o evitar el pago del consumo real por estos servicios esenciales.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Interferencia con Contadores y Sistemas de Distribución.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Interferencia con Contadores y Sistemas de Distribución.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 14 (*Definiciones*), el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*), el Artículo 22 (*Elementos subjetivos del delito*), el Artículo 185 (*Interferencia con contadores y sistema de distribución*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 y la Ley 8-2016 (33 LPRA secs. 5014, 5034, 5035 y 5255); el Artículo 196 (*Interferencia con contadores*) del Código Penal de 2004, Ley 149-2004 (33 LPRA sec. 4824), y el Artículo 169 (*Interferencia fraudulenta con contadores, o aparatos de comunicación*) del Código Penal de 1974, Ley Núm. 115 de 22 de julio de 1974 (1974 [Parte 1] Leyes de Puerto Rico 500). Véase *Pueblo v. Calderón Álvarez*, 140 DPR 627 (1996).

**10.4 Uso o Interferencia con Equipo y Sistema de Comunicación o Difusión de Televisión por Paga (Art. 186 del Código Penal de 2012)**

Contra la persona acusada se ha presentado una acusación por el delito de Uso o Interferencia con Equipo y Sistema de Comunicación o Difusión de Televisión por Paga.

La ley dispone que comete este delito la persona que venda, instale, use, altere, modifique, interfiera u obstruya cualquier equipo, aparato o sistema de comunicación, información, de cable televisión, de televisión por satélite, o de televisión sobre protocolo de Internet con el propósito de defraudar a otra y para obtener un beneficio, lucro o ganancia económica o material.

Los elementos de este delito son los siguientes:

(1) Vender, instalar, usar, alterar, modificar, interferir u obstruir cualquier equipo, aparato o sistema de comunicación, de información, de cable televisión, de televisión por satélite o de televisión sobre protocolo de Internet,

(2) con el propósito de defraudar a otra, y

(3) para obtener un beneficio, lucro o ganancia económica o material.

"Defraudar" es un acto que se comete mediante ardid, simulación o treta, o mediante cualquier forma de engaño.

Una persona actúa "a propósito" cuando su objetivo consciente es llevar a cabo un acto u omisión con el fin de obtener un resultado definido o cuando cree que una circunstancia existe.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no a propósito. Pueden inferir o deducir razonablemente de la prueba presentada y admitida el propósito de defraudar. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Uso o Interferencia con Equipo y Sistema de Comunicación o Difusión de Televisión por Paga.

Si ustedes consideran, luego de un análisis cuidadoso de toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, que el Ministerio Público probó más allá de duda razonable la comisión del delito pero no que se vendió, instaló o realizó el acto con el propósito de obtener un beneficio, lucro o ganancia económica o material, deberán rendir un veredicto de culpable por el delito de Uso o Interferencia con Equipo y Sistema de Comunicación o Difusión de Televisión por Paga sin esa circunstancia.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Uso o Interferencia con Equipo y Sistema de Comunicación o Difusión de Televisión por Paga.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 14 (*Definiciones*), el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*), el Artículo 22 (*Elementos subjetivos del delito*), el Artículo 186 (*Uso o interferencia con equipo y sistema de comunicación o difusión de televisión por paga*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5014, 5034, 5035 y 5256); el Artículo 197 (*Uso o interferencia con equipo y sistema de comunicación*) del Código Penal de 2004, Ley 149-2004 (33 LPRA sec. 4825); el Artículo 169 (*Interferencia fraudulenta con contadores, o aparatos de comunicación*), el Artículo 169A (*Interceptación de comunicación inalámbrica*), y el Artículo 169(B) (*Fraude en la comunicación alámbrica*) del Código Penal de 1974, Ley Núm. 115 de 22 de julio de 1974, según enmendado por la Ley 214-1996.

## 10.5   Operación Ilegal de Cualquier Aparato de Grabación o Transferencia de Imágenes y Sonido (Art. 187 del Código Penal de 2012)

Contra la persona acusada se ha presentado una acusación por el delito de Operación Ilegal de Cualquier Aparato de Grabación o Transferencia de Imágenes y Sonido.

La ley dispone que comete este delito la persona que, para grabar o transferir la película u obra cinematográfica que en ese momento se exhiba o proyecte, opere un aparato de grabación o transferencia de imágenes y sonidos en un teatro de películas cinematográficas o en cualquier otro lugar en donde se proyecte o exhiba la película, sin la autorización legal correspondiente.

Los elementos de este delito son los siguientes:

(1) A propósito, con conocimiento o temerariamente,

(2) operar un aparato de grabación de imágenes y sonido en un teatro de películas cinematográficas, o en cualquier otro lugar en donde se proyecte o exhiba la película, para grabar o transferir la película u obra cinematográfica que en ese momento se exhiba o proyecte,

(3) sin la autorización legal correspondiente.

"Ilegal" es todo acto en contravención de alguna ley, norma, reglamento, ordenanza u orden promulgada por una autoridad competente del gobierno en el ejercicio de sus funciones.

"Aparato de grabación o transferencia de imágenes o sonidos" es cualquier equipo con la capacidad de grabar o transmitir una película o parte de esta por los medios tecnológicos actuales o que puedan desarrollarse en el futuro.

"Teatro de películas cinematográficas" incluye el teatro de películas, cuarto de proyección o cualquier otro lugar que se use principalmente para la exhibición de una película cinematográfica.

**[El tribunal debe impartir esta Instrucción acompañada de la Instrucción 4.5].**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Operación Ilegal de Cualquier Aparato de Grabación o Transferencia de Imágenes y Sonido.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Operación Ilegal de Cualquier Aparato de Grabación o Transferencia de Imágenes y Sonido.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 14 (*Definiciones*), el Artículo 187 (*Operación ilegal de cualquier aparato de grabación o transferencia de imágenes y sonido*) del Código Penal de 2012, Ley 146-2012 (33 LPRA secs. 5014 y 5257) y el Artículo 197-A (*Operación ilegal de cualquier aparato de grabación*) del Código Penal de 2004, Ley 149-2004 (33 LPRA sec. 4825a). No tiene antecedentes en el Código Penal de 1974, Ley Núm. 115 de 22 de julio de 1974 (1974 [Parte 1] Leyes de Puerto Rico 449).

**COMENTARIO:**

Las definiciones de los términos que se emplean en esta Instrucción provienen del Artículo 14 del Código Penal de 2012, *supra*.


## 10.6   Reproducción y Venta sin el Nombre y la Dirección Legal del Fabricante (Art. 188 del Código Penal de 2012)

Contra la persona acusada se ha presentado una acusación por el delito de Reproducción y Venta sin el Nombre y la Dirección Legal del Fabricante.

La ley dispone que comete este delito la persona que, a propósito o con conocimiento y para obtener un beneficio económico personal o comercial, promueva, ofrezca para la venta, venda, alquile, transporte o induzca a la venta, reventa o tenga en su posesión con el

propósito de distribuir una película, obra audiovisual o cinematográfica que en su cubierta, etiqueta, rotulación o envoltura no exprese en una forma clara o prominente el nombre y la dirección legal de fabricante.

Los elementos de este delito son los siguientes:

(1) A propósito o con conocimiento,

(2) y para obtener un beneficio económico personal o comercial,

(3) promueva, ofrezca para la venta, venda, alquile, transporte, induzca a la venta o revenda, o posea con el propósito de distribuir, una película, obra audiovisual o cinematográfica y

(4) que la cubierta, etiqueta, rotulación o envoltura no exprese de forma clara o prominente el nombre y la dirección legal del fabricante.

"Fabricante" es la entidad que autoriza la duplicación de la película, obra audiovisual o cinematográfica, pero no incluye al fabricante del estuche o de la envoltura en donde se habrá de guardar la película, obra audiovisual o cinematográfica.

"Nombre y dirección legal" se refiere al nombre y dirección verdaderos del fabricante que haya autorizado la duplicación de dicha película, obra audiovisual o cinematográfica.

"Obra audiovisual" es un medio tangible en el cual los sonidos y las imágenes son grabados o almacenados, incluyendo cintas de vídeo originales, discos de vídeo digitales, películas o cualquier otro medio en existencia o a ser desarrollado en el futuro, y en donde los sonidos y las imágenes están grabados o puedan ser grabados o almacenados, ya en una copia o reproducción total o parcial, duplicando el original.

Una persona actúa "a propósito" cuando su objetivo consciente es llevar a cabo un acto u omisión con el fin de obtener un resultado definido o cuando cree que una circunstancia existe.

Una persona actúa con "conocimiento" cuando es consciente de que la producción del resultado o la existencia de la circunstancia prohibida por ley es prácticamente segura.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no a propósito o con conocimiento. Pueden inferir o deducir razonablemente de la prueba presentada y admitida el propósito o el conocimiento a base de las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Reproducción y Venta sin el Nombre y la Dirección Legal del Fabricante.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran

que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Reproducción y Venta sin el Nombre y la Dirección Legal del Fabricante.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 14 (*Definiciones*), el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*), el Artículo 22 (*Elementos subjetivos del delito*), el Artículo 188 (*Reproducción y venta sin el nombre y dirección legal del fabricante*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5014, 5034, 5035 y 5258) y el Artículo 197-B (*Reproducción y venta sin el nombre y dirección legal del fabricante*) del Código Penal de 2004, Ley 149-2004 (33 LPRA sec. 4825b). No tiene antecedentes en el Código Penal de 1974, Ley Núm. 115 de 22 de julio de 1974 (1974 [Parte 1] Leyes de Puerto Rico 4497).

**COMENTARIO:**

Las definiciones de los términos que se emplean en esta Instrucción provienen del Artículo 14 del Código Penal de 2012, *supra*.


**B. DE LOS ROBOS**

### 10.7 Robo (Art. 189 del Código Penal de 2012)

Contra la persona acusada se ha presentado una acusación por el delito de Robo.

La ley dispone que comete este delito la persona que se apropie ilegalmente de bienes muebles pertenecientes a otra, sustrayéndolos de su inmediata presencia y contra su voluntad, por medio de violencia o intimidación, o que, inmediatamente después de cometido el hecho, emplee violencia o intimidación para retener la cosa apropiada.

**[El tribunal debe impartir la instrucción de acuerdo con la modalidad que aplique según lo alegado en el pliego acusatorio:**

#### A. Robo mediante violencia o intimidación

En este caso, el Ministerio Público presentó una acusación por el delito de Robo mediante violencia o intimidación.

Los elementos de este delito son los siguientes:

(1) A propósito, con conocimiento o temerariamente,

(2) apropiarse ilegalmente de bienes muebles pertenecientes a otra persona,

(3) sustrayéndolos de su inmediata presencia y contra su voluntad y

(4) con violencia o intimidación.

## B. Robo mediante el uso de violencia o intimidación para retener el bien mueble

En este caso, el Ministerio Público presentó una acusación por Robo mediante el uso de violencia o intimidación para retener el bien.

Los elementos de este delito son los siguientes:

(1) A propósito, con conocimiento o temerariamente,

(2) apropiarse ilegalmente de bienes muebles pertenecientes a otra persona,

(3) inmediatamente después utilizar violencia o intimidación para retener lo apropiado**].**

"Violencia" significa el empleo de fuerza física sobre una persona.

"Intimidación" consiste en infundir miedo o temor por medio de amenazas. Existe la intimidación si mediante palabras, conducta o circunstancias se crea en la mente de la víctima el temor del peligro. La intimidación puede ser ocasionada, entre otras, por cualquiera de las causas siguientes:

(a) El temor de algún daño a la persona o a los bienes de la víctima, o de alguno de sus parientes o miembros de su familia.

(b) El temor de algún daño inmediato o ilícito a la persona o a los bienes de cualquiera de quienes se encuentren en la compañía de la víctima al tiempo de cometerse el delito.

"Apropiar" incluye malversar, defraudar, ejercer control ilegal, usar, sustraer, apoderarse o, en cualquier forma, hacer propio cualquier bien o cosa que no le pertenece, en forma temporal o permanente.

"Ilegalmente" se define como todo acto en contravención de alguna ley, norma, reglamento, ordenanza u orden promulgada por una autoridad competente del gobierno en el ejercicio de sus funciones.

"Bienes muebles" incluye dinero, mercancías, semovientes, equipos, aparatos, sistemas de información y comunicación, servicios, vehículos de motor o cualquier objeto de locomoción, energía eléctrica, gas, agua u otro fluido, ondas, señales de comunicación móviles o electrónicas, números de identificación en soporte papel o electrónico, o cosas cuya posesión pueda pedirse en juicio, como comprobantes de crédito, documentos o cualquier otro objeto susceptible de apropiación.

Aunque la ley exige que la sustracción o apropiación se realice por medio de la violencia o de la intimidación, no es necesario que se empleen ambas. Basta con el empleo de una sola, la violencia o la intimidación, para que se entienda cometido el delito si se han probado los otros elementos.

**[El tribunal debe impartir esta Instrucción acompañada de la Instrucción 4.5].**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Robo.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Robo.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 12.2 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con el Artículo 14 (*Definiciones*), el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*), el Artículo 22 (*Elementos subjetivos del delito*), el Artículo 189 (*Robo*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5014, 5034, 5035 y 5259); el Artículo 198 (*Robo*) del Código Penal de 2004, Ley 149-2004 (33 LPRA sec. 4826), el Artículo 173 (*Robo*) y el Artículo 174 (*Formas de intimidación en robo*) del Código Penal de 1974, Ley Núm. 115 de 22 de julio de 1974 (1974 [Parte 1] Leyes de Puerto Rico 501). Véanse *Pueblo v. Batista Montañez*, 113 DPR 307 (1982); *Pueblo v. Lucret Quiñones*, 111 DPR 716 (1981).

**COMENTARIO**:

Si la prueba lo justifica, el tribunal debe impartir la Instrucción 10.1 sobre Apropiación Ilegal Agravada.

## 10.8   Robo Agravado (Art. 190 del Código Penal de 2012)

**[El tribunal debe impartir la instrucción de acuerdo con la modalidad que aplique según lo alegado en el pliego acusatorio].**

### A.  Robo mediante violencia o intimidación

Contra la persona acusada se ha presentado una acusación por el delito de Robo Agravado.

La ley dispone que comete este delito la persona que se apropie ilegalmente de bienes muebles pertenecientes a otra, sustrayéndolos de su inmediata presencia y contra su voluntad, por medio de violencia o intimidación, o que, inmediatamente después de cometido el hecho, emplee violencia o intimidación para retener la cosa apropiada. El delito de Robo se considera Agravado cuando **[el tribunal debe referirse a la(s) circunstancia(s) que aplique(n) según lo alegado en el pliego acusatorio:**

(a) para cometer el delito utilizó un menor que no ha cumplido 18 años,

(b) el bien objeto del delito es un vehículo de motor,

(c) en el curso del robo se le infligió daño físico a la víctima,

(d) el delito ocurrió en un edificio ocupado donde estaba la víctima o en cualquier otro lugar donde esta tenía una expectativa razonable de intimidad,

(e) se utilizó un arma de fuego en la comisión del delito,

(f) la víctima fue amarrada, amordazada o se limitó su libertad de movimiento durante la comisión del delito**].**

Los elementos de este delito son los siguientes:

(1) A propósito, con conocimiento o temerariamente,

(2) apropiarse ilegalmente de bienes muebles pertenecientes a otra persona,

(3) sustrayéndolos (removiéndolos) de su inmediata presencia y contra su voluntad

(4) con violencia o intimidación y

(5) **[el tribunal debe referirse a la(s) circunstancia(s) que aplique(n) según lo alegado en el pliego acusatorio:**

(a) para cometer el delito utilizó un menor que no ha cumplido 18 años,

(b) el bien objeto del delito es un vehículo de motor,

(c) en el curso del robo se le infligió daño físico a la alegada víctima,

(d) el delito ocurrió en un edificio ocupado donde estaba la alegada víctima o en cualquier otro lugar donde esta tenía una expectativa razonable de intimidad,

(e) se utilizó un arma de fuego en la comisión del delito,

(f) la alegada víctima fue amarrada, amordazada o se limitó su libertad de movimiento durante la comisión del delito**].**

"Violencia" significa el empleo de fuerza física sobre una persona.

"Intimidación" consiste en infundir miedo o temor por medio de amenazas. Existe la intimidación si mediante palabras, conducta o circunstancias se crea en la mente de la víctima el temor del peligro. La intimidación puede ser ocasionada, entre otras, por cualquiera de las causas siguientes:

(a) El temor de algún daño a la persona o a los bienes de la víctima, o de alguno de sus parientes o miembros de su familia.

(b) El temor de algún daño inmediato o ilícito a la persona o a los bienes de cualquiera de quienes se encuentren en la compañía de la víctima al tiempo de cometerse el delito.

"Apropiar" incluye malversar, defraudar, ejercer control ilegal, usar, sustraer, apoderarse o, en cualquier forma, hacer propio cualquier bien o cosa que no le pertenece, en forma temporal o permanente.

"Ilegalmente" se define como todo acto en contravención de alguna ley, norma, reglamento, ordenanza u orden promulgada por una autoridad competente del gobierno en el ejercicio de sus funciones.

"Bienes muebles" incluye dinero, mercancías, semovientes, equipos, aparatos, sistemas de información y comunicación, servicios, vehículos de motor o cualquier objeto de locomoción, energía eléctrica, gas, agua u otro fluido, ondas, señales de comunicación móviles o electrónicas, números de identificación en soporte papel o electrónico, o cosas cuya posesión pueda pedirse en juicio, como comprobantes de crédito, documentos o cualquier otro objeto susceptible de apropiación.

Aunque la ley exige que la sustracción o apropiación se realice por medio de la violencia o de la intimidación, no es necesario que se empleen ambas. Basta con el empleo de una sola, la violencia o la intimidación, para que se entienda cometido el delito si es que se han probado los otros elementos.

["Arma de fuego" es cualquier arma, sin importar el nombre, que sea capaz de lanzar un proyectil o proyectiles por acción de una explosión. El término arma de fuego incluye, pero no se limita a, pistola, revolver, escopeta, rifle, carabina, incluyendo el marco, armazón o el receptor donde el manufacturero coloca el número de serie de tales armas].

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Robo Agravado.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable la comisión del delito de Robo pero no que **[indique la(s) circunstancia(s) que aplique(n):**

(a) utilizó un menor que no ha cumplido 18 años,

(b) el bien objeto del delito es un vehículo de motor,

(c) en el curso del robo se le infligió daño físico a la alegada víctima,

(d) el delito ocurrió en un edificio ocupado donde estaba la alegada víctima o en cualquier otro lugar donde esta tenía una expectativa razonable de intimidad,

(e) se utilizó un arma de fuego en la comisión del delito,

(f) la alegada víctima fue amarrada, amordazada o se limitó su libertad de movimiento durante la comisión del delito,**]**

deberán rendir un veredicto de culpable por el delito de Robo.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable.

### B. Robo mediante el uso de violencia o intimidación para retener el bien mueble

Contra la persona acusada se ha presentado una acusación por el delito de Robo Agravado.

La ley dispone que comete este delito la persona que se apropie ilegalmente de bienes muebles pertenecientes a otra, sustrayéndolos de su inmediata presencia y contra su voluntad, por medio de violencia o intimidación, o que, inmediatamente después de cometido el hecho, emplee violencia o intimidación para retener la cosa apropiada. El delito de Robo se considera Agravado cuando **[el tribunal debe referirse a la(s) circunstancia(s) que aplique(n) según lo alegado en el pliego acusatorio:**

(a) para cometer el delito utilizó un menor que no ha cumplido 18 años,

(b) el bien objeto del delito es un vehículo de motor,

(c) en el curso del robo se le infligió daño físico a la víctima,

(d) el delito ocurrió en un edificio ocupado donde estaba la víctima o en cualquier otro lugar donde esta tenía una expectativa razonable de intimidad,

(e) se utilizó un arma de fuego en la comisión del delito,

(f) la víctima fue amarrada, amordazada o se limitó su libertad de movimiento durante la comisión del delito**].**

Los elementos de este delito son los siguientes:

(1) A propósito, con conocimiento o temerariamente,

(2) apropiarse ilegalmente de bienes muebles pertenecientes a otra persona,

(3) inmediatamente después utilizar violencia o intimidación para retener lo apropiado y

(4) **[el tribunal debe referirse a la(s) circunstancia(s) que aplique(n) según lo alegado en el pliego acusatorio:**

(a) para cometer el delito utilizó un menor que no ha cumplido 18 años,

(b) el bien objeto del delito es un vehículo de motor,

(c) en el curso del robo se le infligió daño físico a la alegada víctima,

(d) el delito ocurrió en un edificio ocupado donde estaba la alegada víctima o en cualquier otro lugar donde esta tenía una expectativa razonable de intimidad,

(e) se utilizó un arma de fuego en la comisión del delito,

(f) la alegada víctima fue amarrada, amordazada o se limitó su libertad de movimiento durante la comisión del delito**].**

"Violencia" significa el empleo de fuerza física sobre una persona.

"Intimidación" consiste en infundir miedo o temor por medio de amenazas. Existe la intimidación si mediante palabras, conducta o circunstancias se crea en la mente de la víctima el temor del peligro. La intimidación puede ser ocasionada, entre otras, por cualquiera de las causas siguientes:

(a) El temor de algún daño a la persona o a los bienes de la víctima, o de alguno de sus parientes o miembros de su familia.

(b) El temor de algún daño inmediato o ilícito a la persona o a los bienes de cualquiera de quienes se encuentren en la compañía de la víctima al tiempo de cometerse el delito.

"Apropiar" incluye malversar, defraudar, ejercer control ilegal, usar, sustraer, apoderarse o, en cualquier forma, hacer propio cualquier bien o cosa que no le pertenece, en forma temporal o permanente.

"Ilegalmente" se define como todo acto en contravención de alguna ley, norma, reglamento, ordenanza u orden promulgada por una autoridad competente del gobierno en el ejercicio de sus funciones.

"Bienes muebles" incluye dinero, mercancías, semovientes, equipos, aparatos, sistemas de información y comunicación, servicios, vehículos de motor o cualquier objeto de locomoción, energía eléctrica, gas, agua u otro fluido, ondas, señales de comunicación móviles o electrónicas, números de identificación en soporte papel o electrónico, o cosas cuya posesión pueda pedirse en juicio, como comprobantes de crédito, documentos o cualquier otro objeto susceptible de apropiación.

Aunque la ley exige que la sustracción o apropiación se realice por medio de la violencia o de la intimidación, no es necesario que se empleen ambas. Basta con el empleo de una sola, la violencia o la intimidación, para que se entienda cometido el delito si es que se han probado los otros elementos.

["Arma de fuego" es cualquier arma, sin importar el nombre, que sea capaz de lanzar un proyectil o proyectiles por acción de una explosión. El término arma de fuego incluye, pero no se limita a, pistola, revolver, escopeta, rifle, carabina, incluyendo el marco, armazón o el receptor donde el manufacturero coloca el número de serie de tales armas].

**[El tribunal debe impartir esta Instrucción acompañada de la Instrucción 4.5].**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Robo Agravado.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable la comisión del delito de Robo pero no que **[indique la circunstancia que aplique:**

(a) utilizó un menor que no ha cumplido 18 años,

(b) el bien objeto del delito es un vehículo de motor,

(c) en el curso del robo se le infligió daño físico a la alegada víctima,

(d) el delito ocurrió en un edificio ocupado donde estaba la alegada víctima o en cualquier otro lugar donde esta tenía una expectativa razonable de intimidad,

(e) se utilizó un arma de fuego en la comisión del delito,

(f) la alegada víctima fue amarrada, amordazada o se limitó su libertad de movimiento durante la comisión del delito,**]**

deberán rendir un veredicto de culpable por el delito de Robo.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable.

**REFERENCIA:**

Esta Instrucción proviene de las Instrucción 12.3 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con el Artículo 14 (*Definiciones*), el Artículo 190 (*Robo agravado*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5014 y 5260); el Artículo 199 (*Robo agravado*) del Código Penal de 2004, Ley 149-2004 (33 LPRA sec. 4827); el Artículo 173 (*Robo*), el Artículo 173A (*Robo agravado*), el Artículo 173B (*Robo de vehículo de motor*), el Artículo 173C (*Robo de vehículo de motor agravado*) y el Artículo 174 (*Formas de intimidación en robo*) del Código Penal de 1974, Ley Núm. 115 de 22 de julio de 1974.

**COMENTARIO:**

La definición de "arma de fuego" proviene del Artículo 1.02 de la Ley de Armas de Puerto Rico de 2020. El Artículo 1.103 de la Ley de Vehículos y Tránsito, Ley Núm. 22-2000 (9 LPRA sec. 5001), provee una definición "vehículo de motor". En torno a la aplicación de la Ley 22-2000, refiérase a *Pueblo v. Figueroa Pomales*, 172 DPR 403 (2007).

En torno al concepto de "expectativa razonable de intimidad", refiérase al comentario que acompaña la Instrucción 9.

**C.** De la Extorsión

## 10.9  Extorsión (Art. 191 del Código Penal de 2012)

Contra la persona acusada se ha presentado una acusación por el delito de Extorsión.

La ley dispone que comete el delito de Extorsión la persona que, mediante violencia o intimidación, o bajo el pretexto de tener derecho como funcionario(a) o como empleado(a) público(a), obligue a otra persona a entregar bienes o a realizar, tolerar u omitir actos que ocurran o se realicen con posterioridad a la violencia, intimidación o pretexto de autoridad.

**[El tribunal debe referirse solamente a la modalidad que aplique según lo alegado en el pliego acusatorio:**

**A.  Obligar a una persona mediante el uso de la violencia o la intimidación**

En este caso, el Ministerio Público presentó una acusación por el delito de Extorsión en su modalidad de uso de la violencia o la intimidación.

Los elementos de este delito son los siguientes:

> (1) A propósito, con conocimiento o temerariamente,
>
> (2) y mediante violencia o intimidación
>
> (3) obligar a una persona a entregar bienes o a realizar, tolerar u omitir actos, los cuales ocurren o se ejecutan con posterioridad a la violencia o intimidación.

"Violencia" significa el empleo de fuerza física sobre una persona.

"Intimidación" consiste en infundir miedo o temor por medio de amenazas. Existe la intimidación si, de palabras, conducta o circunstancias, se crea en la mente de la víctima el temor del peligro de algún daño a la persona, a los bienes de la víctima o a alguno de sus parientes o miembros de su familia.

**B.  Obligar a una persona, con el pretexto de tener autoridad como funcionario(a) o empleado(a) público(a)**

En este caso, el Ministerio Público presentó una acusación por el delito de Extorsión con el pretexto de tener autoridad.

Los elementos de este delito son los siguientes:

> (1) A propósito, con conocimiento o temerariamente,
>
> (2) obligar a una persona a entregar bienes o a realizar, tolerar u omitir actos
>
> (3) con el pretexto de tener autoridad como funcionario(a) o empleado(a) público(a)**].**

**[El tribunal debe impartir esta Instrucción acompañada de la Instrucción 4.5].**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Extorsión.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Extorsión.

**REFERENCIA:**

Esta Instrucción proviene de las Instrucción 12.4 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con el Artículo 14 (*Definiciones*), el Artículo 191 (*Extorsión*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5014 y 5261); el Artículo 200 (*Extorsión*) del Código Penal de 2004, Ley 149-2004 (33 LPRA sec. 4828); el Artículo 175 (*Extorsión*), y el Artículo 176 (*Formas de intimidación en extorsión*) del Código Penal de 1974, Ley Núm. 115 de 22 de julio de 1974 (1974 [Parte 1] Leyes de Puerto Rico 501-502). Véanse *Pueblo v. Santos*, 69 DPR 441 (1948); *Pueblo v. Alvira*, 69 DPR 237 (1948); *El Pueblo v. López*, 5 DPR 157 (1904).

**COMENTARIO:**

Véase el Artículo 14 del Código Penal de 2012 (33 LPRA sec. 5014(x)), para la definición de "funcionario o empleado público".

**D.    DEL RECIBO Y LA DISPOSICIÓN DE BIENES**

**10.10  Recibo, Disposición y Transportación de Bienes Objeto de Delito
(Art. 192 del Código Penal de 2012)**

Contra la persona acusada se ha presentado una acusación por el delito de Recibo, Disposición y Transportación de Bienes Objeto de Delito.

La ley dispone que comete este delito la persona que compre, reciba, retenga, transporte o disponga de algún bien mueble a sabiendas de que se obtuvo mediante Apropiación Ilegal, Robo, Extorsión o cualquier otra forma ilícita.

Los elementos de este delito son los siguientes:

(1) Comprar, recibir, retener, transportar o disponer de algún bien mueble,

(2) a sabiendas de que tal bien mueble se obtuvo mediante Apropiación Ilegal, Robo, Extorsión o cualquier otra forma ilícita y

(3) que el valor de ese bien es más de $500.

Comete el delito quien compra, recibe, retiene, transporta o dispone de un bien mueble que otra persona obtuvo como resultado de la comisión de un delito.

"Bienes muebles" incluye dinero, mercancías, semovientes, equipos, aparatos, sistemas de información y comunicación, servicios, vehículos de motor o cualquier objeto de locomoción, energía eléctrica, gas, agua u otro fluido, ondas, señales de comunicación móviles o electrónicas, números de identificación en soporte papel o electrónico, o cosas cuya posesión pueda pedirse en juicio, como comprobantes de crédito, documentos o cualquier otro objeto susceptible de apropiación.

"A sabiendas" es sinónimo de "con conocimiento". Una persona actúa "con conocimiento" cuando es consciente de que la producción del resultado es una consecuencia prácticamente segura de su conducta o cuando es consciente de que la existencia de la circunstancia es prácticamente segura.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no con conocimiento. Pueden inferir o deducir razonablemente de la prueba presentada y admitida el conocimiento de que tal bien mueble se obtuvo mediante Apropiación Ilegal, Robo, Extorsión o cualquier otra forma ilícita. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Recibo, Disposición y Transportación de Bienes Objeto de Delito.

Si ustedes consideran, luego de un análisis cuidadoso de toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, que el Ministerio Público probó más allá de duda razonable la comisión del delito, pero no que el valor del bien es mayor de $500, deberán rendir un veredicto de culpable por el delito de Recibo, Disposición y Transportación de Bienes Objeto de Delito sin esa circunstancia.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Recibo, Disposición y Transportación de Bienes Objeto de Delito.

**REFERENCIA:**

Esta Instrucción proviene de las Instrucción 12.5 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con el Artículo 14 (*Definiciones*), el Artículo 21 (*Formas de*

*culpabilidad: requisito general del elemento subjetivo*), el Artículo 22 (*Elementos subjetivos del delito*), el Artículo 192 (*Recibo, disposición y transportación de bienes objeto de delito*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5014, 5034, 5035 y 5262); el Artículo 201 (*Recibo, disposición y transportación de bienes objeto de delito*) del Código Penal de 2004, Ley 149-2004 (33 LPRA sec. 4829), y el Artículo 168 (*Recibo de bienes apropiados ilegalmente*) del Código Penal de 1974, Ley Núm. 115 de 22 de julio de 1974 (1974 [Parte 1] Leyes de Puerto Rico 500), según enmendado por la Ley     72-1999.  Véanse *Pueblo v. Saliva Valentín*, 130 DPR 767 (1992); *Pueblo en interés del menor R.F.C.*, 130 DPR 100 (1992); *Pueblo v. Álvarez*, 105 DPR 475 (1976); *Pueblo v. Vargas Delgado*, 105 DPR 335 (1976).

**COMENTARIO:**

En atención a la jurisprudencia del Tribunal Supremo de Puerto Rico, la doctora Nevares-Muñiz especifica ciertos hechos o circunstancias de los cuales puede inferirse el conocimiento del origen ilícito del bien mueble:

> (1) El costo es sustancialmente menor que el valor del bien en el mercado.
> (2) La persona adquirió el bien a un precio irrisorio o insignificante de acuerdo con su valor en el mercado.
> (3) Si la persona de quien lo adquirió era una persona que no conocía o un comerciante *bona fide*.
> (4) La ausencia de la factura o del recibo por la compra del bien.
> (5) La persona ofreció una explicación poco satisfactoria de la posesión de los bienes. Véase D. Nevares-Muñiz, *Código Penal de Puerto Rico*, 4ta ed. rev., San Juan, Ed. Instituto para el Desarrollo del Derecho, 2019, pág. 307.

**E.     DE LOS ESCALAMIENTOS Y OTRAS ENTRADAS ILEGALES**

**10.11  Escalamiento (Art. 194 del Código Penal de 2012)**

Contra la persona acusada se ha presentado una acusación por el delito de Escalamiento.

La ley dispone que comete este delito la persona que penetre en una casa, edificio u otra construcción o estructura, o a sus dependencias o anexos, con el propósito de cometer cualquier delito de apropiación ilegal o cualquier delito grave.

Los elementos de este delito son los siguientes:

> (1) Penetrar en una casa, edificio u otra construcción o estructura, o a sus dependencias o anexos,
> (2) con el propósito de cometer cualquier delito de apropiación ilegal o cualquier delito grave.

No es necesario que todo el cuerpo de la persona penetre en la casa, edificio u otra construcción o estructura, o a sus dependencias o anexos. Basta con que la persona introduzca la mano, el brazo o algún instrumento dentro de la casa, edificio u otra construcción o estructura, o en sus dependencias o anexos, para que cometa el delito.

No es necesario que el delito de apropiación ilegal o el delito grave se lleve a cabo. Basta con el hecho de que la penetración al lugar haya sido con el propósito de cometer el delito.

El concepto "edificio" se define como cualquier casa, estructura, barco, vagón, vehículo u otra construcción diseñada o adaptada para, o capaz de dar abrigo a, seres humanos o que pueda usarse para guardar cosas o animales, o para negocio. El concepto "edificio" incluye sus anexos, dependencias y el solar donde esté enclavado.

**[El tribunal debe impartir la definición del delito de Apropiación Ilegal que se encuentra en el Artículo 181 del Código Penal de 2012, o la del delito grave que aplique].**

Una persona actúa "a propósito" cuando lleva a cabo un acto u omisión con el fin de obtener un resultado definido. Con relación a una circunstancia, actúa "a propósito" cuando cree que esta existe.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no a propósito. Pueden inferir o deducir razonablemente de la prueba presentada y admitida el propósito de cometer un delito de apropiación ilegal o un delito grave. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Escalamiento.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Escalamiento.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 14 (*Definiciones*), el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*), el Artículo 22 (*Elementos subjetivos del delito*), el Artículo 181 (*Apropiación ilegal*), el Artículo 194 (*Escalamiento*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 y la Ley 27-2017 (33 LPRA secs. 5014, 5034, 5035, 5251 y 5264); el Artículo 192 (*Apropiación ilegal*), el Artículo 203 (*Escalamiento*) del Código Penal de 2004, Ley 149-2004 (33 LPRA secs. 4820 y 4831), y el Artículo 170 (*Escalamiento*) del Código Penal de 1974, Ley Núm. 115

de 22 de julio de 1974 (1974 [Parte 1] Leyes de Puerto Rico 500). Véanse *Pueblo v. Casillas, Torres*, 190 DPR 398 (2014); *Pueblo v. Hernández Solís*, 110 DPR 388, 390 (1980); *Pueblo v. Pagán Medina*, 99 DPR 753, 755-757 (1971); *Pueblo v. Cosme Vargas*, 96 DPR 836, 840-841 (1969); *Pueblo v. Soriano Rodríguez*, 92 DPR 46, 49 (1965); *Pueblo v. Rosado*, 78 DPR 436, 441 (1955); *Pueblo v. Oliveros*, 36 DPR 510 (1927).

**COMENTARIO:**

Se añadió esta Instrucción al considerar que la clasificación del delito de Escalamiento se modificó recientemente a delito grave mediante la aprobación de la Ley 27-2017. Este delito se configura mayormente cuando son estructuras abandonadas, debido a que la modalidad grave dispuesta en el Artículo 195 (*Escalamiento agravado*) del Código Penal de 2012 (33 LPRA sec. 5265) incluye las estructuras ocupadas, según definido por el Artículo 14(o) del Código Penal de 2012, *supra*. Véase la ponencia presentada por la Dra. Dora Nevares-Muñiz ante la Comisión Conjunta de Revisión del Código Penal de la Asamblea Legislativa titulada *Ponencia sobre los P del S 1210 y P de la C 2155* de 27 de octubre de 2014, pág. 45.

Para que se entienda que la persona entró a una propiedad no tiene que ingresar todo su cuerpo en el lugar escalado. Es suficiente que la persona introduzca su mano o el brazo dentro de un edificio para que se cumpla con este elemento del delito. Véanse *Pueblo v. Cosme Vargas*, supra, pág. 841; *Pueblo v. Soriano Rodríguez,* supra, pág. 49. Además, es necesaria la concurrencia y coexistencia del propósito de cometer cualquier delito de apropiación ilegal o cualquier delito grave y la entrada en la propiedad de otra persona. Al resolver una controversia en cuanto al elemento mental de la intención en este delito al amparo del Artículo 203 del Código Penal de 2004 (33 LPRA sec. 4831), el Tribunal Supremo expresó en *Pueblo v. Casillas, Torres*, supra, pág. 424, lo siguiente:

> [R]esulta pertinente resaltar la imprescindibilidad concurrencia y la simultaneidad que deben existir entre la intención específica de delinquir y la penetración a la propiedad. Por ello, "[si] la intención de cometer el delito de apropiación ilegal o cualquier delito grave surge con posterioridad a la persona haber penetrado al lugar protegido por el artículo, no se da el delito de escalamiento". Por lo tanto, la intención de cometer el delito de apropiación ilegal o cualquier delito grave que surja con *posterioridad* a la penetración de la propiedad, no puede ser adjudicada como el elemento mental requerido para el delito de escalamiento. (Énfasis en el original y escolios omitidos).

En ese aspecto, estos dos elementos esenciales constitutivos de este delito se configuran si la persona entró a propósito a la propiedad con el motivo de cometer los delitos enumerados en el articulado. *Pueblo v. Casillas, Torres*, supra. Véanse, además, *Pueblo v. Rosado*, supra, pág. 441; *Pueblo v. Oliveros*, supra, págs. 512-513. A tales fines, el Ministerio Público tiene la obligación de demostrar más allá de duda razonable ambos elementos subjetivos: (1) el propósito de penetrar la propiedad y (2) el propósito de cometer cualquier delito grave o apropiación ilegal. *Pueblo v. Casillas, Torres*, supra, págs. 423-424. Corresponde al Jurado determinar el estado mental de la persona acusada al momento de penetrar la propiedad. *Pueblo v. Casillas, Torres*, supra, pág. 424; *Pueblo v. Rosado*, supra.

El término "dependencia" comprende "los recintos y espacios que, sin ser por sí mismos la morada o el negocio, están naturalmente unidos y responden a las necesidades de actividad

desplegada en el local principal". *Pueblo v. Casillas, Torres*, supra, pág. 419. Mientras que "vehículo" se considera el "edificio" para propósitos del delito de escalamiento cuando su función es ofrecer albergue a personas o guardar cosas o animales. Íd., citando a D. Nevares-Muñiz, *Código Penal de Puerto Rico*, 4ta ed. rev., San Juan, Ed. Instituto para el Desarrollo del Derecho, 2019, pág. 311. Las marquesinas de las casas y los patios de las escuelas también se consideran protegidos por este articulado. Véanse *Pueblo v. Hernández* Solís, supra; *Pueblo v. Pagán Medida*, supra, págs. 755-757.

## 10.12 Escalamiento Agravado (Art. 195 del Código Penal de 2012)

Contra la persona acusada se ha presentado una acusación por el delito de Escalamiento Agravado.

La ley dispone que comete el delito de Escalamiento la persona que penetre en una casa, un edificio o en otra construcción o estructura, sus dependencias o anexos, con el propósito de cometer cualquier delito de apropiación ilegal o cualquier delito grave. El delito de Escalamiento se considera Agravado cuando **[el tribunal debe referirse a la(s) circunstancia(s) que aplique(n) según lo alegado en el pliego acusatorio:**

> (a) se comete en un edificio ocupado o en cualquier otro lugar donde la víctima tenga una expectativa razonable de intimidad.
>
> (b) se comete en la propiedad asignada por el gobierno para brindar vivienda pública.
>
> (c) Medie forzamiento para la penetración**]**.

Los elementos de este delito son los siguientes:

> (1) Penetrar en una casa, un edificio o en otra construcción o estructura, sus dependencias o anexos,
>
> (2) con el propósito de cometer cualquier delito de apropiación ilegal o cualquier delito grave y
>
> (3) **[el tribunal debe referirse a la(s) circunstancia(s) que aplique(n) según lo alegado en el pliego acusatorio:**
> > (a) se cometió en un edificio ocupado o en cualquier otro lugar donde la alegada víctima tenga una expectativa razonable de intimidad.
> >
> > (b) se cometió en la propiedad asignada por el gobierno para brindar vivienda pública.
> >
> > (c) medie forzamiento para la penetración**]**.

**[El tribunal debe impartir las definiciones que apliquen:**

No es necesario que todo el cuerpo de la persona penetre en la casa, el edificio o en otra construcción o estructura, sus dependencias o anexos. Basta con que la persona introduzca la mano, el brazo o algún instrumento dentro de la casa, edificio u otra construcción o estructura, sus dependencias o anexos, para que cometa el delito.

No es necesario que el delito de apropiación ilegal o el delito grave se lleve a cabo. Basta con el hecho de que la penetración haya sido con el propósito de cometerlo.

"Edificio ocupado" incluye cualquier casa, estructura, vehículo o lugar adaptado para acomodo nocturno de personas, para llevar a cabo negocios, para el cuidado de niños o personas, para la enseñanza de cualquier nivel o para fines públicos, siempre que esté en uso, aunque al momento del hecho no haya personas presentes. Incluye, además, sus anexos, dependencias y el solar donde esté enclavado.

Una persona tiene una "expectativa razonable de intimidad" cuando hay un entendimiento general en la sociedad de que en ese lugar y en esas circunstancias existe un derecho a la protección de su vida íntima, es decir, a su privacidad**]**.

**[El tribunal debe impartir la definición del delito de Apropiación Ilegal que se encuentra en el Artículo 181 del Código Penal de 2012 o del delito grave que aplique].**

Una persona actúa "a propósito" cuando lleva a cabo un acto u omisión con el fin de obtener un resultado definido. Con relación a una circunstancia, actúa "a propósito" cuando cree que esta existe.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no a propósito. Pueden inferir o deducir razonablemente de la prueba presentada y admitida el propósito de cometer un delito de apropiación ilegal o un delito grave. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Escalamiento Agravado.

Si ustedes consideran, luego de un análisis cuidadoso de toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, que el Ministerio Público probó más allá de duda razonable la comisión del delito de Escalamiento pero no que **[indique la circunstancia agravada]**, deberán rendir un veredicto de culpable por el delito de Escalamiento.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 12.6 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con el Artículo 14 (*Definiciones*), el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*), el Artículo 22 (*Elementos subjetivos*

*del delito*), el Artículo 195 (*Escalamiento agravado*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5014, 5034, 5035 y 5265); el Artículo 192 (*Apropiación ilegal*), el Artículo 204 (*Escalamiento agravado*) del Código Penal de 2004, Ley 149-2004 (33 LPRA secs. 4820 y 4832), y el Artículo 171 del Código Penal de 1974, Ley Núm. 115 de 22 de julio de 1974 (1974 [Parte 1] Leyes de Puerto Rico 500). Véanse *Pueblo v. Casillas, Torres*, 190 DPR 398 (2014); *Pueblo v. Hernández Solís*, 110 DPR 388, 390 (1980); *Pueblo v. Pagán Medina*, 99 DPR 753, 755-757 (1971); *Pueblo v. Cosme Vargas*, 96 DPR 836, 839 y 840-841 (1969); *Pueblo v. Soriano Rodríguez*, 92 DPR 46, 49 (1965); *Pueblo v. Rosado*, 78 DPR 436 (1955); *Pueblo v. Oliveros*, 36 DPR 510, 512-513 (1927).

**COMENTARIO:**

Véase el Artículo 14(p) del Código Penal de 2012, según enmendado, *supra*, para la definición del concepto "edificio ocupado", el cual detalla las diversas nociones de este término. Refiérase también al Comentario de la Instrucción 10.11 que precede sobre el delito de Escalamiento.

## 10.13  Usurpación (Art.196 del Código Penal de 2012)

Contra la persona acusada se ha presentado una acusación por el delito de Usurpación.

La ley dispone que comete este delito la persona que ocupe ilegalmente terrenos u otras propiedades ajenas asignadas por el gobierno para brindar vivienda pública, con el propósito de realizar actos de dominio o de posesión sobre ellos.

Los elementos de este delito son los siguientes:

> (1) Ocupar ilegalmente terrenos u otras propiedades ajenas asignadas por el gobierno para brindar vivienda pública,
> (2) con el propósito de realizar actos de dominio o posesión sobre tales terrenos o propiedades ajenas.

Una persona actúa "a propósito" cuando lleva a cabo un acto u omisión con el fin de obtener un resultado definido. Con relación a una circunstancia, actúa "a propósito" cuando cree que esta existe.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no a propósito. Pueden inferir o deducir razonablemente de la prueba presentada y admitida el propósito de realizar actos de dominio o posesión sobre terrenos y propiedades ajenas. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona

acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Usurpación.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Usurpación.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*), el Artículo 22 (*Elementos subjetivos del delito*), el Artículo 196 (*Usurpación*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5034, 5035 y 5266); el Artículo 205 (*Usurpación*) del Código Penal de 2004, Ley 149-2004 (33 LPRA sec. 4833), y el Artículo 177 del Código Penal de 1974, Ley Núm. 115 de 22 de julio de 1974 (1974 [Parte 1] Leyes de Puerto Rico 502).

**COMENTARIO:**

Este delito tiene una modalidad menos grave y una modalidad de naturaleza grave. En la modalidad de naturaleza grave, la persona acusada ocupa ilegalmente terrenos o propiedades inmuebles ajenas asignadas por el gobierno para brindar vivienda pública, con el propósito de realizar actos de dominio o posesión sobre estas. La Dra. Dora Nevares-Muñiz señala que constituyen este delito en su modalidad grave actos como "entrar sin autorización a un terreno o edificio asignado por el gobierno para vivienda pública con materiales de construcción o casas de campaña, ropa y artículos de primera necesidad, y permanecer allí". D. Nevares-Muñiz, *Código Penal de Puerto Rico*, 4ta ed. rev., San Juan, Ed. Instituto para el Desarrollo del Derecho, 2019, pág. 316. Añade que es necesario que se pueda inferir que se ocupó la propiedad con el propósito de realizar actos de dominio o posesión, puesto que es insuficiente la ocupación del terreno o propiedad si no se realiza con ese propósito. Íd.

Por su parte, el inicio (i) del Artículo 14 del Código Penal de 2012 dispone que los "bienes inmuebles" comprenden los "terrenos y todo lo que allí se construya, crezca o se adhiera permanentemente". 33 LPRA sec. 5014(i).

## 10.14  Entrada en Heredad Ajena (Art. 197 del Código Penal de 2012)

Contra la persona acusada se ha presentado una acusación por el delito de Entrada en Heredad Ajena.

La ley dispone que comete este delito la persona que sin la autorización del (de la) dueño(a) o encargado(a) entre a una finca o heredad ajena [forzando una cerca o palizada] [con el propósito de cometer un delito] [con el propósito de ocupar una propiedad privada o maquinarias que son parte de una obra de construcción o de movimiento de terreno que cuente con los debidos permisos].

El delito de Entrada en Heredad Ajena se considerará agravado cuando media apropiación ilegal de un producto agrícola.

**[El tribunal debe leer la Instrucción siguiente si fue alegado en el pliego acusatorio:**

Corresponde a ustedes, miembros del Jurado, determinar si se probó más allá de duda razonable los elementos anteriormente descritos y si

(1) es un producto agrícola cuyo valor es de $10,000 o menos, o

(2) es un producto agrícola cuyo valor es mayor de $10,000.

La valoración monetaria del bien se hará al considerar su valor en el mercado**].**

**[El tribunal debe impartir la definición sobre el delito de Apropiación Ilegal que se encuentra en el Artículo 181 del Código Penal de 2012].**

**[El tribunal debe impartir también la Instrucción 4.5].**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Entrada en Heredad Ajena y especificar si el valor monetario del producto agrícola es de $10,000 o menos o mayor de $ 10,000.

Si ustedes consideran, luego de un análisis cuidadoso de toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, que el Ministerio Público probó más allá de duda razonable la comisión del delito de Entrada en Heredad Ajena pero que no se apropió de un producto agrícola, deberán rendir un veredicto de culpable por el delito de Entrada en Heredad Ajena sin esa circunstancia.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Entrada en Heredad Ajena.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 14 (*Definiciones*), el Artículo 197 (*Entrada en heredad ajena*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 y la Ley 27-2017 (33 LPRA secs. 5014 y 5267); el Artículo 206 (*Entrada en heredad ajena*) del Código Penal de 2004, Ley 149-2004 (33 LPRA sec. 4834), y el Artículo 178 del Código Penal de 1974, Ley Núm. 115 de 22 de julio de 1974 (1974 [Parte 1] Leyes de Puerto Rico 502). Véanse *Pueblo v. Ayala*, 163 DPR 835, 842 (2005); *Pueblo v. Rivera*, 75 DPR 298 (1953); *El Pueblo v. Franco et al.*, 23 DPR 549 (1916).

**COMENTARIO:**

Entrada en Heredad Ajena es un delito con dos modalidades de naturaleza menos grave (una modalidad simple que conlleva una pena de seis meses y otra modalidad que conlleva una pena de tres años). En la modalidad menos grave simple es necesaria la entrada sin la autorización de la persona que es dueña de la propiedad o de la persona encargada de la finca o heredad en alguna de las circunstancias siguientes: (1) forzando una cerca o palizada; (2) con el propósito de cometer un delito, o (3) con el propósito de ocupar propiedad privada o maquinarias que son parte de una obra de construcción o movimiento de terreno que cuente con los permisos debidos. Si, además de las circunstancias antes indicadas, se comete un delito de apropiación ilegal de un producto agrícola, dependerá del valor monetario para determinar si la modalidad del delito es de naturaleza menos grave con una pena de tres años o de naturaleza grave con pena de ocho años.

Mediante la Ley 27-2017 se dispuso que la pena será de ocho años en los casos en que el valor del producto agrícola apropiado exceda de $10,000. Si no excede esta cantidad, se tratará de un delito menos grave con una pena de tres años. El requisito para establecer el valor monetario del producto agrícola apropiado es su valor en el mercado en la época y el lugar en que se cometió el delito de apropiación ilegal. Véanse *Pueblo v. Ayala*, supra, pág. 842; *Pueblo v. Rivera*, supra, pág. 300. Véase, además, D. Nevares-Muñiz, *Código Penal de Puerto Rico*, 4ta ed. rev., San Juan, Ed. Instituto para el Desarrollo del Derecho, 2019, págs. 292-293. Asimismo, al Jurado corresponderá adjudicar el valor en el mercado del producto agrícola. Véase *Pueblo v. Ayala*, supra, págs. 848-849.

La Dra. Dora Nevares-Muñiz expone que en este delito el bien jurídico protegido es una heredad ajena, la cual se refiere a una finca o propiedad de terreno tanto rural como urbana. Nevares-Muñiz, *op. cit.*, pág. 318. Estima la profesora que "[s]i la finca fuera el solar donde está enclavado un edificio, según definido en el Art. 14, entonces se trataría de un escalamiento". Íd.

Refiérase a los incisos (g), (z) y (jj) del Artículo 14 del Código Penal de 2012, según enmendado, *supra*, para las definiciones de los conceptos "apropiar", "ilegalmente" y "propiedad o patrimonio".

## F.    DE LOS DAÑOS A LA PROPIEDAD

### 10.15  Daño Agravado (Art. 199 del Código Penal de 2012)

Contra la persona acusada se ha presentado una acusación por el delito de Daño Agravado.

La ley dispone que comete el delito de Daños la persona que destruya, inutilice, altere, desaparezca o cause deterioro a un bien mueble o a un bien inmueble ajeno, de forma total o parcialmente. El delito de Daños se considera Agravado cuando **[refiérase solamente a la(s) circunstancia(s) que aplica(n) según lo alegado en el pliego acusatorio**:

(a) se han empleado sustancias dañinas, ya sean venenosas, corrosivas, inflamables o radioactivas, siempre que el hecho no constituya un delito de mayor gravedad,

(b) el daño causado es de $ 500 o más,

(c) el daño se comete en bienes de interés histórico, artístico o cultural,

(d) el daño se causa a bienes muebles o bienes inmuebles pertenecientes al Estado Libre Asociado de Puerto Rico,

(e) el daño se causa a entidades privadas con fines no pecuniarios,

(f) el daño se causa a vehículos oficiales de las agencias del orden público**]**.

Los elementos de este delito son los siguientes:

(1) A propósito, o con conocimiento, o temerariamente,

(2) destruir, inutilizar, alterar desaparecer o causar deterioro a un bien mueble o un bien inmueble ajeno, de forma total o parcialmente y

(3) **[refiérase solamente a la(s) circunstancia(s) que aplica(n) según lo alegado en el pliego acusatorio**:

    (a) se han empleado sustancias dañinas, ya sean venenosas, corrosivas, inflamables o radioactivas, siempre que el hecho no constituya un delito de mayor gravedad,

    (b) el daño causado es de $ 500 o más,

    (c) el daño se comete en bienes de interés histórico, artístico o cultural,

    (d) el daño se causa a bienes muebles o bienes inmuebles pertenecientes al Estado Libre Asociado de Puerto Rico,

    (e) el daño se causa a entidades privadas con fines no pecuniarios,

    (f) el daño se causa a vehículos oficiales de las agencias del orden público**]**.

**[El tribunal debe impartir esta Instrucción acompañada de la Instrucción 4.5].**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Daño Agravado.

Si ustedes consideran, luego de un análisis cuidadoso de toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, que el Ministerio Público probó más allá de duda razonable la comisión del delito de Daños, pero no que **[indique la circunstancia agravada]**, entonces deberán rendir un veredicto de culpable por el delito de Daños.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran

que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 12.7 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con el Artículo 198 (*Daños*), el Artículo 199 (*Daño agravado*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5268 y 5269); el Artículo 207 (*Daños*), el Artículo 208 (*Daño agravado*) del Código Penal de 2004, Ley 149-2004 (33 LPRA secs. 4835 y 4836), y el Artículo 179 del Código Penal de 1974, Ley Núm. 115 de 22 de julio de 1974 (1974 [Parte 1] Leyes de Puerto Rico 503).

**COMENTARIO:**

Refiéranse a los incisos (i), (j) y (r) del Artículo 14 del Código Penal de 2012, según enmendado, 33 LPRA sec. 5014, para las definiciones de los conceptos de "bienes inmuebles", "bienes muebles" y "Estado Libre Asociado de Puerto Rico o Estado".

## 10.16 Obstrucción o Paralización de Obras (Art. 200 del Código Penal de 2012)

Contra la persona acusada se ha presentado una acusación por el delito de Obstrucción o Paralización de Obras.

La ley dispone que comete este delito la persona que [impida la entrada o el acceso de empleados, vehículos y personas, incluso los suplidores de materiales, autorizados por el (la) dueño(a), contratista o encargado(a) de la propiedad donde se realiza una obra o movimiento de terreno] [ocupe terrenos, maquinarias o espacios que son parte de una obra de construcción o movimiento de terreno] con la intención de impedir, temporera o permanentemente, tal obra de construcción, pública o privada, o el movimiento de terreno, que cuente con los permisos, autorizaciones o endosos de las agencias concernidas.

Un delito se comete con intención cuando se actúa a propósito, con conocimiento o temerariamente.

Una persona actúa "a propósito" cuando su objetivo consciente es llevar a cabo un acto u omisión con el fin de obtener un resultado definido o cuando cree que una circunstancia existe.

Una persona actúa con "conocimiento" cuando es consciente de que la producción del resultado o la existencia de la circunstancia prohibida por ley es prácticamente segura.

Una persona actúa "temerariamente" cuando es consciente de que su conducta genera un riesgo sustancial e injustificado de que se produzca un resultado o la circunstancia prohibida por ley, y a pesar de conocer el riesgo, la persona continúa con su acción u omisión. Al evaluar si era consciente del riesgo, deberán determinar si había previsto la posibilidad de que existiese ese riesgo. Al momento de evaluar si un riesgo fue sustancial, deberán

considerar la probabilidad de que se produjera el resultado o la circunstancia prohibida por ley. Al evaluar si un riesgo fue injustificado, deberán considerar lo que motivó a la persona a asumir el riesgo.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no a propósito, con conocimiento o temerariamente. Pueden inferir o deducir razonablemente de la prueba presentada y admitida el propósito, el conocimiento o la temeridad. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Obstrucción o Paralización de Obras.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Obstrucción o Paralización de Obras.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*), el Artículo 22 (*Elementos subjetivos del delito*) y el Artículo 200 (*Obstrucción o paralización de obras*) del Código Penal, Ley 146-2012, según enmendada por la Ley 246-2014 y por la Ley 27-2017 (33 LPRA secs. 5034, 5035 y 5269a).

**COMENTARIO:**

Esta Instrucción se añadió mediante la Ley 27-2017 en vista de la restitución del delito de Obstrucción o Paralización de Obras. Este delito había sido eliminado del Código Penal con la aprobación de la Ley 10-2013 (33 LPRA ant. sec. 5270).

## G.    De las Defraudaciones

### 10.17  Fraude (Art. 202 del Código Penal de 2012)

Contra la persona acusada se ha presentado una acusación por el delito de Fraude.

La ley dispone que comete el delito de Fraude la persona que, con el propósito de defraudar, induzca a que otra persona realice actos —o deje de realizar actos— que afecten los derechos o intereses patrimoniales sobre bienes inmuebles o bienes muebles de esa persona, del gobierno o de un tercero, en perjuicio de estos. También comete este delito

quien realice actos —o deje de realizar actos— que priven a otra persona o afecten los derechos o intereses patrimoniales sobre bienes inmuebles o bienes muebles en perjuicio de esta, del gobierno o de un tercero.

Una persona actúa "a propósito" cuando su objetivo consciente es defraudar mediante ardid, simulación, treta, trama o cualquier forma de engaño.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no a propósito. Pueden inferir o deducir razonablemente de la prueba presentada y admitida el propósito de defraudar. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

**[El tribunal debe referirse al Artículo 46 del Código Penal cuando la persona acusada sea una persona jurídica].**

"Bienes inmuebles" incluye terrenos y todo lo que allí se construya, crezca o se adhiera permanentemente.

"Bienes muebles" incluye dinero, mercancías, semovientes, equipos, aparatos, sistemas de información y comunicación, servicios, vehículos de motor o cualquier objeto de locomoción, energía eléctrica, gas, agua u otro fluido, ondas, señales de comunicación móviles o electrónicas, números de identificación en soporte papel o electrónico, o cosas cuya posesión pueda pedirse en juicio, como comprobantes de crédito, documentos o cualquier otro objeto susceptible de apropiación.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Fraude.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Fraude.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 12.8 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con el Artículo 14 (*Definiciones*), el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*), el Artículo 22 (*Elementos subjetivos del delito*) y el Artículo 202 (*Fraude*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5014, 5034, 5035 y 5272); el Artículo 210 (*Fraude*) del Código Penal de 2004, Ley 149-2004 (33 LPRA sec. 4838), y el Artículo 183 (*Abuso en perjuicio de menores e incapaces*), el Artículo 184 (*Reventa de propiedad vendida*), 1974 (Parte 1) Leyes de Puerto Rico 504), el Artículo 184a (*Negación u ocultación de gravamen registral*), 33 LPRA sec. 4302a (ed. 2001), el Artículo 185 (*Sustracción o traspaso*

*fraudulento de bien dado en garantía*), el Artículo 186 (*Traslado fraudulento de bienes por el deudor*), el Artículo 187 (*Destrucción o traslado de bienes inmuebles hipotecados*), 1974 (Parte 1) Leyes de Puerto Rico 504-505), el Artículo 188 (*Fraude en las construcciones*), el Artículo 189 (*Fraude en la entrega de cosas*), 1974 (Parte 1) Leyes de Puerto Rico 505-506), el Artículo 189A (*Venta de parcelas en terrenos sujetos a comunidad de bienes, en común pro indiviso*), 33 LPRA sec. 4307a (ed. 2001), el Artículo 192 (*Disposición fraudulenta de bienes por persona casada*) y el Artículo 193 (*Venta fraudulenta de terrenos localizados fuera de Puerto Rico*), 1974 (Parte 1) Leyes de Puerto Rico 506), todos del Código Penal de 1974, Ley Núm. 115 de 22 de julio de 1974.

**COMENTARIO:**

Tanto una persona natural como una persona jurídica puede cometer el delito de Fraude. El Artículo 202 del Código Penal de 2012, *supra*, establece una pena de multa para las personas jurídicas y atempera la intención por el estado mental "a propósito" del Artículo 22 del mismo Código, *supra*.

Este delito tiene dos modalidades. En la primera modalidad se induce fraudulentamente a otra persona a realizar actos u omisiones que afecten los derechos o intereses patrimoniales de esa persona, del Estado o de un tercero, en perjuicio de estos. En la segunda modalidad, la conducta fraudulenta se configura cuando se realizan actos u omisiones que tienen el efecto de probar o afectar los derechos o el interés patrimonial de otra persona o del Estado para su perjuicio. En ambas modalidades, la protección es sobre los derechos e intereses patrimoniales sobre bienes muebles o inmuebles, en conformidad con la definición que se provee para estos conceptos en el Artículo 14 del Código Penal de 2012, *supra*. Véase D. Nevares-Muñiz, *Código Penal de Puerto Rico*, 4ta ed. rev., San Juan, Ed. Instituto para el Desarrollo del Derecho, 2019, pág. 325.

## 10.18  Fraude en la Ejecución de Obras (Art. 204 del Código Penal de 2012)

Contra la persona acusada se ha presentado una acusación por el delito de Fraude en la Ejecución de Obras.

La ley dispone que comete el delito de Fraude en la Ejecución de Obras la persona que se comprometa a ejecutar cualquier tipo de obra y que, luego de recibir dinero como pago parcial o total para ejecutar el trabajo contratado incumple, con el propósito de defraudar, la obligación de ejecutar o completar la obra según pactada.

Los elementos del delito son los siguientes:

(1) Que una persona se comprometa a ejecutar cualquier tipo de obra,

(2) que reciba dinero como pago parcial o total para ejecutar el trabajo contratado,

(3) con el propósito de defraudar, incumple con la obligación de ejecutar o completar la obra según pactada.

Para determinar si la persona acusada cometió el delito de Fraude en la Ejecución de Obras, deberán considerar las condiciones y los términos pactados (acordados) para ejecutar la obra.

"Obra" incluye, además de la construcción de edificios, residencias y ampliaciones de estos, diversos tipos de trabajo realizados por una persona, tales como arreglo de techos, instalación de rejas, trabajos de plomería y electricidad, construcción de gabinetes, remodelaciones de baños, instalación de armarios y losetas, entre otras obras.

Una persona actúa "a propósito" cuando lleva a cabo un acto u omisión con el fin de obtener un resultado definido. Con relación a una circunstancia, actúa "a propósito" cuando cree que esta existe.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no a propósito. Pueden inferir o deducir razonablemente de la prueba presentada y admitida el propósito de defraudar. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Fraude en la Ejecución de Obras.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Fraude en la Ejecución de Obras.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 12.9 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con el Artículo 14 (*Definiciones*), el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*), el Artículo 22 y Artículo 204 (*Fraude en la ejecución de obra*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5014, 5034, 5035 y 5274); el Artículo 212 (*Fraude en la ejecución de obras de construcción*) del Código Penal de 2004, Ley 149-2004 (33 LPRA sec. 4840), y el Artículo 188A (Fraude en la ejecución de obras de construcción) del Código Penal de 1974, Ley Núm. 115 de 22 de julio de 1974 (33 LPRA sec. 4306a [ed. 2001]). Véase *Pueblo v. Padilla Soto*, 138 DPR 344 (1995); *Pueblo v. Sierra Rodríguez*, 137 DPR 903 (1995).

**COMENTARIO:**

La Ley 246-2014, en la primera oración del Artículo 204 del Código Penal de 2012, *supra*, suprimió "natural o jurídica" previo a "que se cometa", sustituyó "la intención" con "el propósito" y añadió la segunda oración del primer párrafo. Puede observarse que los

elementos del delito de este artículo guardan relación con sus antecedentes en el Código Penal de 2004 y de 1974. Sin embargo, en el Código Penal vigente se restituyó la pena de resarcimiento a la víctima igual al doble del importe del dinero recibido para ejecutar la obra. En el Artículo 204 del Código Penal vigente, además, el delito se convirtió en grave en consideración a la pena de reclusión de tres años.

El Tribunal Supremo interpretó este delito, tipificado en el Artículo 188A del Código Penal de 1974, *supra*, con elementos similares en *Pueblo v. Padilla Soto, supra*, y en *Pueblo v. Sierra Rodríguez*, supra*.* En ambos casos, el Tribunal determinó que se trata de un delito que requiere la intención de defraudar. Por lo tanto, resulta pertinente la prueba que tienda a demostrar que la persona acusada de delito recibió todo o parte del dinero pactado para una obra de construcción no ejecutada, o ejecutada de forma parcial, incumpliendo así intencionalmente con las condiciones y los términos pactados. Indica la doctora Nevares-Muñiz que "[s]i no puede probarse la intención de defraudar, estaríamos ante un caso civil de incumplimiento de contrato". D. Nevares-Muñiz, *Código Penal de Puerto Rico*, 4ta ed. rev., San Juan, Ed. Instituto para el Desarrollo del Derecho, 2019, pág. 327.

Añade la doctora Nevares-Muñiz que el tipo de obras incluido en este delito cubre una diversidad de trabajos que realizan contratistas e ingenieros. "Además de la construcción o remodelación a un edificio o residencia, cubre obras como las siguientes: construcción de gabinetes de cocina, armarios, gabinetes de baño, arreglo de techo, instalación de rejas, losetas, etc.". Íd.

## H. De la Usurpación de Identidad

### 10.19 Apropiación Ilegal de Identidad (Art. 209 del Código Penal de 2012)

Contra la persona acusada se ha presentado una acusación por el delito de Apropiación Ilegal de Identidad.

La ley dispone que la persona que se apropie de un medio de identificación de otra persona con el propósito de realizar cualquier acto ilegal comete el delito de Apropiación Ilegal de Identidad.

Los elementos de este delito son los siguientes:

(1) Que la persona acusada se apropió de un medio de identificación de otra persona

(2) con el propósito de realizar un acto ilegal utilizando el medio de identificación del que se apropió.

**[El tribunal debe leer la Instrucción siguiente si así se alegó en el pliego acusatorio:**

(3) Que, aprovechando la apropiación ilegal de identidad, haya incurrido en el delito de impostura o en la realización de transacciones comerciales o de

cualquier otra índole que afecte derechos individuales o bienes de la alegada víctima.

La ley dispone que comete el delito de Impostura la persona que, con el propósito de engañar, se haga pasar por otra o la represente, y que bajo este carácter realice cualquier acto no autorizado por la persona falsamente representada**].**

"Apropiar" incluye, defraudar, ejercer control ilegal, usar, sustraer, apoderarse o, en cualquier forma, hacer propio cualquier bien o cosa que no le pertenece, en forma temporal o permanente.

Un "medio de identificación" incluye lo siguiente: nombre, dirección, número de teléfono, número de licencia de conducir, número de seguro social, número de identificación patronal, número de tarjeta de crédito o de débito, número de tarjeta de seguro médico, número de pasaporte o de tarjeta de inmigración, número serial electrónico de teléfono celular, número de cualquier cuenta bancaria, contraseñas de identificación de cuentas bancarias, telefónicas, de correo electrónico o de un sistema de computadoras, lugar de empleo, nombre de los padres, fecha y lugar de nacimiento, lugar de empleo y dirección, así como cualquier otro dato o información que pueda ser utilizado por sí o junto con otros para identificar a una persona, además de datos tales como huellas, grabación de voz, retina, imagen del iris, red de venas de las manos o cualquier representación física particularizada.

Una persona actúa "a propósito" cuando lleva a cabo un acto u omisión con el fin de obtener un resultado definido. Con relación a una circunstancia, actúa "a propósito" cuando cree que esta existe.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no a propósito, lo cual pueden inferir o deducir razonablemente de la prueba presentada y admitida. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Apropiación Ilegal de Identidad.

**[En los casos que se alegue la circunstancia agravante, el tribunal debe añadir la Instrucción siguiente:**

Si ustedes consideran, luego de un análisis cuidadoso de toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, que el Ministerio Público probó más allá de duda razonable la comisión del delito, pero no que **[indique la circunstancia agravante]**, deberán rendir un veredicto de culpable por el delito de Apropiación Ilegal de Identidad sin esa circunstancia**].**

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran

que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió el delito por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Apropiación Ilegal de Identidad.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 14 (*Definiciones*), el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*), el Artículo 22 (*Elementos subjetivos del delito*), el Artículo 208 (*Impostura*) y el Artículo 209 (*Apropiación legal de identidad*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5014, 5034, 5035, 5278 y 5279); el Artículo 215 (*Impostura*) y el Artículo 216 (*Apropiación ilegal de identidad*) del Código Penal de 2004, Ley 149-2004 (33 LPRA secs. 4843 y 4844), y el Artículo 191 (*Impostura*) del Código Penal de 1974, Ley Núm. 115 de 22 de julio de 1974 (1974 [Parte 1] Leyes de Puerto Rico 506).

**COMENTARIO:**

El Artículo 209 del Código Penal de 2012, *supra*, es análogo al Artículo 216 del Código Penal de 2004, *supra*, salvo que en el vigente se establece una pena fija y se añade en su último párrafo las circunstancias agravantes.

La definición de "Impostura" proviene de la tipificación del delito, codificado en el referido Artículo 208 del Código Penal de 2012.

## I. DE LAS FALSIFICACIONES

### 10.20 Falsificación de Documentos (Art. 211 del Código Penal de 2012)

Contra la persona acusada se ha presentado una acusación por el delito de Falsificación de Documentos.

La ley dispone que comete el delito de Falsificación de Documentos la persona que, con el propósito de defraudar, haga, en todo o en parte, un documento, instrumento o escrito falso mediante el cual se cree, transfiera, termine o, de otra forma, afecte cualquier derecho, obligación o interés, o que falsamente altere, limite, suprima o destruya, total o parcialmente, uno verdadero.

**[El tribunal debe impartir la Instrucción de acuerdo con la modalidad que aplique según se alegó en el pliego acusatorio:**

**A. Hacer falso, en todo o parcialmente, un documento, instrumento o escrito**

Los elementos de este delito son los siguientes:

(1) Con el propósito de defraudar,

(2) hacer falso, en todo o parcialmente, un documento, instrumento o escrito.

Esto significa que, al crear el escrito se imita uno verdadero, de tal forma que dé la impresión de que el documento no es falso. Para que se cometa el delito se necesita, además de hacer el documento falso con el propósito de defraudar, que dicho documento, instrumento o escrito falso cree, transfiera, termine o afecte algún derecho, obligación o interés de otras personas.

**B. Alterar, limitar, suprimir o destruir, total o parcialmente, un documento verdadero**

Los elementos de este delito son los siguientes:

(1) Con el propósito de defraudar,

(2) alterar, limitar, suprimir o destruir, total o parcialmente, un documento verdadero.

Alterar un documento verdadero significa que se le añade o se le quita algo. También constituye falsificación cuando se suprime, se limita o se destruye un documento verdadero. Esto es, que se hace desaparecer materialmente el documento o se le da fin a su existencia material, de forma total o parcial**].**

Una persona actúa "a propósito" cuando su objetivo consciente es la producción de un documento falso mediante ardid, simulación, trama, treta o cualquier forma de engaño. Es decir, implica el acto de engañar a otra persona con el propósito de obtener una ventaja material sobre ella o de inducirla a desprenderse de algún valor, derecho, privilegio u obligación.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no a propósito. Pueden inferir o deducir razonablemente de la prueba presentada y admitida el propósito de defraudar. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

**[El tribunal debe referirse al Artículo 46 del Código Penal cuando la persona acusada sea una persona jurídica].**

El "escrito" que puede ser objeto de falsificación incluye cualquier impreso, hoja, carta, escritura pública, documento notarial, sello, escritura o firma de una persona, ya sea en papel o en formato digital o imagen, así como moneda, papel moneda, fichas, tarjeta de crédito o cualquier otro símbolo o evidencia representativa de algún valor, derecho, privilegio u obligación.

El documento o instrumento que puede ser objeto de falsificación puede ser público o privado.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público

probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Falsificación de Documentos.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Falsificación de Documentos.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 17.1 del Proyecto de Libro de Instrucciones al Jurado de 2008 y del Libro de Instrucciones al Jurado para el Tribunal Superior de Puerto Rico de 1976, págs. 281-282. Guarda relación con el Artículo 14 (*Definiciones*), el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*), el Artículo 22 (*Elementos subjetivos del delito*) y el Artículo 211 (*Falsificación de documentos*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5014, 5034, 5035 y 5281); el Artículo 218 (*Documentos*) del Código Penal de 2004, Ley 149-2004 (33 LPRA sec. 4846), y el Artículo 271 (*Falsificación de documentos*) del Código Penal de 1974, Ley Núm. 115 de 22 de julio de 1974 (1974 [Parte 1] Leyes de Puerto Rico 531).

**COMENTARIO:**

En *Pueblo v. Uriel Álvarez,* 112 DPR 312, 321 esc. 4 (1982), se explica el delito de falsificación de documentos. Se indica que el "elemento esencial es la intención de defraudar y contempla dos modalidades: (1) hacer en todo o parcialmente un documento, instrumento o escrito falso y (2) alterar, imitar, suprimir o destruir, total o parcialmente uno verdadero. El documento falso puede crear, transferir, terminar o afectar cualquier derecho, obligación o interés". Véase *Pueblo v. Fernández Simono,* 140 DPR 514 (1996).

La definición de "escrito" proviene del Artículo 14 (q) del Código Penal de 2012, *supra*.


## 10.21    Falsedad Ideológica (Art. 212 del Código Penal de 2012)

Contra la persona acusada se ha presentado una acusación por el delito de Falsedad Ideológica.

La ley dispone que comete el delito de Falsedad Ideológica la persona que, con el propósito de defraudar, haga en un documento público o privado, declaraciones falsas concernientes a un hecho del cual el documento da fe, y, cuando se trate de un documento privado, tenga efectos jurídicos en perjuicio de otra persona.

El delito de Falsedad Ideológica consiste en hacer o incluir datos o ideas falsas en un documento público o privado con el propósito de defraudar.

**[El tribunal debe impartir la Instrucción de acuerdo con la modalidad que aplique según lo alegado en el pliego acusatorio:**

A. **Hacer declaraciones falsas en un documento público**

Los elementos de este delito son los siguientes:

(1) Con el propósito de defraudar,

(2) hacer declaraciones falsas en un documento público sobre un hecho del cual el documento da fe.

"Documento público" incluye cualquier escrito, impreso, papel, libro, folleto, fotografía, fotocopia, película, microforma, cinta magnetofónica, mapa, dibujo, plano, cinta, o cualquier material leído por máquina o producido de forma electrónica aunque nunca sea impreso en papel. También incluye cualquier archivo electrónico o cualquier otro material informativo o informático, sin importar su forma o características físicas, que se origine, se reciba manual o electrónicamente, o se conserve en cualquier dependencia del Estado Libre Asociado de Puerto Rico de acuerdo con la ley, o que se designe por ley como documento público. De igual forma, incluye cualquier escrito que se origine en el sector privado en el curso ordinario de transacciones con dependencias gubernamentales y que se conserven permanente o temporalmente en cualquier dependencia del gobierno por su utilidad administrativa o valor legal, fiscal o cultural.

B. **Hacer declaraciones falsas en un documento privado**

Los elementos de este delito son los siguientes:

(1) Con el propósito de defraudar,

(2) hacer declaraciones falsas en un documento privado sobre un hecho del cual el documento da fe y

(3) que la declaración falsa tenga efecto jurídico en perjuicio de otra persona**].**

Una persona actúa "a propósito" en este delito cuando su objetivo consciente es defraudar a otra persona.

"Defraudar" es el acto cometido mediante ardid, simulación, trama, treta o cualquier forma de engaño.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no a propósito. Pueden inferir o deducir razonablemente de la prueba presentada y admitida el propósito de defraudar. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

**[El tribunal debe referirse al Artículo 46 del Código Penal cuando la persona acusada sea una persona jurídica].**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Falsedad Ideológica.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Falsedad Ideológica.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 17.2 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con el Artículo 14 (*Definiciones*), el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*), el Artículo 22 (*Elementos subjetivos del delito*) y el Artículo 212 (*Falsedad ideológica*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5014, 5034, 5035 y 5282), y el Artículo 219 (*Falsedad ideológica*) del Código Penal de 2004, Ley 149-2004 (33 LPRA sec. 4847).

**COMENTARIO:**

El delito consiste en insertar en un documento público o privado, con la intención de defraudar, declaraciones falsas sobre un hecho por el que el documento da fe. En el caso en que el documento es privado, se requiere, además, que las declaraciones falsas tengan efecto jurídico en perjuicio de otra persona, ya sea natural, jurídica o el propio Estado. En cambio, si se trata de un documento público, basta la inserción de la información falsa con la intención de defraudar.

## 10.22 Posesión y Traspaso de Documentos Falsificados (Art. 217 del Código Penal de 2012)

Contra la persona acusada se ha presentado una acusación por el delito de Posesión y Traspaso de Documentos Falsificados.

La ley dispone que comete el delito de Posesión y Traspaso de Documentos Falsificados la persona que, con el propósito de defraudar, posea, use, circule, venda o pase como genuino o verdadero cualquier documento, instrumento o escrito falsificado, a sabiendas de que es falso, alterado, falsificado, imitado o contiene información falsa.

Los elementos de este delito son los siguientes:

(1) Con el propósito de defraudar,

(2) poseer, usar, circular, vender o poseer como genuino o verdadero cualquier documento, instrumento o escrito falsificado,

(3) a sabiendas de que es falso, alterado, falsificado, imitado o que contiene información falsa.

**[El Tribunal debe referirse al Artículo 46 del Código Penal cuando la persona acusada sea una persona jurídica].**

Una persona actúa "a propósito" cuando su objetivo consciente es defraudar a otra persona.

"Defraudar" es el acto cometido mediante ardid, simulación, trama, treta o cualquier forma de engaño.

"A sabiendas" es sinónimo de "con conocimiento". Una persona actúa "con conocimiento" cuando es consciente de que la producción del resultado o la existencia de la circunstancia es prácticamente segura. En este delito, una persona actúa "a sabiendas" cuando conoce que el documento es falsificado.

La mera posesión de un documento falsificado no configura el delito. Es necesario que la prueba demuestre que se posee con el propósito de defraudar.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no a propósito o con conocimiento. Pueden inferir o deducir razonablemente de la prueba presentada y admitida el propósito de defraudar y el conocimiento de que el documento es falsificado. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Posesión y Traspaso de Documentos Falsificados.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Posesión y Traspaso de Documentos Falsificados.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 17.3 del Proyecto de Libro de Instrucciones al Jurado de 2008 y del Libro de Instrucciones al Jurado para el Tribunal Superior de Puerto

Rico de 1976, págs. 283-284. Guarda relación con el Artículo 14 (*Definiciones*), el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*), el Artículo 22 (*Elementos subjetivos del delito*) y el Artículo 217 (*Posesión y traspaso de documentos falsificados*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5014, 5034, 5035 y 5287); el Artículo 224 (*Posesión y traspaso de documentos falsificados*) del Código Penal de 2004, Ley 149-2004 (33 LPRA sec. 4852), y el Artículo 272 (*Posesión y traspaso de documentos falsificados*) del Código Penal de 1974, Ley Núm. 115 de 22 de julio de 1974 (1974 [Parte 1] Leyes de Puerto Rico 531).

**J.    DE LOS DELITOS CONTRA LA SEGURIDAD DE LAS TRANSACCIONES COMERCIALES**

## 10.23  Insuficiencia de Fondos (Art. 222 del Código Penal de 2012)

Contra la persona acusada se ha presentado una acusación por el delito de Insuficiencia de Fondos.

La ley dispone que comete el delito de Insuficiencia de Fondos la persona que, con el propósito de defraudar, haga, extienda, endose o entregue un cheque, giro, letra u orden para el pago de dinero a cargo de cualquier banco u otro depositario, a sabiendas de que el emisor o girador no tiene suficiente provisión de fondos en dicho banco o depositario para el pago total del cheque, giro, letra u orden a su presentación, ni disfruta de la autorización expresa para girar en descubierto.

Los elementos del delito son los siguientes:

(1) Que, con el propósito de defraudar,

(2) una persona haga, extienda, endose o entregue un cheque, giro, letra u orden para el pago de dinero, a cargo de cualquier banco u otro depositario,

(3) a sabiendas de que el emisor o girador no tiene suficiente provisión de fondos en dicho banco o depositario para el pago total del cheque, giro, letra u orden a su presentación ni disfruta de la autorización expresa para girar en descubierto, y

(4) que la cantidad representada es mayor de $500*.*

"Defraudar" es el acto cometido mediante ardid, simulación, trama, treta o cualquier forma de engaño.

Una persona actúa "a propósito" en este delito cuando su objetivo consciente es hacer, extender, endosar o entregar un cheque, giro, letra u orden para el pago de dinero a cargo de cualquier banco u otro depositario con el conocimiento de que, al hacerlo, el emisor o girador no tenía fondos suficientes para el pago ni tenía autorización expresa para girar en descubierto.

Para probar el propósito de defraudar, es necesario cumplir con el procedimiento de interpelación, que requiere lo siguiente:

(a) Notificar la persona acusada personalmente o mediante carta certificada con acuse de recibo a su última dirección conocida, para que pague el importe adecuado en la dirección que se indique en el aviso, el importe del cheque, giro, letra u orden dentro de un plazo no menor de 10 días, si reside en la localidad de la víctima, y no menor de 15 días si reside en otro municipio o fuera del Estado Libre Asociado de Puerto Rico.

(b) La persona acusada no pagó, luego de vencido el término, que se computa desde la fecha de la notificación.

Si la persona acusada, al momento de emitir el cheque, giro, letra u orden, proveyó una dirección falsa o si rehusó proveer una dirección física, además de la postal, se entenderá que la notificación fue suficiente.

"A sabiendas" es sinónimo de "con conocimiento". En este delito, una persona actúa "a sabiendas" cuando conoce que el documento es falsificado.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no a propósito o con conocimiento. Pueden inferir o deducir razonablemente de la prueba presentada y admitida el propósito de defraudar y el conocimiento de no tener suficientes fondos. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Insuficiencia de Fondos.

**[Cuando se alegue la circunstancia agravante, el tribunal debe añadir la Instrucción siguiente:**

Si ustedes consideran, luego de un análisis cuidadoso de toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, que el Ministerio Público probó más allá de duda razonable la comisión del delito de Insuficiencia de Fondos, pero no que la cantidad representada por el cheque, giro, letra u orden es mayor de $500, deberán rendir un veredicto de culpable por el delito de Insuficiencia de Fondos sin esa circunstancia**].**

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Insuficiencia de Fondos.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 14 (*Definiciones*), el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*), el Artículo 22 (*Elementos subjetivos del delito*), el Artículo 222 (*Insuficiencia de fondos*), el Artículo 224 (*Conocimiento de falta de pago*), el Artículo 225 (*Interpelación*), el Artículo 226 (*Falta de pago después de interpelación*) y el Artículo 227 (*Pago en término*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5014, 5034, 5035, 5292, 5294-5297); el Artículo 229 (*Insuficiencia de fondos*) del Código Penal de 2004, Ley 149-2004 (33 LPRA sec. 4857), y el Artículo 264 (*Insuficiencia de fondos*) del Código Penal de 1974, Ley Núm. 115 de 22 de julio de 1974 (1974 [Parte 1] Leyes de Puerto Rico 529). Véanse *Pueblo v. McCloskey,* 164 DPR 90 (2005); *Pueblo v. Somarriba García,* 131 DPR 462 (1992); *Valentín v. Torres,* 80 DPR 463, 477 (1958); *Pueblo v. Cuevas,* 54 DPR 301, 304, y 306-307 (1939).

**COMENTARIO:**

Un cheque, un giro, una letra o una orden es un documento escrito dirigido a un banco u otro depositario para el pago de una cantidad indicada a la persona nombrada tenedora o a una persona designada.

La persona que comete este delito puede ser el librador del cheque, giro, letra u orden para el pago en dinero para el cual no hay suficiente provisión de fondos. Véase *Pueblo v. McCloskey,* supra, pág. 96.

Una persona comete una acción voluntaria cuando nace de su voluntad y no por fuerza o necesidad extraña a su voluntad.

Para probar el propósito de defraudar es necesario cumplir con el procedimiento de interpelación establecido en los Artículos 225 y 226 del Código Penal de 2012, *supra*. Si pasado el término de interpelación la persona no hace el pago, se considerará evidencia *prima facie* del propósito de defraudar. El delito no se consuma hasta que termine el término establecido por ley para la interpelación. Véanse *Pueblo v. McCloskey,* supra, págs. 96-97; *Pueblo v. Cuevas,* supra, págs. 305-306.

Aunque la modalidad que establece el segundo párrafo de este delito no clasifica si la pena corresponde a un delito grave o menos grave, esta modalidad constituye un delito grave. Véase *Pueblo v. Mimbs Machiavelo*, 198 DPR 567 (2017).

En cuanto al requisito de interpelación, véase *Pueblo v. Somarriba García,* supra, págs. 470-471, y el voto particular disidente del Juez Asociado Luis F. Estrella Martínez en *Pueblo v. Zambrana Trinidad*, 199 DPR 1020 (2018). En relación con el propósito de defraudar, el Tribunal Supremo determinó en *Pueblo v. Cuevas*, supra, que no se configura este delito si el librador informó sobre la insuficiencia de fondos y el cheque se aceptó con conocimiento de tal hecho. En particular, el Alto Foro expresó:

> No hubo en el presente caso intento o propósito de defraudar. El acusado al entregar el cheque al representante de su acreedor reveló a éste el hecho de que él no tenía fondos suficientes para su pago. No se consumó ni podía consumarse fraude alguno contra la compañía acreedora, porque ésta aceptó el cheque a sabiendas de que no había fondos en el

banco para su pago y que el pago se haría cuando y si al librador le fuera posible depositar fondos para cubrirlo. *Pueblo v. Cuevas*, supra, págs. 306-307.

En *Pueblo v. Somarriba García,* supra, pág. 471, se reitera la norma anterior. Refiérase a la Sentencia emitida en *Pueblo v. Gascot,* 166 DPR 210, 216 (2005), para un análisis sobre el propósito de defraudar cuando se expide un cheque posdatado.

CAPÍTULO 11
**DELITOS CONTRA LA SEGURIDAD COLECTIVA**

**A.    DE LOS INCENDIOS**

**11.1    Incendio (Art. 230 del Código Penal de 2012)**

Contra la persona acusada se ha presentado una acusación por el delito de Incendio.

La ley dispone que comete el delito de Incendio la persona que, a propósito, con conocimiento o temerariamente, ponga en peligro la vida, salud o integridad física de las personas al prender fuego a un edificio o propiedad.

Los elementos de este delito son los siguientes:

(1) A propósito, con conocimiento o temerariamente,

(2) poner en peligro la vida, salud o integridad física de las personas,

(3) al prender fuego a un edificio o propiedad.

Una persona actúa "a propósito" cuando su objetivo consciente es llevar a cabo un acto u omisión con el fin de obtener un resultado definido o cuando cree que una circunstancia existe.

Una persona actúa con "conocimiento" cuando es consciente de que la producción del resultado o la existencia de la circunstancia prohibida por ley es prácticamente segura.

Una persona actúa "temerariamente" cuando es consciente de que su conducta genera un riesgo sustancial e injustificado de que se produzca un resultado o la circunstancia prohibida por ley, y a pesar de conocer el riesgo, la persona continúa con su acción u omisión. Al evaluar si era consciente del riesgo, deberán determinar si había previsto la posibilidad de que existiese ese riesgo. Al momento de evaluar si un riesgo fue sustancial, deberán considerar la probabilidad de que se produjera el resultado o la circunstancia prohibida por ley. Al evaluar si un riesgo fue injustificado, deberán considerar lo que motivó a la persona a asumir el riesgo.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no a propósito, con conocimiento o temerariamente. Pueden inferir o deducir razonablemente de la prueba presentada y admitida el propósito, el conocimiento o la temeridad. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

"Edificio" incluye cualquier casa, estructura, barco, vagón, vehículo u otra construcción diseñada o adaptada para, o capaz de dar abrigo, a seres humanos o que pueda usarse para guardar cosas o animales, o para negocio. Incluye, además, sus anexos, dependencias y el solar donde esté enclavado.

No es necesario que el edificio o la propiedad quede total o parcialmente destruida. Bastará que se haya prendido fuego, aun cuando no ocurriese algún daño significativo.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Incendio.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Incendio.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 13.1 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con el Artículo 14 (*Definiciones*), el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*), el Artículo 22 (*Elementos subjetivos del delito*) y el Artículo 230 (*Incendio*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 y la Ley 27-2017 (33 LPRA secs. 5014, 5034, 5035 y 5311); el Artículo 236 (*Incendio*) del Código Penal de 2004, Ley 149-2004 (33 LPRA sec. 4864), y el Artículo 195 (*Incendio*) del Código Penal de 1974, Ley Núm. 115 de 22 de julio de 1974 (1974 [Parte 1] Leyes de Puerto Rico 507). Véanse *Pueblo v. Carmona Rodríguez*, 90 DPR 445 (1964); *Pueblo v. Palóu*, 80 DPR 364 (1958); *Pueblo v. Pérez*, 35 DPR 1038 (1926).

**COMENTARIO:**

La Ley 246-2014 enmendó el Artículo 230 del Código Penal de 2012 para precisar el elemento mental y adoptar una redacción más cercana a la del Artículo 236 del Código Penal de 2004. Al igual que con el Código Penal de 2004, el delito de Incendio se trata como un delito de seguridad colectiva. Indica la doctora Nevares-Muñiz que "la propiedad pasó a un segundo plano" [ya que lo anterior] se atiende mediante la pena de restitución y el delito de daños". Añade que:

> El acto antijurídico consiste en incendiar una de las estructuras incluidas bajo la definición de edificio o estructura. No importa si el [edificio] es propio o ajeno; tampoco será necesario que se destruya, sino basta que se prenda en fuego cualquier parte del mismo. Desde *Pueblo v. Pérez*, 35 DPR 1038 (1926) se entiende que la frase "pegó fuego" es equivalente al verbo incendiar; además, *Pueblo v. Palou*, 80 DPR 364 (1958); *Pueblo v. Carmona Rodríguez*, 90 DPR 445 (1964). Ese elemento del delito requiere que en el juicio se demuestre que cualquier parte del material del cual se compone el edificio prenda, entiéndase, se encienda. La doctrina alemana explica [este punto en] términos de que hay incendio tan pronto como el fuego prende en un objeto de modo que éste arde en forma autónoma después de alejado del objeto inflamante. [...] No es necesario que existan llamas para efectos de

configurarse este delito, sino que puede iniciarse el incendio o prenderse el fuego por una combustión propagante altamente peligrosa.

El elemento subjetivo puede ser a título de propósito, conocimiento o temeridad. Es elemento del delito que se ponga en peligro la vida, la salud o la integridad física de las personas al pegar fuego al edificio. D. Nevares-Muñiz, *Código Penal de Puerto Rico*, 4ta ed. rev., San Juan, Ed. Instituto para el Desarrollo del Derecho, 2019, págs. 355-356.

## 11.2   Incendio Agravado (Art. 231 del Código Penal de 2012)

Contra la persona acusada se ha presentado una acusación por el delito de Incendio Agravado.

La ley dispone que comete el delito de Incendio la persona que, a propósito, con conocimiento o temerariamente, ponga en peligro la vida, salud o integridad física de las personas al prender fuego a un edificio o propiedad. El delito de Incendio se considera Agravado cuando **[refiérase solamente a la(s) circunstancia(s) que aplique(n) conforme al pliego acusatorio]**:

> (a) se causó daño a la vida, salud o integridad corporal de alguna persona,
> (b) la persona que cometió el delito desapareció, dañó o inutilizó los instrumentos para apagar el incendio,
> (c) ocurrió en un edificio ocupado o perteneciente al Estado Libre Asociado de Puerto Rico,
> (d) se trató de una estructura donde se almacena material inflamable, tóxico, radioactivo o químico.

Los elementos de este delito son los siguientes:

> (1) A propósito, o con conocimiento o temerariamente,
> (2) poner en peligro la vida, salud o integridad física de las personas,
> (3) al prender fuego a un edificio o propiedad y
> (4) **[refiérase solamente a la(s) circunstancia(s) que aplique(n) conforme al pliego acusatorio]**:
> > (a) se causó daño a la vida, salud o integridad corporal de alguna persona,
> > (b) la persona que cometió el delito desapareció, dañó o inutilizó los instrumentos para apagar el incendio,
> > (c) ocurrió en un edificio ocupado o perteneciente al Estado Libre Asociado de Puerto Rico,
> > (d) se trató de una estructura donde se almacena material inflamable, tóxico, radioactivo o químico.

"Edificio" incluye cualquier casa, estructura, barco, vagón, vehículo u otra construcción diseñada o adaptada para, o capaz de, dar abrigo a seres humanos o que pueda

usarse para guardar cosas o animales, o para negocio. Incluye, además, sus anexos, dependencias y el solar donde esté enclavado.

"Edificio ocupado" incluye cualquier casa, estructura, vehículo o lugar adaptado para acomodo nocturno de personas, para llevar a cabo negocios, para el cuidado de niños o personas, para la enseñanza de cualquier nivel o para fines públicos, siempre que esté en uso, aunque al momento del hecho no haya personas presentes. Incluye, además, sus anexos, dependencias y el solar donde esté enclavado.

No es necesario que el edificio o la propiedad quede total o parcialmente destruida. Bastará que se haya prendido fuego, aun cuando no ocurriese algún daño significativo.

Una persona actúa "a propósito" cuando su objetivo consciente es llevar a cabo un acto u omisión con el fin de obtener un resultado definido o cuando cree que una circunstancia existe.

Una persona actúa con "conocimiento" cuando es consciente de que la producción del resultado o la existencia de la circunstancia prohibida por ley es prácticamente segura.

Una persona actúa "temerariamente" cuando es consciente de que su conducta genera un riesgo sustancial e injustificado de que se produzca un resultado o la circunstancia prohibida por ley, y a pesar de conocer el riesgo, la persona continúa con su acción u omisión. Al evaluar si era consciente del riesgo, deberán determinar si había previsto la posibilidad de que existiese ese riesgo. Al momento de evaluar si un riesgo fue sustancial, deberán considerar la probabilidad de que se produjera el resultado o la circunstancia prohibida por ley. Al evaluar si un riesgo fue injustificado, deberán considerar lo que motivó a la persona a asumir el riesgo.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no a propósito, con conocimiento o temerariamente. Pueden inferir o deducir razonablemente de la prueba presentada y admitida el propósito, el conocimiento o la temeridad. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Incendio Agravado.

Si ustedes consideran, luego de un análisis cuidadoso de toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, que el Ministerio Público probó más allá de duda razonable la comisión del delito pero no que **[indique la(s) circunstancia(s) que aplique(n) según lo alegado en el pliego acusatorio:**

(a) se causó daño a la vida, salud o integridad corporal de alguna persona,

(b) la persona que cometió el delito desapareció, dañó o inutilizó los instrumentos para apagar el incendio,

(c) ocurrió en un edificio ocupado o perteneciente al Estado Libre Asociado de Puerto Rico,

(d) se trató de una estructura donde se almacena material inflamable, tóxico, radioactivo o químico,**]**

deberán rendir un veredicto de culpable por el delito de Incendio.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 13.2 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con el Artículo 14 (*Definiciones*), el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*), el Artículo 22 (*Elementos subjetivos del delito*), el Artículo 230 (*Incendio*) y el Artículo 231 *(Incendio agravado)* del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 y la Ley 27-2017 (33 LPRA secs. 5014, 5034, 5035, 5311 y 5312); el Artículo 236 (*Incendio*) y el Artículo 237 (*Incendio agravado*) del Código Penal de 2004, Ley 149-2004 (33 LPRA secs. 4864 y 4865) (2010), y el Artículo 195 (*Incendio*) y el Artículo 196 (*Incendio agravado*) del Código Penal de 1974, Ley Núm. 115 de 22 de julio de 1974 (1974 [Parte 1] Leyes de Puerto Rico 507 y 508).

**COMENTARIO:**

La Ley 246-2014 introdujo el segundo párrafo. Este Artículo 231, *supra*, añadió la modalidad del incendio que ocurre en un edificio perteneciente al Estado Libre Asociado de Puerto Rico.

Explica la doctora Nevares-Muñiz que, "en el caso de que el daño a la persona constituya una muerte, estaríamos ante un asesinato en primer grado". D. Nevares-Muñiz, *Código Penal de Puerto Rico*, 4ta ed. rev., San Juan, Ed. Instituto para el Desarrollo del Derecho, 2019, pág. 357.

## 11.3   Incendio Forestal (Art. 232 del Código Penal de 2012)

Contra la persona acusada se ha presentado una acusación por el delito de Incendio Forestal.

La ley dispone que comete el delito de Incendio Forestal la persona que, a propósito, con conocimiento o temerariamente, ponga en peligro la vida, salud o integridad física de las personas al incendiar montes, sembrados, pastos, bosques o plantaciones ajenas.

Los elementos de este delito son los siguientes:

(1) A propósito, con conocimiento o temerariamente,

(2) poner en peligro la vida, salud o integridad física de las personas,

(3) al prender fuego a montes, sembrados, pastos, bosques o plantaciones ajenas.

Una persona actúa "a propósito" cuando su objetivo consciente es llevar a cabo un acto u omisión con el fin de obtener un resultado definido o cuando cree que una circunstancia existe.

Una persona actúa con "conocimiento" cuando es consciente de que la producción del resultado o la existencia de la circunstancia prohibida por ley es prácticamente segura.

Una persona actúa "temerariamente" cuando es consciente de que su conducta genera un riesgo sustancial e injustificado de que se produzca un resultado o la circunstancia prohibida por ley, y a pesar de conocer el riesgo, la persona continúa con su acción u omisión. Al evaluar si era consciente del riesgo, deberán determinar si había previsto la posibilidad de que existiese ese riesgo. Al momento de evaluar si un riesgo fue sustancial, deberán considerar la probabilidad de que se produjera el resultado o la circunstancia prohibida por ley. Al evaluar si un riesgo fue injustificado, deberán considerar lo que motivó a la persona a asumir el riesgo.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no a propósito, con conocimiento o temerariamente. Pueden inferir o deducir razonablemente de la prueba presentada y admitida el propósito, el conocimiento o la temeridad. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Incendio Forestal.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Incendio Forestal.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 13.3 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*), el Artículo 22 (*Elementos subjetivos del delito*) y el Artículo 232 (*Incendio forestal*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5034, 5035 y 5313); el Artículo 238 (*Incendio forestal*) del Código Penal de 2004, Ley 149-2004 (33 LPRA sec. 4866), y el Artículo 197 (*Incendio de bosques o plantaciones*) del Código Penal de 1974, Ley Núm. 115 de 22 de julio de 1974 (1974 [Parte 1] Leyes de Puerto Rico 508).

**COMENTARIO:**

El bien jurídico protegido es la propiedad ajena, puesto que el delito se configura al incendiar un monte, sembrado, pasto, bosque o plantación que pertenece a otra persona distinta de la

que cometió los hechos. J. P. Mañalich Raffo, *La protección del medio ambiente bajo el nuevo Código Penal de Puerto Rico*, 75 (Núm. 2) Rev. Jur. UPR 503, 505 (2006).

**B.** **DELITOS CONTRA EL ORDEN PÚBLICO O EL RESPETO A LA AUTORIDAD PÚBLICA**

### 11.4    Motín (Art. 242 del Código Penal de 2012)

Contra la persona acusada se ha presentado una acusación por el delito de Motín.

La ley dispone que constituye Motín cuando dos o más personas, obrando juntas y sin autoridad en ley, empleen o amenacen con emplear algún tipo de fuerza o violencia que perturbe la tranquilidad pública, acompañada la amenaza con la aptitud para realizarla.

Los elementos de este delito son los siguientes:

(1) A propósito, con conocimiento o temerariamente,

(2) que dos o más personas actúen juntas, sin autoridad de ley,

(3) [empleen fuerza o violencia que perturbe la tranquilidad pública] [amenacen con emplear fuerza o violencia que perturbe la tranquilidad pública, cuando se tiene la capacidad para cumplirla].

**[El tribunal debe impartir esta Instrucción acompañada de la Instrucción 4.5].**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Motín.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Motín.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 16.1 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con el Artículo 242 (*Motín*) del Código Penal de 2012, Ley 146-2012, según enmendada (33 LPRA sec. 5332); el Artículo 248 (*Motín*) del Código Penal de 2004, Ley 149-2004 (33 LPRA sec. 4876), y el Artículo 261 (*Motín*) del Código Penal de 1974, Ley Núm. 115 de 22 de julio de 1974 (1974 [Parte 1] Leyes de Puerto Rico 528).

**COMENTARIO:**

La inclusión en la acusación de dos o más personas acusadas no es un elemento esencial del delito de Motín. Lo único que requiere la ley para que se considere perpetrado este delito de Motín es que dos o más personas, actuando juntas y sin autoridad de ley, realicen los actos prohibidos por la ley. *Pueblo v. Yoder Hernández,* 101 DPR 360 (1973). La ley no impide que se formule una acusación por la comisión del delito de motín contra una sola persona. En tal caso, el Ministerio Público debe probar que, al actuar, la persona acusada lo hizo en unión a otras personas, y sin autoridad de ley.

No es un elemento de este delito que el acto de fuerza o violencia se emplee contra determinada persona o propiedad, como tampoco que haya causado algún daño. No obstante, es necesario que el acto de fuerza o violencia realizado por la persona acusada haya perturbado la tranquilidad pública, que es esencialmente lo que determina la comisión del delito de Motín. Véase *El Pueblo v. Ríos, et al.*, 31 DPR 528, 530 (1923).

## 11.5   Conspiración (Art. 244 del Código Penal de 2012)

Contra la persona acusada se ha presentado una acusación por el delito de Conspiración.

La ley dispone que constituye Conspiración el convenio o acuerdo, entre dos o más personas, para cometer un delito, cuando hayan formulado planes precisos respecto a la participación de cada cual, el tiempo y el lugar de los hechos.

Los elementos de este delito son los siguientes:

(1) Que hubo un convenio o acuerdo entre la persona acusada y una o más personas,
(2) con el propósito de cometer un delito grave y
(3) que entre estas hicieron planes precisos respecto a la participación de cada persona, el tiempo y el lugar de los hechos.

**[El tribunal debe leer la Instrucción siguiente cuando se alegue la circunstancia agravante en el pliego acusatorio:**

Además, corresponde a ustedes determinar si una de las personas que conspiraron es un(a) funcionario(a) del orden público y se aprovechó de su cargo**].**

Para que un convenio constituya Conspiración requiere que se realice algún acto para llevarlo a cabo por una o más de las personas que conspiran, excepto cuando la conspiración es para cometer un delito grave contra una persona o para cometer los delitos de incendiar o escalar un edificio.

Una persona actúa "a propósito" cuando lleva a cabo un acto u omisión con el fin de obtener un resultado definido. Con relación a una circunstancia, actúa "a propósito" cuando cree que esta existe.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no a propósito. Pueden inferir o deducir razonablemente de la prueba presentada y admitida el propósito de cometer un delito grave. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Conspiración.

**[Cuando se alegue la circunstancia agravante, el tribunal debe añadir la Instrucción siguiente:**

Si ustedes consideran, luego de un análisis cuidadoso de toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, que el Ministerio Público probó más allá de duda razonable la comisión del delito pero no que una de las personas que conspiraron es un(a) funcionario(a) del orden público que se aprovechó de su cargo, deberán rendir un veredicto de culpable por el delito de Conspiración sin esa circunstancia**].**

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Conspiración.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*), el Artículo 22 (*Elementos subjetivos del delito*) y el Artículo 244 (*Conspiración*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5034, 5035 y 5334); el Artículo 249 (*Conspiración*) y el Artículo 250 (*Convenio, cuándo constituye conspiración*) del Código Penal de 2004, Ley 149-2004 (33 LPRA secs. 4877 y 4878) (2010) y el Artículo 262 (*Conspiración*) y el Artículo 263 (*Convenio, cuando constituye conspiración*) del Código Penal de 1974, Ley Núm. 115 de 22 de julio de 1974 (1974 [Parte 1] Leyes de Puerto Rico 528). Véanse *Pueblo v. Arreche Holdum,* 114 DPR 99, 107 (1983); *Pueblo v. Dones Arroyo,* 106 DPR 303 (1977).

**COMENTARIO:**

El Tribunal Supremo definió conspiración a tenor del Artículo 262 del Código Penal de 1974, *supra*, como un "acuerdo, convenio, o pacto entre dos o más personas para realizar un acto

ilegal […] o para realizar un acto que está expresamente prohibido por el estatuto". (Énfasis suprimido). *Pueblo v. Arreche Holdum,* supra, pág. 107.

En los delitos que requieren un acto ulterior al acuerdo de configurar el delito de Conspiración, cualquiera de quienes conspiran puede llevar a cabo el acto. Tan pronto uno lleve a cabo tal acto, queda consumada la conspiración como delito. El acto ulterior requiere actos afirmativos que formen parte del comienzo de ejecución del delito último para el cual se conspiró.

Si el acto ulterior u optativo es de naturaleza delictiva, también podría, por sí solo, generar responsabilidad penal, independientemente del delito de Conspiración que también se comete. En este caso se trataría como un concurso real para fines de la pena.

La conspiración puede extenderse por un periodo de tiempo y, por definición, está unida a un curso de conducta que lleva a otros delitos. La conspiración no necesariamente termina con la comisión del delito acordado, por cuanto pueden haberse hecho acuerdos que se ejecutan luego de que se comete el delito y que de por sí generan otros delitos. Véase *Pueblo v. Dones Arroyo,* supra.

### 11.6 Empleo de Violencia o Intimidación contra la Autoridad Pública (Art. 245 del Código Penal de 2012)

Contra la persona acusada se ha presentado una acusación por el delito de Empleo de Violencia o Intimidación Contra la Autoridad Pública.

La ley dispone que comete este delito de la persona que use violencia o intimidación contra un(a) funcionario(a) o empleado(a) público(a) para obligarle a [llevar a cabo un acto propio de su cargo] [omitir algún acto propio de su cargo] [realizar un acto contrario a sus deberes oficiales].

Los elementos de este delito son los siguientes:

(1) A propósito, con conocimiento o temerariamente,
(2) usar violencia o intimidación,
(3) contra un(a) funcionario(a) o empleado(a) público(a)
(4) para obligarle a **[refiérase solamente a la modalidad que corresponda según lo alegado en el pliego acusatorio]**:
  (a) llevar a cabo un acto propio de su cargo,
  (b) omitir algún acto propio de su cargo,
  (c) realizar un acto contrario a sus deberes oficiales.

"Violencia" significa el empleo de fuerza física sobre una persona.

"Intimidación" consiste en infundir miedo o temor por medio de amenazas. Existe la intimidación si mediante palabras, conducta o circunstancias se crea en la mente de la

víctima el temor del peligro. La intimidación puede ser ocasionada, entre otras, por cualquiera de las causas siguientes:

(a) El temor de algún daño a la persona o a los bienes de la víctima, o de alguno(a) de sus parientes o miembros de su familia.

(b) El temor de algún daño inmediato o ilícito a la persona o a los bienes de cualquiera de quienes se encuentren en la compañía de la víctima al tiempo de cometerse el delito.

"Funcionario(a) o empleado(a) público(a)" es la persona que ejerce un cargo o desempeña una función o encomienda, con o sin pago, permanente o temporeramente, debido a cualquier tipo de nombramiento, contrato o designación, para la Rama Legislativa, Ejecutiva o Judicial, o para el gobierno municipal del Estado Libre Asociado de Puerto Rico. Incluye a quienes representan el interés público y sean designadas para ocupar un cargo en una junta, corporación pública, entidad gubernamental y sus subsidiarias del Estado Libre Asociado de Puerto Rico, así como a los(as) notarios(as). El término "funcionario(a) público(a)" incluye las personas que ocupan cargos o empleos en el gobierno del Estado Libre Asociado y que están investidas de parte de la soberanía del gobierno, por lo que intervienen en la formulación e implantación de la política pública.

**[El tribunal debe impartir esta Instrucción acompañada de la Instrucción 4.5].**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Empleo de Violencia o Intimidación contra la Autoridad Pública.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Empleo de Violencia o intimidación contra la Autoridad Pública.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 14 (*Definiciones*) y el Artículo 245 (*Empleo de violencia o intimidación contra la autoridad pública*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5014 y 5335); el Artículo 251 (*Empleo de violencia o intimidación contra la autoridad pública*) del Código Penal de 2004, Ley 149-2004 (33 LPRA sec. 4879), y el Artículo 256 (*Empleo de violencia, intimidación contra la autoridad pública*) y el Artículo 257 (*Compeler a acto propio de su cargo*) del Código Penal de 1974, Ley Núm. 115 de 22 de julio de 1974 (1974 [Parte 1] Leyes de Puerto Rico 526).

**COMENTARIO:**

Este delito no ha sido objeto de interpretación por el Tribunal Supremo. No obstante, la doctora Nevares-Muñiz comenta que "[e]l delito se consuma en todas las modalidades cuando el sujeto activo usa la violencia o intimidación contra el funcionario o empleado público con el propósito indicado en el tipo. No es necesario que el sujeto pasivo lleve a cabo la conducta requerida por el sujeto activo". D. Nevares-Muñiz, *Código Penal de Puerto Rico*, 4ta ed. rev., San Juan, Ed. Instituto para el Desarrollo del Derecho, 2019, pág. 381. Cabe destacar que constituye un delito distinto —entiéndase, el delito de soborno— prometer o beneficiar a un(a) funcionario(a) o empleado(a) público(a) para que actúe contrario a sus funciones. Íd.

En cuanto a los actos que constituyen violencia e intimidación, la doctora Nevares-Muñiz expone lo siguiente:

> La violencia se refiere al uso de fuerza física contra la persona, mientras que la intimidación se refiere al uso de coacción o presión sicológica sobre la persona, caracterizada por la amenaza de que se habrá de sufrir un daño personal o patrimonial, inminente e injustificado. Nevares-Muñiz, *op. cit.*, pág. 381.

CAPÍTULO 12
## DELITOS CONTRA LA FUNCIÓN GUBERNAMENTAL

**A.** **DE LOS DELITOS CONTRA EL EJERCICIO DEL CARGO PÚBLICO**

### 12.1 Soborno (Art. 259 del Código Penal de 2012)

Contra la persona acusada se ha presentado una acusación por el delito de Soborno.

La ley dispone que comete el delito de Soborno todo(a) funcionario(a) o empleado(a) público(a), jurado(a), un (una) testigo, árbitro(a) o cualquier persona autorizada en ley para tomar decisiones, oír o resolver alguna cuestión o controversia, que solicite o reciba directamente o por persona intermediaria, para sí o para un(a) tercero(a), un dinero o cualquier beneficio, o que acepte una proposición en tal sentido, a cambio de realizar, omitir o retardar un acto regular de su cargo o funciones, o por ejecutar un acto contrario al cumplimiento regular de sus deberes o con el entendido de que tal remuneración o beneficio habrá de influir en cualquier acto, decisión, voto o dictamen de dicha persona en su carácter oficial.

Los elementos de este delito son los siguientes:

(1) Que un(a) funcionario(a) o empleado(a) público(a), jurado(a), un (una) testigo, árbitro(a) o cualquier persona autorizada por ley para oír o resolver alguna cuestión o controversia,

(2) solicite o reciba dinero o cualquier beneficio, directamente o por intermediario(a), para beneficio propio o de una tercera persona, o acepte una proposición,

(3) con el fin de realizar, omitir, retardar un acto regular de su cargo o funciones, o por realizar un acto contrario al cumplimiento regular de sus deberes o con el entendido de que tal remuneración o beneficio habrá de influir en cualquier acto, decisión, voto o dictamen de dicha persona en su carácter oficial.

"Funcionario(a) o empleado(a) público(a)" es la persona que ejerce un cargo o desempeña una función o encomienda, con o sin pago, permanente o temporeramente, debido a cualquier tipo de nombramiento, contrato o designación, para la Rama Legislativa, Ejecutiva o Judicial, o para el gobierno municipal del Estado Libre Asociado de Puerto Rico. Incluye a quienes representan el interés público y sean designadas para ocupar un cargo en una junta, corporación pública, entidad gubernamental y sus subsidiarias del Estado Libre Asociado de Puerto Rico, así como a los(as) notarios(as). El término "funcionario(a) público(a)" incluye las personas que ocupan cargos o empleos en el gobierno del Estado Libre Asociado y que están investidas de parte de la soberanía del gobierno, por lo que intervienen en la formulación e implantación de la política pública.

El delito de Soborno lo pueden cometer las personas siguientes: funcionario(a), empleado(a) público(a), miembro del Jurado, un (una) testigo, árbitro(a) o cualquier

persona autorizada por ley para oír o resolver alguna cuestión o controversia. También lo puede cometer una persona que no caiga en las anteriores clasificaciones pero que haya participado en colaboración con una de las anteriores. En este caso, la persona que no es funcionario(a) se considera coautor(a) del delito.

La mera solicitud del soborno o su mero recibo, o la mera aceptación de una proposición para solicitarlo y recibirlo, es suficiente para probar este elemento del delito. No es necesario que se cumpla con el fin del soborno. Tampoco es necesario que la solicitud o el recibo del dinero o beneficios, o la aceptación de la promesa para aceptarlo o recibirlo, lo haga directamente por la persona acusada. La solicitud puede hacerse a través de una tercera persona. Tampoco es necesario que el dinero o el beneficio que se solicite o recibe, o que se convenga en solicitar o recibir, sea para la persona acusada; puede serlo para un tercero.

"Beneficio" es cualquier provecho, utilidad, ventaja, lucro o ganancia económica o material.

**[El tribunal debe impartir esta Instrucción acompañada de la Instrucción 4.5].**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Soborno.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Soborno.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 14.1 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con el Artículo 14 (*Definiciones*) y el Artículo 259 (*Soborno*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5014 y 5350); el Artículo 262 (*Soborno*) del Código Penal de 2004 (33 LPRA sec. 4890); el Artículo 209 (*Soborno*), el Artículo 210 (*Delito agravado*) y el Artículo 211 (*Soborno de testigo*) del Código Penal de 1974, Ley Núm. 115 de 22 de julio de 1974 (1974 [Parte 1] Leyes de Puerto Rico 511). Véanse *Pueblo v. Soto Molina*, 191 DPR 209, 219-220 (2014); *Pueblo v. Rosado Figueroa*, 138 DPR 914 (1995) (Sentencia).

**COMENTARIO:**

El delito de Soborno sanciona que un(a) servidor(a) público(a) solicite o reciba un beneficio "por un servicio que de ordinario es gratuito, aprovechándose de la autoridad del cargo que ocupa". *Pueblo v. Soto Molina*, supra, págs. 219-220. El Tribunal Supremo dispuso que no es necesario probar que la persona acusada llevó a cabo las gestiones de su cargo a cambio del ofrecimiento o de la promesa de un beneficio, puesto que basta con que se haya aceptado la

oferta o recibido el beneficio. En lo pertinente, se indicó lo siguiente:

> El delito se configura tan pronto el funcionario público acepta la proposición objeto del soborno, o cuando solicita el beneficio por sí o por medio de una tercera persona a cambio de llevar a cabo un acto regular de su cargo o función oficial. No es necesario que el acto delictivo objeto del soborno se lleve a cabo. Íd., pág. 221, citando con aprobación a *Pueblo v. Rosado Figueroa,* supra, pág. 919.

Por su parte, en *Pueblo v. Bigio Pastrana*, 116 DPR 748 (1985), el Tribunal Supremo expresó que:

> Esta sección tipifica los delitos que violan el orden moral y los valores fundamentales de la administración pública puertorriqueña. "Esta no sufre quebrantos en su patrimonio con la actividad deshonesta de sus servidores; pero la venalidad de los mismos, que se enriquecen prevaliéndose de la autoridad del cargo que desempeñan y de las funciones que ejercen, lesionan con su conducta la dignidad y el decoro de la Administración pública". Íd., pág. 755, citando con aprobación a J. Miró Cardona, *Borrador para un proyecto de Código Penal Puertorriqueño*, 41 Rev. Jur. UPR 401, 649 (1972).

La definición de "funcionario(a) o empleado(a) público(a)" proviene del Artículo 14(x) del Código Penal de 2012, *supra*. Sin embargo, nótese que se sustituyó la frase "depositarios de la fe pública notarial" por "los(as) notarios(as)" para facilitar la comprensión del Jurado.

## 12.2   Oferta de Soborno (Art. 260 del Código Penal de 2012)

Contra la persona acusada se ha presentado una acusación por el delito de Oferta de Soborno.

La ley dispone que comete el delito de Oferta de Soborno la persona que, directamente o por persona intermediaria, dé o prometa a un(a) funcionario(a) o empleado(a) público(a), un (a) testigo, un(a) jurado, un(a) árbitro o a cualquier otra persona autorizada por ley para oír o resolver una cuestión o controversia, dinero o cualquier beneficio con el fin de que realice un acto regular de su cargo o funciones, de que omita o retarde un acto regular de su cargo o funciones, de que ejecute un acto contrario al cumplimiento regular de sus deberes o con el entendido de que tal remuneración o beneficio habrá de influir en cualquier acto, decisión, voto o dictamen de dicha persona en su carácter oficial.

Los elementos de este delito son los siguientes:

(1) Que se dé o prometa dinero o cualquier beneficio a un(a) funcionario(a) o empleado(a) público(a), un(a) testigo, un(a) jurado(a), un(a) árbitro o a cualquier otra persona autorizada por ley para oír o resolver una cuestión o controversia,

(2) para que realice, omita o retarde un acto regular de su cargo o funciones, para que ejecute un acto contrario al cumplimiento regular de sus deberes o con el entendido de que tal remuneración o beneficio habrá de influir en

cualquier acto, decisión, testimonio, voto o dictamen de dicha persona en su carácter oficial.

"Funcionario(a) o empleado(a) público(a)" es la persona que ejerce un cargo o desempeña una función o encomienda, con o sin pago, permanente o temporeramente, debido a cualquier tipo de nombramiento, contrato o designación, para la Rama Legislativa, Ejecutiva o Judicial, o para el gobierno municipal del Estado Libre Asociado de Puerto Rico. Incluye a quienes representan el interés público y sean designadas para ocupar un cargo en una junta, corporación pública, entidad gubernamental y sus subsidiarias del Estado Libre Asociado de Puerto Rico, así como a los(as) notarios(as). El término "funcionario(a) público(a)" incluye las personas que ocupan cargos o empleos en el gobierno del Estado Libre Asociado y que están investidas de parte de la soberanía del gobierno, por lo que intervienen en la formulación e implantación de la política pública.

No es necesario que se cumpla con el fin del soborno. Tampoco que la persona acusada dé o prometa dar dinero o algún beneficio directamente. Puede hacerse a través de una tercera persona.

"Beneficio" es cualquier provecho, utilidad, ventaja, lucro o ganancia económica o material.

**[El tribunal debe impartir esta Instrucción acompañada de la Instrucción 4.5].**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Oferta de Soborno.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Oferta de Soborno.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 14.2 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con el Artículo 14 (*Definiciones*) y el Artículo 260 (*Soborno*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5014 y 5351); el Artículo 263 (*Oferta de soborno*) del Código Penal de 2004 (33 LPRA sec. 4891), y el Artículo 212 (*Oferta de soborno*) del Código Penal de 1974, Ley Núm. 115 de 22 de julio de 1974 (1974 [Parte 1] Leyes de Puerto Rico 512). Véanse *Pueblo v. Carballosa y Balzac*, 130 DPR 842 (1992); *Pueblo v. Bigio Pastrana*, 116 DPR 748 (1985).

**COMENTARIO:**

El Artículo 260 del Código Penal de 2012, *supra*, es similar a sus predecesores: el Artículo 263 del Código Penal de 2004 y el 212 del Código Penal de 1974. Este delito procura sancionar la conducta de una persona que "corrompe o pretende corromper al funcionario público, quien debe descargar […] las obligaciones inherentes de su cargo sin que esté de por medio emolumento o cualquier beneficio adicional al que por ley le corresponde". *Pueblo v. Bigio Pastrana*, supra, págs. 756-757. En *Pueblo v. Carballosa y Balzac*, supra, el Tribunal Supremo aclaró que:

> El delito va dirigido, pues, a penalizar exclusivamente a la persona que mediante el *ofrecimiento o entrega* de cualquier beneficio (monetario o de otra índole) a un funcionario público pretende que este último cumpla con las funciones que está obligado a realizar [por ley]. […] No hay que probar, sin embargo, que el funcionario "tenía la autoridad *final* en la cadena de eventos. …Es suficiente en derecho que el acto que se interesa llevar a cabo esté comprendido entre los deberes generales del empleado según descritos en su nombramiento y conforme a las tareas que diariamente realiza". (Énfasis en el original). Íd., págs. 849-850.

Quien participa como persona intermediaria en la comisión de este delito es coautor(a). D. Nevares-Muñiz, *Código Penal de Puerto Rico*, 4ta ed. rev., San Juan, Ed. Instituto para el Desarrollo del Derecho, 2019, pág. 407. De igual forma, una persona jurídica puede cometer este delito. En este último caso, la sanción es una pena de multa.

La definición de "funcionario(a) o empleado(a) público(a)" proviene del Artículo 14(x) del Código Penal de 2012, *supra*. Sin embargo, nótese que se sustituyó la frase "depositarios de la fe pública notarial" por "los(as) notarios(as)" para facilitar la comprensión del Jurado.

## 12.3   Influencia Indebida (Art. 261 del Código Penal de 2012)

Contra la persona acusada se ha presentado una acusación por el delito de Influencia Indebida.

La ley dispone que comete el delito de Influencia Indebida la persona que obtenga o trate de obtener de otra persona cualquier beneficio al asegurar o pretender que se halla en la aptitud de influir, en cualquier forma, en la conducta de un(a) funcionario(a) o empleado(a) público(a), en lo que respecta al ejercicio de sus funciones.

Los elementos de este delito son los siguientes:

(1) Obtener o tratar de obtener cualquier beneficio de una persona,
(2) al asegurar o pretender que se tiene capacidad de influir, en cualquier forma, en la conducta de un(a) funcionario(a) o de un(a) empleado(a) público(a) en lo que respecta al ejercicio de sus funciones.

"Funcionario(a) o empleado(a) público(a)" es la persona que ejerce un cargo o desempeña una función o encomienda, con o sin pago, permanente o temporeramente, debido a cualquier tipo de nombramiento, contrato o designación, para la Rama Legislativa,

Ejecutiva o Judicial, o para el gobierno municipal del Estado Libre Asociado de Puerto Rico. Incluye a quienes representan el interés público y sean designadas para ocupar un cargo en una junta, corporación pública, entidad gubernamental y sus subsidiarias del Estado Libre Asociado de Puerto Rico, así como a los(as) notarios(as). El término "funcionario(a) público(a)" incluye las personas que ocupan cargos o empleos en el gobierno del Estado Libre Asociado y que están investidas de parte de la soberanía del gobierno, por lo que intervienen en la formulación e implantación de la política pública.

"Beneficio" es cualquier provecho, utilidad, ventaja, lucro o ganancia económica o material.

Cualquier persona puede cometer este delito. No se limita a los(as) funcionarios(as) o los(as) empleados(as) públicos(as).

**[El tribunal debe impartir esta Instrucción acompañada de la Instrucción 4.5].**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Influencia Indebida.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de influencia indebida.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 14.13 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con el Artículo 14 (*Definiciones*) y el Artículo 261 (*Oferta de soborno*) del Código Penal 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5014 y 5352); el Artículo 264 (*Influencia indebida*) del Código Penal de 2004 (33 LPRA sec. 5352), y el Artículo 213 (*Influencia indebida*) del Código Penal de 1974, Ley Núm. 115 de 22 de julio de 1974 (1974 [Parte 1] Leyes de Puerto Rico 512). Véanse *Pueblo v. Soto Molina*, 191 DPR 209 (2014); *Pueblo v. Luzón*, 113 DPR 315, 320 (1982).

**COMENTARIO:**

El Artículo 261 del Código Penal de 2012, *supra*, proviene del Artículo 264 del Código Penal de 2004, *supra*, que a su vez procede del Artículo 213 del Código Penal de 1974, *supra*. Una persona jurídica puede cometer el delito de Influencia Indebida, y se le impondrá una pena de multa.

En cuanto a este delito, el Tribunal Supremo indicó lo siguiente:

> [E]l delito de influencia indebida penaliza tratar o lograr obtener un beneficio —de cualquier tipo— *por pretender ejercer una influencia* — ya sea real o imaginaria— en el desempeño del ejercicio de un funcionario o empleado público como tal. (Énfasis en el orignal). *Pueblo v. Soto Molina*, supra, pág. 220.

Este delito se configura cuando cualquier persona asegura o pretende que está capacitada para influenciar a un(a) funcionario(a) o empleado(a) público(a). Íd., pág. 222. Véase, además, *Pueblo v. Luzón*, supra, pág. 320. No se requiere obtener un beneficio, ya que es suficiente que quien comete el delito obtenga o intente obtener un beneficio en favor de otras personas. La influencia que asegura o pretende ejercer el (la) autor(a) del acto puede ser real o imaginaria —o en cualquier forma— en la conducta de un(a) funcionario(a) o empleado(a) público(a) en lo que respecta al ejercicio de sus funciones. Íd., pág. 320. La influencia indebida no tiene que estar dirigida con el propósito de que el servidor público o la servidora pública lleve a cabo un acto ilegal. El fin puede ser tanto legítimo como ilegal. No hay violación del estatuto si la influencia de que se trata es para que un(a) funcionario(a) o empleado(a) público(a) cumpla con su deber. Íd., pág. 321.

La definición de "funcionario(a) o empleado(a) público(a)" proviene del Artículo 14(x) del Código Penal de 2012, *supra*. Sin embargo, nótese que se sustituyó la frase "depositarios de la fe pública notarial" por "los(as) notarios(as)" para facilitar la comprensión del Jurado.

## 12.4   Malversación de Fondos Públicos (Art. 264 del Código Penal de 2012)

Contra la persona acusada se ha presentado una acusación por el delito de Malversación de Fondos Públicos.

La ley dispone que comete el delito de Malversación de Fondos Públicos, independientemente de si obtuvo o no un beneficio para sí o para un(a) tercero(a), todo(a) funcionario(a) o empleado(a) público(a) que sea directa o indirectamente responsable de la administración, el traspaso, el cuidado, la custodia, los ingresos, los desembolsos o la contabilidad de fondos públicos y que **[especifique solamente el (los) acto(s) que corresponda(n) según lo alegado en el pliego acusatorio]**:

(a) se los apropie ilegalmente, en todo o en parte,

(b) los utilice para cualquier fin que no esté autorizado o que sea contrario a la ley o a la reglamentación,

(c) los deposite ilegalmente, los altere o realice cualquier asiento o registro en alguna cuenta o documento relacionado con ellos sin autorización o contrario a la ley o a la reglamentación,

(d) los retenga, convierta, traspase o entregue ilegalmente sin autorización o contrario a la ley o a la reglamentación, o

(e) deje de guardar o desembolsar fondos públicos en la forma prescrita por ley.

**[El tribunal debe leer la Instrucción siguiente cuando se alegue la circunstancia agravante en el pliego acusatorio:**

Además, corresponde a ustedes determinar si la pérdida de fondos públicos sobrepasa de $50,000**].**

"Apropiar" incluye malversar, defraudar, ejercer control ilegal, usar, sustraer, apoderarse o, en cualquier forma, hacer propio cualquier bien o cosa que no le pertenece, en forma temporal o permanente.

"Funcionario(a) o empleado(a) público(a)" es la persona que ejerce un cargo o desempeña una función o encomienda, con o sin pago, permanente o temporeramente, debido a cualquier tipo de nombramiento, contrato o designación, para la Rama Legislativa, Ejecutiva o Judicial, o para el gobierno municipal del Estado Libre Asociado de Puerto Rico. Incluye a quienes representan el interés público y sean designadas para ocupar un cargo en una junta, corporación pública, entidad gubernamental y sus subsidiarias del Estado Libre Asociado de Puerto Rico, así como a los(as) notarios(as). El término "funcionario(a) público(a)" incluye las personas que ocupan cargos o empleos en el gobierno del Estado Libre Asociado y que están investidas de parte de la soberanía del gobierno, por lo que intervienen en la formulación e implantación de la política pública.

**[El tribunal debe impartir esta Instrucción acompañada de la Instrucción 4.5].**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Malversación de Fondos Públicos.

**[En los casos en que se alegue la circunstancia agravante, el tribunal debe añadir la Instrucción siguiente:**

Si ustedes consideran, luego de un análisis cuidadoso de toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, que el Ministerio Público probó más allá de duda razonable la comisión del delito, pero no que hubo una pérdida de fondos públicos que sobrepase $50,000, deberán rendir un veredicto de culpable por el delito de Malversación de Fondos Públicos sin esa circunstancia**].**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Malversación de Fondos Públicos.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 14.4 del Proyecto *de Libro de Instrucciones al Jurado* de 2008. Guarda relación con el Artículo 14 (*Definiciones*) y el Artículo 264 (*Malversación de fondos públicos*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5014 y 5355); el Artículo 267 (*Malversación de fondos públicos*) del Código Penal de 2004 (33 LPRA sec. 4895), y el Artículo 216 (*Delitos contra fondos públicos*) del Código Penal de 1974, Ley Núm. 115 de 22 de julio de 1974 (1974 [Parte 1] Leyes de Puerto Rico 513). Véase *Pueblo v. Rodríguez Santana*, 146 DPR 860, 885 (1998).

**COMENTARIO**:

En el análisis de este delito hay que considerar que el límite de la conducta permisible en el manejo de fondos públicos es lo que establece la ley o la reglamentación aplicable a la circunstancia o situación en particular. No importa si la apropiación y el uso que se le da a los bienes sea con ánimo temporero o con la intención de reintegrarlos. No se requiere que el (la) autor(a) tenga la custodia real y directa de los fondos públicos; es suficiente que los controle de manera que cause que se usen para fines no públicos o para fines ilícitos o no autorizados conforme dispone la ley. *Pueblo v. Rodríguez Santana*, supra, pág. 885.

No es necesario que el (la) autor(a) obtenga un beneficio o lucro personal con su conducta. D. Nevares-Muñiz, *Código Penal de Puerto Rico*, 4ta ed. rev., San Juan, Ed. Instituto para el Desarrollo del Derecho, 2019, pág. 413. Lo importante es que la actuación sea contraria a la ley o a la reglamentación aplicable a la situación en particular.

La definición de "funcionario(a) o empleado(a) público(a)" proviene del Artículo 14(x) del Código Penal de 2012, *supra*. Sin embargo, nótese que se sustituyó la frase "depositarios de la fe pública notarial" por "los(as) notarios(as)" para facilitar la comprensión del Jurado.

**B.    DELITOS CONTRA LA FUNCIÓN JUDICIAL**

**12.5   Perjurio (Art. 269 del Código Penal de 2012)**

**[El tribunal debe impartir la instrucción de la modalidad que corresponda según alegado en el pliego acusatorio].**

A. **Primera modalidad – Declaración con conocimiento de su falsedad o cuya certeza no le consta a quien la presta**

Contra la persona acusada se ha presentado una acusación por el delito de Perjurio.

La ley dispone que comete el delito de Perjurio la persona que jure o afirme, testifique, declare, deponga o certifique la verdad ante cualquier tribunal, organismo, funcionario(a) o persona competente y declare que es cierto cualquier hecho esencial o importante con

conocimiento de su falsedad o que declare categóricamente sobre un hecho esencial o importante cuya certeza no le consta.

Los elementos de este delito son los siguientes:

(1) Que una persona jure o afirme, testifique, declare, deponga o certifique la verdad,

(2) ante cualquier tribunal, organismo, funcionario(a) o persona competente y

(3) declare que es cierto cualquier hecho esencial o importante con conocimiento de su falsedad o que declare categóricamente sobre un hecho esencial o importante cuya certeza no le consta.

"Juramento" incluye la afirmación o declaración, así como toda otra forma de confirmar la verdad de lo que se declara. Toda forma de declaración oral bajo juramento o afirmación está comprendida en la voz *testificar*, y toda declaración por escrito está comprendida en la palabra deponer.

Los términos "testificar", "declarar", "deponer" y "certificar la verdad" incluyen cualquier declaración bajo juramento o afirmación, sea oral o escrita.

Para propósitos de este delito, "organismo" incluye toda institución que tiene funciones cuasijudiciales, cuasilegislativas o cuasiadjudicativas. Las instituciones cuasijudiciales son las que tienen funciones parecidas a las de los tribunales (celebrar vistas y recibir prueba para resolver controversias), las cuasilegislativas tienen funciones parecidas a las de la Legislatura (establecer normas y reglamentos) y las cuasiadjudicativas son las que tienen la facultad de atender controversias, hacer investigaciones y formular recomendaciones para su solución.

La ley no exige forma especial alguna de juramento o afirmación. Se usará la forma que el (la) declarante tenga por más obligatoria o solemne.

No es defensa el hecho de que la prestación o toma del juramento se haya hecho de forma irregular.

No es defensa que la persona acusada ignoraba la importancia de la declaración falsa que hizo o que está en realidad no afectara a la causa en la cual o para la cual se diera o prestara. Basta con que tal declaración sea esencial o importante y que haya podido utilizarse para afectar el proceso.

Para que el delito de Perjurio quede consumado es necesario que la persona acusada preste juramento de decir la verdad, ante un tribunal, organismo, funcionario(a) o persona competente, y que, voluntariamente y contrario a dicho juramento, declare o haya declarado como cierto cualquier hecho esencial o importante conociendo su falsedad o haya declarado categóricamente sobre un hecho esencial cuya certeza no le conste.

En todo caso, el Ministerio Público deberá demostrar cuál es el hecho concreto y esencial que se imputa a la persona acusada sobre el cual se alega juró como cierto conociendo que era falso o sobre el cual se alega juró que era cierto cuando la certeza no le

constaba. El Ministerio Público deberá establecer la certeza o falsedad de los hechos declarados.

La declaración o certificación se considera consumada desde que la persona acusada la prestó con el propósito de que se publique, divulgue o use como verdadera.

Una persona actúa "con conocimiento" cuando es consciente de que la producción del resultado es una consecuencia prácticamente segura de su conducta o cuando es consciente de que la existencia de la circunstancia es prácticamente segura.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no con conocimiento. Pueden inferir o deducir razonablemente de la prueba presentada y admitida el conocimiento de la falsedad del hecho declarado. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Perjurio.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Perjurio.

## B. Segunda modalidad – Declaraciones irreconciliables entre sí

Contra la persona acusada se ha presentado una acusación por el delito de Perjurio.

La ley dispone que comete el delito de Perjurio la persona que jure o afirme, testifique, declare, deponga o certifique decir la verdad ante cualquier tribunal, organismo, funcionario(a) o persona competente y preste dos o más testimonios, declaraciones, deposiciones o certificaciones irreconciliables entre sí.

Los elementos de este delito son los siguientes:

(1) Que una persona jure o afirme, testifique, declare, deponga o certifique la verdad,

(2) ante cualquier tribunal, organismo, funcionario(a) o persona competente, y

(3) preste dos o más testimonios, declaraciones, deposiciones o certificaciones irreconciliables entre sí.

Cuando una persona ha hecho dos o más declaraciones que son incompatibles o irreconciliables entre sí, la ley presupone que una de ellas es falsa. Por ello, el Ministerio

Público no tiene que establecer cuál de las declaraciones es cierta y cuál es falsa. Es decir, el Ministerio Público no tiene que establecer la certeza o falsedad de los hechos relatados.

Para propósitos de este delito, "organismo" incluye toda institución que tiene funciones cuasijudiciales, cuasilegislativas o cuasiadjudicativas. Las instituciones cuasijudiciales son las que tienen funciones parecidas a las de los tribunales (celebrar vistas y recibir prueba para resolver controversias), las cuasilegislativas tienen funciones parecidas a las de la Legislatura (establecer normas y reglamentos) y las cuasiadjudicativas son las que tienen la facultad de atender controversias, hacer investigaciones y formular recomendaciones para su solución.

"Juramento" incluye la afirmación o declaración, así como toda otra forma de confirmar la verdad de lo que se declara. Toda forma de declaración oral bajo juramento o afirmación está comprendida en la voz *testificar*, y toda declaración por escrito está comprendida en la palabra deponer.

Los términos "testificar", "declarar", "deponer" y "certificar la verdad" incluyen cualquier declaración bajo juramento o afirmación, sea oral o escrita.

La ley no exige forma especial alguna de juramento o afirmación. Se usará la forma que el (la) declarante tenga por más obligatoria o solemne.

No es defensa el hecho de que la prestación o toma del juramento se haya hecho de forma irregular.

**[El tribunal debe impartir esta Instrucción acompañada de la Instrucción 4.5].**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Perjurio.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Perjurio.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 15.1 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con el Artículo 14 (*Definiciones*), el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*), el Artículo 22 (*Elementos subjetivos del delito*), el Artículo 269 (*Perjurio*), el Artículo 271 (*Forma de juramento*), el Artículo 272 (*Defensas no admisibles*) y el Artículo 273 (*Cuándo se considera consumada la declaración o certificación*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5014, 5034, 5035, 5362, 5365 y 5366); el Artículo 274 (*Perjurio*), el Artículo 276 (*Forma de juramento*), el Artículo 277 (*Defensas no admisibles*) y

el Artículo 278 (*Cuándo se considera consumada la declaración o certificación*) del Código Penal de 2004, Ley 149-2004 (33 LPRA secs. 4902 y 4904-4906); el Artículo 225 (*Perjurio*), el Artículo 226 (*Forma de juramento*), el Artículo 227 (*Defensas no admisibles*) y el Artículo 228 (*Deposición o certificación cuando se considera consumada*) del Código Penal de 1974, Ley Núm. 115 de 22 de julio de 1974 (1974 [Parte 1] Leyes de Puerto Rico 516-517). Véanse *Gandía v. El Pueblo*, 29 DPR 109 (1921); *El Pueblo v. Colón*, 10 DPR 207 (1906); *Pueblo v. Pabón*, 7 DPR 389 (1904).

**COMENTARIO:**

La definición de "organismo" proviene de la jurisprudencia. Véase *Pueblo v. Pérez Casillas,* 117 DPR 380 (1986).

La doctora Nevares-Muñiz indica que para la modalidad tipificada en el primer párrafo del Artículo 269 del Código Penal de 2012, *supra*, es un elemento del delito "demostrar la falsedad del hecho esencial o importante, o la ausencia de certeza". D. Nevares-Muñiz, *Código Penal de Puerto Rico*, 4ta ed. rev., San Juan, Ed. Instituto para el Desarrollo del Derecho, 2019, pág. 420. Corresponde al Jurado determinar si lo declarado falsamente es sobre un hecho importante o esencial. Véase *United States* v. *Gaudin*, 515 US 506 (1995). En cuanto al segundo párrafo —el cual proviene del Código Penal Modelo—, se comete el delito una vez la persona presta dos o más declaraciones irreconciliables. Se especifica en el referido Artículo 269 que, para demostrar la comisión del delito, "será innecesario establecer la certeza o falsedad de los hechos relatados", por lo que la incompatibilidad resulta suficiente.

El Artículo 272 del Código Penal de 2012, *supra*, establece expresamente las defensas no admisibles.

## 12.6 Perjurio Agravado (Art. 270 del Código Penal de 2012)

**[El tribunal debe impartir la instrucción de la modalidad que corresponda según lo alegado en el pliego acusatorio].**

### A. Primera modalidad – Declaración con conocimiento de su falsedad o cuya certeza no le consta a la persona que la presta

Contra la persona acusada se ha presentado una acusación por el delito de Perjurio Agravado.

La ley dispone que comete el delito de Perjurio la persona que jure o afirme, testifique, declare, deponga o certifique la verdad ante cualquier tribunal, organismo, funcionario(a) o persona competente y declare que es cierto cualquier hecho esencial o importante con conocimiento de su falsedad, o declare categóricamente sobre un hecho esencial o importante cuya certeza no le consta. El delito de Perjurio se considera agravado cuando tuvo como consecuencia la privación de libertad o la condena de una persona.

Los elementos del delito de Perjurio Agravado son los siguientes:

(1) Que una persona jure o afirme, testifique, declare, deponga o certifique la verdad,

(2) ante cualquier tribunal, organismo, funcionario(a) o persona competente,

(3) declare que es cierto cualquier hecho esencial o importante con conocimiento de su falsedad o que declare categóricamente sobre un hecho esencial o importante cuya certeza no le consta, y

(4) que el perjurio tuvo como consecuencia la privación de la libertad o la condena de una persona.

"Juramento" incluye la afirmación o declaración, así como toda otra forma de confirmar la verdad de lo que se declara. Toda forma de declaración oral bajo juramento o afirmación está comprendida en la voz *testificar*, y toda declaración por escrito está comprendida en la palabra deponer.

Los términos "testificar", "declarar", "deponer" y "certificar la verdad" incluyen cualquier declaración bajo juramento o afirmación, sea oral o escrita.

Para propósitos de este delito, "organismo" incluye toda institución que tiene funciones cuasijudiciales, cuasilegislativas o cuasiadjudicativas. Las instituciones cuasijudiciales son las que tienen funciones parecidas a las de los tribunales (celebrar vistas y recibir prueba para resolver controversias), las cuasilegislativas tienen funciones parecidas a las de la Legislatura (establecer normas y reglamentos) y las cuasiadjudicativas son las que tienen la facultad de atender controversias, hacer investigaciones y formular recomendaciones para su solución.

La ley no exige forma especial alguna de juramento o afirmación. Se usará la forma que el (la) declarante tenga por más obligatoria o solemne.

No es defensa el hecho de que la prestación o toma del juramento se haya hecho de forma irregular.

No es defensa que la persona acusada ignoraba la importancia de la declaración falsa que hizo o que está en realidad no afectara a la causa en la cual o para la cual se diera o prestara. Basta con que tal declaración sea esencial o importante y que haya podido utilizarse para afectar el proceso.

Para que el delito de Perjurio quede consumado es necesario que la persona acusada preste juramento de decir la verdad, ante un tribunal, organismo, funcionario(a) o persona competente, y que, voluntariamente y contrario a dicho juramento, declare o haya declarado como cierto cualquier hecho esencial o importante conociendo su falsedad o haya declarado categóricamente sobre un hecho esencial cuya certeza no le conste.

En todo caso, el Ministerio Público deberá demostrar cuál es el hecho concreto y esencial que se imputa a la persona acusada sobre el cual se alega juró como cierto conociendo que era falso o sobre el cual se alega juró que era cierto cuando la certeza no le constaba. El Ministerio Público deberá establecer la certeza o falsedad de los hechos declarados.

La declaración o certificación se considera consumada desde que la persona acusada la prestó con el propósito de que se publique, divulgue o use como verdadera.

Una persona actúa "con conocimiento" cuando es consciente de que la producción del resultado es una consecuencia prácticamente segura de su conducta o cuando es consciente de que la existencia de la circunstancia es prácticamente segura.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no con conocimiento. Pueden inferir o deducir razonablemente de la prueba presentada y admitida el conocimiento de la falsedad del hecho declarado. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Perjurio Agravado.

No obstante, si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito de Perjurio pero no que tuvo como consecuencia la privación de la libertad o condena de una persona, entonces deberán rendir un veredicto de culpable por el delito de Perjurio.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable.

## B.  Segunda modalidad – Declaraciones irreconciliables entre sí

Contra la persona acusada se ha presentado una acusación por el delito de Perjurio Agravado.

La ley dispone que comete el delito de Perjurio la persona que jure o afirme, testifique, declare, deponga o certifique decir la verdad ante cualquier tribunal, organismo, funcionario(a) o persona competente y preste dos o más testimonios, declaraciones, deposiciones o certificaciones irreconciliables entre sí.  El delito de Perjurio se considera agravado cuando tuvo como consecuencia la privación de la libertad o la condena de una persona.

Los elementos del delito de Perjurio Agravado son los siguientes:

(1) Que una persona jure o afirme, testifique, declare, deponga o certifique la verdad,
(2) ante cualquier tribunal, organismo, funcionario(a) o persona competente,
(3) preste dos o más testimonios, declaraciones, deposiciones o certificaciones

irreconciliables entre sí, y

(4) que el perjurio tuvo como consecuencia la privación de la libertad o la condena de una persona.

Cuando una persona ha hecho dos o más declaraciones que son incompatibles o irreconciliables entre sí, la ley presupone que una de ellas es falsa. Por ello, el Ministerio Público no tiene que establecer cuál de las declaraciones es cierta y cuál es falsa. Es decir, el Ministerio Público no tiene que establecer la certeza o falsedad de los hechos relatados.

Para propósitos de este delito, "organismo" incluye toda institución que tiene funciones cuasijudiciales, cuasilegislativas o cuasiadjudicativas. Las instituciones cuasijudiciales son las que tienen funciones parecidas a las de los tribunales (celebrar vistas y recibir prueba para resolver controversias), las cuasilegislativas tienen funciones parecidas a las de la Legislatura (establecer normas y reglamentos) y las cuasiadjudicativas son las que tienen la facultad de atender controversias, hacer investigaciones y formular recomendaciones para su solución.

"Juramento" incluye la afirmación o declaración, así como toda otra forma de confirmar la verdad de lo que se declara. Toda forma de declaración oral bajo juramento o afirmación está comprendida en la voz *testificar*, y toda declaración por escrito, está comprendida en la palabra deponer.

Los términos "testificar", "declarar", "deponer" y "certificar la verdad" incluyen cualquier declaración bajo juramento o afirmación, sea oral o escrita.

La ley no exige forma especial alguna de juramento o afirmación. Se usará la forma que el (la) declarante tenga por más obligatoria o solemne.

No es defensa el hecho de que la prestación o toma del juramento se haya hecho de forma irregular.

**[El tribunal debe impartir esta Instrucción acompañada de la Instrucción 4.5].**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Perjurio Agravado.

No obstante, si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito de Perjurio pero no que tuvo como consecuencia la privación de la libertad o la condena de una persona, entonces deberán rendir un veredicto de culpable por el delito de Perjurio.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 15.1 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con el Artículo 14 (*Definiciones*), el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*), el Artículo 22 (*Elementos subjetivos del delito*), el Artículo 270 (*Perjurio agravado*), el Artículo 271 (*Forma de juramento*), el Artículo 272 (*Defensas no admisibles*) y el Artículo 273 (*Cuándo se considera consumada la declaración o certificación*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5014, 5034, 5035, 5363-5366); el Artículo 275 (*Perjurio agravado*), el Artículo 276 (*Forma de juramento*), el Artículo 277 (*Defensas no admisibles*) y el Artículo 278 (*Cuándo se considera consumada la declaración o certificación*) del Código Penal de 2004, Ley 149-2004 (33 LPRA secs. 4903-4906); el Artículo 225 (*Perjurio*), el Artículo 226 (*Forma de juramento*), el Artículo 227 (*Defensas no admisibles*) y el Artículo 228 (*Deposición o certificación cuando se considera consumada*) del Código Penal de 1974, Ley Núm. 115 de 22 de julio de 1974 (1974 [Parte 1] Leyes de Puerto Rico 516-517). Véanse *Gandía v. El Pueblo*, 29 DPR 109 (1921); *El Pueblo v. Colón*, 10 DPR 207 (1906); *Pueblo v. Pabón*, 7 DPR 389 (1904).

**COMENTARIO:**

La definición de "organismo" proviene de la jurisprudencia. Véase *Pueblo v. Pérez Casillas*, 117 DPR 380 (1986).

La doctora Nevares-Muñiz indica que para la modalidad tipificada en el primer párrafo del Artículo 269 del Código Penal de 2012, *supra*, es un elemento del delito "demostrar la falsedad del hecho esencial o importante, o la ausencia de certeza". D. Nevares-Muñiz, *Código Penal de Puerto Rico*, 4ta ed. rev., San Juan, Ed. Instituto para el Desarrollo del Derecho, 2019, pág. 420. Corresponde al Jurado determinar si lo declarado falsamente es sobre un hecho importante o esencial. Véase *United States* v. *Gaudin*, 515 US 506 (1995). En cuanto al segundo párrafo —el cual proviene del Código Penal Modelo—, se comete el delito una vez la persona presta dos o más declaraciones irreconciliables. Se especifica en el referido Artículo 269 que, para demostrar la comisión del delito, "será innecesario establecer la certeza o falsedad de los hechos relatados", por lo que la incompatibilidad resulta suficiente.

El Artículo 272 del Código Penal de 2012, *supra*, establece expresamente las defensas que no se admitirán.

## 12.7 Fuga (Art. 275 del Código Penal de 2012)

Contra la persona acusada se ha presentado una acusación por el delito de Fuga.

La ley dispone que comete este delito la persona que se fugue o evada estando sometida a una custodia legal que ejerce otra persona con autoridad legal.

**[El tribunal debe añadir la siguiente Instrucción cuando se alegue en el pliego acusatorio:**

Establece, además, que comete el delito de Fuga la persona que, a sabiendas, actúe en colaboración con la que se fugue o se evade de la custodia legal**].**

Los elementos de este delito son los siguientes:

      (1) Que una persona esté bajo custodia legal y

      (2) se fugue o evada.

**[El tribunal debe añadir la siguiente Instrucción cuando se alegue en el pliego acusatorio:**

También, comete este delito quien, a sabiendas, actúa en colaboración con quien se fugue o evada.

"A sabiendas" es sinónimo de "con conocimiento". Una persona actúa "con conocimiento" cuando es consciente de que la producción del resultado es una consecuencia prácticamente segura de su conducta o cuando es consciente de que la existencia de la circunstancia es prácticamente segura**].**

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no con conocimiento. Pueden inferir o deducir razonablemente de la prueba presentada y admitida el conocimiento. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

"Custodia legal" significa que la persona se encuentra sometida legalmente a **[refiérase solamente a la circunstancia que corresponda según lo alegado en el pliego acusatorio]**:

      (a) detención preventiva,

      (b) pena de reclusión o de restricción de libertad,

      (c) medida de seguridad de internación,

      (d) tratamiento y rehabilitación en un programa del Estado Libre Asociado de Puerto Rico o privado, supervisado y licenciado por una agencia de este,

      (e) procedimiento especial de desvío bajo la Regla 247.1 de Procedimiento Criminal,

      (f) procedimiento especial de desvío bajo una ley especial.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Fuga.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Fuga.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 15.2 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con el Artículo 14 (*Definiciones*), el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*), el Artículo 22 (*Elementos subjetivos del delito*) y el Artículo 275 (*Fuga*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5014, 5034, 5035 y 5368); el Artículo 281 (*Fuga*) del Código Penal de 2004 (33 LPRA sec. 4909), y el Artículo 232 (*Fuga*) del Código Penal de 1974, Ley Núm. 115 de 22 de julio de 1974 (1974 [Parte 1] Leyes de Puerto Rico 518). Véanse *Pueblo v. Barreto Rohena*, 149 DPR 718 (1999); *Pueblo v. Báez y otros*, 149 DPR 469 (1999); *Pueblo v. González Vega*, 147 DPR 692 (1999); *Pueblo* v. *Ríos Dávila*, 143 DPR 687 (1997); *Pueblo v. Figueroa Garriga*, 140 DPR 225 (1996); *Pueblo v. Medina Lugo*, 126 DPR 734 (1990); *Rivera v. Delgado*, 82 DPR 692 (1961).

**COMENTARIO:**

Respecto a las circunstancias que incluye el concepto "custodia legal", la Dra. Dora Nevares-Muñiz explica:

> La esencia de este delito lo constituye la fuga o evasión por parte del sujeto activo de la custodia legal a la cual está sometido. *Rivera v. Delgado*, 82 DPR 692, 695 (1961). Para efectos del tipo[,] una persona está bajo custodia legal en cualquiera de los siguientes casos: cuando está en detención preventiva en espera de juicio, o estuviere cumpliendo sentencia firme o en trámite de apelación por cualquier delito grave o menos grave; o cuando estuviere cumpliendo una pena de restricción de libertad o una medida de seguridad de internación. Bajo este Código, [tanto] la restricción [terapéutica como la] domiciliaria, constituye[n] pena[s] de restricción de libertad, [según definidas en los Artículos 51 y 52]. También está bajo custodia legal toda persona sometida a un programa de tratamiento y rehabilitación, de desvío bajo la Regla 247.1 de Procedimiento Criminal o el Artículo 404 (b) de la Ley de Sustancias Controladas o de cualquier ley especial; así como también el menor que está cumpliendo una medida dispositiva de internación por resultar trasgresor de una falta. *Pueblo v. Ríos Dávila y otros*, 143 DPR 687 (1997). La persona que cumple sentencia de reclusión indefinida [en] virtud de un desacato civil que se evade (no regresó ante un pase temporero con fecha cierta) puede ser acusada de fuga. *Pueblo v. Barreto Rohena*, 148 DPR 718 (1999). D. Nevares-Muñiz, *Código Penal de Puerto Rico*, 4ta ed. rev., San Juan, Ed. Instituto para el Desarrollo del Derecho, 2019, pág. 427.

Toda instrucción de los delitos particulares debe ir precedida de la Instrucción 4.15, que alude a la definición del concepto "elementos del delito".

**12.8   Posesión e Introducción de Objetos a un Establecimiento Penal
(Art. 277 del Código Penal de 2012)**

Contra la persona acusada se ha presentado una acusación por el delito de Posesión e Introducción de Objetos a un Establecimiento Penal.

**[El tribunal debe impartir la instrucción de acuerdo con la modalidad que aplique].**

**A.  Modalidad de introducción de objetos a un establecimiento penal**

La  ley  prohíbe que una persona introduzca, venda o ayude a vender, o tenga en su poder con el propósito de introducir o vender drogas narcóticas, estupefacientes o cualquier sustancia controlada o armas de cualquier clase, bebidas alcohólicas o embriagantes, explosivos, proyectiles, teléfonos celulares u otros medios de comunicación portátil, o cualquier otro objeto que pudiera afectar el orden o la seguridad de una institución penal o de cualquier establecimiento penal bajo el sistema correccional, dentro o fuera de este, a una persona confinada a sabiendas de que lo es.

Los elementos de este delito son los siguientes:

(1) [Introducir a una cárcel] [vender dentro o fuera de la cárcel] [ayudar a vender dentro o fuera de la cárcel] [poseer con el propósito de introducir a la cárcel] [poseer con el propósito de vender]

(2) [drogas narcóticas] [estupefacientes o cualquier sustancia controlada] [armas] [bebidas alcohólicas] [explosivos] [proyectiles] [teléfonos celulares u otro medio de comunicación portátil] [cualquier objeto que pueda afectar el orden o la seguridad de la cárcel o de cualquier establecimiento penal bajo el sistema correccional]

(3) a una persona confinada a sabiendas de que lo es.

**[El tribunal debe leer la Instrucción siguiente si la posesión fue alegada en el pliego acusatorio:**

La "posesión" constituye una forma delictiva solamente cuando la persona voluntariamente adquirió o recibió la cosa poseída, o la persona conocía que la cosa estaba en su posesión y tuvo tiempo suficiente para terminar la posesión.

Una persona actúa "a propósito" cuando su objetivo consciente es introducir o vender **[especifique el objeto o la sustancia]** a una persona confinada**].**

"A sabiendas" es sinónimo de "con conocimiento". Una persona actúa "con conocimiento" cuando es consciente de que la producción del resultado es una consecuencia prácticamente segura de su conducta o cuando es consciente de que la existencia de la circunstancia es prácticamente segura.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no [a propósito o con conocimiento] [con conocimiento]. Pueden inferir o deducir razonablemente de la prueba presentada y admitida [el propósito de introducir o vender **[especifique el objeto o la sustancia]** a una persona confinada y el conocimiento de que la persona es confinada] [el conocimiento de que la persona es confinada]. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Posesión e Introducción de Objetos a un Establecimiento Penal.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Posesión e Introducción de Objetos a un Establecimiento Penal.

### B. Modalidad de posesión de celulares o de medios de comunicación portátil

La ley prohíbe que una persona ingresada en la cárcel o en una institución carcelaria posea teléfonos celulares u otros medios de comunicación portátil, o cualquier otro objeto que pueda afectar el orden o la seguridad del penal o de cualquier establecimiento penal bajo el sistema correccional sin estar autorizada.

Los elementos de este delito son los siguientes:

(1) Que una persona que se encuentra ingresada en la cárcel o en una institución carcelaria,

(2) posea sin autorización [un teléfono celular] [un medio de comunicación portátil] [cualquier objeto que pueda afectar el orden o la seguridad de una institución penal o cualquier establecimiento penal bajo el sistema correccional].

La "posesión" constituye una forma delictiva solamente cuando la persona voluntariamente adquirió o recibió la cosa poseída, o la persona conocía que la cosa estaba en su posesión y tuvo tiempo suficiente para terminar la posesión.

**[El tribunal debe impartir esta Instrucción acompañada de la Instrucción 4.5].**

Corresponde a ustedes, miembros del Jurado, determinar si la persona ingresada en la cárcel poseyó de manera voluntaria [un teléfono celular] [un medio de comunicación portátil] [cualquier objeto que pueda afectar el orden o la seguridad de la cárcel] o estuvo

consciente que la estaba poseyendo por un tiempo suficiente para dar por terminada la posesión. A estos fines, se le permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta y las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Posesión e Introducción de Objetos a un Establecimiento Penal.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Posesión e Introducción de Objetos a un Establecimiento Penal.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 14 (*Definiciones*), el Artículo 18 (*Formas de comisión*), el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*), el Artículo 22 (*Elementos subjetivos del delito*) y el Artículo 277 (*Posesión e introducción de objetos a un establecimiento penal*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5014, 5031, 5034, 5035 y 5370). Véase *Pueblo v. Cordero Meléndez,* 193 DPR 701 (2015) (Sentencia).

**COMENTARIO:**

En *Pueblo v. Cordero Meléndez,* supra (Sentencia), el Tribunal Supremo interpretó el Artículo 277 del Código Penal de 2012, según enmendado, 33 LPRA sec. 5370, y el Artículo 2 de la Ley 15-2011, *supra*, a la luz del principio de especialidad. En la opinión de conformidad del Juez Asociado Señor Kolthoff Caraballo, a la cual se unieron los Jueces Asociados Martínez Torres y Feliberti Cintrón, el Juez establece que existen dos conductas proscritas por el referido Artículo 2, a saber: (1) que una persona confinada posea un equipo de telecomunicaciones, incluso un teléfono celular, y (2) que una persona confinada posea un equipo o aditamento que permita la transmisión de señales radiales, el acceso a la red celular de comunicaciones o el acceso a una conexión inalámbrica a Internet que no sea la provista por la institución.

En cuanto a la especie de equipo de telecomunicaciones no autorizados, el Juez Asociado Señor Kolthoff Caraballo señala que el Artículo 2 de la Ley 15-2011, *supra*, como ejemplo los teléfonos celulares. Señaló que, además de los teléfonos celulares, el legislador quiso prohibir cualquier artefacto que haga las mismas funciones que un teléfono celular, por lo que incluyó la frase " 'cualquier tipo de equipo o aditamento que permita transmisión de señales radiales o acceso a la red celular de comunicaciones o a una conexión inalámbrica a Internet que no sea el acceso provisto por la institución' ". *Pueblo v. Cordero Meléndez,* supra, pág. 712. Es decir, si la persona se encontraba en posesión de un artefacto —que no sea el

teléfono celular— y se pretende acusar bajo este estatuto, el Estado no solo tendrá que probar la posesión del artefacto, sino también la capacidad del artefacto de ejercer las funciones típicas del teléfono celular. *Pueblo v. Cordero Meléndez,* supra, pág. 713.

En la opinión de conformidad mencionada se concluye que en los casos donde el Ministerio Público alegue la posesión de un equipo de telecomunicaciones, como lo es el teléfono celular, no tiene discreción alguna en cuanto a qué estatuto aplicar. Frente a unos hechos que imputen la posesión por parte de un(a) confinado(a) de un teléfono celular o de un equipo de telecomunicaciones, el Estado está obligado a aplicar las disposiciones contenidas en el Artículo 2 de la Ley 15-2011, *supra*, en virtud del principio de especialidad, y no el delito general contenido en el Artículo 277 del Código Penal de 2012, según enmendado, *supra*.

La Jueza Presidenta Maite D. Oronoz Rodríguez, entonces Jueza Asociada, también suscribió una opinión de conformidad, donde coincidió en cierta medida con el análisis precedente, pero al amparo del principio de favorabilidad. Por su parte, el Juez Asociado Señor Estrella Martínez emitió una opinión disidente, donde favoreció la prelación de la Ley 15-2011 en virtud del principio de especialidad. No obstante, a diferencia de la mayoría del Tribunal, hubiese desestimado el pliego acusatorio por ausencia total de prueba.

En torno a los elementos subjetivos aplicables, la doctora Nevares-Muñiz, al discutir los delitos a título de posesión, señala que "el elemento mental asumirá las formas de propósito o conocimiento". D. Nevares-Muñiz, *Derecho penal puertorriqueño: parte general*, 7ma ed. rev., San Juan, Ed. Instituto para el Desarrollo del Derecho, 2015, Sec. 5.6.5, pág. 204.

Toda instrucción de los delitos particulares debe ir precedida de la Instrucción 4.15, que alude a la definición del concepto "elementos del delito".

## 12.9   Encubrimiento (Art. 280 del Código Penal de 2012)

Contra la persona acusada se ha presentado una acusación por el delito de Encubrimiento.

La ley dispone que comete el delito de Encubrimiento la persona que, con conocimiento de que se cometió un delito y para impedir la acción de la justicia [oculta a la persona responsable del mismo] [procura la desaparición de prueba] [procura la alteración de prueba] [procura la ocultación de prueba].

Los elementos de este delito son los siguientes:

(1) Que una persona, con el conocimiento de que se cometió un delito y

(2) para impedir la acción de la justicia,

(3) **[El tribunal debe impartir la circunstancia que corresponda según lo alegado en el pliego acusatorio**:
  (a) oculte a la persona responsable del delito,
  (b) procure la desaparición de prueba,
  (c) procure la alteración de prueba

(d) procure la ocultación de prueba**].**

**[Cuando se alegue una circunstancia agravada, el tribunal debe impartir la siguiente instrucción, refiriéndose solamente a la circunstancia que aplique conforme al pliego acusatorio:**

El delito se considera agravado cuando la persona:

    (i)  actuó con ánimo de lucro

    (ii) es un(a) funcionario(a) o empleado(a) público(a) que se aprovecha de su cargo o empleo.

"Funcionario(a) o empleado(a) público(a)" es la persona que ejerce un cargo o desempeña una función o encomienda, con o sin pago, permanente o temporeramente, debido a cualquier tipo de nombramiento, contrato o designación, para la Rama Legislativa, Ejecutiva o Judicial, o para el gobierno municipal del Estado Libre Asociado de Puerto Rico. Incluye a quienes representan el interés público y sean designadas para ocupar un cargo en una junta, corporación pública, entidad gubernamental y sus subsidiarias del Estado Libre Asociado de Puerto Rico, así como a los(as) notarios(as). El término "funcionario(a) público(a)" incluye las personas que ocupan cargos o empleos en el gobierno del Estado Libre Asociado y que están investidas de parte de la soberanía del gobierno, por lo que intervienen en la formulación e implantación de la política pública**].**

Una persona actúa "con conocimiento" cuando es consciente de que la producción del resultado es una consecuencia prácticamente segura de su conducta o cuando es consciente de que la existencia de la circunstancia es prácticamente segura.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no con conocimiento. Pueden inferir o deducir razonablemente de la prueba presentada y admitida el conocimiento de que se ha cometido un delito. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Encubrimiento.

**[Cuando se alegue una circunstancia agravada, el tribunal debe añadir la Instrucción siguiente**:

Si ustedes consideran, luego de un análisis cuidadoso de toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, que el Ministerio Público probó más allá de duda razonable la comisión del delito pero no que [actuó con ánimo de lucro] [es un(a) funcionario(a) o empleado (a) público(a) que se aprovechó de su cargo], deberán rendir un veredicto de culpable por el delito de Encubrimiento sin esa circunstancia**].**

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Encubrimiento.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 15.3 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con el Artículo 14 (*Definiciones*), el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*), el Artículo 22 (*Elementos subjetivos del delito*), y el Artículo 280 (*Encubrimiento*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5014, 5034, 5035 y 5373); el Artículo 285 (*Encubrimiento*) del Código Penal de 2004 (33 LPRA sec. 4913) y el Artículo 236 (*Encubrimiento*) del Código Penal de 1974, Ley Núm. 115 de 22 de julio de 1974 (1974 [Parte 1] Leyes de Puerto Rico 518).

**COMENTARIO:**

Explica la doctora Nevares-Muñiz que la frase "acción de la justicia" comprende cualquier investigación o procedimiento ante un organismo de gobierno con funciones investigativas, cuasiadjudicativas o adjudicativas. Dicho lo anterior, no notificar a las autoridades la comisión de un delito o la identidad del presunto autor no es suficiente para que se configure este delito. Es necesario que del acto surja la intención de obstruir una acción de la justicia, tal como "procurar la desaparición, alteración y ocultación de la prueba, o ayudar a ocultar al responsable del delito principal". D. Nevares-Muñiz, *Código Penal de Puerto Rico*, 4ta ed. rev., San Juan, Ed. Instituto para el Desarrollo del Derecho, 2019, págs. 434-435. De igual forma, añade que "[s]i se probara en los méritos que el autor del delito principal no cometió tal delito, entonces no tendríamos delito de encubrimiento [...]". Íd., pág. 435.

El Tribunal Supremo ha interpretado este delito a tenor del Código Penal de 1974. Véase *Pacheco v. Vargas, Alcaide*, 120 DPR 404 (1988). Nuestro Máximo Foro resolvió que "[n]o se cumpliría el propósito del estatuto si no se considerara la acción como antijurídica cuando el hecho previo lo comete un inimputable por su condición de menor". Íd., pág. 415. Asimismo, concluyó que "[l]a responsabilidad penal de la [persona] acusada no depende del autor del delito encubierto y que surge directamente de su conducta en violación al Art. 236", que tipifica el delito de encubrimiento en el Código Penal de 1974. Íd., pág. 416. Véase, además, *Pueblo v. León Cortijo*, 146 DPR 394, 395 (1998) (Sentencia), opinión de conformidad del Juez Presidente Señor Andréu García.

Toda instrucción de los delitos particulares debe ir precedida de la Instrucción 4.15, que alude a la definición del concepto "elementos del delito".

CAPÍTULO 13
**LEY DE ARMAS DE PUERTO RICO**

**13.1    Armas de Asalto Automáticas o Semiautomáticas y Ametralladoras, Silenciador, Fabricación, Importación, Distribución, Venta, Posesión y Transferencia (Art. 2.16)**

**A.  Arma de Asalto Semiautomática**

Contra la persona acusada se ha presentado una acusación por el delito de [Fabricar] [Hacer que se Fabrique] [Ofrecer] [Vender] [Alquilar] [Prestar] [Poseer] [Usar] [Traspasar] [Importar] un arma de asalto semiautomática.

La ley dispone que no se podrá fabricar, hacer fabricar, ofrecer, vender, alquilar, prestar, poseer, usar, traspasar o importar un arma de asalto semiautomática.

Los elementos de este delito son los siguientes:

(1) [Fabricar] [Hacer que se Fabrique] [Ofrecer] [Vender] [Alquilar] [Prestar] [Poseer] [Usar] [Traspasar] [Importar]
(2) un arma de asalto semiautomática.

Esta disposición no aplica a:

(a) la posesión, uso o transferencia en Puerto Rico, o importación desde alguna jurisdicción de Estados Unidos, por personas con licencia de armas vigente, licencia de armero vigente, de aquellas armas de asalto legalmente existentes en cualquier jurisdicción de Estados Unidos, conforme a las leyes federales aplicables, ni

(b) la fabricación, importación, venta o entrega por personas con licencia de armero, para el uso de estas armas en el cumplimiento del deber por los agentes del orden público, del gobierno de Puerto Rico o de Estados Unidos, o para el uso de las fuerzas armadas del gobierno de Estados Unidos o de Puerto Rico.

La ley dispone que **[especifique el modelo del arma de asalto semiautomática señalado en el pliego acusatorio que aplique]** es un arma de asalto semiautomática. **[Ver comentario para definiciones].**

"Licencia de armas" significa aquella licencia concedida por la Oficina de Licencia de Armas que autorice a una persona a poseer y portar armas de fuego y sus municiones.

"Armero(a)" significa cualquier persona natural o jurídica que posee una licencia de armero por sí o por medio de sus agentes o empleados, compre o introduzca para la venta, cambie, permute, ofrezca en venta o exponga a la venta, o tenga a la venta en su establecimiento comercial cualquier arma de fuego o municiones, o que realice cualquier trabajo mecánico o cosmético para un tercero en cualquier arma de fuego o municiones.

**[El tribunal debe impartir la Instrucción 13.25 con las presunciones que apliquen del Artículo 6.26 de la Ley de Armas de Puerto Rico, acompañada de la Instrucción 3.39].**

**[El tribunal debe impartir esta Instrucción acompañada de la Instrucción 4.5]**.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por este delito.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por este delito.

### B. Silenciador de Arma de Fuego

Contra la persona acusada se ha presentado una acusación por el delito de [Fabricar] [Hacer que se Fabrique] [Ofrecer] [Vender] [Alquilar] [Prestar] [Poseer] [Usar] [Traspasar] [Importar] un silenciador de arma de fuego.

La ley dispone que no se podrá fabricar, hacer fabricar, ofrecer, vender, alquilar, prestar, poseer, usar, traspasar o importar un silenciador de arma de fuego.

Los elementos de este delito son los siguientes:

(1) [Fabricar] [Hacer que se Fabrique] [Ofrecer] [Vender] [Alquilar] [Prestar] [Poseer] [Usar] [Traspasar] [Importar]

(2) un silenciador de arma de fuego.

"Arma de fuego" es cualquier arma, sin importar el nombre, que sea capaz de lanzar un proyectil o proyectiles por acción de una explosión. El término arma de fuego incluye, pero no se limita a, pistola, revolver, escopeta, rifle, carabina, incluyendo el marco, armazón o el receptor donde el manufacturero coloca el número de serie de tales armas. Esta definición no incluye aquellos artefactos tales como, pero sin limitarse a, las pistolas de clavos utilizadas en la construcción, artefactos para lanzar señales de pirotecnia o líneas, mientras se utilicen con fines de trabajo, arte, oficio o deporte.

"Silenciador de Arma de Fuego" es cualquier artefacto, dispositivo o mecanismo para silenciar, amortiguar o disminuir el sonido de un arma de fuego, incluyendo cualquier combinación de partes, diseñado, rediseñados o destinados para su uso en el montaje o la fabricación, y/o cualquier parte destinada sólo para el uso a tales propósitos.

**[El tribunal debe impartir la Instrucción 13.25 con las presunciones que apliquen del Artículo 6.26 de la Ley de Armas, acompañada de la Instrucción 3.39].**

**[El tribunal debe impartir esta Instrucción acompañada de la Instrucción 4.5].**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por este delito.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por este delito.

**REFERENCIA**:

Esta Instrucción es nueva. Guarda relación con el Artículo 1.02 (*Definiciones*), el Artículo 4.01(a) (*Licencia de armero; informe de transacciones*) y el Artículo 2.16 (*Armas de Asalto Automáticas o Semiautomáticas y Ametralladoras, Silenciador; Fabricación, Importación, Distribución, Venta, Posesión y transferencia*) de la Ley de Armas de Puerto Rico de 2020, Ley 168-2019 y el Artículo 2.14 (*Armas de asalto semiautomáticas; fabricación, importación, distribución, posesión y transferencia*) de la Ley de Armas de Puerto Rico, Ley 404-2000.

**COMENTARIO:**

El Artículo 2.16(b) de la Ley de Armas de Puerto Rico de 2020 se refiere a las armas de asalto semiautomáticas siguientes:

(1) *Norinco*, *Mitchell*, y *Poly Technologies Avtomat Kalashnikovs* (todos los modelos de AK);

(2) *Action Arms Israeli Military Industries UZI* y *Galil*;

(3) *Beretta Ar70* (SC-70);

(4) *Colt* AR-15;

(5) *Fabrique National* FN/FAL, FN/LAR, y FNC;

(6) *SWD* M-10, M-11, M-11/9, y M-12;

(7) *Steyr AUG*;

(8) *INTRATEC* TEC-9, TEC-DC9 y TEC-22; y

(9) Escopetas *revolving cylinder*, tales como (o similares a) la *Street Sweeper* y el *Striker*; o

(10) cualquier tipo de arma similar a las antes enumeradas.

Además, será considerada como un arma de asalto semiautomática:

(1)     Un rifle semiautomático que pueda ser alimentado mediante retroalimentación por con un abastecedor o receptáculo removible y que contenga más de dos (2) de las siguientes características:

> (i) culata plegadiza o telescópica;
>
> (ii) empuñadura de pistola *(pistol grip)* que sobresale manifiestamente por debajo de la acción del arma;
>
> (iii) montura para bayoneta;
>
> (iv) supresor de fuego o rosca para acomodar un supresor de fuego (*flash suppressor*); o
>
> (v) lanzador de granadas, excluyendo de los lanzadores de bengalas.

(2)     Una pistola semiautomática que pueda ser alimentada mediante retroalimentación por con un abastecedor o receptáculo removible y que contenga más de dos (2) de las siguientes características:

> (i)    un abastecedor o receptáculo de municiones que se fija a la pistola por fuera de la empuñadura de la pistola (*pistol grip*);
>
> (ii)   un cañón con rosca en su punta delantera capaz de aceptar una extensión al cañón, un supresor de fuego (*flash suppressor*), un agarre para la mano al frente del arma o un silenciador;
>
> (iii)  una cubierta que se puede fijar y que cubriendo parcial o total el cañón permitiendo a que quien dispara el arma, sujetarla con la mano que no está oprimiendo el gatillo y no quemarse;
>
> (iv)   un peso de manufactura en exceso a cincuenta (50) onzas descargada; o
>
> (v)    una versión semiautomática de un arma automática.

(3)     Una escopeta semiautomática que contenga dos (2) o más de las siguientes características:

> (i)    culata plegadiza o telescópica;
>
> (ii)   empuñadura de pistola (*pistol grip*) que sobresale manifiestamente por debajo de la acción del arma;
>
> (iii)  abastecedor o receptáculo de municiones fijo con capacidad para más de cinco (5) cartuchos; o
>
> (iv)   capaz de para recibir un abastecedor o receptáculo de municiones removible.

## 13.2    Condiciones para Operaciones de Armeros; Constancias de Transacciones. (Art. 4.03 (d))

Contra la persona acusada se ha presentado una acusación por el delito de recibir un arma de fuego con número serie mutilado para su [reparación] [modificación] [limpieza] [grabación] [pulimento] [efectuar cualquier otro trabajo mecánico].

La ley dispone que un(a) armero(a) no podrá recibir para su [reparación] [modificación] [limpieza] [grabación] [pulimento] [efectuar cualquier otro trabajo mecánico] un arma de fuego que tenga su número de serie mutilado.

Los elementos de este delito son los siguientes:

(1) Ser armero(a),

(2) recibir un arma de fuego con número de serie mutilado

(3) para [reparar] [modificar] [limpiar] [grabar] [pulir] [efectuar cualquier otro trabajo mecánico].

"Armero(a)" significa cualquier persona natural o jurídica que posee una licencia de armero por sí o por medio de sus agentes o empleados, compre o introduzca para la venta, cambie, permute, ofrezca en venta o exponga a la venta, o tenga a la venta en su establecimiento comercial cualquier arma de fuego o municiones, o que realice cualquier trabajo mecánico o cosmético para un tercero en cualquier arma de fuego o municiones.

"Arma de fuego" es cualquier arma, sin importar el nombre, que sea capaz de lanzar un proyectil o proyectiles por acción de una explosión. El término arma de fuego incluye, pero no se limita a, pistola, revolver, escopeta, rifle, carabina, incluyendo el marco, armazón o el receptor donde el manufacturero coloca el número de serie de tales armas. Esta definición no incluye aquellos artefactos tales como, pero sin limitarse a, las pistolas de clavos utilizadas en la construcción, artefactos para lanzar señales de pirotecnia o líneas, mientras se utilicen con fines de trabajo, arte, oficio o deporte.

**[El tribunal debe impartir esta Instrucción acompañada de la Instrucción 4.5].**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por este delito.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por este delito.

**REFERENCIA**:

Esta Instrucción es nueva. Guarda relación con el Artículo 1.02 (*Definiciones*) y el Artículo 4.03 (*Condiciones para operaciones de armeros; constancias de transacciones*) de la Ley de Armas de Puerto Rico de 2020, Ley 168-2019 y el Artículo 2.10 (*Condiciones para operaciones de armeros; constancias de transacciones*) de la Ley de Armas de Puerto Rico, Ley 404-2000.

**COMENTARIO:**

El diccionario del español jurídico define "número de arma" como "[s]ello o contraseña que identifica el número que obligatoriamente debe portar cualquier arma". S. Muñoz Machado, *Diccionario del español jurídico*, 1era Edición, Barcelona, Ed. Espasas Libros, S.L.U., 2016, pág. 1116. Por su parte, el *Black's Law Dictionary* define "*serial number*" (número de serie) como "[a] number assigned to a specific thing, esp. a product, to identify it from other things of the same kind" (número asignado a una cosa específica para identificarla de otras cosas del mismo tipo). B. Garner, *Black's Law Dictionary*, 10ma Edición. Estados Unidos, Ed. Thomson Reuters, 2014, pág. 1574. Por último, el diccionario de la Real Academia Española, en su segunda acepción, define "mutilar" como "[c]ortar o quitar una parte o porción de algo que de suyo debiera tenerlo", https://dle.rae.es/mutilar#QAK0nIr (última visita, 16 de febrero de 2021).

## 13.3   Fabricación, Importación, Venta y Distribución de Armas (Art. 6.02)

Contra la persona acusada se ha presentado una acusación por el delito de [Fabricar] [Importar] [Ofrecer] [Vender] [Tener para la venta] [Alquilar] [Traspasar] armas de fuego, municiones o aquella parte o pieza de un arma de fuego donde el fabricante de esta coloca el número de serie del arma.

La ley dispone que comete este delito la persona que, sin tener una licencia expedida conforme a los requisitos exigidos por ley, ofrezca, venda, tenga para la venta, alquile o traspase cualquier arma de fuego, municiones o aquella parte o pieza de un arma de fuego donde el fabricante coloca el número de serie del arma.

Cometerá también este delito la persona que, sin tener una licencia de armero, fabrique, alquile o importe cualquier arma de fuego, municiones o aquella parte o pieza de un arma de fuego donde el fabricante coloca el número de serie del arma.

Los elementos de este delito son los siguientes:

(1) [Fabricar] [Importar] [Ofrecer] [Vender] [Tener para la venta] [Alquilar] [Traspasar],

(2) cualquier [arma de fuego] [municiones] [aquella parte o pieza de un arma de fuego donde el fabricante coloca el número de serie del arma],

(3) [sin tener licencia de armas] [sin tener licencia de armero].

"Arma de fuego" es cualquier arma, sin importar el nombre, que sea capaz de lanzar un proyectil o proyectiles por acción de una explosión. El término arma de fuego incluye, pero no se limita a, pistola, revolver, escopeta, rifle, carabina, incluyendo el marco, armazón o el receptor donde el manufacturero coloca el número de serie de tales armas. Esta definición no incluye aquellos artefactos tales como, pero sin limitarse a, las pistolas de clavos utilizadas en la construcción, artefactos para lanzar señales de pirotecnia o líneas, mientras se utilicen con fines de trabajo, arte, oficio o deporte.

"Licencia de armas" significa aquella licencia concedida por la Oficina de Licencia de Armas que autorice a una persona a poseer y portar armas de fuego y sus municiones.

"Licencia de Armero" significa aquella licencia concedida por la Oficina de Licencias de Armas que autorice a una persona natural o jurídica para que se dedique al negocio de armero.

"Armero(a)" significa cualquier persona natural o jurídica que posee una licencia de armero por sí o por medio de sus agentes o empleados, compre o introduzca para la venta, cambie, permute, ofrezca en venta o exponga a la venta, o tenga a la venta en su establecimiento comercial cualquier arma de fuego o municiones, o que realice cualquier trabajo mecánico o cosmético para un tercero en cualquier arma de fuego o municiones.

**[El tribunal debe impartir la Instrucción 13.25 con las presunciones que apliquen del Artículo 6.26 de la Ley de Armas, acompañada de la Instrucción 3.39]**.

**[El tribunal debe impartir esta Instrucción acompañada de la Instrucción 4.5]**.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por este delito

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por este delito.

REFERENCIA:

Esta Instrucción es nueva. Guarda relación con el Artículo 1.02 (*Definiciones*) y el Artículo 6.02 (*Fabricación, importación, venta y distribución de armas*) de la Ley de Armas de Puerto Rico de 2020, Ley 168-2019.

## 13.4   Prohibición a la Venta de Armas de Fuego a Personas sin Licencia (Art. 6.03)

Contra la persona acusada se ha presentado una acusación por el delito de vender, traspasar o facilitar un(as) arma(s) de fuego o municiones, a sabiendas de que la persona no tenía una licencia de armas vigente.

La ley dispone que ningún armero(a) o persona con licencia de armas vigente, entregará un arma de fuego a ninguna persona para su posesión sin que le haya mostrado una licencia de armas vigente.

Los elementos de este delito son los siguientes:

(1) Ser armero(a) o persona con licencia de armas vigente,

(2) que a sabiendas,

(3) venda, traspase, facilite un(as) arma(s) de fuego o municiones,

(4) a una persona que no tenga licencia de armas vigente.

"Armero(a)" significa cualquier persona natural o jurídica que posee una licencia de armero por sí o por medio de sus agentes o empleados, compre o introduzca para la venta, cambie, permute, ofrezca en venta o exponga a la venta, o tenga a la venta en su establecimiento comercial cualquier arma de fuego o municiones, o que realice cualquier trabajo mecánico o cosmético para un tercero en cualquier arma de fuego o municiones.

"A sabiendas" es sinónimo de "con conocimiento". Actúa "con conocimiento" quien es consciente de que la existencia de la circunstancia o la producción del resultado es prácticamente segura. El término "prácticamente segura" se refiere a una probabilidad muy alta.

"Arma de fuego" es cualquier arma que, sin importar el nombre, sea capaz de lanzar un proyectil o proyectiles por acción de una explosión. El término arma de fuego incluye, pero no se limita a, pistola, revolver, escopeta, rifle, carabina, incluyendo el marco, armazón o el receptor donde el manufacturero coloca el número de serie de tales armas. Esta definición no incluye aquellos artefactos tales como, pero sin limitarse a, las pistolas de clavos utilizadas en la construcción, artefactos para lanzar señales de pirotecnia o líneas, mientras se utilicen con fines de trabajo, arte, oficio o deporte.

"Munición" significa cualquier bala, cartucho, proyectil, perdigón o cualquier carga, que se ponga o pueda ponerse en un arma para ser disparada.

"Licencia de armas" significa aquella licencia concedida por la Oficina de Licencia de Armas que autorice a una persona a poseer y portar armas de fuego y sus municiones.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no con conocimiento. Pueden inferir o deducir razonablemente de la prueba presentada y admitida el conocimiento de que la persona a quien se le vendió, traspasó o facilitó el arma no tenía licencia. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por este delito.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada

cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por este delito.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 1.02 (*Definiciones*) y el Artículo 6.03 (*Prohibición a la venta de armas de fuego a personas sin licencia*) de la Ley de Armas de Puerto Rico de 2020, el Artículo 5.02 (*Prohibición a la venta de armas a personas sin licencia*) de la Ley de Armas de Puerto Rico, Ley 404-2000, Artículo 14 (*Definiciones*), el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*) y el Artículo 22 (*Elementos subjetivos del delito*) del Código Penal de 2012, Ley 146-2012, según enmendado por la Ley 246-2014 (33 LPRA secs. 5014, 5034 y 5035).

## 13.5   Comercio de Armas de Fuego Automáticas (Art. 6.04)

Contra la persona acusada se ha presentado una acusación por el delito de [vender] [tener para la venta] [ofrecer] [entregar] [alquilar] [prestar] [disponer de cualquier forma de] un arma de fuego que puede ser disparada automáticamente o cualquier pieza o artefacto que convierte en arma automática cualquier arma de fuego.

La ley dispone que comete este delito la persona que venda, tenga para la venta, ofrezca, entregue, alquile, preste o en cualquier otra forma disponga de cualquier arma de fuego que pueda ser disparada automáticamente, o cualquier pieza o artefacto que convierte en arma automática cualquier arma de fuego, independientemente de que dicha arma, pieza o artefacto se denomine ametralladora o de otra manera.

Los elementos de este delito son los siguientes:

(1) [Vender] [Tener para la venta] [Ofrecer] [Entregar] [Alquilar] [Prestar] [Disponer de cualquier forma de]

(2) [un arma de fuego que pueda ser disparada automáticamente] [cualquier pieza o artefacto que convierte en arma automática cualquier arma de fuego].

"Arma de fuego" es cualquier arma que, sin importar el nombre, sea capaz de lanzar un proyectil o proyectiles por acción de una explosión. El término arma de fuego incluye, pero no se limita a, pistola, revolver, escopeta, rifle, carabina, incluyendo el marco, armazón o el receptor donde el manufacturero coloca el número de serie de tales armas. Esta definición no incluye aquellos artefactos tales como, pero sin limitarse a, las pistolas de clavos utilizadas en la construcción, artefactos para lanzar señales de pirotecnia o líneas, mientras se utilicen con fines de trabajo, arte, oficio o deporte.

"Arma automática" significa aquella arma de fuego, que, sin importar su descripción, tamaño, o nombre por el que se le conozca, cargada o descargada, pueda disparar repetida o automáticamente más de una bala o de forma continua un número de balas contenidas en un abastecedor, cinta u otro receptáculo, mediante una sola presión del gatillo.

**[El tribunal debe impartir la Instrucción 13.25 con las presunciones que apliquen del Artículo 6.26 de la Ley de Armas, acompañada de la Instrucción 3.39].**

**[El tribunal debe impartir esta Instrucción acompañada de la Instrucción 4.5]**.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por este delito.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por este delito.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 1.02 (*Definiciones*) y el Artículo 6.04 (*Comercio de armas de fuego automáticas*) de la Ley de Armas de Puerto Rico de 2020, Ley 168-2019 y el Artículo 5.03 (*Comercio de armas de fuego automáticas*) de la Ley de Armas de Puerto Rico, Ley 404-2000.

## 13.6 Portación, Transportación o Uso de Armas de Fuego sin Licencia (Art. 6.05)

**[El tribunal debe impartir la instrucción de acuerdo con la modalidad que aplique].**

### A. Portar cualquier arma de fuego sin tener una licencia de armas vigente

Contra la persona acusada se ha presentado una acusación por el delito de Portación de cualquier arma de fuego sin tener una licencia de armas vigente.

La ley dispone que comete este delito la persona que porte cualquier arma de fuego sin tener una licencia de armas vigente.

Los elementos de este delito son los siguientes:

(1) Portar un arma de fuego
(2) sin tener una licencia de armas vigente.

"Portación" significa la posesión inmediata o la tenencia física de una o más armas de fuego, cargadas o descargada, sobre la persona del portador o a su alcance inmediato. Por alcance inmediato se entenderá al alcance de su mano y la transportación de las mismas.

"Arma de fuego" es cualquier arma que, sin importar el nombre, sea capaz de lanzar un proyectil o proyectiles por acción de una explosión. El término arma de fuego incluye, pero no se limita a, pistola, revolver, escopeta, rifle, carabina, incluyendo el marco, armazón o el receptor donde el manufacturero coloca el número de serie de tales armas. Esta definición no incluye aquellos artefactos tales como, pero sin limitarse a, las pistolas de clavos utilizadas en la construcción, artefactos para lanzar señales de pirotecnia o líneas, mientras se utilicen con fines de trabajo, arte, oficio o deporte.

"Licencia de armas" significa aquella licencia concedida por la Oficina de Licencia de Armas que autorice a una persona a poseer y portar armas de fuego y sus municiones.

**[Si aplica, el tribunal debe impartir la instrucción siguiente:**

No es requisito que el Ministerio Público presente en evidencia el arma de fuego. Ustedes pueden considerar si existen otros elementos o circunstancias demostrativas que les permita concluir que la persona acusada poseía y portaba el arma**]**.

**[El tribunal debe impartir la Instrucción 13.25 con las presunciones que apliquen del Artículo 6.26 de la Ley de Armas, acompañada de la Instrucción 3.39]**.

**[El tribunal debe impartir esta Instrucción acompañada de la Instrucción 4.5]**.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por este delito.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por este delito.

## B. Transportar un arma de fuego sin tener licencia de armas vigente

Contra la persona acusada se ha presentado una acusación por el delito de Transportar cualquier arma de fuego sin tener una licencia de armas vigente.

La ley dispone que comete este delito la persona que transporte cualquier arma de fuego, sin tener una licencia de armas vigente.

Los elementos de este delito son los siguientes:

    (1) Transportar cualquier arma de fuego
    (2) sin tener una licencia de armas vigente.

"Transportar" significa la posesión, mediata o inmediata de una o más armas de fuego descargadas, dentro de un estuche cerrado, y el cual no esté a simple vista, con el fin de trasladarlas entre lugares. Dicha transportación deberá realizarse por una persona con licencia de armas vigente.

"Arma de fuego" es cualquier arma que, sin importar el nombre, sea capaz de lanzar un proyectil o proyectiles por acción de una explosión. El término arma de fuego incluye, pero no se limita a, pistola, revolver, escopeta, rifle, carabina, incluyendo el marco, armazón o el receptor donde el manufacturero coloca el número de serie de tales armas. Esta definición no incluye aquellos artefactos tales como, pero sin limitarse a, las pistolas de clavos utilizadas en la construcción, artefactos para lanzar señales de pirotecnia o líneas, mientras se utilicen con fines de trabajo, arte, oficio o deporte.

"Licencia de armas" significa aquella licencia concedida por la Oficina de Licencia de Armas que autorice a una persona a poseer y portar armas de fuego y sus municiones.

**[Si aplica, el tribunal debe impartir la instrucción siguiente:**

No es requisito que el Ministerio Público presente en evidencia el arma de fuego. Ustedes pueden considerar si existen otros elementos o circunstancias demostrativas que les permita concluir que la persona acusada poseía y portaba el arma**]**.

**[El tribunal debe impartir la Instrucción 13.25 con las presunciones que apliquen del Artículo 6.26 de la Ley de Armas, acompañada de la Instrucción 3.39].**

**[El tribunal debe impartir esta Instrucción acompañada de la Instrucción 4.5]**.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por este delito.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por este delito.

## C. Usar un arma de fuego sin tener licencia de armas vigente

Contra la persona acusada se ha presentado una acusación por el delito de usar cualquier arma de fuego sin tener una licencia de armas vigente.

La ley dispone que comete este delito la persona que use cualquier arma de fuego, sin tener una licencia de armas vigente.

Los elementos de este delito son los siguientes:

(1) Usar cualquier arma de fuego

(2) sin tener una licencia de armas vigente.

"Arma de fuego" es cualquier arma que, sin importar el nombre, sea capaz de lanzar un proyectil o proyectiles por acción de una explosión. El término arma de fuego incluye, pero no se limita a, pistola, revolver, escopeta, rifle, carabina, incluyendo el marco, armazón o el receptor donde el manufacturero coloca el número de serie de tales armas. Esta definición no incluye aquellos artefactos tales como, pero sin limitarse a, las pistolas de clavos utilizadas en la construcción, artefactos para lanzar señales de pirotecnia o líneas, mientras se utilicen con fines de trabajo, arte, oficio o deporte.

"Licencia de armas" significa aquella licencia concedida por la Oficina de Licencia de Armas que autorice a una persona a poseer y portar armas de fuego y sus municiones.

**[Si aplica, el tribunal debe impartir la instrucción siguiente:**

No es requisito que el Ministerio Público presente en evidencia el arma de fuego. Ustedes pueden considerar si existen otros elementos o circunstancias demostrativas que les permita concluir que la persona acusada poseía y portaba el arma]**.

**[El tribunal debe impartir la Instrucción 13.25 con las presunciones que apliquen del Artículo 6.26 de la Ley de Armas, acompañada de la Instrucción 3.39].**

**[El tribunal debe impartir esta Instrucción acompañada de la Instrucción 4.5]**.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por este delito.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por este delito.

### D. Portar o transportar un arma neumática, pistola, artefacto de descarga eléctrica de juguete o cualquier imitación de arma de fuego

Contra la persona acusada se ha presentado una acusación por portar o transportar **[especifique la modalidad que aplique según lo alegado en el pliego acusatorio]**.

La ley dispone que comete este delito la persona que porte o transporte un arma neumática, pistola o artefacto de descarga eléctrica, de juguete o cualquier imitación de arma, con la intención de cometer un delito o que la utilice para cometer un delito.

Los elementos de este delito son:

(1) [Portar] [Transportar] un arma neumática, pistola o artefacto de descarga eléctrica, de juguete o cualquier imitación de arma

(2) [con la intención de cometer un delito] [y utilizarla para cometer un delito].

"Portación" significa la posesión inmediata o la tenencia física de una o más armas de fuego, cargadas o descargada, sobre la persona del portador o a su alcance inmediato. Por alcance inmediato se entenderá al alcance de su mano y la transportación de las mismas.

"Transportar" significa la posesión, mediata o inmediata de una o más armas de fuego descargadas, dentro de un estuche cerrado, y el cual no esté a simple vista, con el fin de trasladarlas entre lugares. Dicha transportación deberá realizarse por una persona con licencia de armas vigente.

"Arma neumática" es cualquier arma, que sin importar el nombre por el cual se conozca, mediante la liberación de gas o mezcla de gases comprimidos sea capaz de impulsar uno (1) o más proyectiles.

**[Si aplica, el tribunal debe impartir la instrucción siguiente:**

No es requisito que el Ministerio Público presente en evidencia el arma de fuego. Ustedes pueden considerar si existen otros elementos o circunstancias demostrativas que les permita concluir que la persona acusada poseía y portaba el arma**]**.

**[El tribunal debe impartir la Instrucción 13.25 con las presunciones que apliquen del Artículo 6.26 de la Ley de Armas, acompañada de la Instrucción 3.39].**

**[El tribunal debe impartir esta Instrucción acompañada de la Instrucción 4.5]**.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por este delito.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por este delito.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 18.1 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con el Artículo 1.02 (*Definiciones*) y el Artículo 6.05 (*Portación, transportación o uso de armas de fuego sin licencia*) de la Ley de Armas de Puerto Rico de 2020, Ley 168-2019, el Artículo 5.04 (*Portación y uso de armas de fuego sin licencia*) de la Ley de Armas de Puerto Rico, Ley 404-2000 y el Artículo 14 (*Definiciones*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA sec. 5014).

**COMENTARIO:**

En *Pueblo v. Negrón Nazario*, 191 DPR 720 (2014), el Tribunal Supremo resuelve que no puede acusarse a un(a) agente de la Policía de Puerto Rico por el delito de portación ilegal cuando utiliza su arma de reglamento en la comisión de un delito o su tentativa. "[B]ajo el ordenamiento jurídico vigente a los policías se les autoriza a portar su arma de reglamento en todo momento y en cualquier lugar. Indudablemente, tal autorización para portar su arma de reglamento, no equivale a una autorización para utilizarla en violación a la ley". (Énfasis suprimido). Íd., pág. 759. Citando con aprobación a *Pueblo v. Fonseca*, 79 DPR 36, 39 (1956), y presentando un recuento de la jurisprudencia previa a la aprobación de la Ley de Armas de Puerto Rico de 2000, el Tribunal Supremo estableció que "la portación ilegal era independiente a cómo la persona utilizaba el arma de fuego". (Énfasis suprimido). *Pueblo v. Negrón Nazario*, supra, pág. 747.

En *Pueblo v. Acabá Raíces*, 118 DPR 369 (1987) el Tribunal Supremo reitera que en los casos donde se imputa la posesión y portación de armas de fuego no es requisito que el Ministerio Público presente en evidencia el arma de fuego. En "este tipo de casos un fallo de culpabilidad puede sostenerse si existen otros elementos o circunstancias demostrativas que lleven a la conciencia íntima del juzgador a concluir que el acusado poseía y portaba el arma". Íd., pág. 375.

En cuanto a los requisitos para obtener un permiso de portación de armas al amparo de la Ley 404-2000, véase *Cancio, Ex parte*, 161 DPR 479 (2004).

## 13.7   Portación y Uso de Armas Blancas (Art. 6.06)

Contra la persona acusada se ha presentado una acusación por el delito de Portación y Uso de Armas Blancas.

La ley dispone que comete este delito la persona que, sin motivo justificado, use contra otra persona, o la muestre o use en la comisión de un delito o su tentativa, manoplas, *blackjack*, cachiporra, estrella de ninja, cuchillo, puñal, daga, espada, honda, bastón de estoque, arpón, faca, estilete, punzón, martillos, bates, cuartón, escudo, hojas de navajas de afeitar de seguridad, garrotes, agujas hipodérmicas, jeringuillas con agujas o cualquier instrumento similar que se considere como un arma blanca.

"Arma blanca" significa un objeto punzante, cortante o contundente que pueda ser utilizado como un instrumento de agresión, capaz de infligir grave daño corporal, incluso la muerte.

Queda excluida de la aplicación de este artículo la persona que posea, porte o conduzca cualquiera de las armas aquí dispuestas en ocasión de su uso como instrumentos propios de un arte, deporte, profesión, ocupación, oficio o por condición de salud, incapacidad o indefensión.

**[El tribunal debe impartir esta Instrucción acompañada de la Instrucción 4.5].**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por este delito.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por este delito.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 18.2 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con el Artículo 1.02 (*Definiciones*) y el Artículo 6.06 (*Portación y uso de armas blancas*) de la Ley de Armas de Puerto Rico de 2020, Ley 168-2019 y el Artículo 5.05 (*Portación y uso de armas blancas*) de la Ley de Armas de Puerto Rico, Ley 404-2000.

## 13.8   Fabricación y Distribución de Armas Blancas (Art. 6.07)

Contra la persona acusada se ha presentado una acusación por el delito de Fabricación y Distribución de Armas Blancas.

La ley dispone que comete este delito la persona que, sin motivo justificado relacionado con algún arte, deporte, profesión, oficio o por condición de salud, incapacidad o indefensión, fabrique, importe, ofrezca, venda o tenga para la venta, alquiler o traspaso una manopla, *blackjack*, cachiporra, estrella de ninja, puñal, daga, espada, honda, bastón de estoque, arpón, faca, estilete, punzón o cualquier instrumento similar que se considere como un arma blanca.

Los elementos de este delito son los siguientes:

(1) Que una persona, sin motivo justificado relacionado con algún arte, deporte, profesión, ocupación, oficio o por condición de salud, incapacidad o indefensión,

(2) [fabrique] [importe] [ofrezca] [venda] [tenga]

(3) para [venta] [alquiler] [traspaso]

(4) cualquier arma blanca o instrumento que se considere como un arma blanca.

"Arma blanca" significa un objeto punzante, cortante o contundente que pueda ser utilizado como un instrumento de agresión, capaz de infligir grave daño corporal, incluso la muerte. Esta definición no incluye estos tipos de artefactos, mientras sean utilizados con fines de trabajo, arte, oficio o deporte.

**[El tribunal debe impartir esta Instrucción acompañada de la Instrucción 4.5].**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por este delito.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por este delito.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 1.02 (*Definiciones*) y el Artículo 6.07 (*Fabricación y distribución de armas blancas*) de la Ley de Armas de Puerto Rico de 2020, Ley 168-2019 y el Artículo 5.05A (*Fabricación, posesión y distribución de armas blancas*) de la Ley de Armas de Puerto Rico, Ley 404-2000.

## 13.9   Posesión de Armas de Fuego sin Licencia (Art. 6.08)

Contra la persona acusada se ha presentado una acusación por el delito de Posesión de Armas de Fuego sin Licencia.

La ley dispone que comete este delito la persona que tenga o posea un arma de fuego sin tener licencia para ello.

Los elementos de este delito son los siguientes:

(1) Tener o poseer un arma de fuego

(2) sin tener licencia.

"Arma de fuego" es cualquier arma que, sin importar el nombre, sea capaz de lanzar un proyectil o proyectiles por acción de una explosión. El término arma de fuego incluye, pero no se limita a, pistola, revolver, escopeta, rifle, carabina, incluyendo el marco, armazón o el receptor donde el manufacturero coloca el número de serie de tales armas. Esta definición no incluye aquellos artefactos tales como, pero sin limitarse a, las pistolas de clavos utilizadas en la construcción, artefactos para lanzar señales de pirotecnia o líneas, mientras se utilicen con fines de trabajo, arte, oficio o deporte.

"Licencia de armas" significa aquella licencia concedida por la Oficina de Licencia de Armas que autorice a una persona a poseer y portar armas de fuego y sus municiones.

**[El tribunal debe impartir la Instrucción 13.25 con las presunciones que apliquen del Artículo 6.26 de la Ley de Armas, acompañada de la Instrucción 3.39].**

**[El tribunal debe impartir esta Instrucción acompañada de la Instrucción 4.5]**.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por este delito.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por este delito.

**REFERENCIA:**

Esta Instrucción recoge los principios de la Instrucción 18.1 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con el Artículo 1.02 (*Definiciones*) y el Artículo 6.08 (*Posesión de armas de fuego sin licencia*) de la Ley de Armas de Puerto Rico de 2020, Ley 168-2019 y el Artículo 5.06 (*Posesión de Armas sin Licencia*) de la Ley de Armas de Puerto Rico, Ley 404-2000.

**COMENTARIO:**

Conviene recordar las expresiones del Tribunal Supremo de Estados Unidos sobre el derecho a poseer armas de fuego, posteriores a la aprobación de la Ley de Armas de Puerto Rico de 2000:

In sum, we hold that the District's ban on handgun possession in the home violates the Second Amendment, as does its prohibition against rendering any lawful firearm in the home operable for the purpose of immediate self-defense. Assuming that Heller is not disqualified from the exercise of Second Amendment rights, the District must permit him to register his handgun and must issue him a license to carry it in the home**.**

[...] The Constitution leaves the District of Columbia a variety of tools for combating that problem, including some measures regulating handguns [...]. But the enshrinement of constitutional rights necessarily takes certain policy choices off the table. These include the absolute prohibition of handguns held and used for self-defense in the home. (Citas omitidas). *District of Columbia v. Heller*, 554 US 570, 635-636 (2008).

We therefore hold that the Due Process Clause of the Fourteenth Amendment incorporates the Second Amendment right recognized in *Heller*. *McDonald v. Chicago*, 561 US 742, 791 (2010).

### 13.10  Portación, Posesión o Uso Ilegal de Armas Largas Semiautomáticas, Automáticas o Escopeta de Cañón Cortado (Art. 6.09)

Contra la persona acusada se ha presentado una acusación por el delito de Portación, Posesión o Uso Ilegal de Armas Largas Semiautomáticas, Automáticas o Escopeta de Cañón Cortado.

La ley dispone que comete este delito la persona que porte, posea o use, sin autorización de la Ley de Armas de Puerto Rico, un arma larga semiautomática, una ametralladora, carabina, rifle, alguna modificación de estas, cualquier arma que pueda ser disparada automáticamente o cualquier pieza o artefacto que convierta un arma de fuego en automática o una escopeta de cañón cortado a menos de 18 pulgadas, y que pueda causar grave daño corporal.

Los elementos de este delito son los siguientes:

(1) [Portar] [Poseer] [Usar]
(2) [un arma larga semiautomática o alguna modificación de esta] [una ametralladora o alguna modificación de esta] [una carabina o alguna modificación de esta] [un rifle o alguna modificación de este] [cualquier arma que pueda ser disparada automáticamente] [cualquier pieza o artefacto que convierta un arma de fuego en automática] [una escopeta de cañón cortado a menos de 18 pulgadas]
(3) que pueda causar grave daño corporal
(4) sin autorización de la ley.

Esta disposición no aplica a la posesión o uso de estas armas en el cumplimiento del deber por los agentes del Negociado de la Policía o por otros agentes del orden público debidamente autorizados.

**[El tribunal debe leer las definiciones que correspondan según lo alegado en el pliego acusatorio].**

["Arma larga" significa cualquier escopeta, rifle o arma de fuego diseñada para ser disparada desde el hombro].

["Ametralladora o arma automática" significa un arma de fuego, que, sin importar su descripción, tamaño o nombre por el que se le designe o conozca, cargada o descargada, pueda disparar repetida o automáticamente más de una bala o de forma continua un número de balas contenidas en un abastecedor, cinta o cualquier otro receptáculo, mediante una sola presión del gatillo. El término "ametralladora" incluye también una subametralladora, así como cualquier otra arma de fuego provista de un dispositivo para disparar automáticamente la totalidad o parte de las balas o municiones contenidas en el abastecedor, cinta u otro receptáculo mediante una sola presión del gatillo o cualquier pieza, artefacto individual o combinación de las partes de un arma de fuego, destinada y con la intención de convertir, modificar o alterar dicha arma en una ametralladora].

["Escopeta" significa un arma de fuego de cañón largo con uno (1) o más cañones con interiores lisos, diseñada para ser disparada desde el hombro, la cual puede disparar cartuchos de uno (1) o más proyectiles. Puede ser alimentada manualmente o por abastecedor o receptáculo, y se puede disparar de manera manual, automática o semiautomática. Esta definición incluirá las escopetas con el cañón cortado a menos de dieciocho (18) pulgadas].

["Rifle" significa cualquier arma de fuego diseñada para ser disparada desde el hombro, que dispara uno o tres proyectiles. Puede ser alimentada manual o automáticamente por un abastecedor o receptáculo y se puede disparar de manera manual o semiautomática. El término "rifle" incluye el término "carabina"].

["Posesión" constituye delito solamente cuando la persona voluntariamente adquirió o recibió el arma o la persona conocía que el arma estaba en su posesión y tuvo tiempo suficiente para terminar la posesión].

**[El tribunal debe impartir la Instrucción 13.25 con las presunciones que apliquen del Artículo 6.26 de la Ley de Armas, acompañada de la Instrucción 3.39].**

**[El tribunal debe impartir esta Instrucción acompañada de la Instrucción 4.5]**.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por este delito.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada

cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por este delito.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 18.4 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con el Artículo 1.02 (*Definiciones*) y el Artículo 6.09 (*Portación, posesión o uso ilegal de armas largas semiautomáticas, automáticas o escopeta de cañón cortado*) de la Ley de Armas de Puerto Rico de 2020, Ley 169-2019 y el Articulo 5.07 (*Posesión o uso ilegal de armas largas semiautomáticas, automáticas o escopeta de cañón cortado*) de la Ley de Armas de Puerto Rico, Ley 404-2000.

### 13.11  Posesión o Venta de Accesorios para Silenciar (Art. 6.10)

Contra la persona acusada se ha presentado una acusación por el delito de Posesión o Venta de Accesorios para Silenciar.

La ley dispone que comete este delito la persona que tenga en su posesión, venda, tenga para la venta, preste, ofrezca, entregue o disponga de cualquier instrumento, dispositivo, artefacto o accesorio que silencie o reduzca el ruido del disparo de cualquier arma de fuego.

Los elementos de este delito son los siguientes:

> (1) [Poseer] [Vender] [Tener para la venta] [Prestar] [Ofrecer] [Entregar] [Disponer de]
> (2) un [instrumento] [dispositivo] [artefacto] [accesorio]
> (3) para silenciar o reducir el ruido del disparo de un arma de fuego.

"Arma de fuego" es cualquier arma que, sin importar el nombre, sea capaz de lanzar un proyectil o proyectiles por acción de una explosión. El término arma de fuego incluye, pero no se limita a, pistola, revolver, escopeta, rifle, carabina, incluyendo el marco, armazón o el receptor donde el manufacturero coloca el número de serie de tales armas. Esta definición no incluye aquellos artefactos tales como, pero sin limitarse a, las pistolas de clavos utilizadas en la construcción, artefactos para lanzar señales de pirotecnia o líneas, mientras se utilicen con fines de trabajo, arte, oficio o deporte.

**[El tribunal debe impartir esta Instrucción acompañada de la Instrucción 4.5].**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por este delito.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por este delito.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 1.02 (*Definiciones*) y el Artículo 6.10 (*Posesión o venta de accesorios para silenciar*) de la Ley de Armas de Puerto Rico de 2020, Ley 168-2019 y el Articulo 5.08 (*Posesión o venta de accesorios para silenciar*) de la Ley de Armas de Puerto Rico, Ley 404-2000.

## 13.12 Facilitación de Armas a Terceros (Art. 6.11)

Contra la persona acusada se ha presentado una acusación por el delito de Facilitación de Armas a Terceros.

La ley dispone que comete este delito la persona que, con intención criminal, facilite o ponga a la disposición de otra persona cualquier arma de fuego que haya estado bajo su custodia o control, sea o no propietaria de la misma.

Los elementos de este delito son los siguientes:

(1) [Facilitar a] [Poner a la disposición de] otra persona
(2) un arma de fuego
(3) que haya estado bajo su custodia o control, sea o no el (la) propietario(a),
(4) con intención criminal.

Actuar con "intención" es equivalente a actuar "a propósito", "con conocimiento" o "temerariamente". Una persona actúa "a propósito" cuando su objetivo consciente es la producción de un resultado o cuando cree que una circunstancia existe. La persona actúa "con conocimiento" cuando es consciente de que la producción del resultado o la existencia de la circunstancia prohibida por ley es prácticamente segura. La persona actúa "temerariamente" cuando es consciente de que su conducta genera un riesgo sustancial e injustificado de que se produzca el resultado o la circunstancia prohibida por ley y a pesar de conocer el riesgo, la persona continúa con su acción u omisión.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no a propósito, con conocimiento o temerariamente. Pueden inferir o deducir razonablemente de la prueba presentada y admitida el propósito, el conocimiento o la temeridad. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público

probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por este delito.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por este delito.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 1.02 (*Definiciones*) y el Artículo 6.11 (*Facilitación de armas a terceros*) de la Ley de Armas de Puerto Rico de 2020, Ley 168-2019, el Articulo 5.09 (*Facilitación de armas a terceros*) de la Ley de Armas de Puerto Rico, Ley 404-2000, el Artículo 14 (*Definiciones*), el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*) y el Artículo 22 (*Elementos subjetivos del delito*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5014, 5034 y 5035).

### 13.13  Número de Serie o Nombre de Dueño en Arma de Fuego; Remoción o Mutilación (Art. 6.12)

**[El tribunal debe impartir la instrucción de acuerdo con la modalidad que aplique].**

### A.  Remover, mutilar, cubrir permanentemente, alterar, borrar el número de serie de cualquier arma de fuego

Contra la persona acusada se ha presentado una acusación por el delito de Remoción o Mutilación de Número de Serie o Nombre de Dueño en Arma de Fuego.

La ley dispone que comete delito la persona que voluntariamente remueva, mutile, cubra permanentemente, altere o borre el número de serie en cualquier arma de fuego que no se considere arma de fuego antigua.

Los elementos de este delito son los siguientes:

(1) Voluntariamente,
(2) [remover] [mutilar] [cubrir permanentemente] [alterar] [borrar] el número de serie en cualquier arma de fuego, que no se considere antigua.

"Voluntariamente" significa que el acto nace de la voluntad y no por fuerza o necesidad extraña a aquella.

"Arma de fuego" es cualquier arma que, sin importar el nombre, sea capaz de lanzar un proyectil o proyectiles por acción de una explosión. El término arma de fuego incluye, pero no se limita a, pistola, revolver, escopeta, rifle, carabina, incluyendo el marco, armazón o el receptor donde el manufacturero coloca el número de serie de tales armas. Esta definición no incluye aquellos artefactos tales como, pero sin limitarse a, las pistolas de clavos utilizadas en la construcción, artefactos para lanzar señales de pirotecnia o líneas, mientras se utilicen con fines de trabajo, arte, oficio o deporte.

"Arma de fuego antigua" se define como:

(1) cualquier arma de fuego, pistola, escopeta o fusil de mecha ("matchlock") o de chispa ("flintlock"), vaina de percusión ("percussion cap") manufacturado en o antes de 1898; o

(2) cualquier réplica de un arma de fuego descrita en el subinciso anterior, si dicha réplica:

(i) no está diseñada, rediseñada o de cualquier forma modificada, para utilizar munición de fuego anular ("rimfire") o munición de tipo convencional de fuego central ("centerfire");

(ii) utiliza munición de fuego anular ("rimfire") o munición de tipo convencional de fuego central ("centerfire") que ya no es manufacturada en Estados Unidos y que no es disponible por los canales normales y ordinarios de comercio; o

(iii) cualquier rifle de carga por el cañón ("muzzle loading rifle"), escopeta de carga por el cañón ("muzzle loading shotgun") o pistola de carga por el cañón ("muzzle loading pistol") que esté diseñada para utilizarse con pólvora negra o un substituto de pólvora negra, y que no pueda utilizar munición de tipo fijo. Para los propósitos de este subinciso, el término "Arma de Fuego Antigua" no incluirá cualquier arma que incorpore un armazón ("frame") o recibidor ("receiver"), cualquier arma que sea capaz de ser convertida en un arma de carga por el cañón ("muzzle loading weapon"), cualquier arma de carga por el cañón ("muzzle loading weapon"), o que pueda ser convertida para ser capaz de disparar munición de tipo fijo mediante el reemplazo del cañón ("barrel"), cerrojo ("bolt"), ánima ("breech lock"), o cualesquiera combinación de estas.

**[El tribunal debe impartir la Instrucción 13.25 con las presunciones que apliquen del Artículo 6.26 de la Ley de Armas, acompañada de la Instrucción 3.39].**

**[El tribunal debe impartir esta Instrucción acompañada de la Instrucción 4.5]**.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona

acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por este delito.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por este delito.

**B. Comprar, vender, recibir, enajenar, traspasar, portar, o tener en su posesión cualquier arma de fuego, salvo las armas de fuego antiguas, a la cual se le haya removido, mutilado, cubierto permanentemente, alterado o borrado el número de serie**

Contra la persona acusada se ha presentado una acusación por el delito de [comprar] [vender] [recibir] [enajenar] [traspasar] [portar] [tener en su posesión] un arma de fuego a la cual se le había [removido] [mutilado] [cubierto permanentemente] [alterado] [borrado] el número de serie.

La ley dispone que comete este delito la persona que, a sabiendas, venda, reciba, enajene, traspase, porte o tenga en su posesión cualquier arma de fuego, excepto las armas de fuego antiguas, a la cual se le haya removido, mutilado, cubierto permanentemente, alterado o borrado el número de serie.

Los elementos de este delito son los siguientes:

(1) A sabiendas,

(2) [comprar] [vender] [recibir] [enajenar] [traspasar] [portar] [tener en su posesión] un arma de fuego, que no se considere antigua,

(3) a la cual se le haya [removido] [mutilado] [cubierto permanentemente] [alterado] [borrado] el número de serie.

"A sabiendas" es sinónimo de "con conocimiento". Actúa "con conocimiento" quien es consciente de que la existencia de la circunstancia o la producción del resultado es prácticamente segura. El término "prácticamente segura" se refiere a una probabilidad muy alta.

"Arma de fuego" es cualquier arma que, sin importar el nombre, sea capaz de lanzar un proyectil o proyectiles por acción de una explosión. El término arma de fuego incluye, pero no se limita a, pistola, revolver, escopeta, rifle, carabina, incluyendo el marco, armazón o el receptor donde el manufacturero coloca el número de serie de tales armas. Esta definición no incluye aquellos artefactos tales como, pero sin limitarse a, las pistolas de clavos utilizadas en la construcción, artefactos para lanzar señales de pirotecnia o líneas, mientras se utilicen con fines de trabajo, arte, oficio o deporte.

"Arma de fuego antigua" se define como:

(1) cualquier arma de fuego, pistola, escopeta o fusil de mecha ("matchlock") o de chispa ("flintlock"), vaina de percusión ("percussion cap") manufacturado en o antes de 1898; o

(2) cualquier réplica de un arma de fuego descrita en el subinciso anterior, si dicha réplica:

(i) no está diseñada, rediseñada o de cualquier forma modificada, para utilizar munición de fuego anular ("rimfire") o munición de tipo convencional de fuego central ("centerfire");

(ii) utiliza munición de fuego anular ("rimfire") o munición de tipo convencional de fuego central ("centerfire") que ya no es manufacturada en Estados Unidos y que no es disponible por los canales normales y ordinarios de comercio; o

(iii) cualquier rifle de carga por el cañón ("muzzle loading rifle"), escopeta de carga por el cañón ("muzzle loading shotgun") o pistola de carga por el cañón ("muzzle loading pistol") que esté diseñada para utilizarse con pólvora negra o un substituto de pólvora negra, y que no pueda utilizar munición de tipo fijo. Para los propósitos de este subinciso, el término "Arma de Fuego Antigua" no incluirá cualquier arma que incorpore un armazón ("frame") o recibidor ("receiver"), cualquier arma que sea capaz de ser convertida en un arma de carga por el cañón ("muzzle loading weapon"), cualquier arma de carga por el cañón ("muzzle loading weapon"), o que pueda ser convertida para ser capaz de disparar munición de tipo fijo mediante el reemplazo del cañón ("barrel"), cerrojo ("bolt"), ánima ("breech lock"), o cualesquiera combinación de estas.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no con conocimiento de [comprar] [vender] [recibir] [enajenar] [traspasar] [portar] [tener en su posesión] un arma a la cual se le había [removido] [mutilado] [cubierto permanentemente] [alterado] [borrado] el número de serie. Pueden inferir o deducir razonablemente de la prueba presentada y admitida el conocimiento. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

**[El tribunal debe impartir la Instrucción 13.25 con las presunciones que apliquen del Artículo 6.26 de la Ley de Armas, acompañada de la Instrucción 3.39].**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por este delito.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por este delito.

**C. Siendo armero, o un agente representante, comprar, vender, recibir, entregar, enajenar, traspasar, portar, o tener en su posesión, cualquier arma de fuego, que no sea considerada un arma de fuego antigua, a la cual se le haya removido, mutilado, cubierto permanentemente, alterado o borrado el número de serie**

Contra la persona acusada se ha presentado una acusación por el delito de [comprar] [vender] [recibir] [entregar] [enajenar] [traspasar] [portar] [tener en su posesión] cualquier arma de fuego a la cual se le [removió] [mutiló] [cubrió permanentemente] [alteró] [borró] el número de serie, siendo la persona acusada un(a) armero(a), un(a) agente de armero(a) o un(a) representante de armero(a).

La ley establece que comete este delito el (la) armero(a), su agente o su representante que, a sabiendas, compre, venda, reciba, entregue, enajene, traspase, porte o tenga en su posesión, cualquier arma de fuego que no sea considerada arma de fuego antigua, a la cual se le haya removido, mutilado, cubierto permanentemente, alterado o borrado su número de serie.

Los elementos de este delito son los siguientes:

(1) Que un(a) armero(a), su agente o su representante,
(2) a sabiendas,
(3) [compre] [venda] [reciba] [entregue] [enajene] [traspase] [porte] [tenga en su posesión] cualquier arma de fuego, que no sea considerada antigua,
(4) a la cual se le haya [removido] [mutilado] [cubierto permanentemente] [alterado] [borrado] el número de serie.

"Armero(a)" significa cualquier persona natural o jurídica que posee una licencia de armero por sí o por medio de sus agentes o empleados, compre o introduzca para la venta, cambie, permute, ofrezca en venta o exponga a la venta, o tenga a la venta en su establecimiento comercial cualquier arma de fuego o municiones, o que realice cualquier trabajo mecánico o cosmético para un tercero en cualquier arma de fuego o municiones.

"A sabiendas" es sinónimo de "con conocimiento". Actúa "con conocimiento" quien es consciente que la existencia de la circunstancia o la producción del resultado es prácticamente segura. El término "prácticamente segura" se refiere a una probabilidad muy alta.

"Arma de fuego" es cualquier arma que, sin importar el nombre, sea capaz de lanzar un proyectil o proyectiles por acción de una explosión. El término arma de fuego incluye, pero no se limita a, pistola, revolver, escopeta, rifle, carabina, incluyendo el marco, armazón

o el receptor donde el manufacturero coloca el número de serie de tales armas. Esta definición no incluye aquellos artefactos tales como, pero sin limitarse a, las pistolas de clavos utilizadas en la construcción, artefactos para lanzar señales de pirotecnia o líneas, mientras se utilicen con fines de trabajo, arte, oficio o deporte.

"Arma de fuego antigua" se define como:

(1) cualquier arma de fuego, pistola, escopeta o fusil de mecha ("matchlock") o de chispa ("flintlock"), vaina de percusión ("percussion cap") manufacturado en o antes de 1898; o

(2) cualquier réplica de un arma de fuego descrita en el subinciso anterior, si dicha réplica:

(i) no está diseñada, rediseñada o de cualquier forma modificada, para utilizar munición de fuego anular ("rimfire") o munición de tipo convencional de fuego central ("centerfire");

(ii) utiliza munición de fuego anular ("rimfire") o munición de tipo convencional de fuego central ("centerfire") que ya no es manufacturada en Estados Unidos y que no es disponible por los canales normales y ordinarios de comercio; o

(iii) cualquier rifle de carga por el cañón ("muzzle loading rifle"), escopeta de carga por el cañón ("muzzle loading shotgun") o pistola de carga por el cañón ("muzzle loading pistol") que esté diseñada para utilizarse con pólvora negra o un substituto de pólvora negra, y que no pueda utilizar munición de tipo fijo. Para los propósitos de este subinciso, el término "Arma de Fuego Antigua" no incluirá cualquier arma que incorpore un armazón ("frame") o recibidor ("receiver"), cualquier arma que sea capaz de ser convertida en un arma de carga por el cañón ("muzzle loading weapon"), cualquier arma de carga por el cañón ("muzzle loading weapon"), o que pueda ser convertida para ser capaz de disparar munición de tipo fijo mediante el reemplazo del cañón ("barrel"), cerrojo ("bolt"), ánima ("breech lock"), o cualesquiera combinación de estas.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no con conocimiento de [comprar] [vender] [recibir] [entregar] [enajenar] [traspasar] [portar] [tener en su posesión] un arma de fuego, que no sea considerada arma de fuego antigua, a la cual se le haya [removido] [mutilado] [cubierto permanentemente] [alterado] [borrado] el número de serie. Pueden inferir o deducir razonablemente de la prueba presentada y admitida el conocimiento. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

**[El Tribunal debe impartir la Instrucción 13.25 con las presunciones que apliquen del Artículo 6.26 de la Ley de Armas, acompañada de la Instrucción 3.39].**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por este delito.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por este delito.

### D. Poseer un arma de fuego, salvo armas de fuego antiguas, que no tenga su número de serie

Contra la persona acusada se ha presentado una acusación por el delito de poseer un arma de fuego que no tenga su número de serie, excepto que sea un arma de fuego antigua.

La ley establece que comete delito la persona que posea un arma de fuego, salvo armas de fuego antiguas, que no tenga su número de serie.

Los elementos de este delito son los siguientes:

> (1) Poseer un arma de fuego
> (2) que no tenga su número de serie.

"Posesión" constituye delito solamente cuando la persona voluntariamente adquirió o recibió el arma o la persona conocía que el arma estaba en su posesión y tuvo tiempo suficiente para terminar la posesión.

"Arma de fuego" es cualquier arma que, sin importar el nombre, sea capaz de lanzar un proyectil o proyectiles por acción de una explosión. El término arma de fuego incluye, pero no se limita a, pistola, revolver, escopeta, rifle, carabina, incluyendo el marco, armazón o el receptor donde el manufacturero coloca el número de serie de tales armas. Esta definición no incluye aquellos artefactos tales como, pero sin limitarse a, las pistolas de clavos utilizadas en la construcción, artefactos para lanzar señales de pirotecnia o líneas, mientras se utilicen con fines de trabajo, arte, oficio o deporte.

"Arma de fuego antigua" se define como:

> (1) cualquier arma de fuego, pistola, escopeta o fusil de mecha ("matchlock") o de chispa ("flintlock"), vaina de percusión ("percussion cap") manufacturado en o antes de 1898; o
> (2) cualquier réplica de un arma de fuego descrita en el subinciso anterior, si dicha réplica:

(i)      no está diseñada, rediseñada o de cualquier forma modificada, para utilizar munición de fuego anular ("rimfire") o munición de tipo convencional de fuego central ("centerfire");

(ii)     utiliza munición de fuego anular ("rimfire") o munición de tipo convencional de fuego central ("centerfire") que ya no es manufacturada en Estados Unidos y que no es disponible por los canales normales y ordinarios de comercio; o

(iii)    cualquier rifle de carga por el cañón ("muzzle loading rifle"), escopeta de carga por el cañón ("muzzle loading shotgun") o pistola de carga por el cañón ("muzzle loading pistol") que esté diseñada para utilizarse con pólvora negra o un substituto de pólvora negra, y que no pueda utilizar munición de tipo fijo. Para los propósitos de este subinciso, el término "Arma de Fuego Antigua" no incluirá cualquier arma que incorpore un armazón ("frame") o recibidor ("receiver"), cualquier arma que sea capaz de ser convertida en un arma de carga por el cañón ("muzzle loading weapon"), cualquier arma de carga por el cañón ("muzzle loading weapon"), o que pueda ser convertida para ser capaz de disparar munición de tipo fijo mediante el reemplazo del cañón ("barrel"), cerrojo ("bolt"), ánima ("breech lock"), o cualesquiera combinación de estas.

**[El tribunal debe impartir esta Instrucción acompañada de la Instrucción 4.5]**.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por este delito.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por este delito.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 18.3 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con el Artículo 1.02 (*Definiciones*) y el Artículo 6.12 (*Número de serie o nombre de dueño en arma de fuego; remoción o mutilación*) de la Ley de Armas de Puerto Rico de 2020, Ley 168-2019, el Artículo 5.10 (*Número de serie o nombre de dueño en arma de fuego; remoción o mutilación*) de la Ley de Armas de Puerto Rico, Ley 404-2000, el Artículo 14 (*Definiciones*), el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*) y el Artículo 22 (*Elementos subjetivos del delito*) del Código Penal de

2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5014, 5034 y 5035).

### 13.14  Disparar o Apuntar Armas de Fuego (Art. 6.14)

**[El tribunal debe impartir la instrucción de acuerdo con la modalidad que aplique].**

#### A.  Disparar un Arma de Fuego

Contra la persona acusada se ha presentado una acusación por delito de Disparar o Apuntar Armas de Fuego.

La ley dispone que comete delito la persona que voluntariamente dispare cualquier arma de fuego, fuera de los lugares autorizados por esta ley, aunque no se le cause daño a persona alguna.

Los elementos de este delito son los siguientes:

(1) Voluntariamente,

(2) disparar cualquier arma de fuego,

(3) fuera de los lugares autorizados por la Ley de Armas.

La ley no requiere que se le cause daño a persona alguna cuando se dispara el arma de fuego.

"Arma de fuego" es cualquier arma que, sin importar el nombre, sea capaz de lanzar un proyectil o proyectiles por acción de una explosión. El término arma de fuego incluye, pero no se limita a, pistola, revolver, escopeta, rifle, carabina, incluyendo el marco, armazón o el receptor donde el manufacturero coloca el número de serie de tales armas. Esta definición no incluye aquellos artefactos tales como, pero sin limitarse a, las pistolas de clavos utilizadas en la construcción, artefactos para lanzar señales de pirotecnia o líneas, mientras se utilicen con fines de trabajo, arte, oficio o deporte.

"Voluntariamente" significa que el acto nace de la voluntad y no por fuerza o necesidad extraña a aquella.

**[El tribunal debe impartir esta Instrucción acompañada de la Instrucción 4.5].**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por este delito.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada

cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por este delito.

### B. Apuntar armas de fuego

Contra la persona acusada se ha presentado una acusación por el delito de Apuntar con un Arma de Fuego.

La ley dispone que comete delito la persona que intencionalmente apunte hacia alguna persona con un arma de fuego, aunque no le cause daño a persona alguna.

Los elementos de este delito son los siguientes:

(1) Intencionalmente,

(2) apuntar hacia alguna persona con un arma de fuego.

La ley no requiere que se le cause daño a persona alguna cuando se apunte el arma de fuego.

"Arma de fuego" es cualquier arma que, sin importar el nombre, sea capaz de lanzar un proyectil o proyectiles por acción de una explosión. El término arma de fuego incluye, pero no se limita a, pistola, revolver, escopeta, rifle, carabina, incluyendo el marco, armazón o el receptor donde el manufacturero coloca el número de serie de tales armas. Esta definición no incluye aquellos artefactos tales como, pero sin limitarse a, las pistolas de clavos utilizadas en la construcción, artefactos para lanzar señales de pirotecnia o líneas, mientras se utilicen con fines de trabajo, arte, oficio o deporte.

**[El tribunal debe impartir esta Instrucción acompañada de la Instrucción 4.5].**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por este delito.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por este delito.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 18.5 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con el Artículo 1.02 (*Definiciones*) y el Artículo 6.14 (*Disparar o apuntar armas de fuego*) de la Ley de Armas de Puerto Rico de 2020, Ley 168-2019, el Artículo 5.15 (*Disparar o apuntar armas*) de la Ley de Armas de Puerto Rico,

Ley 404-2000, el Artículo 14 (*Definiciones*), el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*) y el Artículo 22 (*Elementos subjetivos del delito*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5014, 5034 y 5035).

**COMENTARIO:**

La determinación de no culpabilidad por el delito de apuntar ilegalmente a una persona con un arma de fuego no es irreconciliable con los dictámenes de culpabilidad por los delitos de poseer y portar ilegalmente un arma. Véanse *Pueblo v. Acabá Raíces,* 118 DPR 369 (1987); *Pueblo v. Millán Meléndez*, 110 DPR 171, 182 (1980); *Pueblo v. Cruz Negrón*, 104 DPR 881, 884 (1976).

## 13.15  Armas al Alcance de Menores (Art. 6.16)

**[El tribunal debe impartir la instrucción de acuerdo con la modalidad que aplicable].**

### A.  Negligentemente

Contra la persona acusada se ha presentado una acusación por el delito de dejar [un arma] [arma de fuego] al alcance de una persona menor de 18 años, quien se apoderó del arma y causó grave daño corporal, o la muerte, a otra persona o a sí.

La ley dispone que comete este delito la persona que negligentemente deje un arma un arma de fuego, al alcance de una persona menor de 18 años, y que esta última se haya apoderado del arma y haya causado grave daño corporal o la muerte a otra persona o a sí mismo.

Los elementos de este delito son los siguientes:

> (1) Negligentemente,
> (2) dejar [un arma] [un arma de fuego],
> (3) al alcance de una persona menor de 18 años y
> (4) que el (la) menor se apodere del arma y cause [grave daño corporal] [la muerte] a otra persona o a sí mismo.

"Negligentemente" significa que la persona debió saber que su conducta genera un riesgo sustancial e injustificado de producir un hecho delictivo, pero no era consciente de ello o lo desconoce. El riesgo debe ser de tal grado que, considerando la naturaleza y el propósito de la conducta y las circunstancias conocidas por el actor, su comportamiento constituye una desviación crasa del estándar de cuidado que observaría una persona razonable en la posición del actor.

"Arma" significa toda arma de fuego, arma blanca o cualquier otro tipo de arma, independientemente de su denominación.

"Arma de fuego" es cualquier arma que, sin importar el nombre, sea capaz de lanzar un proyectil o proyectiles por acción de una explosión. El término arma de fuego incluye, pero no se limita a, pistola, revolver, escopeta, rifle, carabina, incluyendo el marco, armazón o el receptor donde el manufacturero coloca el número de serie de tales armas. Esta definición no incluye aquellos artefactos tales como, pero sin limitarse a, las pistolas de clavos utilizadas en la construcción, artefactos para lanzar señales de pirotecnia o líneas, mientras se utilicen con fines de trabajo, arte, oficio o deporte.

**[El tribunal debe impartir la instrucción siguiente, si aplica:**

No se comete delito en situaciones en que una persona menor de edad tenga posesión de un arma en una situación de legítima defensa propia o de terceros o peligro inminente, en que una persona prudente y razonable entendería que de haber podido una persona autorizada mayor de edad a tener acceso del arma, habría sido lícita su acción; ni cuando el padre o madre o custodio legal del menor, tenga una licencia de armas vigente y sea poseedor de un arma legalmente inscrita, le permita tenerla accesible, descargada y asegurada, en su presencia y bajo su supervisión directa y continua**].**

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no negligentemente al dejar [un arma] [arma de fuego] al alcance de una persona menor de 18 años, quien se apoderó del arma y causó [grave daño corporal] o [ la muerte] a otra persona o sí mismo. Pueden inferir o deducir razonablemente de la prueba presentada y admitida la negligencia. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por este delito.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por este delito.

### B. Intencionalmente

Contra la persona acusada se ha presentado una acusación por el delito de intencionalmente facilitar o poner a una persona menor de 18 años en posesión de un arma de fuego para que la posea, custodie, oculte o transporte.

La ley dispone que comete este delito la persona que intencionalmente facilite o ponga en posesión de un arma de fuego o municiones del arma a una persona menor de 18 años para que la posea, custodie, oculte o transporte.

Los elementos de este delito son los siguientes:

(1) Intencionalmente,

(2) [facilitar] [poner en posesión de],

(3) [un arma de fuego] [municiones de un arma],

(4) a una persona menor de 18 años

(5) para que la [posea] [transporte] [custodie][oculte].

**[Si aplica, el tribunal debe impartir la siguiente instrucción, refiriéndose solamente a la(s) circunstancia(s) que aplique(n), según lo alegado en el pliego acusatorio:**

Además, corresponde a ustedes, determinar si la persona menor de edad:

(a) causó daño a otra persona,

(b) causó daño a sí mismo con el arma,

(c) cometió una falta grave mientras poseía el arma de fuego**].**

"Intencionalmente" equivale a actuar "a propósito", "con conocimiento" o "temerariamente". Una persona actúa "a propósito" cuando su objetivo consciente es la producción de un resultado o cuando cree que una circunstancia existe. La persona actúa "con conocimiento" cuando es consciente de que la producción del resultado o la existencia de la circunstancia prohibida por ley es prácticamente segura. La persona actúa "temerariamente" cuando es consciente de que su conducta genera un riesgo sustancial e injustificado de que se produzca el resultado o la circunstancia prohibida por ley, y a pesar de conocer el riesgo, la persona continúa con su acción u omisión.

"Posesión" constituye delito solamente cuando la persona voluntariamente adquirió o recibió el arma o la persona conocía que el arma estaba en su posesión y tuvo tiempo suficiente para terminar la posesión.

"Transportar" significa la posesión, mediata o inmediata de una o más armas de fuego descargadas, dentro de un estuche cerrado, y el cual no esté a simple vista, con el fin de trasladarlas entre lugares. Dicha transportación deberá realizarse por una persona con licencia de armas vigente.

"Arma de fuego" es cualquier arma que, sin importar el nombre, sea capaz de lanzar un proyectil o proyectiles por acción de una explosión. El término arma de fuego incluye, pero no se limita a, pistola, revolver, escopeta, rifle, carabina, incluyendo el marco, armazón o el receptor donde el manufacturero coloca el número de serie de tales armas. Esta definición no incluye aquellos artefactos tales como, pero sin limitarse a, las pistolas de clavos utilizadas en la construcción, artefactos para lanzar señales de pirotecnia o líneas, mientras se utilicen con fines de trabajo, arte, oficio o deporte.

"Munición" significa cualquier bala, cartucho, proyectil, perdigón o cualquier carga, que se ponga o pueda ponerse en un arma para ser disparada.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no a propósito, con conocimiento o temerariamente. Pueden inferir o deducir razonablemente de

la prueba presentada y admitida el propósito, el conocimiento o la temeridad. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Armas al Alcance de Menores.

**[Cuando se alegue(n) alguna(s) circunstancia(s) agravante(s), el tribunal debe impartir esta Instrucción adicional:**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable la comisión del delito, pero no que la persona menor de edad [causó daño a otra persona] [causó un daño a sí mismo(a)] [cometió falta grave mientras poseía el arma de fuego], entonces deberán rendir un veredicto de culpable por el delito de Armas al Alcance de Menores sin esa circunstancia**].**

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Armas al Alcance de Menores.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 1.02 (*Definiciones*) y el Artículo 6.16 (*Armas al alcance de menores*) de la Ley de Armas de Puerto Rico de 2020, Ley 168-2019, el Artículo 5.19 (*Armas al alcance de menores*) de la Ley de Armas de Puerto Rico, Ley 404-2000, el Artículo 14 (*Definiciones*), el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*) y el Artículo 22 (*Elementos subjetivos del delito*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5014, 5034 y 5035).

## 13.16  Apropiación Ilegal de Armas de Fuego o Municiones, Robo (Art. 6.17)

Contra la persona acusada se ha presentado una acusación por el delito de apropiarse ilegalmente de [un arma de fuego] [unas municiones].

La ley dispone que comete este delito cualquier persona natural o jurídica, que intencionalmente se apropie ilegalmente de un arma de fuego o de municiones.

Los elementos de este delito son los siguientes:

(1) Intencionalmente,

(2) apropiarse ilegalmente,

(3) [de un arma de fuego] [de municiones].

**[El tribunal debe impartir la siguiente instrucción, si aplica, según lo alegado en el pliego acusatorio:**

Además, corresponde a ustedes determinar si la persona acusada se apropió ilegalmente de más de un arma**].**

**[Cuando no se acepten las condenas previas por delito grave, el tribunal debe impartir la instrucción siguiente:**

También corresponde a ustedes determinar si la persona acusada tiene antecedentes penales por delito grave**].**

"Arma de fuego" es cualquier arma que, sin importar el nombre, sea capaz de lanzar un proyectil o proyectiles por acción de una explosión. El término arma de fuego incluye, pero no se limita a, pistola, revolver, escopeta, rifle, carabina, incluyendo el marco, armazón o el receptor donde el manufacturero coloca el número de serie de tales armas. Esta definición no incluye aquellos artefactos tales como, pero sin limitarse a, las pistolas de clavos utilizadas en la construcción, artefactos para lanzar señales de pirotecnia o líneas, mientras se utilicen con fines de trabajo, arte, oficio o deporte.

"Munición" significa cualquier bala, cartucho, proyectil, perdigón o cualquier carga, que se ponga o pueda ponerse en un arma para ser disparada.

"Intencionalmente" equivale a actuar "a propósito", "con conocimiento" o "temerariamente". Una persona actúa "a propósito" cuando su objetivo consciente es la producción de un resultado o cuando cree que una circunstancia existe. La persona actúa "con conocimiento" cuando es consciente de que la producción del resultado o la existencia de la circunstancia prohibida por ley es prácticamente segura. La persona actúa "temerariamente" cuando es consciente de que su conducta genera un riesgo sustancial e injustificado de que se produzca el resultado o la circunstancia prohibida por ley, y a pesar de conocer el riesgo, la persona continúa con su acción u omisión.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no, a propósito, con conocimiento o temerariamente. Pueden inferir o deducir razonablemente de la prueba presentada y admitida el propósito, el conocimiento o la temeridad. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Apropiación Ilegal de [Armas de Fuego] [Municiones].

**[Cuando se alegue que se apropió de más de un arma o que tiene antecedentes penales por delito grave anterior, el tribunal debe impartir la instrucción siguiente:**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, pero no que [se apropió de más un arma] [tiene antecedentes penales por delito grave], deberán rendir un veredicto de culpable por el delito de Apropiación Ilegal de [Armas de Fuego] [Municiones] sin esa circunstancia**].**

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Apropiación Ilegal de [Armas de Fuego] [Municiones].

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 1.02 (*Definiciones*) y el Artículo 6.17 (*Apropiación ilegal de armas de fuego o municiones*; *robo*) de la Ley de Armas de Puerto Rico de 2020, Ley  168-2019, el Artículo 5.20 (*Apropiación ilegal de armas o municiones, robo*) de la Ley de Armas de Puerto Rico, Ley 404-2000, el Artículo 14 (*Definiciones*), el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*) y el Artículo 22 (*Elementos subjetivos del delito*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5014, 5034 y 5035).

## 13.17  Alteración de Vehículos para Ocultar Armas de Fuego (Art. 6.18)

Contra la persona acusada se ha presentado una acusación por el delito de poseer un vehículo cuyo diseño original haya sido alterado con el propósito de guardar u ocultar armas de fuego ilegales.

La ley dispone que comete este delito la persona que voluntariamente y a sabiendas posea un vehículo cuyo diseño original haya sido alterado con el propósito de guardar u ocultar armas de fuego ilegales.

Los elementos de este delito son los siguientes:

(1) Voluntariamente y a sabiendas,

(2) poseer un vehículo con el diseño original alterado,

(3) con el propósito de guardar u ocultar armas de fuego ilegales.

"Vehículo" significa cualquier medio que sirva para transportar personas o cosas por tierra, mar o aire.

"Arma de fuego" es cualquier arma que, sin importar el nombre, sea capaz de lanzar un proyectil o proyectiles por acción de una explosión. El término arma de fuego incluye, pero no se limita a, pistola, revolver, escopeta, rifle, carabina, incluyendo el marco, armazón o el receptor donde el manufacturero coloca el número de serie de tales armas. Esta definición no incluye aquellos artefactos tales como, pero sin limitarse a, las pistolas de clavos utilizadas en la construcción, artefactos para lanzar señales de pirotecnia o líneas, mientras se utilicen con fines de trabajo, arte, oficio o deporte.

"Voluntariamente" es el acto que nace de la voluntad, y no por fuerza o necesidad extraña a aquella.

"A sabiendas" es sinónimo de "con conocimiento". Actúa "con conocimiento" quien es consciente que la existencia de la circunstancia o la producción del resultado es prácticamente segura. El término "prácticamente segura" se refiere a una probabilidad muy alta.

Una persona actúa "a propósito" cuando su objetivo consciente es guardar u ocultar armas de fuego ilegales en un vehículo alterado.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó voluntariamente, a propósito y con conocimiento. Pueden inferir o deducir razonablemente de la prueba presentada y admitida el propósito o el conocimiento. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por este delito.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por este delito.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 1.02 (*Definiciones*) y el Artículo 6.18 (*Alteración de vehículos para ocultar armas de fuego*) de la Ley de Armas de Puerto Rico de 2020, Ley 168-2019, el Artículo 5.21 (*Alteración de vehículos de motor para ocultar armas de fuego ilegales)* de la Ley de Armas de Puerto Rico, Ley 404 2000, el Artículo 14 (*Definiciones*), el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*) y el Artículo 22 (*Elementos subjetivos del delito*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5014, 5034 y 5035).

**13.18  Comercio de Armas de Fuego y Municiones sin Licencia de Armero (Art. 6.19)**

Contra la persona acusada se ha presentado una acusación por el delito de Comercio de Armas de Fuego y Municiones Sin Licencia de Armero.

La ley dispone que comete este delito cualquier persona, natural o jurídica, que se dedique al negocio de armero(a), sin poseer una licencia de armero(a).

Los elementos de este delito son los siguientes:

(1) Cualquier persona natural o jurídica,

(2) que se dedique al negocio de armero(a),

(3) sin poseer una licencia de armero(a).

Los trabajos de ajustes, mecánicos o cosméticos entre personas con licencia de armas o a las armas por su propio dueño con licencia de armas, no constituirán delito alguno, si no existe ánimo de lucro.

"Arma de fuego" es cualquier arma que, sin importar el nombre, sea capaz de lanzar un proyectil o proyectiles por acción de una explosión. El término arma de fuego incluye, pero no se limita a, pistola, revolver, escopeta, rifle, carabina, incluyendo el marco, armazón o el receptor donde el manufacturero coloca el número de serie de tales armas. Esta definición no incluye aquellos artefactos tales como, pero sin limitarse a, las pistolas de clavos utilizadas en la construcción, artefactos para lanzar señales de pirotecnia o líneas, mientras se utilicen con fines de trabajo, arte, oficio o deporte.

"Munición" significa cualquier bala, cartucho, proyectil, perdigón o cualquier carga, que se ponga o pueda ponerse en un arma para ser disparada.

"Armero(a)" significa cualquier persona natural o jurídica que posee una licencia de armero por sí o por medio de sus agentes o empleados, compre o introduzca para la venta, cambie, permute, ofrezca en venta o exponga a la venta, o tenga a la venta en su establecimiento comercial cualquier arma de fuego o municiones, o que realice cualquier trabajo mecánico o cosmético para un tercero en cualquier arma de fuego o municiones.

**[El tribunal debe impartir esta Instrucción acompañada de la Instrucción 4.5].**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por este delito.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por este delito.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 1.02 (*Definiciones*) y el Artículo 6.19 (*Comercio de armas de fuego y municiones sin licencia de armero*) de la Ley de Armas de Puerto Rico de 2020, Ley 168-2019 y el Artículo 2.08 (*Licencia de armero; informe de transacciones*) de la Ley de Armas de Puerto Rico, Ley 404-2000.

### 13.19  Disparar desde un Vehículo (Art. 6.20)

Contra la persona acusada se ha presentado una acusación por el delito de Disparar desde un Vehículo.

La ley dispone que comete este delito cualquier persona que dispare un arma de fuego desde un vehículo, excepto en casos de defensa propia o de terceros, o de agentes del orden público en el desempeño de funciones oficiales.

Los elementos de este delito son los siguientes:

(1) Disparar un arma de fuego

(2) desde un vehículo.

"Arma de fuego" es cualquier arma que, sin importar el nombre, sea capaz de lanzar un proyectil o proyectiles por acción de una explosión. El término arma de fuego incluye, pero no se limita a, pistola, revolver, escopeta, rifle, carabina, incluyendo el marco, armazón o el receptor donde el manufacturero coloca el número de serie de tales armas. Esta definición no incluye aquellos artefactos tales como, pero sin limitarse a, las pistolas de clavos utilizadas en la construcción, artefactos para lanzar señales de pirotecnia o líneas, mientras se utilicen con fines de trabajo, arte, oficio o deporte.

"Vehículo" significa cualquier medio que sirva para transportar personas o cosas por tierra, mar o aire.

**[El tribunal debe impartir esta Instrucción acompañada de la Instrucción 4.5].**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por este delito.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por este delito.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 1.02 (*Definiciones*) y el Artículo 6.20 (*Disparar desde un vehículo*) de la Ley de Armas de Puerto Rico de 2020, Ley 168-2019.

## 13.20  Conspiración para el Tráfico Ilegal de Armas de Fuego y/o Municiones (Art. 6.21)

Contra la persona acusada se ha presentado una acusación por el delito de Conspiración para el Tráfico Ilegal de [Armas de fuego] [Municiones].

La ley dispone que comete este delito la persona que conspire para traficar de forma ilegal [armas de fuego] [municiones].

Los elementos de este delito son los siguientes:

(1) Conspirar
(2) para traficar de forma ilegal,
(3) [armas de fuego] [municiones].

"Conspiración" es el convenio o acuerdo, entre dos o más personas, para cometer un delito cuando han formulado planes precisos respecto a la participación de cada cual, el tiempo y el lugar de los hechos.

"Arma de fuego" es cualquier arma que, sin importar el nombre, sea capaz de lanzar un proyectil o proyectiles por acción de una explosión. El término arma de fuego incluye, pero no se limita a, pistola, revolver, escopeta, rifle, carabina, incluyendo el marco, armazón o el receptor donde el manufacturero coloca el número de serie de tales armas. Esta definición no incluye aquellos artefactos tales como, pero sin limitarse a, las pistolas de clavos utilizadas en la construcción, artefactos para lanzar señales de pirotecnia o líneas, mientras se utilicen con fines de trabajo, arte, oficio o deporte.

"Munición" significa cualquier bala, cartucho, proyectil, perdigón o cualquier carga, que se ponga o pueda ponerse en un arma para ser disparada.

**[El tribunal debe impartir esta Instrucción acompañada de la Instrucción 4.5].**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por este delito.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada

cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por este delito.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 1.02 (*Definiciones*) y el Artículo 6.21 (*Conspiración para el tráfico ilegal de armas de fuego y/o municiones*) de la Ley de Armas de Puerto Rico de 2020, Ley 168-2019 y el Artículo 244 (*Conspiración*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA sec. 5334).

### 13.21 Fabricación, Distribución, Posesión y Uso de Municiones; Importación de Municiones (Art. 6.22)

Contra la persona acusada se ha presentado una acusación por el delito de [Fabricación] [Distribución] [Posesión] [Uso] [Importación] de Municiones.

La ley dispone que comete este delito la persona que, sin licencia de armas o de armero(a) vigente y sin ser un(a) agente del orden público, según sea el caso, fabrique, solicite que se fabrique, ofrezca, compre, venda, tenga para la venta, guarde, almacene, entregue, preste, traspase o, en cualquier forma disponga de, posea, use, porte o transporte municiones, o compre pólvora.

Los elementos de este delito son los siguientes:

(1) No tener licencia de armas o de armero(a) vigente o no ser agente del orden público,

(2) **[el tribunal debe leer la modalidad que aplique según lo alegado en el pliego acusatorio:**
   (a) [Fabricar] [Solicitar que se fabrique] [Ofrecer] [Comprar] [Vender] [Tener para la venta] [Guardar] [Almacenar] [Entregar] [Prestar] [Traspasar] [Disponer de] [Poseer] [Usar] [Portar] [Transportar] municiones
   (b) comprar pólvora**]**.

**[Cuando se alegue en el pliego acusatorio que se trata de municiones *armor piercing*, el tribunal debe impartir la instrucción adicional siguiente:**

Además, corresponde a ustedes determinar si las municiones son las comúnmente conocidas como *armor piercing***]**.

"Munición" significa cualquier bala, cartucho, proyectil, perdigón o cualquier carga, que se ponga o pueda ponerse en un arma para ser disparada.

"Licencia de armas" significa aquella licencia concedida por la Oficina de Licencia de Armas que autorice a una persona a poseer y portar armas de fuego y sus municiones.

"Armero(a)" significa cualquier persona natural o jurídica que posee una licencia de armero por sí o por medio de sus agentes o empleados, compre o introduzca para la venta, cambie, permute, ofrezca en venta o exponga a la venta, o tenga a la venta en su establecimiento comercial cualquier arma de fuego o municiones, o que realice cualquier trabajo mecánico o cosmético para un tercero en cualquier arma de fuego o municiones.

**[Cuando se alegue en el pliego acusatorio que se trata de municiones *armor piercing*, el tribunal debe impartir la instrucción adicional siguiente:**

*Armor piercing* – significa aquel proyectil que pueda ser usado en armas de fuego, que esté construido enteramente (excluyendo la presencia o trazas de otras sustancias) o de una combinación de aleación de tungsteno, acero, hierro, latón, bronce, berilio cúprico o uranio degradado; o un proyectil de cubierta completa mayor de calibre punto veintidós (.22), diseñado e intencionado para usarse en armas de fuego y cuya cubierta tenga un peso de más de veinticinco (25) por ciento de su peso total. Excluye toda munición designada no tóxica, requerida por legislación ambiental federal o estatal o reglamentación de caza para esos propósitos, proyectiles desintegrables diseñados para tiro al blanco, o cualquier proyectil que se determine por el Secretario del Tesoro de Estados Unidos que su uso primario es para propósito deportivo, o cualquier otro proyectil o núcleo de proyectil en cual dicho Secretario encuentre que su uso primordial es para fines industriales, incluyendo cargas usadas en equipos de perforación de pozos de petróleo o de gas**]**.

**[El tribunal debe impartir esta Instrucción acompañada de la Instrucción 4.5].**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Fabricación, Distribución, Posesión, Uso o Importación de Municiones.

**[Cuando se alegue en el pliego acusatorio que se trata de municiones *armor piercing*, el tribunal debe impartir la instrucción adicional siguiente:**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, pero no que la pólvora fuera para usarse en municiones comúnmente conocidas como *armor piercing*, deberán rendir un veredicto de culpable por el delito de Fabricación, Distribución, Posesión, Uso o Importación de Municiones sin esa circunstancia**]**.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su

culpabilidad, deberán rendir un veredicto de no culpable por el delito de Fabricación, Distribución, Posesión, Uso o Importación de Municiones.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 18.6 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con el Artículo 1.02 (*Definiciones*) y el Artículo 6.22 (*Fabricación, distribución, posesión y uso de municiones; importación de municiones*) de la Ley de Armas de Puerto Rico de 2020, Ley 168-2019 y el Artículo 6.01 (*Fabricación, distribución, posesión y uso de municiones*) de la Ley de Armas de Puerto Rico, Ley 404-2000.

**COMENTARIO:**

La Ley 168-2019 no ofrece una definición de "pólvora".

### 13.22 Venta de Municiones a Personas sin Licencia (Art. 6.23)

Contra la persona acusada se ha presentado una acusación por el delito de Venta de Municiones a Personas sin Licencia.

La ley dispone que comete este delito la persona que venda, regale, ceda o traspase municiones a personas que no presenten una licencia de armas o de armero(a) vigente o evidencia de ser un(a) agente del orden público.

Los elementos de este delito son los siguientes:

(1) [Vender] [Regalar] [Ceder] [Traspasar] municiones
(2) a personas que no presenten una licencia de armas vigente, de armero(a) vigente o evidencia de ser un(a) agente del orden público.

No constituye delito la venta de municiones dentro de un polígono por parte de un(a) armero(a) a una persona mayor de 21 años que tenga y presente una identificación gubernamental con foto y que alquile un arma de fuego para su uso en el polígono.

**[Cuando se alegue en el pliego acusatorio que se trata de municiones *armor piercing*, el tribunal debe impartir la instrucción adicional siguiente:**

Además, corresponde a ustedes determinar si las municiones vendidas son las conocidas como *armor piercing*].

"Munición" significa cualquier bala, cartucho, proyectil, perdigón o cualquier carga, que se ponga o pueda ponerse en un arma para ser disparada.

"Licencia de armas" significa aquella licencia concedida por la Oficina de Licencia de Armas que autorice a una persona a poseer y portar armas de fuego y sus municiones.

"Armero(a)" significa cualquier persona natural o jurídica que posee una licencia de armero por sí o por medio de sus agentes o empleados, compre o introduzca para la venta, cambie, permute, ofrezca en venta o exponga a la venta, o tenga a la venta en su establecimiento comercial cualquier arma de fuego o municiones, o que realice cualquier trabajo mecánico o cosmético para un tercero en cualquier arma de fuego o municiones.

**[Cuando se alegue en el pliego acusatorio que se trata de municiones *armor piercing*, el tribunal debe impartir la instrucción adicional siguiente:**

*Armor piercing* – significa aquel proyectil que pueda ser usado en armas de fuego, que esté construido enteramente (excluyendo la presencia o trazas de otras sustancias) o de una combinación de aleación de tungsteno, acero, hierro, latón, bronce, berilio cúprico o uranio degradado; o un proyectil de cubierta completa mayor de calibre punto veintidós (.22), diseñado e intencionado para usarse en armas de fuego y cuya cubierta tenga un peso de más de veinticinco (25) por ciento de su peso total. Excluye toda munición designada no tóxica, requerida por legislación ambiental federal o estatal o reglamentación de caza para esos propósitos, proyectiles desintegrables diseñados para tiro al blanco, o cualquier proyectil que se determine por el Secretario del Tesoro de Estados Unidos que su uso primario es para propósito deportivo, o cualquier otro proyectil o núcleo de proyectil en cual dicho Secretario encuentre que su uso primordial es para fines industriales, incluyendo cargas usadas en equipos de perforación de pozos de petróleo o de gas**].**

**[El tribunal debe impartir esta Instrucción acompañada de la Instrucción 4.5]**.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Venta de Municiones a Personas sin Licencia.

**[Cuando se alegue en el pliego acusatorio la venta de municiones *armor piercing*, el tribunal debe impartir la instrucción adicional siguiente**:

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, pero no que eran municiones comúnmente conocidas como "*armor piercing*" deberán rendir un veredicto de culpable por el delito de Venta de Municiones a Personas sin Licencia sin esa circunstancia**].**

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Venta de Municiones a Personas sin Licencia.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con: el Artículo 1.02 (*Definiciones*) y el Artículo 6.23 (*Venta de municiones a personas sin licencia;*) de la Ley de Armas de Puerto Rico de 2020, Ley 168-2019 y el Artículo 6.02 (*Venta de municiones a personas sin licencia; límite en el número de municiones*) de la Ley de Armas de Puerto Rico, Ley 404-2000.

### 13.23  Compra de Municiones de Calibre Distinto (Art. 6.24)

Contra la persona acusada se ha presentado una acusación por el delito Compra de Municiones de Calibre Distinto.

La ley dispone que comete este delito la persona que, teniendo una licencia de armas vigente, compre municiones de un calibre distinto a las que pueden utilizarse en las armas de fuego inscritas a su nombre, salvo que alquilen armas de un calibre distinto al de las armas registradas a su nombre en una armería con polígono para el uso exclusivo en dichos predios.

Los elementos de este delito son los siguientes:

> (1) Una persona con licencia de armas vigente,
> (2) compre municiones,
> (3) de un calibre distinto a las utilizadas en cualquier arma inscrita a su nombre.

"Licencia de armas" significa aquella licencia concedida por la Oficina de Licencia de Armas que autorice a una persona a poseer y portar armas de fuego y sus municiones.

"Munición" significa cualquier bala, cartucho, proyectil, perdigón o cualquier carga, que se ponga o pueda ponerse en un arma para ser disparada.

**[El tribunal debe impartir esta Instrucción acompañada de la Instrucción 4.5]**.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por este delito.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por este delito.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 1.02 (*Definiciones*) y el Artículo 6.23 (*Compra de municiones de calibre distinto*) de la Ley de Armas de Puerto Rico de 2020, Ley 168-2019 y el Artículo 6.03 (*Compra de municiones de calibre distinto*) de la Ley de Armas de Puerto Rico, Ley 404-2000.

## 13.24 Notificación por Porteador, Almacenista o Depositario de Recibo de Armas; Penalidades (Art. 6.25)

Contra la persona acusada se ha presentado una acusación por no cumplir con la obligación de un [Porteador] [Almacenista] [Depositario] de Recibo de Armas.

Todo porteador marítimo, aéreo o terrestre, y todo almacenista o depositario que a sabiendas reciba armas de fuego, accesorios o partes de estas o municiones para entrega en Puerto Rico, no entregará dicha mercancía al consignatario hasta que este le muestre su licencia de armas o de armero. Después de cinco (5) días laborables de la entrega, el porteador, almacenista o depositario notificará al Comisionado, dirigiendo la notificación personalmente o por el método que para estos efectos se adopte por reglamento, el nombre, dirección y número de licencia del consignatario y el número de armas de fuego o municiones, incluyendo el calibre, entregadas, así como cualquier otra información que requiera el Comisionado mediante reglamento. Deberá, además, toda aerolínea comercial, que vuele a Puerto Rico y que no haya recibido armas de fuero y/o municiones de parte de un pasajero para transportarlas a cualquier aeropuerto dentro de los límites territoriales de Puerto Rico como parte de su equipaje, notificar al Negociado de la Policía de Puerto Rico sobre este importe, al momento que se le vaya a entregar dicha arma de fuego y/o municiones al pasajero. La línea aérea requerirá del pasajero y le suministrará al Negociado de la Policía de Puerto Rico el nombre del pasajero, dirección, teléfono y demás información de contacto, además de la cantidad, tipo, calibre y datos de registro de las armas y/o municiones que este transporte dentro de los límites territoriales de Puerto Rico.

Cuando el consignatario no tuviere licencia de armas o armero(a), el porteador, almacenista o depositario notificará al Comisionado inmediatamente de tal hecho, el nombre y dirección del consignatario, y el número de armas de fuego o municiones para entrega. Además, tendrá prohibido hacer entrega de las armas y/o municiones a tal consignatario hasta tener autorización al efecto, expedida por el Comisionado.

"Arma de fuego" es cualquier arma que, sin importar el nombre, sea capaz de lanzar un proyectil o proyectiles por acción de una explosión. El término arma de fuego incluye, pero no se limita a, pistola, revolver, escopeta, rifle, carabina, incluyendo el marco, armazón o el receptor donde el manufacturero coloca el número de serie de tales armas. Esta definición no incluye aquellos artefactos tales como, pero sin limitarse a, las pistolas de clavos utilizadas en la construcción, artefactos para lanzar señales de pirotecnia o líneas, mientras se utilicen con fines de trabajo, arte, oficio o deporte.

"Licencia de armas" significa aquella licencia concedida por la Oficina de Licencia de Armas que autorice a una persona a poseer y portar armas de fuego y sus municiones.

"Armero(a)" significa cualquier persona natural o jurídica que posee una licencia de armero por sí o por medio de sus agentes o empleados, compre o introduzca para la venta, cambie, permute, ofrezca en venta o exponga a la venta, o tenga a la venta en su establecimiento comercial cualquier arma de fuego o municiones, o que realice cualquier trabajo mecánico o cosmético para un tercero en cualquier arma de fuego o municiones.

"A sabiendas" es sinónimo de "con conocimiento". Actúa "con conocimiento" quien es consciente de que la existencia de la circunstancia o la producción del resultado es prácticamente segura. El término "prácticamente segura" se refiere a una probabilidad muy alta.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no con conocimiento. Pueden inferir o deducir razonablemente de la prueba presentada y admitida el conocimiento de no cumplir con su obligación de [Porteador] [Almacenista] [Depositario] de Recibo de Armas. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por este delito.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por este delito.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 1.02 (*Definiciones*) y el Artículo 6.25 (*Notificación por Porteador, Almacenista o Depositario de Recibo de Armas; Penalidades*) de la Ley de Armas de Puerto Rico de 2020, Ley 168-2019.

## 13.25 Presunciones (Art. 6.26)

**[El tribunal debe impartir las presunciones que apliquen y luego debe impartir la Instrucción 3.39].**

(1) La posesión por cualquier persona de un arma a la cual se le haya removido, mutilado, cubierto permanentemente, alterado o borrado su número de serie o el nombre de su poseedor(a), se considerará evidencia (*prima facie*) de que dicha persona removió, mutiló, cubrió, alteró o borró dicho número de serie o el nombre de su poseedor(a).

(2) La posesión por cualquier persona de un arma a la cual se le haya removido, mutilado, cubierto permanentemente, alterado o borrado su número de serie o el nombre de su poseedor(a) se considerará evidencia (*prima facie*) de que dicha persona posee el arma con la intención de cometer un delito.

(3) La posesión por cualquier persona de un arma al momento de cometer o intentar cometer un delito, se considerará evidencia (*prima facie*) de que dicha arma estaba cargada al momento de cometer o intentar cometer el delito.

(4) La posesión de un arma de fuego por una persona que no posea una licencia de armas se considerará evidencia (*prima facie*) de que dicha persona pose el arma con la intención de cometer delito.

(5) La presencia de tres o más armas de fuego en una habitación, casa, residencia, establecimiento, oficina, estructura o vehículo, constituirá evidencia (*prima facie*) de que el (la) dueño(a) o poseedor(a) de dicha habitación, casa, residencia, establecimiento, oficina, estructura o vehículo, o aquellas personas que ocupen la habitación, casa, residencia, establecimiento, oficina o estructura, trafican y facilitan armas de fuego ilegalmente, siempre que estas personas no tengan una licencia de armas, de armero, de club de tiro o coto de caza.

(6) La presencia de una ametralladora o cualquier otra arma de funcionamiento automático o de las municiones *armor piercing* en cualquier habitación, casa, residencia, establecimiento, oficina, estructura o vehículo, constituirá evidencia (*prima facie*) de su posesión ilegal por el (la) dueño(a) o poseedor(a) de dicha edificación o vehículo, y por aquellas personas que ocupen la habitación, casa, edificio o estructura donde se encontrare tal ametralladora, arma de funcionamiento automático o escopeta de cañón cortado, y que tengan la posesión mediata o inmediata de la misma. Esta presunción no será de aplicación en los casos que se trate de un vehículo de servicio público que en ese momento estuviere transportando pasajeros mediante paga, o que se demuestre que se trata de una transportación incidental o de emergencia.

(7) La presencia de una ametralladora o cualquier otra arma de funcionamiento automático o de las municiones *armor piercing* en cualquier habitación, casa, residencia, establecimiento, oficina, estructura o vehículo constituirá evidencia (*prima facie*) de que el (la) dueño(a) o poseedor(a) de dicha edificación o vehículo posee el arma o las municiones con la intención de cometer un delito.

(8) La presencia de un arma de fuego o de municiones en cualquier vehículo robado o hurtado, constituirá evidencia (*prima facie*) de su posesión ilegal por todas las personas que viajaren en tal vehículo al momento que dicha arma o municiones sean encontradas.

**REFERENCIA:**

Guarda relación con el Artículo 6.26 (*Presunciones*) de la Ley de Armas de Puerto Rico de 2020, Ley 168-2019 y el Artículo 5.11 (*Presunciones*) de la Ley de Armas de Puerto Rico, Ley 404-2000. Refiérase, además, a la Instrucción 3.39 (*Presunciones*), la Regla 303 (*Efecto de las presunciones en casos criminales*) y la Regla 304 (*Presunciones específicas*) de Evidencia de 2009 (32 LPRA Ap. VI).

**COMENTARIO:**

Las presunciones no son de aplicación a los agentes del orden público en el cumplimiento de sus funciones oficiales. Refiérase al último párrafo del Artículo 6.26 de la Ley de Armas de Puerto Rico de 2020, *supra*.

En el contexto de la Ley de Armas de Puerto Rico, el Tribunal Supremo ha tratado la expresión "evidencia *prima facie*" como una presunción. En *Pueblo v. De Jesús Cordero*, 101 DPR 492 (1963), el Tribunal Supremo resolvió que no viola la Constitución la presunción que establece el Artículo 14 de la Ley de Armas de 1951, la cual disponía que la presencia de los ocupantes de un vehículo era suficiente, o evidencia *prima facie*, para imputarles la posesión de un arma que fuera encontrada en el vehículo. En *Pueblo v. González Beníquez*, 111 DPR 167 (1981), el Tribunal Supremo estimó que no era necesario pasar prueba sobre la constitucionalidad de ese Artículo 14 pues, para resolver la controversia, era suficiente evaluar las instrucciones al Jurado, que fueron erróneas en ese caso.

En *Pueblo v. Sánchez Molina*, 134 DPR 577 (1993), el Tribunal Supremo, en el contexto de las inferencias permisibles establecidas en el Artículo 16 de la Ley para la Protección de la Propiedad Vehicular, Ley Núm. 8 de 5 de agosto de 1987 (9 LPRA sec. 3215), resolvió que siempre que las instrucciones al Jurado sobre el efecto de las presunciones sean compatibles con el efecto de las presunciones establecidas en las Reglas de Evidencia (Regla 15 de Evidencia de 1979 y Regla 303 de Evidencia de 2009), no se viola la presunción de inocencia ni la obligación del Ministerio Público de probar la culpabilidad de la persona acusada más allá de duda razonable. Pero si en las instrucciones al Jurado se incurre en error sobre el efecto de la presunción, de forma tal que el Jurado podría entender que la persona tiene la obligación de presentar prueba para refutar el hecho presumido, se viola la Constitución. Con todo, cabría el error excusable (*harmless error*). Se aludió en este caso a *Francis v. Franklin*, 471 U.S. 307 (1985).

En general, sobre las presunciones y sus efectos, particularmente el problema constitucional, véase E.L. Chiesa Aponte*, Procedimiento criminal y la Constitución: etapa adjudicativa*, San Juan, Eds. Situm, 2018, Sec. 1.4, págs. 45-50.

CAPÍTULO 14
## LEY PARA LA PREVENCIÓN E INTERVENCIÓN CON LA VIOLENCIA DOMÉSTICA

### 14.1 Incumplimiento de Órdenes de Protección (Art. 2.8)

Contra la persona acusada se ha presentado una acusación por el delito de Incumplimiento de una Orden de Protección.

La ley dispone que comete este delito quien, a sabiendas, viole una orden de protección expedida en conformidad con la Ley para la Prevención e Intervención con la Violencia Doméstica, conocida como la Ley 54.

Los elementos de este delito son los siguientes:

(1) que exista una orden de protección expedida en conformidad con la Ley para la Prevención e Intervención con la Violencia Doméstica,

(2) que la orden de protección haya estado vigente al momento de los hechos y

(3) que, a sabiendas, se viole cualquiera de los términos de la orden de protección.

"Orden de protección" es todo mandato expedido por escrito bajo el sello de un tribunal en el cual se dictan las medidas a una persona que comete una agresión para que no incurra o lleve a cabo determinados actos o conducta constitutivos de violencia doméstica.

"A sabiendas" es sinónimo de "con conocimiento". Una persona actúa "con conocimiento" cuando es consciente de que la producción del resultado o la existencia de la circunstancia es prácticamente segura. En este delito, una persona actúa "a sabiendas" cuando conoce que existe una orden de protección expedida en su contra y viola cualquiera de sus términos.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no con conocimiento. Pueden inferir o deducir razonablemente de la prueba presentada y admitida el conocimiento de la existencia de una orden de protección y su violación. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Incumplimiento de una Orden de Protección.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada

cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Incumplimiento de una Orden de Protección.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 1.3 (*Definiciones*) y el Artículo 2.8 (*Incumplimiento de órdenes de protección*) de la Ley para la Prevención e Intervención con la Violencia Doméstica, Ley Núm. 54 de 15 de agosto de 1989, según enmendada, 8 LPRA secs. 602 y 628; el Artículo 14 (*Definiciones*), el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*) y el Artículo 22 (*Elementos subjetivos del delito*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5014, 5034 y 5035).

**COMENTARIO:**

En casos donde interviene la figura intercesora, el tribunal debe referirse a la Instrucción 3.13, pertinente a la Ley 18-2017 que enmienda la Ley para la Prevención e Intervención con la Violencia Doméstica, 8 LPRA secs. 602, 640 y 663, y las Reglas de Procedimiento Criminal de 1963.

Toda instrucción de los delitos particulares debe ir precedida de la Instrucción 4.15, que alude a la definición del concepto "elementos del delito".

## 14.2   Maltrato (Art. 3.1)

Contra la persona acusada se ha presentado una acusación por el delito de Maltrato.

La ley dispone que comete este delito la persona que emplea fuerza física o violencia sicológica, intimidación o persecución contra su cónyuge, excónyuge, la persona con quien cohabita o haya cohabitado, con quien sostenga o haya sostenido una relación consensual, o con quien haya procreado un(a) hijo(a) —independientemente del sexo, estado civil, orientación sexual, identidad de género o estatus migratorio de cualquiera de las personas involucradas en la relación—, para causarle daño físico o grave daño emocional a su persona, a los bienes apreciados por esta (excepto los que pertenecen privadamente a la persona ofensora) o a otra persona.

Los elementos de este delito son los siguientes:

(1) Que una persona emplee o use [fuerza física] [violencia sicológica, intimidación o persecución],

(2) contra [su cónyuge o excónyuge] [la persona con quien cohabita o haya cohabitado] [la persona con quien sostenga o haya sostenido una relación consensual] [la persona con quien haya procreado un(a) hijo(a)], independientemente del sexo, estado civil, orientación sexual, identidad de

género o estatus migratorio de cualquiera de las personas involucradas en la relación,

(3) con el propósito de [causarle daño físico a su persona, a los bienes apreciados por esta, excepto aquellos que pertenecen privadamente a la persona ofensora, o a otra persona] [causarle grave daño emocional].

**[El tribunal debe leer las definiciones que correspondan según lo alegado en el pliego acusatorio].**

[El maltrato mediante fuerza física no requiere un patrón de conducta constante de violencia. El empleo de fuerza física en un incidente en particular podría constituir el delito de Maltrato].

["Violencia sicológica" significa un patrón de conducta constante ejercitada en deshonra, descrédito o menosprecio al valor personal, limitación irrazonable al acceso y manejo de los bienes comunes, chantaje, vigilancia constante, aislamiento, privación de acceso a la alimentación o descanso adecuado, amenazas de privar de la custodia de los hijos o hijas, o destrucción de objetos apreciados por la persona, excepto los que pertenecen privativamente a la persona ofensora].

["Intimidación" significa toda acción o palabra que, manifestada en forma repetitiva, tenga el efecto de ejercer una presión moral sobre el ánimo de una persona, la que por temor a sufrir algún daño físico o emocional en su persona, sus bienes o en otra persona, es obligada a llevar a cabo un acto contrario a su voluntad].

["Persecución" significa mantener a una persona bajo vigilancia constante o frecuente con su presencia en los lugares inmediatos o relativamente cercanos al hogar, residencia, escuela, trabajo o vehículo en el cual se encuentre la persona, lo que infundiría temor o miedo en el ánimo de una persona prudente y razonable].

["Cohabitar" es sostener una relación consensual de pareja similar a la de cónyuges (personas casadas legalmente) en cuanto al aspecto de convivencia, independientemente del sexo, estado civil, orientación sexual, identidad de género o estatus migratorio de cualquiera de las personas involucradas en la relación de pareja].

["Grave Daño emocional" significa y surge cuando, como resultado de la violencia doméstica, haya evidencia prueba de que la persona muestra en forma repetitiva una o varias de las características siguientes: miedo paralizador, sentimientos de desamparo o desesperanza, sentimientos de frustración y fracaso, sentimientos de inseguridad, desamparo, aislamiento, autoestima debilitada u otra conducta similar, cuando sea producto de actos u omisiones reiteradas].

Una persona actúa "a propósito" cuando su objetivo consciente es causar el daño.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no a propósito. Pueden inferir o deducir razonablemente de la prueba presentada y admitida el propósito de causar **[especifique el (los) daño(s) alegado(s) en el pliego acusatorio]**. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Maltrato.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Maltrato.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 20.1 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con el Artículo 1.3 (*Definiciones*) y el Artículo 3.1 (*Maltrato*) de la Ley para la Prevención e Intervención con la Violencia Doméstica, Ley Núm. 54 de 15 de agosto de 1989, según enmendada, 8 LPRA secs. 602 y 631; el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*) y el Artículo 22 (*Elementos subjetivos del delito*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5034 y 5035). Véanse *Pueblo v. Ayala García*, 186 DPR 196 (2012); *Pueblo v. Roldán López*, 158 DPR 54 (2002); *Pueblo v. Figueroa Santana*, 154 DPR 717 (2001).

**COMENTARIO:**

La Ley 23-2013 amplió la protección de la Ley Núm. 54, *supra*, al añadir la frase "independientemente del sexo, estado civil, orientación sexual, identidad de género o estatus migratorio de cualquiera de las partes involucradas". Para jurisprudencia anterior a la vigencia de la Ley 23-2013, refiérase a *Pueblo v. Ruiz*, 159 DPR 194 (2003), y a *Pueblo v. Flores Flores*, 181 DPR 225 (2011) (Sentencia).

En la modalidad de maltrato físico, la instrucción recoge la doctrina de *Pueblo v. Figueroa Santana*, supra, pág. 731: "el Art. 3.1 de la Ley 54, *supra*, en su modalidad de maltrato mediante fuerza física, no requiere que se pruebe un patrón de conducta constante de violencia".

En *Pueblo v. Ayala García*, supra, se clarificó que el delito de maltrato dispuesto por el Artículo 3.1 (8 LPRA sec. 631) no puede considerarse un delito menor incluido en el de maltrato mediante amenaza del Artículo 3.3 (8 LPRA sec. 633). Al abordar el tema, el Tribunal Supremo desglosó los elementos del delito de maltrato cobijado por el Artículo 3.1, *supra*: "(1) que se emplee fuerza física, violencia sicológica, persecución o intimidación; (2) que esa conducta se lleve a cabo contra una de las parejas o ex parejas identificadas en la ley y (3) que se haga con el propósito de causar algún daño físico a la persona, a sus bienes o a otra persona o para causarle grave daño emocional a la pareja o ex pareja". *Pueblo v. Ayala García*, supra, pág. 213.

También es ilustrativo el caso *Pueblo v. Ríos Alonso*, 156 DPR 428 (2002), en cuanto a la convergencia de los elementos del delito y la imbricación de sus modalidades:

Ciertamente, la manera en que se configure el delito de "maltrato" dependerá de los hechos del caso. Así, el delito no siempre requerirá la presencia de "fuerza física" o de "daño físico". Por el contrario, en algunas ocasiones se perfeccionará mediante el empleo de "fuerza física" para causarle a la alegada víctima "daño físico", mientras que en otras circunstancias bastará el empleo de "fuerza física" o "violencia psicológica" para causarle a la parte perjudicada "grave daño emocional".

Claro está, unos mismos hechos pueden producir tanto un daño físico como un grave daño emocional en la víctima y el Ministerio Público tiene discreción para imputar ambas modalidades en la acusación. Íd., pág. 437.

La Ley 54, en su Artículo 1.3(m), 8 LPRA sec. 602(m), define "relación de pareja" como "la relación entre cónyuges, ex cónyuges, las personas que cohabitan o han cohabitado, las que sostienen o han sostenido una relación consensual y los que han procreado entre sí un hijo o una hija, independientemente del sexo, estado civil, orientación sexual, identidad de género o estatus migratorio de cualquiera de las personas involucradas en la relación". El Artículo 3.1, *supra*, recoge expresamente la definición, lo cual se refleja en la instrucción al definir la conducta prohibida por la ley y al detallar el segundo elemento del delito. Las restantes definiciones de la instrucción tienen su origen en los incisos (d), (f), (h), (k) y (r) del Artículo 1.3 de la Ley 54, supra, 8 LPRA sec. 602(d), (f), (h), (k) y (r).

En los casos donde interviene la figura intercesora, el tribunal debe referirse a la Instrucción 3.13, pertinente a la Ley 18-2017 que enmienda la Ley para la Prevención e Intervención con la Violencia Doméstica, 8 LPRA secs. 602, 640 y 663, y las Reglas de Procedimiento Criminal de 1963.

Toda instrucción de los delitos particulares debe ir precedida de la Instrucción 4.15, que alude a la definición del concepto "elementos del delito".

## 14.3   Maltrato Agravado (Art. 3.2)

Contra la persona acusada se ha presentado una acusación por el delito de Maltrato Agravado.

La ley dispone que comete este delito la persona que emplea fuerza física o violencia sicológica, intimidación o persecución contra su cónyuge, excónyuge, la persona con quien cohabita o haya cohabitado, con quien sostenga o haya sostenido una relación consensual, o con quien haya procreado un(a) hijo(a) —independientemente del sexo, estado civil, orientación sexual, identidad de género o estatus migratorio de cualquiera de las personas involucradas en la relación—, para causarle daño físico o grave daño emocional a su persona, a los bienes apreciados por esta (excepto los que pertenecen privadamente a la persona ofensora) o a otra persona.

El Maltrato se considera Agravado cuando **[refiérase solamente a la(s) circunstancia(s) que aplica(n) según lo alegado en el pliego acusatorio**:

(a) se penetra en la morada de la persona o en el lugar donde esté albergada y se comete el maltrato allí, en el caso de cónyuges o cohabitantes, independientemente del sexo, estado civil, orientación sexual, identidad de género o estatus migratorio de cualquiera de las personas involucradas en la relación, cuando estén separados o cuando medie una orden de protección que ordene a una de las partes el desalojo de la residencia;

(b) se causa grave daño corporal a la persona;

(c) se comete con un arma mortífera en circunstancias que no revisten la intención de matar o mutilar;

(d) se comete en la presencia de menores de edad;

(e) se comete luego de mediar una orden de protección o resolución contra la persona acusada expedida en auxilio de la víctima del maltrato;

(f) se induce, incita u obliga a la persona a drogarse con sustancias controladas, o con cualquier otra sustancia o medio que altere la voluntad de la persona, o a intoxicarse con bebidas embriagantes;

(g) se comete y, simultáneamente, se incurre en maltrato de una persona menor de edad (según definido en la Ley 246-2011);

(h) a la víctima se le obliga o induce mediante maltrato, violencia física o sicológica a participar o involucrarse en una relación sexual no deseada con terceras personas;

(i) se comete contra una mujer embarazada,

(j) se comete contra una persona menor de 16 años y la persona agresora tiene 18 años o más**].**

Los elementos de este delito son los siguientes:

(1) Que una persona emplee o use [fuerza física] [violencia sicológica, intimidación o persecución],

(2) contra [su cónyuge o excónyuge] [la persona con quien cohabita o haya cohabitado] [la persona con quien sostenga o haya sostenido una relación consensual] [la persona con quien haya procreado un(a) hijo(a)], independientemente del sexo, estado civil, orientación sexual, identidad de género o estatus migratorio de cualquiera de las personas involucradas en la relación,

(3) con el propósito de [causarle daño físico a su persona, a los bienes apreciados por esta, excepto aquellos que pertenecen privadamente a la persona ofensora, o a otra persona] [causarle grave daño emocional],

(4) cuando **[refiérase solamente a la(s) circunstancia(s) que aplica(n) según lo alegado en el pliego acusatorio**:

(a) penetra en la morada de la persona o en el lugar donde esté albergada y comete el maltrato allí, en el caso de cónyuges o cohabitantes, independientemente del sexo, estado civil, orientación sexual,

identidad de género o estatus migratorio de cualquiera de las personas involucradas en la relación, cuando estén separados o medie una orden de protección que ordene a una de las partes el desalojo de la residencia;

(b) causa grave daño corporal a la persona;

(c) cometa el daño con un arma mortífera en circunstancias que no revisten la intención de matar o mutilar;

(d) cometa el daño en la presencia de menores de edad;

(e) cometa el daño luego de mediar una orden de protección o resolución contra la persona acusada expedida en auxilio de la víctima del maltrato;

(f) induzca, incite u obligue a la persona a drogarse con sustancias controladas o con cualquier otra sustancia o medio que altere la voluntad de la persona, o a intoxicarse con bebidas embriagantes;

(g) cometa y, simultáneamente, incurra en maltrato de una persona menor de edad [según definido en la Ley 246-2011];

(h) obligue o induzca a la alegada víctima mediante maltrato, violencia física o sicológica a participar o involucrarse en una relación sexual no deseada con terceras personas;

(i) cometa el daño contra una mujer embarazada,

(j) cometa el daño contra una persona menor de 16 años y la persona agresora tenga 18 años o más**]**.

**[El tribunal debe leer las definiciones que correspondan según lo alegado en el pliego acusatorio].**

[El maltrato mediante la fuerza física no requiere un patrón de conducta constante de violencia. El empleo de fuerza física en un incidente en particular podría constituir el delito de Maltrato].

["Violencia sicológica" significa un patrón de conducta constante ejercitada en deshonra, descrédito o menosprecio al valor personal, limitación irrazonable al acceso y manejo de los bienes comunes, chantaje, vigilancia constante, aislamiento, privación de acceso a la alimentación o descanso adecuado, amenazas de privar de la custodia de los hijos o hijas, o destrucción de objetos apreciados por la persona, excepto los que pertenecen privativamente a la persona ofensora].

["Intimidación" significa toda acción o palabra que, manifestada en forma repetitiva, tenga el efecto de ejercer una presión moral sobre el ánimo de una persona, la que por temor a sufrir algún daño físico o emocional en su persona, sus bienes o en otra persona, es obligada a llevar a cabo un acto contrario a su voluntad].

["Persecución" significa mantener a una persona bajo vigilancia constante o frecuente con su presencia en los lugares inmediatos o relativamente cercanos al hogar, residencia,

escuela, trabajo o vehículo en el cual se encuentre la persona, lo que infundiría temor o miedo en el ánimo de una persona prudente y razonable].

["Cohabitar" es sostener una relación consensual de pareja similar a la de cónyuges (personas casadas legalmente) en cuanto al aspecto de convivencia, independientemente del sexo, estado civil, orientación sexual, identidad de género o estatus migratorio de cualquiera de las personas involucradas en la relación de pareja].

["Grave Daño emocional" significa y surge cuando, como resultado de la violencia doméstica, haya evidencia prueba de que la persona muestra en forma repetitiva una o varias de las características siguientes: miedo paralizador, sentimientos de desamparo o desesperanza, sentimientos de frustración y fracaso, sentimientos de inseguridad, desamparo, aislamiento, autoestima debilitada u otra conducta similar, cuando sea producto de actos u omisiones reiteradas].

[La penetración prohibida se refiere al lugar de residencia de la víctima, al lugar donde se alberga o reside temporeramente. No es necesario que esté en un albergue o una institución que provee protección, seguridad, servicios de apoyo y alojamiento a víctimas de violencia doméstica].

["Menor de edad" es una persona que al momento de los hechos no ha cumplido 18 años].

["Orden de protección" es todo mandato expedido por escrito bajo el sello de un tribunal en la cual se dictan las medidas a una persona que comete una agresión para que no incurra o lleve a cabo determinados actos o conducta constitutivos de violencia doméstica].

["Relación sexual" significa toda penetración sexual, sea vaginal, anal, orogenital, digital o instrumental. Incluye el sexo oral, y cualquier penetración sexual por la vagina o el ano, sea con el pene, el dedo o un instrumento].

Una persona actúa "a propósito" cuando su objetivo consciente es causar daño.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no a propósito. Pueden inferir o deducir razonablemente de la prueba presentada y admitida el propósito de causar el daño. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Maltrato Agravado.

No obstante, si ustedes consideran, luego de un análisis cuidadoso de toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, que el Ministerio Público probó más allá de duda razonable la comisión del delito, pero no que **[especifique la(s) circunstancia(s) agravante(s) alegada(s) en el pliego acusatorio]**, entonces deberán rendir un veredicto de culpable por el delito de Maltrato.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable.

**REFERENCIA:**

Esta Instrucción proviene de las Instrucciones 20.1 y 20.2 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con el Artículo 1.3 (*Definiciones*), el Artículo 3.1 (*Maltrato*) y el Artículo 3.2 (*Maltrato agravado*) de la Ley para la Prevención e Intervención con la Violencia Doméstica, Ley Núm. 54 de 15 de agosto de 1989, según enmendada, 8 LPRA secs. 602, 631 y 632; el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*) y el Artículo 22 (*Elementos subjetivos del delito*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5034 y 5035). Véanse *Pueblo v. Ayala García*, 186 DPR 196 (2012); *Pueblo v. Roldán López*, 158 DPR 54 (2002); *Pueblo v. Figueroa Santana*, 154 DPR 717 (2001).

**COMENTARIO:**

Refiérase al Comentario pertinente a la Instrucción 14.2.

Si bien los incisos (b) y (c) del Artículo 1.3 de la Ley 54, *supra*, definen los términos "albergue" y "albergada", su inciso (b) expresamente excluye su aplicación al inciso (a) del Artículo 3.2 al señalar que la definición de *albergue* "no aplicará al término 'albergada', según se utiliza en el inciso (a) del [Artículo 3.2 de esta ley]. Para efectos de dicho inciso se entenderá el término de 'albergada' en su acepción común y ordinaria". 8 LPRA sec. 602(b).

Para propósitos del Código Penal se considera menor de edad cualquier persona que no haya cumplido 18 años. Refiérase a los Artículos 39 (*Minoridad*), 88 (*Delitos que no prescriben*) y 130 (*Agresión sexual*), entre otros, del Código Penal de 2012 (33 LPRA secs. 5062, 5133 y 5191, respectivamente). La doctora Nevares-Muñiz aduce que desde el Código Penal de 2004 se aumentó la edad de protección para cubrir todo el periodo en que la persona sea menor de 18 años. D. Nevares-Muñiz, *Código Penal de Puerto Rico*, 4ta ed. rev., San Juan, Ed. Instituto para el Desarrollo del Derecho, 2019, págs. 194-195.

El inciso (g) del Artículo 3.2 de la Ley 54, *supra*, agrava la pena cuando simultáneamente se incurre en maltrato de menores, según definido en la Ley 177-2003, ley que fue sustituida por la Ley 246-2011. Por lo tanto, se entiende que la definición pertinente ahora corresponde a la ley vigente, lo cual no entraña problema de legalidad. Véase *Pueblo v. Plaza Plaza*, 199 DPR 276 (2017).

Véase el Artículo 3(w) de la Ley 246-2011 (8 LPRA sec. 1101(w)) para la definición de "maltrato", con referencia expresa a la Ley 54, *supra*. Por otra parte, el inciso (z) del mismo artículo define "menor" como toda persona que no haya cumplido los 18 años.

Los términos "grave daño corporal" y "arma mortífera", pertinentes a las modalidades agravadas (b) y (c), respectivamente, del Artículo 3.2 de la Ley 54, *supra*, no se definen en la Ley 54, en el Código Penal ni en la Ley de Armas de Puerto Rico. Es menester puntualizar

que estas modalidades agravadas del referido Artículo 3.2 parecen reflejo, en parte, de las modalidades de agresión agravada grave, consignadas en el Artículo 95 del Código Penal de 1974 (1974 [Parte 1] Leyes de Puerto Rico 477), según enmendado, para cuando se aprobó la Ley 54 en 1989. El inciso (b) de la modalidad grave del Artículo 95 del Código Penal de 1974, según enmendado, 1994 Leyes de Puerto Rico 125, agravaba el delito de agresión agravada "[c]uando se infiere grave daño corporal a la persona agredida", mientras que el inciso (c) reflejaba lo propio "cuando se cometiere con armas mortíferas en circunstancias que no revistiesen la intención de matar o mutilar". Íd.

En lo que respecta a la frase "grave daño corporal", el Artículo 5.06 de la Ley de Vehículos y Tránsito de Puerto Rico, 9 LPRA sec. 5126, si bien en otro contexto, señala "[c]onstituirá grave daño corporal aquél que resulte en mutilación, incapacidad física o mental, ya sea parcial o total, temporera o permanente, o que afecte severamente el funcionamiento fisiológico o mental de una persona". En términos similares, el Código Penal Modelo define *serious bodily injury* así: "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ". American Law Institute, *Model Penal Code* Sec. 210.0. Sin embargo, el Artículo 3.2 de la Ley 54 precisamente excluye circunstancias que revistan la intención de mutilar. Si se toma en consideración el Artículo 95 del Código Penal de 1974 —que aparenta haber servido de modelo al Artículo 3.2 de la Ley 54, *supra*— observaríamos que la Ley 54 no armonizaría con la definición de la Ley de Vehículos y Tránsito de Puerto Rico. Adviértase que el Código Penal de 1974 distinguía la agresión agravada (Artículo 95) de la mutilación (Artículo 96) y de lanzar ácidos a una persona (Artículo 97). 1974 [Parte 1] Leyes de Puerto Rico 477-478. La definición prevista en el Código Penal de California aparenta ser más atinada, al definir *great bodily injury*, en el contexto de violencia doméstica, en los términos siguientes: "means significant or substantial physical injury. It is an injury that is greater than minor or moderate harm". Cal. Pen. Cod. sec. 12022. Instrucción 3163 (Great Bodily Injury: Domestic Violence) de las *Judicial Council of California Criminal Jury Instructions, CALCRIM* (2016).

En torno al término "arma mortífera", el Tribunal Supremo lo definió hace más de un siglo en *El Pueblo v. Dávila*, 23 DPR 337, 338 (1915), como "cualquier instrumento que cause la muerte o grave daño corporal, al ser usado del modo corriente y usual que su forma y construcción revela[n]". También abordó el tema en *El Pueblo v. Oriols*, 27 DPR 208, 210-211 (1919), donde expresó:

> [U]na vez identificada la clase de arma con que se cometiera la agresión, la determinación de si es o no un arma mortífera es una cuestión de derecho [...] sobre la que no es necesario, por lo tanto, practicar prueba alguna a no ser que el carácter del arma sea dudoso o dependa el que sea mortífera o no de la forma en que se usa, en cuyo caso es una cuestión de hecho que debe ser objeto de prueba y dejarse a la apreciación del jurado o en su caso del tribunal sentenciador.

Merece consideración la Opinión del Secretario de Justicia de 1920, donde se sirve de la jurisprudencia del Tribunal Supremo en *El Pueblo v. Dávila*, supra, pág. 338, y *El Pueblo v. Bivas*, 16 DPR 611, 618 (1910). En la Opinión del Secretario se concluye que "[e]l hacha y el

machete caen indudablemente como armas, dentro de esta clasificación.". Op. Sec. Just. 1920 (27 febrero 1920). Véase, además, *Pueblo v. Díaz*, 66 DPR 754, 755-756 (1946).

Un "palo" también podría considerarse un arma mortífera, cuando se utiliza para cometer una agresión, conforme la jurisprudencia de nuestro Tribunal Supremo. Así concluyó el Tribunal en *Pueblo v. Rodríguez Ocaña*, 88 DPR 335, 338 (1963), al expresar que:

> [U]n "palo" no constituye un arma mortífera *per se* cuando se utiliza dentro del uso común y ordinario en que se emplea la madera, como una tranca, un bate atlético, un travesaño, la pata de una mesa. Pero cuando se utiliza como un instrumento de agresión, capaz de inferir grave daño corporal, puede convertirse en un arma mortífera. (Citas omitidas).

Estas expresiones fueron refrendadas en *Pueblo v. Bonilla Ortiz*, 123 DPR 434, 442 (1989).

A modo de análisis comparado, en el estado de California se define en sus instrucciones el término análogo *deadly weapon* como cualquier objeto, instrumento o arma que sea inherentemente mortal o que se use de tal manera que sea capaz de causar y pueda causar la muerte o lesiones corporales graves ("any object, instrument, or weapon that is inherently deadly or one that is used in such a way that it is capable of causing and likely to cause death or great bodily injury"). Instrucción 860 de las *Judicial Council of California Criminal Jury Instructions, CALCRIM* (2016). En términos similares, en el estado de Idaho se define *deadly weapon* como cualquier objeto, instrumento o arma que sea capaz de producir, y que pueda producir, la muerte o lesiones corporales graves ("any object, instrument or weapon which is capable of producing, and likely to produce, death or great bodily injury".). Idaho, *Criminal Jury Instructions*, 1206 (2010). En lo que respecta al Código Penal Modelo, este define *deadly weapon* como cualquier arma de fuego u otra arma, dispositivo, instrumento, material o sustancia, ya sea animada o inanimada, que de la manera en que se usa o se pretende usar se sabe que es capaz de producir la muerte o lesiones corporales graves ("any firearm, or other weapon, device, instrument, material or substance, whether animate or inanimate, which in the manner it is used or is intended to be used is known to be capable of producing death or serious bodily injury".). American Law Institute, ALI Model Penal Code Art. 210.0.

En casos donde interviene la figura intercesora, el tribunal debe referirse a la Instrucción 3.13, pertinente a la Ley 18-2017 que enmienda la Ley para la Prevención e Intervención con la Violencia Doméstica, 8 LPRA secs. 602, 640 y 663, y las Reglas de Procedimiento Criminal de 1963.

Toda instrucción de los delitos particulares debe ir precedida de la Instrucción 4.15, que alude a la definición del concepto "elementos del delito".

### 14.4   Maltrato Mediante Amenaza (Art. 3.3)

Contra la persona acusada se ha presentado una acusación por el delito de Maltrato mediante amenaza.

La ley dispone que comete este delito la persona que amenace con causarle daño a su cónyuge, su excónyuge, a la persona con quien cohabita o haya cohabitado, con quien

sostiene o haya sostenido una relación consensual, o la persona con quien haya procreado un(a) hijo(a) —independientemente del sexo, estado civil, orientación sexual, identidad de género o estatus migratorio de cualquiera de las personas involucradas en la relación—, a los bienes apreciados por esta, excepto los que pertenecen privadamente a la persona ofensora, o a otra persona.

Los elementos de este delito son los siguientes:

(1) Que una persona amenace a [su cónyuge o excónyuge] [la persona con quien cohabita o haya cohabitado] [la persona con quien sostenga o haya sostenido una relación consensual] [la persona con quien haya procreado un(a) hijo(a)], independientemente del sexo, estado civil, orientación sexual, identidad de género o estatus migratorio de cualquiera de las personas involucradas en la relación,

(2) con causarle daño físico a su persona, a los bienes apreciados por esta, excepto los que pertenecen privadamente a la persona ofensora, o a otra persona.

"Amenaza" es la expresión intencional de que se llevará a cabo algún daño determinado. La amenaza puede ser verbal o escrita. El delito se configura con solo hacer la amenaza. No es requisito que, en efecto, se lleve a cabo. Tampoco es requisito que medie un patrón de conducta ni un efecto sobre el ánimo de la víctima.

**[El tribunal debe incorporar la siguiente definición según lo alegado en el pliego acusatorio:**

"Cohabitar" es sostener una relación consensual de pareja similar a la de cónyuges (personas casadas legalmente) en cuanto al aspecto de convivencia, independientemente del sexo, estado civil, orientación sexual, identidad de género o estatus migratorio de cualquiera de las personas involucradas en la relación de pareja**]**.

**[El tribunal debe impartir esta Instrucción acompañada de la Instrucción 4.5].**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Maltrato Mediante Amenaza.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Maltrato mediante Amenaza.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 20.3 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con el Artículo 1.3 (*Definiciones*) y el Artículo 3.3 (*Maltrato mediante amenaza*) de la Ley para la Prevención e Intervención con la Violencia Doméstica, Ley Núm. 54 de 15 de agosto de 1989, según enmendada, 8 LPRA secs. 602 y 633. Véase *Pueblo v. Ayala García*, 186 DPR 196 (2012).

**COMENTARIO:**

En *Pueblo v. Ayala García*, *supra*, el Tribunal Supremo tuvo la oportunidad de contrastar los Artículos 3.1 y 3.3 de la Ley 54, *supra*. Señaló que "el Artículo 3.3 es más específico, pues se limita a castigar el maltrato psíquico que se realiza a través de amenazas, mientras que el 3.1 es más abarcador, pues prohíbe el abuso psicológico en general y, además, el abuso físico". Íd., págs. 212-213. Añadió el Tribunal que "el delito de maltrato mediante amenaza del artículo 3.3 no requiere un patrón de conducta ni un efecto sobre el ánimo de la víctima". Íd., págs. 214-215. "[E]l artículo 3.3 sólo exige que se haga una amenaza de causar un daño determinado." Íd., pág. 215.

En torno a la definición de "amenaza", el Tribunal Supremo reconoció en *Ayala García* que la palabra "no se define en la ley, por lo que se entiende que se utiliza con su acepción coloquial de dar a entender que se le quiere causar algún mal a alguien". Íd., pág. 215 esc. 49.

Adviértase que la conducta también está prevista, en otro contexto, en el Artículo 177 del Código Penal de 2012, que tipifica el delito de Amenazas. Ha sido objeto de debate si es necesario que la persona experimente temor por la amenaza o si basta con la amenaza para que se configure el delito. Según el tratadista español Francisco Muñoz Conde, "no es preciso que la amenaza llegue a intimidar al amenazado, sino que basta con que *objetivamente* sea adecuada para ello". F. Muñoz Conde, *Derecho penal: parte especial,* Valencia, Tirant lo Blanch, 22a ed., 2019, pág. 144. En contrario, la doctora Nevares-Muñiz resalta la importancia de que "la amenaza llegue al conocimiento del amenazado y sienta la aprehensión o el temor propio de la amenaza". D. Nevares-Muñiz, *Derecho Penal Puertorriqueño: Parte General*, 7ma ed. rev., San Juan, Ed. Instituto para el Desarrollo del Derecho, 2015, Sec. 8.2.1, pág. 313. Con un sentido similar, en la jurisdicción de California se vislumbra la amenaza como un delito de intención específica y requiere un efecto en la víctima ("causes that person reasonably to be in sustained fear"). Cal Pen Cod. Sec. 422 (*Criminal Threat*).

Respecto a los elementos subjetivos del delito, el Artículo 3.3 de la Ley 54, *supra*, guarda silencio. La doctora Nevares-Muñiz, al interpretar el inciso (a) del Artículo 23 del Código Penal, 33 LPRA sec. 5036, señala que "si el tipo delictivo no menciona una forma específica del elemento subjetivo, se entenderá que se requiere 'propósito, conocimiento o temeridad'." Nevares-Muñiz, *op. cit.*, Sec. 5.6.5., pág. 202. Recuérdese que los principios de la Parte General del Código Penal aplican de forma supletoria, en virtud del Artículo 1 del Código Penal, 33 LPRA sec. 5001. Refiérase, además, Nevares-Muñiz, *op. cit.*, Sec. 4.6.2, págs. 133-134.

No obstante, la doctora Nevares-Muñiz, al discutir la amenaza en el capítulo sobre las formas del delito, señala que "[s]us elementos subjetivos son 'a propósito' y 'con conocimiento' "

(con aparente exclusión de la temeridad) —Nevares-Muñiz, *op. cit.*, Sec. 8.2.1, pág. 312—, a pesar de que el Artículo 177 (Amenazas), 33 LPRA sec. 5243, no está dotado de especificidad en lo que a elementos subjetivos del delito se refiere. Igual consideración brinda a los "delitos a título de posesión", casos en que señala que "el elemento mental asumirá las formas de propósito o conocimiento". Nevares-Muñiz, *op. cit.*, Sec. 5.6.5, pág. 204. Sin embargo, la agresión sexual mediante amenaza grave —Artículo 133(a) del Código Penal, 33 LPRA sec. 5194, incorpora la temeridad como elemento subjetivo del delito. La disyuntiva reviste mayor importancia cuando se toma en consideración que la intoxicación voluntaria —Artículo 42 del Código Penal, 33 LPRA sec. 5065— es admisible para negar que la persona intoxicada actuó a propósito o con conocimiento, pero no es admisible para negar que actuó temerariamente.

En casos donde interviene la figura intercesora, el Tribunal debe referirse a la Instrucción 3.13, pertinente a la Ley 18-2017 que enmienda la Ley para la Prevención e Intervención con la Violencia Doméstica, 8 LPRA secs. 602, 640 y 663, y las Reglas de Procedimiento Criminal de 1963.

Toda instrucción de los delitos particulares debe ir precedida de la Instrucción 4.15, que alude a la definición del concepto "elementos del delito".

## 14.5   Maltrato Mediante Restricción de la Libertad (Art. 3.4)

Contra la persona acusada se ha presentado una acusación por el delito de Maltrato Mediante Restricción de la libertad.

La ley dispone que comete este delito la persona que utilice violencia o intimidación contra su cónyuge, excónyuge, la persona con quien cohabita o haya cohabitado, con quien sostiene o haya sostenido una relación consensual, con quien haya procreado un(a) hijo(a) —independientemente del sexo, estado civil, orientación sexual, identidad de género o estatus migratorio de cualquiera de las personas involucradas en la relación— o que utilice pretexto de que esta, o una de las personas antes mencionadas, padece de enfermedad o defecto mental para restringir su libertad con el conocimiento de la víctima.

**[El tribunal debe impartir la instrucción de acuerdo con la modalidad que aplique].**

### A. Restricción mediante violencia o intimidación

En este caso, el Ministerio Público presentó una acusación por el delito de Maltrato Mediante la Restricción de la Libertad, al utilizar violencia o intimidación.

Los elementos de este delito son los siguientes:

(1) Que una persona utilice violencia o intimidación
(2) contra [su cónyuge o excónyuge] [la persona con quien cohabita o haya cohabitado] [la persona con quien sostenga o haya sostenido una relación

consensual] [la persona con quien haya procreado un(a) hijo(a)], independientemente del sexo, estado civil, orientación sexual, identidad de género o estatus migratorio de cualquiera de las personas involucradas en la relación,

(3) para restringir su libertad,

(4) con el conocimiento de la alegada víctima.

"Violencia" significa un acometimiento personal, es decir, el empleo de fuerza física.

"Intimidación" significa toda acción o palabra que, manifestada en forma repetitiva, tenga el efecto de ejercer una presión moral sobre el ánimo de una persona, la que por temor a sufrir algún daño físico o emocional en su persona, sus bienes o en otra persona, es obligada a llevar a cabo un acto contrario a su voluntad.

**[El tribunal debe incorporar la siguiente definición según lo alegado en el pliego acusatorio:**

"Cohabitar" es sostener una relación consensual de pareja similar a la de cónyuges (personas casadas legalmente) en cuanto al aspecto de convivencia, independientemente del sexo, estado civil, orientación sexual, identidad de género o estatus migratorio de cualquiera de las personas involucradas en la relación de pareja**]**.

**[El tribunal debe impartir esta Instrucción acompañada de la Instrucción 4.5]**.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Maltrato Mediante Restricción de la Libertad.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Maltrato Mediante Restricción de la Libertad.

## B. Restricción mediante pretexto de enfermedad o defecto mental

En este caso, el Ministerio Público presentó una acusación por el delito de Maltrato Mediante Restricción de la Libertad, al utilizar enfermedad o defecto mental como pretexto.

Los elementos de este delito son los siguientes:

(1) Que una persona utilice el pretexto de que padece de enfermedad o defecto mental o de que [su cónyuge o excónyuge] [la persona con quien cohabita

o haya cohabitado] [la persona con quien sostenga o haya sostenido una relación consensual] [la persona con quien haya procreado un(a) hijo(a)] —independientemente del sexo, estado civil, orientación sexual, identidad de género o estatus migratorio de cualquiera de las personas involucradas en la relación— padece de enfermedad o defecto mental,

(2) para restringir su libertad,

(3) con el conocimiento de la alegada víctima.

**[El tribunal debe incorporar la siguiente definición según lo alegado en el pliego acusatorio:**

"Cohabitar" significa sostener una relación consensual de pareja similar a la de cónyuges (personas casadas legalmente) en cuanto al aspecto de convivencia, independientemente del sexo, estado civil, orientación sexual, identidad de género o estatus migratorio de cualquiera de las personas involucradas en la relación de pareja**]**.

**[El tribunal debe impartir esta Instrucción acompañada de la Instrucción 4.5]**.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Maltrato Mediante Restricción de la Libertad.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Maltrato Mediante Restricción de la Libertad.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 20.4 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con el Artículo 1.3 (*Definiciones*) y el Artículo 3.4 (*Maltrato mediante restricción de la libertad*) de la Ley para la Prevención e Intervención con la Violencia Doméstica, Ley Núm. 54 de 15 de agosto de 1989, según enmendada, 8 LPRA secs. 602 y 634.

**COMENTARIO:**

Adviértase que la conducta también está prevista, en otro contexto, en los Artículos 155 y 156 del Código Penal de 2012 (33 LPRA secs. 5221 y 5222), que tipifica los delitos de Restricción de Libertad y Restricción de Libertad Agravada. En el Artículo 155 del Código Penal se especifica que los elementos subjetivos aplicables son "a propósito o con conocimiento", mientras que el Artículo 3.4 de la Ley 54, *supra*, guarda silencio al respecto. La doctora Nevares-Muñiz, al interpretar el inciso (a) del Artículo 23 del Código Penal,

33 LPRA sec. 5036(a), señala que "si el tipo delictivo no menciona una forma específica del elemento subjetivo, se entenderá que se requiere 'propósito, conocimiento o temeridad' ". D. Nevares-Muñiz, *Derecho penal puertorriqueño: parte general*, 7ma ed. rev., San Juan, Ed. Instituto para el Desarrollo del Derecho, Inc., 2015, sección 5.6.5, pág. 202. Recuérdese que los principios de la Parte General del Código Penal aplican de forma supletoria a las leyes penales especiales en virtud del Artículo 1 del Código Penal, 33 LPRA sec. 5001. Véase, además, Nevares-Muñiz, *op. cit.*, sección 4.6.2, págs. 133-134.

Otra distinción es que el Código Penal, desde el 2004, abandonó el requisito del "conocimiento de la víctima". En cambio, la Ley 54 mantiene el requisito de que la víctima conozca que ha sido privada de su libertad.

La definición de "intimidación" corresponde a la provista en el Artículo 1.3 de la propia Ley Núm. 54 de 15 de agosto de 1989, según enmendada.

En casos donde interviene la figura intercesora, debe el tribunal referirse a la Instrucción 3.13, pertinente a la Ley 18-2017 que enmienda la Ley para la Prevención e Intervención con la Violencia Doméstica, 8 LPRA secs. 602, 640 y 663, y las Reglas de Procedimiento Criminal de 1963.

Toda instrucción de los delitos particulares debe ir precedida de la Instrucción 4.15, que alude a la definición del concepto de "elementos del delito".

## 14.6 Agresión Sexual Conyugal (Art. 3.5)

Contra la persona acusada se ha presentado una acusación por el delito de Agresión Sexual Conyugal.

La ley dispone que comete este delito la persona que incurra en una relación sexual no consentida con su cónyuge, excónyuge, la persona con quien cohabita o haya cohabitado, con quien sostenga o haya sostenido una relación consensual, o con quien haya procreado un(a) hijo(a) —independientemente del sexo, estado civil, orientación sexual, identidad de género o estatus migratorio de cualquiera de las personas involucradas en la relación— en cualquiera de las circunstancias siguientes:

(a) Si se ha obligado a incurrir en una relación sexual mediante el empleo de fuerza, violencia, intimidación o amenaza de daño corporal grave e inmediato.

(b) Si se ha anulado o disminuido sustancialmente su capacidad de consentir a través de medios hipnóticos, narcóticos, deprimentes o estimulantes, o sustancias o medios similares sin su conocimiento o sin su consentimiento.

(c) Si por enfermedad o incapacidad mental, temporal o permanente, la víctima está incapacitada para comprender la naturaleza del acto en el momento de su realización.

(d) Si se le obliga o induce mediante maltrato, violencia física o sicológica a participar o involucrarse en una relación sexual no deseada con terceras personas.

Los elementos de este delito son los siguientes:

(1) Que una persona incurra en una relación sexual no consentida

(2) con [su cónyuge o excónyuge] [la persona con quien cohabita o haya cohabitado] [la persona con quien sostenga o haya sostenido una relación consensual] [la persona con quien haya procreado un(a) hijo(a)], independientemente del sexo, estado civil, orientación sexual, identidad de género o estatus migratorio de cualquiera de las personas involucradas en la relación,

(3) cuando **[seleccione la(s) circunstancia(s) que aplique(n) según lo alegado en el pliego acusatorio:**
    (a) se ha obligado a incurrir en la relación sexual mediante el empleo de fuerza, violencia, intimidación o amenaza de daño corporal grave e inmediato,

    (b) se ha anulado o disminuido sustancialmente su capacidad de consentir a través de medios hipnóticos, narcóticos, deprimentes o estimulantes, o sustancias o medios similares, sin su conocimiento o sin su consentimiento,

    (c) por enfermedad o incapacidad mental, temporal o permanente, la víctima está incapacitada para comprender la naturaleza del acto en el momento de su realización,

    (d) se le obliga o induce mediante maltrato, violencia física o sicológica a participar o involucrarse en una relación sexual no deseada con terceras personas**],**

(4) y la persona actuó a propósito, con conocimiento o temerariamente.

"Relación sexual" significa toda penetración sexual, sea vaginal, anal, orogenital, digital o instrumental. Incluye el sexo oral y cualquier penetración sexual por la vagina o el ano, sea con el pene, el dedo o un instrumento.

**[El tribunal debe leer las definiciones que correspondan según lo alegado en el pliego acusatorio].**

["Cohabitar" significa sostener una relación consensual de pareja similar a la de cónyuges (personas casadas legalmente) en cuanto al aspecto de convivencia, independientemente del sexo, estado civil, orientación sexual, identidad de género o estatus migratorio de cualquiera de las personas involucradas en la relación de pareja].

["Violencia" significa un acometimiento personal, es decir, el empleo de fuerza física].

["Intimidación" significa toda acción o palabra que, manifestada en forma repetitiva, tenga el efecto de ejercer una presión moral sobre el ánimo de una persona, la que por temor a sufrir algún daño físico o emocional en su persona, sus bienes o en otra persona, es obligada a llevar a cabo un acto contrario a su voluntad].

["Violencia sicológica" significa un patrón de conducta constante ejercitada en deshonra, descrédito o menosprecio al valor personal, limitación irrazonable al acceso y

manejo de los bienes comunes, chantaje, vigilancia constante, aislamiento, privación de acceso a la alimentación o descanso adecuado, amenazas de privar de la custodia de los hijos o hijas, o destrucción de objetos apreciados por la persona, excepto los que pertenecen privativamente a la persona ofensora].

El propósito, el conocimiento y la temeridad son estados mentales.

Una persona actúa "a propósito" cuando su objetivo consciente es llevar a cabo un acto u omisión con el fin de obtener un resultado definido. Con relación a una circunstancia, actúa "a propósito" cuando cree que esta existe.

Una persona actúa "con conocimiento" cuando es consciente de que la producción del resultado es una consecuencia prácticamente segura de su conducta o cuando es consciente de que la existencia de la circunstancia es prácticamente segura.

Una persona actúa "temerariamente" cuando es consciente de que su conducta genera un riesgo sustancial e injustificado de que se produzca un resultado o la circunstancia prohibida por ley, y a pesar de conocer el riesgo, la persona continúa con su acción u omisión. Al evaluar si la persona era consciente del riesgo, deberán determinar si había previsto la posibilidad de que existiese ese riesgo. Al momento de evaluar si un riesgo fue sustancial, deberán considerar la probabilidad de que se produjera el resultado o la circunstancia, y la magnitud del daño. Al evaluar si un riesgo fue injustificado, deberán considerar lo que motivó a la persona a asumirlo.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no a propósito, con conocimiento o temerariamente. Pueden inferir o deducir razonablemente de la prueba presentada y admitida el propósito, el conocimiento o la temeridad. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Agresión Sexual Conyugal.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Agresión Sexual Conyugal.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 20.5 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con el Artículo 1.3 (*Definiciones*) y el Artículo 3.5 (*Agresión sexual conyugal*) de la Ley para la Prevención e Intervención con la Violencia Doméstica, Ley Núm. 54 de 15 de agosto de 1989, según enmendada, 8 LPRA secs. 602 y 635; el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*) y el Artículo 22

(*Elementos subjetivos del delito*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5034 y 5035).

**COMENTARIO:**

El Código Penal de 2012 contempla la agresión sexual en su Artículo 130 (33 LPRA sec. 5191), que se complementa, a su vez, con el Artículo 132 (33 LPRA sec. 5193), principio que se recoge en la Instrucción 8.1 de la forma siguiente:

> El delito consiste, esencialmente, en la agresión a la integridad física y sicoemocional y a la dignidad de la persona por un acto orogenital, es decir, sexo oral, o penetración sexual. La penetración, por leve que sea, bastará para configurar el delito.

En casos donde interviene la figura intercesora, el tribunal debe referirse a la Instrucción 3.13, pertinente a la Ley 18-2017, que enmienda la Ley para la Prevención e Intervención con la Violencia Doméstica, 8 LPRA secs. 602, 640 y 663, y las Reglas de Procedimiento Criminal de 1963.

Toda instrucción de los delitos particulares debe ir precedida de la Instrucción 4.15, que alude a la definición del concepto "elementos del delito".

Adviértase que en esta Instrucción se recogen los elementos subjetivos del delito, por lo que no resulta necesario impartir también la Instrucción 4.5.

CAPÍTULO 15
## LEY PARA LA SEGURIDAD, BIENESTAR Y PROTECCIÓN DE MENORES

**15.1    No informar; dejar de realizar un acto requerido por ley o impedir que otra persona lo realice; suministrar información falsa o aconsejar a otra persona que la suministre (Art. 57)**

Contra la persona acusada se ha presentado una acusación por [no cumplir con su obligación de informar] [dejar de realizar un acto requerido por esta ley o impedir que otra persona lo realice] [suministrar información falsa o aconsejar a otra persona que la suministre] a tenor del Artículo 57 de la Ley para la Seguridad, Bienestar y Protección de Menores.

La ley dispone que comete este delito cualquier persona, funcionario(a) o institución pública o privada, que esté obligada a suministrar información y que voluntariamente y a sabiendas [deje de cumplir con la obligación] [deje de realizar un acto requerido por esta ley] [impida que otra persona actuando en forma razonable efectúe un acto requerido por esta ley] [suministre información falsa o aconseje a otra persona para que lo haga].

Los elementos de este delito son los siguientes:

(1) Que cualquier persona, funcionario(a) o institución pública o privada, que esté obligada a suministrar información,

(2) voluntariamente y a sabiendas

(3) **[El tribunal debe leer la(s) modalidad(s) que aplique(n) según lo alegado en el pliego acusatorio:**

(a) deje de cumplir con la obligación de suministrar información,

(b) deje de realizar un acto requerido por Ley para la Seguridad, Bienestar y Protección de Menores,

(c) impida que otra persona, actuando en forma razonable, efectúe un acto requerido por la Ley para la Seguridad, Bienestar y Protección de Menores.

(d) suministre información falsa o aconseje a otra persona para que lo haga].

"Voluntariamente" significa que el acto nace de la voluntad y no por fuerza o necesidad extraña a ella.

"A sabiendas" es sinónimo de "con conocimiento". Una persona actúa "con conocimiento" cuando es consciente de que la producción del resultado es una consecuencia prácticamente segura de su conducta o cuando es consciente de que la existencia de la circunstancia es prácticamente segura.

"Obligación de suministrar información" se refiere al deber de cualquier persona, funcionario(a) o institución pública o privada, de informar situaciones sobre la sospecha o existencia de maltrato o negligencia de una persona menor de edad.

"Menor" es toda persona que no haya cumplido los 18 años.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no con conocimiento. Pueden inferir o deducir razonablemente de la prueba presentada y admitida el conocimiento. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de [no cumplir con su obligación de informar] [dejar de realizar un acto requerido por esta ley o impedir que otra persona lo realice] [suministrar información falsa o aconsejar a otra persona que la suministre].

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de [no cumplir con su obligación de informar] [dejar de realizar un acto requerido por esta ley o impedir que otra persona lo realice] [suministrar información falsa o aconsejar a otra persona que la suministre].

**REFERENCIA**:

Esta Instrucción es nueva. Guarda relación con el Artículo 57 (*Penalidad*) de la Ley para la Seguridad, Bienestar y Protección de Menores, Ley 246-2011, según enmendada (8 LPRA sec. 1172); el Artículo 14 (*Definiciones*), el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*) y el Artículo 22 (*Elementos subjetivos del delito*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5014, 5034 y 5035).

## 15.2 Maltrato Intencional (Art. 59)

**[El tribunal debe impartir la instrucción de acuerdo con la modalidad que aplique].**

### A. Primera modalidad – causar daño o poner en riesgo a una persona menor de edad

Contra la persona acusada se ha presentado una acusación por el delito de Maltrato, que consiste en [causar daño a la salud e integridad física, mental o emocional de una persona menor de edad] [poner en riesgo a una persona menor de edad de sufrir daño a su salud e integridad física, mental o emocional].

La ley dispone que comete el delito de Maltrato el padre, madre, persona responsable por el bienestar de una persona menor de edad o cualquier otra persona que por acción u omisión intencional incurra en un acto que cause daño o ponga en riesgo a una persona menor de edad de sufrir daño a su salud e integridad física, mental o emocional.

Los elementos de este delito son los siguientes:

(1) Que un padre, madre, persona responsable por el bienestar de una persona menor de edad, o cualquier otra persona,

(2) por acción u omisión intencional,

(3) cometa un acto que cause daño a una persona menor de edad o la ponga en riesgo de sufrir daño a su salud e integridad física, mental o emocional.

Además, corresponde a ustedes determinar si **[refiérase solamente a la(s) circunstancia(s) que aplique(n) según lo alegado en el pliego acusatorio]**:

(a) La alegada víctima es ascendiente o descendiente en cualquier grado, incluyendo las relaciones adoptivas o por afinidad.

(b) La alegada víctima es colateral hasta el cuarto grado de consanguinidad, de vínculo doble o sencillo, incluyendo las relaciones por adopción o por afinidad.

(c) La alegada víctima ha sido obligada al acto mediante el empleo de fuerza física irresistible, mediante amenaza de daño corporal grave e inmediato acompañada de la aparente capacidad para realizarlo o mediante la anulación o disminución sustancial de su capacidad de resistencia a través de medios hipnóticos, narcóticos, deprimentes, estimulantes o a través de sustancias químicas, o induciéndola al acto por cualquier medio engañoso.

(d) La alegada víctima padece de alguna condición especial física o mental de naturaleza temporera o permanente.

(e) El delito fue cometido, en el ejercicio de sus funciones ministeriales, por un(a) operador(a) de un hogar temporero o por cualquier empleado(a) o funcionario(a) de una institución pública, privada o privatizada, según definidas en la Ley para la Seguridad, Bienestar y Protección de Menores.

(f) Hay un patrón de conducta de maltrato.

**[Cuando se aleguen las circunstancias por razón de parentesco dispuestas en los incisos (a) y (b), el tribunal debe explicar los conceptos aplicables siguientes:**

Son parientes ascendientes el padre, la madre, los(as) abuelos(as), y los(as) bisabuelos(as). Si estas personas fueran adoptadas, deben tratarse como si fueran parientes de sangre. Son parientes ascendientes por afinidad las personas con quienes se hayan casado estos(as) parientes de sangre, tales como el padrastro, la madrastra y los(as) abuelastros(as). También lo será la familia política, tales como el (la) suegro(a), y los(as) abuelos(as) políticos(as).

Son parientes descendientes los(as) hijos(as), los(as) nietos(as) y los(as) bisnietos(as). Si estas personas fueran adoptadas, deben tratarse como si fueran parientes de sangre. Son parientes descendientes por afinidad las personas con quienes se hayan casado estos(as) parientes de sangre y tambіén los(as) hijastros(as) y los(as) nietos(as) políticos(as). Igualmente lo será la familia política, tales como los(as) cuñados(as), los yernos y las nueras.

Son además parientes colaterales por consanguinidad (de sangre) hasta el cuarto grado los(as) hermanos(as), los(as) tíos(as), los(as) sobrinos(as) y los(as) primos(as). Si estas personas fueran adoptadas, deben tratarse como si fueran parientes de sangre. Con "doble vínculo" la ley se refiere a hermanos(as) y hermanas de padre y madre, mientras que por "vínculo sencillo" se refiere a los(as) medios(as) hermanos(as). Son parientes por afinidad las personas con quienes se hayan casado estos(as) parientes de sangre, así como la familia política, tales como los(as) tíos(as) políticos(as)**]**.

"Acción u omisión intencional" equivale a actuar u omitir actuar "a propósito", "con conocimiento" o "temerariamente".

El propósito, el conocimiento y la temeridad son estados mentales.

Una persona actúa "a propósito**"** cuando su objetivo consciente es llevar a cabo un acto u omisión con el fin de obtener un resultado definido. Con relación a una circunstancia, actúa "a propósito" cuando cree que esta existe.

Una persona actúa "con conocimiento" cuando es consciente de que la producción del resultado o la existencia de la circunstancia es prácticamente segura.

Una persona actúa "temerariamente" cuando es consciente de que su conducta genera un riesgo sustancial e injustificado de que se produzca un resultado o la circunstancia prohibida por ley, y a pesar de conocer el riesgo, la persona continúa con su acción u omisión. Al evaluar si era consciente del riesgo deberán determinar si había previsto la posibilidad de que existiese ese riesgo. Al momento de evaluar si un riesgo fue sustancial, deberán considerar la probabilidad de que se produjera el resultado o la circunstancia, y la magnitud del daño. Al evaluar si un riesgo fue injustificado, deberán considerar lo que motivó a la persona a asumir el riesgo.

"Menor" es toda persona que no haya cumplido los 18 años.

"Daño físico" es cualquier trauma, lesión o condición no accidental, incluso la falta de alimentos, que de no ser atendida podría resultar en la muerte, desfiguramiento, enfermedad o incapacidad temporera o permanente de cualquier parte o función del cuerpo. El trauma, lesión o condición puede ser producto de un solo episodio o de varios.

"Daño mental o emocional" significa el menoscabo de la capacidad intelectual o emocional del (de la) menor dentro de lo que se considera normal para su edad en su medio cultural. Además, se considerará que existe daño emocional cuando hay evidencia de que el(la) menor muestra en forma repetitiva o exhibe conductas tales como miedo, sentimientos de desamparo o desesperanza, de frustración y fracaso, ansiedad, sentimientos de inseguridad, aislamiento, conducta agresiva o regresiva, o cualquier otra conducta similar que manifieste la vulnerabilidad de una persona menor de edad en el aspecto emocional.

"Riesgo" significa la probabilidad de que una persona menor de edad pueda ser víctima de maltrato o negligencia en el futuro por parte de su padre, madre o persona responsable.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no a propósito, con conocimiento o temerariamente. Pueden inferir o deducir razonablemente de la prueba presentada y admitida el propósito, el conocimiento o la temeridad. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Maltrato.

**[Cuando se haya(n) alegado la(s) circunstancia(s) agravante(s), el tribunal debe añadir la instrucción siguiente:**

Si ustedes consideran, luego de un análisis cuidadoso de toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, que el Ministerio Público probó más allá de duda razonable la comisión del delito de Maltrato, pero no que **[indique la(s) circunstancia(s) agravante(s)]**, deberán rendir un veredicto de culpable por el delito de Maltrato sin esa circunstancia**].**

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Maltrato.

## B. Segunda modalidad – Violencia doméstica en presencia de una persona menor de edad, abuso sexual o conducta obscena

Contra la persona acusada se ha presentado una acusación por el delito de Maltrato hacia una persona menor de edad en la modalidad de [violencia doméstica frente a una persona menor de edad] [abuso sexual] [conducta obscena] [utilizar una persona menor de edad para ejecutar conducta obscena].

La ley dispone que comete el delito de Maltrato el padre, madre, persona responsable por el bienestar de una persona menor de edad o cualquier otra persona, que por acción u omisión intencional, incurra en un acto que cause daño o ponga en riesgo a una persona menor de edad de sufrir daño a su salud e integridad física, mental o emocional por [violencia doméstica frente a la persona menor de edad] [abuso sexual] [conducta obscena] [utilizar a una persona menor de edad para ejecutar conducta obscena].

Los elementos de este delito son los siguientes:

(1) Que un padre, madre, persona responsable por el bienestar de una persona menor de edad o cualquier otra persona,

(2) por acción u omisión intencional,

(3) cometa un acto que cause daño a una persona menor de edad o la ponga en riesgo de sufrir daño a su salud e integridad física, mental o emocional

(4) por [violencia doméstica frente una persona menor de edad] [abuso sexual] [conducta obscena] [utilizar a una persona menor de edad para ejecutar conducta obscena].

Además, corresponde a ustedes determinar si **[refiérase solamente a la(s) circunstancia(s) que aplique(n) según lo alegado en el pliego acusatorio]**:

(a) La alegada víctima es ascendiente o descendiente en cualquier grado, incluyendo las relaciones adoptivas o por afinidad.

(b) La alegada víctima es colateral hasta el cuarto grado de consanguinidad, de vínculo doble o sencillo, incluyendo las relaciones por adopción o por afinidad.

(c) La alegada víctima ha sido obligada al acto mediante el empleo de fuerza física irresistible, mediante amenaza de daño corporal grave e inmediato acompañada de la aparente aptitud para realizarlo o mediante la anulación o disminución sustancial de su capacidad de resistencia a través de medios hipnóticos, narcóticos, deprimentes, estimulantes o a través de sustancias químicas, o induciéndola al acto por cualquier medio engañoso.

(d) La alegada víctima padece de alguna condición especial física o mental de naturaleza temporera o permanente.

(e) El delito fue cometido, en el ejercicio de sus funciones ministeriales, por un(a) operador(a) de un hogar temporero o por cualquier empleado(a) o funcionario(a) de una institución pública, privada o privatizada, según definidas en la Ley para la Seguridad, Bienestar y Protección de Menores.

(f) Hay un patrón de conducta de maltrato.

**[Cuando se aleguen las circunstancias por razón de parentesco dispuestas en los incisos (a) y (b), el tribunal debe explicar los conceptos aplicables siguientes:**

Son parientes ascendientes el padre, la madre, los(as) abuelos(as) y los(as) bisabuelos(as). Si estas personas fueran adoptadas, deben tratarse como si fueran parientes de sangre. Son parientes ascendientes por afinidad las personas con quienes se hayan casado estos(as) parientes de sangre, tales como el padrastro, la madrastra y los(as) abuelastros(as). También lo será la familia política, tales como el(la) suegro(a) y los(las) abuelos(as) políticos(as).

Son parientes descendientes los(as) hijos(as), los(as) nietos(as) y los(as) bisnietos(as). Si estas personas fueran adoptadas, deben tratarse como si fueran parientes de sangre. Son parientes descendientes por afinidad las personas con quienes se hayan

casado estos(as) parientes de sangre y también los(as) hijastros(as) y los(as) nietos(as) políticos(as). Igualmente lo será la familia política, tales como los(as) cuñados(as), los yernos y las nueras.

Son además parientes colaterales por consanguinidad (de sangre) hasta el cuarto grado los(as) hermanos(as), los(as) tíos(as), los(as) sobrinos(as), y los(as) primos(as). Si estas personas fueran adoptadas, deben tratarse como si fueran parientes de sangre. Con "doble vínculo" la ley se refiere a hermanos(as) y hermanas de padre y madre, mientras que por "vínculo sencillo" se refiere a los(as) medios(as) hermanos(as). Son parientes por afinidad las personas con quienes se hayan casado estos(as) parientes de sangre, así como la familia política, tales como los(as) tíos(as) políticos(as)**].**

"Acción u omisión intencional" equivale a actuar u omitir actuar "a propósito", "con conocimiento" o "temerariamente".

El propósito, el conocimiento y la temeridad son estados mentales.

Una persona actúa "a propósito**"** cuando su objetivo consciente es llevar a cabo un acto u omisión con el fin de obtener un resultado definido. Con relación a una circunstancia, actúa "a propósito" cuando cree que esta existe.

Una persona actúa "con conocimiento" cuando es consciente de que la producción del resultado o la existencia de la circunstancia es prácticamente segura.

Una persona actúa "temerariamente" cuando es consciente de que su conducta genera un riesgo sustancial e injustificado de que se produzca un resultado o la circunstancia prohibida por ley, y a pesar de conocer el riesgo, la persona continúa con su acción u omisión. Al evaluar si era consciente del riesgo deberán determinar si había previsto la posibilidad de que existiese ese riesgo. Al momento de evaluar si un riesgo fue sustancial, deberán considerar la probabilidad de que se produjera el resultado o la circunstancia, y la magnitud del daño. Al evaluar si un riesgo fue injustificado, deberán considerar lo que motivó a la persona a asumir el riesgo.

"Menor" es toda persona que no haya cumplido los 18 años.

"Persona responsable" de una persona menor de edad es la persona con la custodia de tal menor, los(as) empleados(as) y los(as) funcionarios(as) de los programas, centros o instituciones que ofrezcan servicios de cuido, educación, tratamiento o detención a menores durante un periodo de 24 horas al día o parte de este.

"Daño físico" es cualquier trauma, lesión o condición no accidental, incluso la falta de alimentos, que de no ser atendida podría resultar en la muerte, desfiguramiento, enfermedad o incapacidad temporera o permanente de cualquier parte o función del cuerpo. El trauma, lesión o condición puede ser producto de un solo episodio o de varios.

"Daño mental o emocional" significa el menoscabo de la capacidad intelectual o emocional del (de la) menor dentro de lo que se considera normal para su edad en su medio cultural. Además, se considerará que existe daño emocional cuando hay evidencia de que el(la) menor muestra en forma repetitiva o exhibe conductas tales como miedo, sentimientos de desamparo o desesperanza, de frustración y fracaso, ansiedad, sentimientos de

inseguridad, aislamiento, conducta agresiva o regresiva, o cualquier otra conducta similar que manifieste la vulnerabilidad de una persona menor de edad en el aspecto emocional.

"Riesgo" significa la probabilidad de que una persona menor de edad pueda ser víctima de maltrato o negligencia en el futuro por parte de su padre, madre o persona responsable.

**[El tribunal debe leer las definiciones adicionales que correspondan según lo alegado en el pliego acusatorio***:*

"Abuso sexual" significa incurrir en conducta sexual en presencia de una persona menor de edad o que se utilice a una persona menor de edad, voluntaria o involuntariamente, para ejecutar conducta sexual dirigida a satisfacer la lascivia o cualquier acto que, de procesarse por la vía criminal, configuraría cualesquiera de los siguientes delitos: agresión sexual; actos lascivos; comercio de personas para actos sexuales; exposiciones obscenas; proposición obscena; producción de pornografía infantil; posesión y distribución de pornografía infantil; utilización de una persona menor de edad para pornografía infantil, y envío, transportación, venta, distribución, publicación, exhibición o posesión de material obsceno y espectáculos obscenos según han sido tipificados en el Código Penal de Puerto Rico.

"Conducta obscena" significa cualquier actividad física del cuerpo humano, ya llevada a cabo solo o con otras personas, incluyendo, pero sin limitarse a, cantar, hablar, bailar, actuar, simular o hacer pantomimas, actividades que, consideradas en su totalidad por la persona promedio y según los patrones comunitarios contemporáneos, apelen al interés lascivo y representen o describan en una forma patentemente ofensiva una conducta sexual carente de un serio valor literario, artístico, político, religioso, científico o educativo**].**

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no a propósito, con conocimiento o temerariamente. Pueden inferir o deducir razonablemente de la prueba presentada y admitida el propósito, el conocimiento o la temeridad. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable del delito de Maltrato.

**[Cuando se alegue(n) la(s) circunstancia(s) particulares, el tribunal debe añadir la instrucción siguiente:**

Si ustedes consideran, luego de un análisis cuidadoso de toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, que el Ministerio Público probó más allá de duda razonable la comisión del delito de Maltrato, pero no que **[indique la(s) circunstancia(s)]**, deberán rendir un veredicto de culpable por el delito de Maltrato sin esa(s) circunstancia(s)**].**

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Maltrato.

### C. Tercera modalidad – Trata humana

Contra la persona acusada se ha presentado una acusación por el delito de Maltrato a una persona menor de edad mediante trata humana.

La ley dispone que comete el delito de maltrato el padre, madre, persona responsable por el bienestar de una persona menor de edad o cualquier otra persona que por acción u omisión intencional incurra en un acto que cause daño o ponga en riesgo a una persona menor de edad de sufrir daño a su salud e integridad física, mental o emocional mediante trata humana.

Los elementos de este delito son los siguientes:

(1) Que un padre, madre, persona responsable por el bienestar de una persona menor de edad o cualquier otra persona,

(2) por acción u omisión intencional,

(3) cometa un acto que cause daño a una persona menor de edad o lo ponga en riesgo de sufrir daño a su salud e integridad física, mental o emocional

(4) por trata humana de una persona menor de edad.

"Acción u omisión intencional" equivale a actuar u omitir actuar "a propósito", "con conocimiento" o "temerariamente".

El propósito, el conocimiento y la temeridad son estados mentales.

Una persona actúa "a propósito" cuando su objetivo consciente es llevar a cabo un acto u omisión con el fin de obtener un resultado definido. Con relación a una circunstancia, actúa "a propósito" cuando cree que esta existe.

Una persona actúa "con conocimiento" cuando es consciente de que la producción del resultado o la existencia de la circunstancia es prácticamente segura.

Una persona actúa "temerariamente" cuando es consciente de que su conducta genera un riesgo sustancial e injustificado de que se produzca un resultado o la circunstancia prohibida por ley, y a pesar de conocer el riesgo, la persona continúa con su acción u omisión. Al evaluar si era consciente del riesgo, deberán determinar si había previsto la posibilidad de que existiese ese riesgo. Al momento de evaluar si un riesgo fue sustancial, deberán considerar la probabilidad de que se produjera el resultado o la circunstancia, y la magnitud del daño. Al evaluar si un riesgo fue injustificado, deberán considerar lo que motivó a la persona a asumir el riesgo.

"Menor" es toda persona que no haya cumplido los 18 años.

"Persona responsable" de una persona menor de edad es la persona con la custodia de tal menor, empleados(a) y funcionarios(as) de los programas, centros o instituciones que ofrezcan servicios de cuido, educación, tratamiento o detención a menores durante un periodo de 24 horas al día o parte de este.

"Daño físico" es cualquier trauma, lesión o condición no accidental, incluso la falta de alimentos, que de no ser atendida podría resultar en la muerte, desfiguramiento, enfermedad o incapacidad temporera o permanente de cualquier parte o función del cuerpo. El trauma, lesión o condición puede ser producto de un solo episodio o de varios.

"Daño mental o emocional" significa el menoscabo de la capacidad intelectual o emocional del (de la) menor dentro de lo que se considera normal para su edad en su medio cultural. Además, se considerará que existe daño emocional cuando hay evidencia de que el(la) menor muestra en forma repetitiva o exhibe conductas tales como miedo, sentimientos de desamparo o desesperanza, de frustración y fracaso, ansiedad, sentimientos de inseguridad, aislamiento, conducta agresiva o regresiva, o cualquier otra conducta similar que manifieste la vulnerabilidad de una persona menor de edad en el aspecto emocional.

"Riesgo" significa la probabilidad de que una persona menor de edad pueda ser víctima de maltrato o negligencia en el futuro por parte de su padre, madre o persona responsable.

La "trata humana" es la explotación de un ser humano. Se refiere al delito en el que una persona es captada, raptada o transportada y se convierte en un "bien de valor o consumo" o en la "mercancía" mediante la cual otra persona recibe un beneficio ilegal. Sus modalidades incluyen la explotación sexual o la explotación de la prostitución ajena, trabajo forzado, servidumbre u otras prácticas de esclavitud, matrimonio servil o forzado, adopción irregular y extracción de órganos o tejidos.

"Explotación" significa el empleo voluntario o involuntario de una persona menor de edad en cualquiera de las actividades siguientes: (1) prostitución o cualquier actividad que implique explotación sexual; (2) trabajo o servicio forzoso o coercitivo, incluyendo el trabajo en régimen de servidumbre o la servidumbre por deudas; (3) la esclavitud o cualquier práctica similar a esta; (4) la extracción de órganos; (5) forzar o coaccionar a pedir limosna; (6) el empleo, la obtención o el ofrecimiento de una persona menor de edad para actividades ilícitas; (7) el empleo, la obtención o el ofrecimiento de una persona menor de edad para fines reproductivos; (8) el empleo de una persona menor de edad en la violencia armada, o (9) el trabajo que, por su naturaleza o por las circunstancias en que se realiza, pueda perjudicar a la salud o poner en peligro la seguridad de los niños y las niñas, en conformidad con la Ley de Empleo de Menores de Puerto Rico.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no a propósito, con conocimiento o temerariamente. Pueden inferir o deducir razonablemente de la prueba presentada y admitida el propósito, el conocimiento o la temeridad. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona

acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Maltrato.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Maltrato.

**REFERENCIA**:

Esta Instrucción es nueva. Guarda relación con el Artículo 59 (*Maltrato*) y el Artículo 3 (*Definiciones*) de la Ley para la Seguridad, Bienestar y Protección de Menores, Ley 246-2011 según enmendada, 8 LPRA secs. 1101 y 1174; el Artículo 14 (*Definiciones*), el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*) y el Artículo 22 (*Elementos subjetivos del delito*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5014, 5034 y 5035).

**COMENTARIO:**

Véase el Artículo 1.3(q) de la Ley para la Prevención e Intervención con la Violencia Doméstica, Ley Núm. 54 de 15 de agosto de 1989, según enmendada, 8 LPRA sec. 602(q), para la definición de violencia doméstica.

La Ley de Empleo de Menores de Puerto Rico corresponde a la Ley Núm. 230 de 12 de mayo de 1942 (29 LPRA sec. 431 *et. seq*).

## 15.3   Maltrato por Negligencia (Art. 60)

Contra la persona acusada se ha presentado una acusación por el delito de Negligencia a tenor de la Ley para la Seguridad, Bienestar y Protección de Menores.

La ley dispone que comete el delito de Negligencia el padre, madre o persona responsable por el bienestar de una persona menor de edad que por acción u omisión negligente cause daño o ponga en riesgo a una persona menor de edad de sufrir daño a su salud e integridad física, mental o emocional.

La ley dispone que el delito de Negligencia puede configurarse o producirse mediante conducta repetitiva o patrón de conducta negligente, o en un incidente aislado u omisión imprudente, en que se incurra sin que se observe el cuidado debido y que se cause una lesión física, mental o emocional, o se coloque en riesgo sustancial de muerte a una persona menor de edad.

Los elementos de este delito son los siguientes:

(1) Que un padre, madre o persona responsable por el bienestar de una persona menor de edad,

(2) por acción u omisión negligente,

(3) cause daño o ponga en riesgo a una persona menor de edad de sufrir daño a su salud e integridad física, mental o emocional, o que coloque en riesgo sustancial de muerte a una persona menor de edad.

**[El tribunal debe leer la circunstancia agravada según lo alegado en el pliego acusatorio:**

Además, corresponde a ustedes determinar si la conducta de Maltrato Negligente ha sido repetitiva, de modo que constituya un patrón de conducta**].**

"Menor" es toda persona que no haya cumplido los 18 años.

"Persona responsable" de una persona menor de edad es la persona con la custodia de tal menor, empleados(as) y funcionarios(as) de los programas, centros o instituciones que ofrezcan servicios de cuido, educación, tratamiento o detención a menores durante un periodo de 24 horas al día o parte de este.

"Negligencia" es un tipo de maltrato que consiste en faltar a los deberes o dejar de ejercer las facultades de proveer adecuadamente los alimentos, ropa, albergue, educación o atención de salud a una persona menor de edad; faltar al deber de supervisión, no visitar a la persona menor de edad o no haber mantenido contacto o comunicación frecuente con esta. Asimismo, se considerará que una persona menor de edad es víctima de negligencia si el padre, la madre o la persona responsable de esta incumplió con los deberes que ocasionan la privación, restricción o suspensión de la patria potestad descritos en el Artículo 166A, incisos (3) y (4) del Código Civil de Puerto Rico.

"Negligencia institucional" es la negligencia en que incurre o se sospecha que incurre un(a) operador(a) de un hogar temporero o cualquier empleado(a) o funcionario(a) de una institución pública o privada que ofrezca servicios de cuido durante las 24 horas del día —o parte de este— que tenga bajo su control o custodia a una persona menor de edad para su cuido, educación, tratamiento o detención y que cause daño o ponga en riesgo a una persona menor de edad de sufrir daño a su salud e integridad física, mental o emocional, incluyendo abuso sexual —conocido o que se sospeche— que suceda como resultado de la política, prácticas y condiciones imperantes en la institución de que se trate.

"Daño físico" es cualquier trauma, lesión o condición no accidental, incluso la falta de alimentos, que de no ser atendida podría resultar en la muerte, desfiguramiento, enfermedad o incapacidad temporera o permanente de cualquier parte o función del cuerpo. El trauma, lesión o condición puede ser producto de un solo episodio o de varios.

"Daño mental o emocional" significa el menoscabo de la capacidad intelectual o emocional del (de la) menor dentro de lo que se considera normal para su edad en su medio cultural. Además, se considerará que existe daño emocional cuando hay evidencia de que el(la) menor muestra en forma repetitiva o exhibe conductas tales como miedo, sentimientos de desamparo o desesperanza, de frustración y fracaso, ansiedad, sentimientos de inseguridad, aislamiento, conducta agresiva o regresiva, o cualquier otra conducta similar que manifieste la vulnerabilidad de una persona menor de edad en el aspecto emocional.

"Riesgo" significa la probabilidad de que una persona menor de edad pueda ser víctima de maltrato o negligencia en el futuro por parte de su padre, madre o persona responsable.

"Riesgo de muerte" es un acto que coloca a una persona menor de edad en una condición que pueda causarle la muerte.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no negligentemente. Pueden inferir o deducir razonablemente de la prueba presentada y admitida la negligencia. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito Negligencia.

**[Cuando se alegue la circunstancia agravada de un patrón de conducta negligente, el tribunal debe impartir la instrucción siguiente:**

Si ustedes consideran, luego de un análisis cuidadoso de toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, que el Ministerio Público probó más allá de duda razonable la comisión del delito pero no mediante un patrón de conducta negligente, deberán rendir un veredicto de culpable por el delito de Negligencia sin esa circunstancia**].**

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Negligencia.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 3 (*Definiciones*) y el Artículo 60 (*Negligencia*) de la Ley para la Seguridad, Bienestar y Protección de Menores, según enmendada, 8 LPRA secs. 1101 y 1175); Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA sec. 5034).

### 15.4 Incumplimiento de Órdenes de Protección (Art. 70)

Contra la persona acusada se ha presentado una acusación por el delito de Incumplimiento de Órdenes de Protección a tenor de la Ley para la Seguridad, Bienestar y Protección de Menores.

Los elementos de este delito son los siguientes:

(1) Que exista una orden de protección expedida en conformidad con la Ley para la Seguridad, Bienestar y Protección de Menores,

(2) que la orden de protección haya estado vigente al momento de los hechos

(3) y que se viole cualquiera de los términos de la orden de protección.

"Orden de protección" es el mandato expedido por escrito bajo el sello de un tribunal, en el cual se dictan las medidas a una persona maltratante de una persona menor de edad para que no incurra o lleve a cabo determinados actos o conductas constitutivas de maltrato, maltrato institucional, negligencia o negligencia institucional.

**[El tribunal debe impartir esta Instrucción acompañada de la Instrucción 4.5].**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Incumplimiento de Órdenes de Protección.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Incumplimiento de Órdenes de Protección.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 3 (*Definiciones*) y el Artículo 70 (*Incumplimiento de órdenes de protección*) de la Ley para la Seguridad, Bienestar y Protección de Menores, Ley 246-2011, según enmendada, 8 LPRA secs. 1101 y 1.

CAPÍTULO 16
**LEY CONTRA EL ACECHO EN PUERTO RICO**

## 16.1   Acecho (Art. 4(b))

Contra la persona acusada se ha presentado una acusación por el delito de Acecho.

La  ley prohíbe que una persona manifieste intencionalmente un patrón constante o repetitivo de conducta de acecho.

Los elementos de este delito son los siguientes:

(1) Intencionalmente,

(2) manifestar una conducta de acecho o un patrón constante o repetitivo de conducta,

(3) [que la conducta esté dirigida a intimidar a determinada persona o a sus familiares de que pueden sufrir un daño sobre su persona o bienes] [que mantenga el patrón de conducta a sabiendas de que determinada persona puede razonablemente sentirse intimidada] y que **[refiérase solamente a la(s) circunstancia(s) aplicable(s) según lo alegado en el pliego acusatorio]**:

(a) se penetre en la morada (residencia) o en el lugar de empleo de determinada persona o de cualquier miembro de su familia, causando temor de sufrir daño físico o ejerciendo presión moral sobre la persona para que lleve a cabo un acto contrario a su voluntad;

(b) se cause grave daño corporal a determinada persona o miembro de familia;

(c) se cause el daño con un arma mortífera sin que exista la intención de matar o mutilar;

(d) se cause el daño luego de mediar una orden de protección contra la persona acusada a favor de la alegada víctima del acecho y que la orden estuviera vigente a la fecha de los hechos alegados;

(e) se cometa un acto de vandalismo que destruya propiedad en lugares inmediatos o cercanos [al hogar] [residencia] [escuela] [trabajo] [vehículo] de determinada persona o miembro de su familia;

(f) se cometa por una persona adulta contra una persona menor de edad;

(g) se cometa contra una mujer embarazada;

(h) se cometa en contra de una persona con la que se sostiene una relación afectiva o intrafamiliar de convivencia que no sea de pareja.

**[El tribunal debe leer la(s) definición(ones) que corresponda(n) según lo alegado en el pliego acusatorio].**

["Acecho" es una conducta mediante la cual se ejerce una vigilancia sobre determinada persona, se envían comunicaciones verbales o escritas no deseadas a una determinada persona, se realizan amenazas escritas o verbales o implícitas a determinada persona, se efectúan actos de vandalismo dirigidos a determinada persona o se hostiga repetidamente mediante palabras, gestos o acciones dirigidas a intimidar, amenazar o perseguir a la víctima o a miembros de su familia].

["Patrón de conducta persistente"' significa realizar en 2 o más ocasiones actos que evidencien el propósito intencional de intimidar a una persona determinada o miembros de su familia].

["Familia" está constituida por las personas siguientes: (1) cónyuge, hijo(a), padre, madre, abuelo(a), nieto(a), hermano(a), tío(a), sobrino(a), primo(a) u otra persona pariente por consanguinidad o afinidad que forme parte del núcleo familiar; (2) persona que viva o que haya vivido previamente con la víctima en una relación de pareja o que haya tenido alguna relación de cortejo o noviazgo y (3) persona que resida o haya residido en la misma vivienda que la víctima por los menos 6 meses antes de que se manifestaran los actos constitutivos de acecho].

["Orden de protección" es todo mandato expedido por escrito bajo el sello de un tribunal, en el cual se dictan las medidas a la persona ofensora para que no incurra o lleve a cabo determinados actos que constituyen acecho].

["Intimidar" es toda acción o palabra que, manifestada repetidamente, infunda temor en el ánimo de una persona prudente y razonable, y que tiene el efecto de que ella o cualquier miembro de su familia pueda sufrir daños, en su persona o en sus bienes. Asimismo, se trata de ejercer presión moral sobre el ánimo de una persona prudente y razonable para que esta lleve a cabo un acto contrario a su voluntad].

["Menor de edad" es una persona que al momento de los hechos no ha cumplido 18 años].

["Relación de pareja" es la relación entre cónyuges, excónyuges, personas que cohabitan o han cohabitado, que sostienen o han sostenido una relación consensual y que han procreado entre sí un(a) hijo(a), independientemente del sexo, estado civil, orientación sexual, identidad de género o estatus migratorio de cualquiera de las personas involucradas en la relación].

"Intencionalmente" equivale a actuar "a propósito", "con conocimiento" o "temerariamente".

"A sabiendas" es sinónimo de "con conocimiento".

Una persona actúa "a propósito" cuando su objetivo consciente es la producción de un resultado o cuando cree que una circunstancia existe. La persona actúa "con conocimiento" cuando es consciente de que la producción del resultado o la existencia de la circunstancia prohibida por ley es prácticamente segura. La persona actúa "temerariamente" cuando es consciente de que su conducta genera un riesgo sustancial e injustificado de que

se produzca el resultado o la circunstancia prohibida por ley, y a pesar de conocer el riesgo, la persona continúa con su acción u omisión.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no a propósito, con conocimiento o temerariamente. Pueden inferir o deducir razonablemente de la prueba presentada y admitida el propósito, el conocimiento o la temeridad. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Acecho.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Acecho.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 3 (*Definiciones*) y Artículo 4 (*Conducta delictiva; penalidades*) de la Ley contra el Acecho en Puerto Rico, Ley 284-1999 (33 LPRA secs. 4013 y 4014); el Artículo 14 (*Definiciones*), el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*) y el Artículo 22 (*Elementos subjetivos del delito*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5014, 5034 y 5035), y el Artículo 1.3 (*Definiciones*) de la Ley para la Prevención e Intervención con la Violencia Doméstica, Ley Núm. 54 de 15 de agosto de 1989, según enmendada, 8 LPRA sec. 602.

**COMENTARIO:**

Los términos "grave daño corporal" y "arma mortífera", pertinentes a las modalidades agravadas del Artículo 4(b)(2) y (3), 33 LPRA sec. 4014(b)(2) y (3), no se definen en la Ley contra el Acecho en Puerto Rico, en el Código Penal ni en la Ley de Armas de Puerto Rico. Es menester puntualizar que estas modalidades agravadas del referido Artículo 4 parecen reflejo, en parte, de las modalidades de agresión agravada grave, consignadas en el Artículo 95 del Código Penal de 1974 (1974 [Parte 1] Leyes de Puerto Rico 477), según enmendado, para cuando se aprobó la ley. El inciso (b) de la modalidad grave del Artículo 95 del Código Penal de 1974, según enmendado, 1994 Leyes de Puerto Rico 125, agravaba el delito de agresión agravada "[c]uando se infiere grave daño corporal a la persona agredida", mientras que el inciso (c) reflejaba lo propio "cuando se cometiere con armas mortíferas en circunstancias que no revistiesen la intención de matar o mutilar". Íd.

En lo que respecta a la frase "grave daño corporal", el Artículo 5.06 de la Ley de Vehículos y Tránsito de Puerto Rico, 9 LPRA sec. 5126, si bien en otro contexto, señala "[c]onstituirá grave

daño corporal aquél que resulte en mutilación, incapacidad física o mental, ya sea parcial o total, temporera o permanente, o que afecte severamente el funcionamiento fisiológico o mental de una persona". En términos similares, el Código Penal Modelo define *serious bodily injury* así: "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ". American Law Institute, *Model Penal Code* Sec. 210.0. Sin embargo, el Artículo 4 de la Ley contra el Acecho en Puerto Rico, *supra*, precisamente excluye circunstancias que revistan la intención de mutilar. Si se toma en consideración el Artículo 95 del Código Penal de 1974 —que aparenta haber servido de modelo — observaríamos que la Ley 284-1999, según enmendada, no armonizaría con la definición de la Ley de Vehículos y Tránsito de Puerto Rico. Adviértase que el Código Penal de 1974 distinguía la agresión agravada (Artículo 95) de la mutilación (Artículo 96) y de lanzar ácidos a una persona (Artículo 97). 1974 [Parte 1] Leyes de Puerto Rico 477-478. La definición prevista en el Código Penal de California aparenta ser más atinada, al definir *great bodily injury*, en el contexto de violencia doméstica, en los términos siguientes: "means significant or substantial physical injury.  It is an injury that is greater than minor or moderate harm". Cal. Pen. Cod. sec. 12022. Instrucción 3163 (Great Bodily Injury: Domestic Violence) de las *Judicial Council of California Criminal Jury Instructions, CALCRIM* (2016).

En torno al término "arma mortífera", el Tribunal Supremo lo definió hace más de un siglo en *El Pueblo v. Dávila*, 23 DPR 337, 338 (1915), como "cualquier instrumento que cause la muerte o grave daño corporal, al ser usado del modo corriente y usual que su forma y construcción revela[n]". También abordó el tema en *El Pueblo v. Oriols*, 27 DPR 208, 210-211 (1919), donde expresó:

> [U]na vez identificada la clase de arma con que se cometiera la agresión, la determinación de si es o no un arma mortífera es una cuestión de derecho [...] sobre la que no es necesario, por lo tanto, practicar prueba alguna a no ser que el carácter del arma sea dudoso o dependa el que sea mortífera o no de la forma en que se usa, en cuyo caso es una cuestión de hecho que debe ser objeto de prueba y dejarse a la apreciación del jurado o en su caso del tribunal sentenciador. (Citas omitidas). Íd.

Merece consideración la Opinión del Secretario de Justicia de 1920, donde se sirve de la jurisprudencia del Tribunal Supremo en *El Pueblo v. Dávila*, supra, pág. 338, y *El Pueblo v. Bivas*, 16 DPR 611, 618 (1910). En la Opinión del Secretario se concluye que "[e]l hacha y el machete caen indudablemente como armas, dentro de esta clasificación.". Op. Sec. Just. 1920 (27 febrero 1920). Véase, además, *Pueblo v. Díaz*, 66 DPR 754, 755-756 (1946).

Un "palo" también podría considerarse un arma mortífera, cuando se utiliza para cometer una agresión, conforme la jurisprudencia de nuestro Tribunal Supremo. Así concluyó el Tribunal en *Pueblo v. Rodríguez Ocaña*, 88 DPR 335, 338 (1963), al expresar que:

> [U]n "palo" no constituye un arma mortífera *per se* cuando se utiliza dentro del uso común y ordinario en que se emplea la madera, como una tranca, un bate atlético, un travesaño, la pata de una mesa. Pero cuando se utiliza como un instrumento de agresión, capaz de inferir grave daño corporal, puede convertirse en un arma mortífera. (Citas omitidas).

Estas expresiones fueron refrendadas en *Pueblo v. Bonilla Ortiz*, 123 DPR 434, 442 (1989).

A modo de análisis comparado, en el estado de California se define en sus instrucciones el término análogo *deadly weapon* como cualquier objeto, instrumento o arma que sea inherentemente mortal o que se use de tal manera que sea capaz de causar y pueda causar la muerte o lesiones corporales graves ("any object, instrument, or weapon that is inherently deadly or one that is used in such a way that it is capable of causing and likely to cause death or great bodily injury"). Instrucción 860 de las *Judicial Council of California Criminal Jury Instructions, CALCRIM* (2016). En términos similares, en el estado de Idaho se define *deadly weapon* como cualquier objeto, instrumento o arma que sea capaz de producir, y que pueda producir, la muerte o lesiones corporales graves ("any object, instrument or weapon which is capable of producing, and likely to produce, death or great bodily injury".). Idaho, *Criminal Jury Instructions*, 1206 (2010). En lo que respecta al Código Penal Modelo, este define *deadly weapon* como cualquier arma de fuego u otra arma, dispositivo, instrumento, material o sustancia, ya sea animada o inanimada, que de la manera en que se usa o se pretende usar se sabe que es capaz de producir la muerte o lesiones corporales graves ("any firearm, or other weapon, device, instrument, material or substance, whether animate or inanimate, which in the manner it is used or is intended to be used is known to be capable of producing death or serious bodily injury".). American Law Institute, ALI Model Penal Code Art. 210.0.

Para propósitos del Código Penal, se considera menor de edad cualquier persona que no haya cumplido 18 años. Refiérase a los Artículos 39 (*Minoridad*), 88 (*Delitos que no prescriben*) y 130 (*Agresión sexual*), entre otros, del Código Penal de 2012 (33 LPRA secs. 5062, 5133 y 5191). La doctora Nevares-Muñiz aduce que desde el Código Penal de 2004 se aumentó la edad de protección para cubrir todo el periodo en que la persona sea menor de 18 años. D. Nevares-Muñiz, *Código Penal de Puerto Rico*, 4ta ed. rev., San Juan, Ed. Instituto para el Desarrollo del Derecho, 2019, págs. 194-195.

### 16.2 Incumplimiento de Órdenes de Protección como delito menor incluido al delito de Acecho cuando medie una orden de protección (Art. 10)

La ley también dispone que se comete este delito cuando se incumple con una orden de protección expedida en conformidad con la Ley contra el Acecho en Puerto Rico, si:

(1) A sabiendas,
(2) se incurre o se lleva a cabo cualquier violación a una orden de protección expedida en conformidad con la Ley contra el Acecho y
(3) en circunstancias que no implican acecho o un patrón constante o repetitivo de conducta.

**[El tribunal debe leer las definiciones que correspondan].**

["Acecho" es una conducta mediante la cual se ejerce una vigilancia sobre determinada persona, se envían comunicaciones verbales o escritas no deseadas a una determinada persona, se realizan amenazas escritas o verbales o implícitas a determinada persona, se efectúan actos de vandalismo dirigidos a determinada persona o se hostiga repetidamente mediante palabras, gestos o acciones dirigidas a intimidar, amenazar o perseguir a la víctima o a miembros de su familia].

["A sabiendas" es sinónimo de "con conocimiento". Una persona actúa "con conocimiento" cuando es consciente de que la producción del resultado o la existencia de la circunstancia es prácticamente segura.  En este delito, una persona actúa "a sabiendas" cuando conoce que existe una orden de protección expedida en su contra y viola cualquiera de sus términos].

["Orden de protección" es todo mandato expedido por escrito bajo el sello de un tribunal en el cual se dictan las medidas a la persona ofensora para que no incurra o lleve a cabo determinados actos que constituyen acecho].

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable que existió o existe una orden de protección vigente para la fecha de los hechos que alegan y que la persona acusada, a sabiendas, violó o incumplió con la orden de protección, pero no probó más allá de duda razonable que la persona acusada incurrió en un acecho o patrón repetitivo de conducta, deberán rendir un veredicto de culpable por el delito de Incumplimiento de Órdenes de Protección.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 3 (*Definiciones*), el Artículo 4 (*Conducta delictiva; penalidades*) y el Artículo 10 (*Incumplimiento de órdenes de protección*) de la Ley contra el Acecho en Puerto Rico, Ley 284-1999 (33 LPRA secs. 4013, 4014 y 4020); el Artículo 14 (*Definiciones*), el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*) y el Artículo 22 (*Elementos subjetivos del delito*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5014, 5034 y 503.

CAPÍTULO 17
## LEY DE SUSTANCIAS CONTROLADAS DE PUERTO RICO

### 17.1 Artículo 401

Contra la persona acusada se ha presentado una acusación por violación al Artículo 401 de la Ley de Sustancias Controladas de Puerto Rico, que en este caso consiste en **[especifique el delito imputado según lo alegado en el pliego acusatorio]**.

**[El tribunal debe impartir la Instrucción de acuerdo con la modalidad que aplique:**

### A. Modalidad de sustancia controlada

La ley prohíbe que cualquier persona, a sabiendas o intencionalmente, fabrique, distribuya, dispense, transporte, oculte o posea con la intención de fabricar, distribuir, dispensar, transportar u ocultar una sustancia controlada.

Los elementos de este delito son los siguientes:

> (1) A sabiendas o intencionalmente,
> (2) [fabricar] [distribuir] [dispensar] [transportar] [ocultar] [poseer con la intención de fabricar] [poseer con la intención de distribuir] [poseer con la intención de dispensar] [poseer con la intención de transportar] [poseer con la intención de ocultar]
> (3) una sustancia controlada.

### B. Modalidad de sustancia falsificada

La ley prohíbe que cualquier persona, a sabiendas o intencionalmente, produzca, distribuya, dispense, transporte, oculte o posea con la intención de distribuir, dispensar, transportar u ocultar una sustancia falsificada.

Los elementos de este delito son los siguientes:

> (1) A sabiendas e intencionalmente,
> (2) [producir] [distribuir] [dispensar] [transportar] [ocultar] [poseer con la intención de distribuir] [poseer con la intención de dispensar] [poseer con la intención de transportar] [poseer con la intención de ocultar]
> (3) una sustancia falsificada**].**

La ley requiere que toda persona obtenga un certificado de registro expedido por el (la) Secretario(a) de Salud para fabricar, distribuir o dispensar sustancias controladas.

"Intencionalmente" es equivalente a actuar "a propósito", "con conocimiento" o "temerariamente". "A sabiendas" es sinónimo de "con conocimiento".

Una persona actúa "a propósito" cuando su objetivo consciente es la producción de un resultado o cuando cree que una circunstancia existe. La persona actúa "con conocimiento" cuando es consciente de que la producción del resultado o la existencia de la circunstancia prohibida por ley es prácticamente segura. La persona actúa "temerariamente" cuando es consciente de que su conducta genera un riesgo sustancial e injustificado de que se produzca el resultado o la circunstancia prohibida por ley, y a pesar de conocer el riesgo, la persona continúa con su acción u omisión.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó a propósito, con conocimiento o temerariamente. Para esto, se permite hacer inferencias y deducciones razonables de las circunstancias relacionadas con los hechos, la capacidad mental, las manifestaciones o la conducta de la persona acusada.

**[El tribunal debe leer las definiciones que correspondan según lo alegado en el pliego acusatorio].**

["Sustancia controlada" es toda droga, sustancia o precursor inmediato incluida en alguna de las cinco clasificaciones establecidas por ley y cuyo uso, fabricación, distribución o consumo es regulado por razones de salud física y mental. "Precursor inmediato" significa cualquier sustancia:

(a) que se determine y designe por reglamento como el compuesto principal usado corrientemente o producido principalmente para usarse en la fabricación de una sustancia controlada, por el (la) Secretario(a) de Salud, Educación y Bienestar de Estados Unidos y el (la) Secretario(a) de Salud del Estado Libre Asociado de Puerto Rico;

(b) que es un intermediario químico inmediato usado o propenso a ser usado en la fabricación de esa sustancia controlada, y

(c) cuyo control se hace necesario para prevenir, reducir o limitar la fabricación de esa sustancia controlada].

["Droga narcótica" es cualquiera de las siguientes sustancias, ya sean producidas directa o indirectamente extrayéndolas de sustancias de origen vegetal, o por medio de síntesis química o combinación de ambas **[refiérase solamente a la(s) alternativa(s) que aplique(n)]**:

(a) Opio, hojas de coca y opiatos. "Opiato" significa cualquier sustancia capaz de crear adicción en forma similar a la morfina o que sea susceptible de ser convertida en una droga que posea la capacidad para crear o mantener la adicción.

(b) Cualquier compuesto, producto, sal, derivado, preparación de opio, hojas de coca y opiatos, por ejemplo, la cocaína y la heroína.

(c) Cualquier sustancia y cualquier compuesto, producto, sal, derivado o preparación de esa sustancia que sea químicamente idéntica a cualquiera de las sustancias mencionadas en los apartados (a) y (b), con la excepción de que

el concepto "droga narcótica" no incluirá las hojas de coca decocainizadas ni los extractos de hojas de coca si estos no contienen cocaína o ecgonina].

["Sustancia falsificada" es toda sustancia controlada o cuyo envase o etiqueta, que exhibe sin autorización, la marca de fábrica, el nombre comercial u otra marca, señal, número o diseño identificador, o su semejante, de un(a) fabricante, distribuidor(a) o dispensador(a) que no es la persona o personas que en realidad fabricaron, distribuyeron o dispensaron tal sustancia y la cual así pretende o representa falsamente ser el producto de, o de haber sido distribuido por, tal fabricante, distribuidor(a) o dispensador(a)].

["Fabricación" significa la producción, importación, preparación, reproducción, confección o elaboración, en forma directa o indirecta, de una droga u otra sustancia controlada extrayéndola de sustancias de origen natural o independientemente por medio de síntesis química o por la combinación de extracción y síntesis química. Incluye también cualquier empaque o reempaque de la sustancia o la rotulación de su envase. No incluirá la preparación, confección, empaque o rotulación que haga una persona profesional en el curso de su práctica].

["Dispensar" es prescribir o recetar, administrar o entregar una sustancia controlada al consumidor mediante una prescripción u orden. Incluye la preparación, rotulación y empaque de la sustancia controlada, para tal entrega. "Dispensador" es el (la) profesional que dispensa una sustancia controlada].

["Distribuir" significa entregar una sustancia controlada por un medio que no sea administrar o dispensar. "Distribuidor" es la persona que distribuye una sustancia controlada].

["Posesión" constituye delito solamente cuando la persona adquirió o recibió voluntariamente la sustancia controlada, o conocía que la cosa estaba en su posesión y tuvo tiempo suficiente para terminar la posesión. Para determinar la intención de posesión de sustancias controladas, por ser un estado mental, deberán analizar los hechos y las circunstancias del caso].

**[El tribunal debe impartir esta Instrucción cuando se alegue en el pliego acusatorio la modalidad de poseer con la intención de distribuir, dispensar, transportar u ocultar una sustancia controlada:**

Ahora bien, cuando se imputa el delito de Posesión con la Intención de **[especifique]** una sustancia [controlada] [falsificada], la intención, por ser un estado mental, no siempre puede establecerse con prueba directa. En tal caso, ustedes deben analizar los hechos y las circunstancias que concurren en el caso para determinar si la intención estaba o no presente, de entender que se probó más allá de duda razonable la posesión imputada a la persona acusada.

La ley requiere en estos casos que se demuestre la intención criminal de la persona acusada. Esto significa que el (la) acusado(a) sabía y tenía conocimiento de la presencia en su poder de la sustancia [controlada] [falsificada] **[especifique la sustancia]].**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público

probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por violar el Artículo 401 de la Ley de Sustancias Controladas.

**[El tribunal debe impartir esta Instrucción cuando se alegue en el pliego acusatorio la modalidad de poseer con la intención de distribuir, dispensar, transportar u ocultar una sustancia controlada:**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable que la persona acusada estaba en posesión de **[especifique la sustancia]** pero no que la persona poseía la sustancia controlada con intención de **[indique lo que aplique]**, entonces deberán rendir un veredicto de culpable por posesión de **[especifique la sustancia],** en violación del Artículo 404 de la Ley de Sustancias Controladas**]**.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable.

**REFERENCIA**:

Esta Instrucción proviene de la Instrucción 19.1 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con el Artículo 102 (*Definiciones*) y el Artículo 401 de la Ley de Sustancias Controladas de Puerto Rico, Ley Núm. 4 de 23 de junio de 1971, según enmendada, 24 LPRA secs. 2102 y 2401; el Artículo 14 (*Definiciones*), el Artículo 18 (*Formas de comisión*), el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*) y el Artículo 22 (*Elementos subjetivos del delito*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5014, 5031, 5034 y 5035).

**COMENTARIO:**

El tribunal debe impartir instrucciones de un delito menor incluido dentro del delito imputado si la prueba lo justifica. El delito de posesión de sustancias controladas está incluido dentro del delito mayor de posesión con intención de distribuir. *Pueblo v. Lorio Ormsby I*, 137 DPR 722 (1994).

El Artículo 202 de la Ley de Sustancias Controladas, Ley Núm. 4 de 23 de junio de 1971, según enmendada, 24 LPRA sec. 2202, detalla las cinco clasificaciones de sustancias controladas denominadas "Clasificaciones I, II, III, IV y V". Nótese que el cannabis, enumerado en la Clasificación I del precitado artículo, se reclasificó a la Clasificación II en conformidad con el Artículo 2 de la Ley 42-2017 (24 LPRA sec. 2621a), conocida como Ley para Manejar el Estudio, Desarrollo e Investigación del Cannabis para la Innovación, Normas Aplicables y Límites ("Ley MEDICINAL"). En cuanto a esta reclasificación, refiérase, además, a la Orden Declarativa Núm. 32 de 2015 del Departamento de Salud y el Reglamento para Manejar el

Estudio, Desarrollo e Investigación de Cannabis para la Innovación, Normas Aplicables y Límites, Reglamento Núm. 9838, del Departamento de Salud, de 2 de julio de 2018.

Estas son las cinco clasificaciones que dispone el Artículo 202 vigente a febrero de 2021.

*CLASIFICACIÓN I*

(a) A menos que estén específicamente exceptuadas o incluidas en otra clasificación, se entenderán incluidos en esta clasificación cualquiera de los siguientes opiatos, incluyendo sus isómeros, ésteres, éteres, sales, y sales de isómeros, ésteres y éteres, siempre que la existencia de dichos isómeros, ésteres, éteres y sales sea posible dentro de la designación química específica:

(1) Acetilmetadol.
(2) Alilprodina.
(3) Alfacetilmetadol.
(4) Alfameprodina.
(5) Alfametadol.
(6) Bencetidina.
(7) Betacedilmetadol.
(8) Betameprodina.
(9) Betametadol.
(10) Betaprodina.
(11) Clonitaceno.
(12) Dextromoramida.
(13) Dextrorfan.
(14) Diampromida.
(15) Dietiltiambuteno.
(16) Dimenoxadol.
(17) Dimepheptanol.
(18) Dimetiltiambuteno.
(19) Butirato de dioxafetil.
(20) Dipipanona.
(21) Etilmetiltiambuteno.
(22) Etonitaceno.
(23) Etoxeredina.
(24) Furetidina.
(25) Hidroxipetidina.
(26) Ketobemidona.
(27) Levomoramida.
(28) Levofenacilmorfán.
(29) Morferidina.
(30) Noracimetadol.
(31) Norlevorfanol.
(32) Normetadona.
(33) Norpipanona.
(34) Fenadoxona.
(35) Fenanpromida.
(36) Fenomorfán.
(37) Fenoperidina.
(38) Piritramida.

(39) Proheptacina.
(40) Properidina.
(41) Racemoramida.
(42) Trimeperidina.
8(43) Cannabinoides.
(44) Cannabinoides sintéticos.

(b) A menos que estén específicamente exceptuadas o incluidas en otra clasificación, se entenderán incluidos en esta clasificación cualquiera de los siguientes derivados del opio, sus sales, isómeros y sales de sus isómeros, siempre que la existencia de dichas sales, isómeros y sales de isómeros sea posible dentro de la designación química específica:

(1) Acetorfina.
(2) Acetildihidrocodeína.
(3) Bencilmorfina.
(4) Metilbromuro de codeína.
(5) Codeína-N-Oxido.
(6) Ciprenorfina.
(7) Desomorfina.
(8) Dihidromorfina.
(9) Etorfina.
(10) Heroína.
(11) Hidromorfinol.
(12) Metildesomorfina.
(13) Metildihidromorfina.
(14) Metilbromuro de morfina.
(15) Metilsulfonato de morfina.
(16) Morfina-N-Oxido.
(17) Mirofina.
(18) Nicocodeína.
(19) Nicomorfina.
(20) Normorfina.
(21) Folcodina.
(22) Tebacón.

(c) A menos que estén específicamente exceptuadas o incluidas en otra clasificación, se entenderán incluidos en esta clasificación cualquier material, compuesto, mezcla o preparación que contenga una cantidad cualquiera de las siguientes sustancias alucinógenas, sus sales, isómeros "Ley de Sustancias Controladas de Puerto Rico" y sales de isómeros, siempre que la existencia de tales sales, isómeros y sales de isómeros sea posible dentro de la designación química específica:

(1) 3, 4-metilenodioxi anfetamina.
(2) 5-metoxi-3, 4-metilenodioxi anfetamina.
(3) 3, 4, 5-trimetoxi anfetamina.
(4) Bufotenino.
(5) Dietiltriptamina.
(6) Dimetiltriptamina.
(7) 4-metil-2, 5-dimetoxianfetamina.
(8) Ibogaina.
(9) Dietilamida de ácido lisérgico.
(10) Marihuana.
(11) Mescalina.
(12) Peyote.

(13) N-Etil-3-piperidil bencilato.
(14) N-Metil-3-piperidil bencilato.
(15) Psilocibina.
(16) Psilocina.
(17) Tetrahidrocanabinol.
(18) Metilendioxipirovalerona (MDPV).

## *CLASIFICACIÓN II*

(a) A menos que estén específicamente exceptuadas o incluidas en otra clasificación, se entenderán incluidas en esta clasificación cualquiera de las siguientes sustancias ya sean producidas directa o indirectamente mediante extracción de sustancias de origen vegetal, o independientemente por medio de síntesis química, o mediante una combinación de extracción y síntesis química:

(1) Opio y opiato, y cualquier sal, compuesto, derivado o preparación de opio u opiato.

(2) Cualquier sal, compuesto, derivado o preparación de los mismos que sea químicamente equivalente o idéntico a cualquiera de las sustancias mencionadas en la cláusula (1) de este inciso, excepto que tales sustancias no incluirán los alcaloides isoquinólicos del opio.

(3) Amapolas adormideras y paja de la adormidera.

(4) Hojas de coca y cualquier sal, compuesto, derivado o preparación de hojas de coca, y cualquier sal, compuesto, derivado o preparación de los mismos que sea químicamente equivalente a cualquiera de tales sustancias, excepto que éstas no incluirán hojas de coca decocainizadas o extractos de hojas de coca que no contengan cocaína o ecgonina.

(b) A menos que estén específicamente exceptuados o incluidos en otra clasificación, se entenderán incluidos en esta clasificación cualquiera de los siguientes opiatos, incluyendo sus isómeros, ésteres, éteres, sales, y sales de isómeros, ésteres y éteres, siempre que la existencia de tales isómeros, ésteres, éteres y sales sea posible dentro de la designación química específica:

(1) Alfaprodina.
(2) Anileridina.
(3) Bezitramida.
(4) Dihidrocodeína.
(5) Difenoxilato.
(6) Fentanyl.
(7) Isometadona.
(8) Levometorfán.
(9) Levorfanol.
(10) Metazocina.
(11) Metadona.
(12) Metadona-Intermedio, 4-ciano-2-dimetilamino-4, 4-difenilbutano.
(13) Moramida-Intermedia, 2-metil-3-morfolino-1, 1-difenilpropano carboxílico ácido.
(14) Petidina.
(15) Petidina-Intermedia-A, 4-ciano-1-metil-4-fenilpiperidina.
(16) Petidina-Intermedia-B, etil-4-Fenilpiperidina-4-carboxílico.
(17) Petidina-Intermedia-C, 1-metil-4-Fenilpiperidina-4-ácido carboxílico.

(18) Fenazocina.
(19) Piminodina.
(20) Racemetorfán.
(21) Racemorfán.

(c) A menos que estén específicamente exceptuados o incluidos en otra clasificación, se entenderán incluidos en esta clasificación cualquier líquido inyectable que contenga cualquier cantidad de metanfetamina, incluyendo sus sales, isómeros y sus sales de isómeros.

## *CLASIFICACIÓN III*

(a) A menos que estén específicamente exceptuados o incluidos en otra clasificación, se entenderán incluidos en esta clasificación cualquier material, compuesto, mezcla, o preparación que contenga cualquier cantidad de las siguientes sustancias que tengan un efecto estimulante sobre el sistema nervioso:

(1) Anfetamina, sus sales, isómeros ópticos y las sales de sus isómeros ópticos.
(2) Fenmetrazina y sus sales.
(3) Cualquier sustancia, excepto un líquido inyectable, que contenga cualquier cantidad de metanfetamina, incluyendo sus sales, isómeros y sales de isómeros.
(4) Metilfenidato.

(b) A menos que estén específicamente exceptuados o incluidos en otra clasificación, se entenderán incluidos en esta clasificación cualquier material, compuesto, mezcla o preparación, que contenga cualquier cantidad de las siguientes sustancias que tengan un efecto deprimente en el sistema nervioso central:

(1) Cualquier sustancia que contenga cualquier cantidad de algún derivado del ácido barbitúrico, o de cualquier sal de un derivado de ácido barbitúrico.
(2) Clorhexadol.
(3) Glutetimida.
(4) [Á]cido lisérgico.
(5) Amida del ácido lisérgico.
(6) Metiprilón.
(7) Fenciclidina.
(8) Sulfondietilmetano.
(9) Sulfonetilmetano.
(10) Sulfonmetano.

(c) Nalorfina.

(d) A menos que estén específicamente exceptuados o incluidos en otra clasificación, se entenderán incluidos en esta clasificación cualquier material, compuesto, mezcla, o preparación que contenga cantidades limitadas de cualquiera de las siguientes drogas narcóticas, o cualquiera de sus sales:

(1) No más de 1.80 gramos de codeína por cada 100 mililitros o no más de 90 miligramos por unidad de dosis con una cantidad igual o mayor de un alcaloide isoquinólico de opio.

(2) No más de 1.80 gramos de codeína por cada 100 mililitros o no más de 90 miligramos por unidad de dosis, con uno (1) o más ingredientes activos no narcóticos en cantidades terapéuticas reconocidas.

(3) No más de 300 miligramos de dihidrocodeinona por cada 100 mililitros o no más de 15 miligramos por unidad de dosis, con el cuádruplo o más de un alcaloide isoquinólico de opio.

(4) No más de 300 miligramos de dihidrocodeinona por cada 100 mililitros o no más de 15 miligramos por unidad de dosis, con uno (1) o más ingredientes activos no narcóticos en cantidades terapéuticas reconocidas.

(5) No más de 1.80 gramos de dihidrocodeína por cada 100 mililitros o no más de 90 miligramos por unidad de dosis, con uno (1) o más ingredientes activos no narcóticos en cantidades terapéuticas reconocidas.

(6) No más de 300 miligramos de etilmorfina por cada 100 mililitros o no más de 15 miligramos por unidad de dosis, con uno (1) o más ingredientes activos no narcóticos en cantidades terapéuticas reconocidas.

(7) No más de 500 miligramos de opio por cada 100 mililitros o por cada 100 gramos, o no más de 25 miligramos por unidad de dosis, con uno (1) o más ingredientes activos no narcóticos en cantidades terapéuticas reconocidas.

(8) No más de 50 miligramos de morfina por cada 100 mililitros o por cada 100 gramos, con uno (1) o más ingredientes activos no narcóticos en cantidades terapéuticas reconocidas.

## CLASIFICACIÓN IV

(1) Barbital.
(2) Cloral betaina.
(3) Hidrato de cloral.
(4) Etclorvinol.
(5) Etinamato.
(6) Metohexital.
(7) Meprobamato.
(8) Metilfenobarbital.
(9) Paraldehido.
(10) Petricloral.
(11) Fenobarbital.

## CLASIFICACIÓN V

Se entenderá incluido en esta clasificación cualquier compuesto, mezcla, o preparación que contenga cantidades limitadas de cualquiera de las siguientes drogas narcóticas, que deberá incluir uno (1) o más ingredientes medicinales activos, que no sean narcóticos, en proporción suficiente para conferirle al compuesto, mezcla o preparación, propiedades medicinales de valor, distintas a las que posee la droga narcótica por sí sola:

(1) No más de 200 miligramos de codeína por cada 100 mililitros o por cada 100 gramos.

(2) No más de 100 miligramos de dehidrocodeína por cada 100 mililitros o por cada 100 gramos.

(3) No más de 100 miligramos de etilmorfina por cada 100 mililitros o por cada 100 gramos.

(4) No más de 2.5 miligramos de difenoxilato y no menos de 25 microgramos de sulfato de atropina por unidad de dosis.

(5) No más de 100 miligramos de opio por cada 100 mililitros o por cada 100 gramos.

(d) El Secretario podrá, mediante reglamento u orden, exceptuar cualquier compuesto, mezcla o preparación que contenga cualquier sustancia deprimente o

estimulante incluida en los incisos (a) o (b) de la Clasificación III o en la Clasificación IV o V, de la aplicación total o parcial de esta ley si:

（1) El compuesto, mezcla, o preparación contiene uno (1) o más ingredientes activos medicinales que no tengan un efecto deprimente o estimulante sobre el sistema nervioso central y

（2) dichos ingredientes están en combinaciones, cantidad, proporción o concentración suficiente para contrarrestar el potencial de abuso de las sustancias que tienen el efecto deprimente o estimulante sobre el sistema nervioso central.

La publicación y vigencia de la orden se regirá por lo dispuesto en el inciso (g) de[l Artículo 201 de esta ley]. 24 LPRA sec. 2202(c).

## 17.2   Artículo 403

Contra la persona acusada se ha presentado una acusación por violación al Artículo 403 de la Ley de Sustancias Controladas de Puerto Rico, que consiste en **[especifique el delito imputado según lo alegado en el pliego acusatorio]**.

**[El tribunal debe impartir la Instrucción de acuerdo con la modalidad que aplique:**

### A.   Primera modalidad

La ley prohíbe que cualquier persona, a sabiendas e intencionalmente, **[refiérase solamente a la(s) circunstancia(s) que aplique(n) según lo alegado en el pliego acusatorio]**:

(1)  siendo una persona registrada, distribuya una sustancia controlada de las incluidas en las Clasificaciones I o II en el curso de su legítimo oficio o profesión, salvo en conformidad con la hoja oficial de pedido que requiere el Artículo 307 (*Hojas oficiales de pedido*) de esta ley,

(2)  use, en el curso de la fabricación o distribución de una sustancia controlada, un número de registro ficticio, revocado, suspendido o emitido a otra persona;

(3)  adquiera u obtenga la posesión de una sustancia controlada por medio de falsa representación, fraude, falsificación, engaño, subterfugio o excusa o adquiera u obtenga la posesión de una sustancia controlada, ya sea mediante compra u otro medio, de un fabricante, distribuidor o dispensador que no haya obtenido el correspondiente registro para operar en Puerto Rico;

(4)  suministre información pertinente que sea falsa o fraudulenta u omita información pertinente en cualquier solicitud, informe, récord o en cualquier otro documento que se requiera llevar o mantener bajo esta ley;

(5)  haga, distribuya o posea algún punzón, cuño, plancha, piedra u objeto destinado a estampar, imprimir o reproducir la marca de fábrica, el nombre comercial o cualquier otra marca, impresión o divisa de otro producto o de otra persona, o cualquier objeto parecido a los descritos

aquí en una droga, su envase o en la marca, etiqueta o rótulo de esta, convirtiendo dicha droga en una sustancia falsificada.

## B. Segunda modalidad

La ley prohíbe que cualquier persona, a sabiendas e intencionalmente, use cualquier medio de comunicación para cometer o facilitar la comisión de algún delito bajo cualquier disposición de esta ley. Cada uso separado de un medio de comunicación constituirá un delito separado bajo este inciso**]**.

"Intencionalmente" es equivalente a actuar "a propósito", "con conocimiento" o "temerariamente". "A sabiendas" es sinónimo de "con conocimiento".

Una persona actúa "a propósito" cuando su objetivo consciente es la producción de un resultado o cuando cree que una circunstancia existe. La persona actúa "con conocimiento" cuando es consciente de que la producción del resultado o la existencia de la circunstancia prohibida por ley es prácticamente segura. La persona actúa "temerariamente" cuando es consciente de que su conducta genera un riesgo sustancial e injustificado de que se produzca el resultado o la circunstancia prohibida por ley, y a pesar de conocer el riesgo, la persona continúa con su acción u omisión.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó a propósito, con conocimiento o temerariamente. Para esto, se permite hacer inferencias y deducciones razonables de las circunstancias relacionadas con los hechos, la capacidad mental, las manifestaciones o la conducta de la persona acusada.

["Sustancia controlada" es toda droga, sustancia o precursor inmediato incluida en alguna de las cinco clasificaciones establecidas por ley y cuyo uso, fabricación, distribución o consumo es regulado por razones de salud física y mental. "Precursor inmediato" significa cualquier sustancia:

(a) que se determine y designe por reglamento como el compuesto principal usado corrientemente o producido principalmente para usarse en la fabricación de una sustancia controlada, por el (la) Secretario(a) de Salud, Educación y Bienestar de Estados Unidos y el (la) Secretario(a) de Salud del Estado Libre Asociado de Puerto Rico;

(b) que es un intermediario químico inmediato usado o propenso a ser usado en la fabricación de esa sustancia controlada, y

(c) cuyo control se hace necesario para prevenir, reducir o limitar la fabricación de esa sustancia controlada].

**[El tribunal debe leer las definiciones adicionales que correspondan según lo alegado en el pliego acusatorio].**

["Fabricación" significa la producción, importación, preparación, reproducción, confección o elaboración, en forma directa o indirecta, de una droga u otra sustancia controlada extrayéndola de sustancias de origen natural o independientemente por medio

de síntesis química o por la combinación de extracción y síntesis química. Incluye también cualquier empaque o reempaque de la sustancia o la rotulación de su envase. No incluirá la preparación, confección, empaque o rotulación que haga una persona profesional en el curso de su práctica].

["Dispensar" significa prescribir o recetar, administrar o entregar una sustancia controlada al consumidor mediante una prescripción u orden. Incluye la preparación, la rotulación y el empaque de la sustancia controlada para la entrega. "Dispensador" es el (la) profesional que dispensa una sustancia controlada].

["Distribuir" significa entregar una sustancia controlada por un medio que no sea administrar o dispensar. "Distribuidor" es la persona que distribuye una sustancia controlada].

["Posesión" constituye delito solamente cuando la persona adquirió o recibió voluntariamente la sustancia controlada, o conocía que la cosa estaba en su posesión y tuvo tiempo suficiente para terminar la posesión. Para determinar la intención de posesión de sustancias controladas, por ser un estado mental, deberán analizar los hechos y las circunstancias del caso].

["Medio de comunicación" significa cualquier sistema público o privado utilizado para la transmisión de escritos, signos, señales, retratos o sonidos, incluyendo el correo, teléfono, telégrafo, radio y cualquier otro medio de comunicación].

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por violar el Artículo 403 de la Ley de Sustancias Controladas.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable de violar el Artículo 403 de la Ley de Sustancias Controladas.

**REFERENCIA**:

Esta Instrucción es nueva. Guarda relación con el Artículo 102 (*Definiciones*) y el Artículo 403 de la Ley de Sustancias Controladas de Puerto Rico, Ley Núm. 4 de 23 de junio de 1971, según enmendada, 24 LPRA secs. 23102 y 2403); el Artículo 14 (*Definiciones*), el Artículo 18 (*Formas de comisión*), el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*) y el Artículo 22 (*Elementos subjetivos del delito*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5014, 5031, 5034 y 5035).

**COMENTARIO:**

Véase el Comentario de la Instrucción 17.1 con relación a las Clasificaciones de I a V.

### 17.3   Artículo 404

Contra la persona acusada se ha presentado una acusación por violación al Artículo 404 de la Ley de Sustancias Controladas de Puerto Rico, que consiste en **[especifique el delito imputado según lo alegado en el pliego acusatorio]**.

La ley prohíbe que cualquier persona, a sabiendas o intencionalmente, posea alguna sustancia controlada, a menos que tal sustancia haya sido obtenida directamente o de conformidad con la receta u orden de cualquier profesional que ha actuado dentro del marco de su práctica profesional o, de otro modo, autorizado por la ley.

Los elementos de este delito son los siguientes:

(1) A sabiendas o intencionalmente,

(2) poseer alguna sustancia controlada a menos que esa sustancia haya sido obtenida directamente o en conformidad con la receta u orden de cualquier profesional que ha actuado dentro del marco de su práctica profesional o, de otro modo, autorizado por la ley.

"Intencionalmente" equivale a actuar "a propósito", "con conocimiento" o "temerariamente". "A sabiendas" es sinónimo de "con conocimiento".

Una persona actúa "a propósito" cuando su objetivo consciente es la producción de un resultado o cuando cree que una circunstancia existe. La persona actúa "con conocimiento" cuando es consciente de que la producción del resultado o la existencia de la circunstancia prohibida por ley es prácticamente segura. La persona actúa "temerariamente" cuando es consciente de que su conducta genera un riesgo sustancial e injustificado de que se produzca el resultado o la circunstancia prohibida por ley, y a pesar de conocer el riesgo, la persona continúa con su acción u omisión.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó a propósito, con conocimiento o temerariamente. Para esto, se permite hacer inferencias y deducciones razonables de las circunstancias relacionadas con los hechos, la capacidad mental, las manifestaciones o la conducta de la persona acusada.

"Sustancia controlada" es toda droga, sustancia o precursor inmediato incluida en alguna de las cinco clasificaciones establecidas por ley y cuyo uso, fabricación, distribución o consumo es regulado por razones de salud física y mental. "Precursor inmediato" significa cualquier sustancia:

(a) que se determine y designe por reglamento como el compuesto principal usado corrientemente o producido principalmente para usarse en la fabricación de una sustancia controlada, por el (la) Secretario(a) de Salud,

Educación y Bienestar de Estados Unidos y el (la) Secretario(a) de Salud del Estado Libre Asociado de Puerto Rico;

(b) que es un intermediario químico inmediato usado o propenso a ser usado en la fabricación de esa sustancia controlada, y

(c) cuyo control se hace necesario para prevenir, reducir o limitar la fabricación de esa sustancia controlada].

"Profesional" significa médico(a), dentista, veterinario(a), investigador(a) científico(a), farmacéutico(a), farmacia, hospital u otra persona con licencia registrada o, en alguna forma, autorizada por el Estado Libre Asociado de Puerto Rico para distribuir, dispensar, efectuar experimentos con, administrar o usar en la enseñanza o en los análisis químicos una sustancia controlada en el transcurso de su práctica o investigación profesional en el Estado Libre Asociado de Puerto Rico.

"Posesión" constituye delito solamente cuando la persona adquirió o recibió voluntariamente la sustancia controlada, o conocía que la cosa estaba en su posesión y tuvo tiempo suficiente para terminar la posesión. Para determinar la intención de posesión de sustancias controladas, por ser un estado mental, deberán analizar los hechos y las circunstancias del caso].

Ahora bien, cuando se imputa el delito de posesión de una sustancia controlada, la intención, por ser un estado mental, no siempre puede establecerse con prueba directa. En tal caso, ustedes deben recurrir a los hechos y las circunstancias que concurren en el caso para determinar si la intención estaba o no presente, de entender que se probó más allá de duda razonable la posesión imputada a la persona acusada.

La ley requiere que se establezca la intención criminal por parte de la persona acusada. Esto significa que la persona acusada sabía y tenía conocimiento de la presencia en su poder o control de la sustancia controlada conocida como **[especifique la sustancia]**.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por violar el Artículo 404 de la Ley de Sustancias Controladas.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por violar el Artículo 404 de la Ley de Sustancias Controladas.

**REFERENCIA**:

Esta Instrucción proviene de la Instrucción 19.2 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con el Artículo 102 (*Definiciones*) y el Artículo 404 (*Penalidad por posesión, libertad a prueba y eliminación de récords por primer delito*) de la

Ley de Sustancias Controladas de Puerto Rico, Ley Núm. 4 de 23 de junio de 1971, según enmendada, 24 LPRA secs. 2102 y 2404; el Artículo 14 (*Definiciones*), el Artículo 18 (*Formas de comisión*), el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*) y el Artículo 22 (*Elementos subjetivos del delito*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5014, 5031, 5034 y 5035). Véase *Pueblo v. Rivera Cintrón*, 185 DPR 484 (2012).

**COMENTARIO:**

Véase el Comentario de la Instrucción 17.1, relacionado con las Clasificaciones de la I a la V de sustancias controladas.

### 17.4   Distribución a Personas Menores de Dieciocho Años (Art. 405)

Contra la persona acusada se ha presentado una acusación por violación al Artículo 405 de la Ley de Sustancias Controladas de Puerto Rico, que consiste en **[especifique el delito imputado según lo alegado en el pliego acusatorio]**.

La ley prohíbe que una persona mayor de 18 años **[especifique la conducta de acuerdo con la modalidad que aplique]**

> (1) distribuya, dispense, transfiera o administre una sustancia controlada a una persona menor de 18 años;
>
> (2) induzca, ayude o conspire con otros a inducir a una persona menor de 18 años al uso de una sustancia controlada,
>
> (3) distribuya, entregue o dispense parafernalia relacionada con sustancias controladas a una persona menor de 18 años.

La ley requiere que toda persona obtenga un certificado de registro expedido por el (la) Secretario(a) de Salud para fabricar, distribuir o dispensar sustancias controladas.

"Sustancia controlada" es toda droga, sustancia o precursor inmediato incluida en alguna de las cinco clasificaciones establecidas por ley y cuyo uso, fabricación, distribución o consumo es regulado por razones de salud física y mental. "Precursor inmediato" significa cualquier sustancia:

> (a) que se determine y designe por reglamento como el compuesto principal usado corrientemente o producido principalmente para usarse en la fabricación de una sustancia controlada, por el (la) Secretario(a) de Salud, Educación y Bienestar de Estados Unidos y el (la) Secretario(a) de Salud del Estado Libre Asociado de Puerto Rico;
>
> (b) que es un intermediario químico inmediato usado o propenso a ser usado en la fabricación de esa sustancia controlada, y
>
> (c) cuyo control se hace necesario para prevenir, reducir o limitar la fabricación de esa sustancia controlada].

**[El tribunal debe leer las definiciones adicionales que correspondan según lo alegado en el pliego acusatorio].**

["Dispensar" es prescribir o recetar, administrar o entregar una sustancia controlada al consumidor mediante una prescripción u orden. Incluye la preparación, rotulación y empaque de la sustancia controlada, para tal entrega. "Dispensador" es el (la) profesional que dispensa una sustancia controlada].

["Distribuir" significa entregar una sustancia controlada por un medio que no sea administrar o dispensar. "Distribuidor" es la persona que distribuye una sustancia controlada].

["Administrar" significa la aplicación directa de una sustancia controlada al cuerpo de un paciente o al de un ser humano objeto de experimentación por un(a) profesional, por su agente autorizado(a) o por el propio paciente o ser humano objeto de experimentación bajo la dirección y con la autorización del profesional, ya sea por medio de inyección, inhalación, ingestión o cualquier otro medio].

["Parafernalia o parafernalia relacionada con sustancias controladas" incluye cualquier utensilio, objeto, artículo, equipo, producto o material de cualquier clase usado, diseñado o destinado a la siembra, propagación, cultivo, cosecha, manufactura, fabricación, mezcla, combinación, conversión, producción, procesamiento, preparación, prueba, análisis, empaque, reempaque, almacenamiento, conservación, ocultación o en la inyección, ingestión, inhalación o introducción en el cuerpo humano por cualquier otro medio, de una sustancia controlada en violación de esta ley].

**[El tribunal debe impartir esta Instrucción acompañada de la Instrucción 4.5].**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por violar el Artículo 405 de la Ley de Sustancias Controladas.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por violar el Artículo 405 de la Ley de Sustancias Controladas.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 19.3 del Proyecto *de Libro de Instrucciones al Jurado* de 2008. Guarda relación con el Artículo 102 (*Definiciones*) y el Artículo 405 (*Distribución a personas menores de dieciocho años*) de la Ley de Sustancias Controladas de Puerto Rico, Ley Núm. 4 de 23 de junio de 1971, según enmendada, 24 LPRA secs. 2102 y 2405.

**COMENTARIO:**

Véase el Comentario de la Instrucción 17.1 relacionado con las Clasificaciones de la I a la V de sustancias controladas.

### 17.5    Tentativa y Conspiración (Art. 406)

**[El tribunal debe impartir esta Instrucción acompañada de la instrucción del delito imputado en el pliego acusatorio].**

Contra la persona acusada se ha presentado una acusación por violación al Artículo 406 de la Ley de Sustancias Controladas de Puerto Rico, que consiste en **[especifique el delito imputado en el pliego acusatorio]**.

La ley dispone que comete este delito cualquier persona que intente cometer o conspire para cometer cualquier delito definido en la Ley de Sustancias Controladas de Puerto Rico.

**[El tribunal debe leer las definiciones que correspondan según lo alegado en el pliego acusatorio:**

["Conspirar" significa ponerse de acuerdo con otra u otras personas para hacer algo].

[La ley dispone que existe tentativa cuando una persona actúa con el propósito de realizar el delito o con el conocimiento de que lo producirá, y lleva a cabo acciones inequívocas e inmediatamente dirigidas a cometer un delito, que no se completa por circunstancias ajenas a su voluntad]]**.**

**[El tribunal debe impartir también la Instrucción 4.5].**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por violar el Artículo 406 de la Ley de Sustancias Controladas.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por violar el Artículo 406 de la Ley de Sustancias Controladas.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 406 (*Tentativa y conspiración*) de la Ley de Sustancias Controladas de Puerto Rico, Ley Núm. 4 de 23 de junio de 1971, según

enmendada, 24 LPRA sec. 2406; el Artículo 35 (*Definición de la tentativa*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA sec. 5048). (Supl. 2018).

**COMENTARIO:**

En los supuestos de tentativa y para la elaboración de los conceptos "inequívocamente" e "inmediatamente", véanse las Instrucciones 4.13 (*Tentativa*) y 4.14 (*Desistimiento*).

Véase el Comentario de la Instrucción 17.1 relacionado con las Clasificaciones de la I a la V de sustancias controladas.

## 17.6   Empresa Criminal Continua (Art. 408)

Contra la persona acusada se ha presentado una acusación por violación al Artículo 408 de la Ley de Sustancias Controladas de Puerto Rico, que consiste en **[especifique el delito imputado en el pliego acusatorio]**.

La ley dispone que comete este delito la persona que se dedique a una empresa criminal continua.

Se entenderá por "empresa criminal continua"

(1) cualquier acto, amenaza u omisión que constituya delito grave o su tentativa,

(2) cometida por dos o más personas, sociedad, corporación, asociación, unión o grupo de personas asociadas, u otra entidad jurídica,

(3) en violación de cualquiera de las disposiciones de la Ley de Sustancias Controladas,

(4) cuando se hayan cometido las violaciones dentro de un período de 10 años y

(5) por lo menos una de estas violaciones se haya cometido luego de la vigencia de la Ley de Sustancias Controladas de 1971.

Para computar el período de 10 años, se excluirá cualquier período de reclusión que haya cumplido la persona acusada.

**[El tribunal debe impartir esta Instrucción acompañada de la Instrucción 4.5].**

La ley dispone que existe la tentativa cuando una persona actúa con el propósito de realizar el delito o con el conocimiento de que se producirá el delito y la persona lleva a cabo acciones inequívocas e inmediatamente dirigidas a cometer un delito que no se completa por circunstancias ajenas a su voluntad.

"Sustancia controlada" es toda droga, sustancia o precursor inmediato incluida en alguna de las cinco clasificaciones establecidas por ley y cuyo uso, fabricación, distribución

o consumo es regulado por razones de salud física y mental. "Precursor inmediato" significa cualquier sustancia:

(a) que se determine y designe por reglamento como el compuesto principal usado corrientemente o producido principalmente para usarse en la fabricación de una sustancia controlada, por el (la) Secretario(a) de Salud, Educación y Bienestar de Estados Unidos y el (la) Secretario(a) de Salud del Estado Libre Asociado de Puerto Rico;

(b) que es un intermediario químico inmediato usado o propenso a ser usado en la fabricación de esa sustancia controlada, y

(c) cuyo control se hace necesario para prevenir, reducir o limitar la fabricación de esa sustancia controlada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por violar al Artículo 408 de la Ley de Sustancias Controladas.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por violar al Artículo 408 de la Ley de Sustancias Controladas.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 102 (*Definiciones*) y el Artículo 408 (*Empresa criminal continua*) de la Ley de Sustancias Controladas de Puerto Rico, Ley Núm. 4 de 23 de junio de 1971, según enmendada, 24 LPRA secs. 2102 y 2408, y el Artículo 35 (*Definición de la tentativa*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA sec. 5048).

**COMENTARIO:**

Véase el Comentario de la Instrucción 17.1 relacionado con las Clasificaciones de la I a la V de sustancias controladas.

## 17.7   Funcionarios(as) o empleados(as) (Art. 409)

Contra la persona acusada se ha presentado una acusación por violación al Artículo 409 de la Ley de Sustancias Controladas de Puerto Rico, que consiste en **[especifique el delito imputado en el pliego acusatorio]**.

La ley dispone que comete este delito cualquier funcionario(a) o empleado(a) que se dedique a la administración de la Ley de Sustancias Controladas de Puerto Rico, que mientras ejerce su cargo se ocupa directa o indirectamente, en cualquier industria, a fabricar, distribuir o dispensar cualquier sustancia controlada y **[*especifique solamente la(s) modalidad(es) que aplique(n) según lo alegado en el pliego acusatorio*]**

(1) que, a sabiendas, realice cualquier acto de extorsión o presión bajo el pretexto de ordenarlo la ley;

(2) que, a sabiendas, exija otras o mayores sumas que las autorizadas por la ley o que reciba por el desempeño de un deber cualquier honorario, derecho, compensación o gratificación no autorizada por la ley;

(3) que falte al desempeño de cualquiera de los deberes que le impone la ley;

(4) que facilite una oportunidad para que cualquier otra persona pueda infringir la ley;

(5) que ejecute o deje de ejecutar cualquier acto con la intención de proporcionar a otra persona la oportunidad para infringir la ley;

(6) que por negligencia o intencionalmente permita a cualquier persona violar la ley;

(7) que, estando enterado(a) o teniendo la noticia de la violación de cualquier disposición de esta ley, omita informarlo al (a la) Secretario(a) de Salud o al Superintendente de la Policía;

(8) que exija, acepte o intente cobrar directa o indirectamente como pago regalo o, en cualquier otra forma, una suma de dinero o cualquier otra cosa de valor por el arreglo, la transacción o solución de cualquier denuncia o queja de haberse violado o pretendido violar esta ley,

(9) que divulgue o dé a conocer, en cualquier forma no autorizada por esta ley, la información contenida en las declaraciones, libros oficiales, récords o en otros documentos.

**[El tribunal debe impartir esta Instrucción acompañada de la Instrucción 4.5 o de la Instrucción 4.6. Cuando se alegue la modalidad (a) o (b), el tribunal debe leer, además, el párrafo siguiente:**

"A sabiendas" es sinónimo de "con conocimiento". Una persona actúa "con conocimiento" cuando es consciente de que la producción del resultado es una consecuencia prácticamente segura de su conducta o cuando es consciente de que la existencia de la circunstancia es prácticamente segura**]**.

"Sustancia controlada" es toda droga, sustancia o precursor inmediato incluida en alguna de las cinco clasificaciones establecidas por ley y cuyo uso, fabricación, distribución o consumo es regulado por razones de salud física y mental. "Precursor inmediato" significa cualquier sustancia:

(a) que se determine y designe por reglamento como el compuesto principal usado corrientemente o producido principalmente para usarse en la fabricación de una sustancia controlada, por el (la) Secretario(a) de Salud,

Educación y Bienestar de Estados Unidos y el (la) Secretario(a) de Salud del Estado Libre Asociado de Puerto Rico;

(b) que es un intermediario químico inmediato usado o propenso a ser usado en la fabricación de esa sustancia controlada, y

(c) cuyo control se hace necesario para prevenir, reducir o limitar la fabricación de esa sustancia controlada].

"Fabricación" significa la producción, importación, preparación, reproducción, confección o elaboración, en forma directa o indirecta, de una droga u otra sustancia controlada extrayéndola de sustancias de origen natural o independientemente por medio de síntesis química o por la combinación de extracción y síntesis química. Incluye también cualquier empaque o reempaque de la sustancia o la rotulación de su envase. No incluirá la preparación, confección, empaque o rotulación que haga una persona profesional en el curso de su práctica.

"Distribuir" significa entregar una sustancia controlada por un medio que no sea administrar o dispensar. "Distribuidor" es la persona que distribuye una sustancia controlada.

["Dispensar" es prescribir o recetar, administrar o entregar una sustancia controlada al consumidor mediante una prescripción u orden. Incluye la preparación, rotulación y empaque de la sustancia controlada, para tal entrega. "Dispensador" es el (la) profesional que dispensa una sustancia controlada].

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por violar al Artículo 409 de la Ley de Sustancias Controladas.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por violar al Artículo 409 de la Ley de Sustancias Controladas.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 102 (*Definiciones*) y el Artículo 409 (*Funcionarios o empleados*) de la Ley de Sustancias Controladas de Puerto Rico, Ley Núm. 4 de 23 de junio de 1971, según enmendada, 24 LPRA secs. 2102 y 2409, y el Artículo 14 (*Definiciones*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA sec. 5014).

**COMENTARIO:**

Véase el Comentario de la Instrucción 17.1 relacionado con las Clasificaciones de la I a la V de sustancias controladas.

**17.8   Engaño en las Transacciones de Sustancias Controladas; Transacciones de Sustancias Controladas Adulteradas (Art. 410)**

Contra la persona acusada se ha presentado una acusación por violación al Artículo 410 de la Ley de Sustancias Controladas de Puerto Rico, en la que se imputa [engaño en transacciones de sustancias controladas] [transacciones de sustancias controladas adulteradas].

**[El tribunal debe impartir la Instrucción de acuerdo con la modalidad que aplique:**

**A. Primera modalidad**

La ley dispone que comete este delito la persona que acuerde, consienta a, negocie o en cualquier forma ofrezca para la venta, entrega, aplicación o donación cualesquiera de las sustancias controladas incluidas en las Clasificaciones I a V, y luego venda, done, entregue, traspase o administre engañosamente cualquier otra sustancia, material o líquido haciendo creer que se trata de la sustancia objeto de la transacción.

Los elementos de este delito son los siguientes:

(1) Acordar, consentir a, negociar o en cualquier forma ofrecer

(2) para la venta, entrega, aplicación o donación

(3) la(s) sustancia(s) controlada(s) **[indique la(s) sustancia(s) controlada(s) conforme a las Clasificaciones I a V del Artículo 202 de la Ley de Sustancias Controladas según lo alegado en el pliego acusatorio]**, y

(4) luego venda, done, entregue, traspase o administre engañosamente cualquier otra sustancia, material o líquido haciendo creer que se trata de la sustancia objeto de la transacción.

Este artículo aplica a toda persona, esté o no autorizada a realizar la transacción.

**B. Segunda modalidad**

La ley dispone que comete este delito la persona que en el tráfico lícito, por estar autorizada a realizar la transacción, acuerde, consienta a, negocie o en cualquier forma ofrezca para la venta, entrega, aplicación o donación, sustancias controladas de las incluidas en las Clasificaciones I a V, adulteradas.

Los elementos de este delito son los siguientes:

> (1) Estar autorizado a realizar la transacción en el tráfico lícito,
>
> (2) acordar, consentir a, negociar o en cualquier forma ofrecer
>
> (3) sustancia(s) controlada(s) **[indique la(s) sustancia(s) controlada(s) conforme a las Clasificaciones I a V del Artículo 202 de la Ley de Sustancias Controladas según lo alegado en el pliego acusatorio]**
>
> (4) adulterada(s),
>
> (5) para la venta, entrega, aplicación o donación]**.

**[El tribunal debe impartir esta Instrucción acompañada de la Instrucción 4.5 para ambas modalidades].**

"Sustancia controlada" es toda droga, sustancia o precursor inmediato incluida en alguna de las cinco clasificaciones establecidas por ley y cuyo uso, fabricación, distribución o consumo es regulado por razones de salud física y mental. "Precursor inmediato" significa cualquier sustancia:

> (a) que se determine y designe por reglamento como el compuesto principal usado corrientemente o producido principalmente para usarse en la fabricación de una sustancia controlada, por el (la) Secretario(a) de Salud, Educación y Bienestar de Estados Unidos y el (la) Secretario(a) de Salud del Estado Libre Asociado de Puerto Rico;
>
> (b) que es un intermediario químico inmediato usado o propenso a ser usado en la fabricación de esa sustancia controlada, y
>
> (c) cuyo control se hace necesario para prevenir, reducir o limitar la fabricación de esa sustancia controlada].

["Una sustancia adulterada" es una cuya potencia, calidad o pureza original es afectada o alterada por habérsele añadido cualquier sustancia o agente químico, físico o biológico, sea o no una sustancia o agente ajeno a la fórmula original].

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por violar al Artículo 410 de la Ley de Sustancias Controladas de Puerto Rico.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por violar al Artículo 410 de la Ley de Sustancias Controladas de Puerto Rico.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 102 (*Definiciones*) y el Artículo 410 (*Engaño en transacciones de sustancias controladas, transacciones de sustancias controladas adulteradas*) de la Ley de Sustancias Controladas de Puerto Rico, Ley Núm. 4 de 23 de junio de 1971, según enmendada, 24 LPRA secs. 2102 y 2410.

**COMENTARIO:**

Véase el Comentario de la Instrucción 17.1 relacionado con las Clasificaciones de la I a la V de sustancias controladas.


## 17.9 Empleo de Menores (Art. 411)

Contra la persona acusada se ha presentado una acusación por violación al Artículo 411 de la Ley de Sustancias Controladas de Puerto Rico, que consiste en **[especifique el delito imputado en el pliego acusatorio]**.

La ley dispone que comete este delito cualquier persona que utilice los servicios de una persona menor de 18 años para transportar, fabricar, distribuir o dispensar cualquiera de las sustancias controladas comprendidas en la Ley de Sustancias Controladas de Puerto Rico para propósitos ilegales.

Los elementos de este delito son los siguientes:

> (1) Utilizar a una persona menor de 18 años
> (2) para [trasportar] [fabricar] [distribuir] [dispensar]
> (3) cualquiera de las sustancias controladas comprendidas en la Ley de Sustancias Controladas
> (4) con propósitos ilegales.

**[El tribunal debe impartir esta Instrucción acompañada de la Instrucción 4.5].**

"Sustancia controlada" es toda droga, sustancia o precursor inmediato incluida en alguna de las cinco clasificaciones establecidas por ley y cuyo uso, fabricación, distribución o consumo es regulado por razones de salud física y mental. "Precursor inmediato" significa cualquier sustancia:

> (a) que se determine y designe por reglamento como el compuesto principal usado corrientemente o producido principalmente para usarse en la fabricación de una sustancia controlada, por el (la) Secretario(a) de Salud, Educación y Bienestar de Estados Unidos y el (la) Secretario(a) de Salud del Estado Libre Asociado de Puerto Rico;
> (b) que es un intermediario químico inmediato usado o propenso a ser usado en la fabricación de esa sustancia controlada, y

(c) cuyo control se hace necesario para prevenir, reducir o limitar la fabricación de esa sustancia controlada.

"Fabricación" significa la producción, importación, preparación, reproducción, confección o elaboración, en forma directa o indirecta, de una droga u otra sustancia controlada, extrayéndola de sustancias de origen natural o independientemente por medio de síntesis química o por la combinación de extracción y síntesis química. Incluye también cualquier empaque o reempaque de la sustancia o la rotulación de su envase. No incluirá la preparación, confección, empaque o rotulación que haga una persona profesional en el curso de su práctica.

"Dispensar" es prescribir o recetar, administrar o entregar una sustancia controlada al consumidor mediante una prescripción u orden. Incluye la preparación, rotulación y empaque de la sustancia controlada, para tal entrega. "Dispensador" es el (la) profesional que dispensa una sustancia controlada.

"Distribuir" significa entregar una sustancia controlada por un medio que no sea administrar o dispensar. "Distribuidor" es la persona que distribuye una sustancia controlada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por violar al Artículo 411 de la Ley de Sustancias Controladas de Puerto Rico.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por violar el Artículo 411 de la Ley de Sustancias Controladas de Puerto Rico.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 102 (*Definiciones*) y el Artículo 411 (*Empleo de menores*) de la Ley de Sustancias Controladas de Puerto Rico, Ley Núm. 4 de 23 de junio de 1971, según enmendada, 24 LPRA secs. 2102 y 2411.

**COMENTARIO:**

Véase el Comentario de la Instrucción 17.1 relacionado con las Clasificaciones de la I a la V de sustancias controladas.

**17.10 Introducción de Drogas en Escuelas o en Instituciones Recreativas (Art. 411A)**

Contra la persona acusada se ha presentado una acusación por violación al Artículo 411A de la Ley de Sustancias Controladas de Puerto Rico, que consiste en **[especifique el delito imputado en el pliego acusatorio]**.

La ley dispone que comete este delito la persona que, a sabiendas, intencionalmente y en violación a las disposiciones de la Ley de Sustancias Controladas, introduzca, distribuya, dispense, administre, posea o transporte para fines de distribución, venda, regale, entregue en cualquier forma o, simplemente, posea cualquier sustancia controlada de las incluidas en las Clasificaciones I a V de esta ley en una escuela pública o privada, instalación recreativa pública o privada, o en los alrededores de cualquiera de estas.

**[El tribunal debe impartir la Instrucción de acuerdo con la modalidad que aplique:**

A. **Primera modalidad**

Los elementos de este delito son los siguientes:

(1) A sabiendas e intencionalmente,
(2) [introducir] [distribuir] [dispensar] [administrar] [poseer o transportar con el fin de distribuir] [vender, regalar o entregar de cualquier forma];
(3) la(s) sustancia(s) controlada(s) **[indique la(s) sustancia(s) controlada(s) conforme a las Clasificaciones I a V del Artículo 202 de la Ley de Sustancias Controladas según lo alegado en el pliego acusatorio]**;
(4) en [una escuela pública o privada] [instalación recreativa pública o privada] [en los alrededores de una escuela pública o privada] [en los alrededores de una instalación recreativa pública o privada].

B. **Segunda modalidad**

Los elementos de este delito son los siguientes:

(1) A sabiendas e intencionalmente,
(2) [distribuir] [dispensar] [administrar] [poseer o transportar con el fin de distribuir] [vender, regalar o entregar de cualquier forma];
(3) la(s) sustancia(s) controlada(s) **[indique la(s) sustancia(s) controlada(s) conforme a las Clasificaciones I a V del Artículo 202 de la Ley de Sustancias Controladas según lo alegado en el pliego acusatorio]**;
(4) en o en los alrededores de un centro, institución o facilidad pública o privada dedicada a la prevención, diagnóstico, tratamiento y rehabilitación

de las personas adictas a drogas narcóticas o de las dependientes a drogas deprimentes o estimulantes.

## C. Tercera modalidad

Los elementos de este delito son los siguientes:

(1) A sabiendas e intencionalmente,

(2) poseer cualquier sustancia controlada de las incluidas en las Clasificaciones I a V de la ley de sustancias controladas

(3) en [una escuela pública o privada] [instalación recreativa pública o privada] [en los alrededores de una escuela pública o privada] [en los alrededores de una instalación recreativa pública o privada]**].**

"Intencionalmente" es equivalente a actuar "a propósito", "con conocimiento" o "temerariamente". "A sabiendas" es sinónimo de "con conocimiento".

Una persona actúa "a propósito" cuando su objetivo consciente es la producción de un resultado o cuando cree que una circunstancia existe. La persona actúa "con conocimiento" cuando es consciente de que la producción del resultado o la existencia de la circunstancia prohibida por ley es prácticamente segura. La persona actúa "temerariamente" cuando es consciente de que su conducta genera un riesgo sustancial e injustificado de que se produzca el resultado o la circunstancia prohibida por ley, y a pesar de conocer el riesgo, la persona continúa con su acción u omisión.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó a propósito, con conocimiento o temerariamente. Para esto, se permite hacer inferencias y deducciones de las circunstancias relacionadas con los hechos, la capacidad mental, las manifestaciones o la conducta de la persona.

"Sustancia controlada" es toda droga, sustancia o precursor inmediato incluida en alguna de las cinco clasificaciones establecidas por ley y cuyo uso, fabricación, distribución o consumo es regulado por razones de salud física y mental. "Precursor inmediato" significa cualquier sustancia:

(a) que se determine y designe por reglamento como el compuesto principal usado corrientemente o producido principalmente para usarse en la fabricación de una sustancia controlada, por el (la) Secretario(a) de Salud, Educación y Bienestar de Estados Unidos y el (la) Secretario(a) de Salud del Estado Libre Asociado de Puerto Rico;

(b) que es un intermediario químico inmediato usado o propenso a ser usado en la fabricación de esa sustancia controlada, y

(c) cuyo control se hace necesario para prevenir, reducir o limitar la fabricación de esa sustancia controlada.

"Droga narcótica" es cualquiera de las siguientes sustancias, ya sean producidas directa o indirectamente extrayéndolas de sustancias de origen vegetal, o por medio de

síntesis química o combinación de ambas **[refiérase solamente a la(s) alternativa(s) que aplique(n)]**:

(a) Opio, hojas de coca y opiatos. "Opiato" significa cualquier sustancia capaz de crear adicción en forma similar a la morfina o que sea susceptible de ser convertida en una droga que posea la capacidad para crear o mantener la adicción.

(b) Cualquier compuesto, producto, sal, derivado, preparación de opio, hojas de coca y opiatos, por ejemplo, la cocaína y la heroína.

(c) Cualquier sustancia y cualquier compuesto, producto, sal, derivado o preparación de esa sustancia que sea químicamente idéntica a cualquiera de las sustancias mencionadas en los apartados (a) y (b), con la excepción de que el concepto "droga narcótica" no incluirá las hojas de coca decocainizadas ni los extractos de hojas de coca si estos no contienen cocaína o ecgonina].

**[El tribunal debe leer las definiciones adicionales que correspondan según lo alegado en el pliego acusatorio].**

["Marihuana" es todas las partes de la planta *Cannabis sativa L.*, esté en crecimiento o no, sus semillas, la resina extraída de cualquier parte de dicha planta y todo compuesto, producto, sal, derivado, mezcla o preparación de la planta, sus semillas o resina. No incluye los tallos maduros de dicha planta, las fibras obtenidas de dichos tallos, el aceite o la pasta hechos de las semillas de dicha planta ni cualquier otro compuesto, producto, sal, derivado, mezcla o preparación de tales tallos maduros, exceptuando la resina extraída de ellos o de su fibra, aceite o pasta, ni la semilla esterilizada de dicha planta que sea incapaz de germinar].

["Administrar" es aplicar directamente una sustancia controlada al cuerpo de un ser humano, ya sea por medio de inyección, por inhalación, por ingestión o por cualquier otro medio].

["Dispensar" es prescribir o recetar, administrar o entregar una sustancia controlada al consumidor mediante una prescripción u orden. Incluye la preparación, rotulación y empaque de la sustancia controlada, para tal entrega. "Dispensador" es el (la) profesional que dispensa una sustancia controlada].

["Distribuir" significa entregar una sustancia controlada por un medio que no sea administrar o dispensar. "Distribuidor" es la persona que distribuye una sustancia controlada].

["Posesión" constituye delito solamente cuando la persona adquirió o recibió voluntariamente la sustancia controlada, o conocía que la cosa estaba en su posesión y tuvo tiempo suficiente para terminar la posesión. Para determinar la intención de posesión de sustancias controladas, por ser un estado mental, deberán analizar los hechos y las circunstancias del caso].

["Escuela" se entenderá como el edificio principal y toda edificación, anexo, patio, jardín y área de estacionamiento de ella. Se consideran "escuelas" los centros prescolares, las escuelas elementales, las escuelas intermedias, las escuelas secundarias y las escuelas

superiores, así como las escuelas vocacionales o de oficios, las escuelas de comercio, las escuelas especializadas, las universidades, los colegios para estudios universitarios, las escuelas para personas con discapacidades físicas y mentales o con limitaciones de habla o de lectura y cualesquiera otras de naturaleza análoga a las mencionadas].

["Instalación recreativa pública o privada" es un parque, cancha, piscina, salón de máquinas de video o "pinball", estadios, coliseos, áreas o lugares designados para la celebración de actividades de juego, entretenimiento, diversión, recreación pasiva, competencias o eventos deportivos profesionales o para aficionados].

[Se entenderá por "alrededores de una escuela, instalación recreativa, centro, institución o facilidad" un área cubierta de hasta 100 metros radiales que se contará desde los límites de estos, indicados por una cerca o cualquier otro signo de demarcación].

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por violar al Artículo 411A de la Ley de Sustancias Controladas.

**[El tribunal debe impartir esta Instrucción cuando se alegue en el pliego acusatorio la modalidad de poseer sustancias controladas en una escuela o en una instalación recreativa, pública o privada, o en sus alrededores:**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable que la persona acusada cometió el delito pero no que fue en [una escuela pública o privada] [instalación recreativa pública o privada] [en los alrededores de una escuela pública o privada] [en los alrededores de una instalación recreativa pública o privada], entonces deberán rendir un veredicto de culpable por el delito de posesión de sustancias controladas sin esa circunstancia**].**

**[El tribunal debe impartir esta Instrucción cuando se alegue en el pliego acusatorio la modalidad de poseer sustancias controladas en un centro, institución o facilidad pública o privada, o en sus alrededores:**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable que la persona acusada cometió el delito, pero no que fue en un centro, institución o facilidad pública o privada, o en sus alrededores, dedicada a la prevención, diagnóstico, tratamiento y rehabilitación de las personas adictas a drogas narcóticas o de las dependientes a drogas deprimentes o estimulantes, entonces deberán rendir un veredicto de culpable por el delito de posesión de sustancias controladas sin esa circunstancia**].**

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada

cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por violar al Artículo 411A de la Ley de Sustancias Controladas.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 19.4 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con el Artículo 102 (*Definiciones*) y el Artículo 411A (*Introducción de drogas en escuelas o instituciones recreativas*) de la Ley de Sustancias Controladas de Puerto Rico, Ley Núm. 4 de 23 de junio de 1971, según enmendada, 24 LPRA secs. 2102 y 2411a; el Artículo 14 (*Definiciones*), el Artículo 18 (*Formas de comisión*), el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*) y el Artículo 22 (*Elementos subjetivos del delito*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5014, 5031, 5034 y 5035). Véanse *Pueblo v. Torres Serrano*, 175 DPR 447 (2009); *Pueblo v. Martínez Yanzanis*, 142 DPR 871 (1997).

**COMENTARIO:**

Se proveen veredictos intermedios para las modalidades de posesión de sustancias controladas como delito menor incluido. Este modelo de veredicto sirve de base para la configuración de otros veredictos intermedios a tenor de la modalidad imputada, cuando la prueba lo justifique.

Véase el Comentario de la Instrucción 17.1 relacionado con las Clasificaciones de la I a la V de sustancias controladas.

## 17.11 Parafernalia Relacionada con Sustancias Controladas (Art. 412)

Contra la persona acusada se ha presentado una acusación por el delito de Posesión de Parafernalia Relacionada con Sustancias Controladas, delito que consiste en **[especifique el delito imputado en el pliego acusatorio]**.

La ley dispone que comete este delito cualquier persona que, a sabiendas y con intención criminal, fabrique, distribuya, venda, dispense, entregue, transporte, oculte o posea con la intención de distribuir, vender, disponer, entregar, transportar u ocultar parafernalia relacionada con sustancias controladas, para sembrar, propagar, cultivar, cosechar, fabricar, componer, convertir, producir, procesar, preparar, probar, analizar, empacar, rempacar, renvasar, almacenar, guardar, contener, ocultar, inyectar, ingerir, inhalar o introducir en el cuerpo humano por cualquier otro medio una sustancia controlada en violación de esta ley.

Los elementos de este delito son los siguientes:

(1) A sabiendas y con intención criminal,
(2) [fabricar] [distribuir] [vender] [dispensar] [entregar] [transportar] [ocultar] [poseer con la intención de distribuir] [poseer con la intención de vender] [poseer con la intención de disponer] [poseer con la intención de

entregar] [poseer con la intención de transportar] [poseer con la intención de ocultar]

(3) parafernalia relacionada con sustancias controladas;

(4) para [sembrar] [propagar] [cultivar] [cosechar] [fabricar] [componer] [convertir] [producir] [procesar] [preparar] [probar] [analizar] [empacar] [rempacar] [renvasar] [almacenar] [guardar] [contener] [ocultar] [inyectar] [ingerir] [inhalar] [introducir en el cuerpo humano por cualquier otro medio] una sustancia controlada.

"Intencionalmente" es equivalente a actuar "a propósito", "con conocimiento" o "temerariamente". "A sabiendas" es sinónimo de "con conocimiento".

Una persona actúa "a propósito" cuando su objetivo consciente es la producción de un resultado o cuando cree que una circunstancia existe. La persona actúa "con conocimiento" cuando es consciente de que la producción del resultado o la existencia de la circunstancia prohibida por ley es prácticamente segura. La persona actúa "temerariamente" cuando es consciente de que su conducta genera un riesgo sustancial e injustificado de que se produzca el resultado o la circunstancia prohibida por ley, y a pesar de conocer el riesgo, la persona continúa con su acción u omisión.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó a propósito, con conocimiento o temerariamente. Para esto, se permite hacer inferencias y deducciones de las circunstancias relacionadas con los hechos, la capacidad mental, las manifestaciones o la conducta de la persona.

"Sustancia controlada" es toda droga, sustancia o precursor inmediato incluida en alguna de las cinco clasificaciones establecidas por ley y cuyo uso, fabricación, distribución o consumo es regulado por razones de salud física y mental. "Precursor inmediato" significa cualquier sustancia:

(a) que se determine y designe por reglamento como el compuesto principal usado corrientemente o producido principalmente para usarse en la fabricación de una sustancia controlada, por el (la) Secretario(a) de Salud, Educación y Bienestar de Estados Unidos y el (la) Secretario(a) de Salud del Estado Libre Asociado de Puerto Rico;

(b) que es un intermediario químico inmediato usado o propenso a ser usado en la fabricación de esa sustancia controlada, y

(c) cuyo control se hace necesario para prevenir, reducir o limitar la fabricación de esa sustancia controlada.

"Parafernalia" relacionada con sustancias controladas comprende cualquier utensilio, objeto, artículo, equipo, producto o material de cualquier clase que se usa, diseña o destina a la siembra, propagación, cultivo, cosecha, manufactura, fabricación, mezcla o combinación, conversión, producción, procesamiento, preparación, prueba, análisis, empaque, rempaque, almacenamiento, conservación u ocultación, o en la ingestión, inhalación o introducción en el cuerpo humano por cualquier otro medio de una sustancia controlada en violación de esta ley.

**[El tribunal debe leer las definiciones adicionales que correspondan según lo alegado en el pliego acusatorio].**

["Fabricación" significa la producción, importación, preparación, reproducción, confección o elaboración, en forma directa o indirecta, de una droga u otra sustancia controlada, extrayéndola de sustancias de origen natural o independientemente por medio de síntesis química o por la combinación de extracción y síntesis química. Incluye también cualquier empaque o reempaque de la sustancia o la rotulación de su envase. No incluirá la preparación, confección, empaque o rotulación que haga una persona profesional en el curso de su práctica].

["Administrar" significa la aplicación directa de una sustancia controlada al cuerpo de un ser humano, ya sea por medio de inyección, inhalación, ingestión u cualquier otro medio].

["Dispensar" es prescribir o recetar, administrar o entregar una sustancia controlada al consumidor mediante una prescripción u orden. Incluye la preparación, rotulación y empaque de la sustancia controlada, para tal entrega. "Dispensador" es el (la) profesional que dispensa una sustancia controlada].

["Distribuir" significa entregar una sustancia controlada por un medio que no sea administrar o dispensar. "Distribuidor" es la persona que distribuye una sustancia controlada].

["Entregar" significa cualquier acto directo, indirecto o intentado que constituya o implique la transferencia de una sustancia controlada exista o no relación de agencia].

["Producción" se refiere a la fabricación, la siembra, el cultivo, la cosecha o la recogida de alguna sustancia controlada].

El hecho de que declaren no culpable a una persona de una violación de otra de las disposiciones de la Ley de Sustancias Controladas no impide un veredicto por violación a esta sección si se determina que el utensilio, objeto o artículo es parafernalia relacionada con las sustancias controladas, según definido.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por violar el Art. 412 de la Ley de Sustancias Controladas.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por violar el Art. 412 de la Ley de Sustancias Controladas.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 19.5 del Proyecto de *Libro de Instrucciones al Jurado* de 2008. Guarda relación con el Artículo 102 (*Definiciones*) y el Artículo 412 (*Parafernalia relacionada con sustancias controladas; definición; criterios; penas*) de la Ley de Sustancias Controladas de Puerto Rico, Ley Núm. 4 de 23 de junio de 1971, según enmendada, 24 LPRA secs. 2102 y 2411b; el Artículo 14 (*Definiciones*), el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*) y el Artículo 22 (*Elementos subjetivos del delito*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5014, 5034 y 5035).

**COMENTARIO:**

Según el Artículo 412 de la Ley de Sustancias Controladas de Puerto Rico, vigente a febrero de 2021, el concepto de parafernalia incluye, pero no está limitado a, lo siguiente:

(1) El equipo o conjunto de artículos, objetos o herramientas usados, destinados o diseñados para utilizarse en la siembra, propagación, cultivo y cosecha de cualquier especie de planta que sea una sustancia controlada o de la cual se obtiene una sustancia controlada. El equipo o conjunto de objetos o herramientas o artículos usados, destinados o diseñados para utilizarse en el cultivo en invernaderos de marihuana u otra planta clasificada como sustancia controlada, como son los abanicos, abanicos de extractores, convertidores de voltaje, lámparas de hidrofón, cronógrafo, termómetros, interruptores, bombillas de alto voltaje, bombillas pequeñas hidráulicas, rotores, rocetas, tanques de ácido carbónico, platos de aluminio para lámparas, rollo de tela plástica parecido a las plantas, lámparas de tubos fosforescentes, cables eléctricos, brazos de lámparas giratorias, entre otros.

(2) El equipo o conjunto de artículos, objetos o herramientas usados, destinados o diseñados para utilizarse en la manufactura, composición, conversión, producción, procesamiento o preparación de sustancias controladas.

(3) Artefactos de isomerización usados, destinados o diseñados para utilizarse en la incrementación de la potencia de cualquier especie de planta que sea una sustancia controlada.

(4) Equipos de prueba, químicos o alcohol usados, destinados o diseñados para la identificación, el análisis o medición de la potencia, efectividad, pureza o calidad de sustancias controladas.

(5) Escalas y balanzas usadas, destinadas o diseñadas para utilizarse en el pesaje o medida de sustancias controladas.

(6) Diluentes y adulterantes como el clorhidrato de quinina manitol, "manito", dextrosa y lactosa, leche en polvo, *bolivian rock*, bicarbonato de soda, lidocaína, benzocaína, laxante para bebé, formalina, tiza, jabón en polvo, pastillas molidas, veneno para ratas, harina de trigo, amonia para cocinar *crack*, entre otros, usados, destinados o diseñados para utilizarse en la dilución o en el corte de sustancias controladas.

(7) Alijadoras, cribas o cernedores usados, destinados o diseñados para utilizarse en la remoción de ramas y semillas o para limpiar o refinar cualquier sustancia controlada.

(8) Mezcladoras, tazas, escudillas, recipientes, procesadores de alimentos, molinillos, cucharas y artefactos para mezclar usados, destinados o diseñados para utilizarse en la combinación, composición o mezcla de sustancias controladas.

(9) Cápsulas, balones o redomas, sobres, bolsas plásticas o de papel celofán y otros envases usados, destinados o diseñados para utilizarse en el empaque de pequeñas cantidades de sustancias controladas.

(10) Envases y otros objetos usados, destinados o diseñados para utilizarse en el almacenamiento u ocultación de sustancias controladas.

(11) Goteros, cocedores (*cookers*) o artefactos donde se cocina la droga para luego ser inyectada, como lo son las chapas o tapas de botella, fondos de botellas, cucharas y otros objetos similares.

(12) Objetos usados, destinados o diseñados para ser utilizados en la ingestión, inhalación, o la introducción en el cuerpo humano por cualquier otro medio de marihuana, cocaína, *hashish* o aceite de *hashish*, como son:

(A) Pipas de cualquier material, con o sin filtro o criba, filtros permanentes, aditamentos, cabezas o recipientes, terminales para *hashish* o tazas de metal agujereado, pipas de fabricación casera o cachimba, envolturas de hipodérmicas, baterías.

(B) Pipas de agua, de cámara, eléctricas, de carburación, activadas por aire, de hielo o enfriadores.

(C) Tubos y aparatos de carburación.

(D) Máscaras de fumar y carburación.

(E) Objetos usados para sostener material para quemar como cigarrillos o "motos" de marihuana que se han reducido tanto en tamaño que no se pueden sostener en la mano, conocidos como "mata changas" (*roach clip*).

(F) Cucharas de cocaína en miniatura y frascos, ampolletas o redomas de cocaína.

(G) *Chillum*, artefacto de origen hindú, generalmente de barro cocido, utilizado para fumar marihuana o *hashish*.

(H) "Bongas" (*bongs*).

(I) Papel para envolver picadura, conocido como "papel para enrolar" o papel conocido como "bambú". 24 LPRA sec. 2411b(a).

Aunque el concepto "parafernalia" es abarcador, obsérvese que la Ley 73-2007 enmendó el inciso (a)(11) del Artículo 412 de la Ley de Sustancias Controladas de Puerto Rico con el fin específico de *excluir las jeringuillas hipodérmicas y las agujas* de lo que constituye parafernalia. A tenor de la Exposición de Motivos, la medida pretende combatir el aumento de enfermedades de transmisión sexual entre usuarios de drogas por el intercambio de jeringuillas.

Además, el Artículo 412(b) de la ley establece unos criterios para la determinación de lo que podría ser considerado "parafernalia". Se cita el texto de la ley vigente a febrero de 2021:

(b) *Criterios.*—En la determinación de lo que constituye un artículo, objeto o utensilio relacionado con la parafernalia de sustancias controladas, un tribunal, o cualquier otra autoridad competente, podrá considerar, en adición a otros factores relevantes, los siguientes:

(1) Declaraciones del dueño o de la persona en control del objeto relacionadas con su uso.

(2) Convicciones anteriores, si alguna, del dueño o de la persona que tiene el control del objeto, bajo cualquier ley federal o estatal relacionada con sustancias controladas.

(3) La proximidad o relación del objeto, en tiempo y espacio, con una violación de est[a ley].

(4) La proximidad del objeto a sustancias controladas.

(5) La existencia de algún residuo de sustancias controladas en el objeto.

(6) Evidencia directa o circunstancial del propósito del dueño o de la persona en control del objeto, de entregarlo a personas que sabe[n] o podrían razonablemente saber que intentan usarlo para facilitar una violación de est[a ley].

(7) Instrucciones, orales o escritas, relativas al uso del objeto en cuestión.

(8) Materiales descriptivos que acompañan al objeto en cuestión, que expliquen o demuestren su uso.

(9) Publicidad nacional o local relativa al uso del objeto en cuestión.

(10) La manera en que el objeto es exhibido para la venta.

(11) Si el dueño, o la persona en control del objeto es un suplidor legítimo en la comunidad de mercancía igual o similar, como sería, pero sin limitarse a, un distribuidor, representante, agente o comerciante *bona fide* de productos de tabaco.

(12) La existencia y posibilidad de usos lícitos para el objeto en la comunidad.

(13) Testimonio pericial relativo al uso de los objetos en cuestión.

El hecho de que se declare no culpable al dueño o la persona en control del objeto, por una violación [de] las disposiciones de est[a ley], no impedirá un fallo por violación [a este artículo] cuando se determine que el utensilio, objeto o artículo es "parafernalia relacionada con sustancias controladas" según se define el término en este inciso. (Corchetes suplidos y en el original). 24 LPRA sec. 2411b(b).

CAPÍTULO 18
**LEY PARA LA PROTECCIÓN DE LA PROPIEDAD VEHICULAR**

## 18.1 Comercio Ilegal de Vehículos y Piezas (Art. 15)

Contra la persona acusada se ha presentado una acusación por violación al Artículo 15 de la Ley para la Protección de la Propiedad Vehicular, que prohíbe el Comercio Ilegal de Vehículos y Piezas.

La ley dispone que comete este delito de Comercio Ilegal de Vehículos y Piezas la persona que posea, compre, reciba, almacene, oculte, transporte, retenga o disponga mediante venta, trueque u otro modo algún vehículo de motor o pieza de un vehículo de motor a sabiendas de que fue obtenida mediante apropiación ilegal, robo, extorsión o cualquier otra forma ilícita.

Los elementos de este delito son los siguientes:

(1) [Poseer] [Comprar] [Recibir] [Almacenar] [Ocultar] [Transportar] [Retener] [Disponer mediante venta, trueque o de otro modo]

(2) [algún vehículo de motor] [alguna pieza de un vehículo de motor]

(3) a sabiendas de que [el vehículo de motor] [la pieza de un vehículo de motor] se obtuvo mediante [apropiación ilegal] [robo] [extorsión] [cualquier forma ilícita].

"A sabiendas" es sinónimo de "con conocimiento". Una persona actúa "con conocimiento" cuando es consciente de que la producción del resultado es una consecuencia prácticamente segura de su conducta o cuando es consciente de que la existencia de la circunstancia es prácticamente segura. Actuar "a sabiendas" no requiere el conocimiento de la ilegalidad del acto u omisión.

Ustedes podrán inferir que la persona acusada actuó a sabiendas o tenía conocimiento personal de que el vehículo o la pieza había sido adquirida de forma ilícita cuando ocurriera una o más de las circunstancias siguientes **[refiérase solamente a la(s) circunstancia(s) que aplique(n) según lo alegado en el pliego acusatorio]**:

(a) Cuando el precio pagado por el automóvil o la pieza sea tan irrisorio o insignificante, o las condiciones de pago sean tan ventajosas o en circunstancias tales que la persona que lo adquirió debió concluir razonablemente que se trataba de un bien obtenido de forma ilícita.

(b) Cuando la persona que vende o cede el automóvil o la pieza es una persona menor de edad y su padre, madre, tutor(a) o persona con custodia no dio consentimiento a la transacción realizada.

(c) Cuando la persona no pueda mostrar prueba fehaciente del precio pagado, de cuándo y de quién se adquirió el vehículo o la pieza, o cuándo la transacción se llevó a cabo.

(d) Cuando la persona, por sus conocimientos, experiencia, profesión, trabajo u oficio que desempeña, debió conocer razonablemente que se trataba de un vehículo o pieza adquirida de forma ilícita.

(e) Cuando la adquisición se hizo en un lugar o establecimiento, o se adquirió de una persona que se desempeñe como traficante y que no estuviera autorizada por ley para tales propósitos, o no se identificaran debidamente las partes en la transacción ni se cumpliera con los requisitos formales para el traspaso de títulos que dispone la Ley de Vehículos y Tránsito de Puerto Rico.

(f) Cuando el vehículo o la pieza muestra modificaciones o alteraciones, o los números de identificación están alterados, la licencia o tablilla no corresponde a la unidad.

(g) Cuando el vehículo o la pieza se adquiere de una persona que está o ha estado relacionada con actividades delictivas y que, por las circunstancias en las que se adquiere, una persona prudente y razonable debía conocer que se trataba de propiedad adquirida ilegalmente.

(h) Cuando el vehículo o la pieza se encuentre bajo la posesión y el control de una persona que no puede probar su derecho a conducirlo o a tenerlo en su posesión, o cuando haya sido informado como desaparecido, robado, apropiado ilegalmente o de cualquier otra forma sustraído ilegalmente de la persona con título sobre ellos.

(i) Cuando al momento de la detención, el vehículo estaba siendo utilizado en la comisión de un acto delictivo.

(j) Cuando la persona, al ser detenida por un(a) oficial del orden público, se da a la fuga y abandona el vehículo o la pieza.

**[El tribunal debe impartir esta Instrucción acompañada de la Instrucción 3.39].**

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no con conocimiento. Pueden inferir o deducir razonablemente de la prueba presentada y admitida el conocimiento. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Comercio Ilegal de Vehículos y Piezas.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su

culpabilidad, deberán rendir un veredicto de no culpable por el delito de Comercio Ilegal de Vehículos y Piezas.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 21.1 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con el Artículo 15 (*Violaciones—Comercio ilegal de vehículos y piezas*) y el Artículo 16 (*Inferencias permisibles*) de la Ley para la Protección de la Propiedad Vehicular, Ley Núm. 8 de 5 de agosto de 1987, según enmendada, 9 LPRA secs. 3214 y 3215; el Artículo 14 (*Definiciones*), el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*) y el Artículo 22 (*Elementos subjetivos del delito*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5014, 5034 y 5035).

**COMENTARIO:**

En *Pueblo v. Sánchez Molina*, 134 DPR 577 (1993), el Tribunal Supremo sostuvo que este delito castiga la mera posesión de un vehículo de motor a sabiendas de que fue obtenido ilícitamente. En consideración a que la posesión es un elemento del delito, es indispensable probar que la persona imputada tenía la posesión natural o la posesión constructiva del objeto. El segundo elemento del delito es el conocimiento de que el vehículo fue obtenido ilícitamente.  Ambos elementos deben probarse más allá de duda razonable para obtener una condena válida.

En el caso de la Ley Núm. 8, *supra*, es indispensable probar que la persona imputada tenía la posesión actual y directa sobre el objeto. Esta posesión implica dominio, control y tenencia física sobre el objeto ilegal. Sin embargo, se podría configurar el delito si se prueba la posesión constructiva del vehículo obtenido ilícitamente. Este tipo de posesión se da cuando, a pesar de que una persona no tiene la posesión inmediata o tenencia física del objeto, tiene el poder y la intención de ejercer el control o dominio sobre este. Una persona que se encuentre de pasajero en un vehículo por haber aceptado o solicitado transportación no tiene la posesión del vehículo y no comete delito alguno. Es necesario probar, pues, la posesión directa o constructiva con evidencia directa o circunstancial suficiente, esto es, más allá de duda razonable. Al evaluar si existe una posesión constructiva deben tomarse en consideración los eventos anteriores, coetáneos y posteriores a la alegada posesión ilegal. Así, por ejemplo, debe tomarse en consideración, entre otros eventos, si la persona acusada alegó ser titular del objeto en cuestión, si participó en el robo del objeto, si intentó disponer del objeto y el tiempo transcurrido entre el robo y la alegada posesión. *Pueblo en interés menor F.S.C.*, 128 DPR 931 (1991).

Sobre la validez constitucional de las inferencias establecidas en el Artículo 16 de la Ley para la Protección de la Propiedad Vehicular, *supra*, véase *Pueblo v. Sánchez Molina*, supra, págs. 589-592. Refiérase, además, a la Instrucción 3.39 (*Presunciones*) de este Libro, a la Regla 303 (*Efecto de las presunciones en casos criminales*) y la Regla 304 (*Presunciones específicas*) de Evidencia de 2009 (32 LPRA Ap. VI).

El Artículo 2(b) de la Ley para la Protección de la Propiedad Vehicular, 9 LPRA sec. 3201, define "vehículo de motor" como todo vehículo movido por fuerza propia, excepto los

siguientes vehículos o vehículos similares: (1) máquinas de tracción; (2) rodillos de carretera; (3) tractores usados exclusivamente para fines agrícolas; (4) palas mecánicas; (5) equipo para la construcción de carreteras; (6) máquinas para perforación de pozos profundos; (7) vehículos con ruedas de tamaño pequeño usados en fábricas, almacenes y estaciones de ferrocarriles, y (8) vehículos que se mueven sobre vías férreas, por mar o por aire.

## 18.2   Apropiación Ilegal de un Vehículo; medidas penales especiales (Art. 18)

Contra la persona acusada se ha presentado una acusación por violación al Artículo 18 de la Ley para la Protección de la Propiedad Vehicular, que prohíbe la Apropiación Ilegal de un Vehículo de Motor.

La ley dispone que comete el delito de Apropiación Ilegal de un Vehículo de Motor la persona que ilegalmente se apropia sin violencia ni intimidación de algún vehículo de motor perteneciente a otra persona.

Los elementos de este delito son los siguientes:

> (1) Apropiarse ilegalmente sin violencia ni intimidación de algún vehículo de motor y
> (2) que pertenezca a otra persona.

"Apropiar" incluye malversar, defraudar, ejercer control ilegal, usar, sustraer, apoderarse o, en cualquier forma, hacer propio temporal o permanentemente cualquier bien o cosa que no le pertenece.

"Ilegalmente" es todo acto contrario a alguna ley, norma, reglamento, ordenanza u orden promulgada por una autoridad competente del Estado en el ejercicio de sus funciones.

Ustedes podrán concluir que la apropiación es ilegal en la(s) circunstancia(s) siguiente(s) **[refiérase solamente a la(s) circunstancia(s) que aplique(n) según lo alegado en el pliego acusatorio]**:

> (a) Cuando la persona se ha apropiado o apoderado del vehículo sin el consentimiento de su dueño (a).
> (b) Cuando la persona haya empleado ardid, fraude, treta o engaño para adquirir la posesión, uso o control ilegal del vehículo mediante entrega voluntaria del (de la) dueño(a), del (de la) poseedor(a), del (de la) conductor(a) o del (de la) custodio(a) del vehículo objeto de la apropiación.
> (c) Cuando la persona, luego de alquilar un vehículo, no lo devuelva al (a la) arrendador(a) al expirar la vigencia del contrato de alquiler o arrendamiento y que luego haya transcurrido un plazo de 24 horas, sin notificar al (a la) arrendador(a) las razones para su acción.

(d) Cuando la persona venda o en alguna forma enajene, desmantele o permita que otra persona desmantele el vehículo sin el consentimiento de su dueño(a).

(e) Cuando la persona ha obtenido la posesión legal del vehículo mediante una compra financiada y, por incumplir con los términos o pagos del contrato de financiamiento, el tribunal haya expedido una orden de embargo y la persona desaparezca u oculte el vehículo, privando así a la institución financiera del derecho a reposeerlo.

(f) Cuando la persona haya notificado a la Policía, a la institución financiera o a la compañía aseguradora del vehículo que este le ha sido apropiado ilegalmente, robado o desaparecido con el propósito de liberarse del pago de las mensualidades o de que se le pague una pérdida de un vehículo con arreglo a un contrato de seguro.

(g) Cuando la persona venda, compre o en alguna forma enajene o adquiera el vehículo con la intención de defraudar a la institución financiera o a la persona compradora subsiguiente y así liberarse de la deuda o del cumplimiento de las obligaciones existentes, o cuando desmantele o permita que otra persona desmantele un vehículo que esté sujeto a un contrato de venta condicional, de arrendamiento financiero o a algún otro tipo de préstamo con garantía sin el consentimiento escrito del (de la) vendedor(a) condicional, del (de la) acreedor(a) o de la institución financiera.

(h) Cuando una persona que actúa como intermediaria, compra, reciba, venda o enajene un vehículo de motor que está sujeto a un financiamiento con la intención de venderlo o cederlo sin que medie la anuencia por escrito de del (de la) vendedor(a) condicional, del (de la) acreedor(a) o de la entidad financiera que financió el vehículo de motor al (a la) comprador(a) original.

**[El tribunal debe impartir esta Instrucción acompañada de la Instrucción 3.39].**

"Intermediaria" es cualquier persona natural o jurídica que en el carácter de corredora, de agente o de facilitadora se dedique a la compra, venta, cesión o cualquier otro tipo de enajenación de vehículos de motor sin estar autorizada por una licencia de concesionaria o redistribuidora que le autorice a vender vehículos según requiere la ley].

**[El tribunal debe impartir esta Instrucción acompañada de la Instrucción 4.5].**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Apropiación Ilegal de un Vehículo de Motor.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran

que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Apropiación Ilegal de un Vehículo de Motor.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 21.2 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con el Artículo 18 (*Violaciones—Apropiación ilegal de vehículo; medidas penales especiales*) de la Ley para la Protección de la Propiedad Vehicular, Ley Núm. 8 de 5 de agosto de 1987, según enmendada, 9 LPRA sec. 3217, y el Artículo 14 (*Definiciones*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA sec. 5014).

**COMENTARIO:**

Sobre el propósito y alcance de las circunstancias (g) y (h) que permiten concluir que la apropiación es ilegal, véase *Rosario Rosado v. Pagán Santiago*, 196 DPR 180 (2016).

El Artículo 2(b) de la Ley para la Protección de la Propiedad Vehicular, 9 LPRA sec. 3201, define "vehículo de motor" como todo vehículo movido por fuerza propia, excepto los siguientes vehículos o vehículos similares: (1) máquinas de tracción; (2) rodillos de carretera; (3) tractores usados exclusivamente para fines agrícolas; (4) palas mecánicas; (5) equipo para la construcción de carreteras; (6) máquinas para perforación de pozos profundos; (7) vehículos con ruedas de tamaño pequeño usados en fábricas, almacenes y estaciones de ferrocarriles, y (8) vehículos que se mueven sobre vías férreas, por mar o por aire.

## 18.3  Apropiación Ilegal de una Pieza de un Vehículo (Art. 19)

Contra la persona acusada se ha presentado una acusación por violación al Artículo 19 de la Ley para la Protección de la Propiedad Vehicular, que prohíbe la Apropiación Ilegal de alguna Pieza de un Vehículo de Motor.

La ley dispone que comete el delito de Apropiación Ilegal de alguna Pieza de un Vehículo de Motor la persona que se apropie ilegalmente, sin violencia ni intimidación, de alguna pieza de un vehículo de motor perteneciente a otra persona.

Los elementos de este delito son los siguientes:

(1) Apropiarse ilegalmente sin violencia ni intimidación de alguna pieza de un vehículo de motor

(2) que la pieza pertenezca a otra persona y

(3) que tenga un valor de $500 o más.

"Apropiar" incluye malversar, defraudar, ejercer control ilegal, usar, sustraer, apoderarse o, en cualquier forma, hacer propio temporal o permanentemente cualquier bien o cosa que no le pertenece.

"Ilegalmente" es todo acto contrario a alguna ley, norma, reglamento, ordenanza u orden promulgada por una autoridad competente del Estado en el ejercicio de sus funciones.

**[El tribunal debe impartir esta Instrucción acompañada de la Instrucción 4.5].**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Apropiación Ilegal de alguna Pieza de un Vehículo de Motor.

No obstante, si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y consideran que el Ministerio Público probó más allá de duda razonable el delito de Apropiación de una Pieza de Vehículo de Motor pero que el valor de la pieza de vehículo de motor es menor de $500, entonces deberán rendir un veredicto de culpable por este delito en su modalidad menos grave.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Apropiación Ilegal de alguna Pieza de un Vehículo de Motor.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 21.3 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con el Artículo 19 (*Violaciones—Apropiación ilegal de pieza de vehículo*) de la Ley para la Protección de la Propiedad Vehicular, Ley Núm. 8 de 5 de agosto de 1987, según enmendada, 9 LPRA sec. 3218, y el Artículo 14 (*Definiciones*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA sec. 5014).

El Artículo 2(b) de la Ley para la Protección de la Propiedad Vehicular, 9 LPRA sec. 3201, define "vehículo de motor" como todo vehículo movido por fuerza propia, excepto los siguientes vehículos o vehículos similares: (1) máquinas de tracción; (2) rodillos de carretera; (3) tractores usados exclusivamente para fines agrícolas; (4) palas mecánicas; (5) equipo para la construcción de carreteras; (6) máquinas para perforación de pozos profundos; (7) vehículos con ruedas de tamaño pequeño usados en fábricas, almacenes y estaciones de ferrocarriles, y (8) vehículos que se mueven sobre vías férreas, por mar o por aire.

### 18.4 Mutilación, Alteración, Destrucción o Modificación de los Números de Identificación (Art. 20)

Contra la persona acusada se ha presentado una acusación por violación al Artículo 20 de la Ley para la Protección de la Propiedad Vehicular, que prohíbe la mutilación, alteración, destrucción o modificación de números de identificación de un vehículo de motor.

La ley dispone que comete el delito de Mutilación, Alteración, Destrucción o Modificación de los Números de Identificación de un vehículo de motor la persona que voluntariamente borre, mutile, cubra, altere, destruya, remueva, desprenda o modifique en alguna forma los números de motor, de serie o cualquier otro número de identificación impreso por el manufacturero, por el fabricante o el asignado por el (la) Secretario(a) de Transportación y Obras Públicas a un vehículo de motor o a alguna pieza del vehículo.

Los elementos de este delito son los siguientes:

(1) [Borrar] [Mutilar] [Cubrir] [Alterar] [Destruir] [Remover] [Desprender] [Modificar en alguna forma] los números de motor o de serie, o cualquier número de identificación [impreso por el manufacturero o fabricante] [asignado por el (la) Secretario(a) de Transportación y Obras Públicas] de un vehículo de motor o de alguna pieza del vehículo y

(2) que la persona ejecute el acto voluntariamente.

"Voluntariamente" significa que el acto nace de la voluntad y no por fuerza o necesidad extraña a ella.

**[El tribunal debe impartir esta Instrucción acompañada de la Instrucción 4.5].**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Mutilación, Alteración, Destrucción o Modificación de los Números de Identificación de un Vehículo de Motor.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Mutilación, Alteración, Destrucción o Modificación de los Números de Identificación de un Vehículo de Motor.

REFERENCIA:

Esta Instrucción es nueva. Guarda relación con el Artículo 20 (*Violaciones—Números de identificación; mutilación, alteración, destrucción o modificación*) de la Ley para la Protección

de la Propiedad Vehicular, Ley Núm. 8 de 5 de agosto de 1987, según enmendada, 9 LPRA sec. 3219, y el Artículo 14 (*Definiciones*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA sec. 5014).

### 18.5 Entrada de Información Falsa al Sistema de Computadoras o Expedientes (Art.25)

Contra la persona acusada se ha presentado una acusación por violación al Artículo 25 de la Ley para la Protección de la Propiedad Vehicular, que prohíbe la Entrada de Información Falsa al Sistema de Computadoras o a Expedientes de Vehículos de Motor.

La ley dispone que comete este delito la persona, funcionario(a) o empleado(a) público(a) que, directamente o a través de otra persona voluntariamente entre, alimente o supla información falsa a cualquier expediente gubernamental físico de vehículo de motor o al sistema de computadoras, o elimine, modifique o cambie la información contenida en el sistema de computadoras o en cualquier expediente gubernamental físico de vehículos de motor a sabiendas de que dichos actos no proceden.

Los elementos de este delito son los siguientes:

(1) Que [una persona] [un(a) funcionario(a) o empleado(a) público(a)], directamente o a través de otra persona,

(2) voluntariamente

(3) [entre, alimente o supla información falsa a cualquier expediente gubernamental físico de vehículos de motor o al sistema de computadoras gubernamental] [elimine, modifique o cambie la información contenida en el sistema de computadoras o en cualquier expediente gubernamental físico de vehículos de motor]

(4) a sabiendas que no procede.

"A sabiendas" es sinónimo de "con conocimiento". Una persona actúa "con conocimiento" cuando es consciente de que la producción del resultado o la existencia de la circunstancia es prácticamente segura. Actuar "a sabiendas" no requiere el conocimiento de la ilegalidad del acto u omisión.

"Voluntariamente" significa que el acto nace de la voluntad y no por fuerza o necesidad extraña a ella.

"Funcionario(a) o empleado(a) público(a)" es la persona que ejerce un cargo o desempeña una función o encomienda, con o sin pago, permanente o temporeramente, debido a cualquier tipo de nombramiento, contrato o designación, para la Rama Legislativa, Ejecutiva o Judicial, o para el gobierno municipal del Estado Libre Asociado de Puerto Rico. Incluye a quienes representan el interés público y sean designadas para ocupar un cargo en una junta, corporación pública, entidad gubernamental y sus subsidiarias del Estado Libre Asociado de Puerto Rico, así como a los(as) notarios(as). El término "funcionario(a) público(a)" incluye las personas que ocupan cargos o empleos en el gobierno del Estado

Libre Asociado y que están investidas de parte de la soberanía del gobierno, por lo que intervienen en la formulación e implantación de la política pública.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no voluntariamente o con conocimiento, lo que pueden inferir o deducir razonablemente de la prueba presentada y admitida. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Entrada de Información Falsa al Sistema de Computadoras o a Expedientes de Vehículos de Motor.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Entrada de Información Falsa al Sistema de Computadoras o a Expedientes de Vehículos de Motor.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 25 (*Violaciones—Entrada de información falsa al sistema de computadoras o expedientes*) de la Ley para la Protección de la Propiedad Vehicular, Ley Núm. 8 de 5 de agosto de 1987, según enmendada, 9 LPRA sec. 3224), y el Artículo 14 (*Definiciones*), el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*) y el Artículo 22 (*Elementos subjetivos del delito*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5014, 5034 y 5035).

CAPÍTULO 19
**LEY ORGÁNICA DE LA OFICINA DE ÉTICA GUBERNAMENTAL**


**19.1    Utilizar el Cargo para Obtener un Beneficio no Permitido por Ley (Art. 4.2(b))**

Contra la persona acusada se ha presentado una acusación por violación al Artículo 4.2(b) de la Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico.

La ley prohíbe que un(a) servidor(a) público(a) intencionalmente utilice los deberes y las facultades de su cargo, la propiedad o los fondos públicos para obtener directa o indirectamente, para sí o para una persona privada o un negocio, cualquier beneficio que no esté permitido en ley.

Los elementos de este delito son los siguientes:

(1) Que un(a) servidor(a) público(a),

(2) intencionalmente,

(3) utilice los deberes y las facultades de su cargo, la propiedad o los fondos públicos

(4) para obtener cualquier beneficio que no esté permitido en ley, bien sea directa o indirectamente, para sí o para una persona privada o un negocio.

"Servidor(a) público(a)" es la persona en el gobierno que interviene o no en la formulación e implantación de la política pública, aunque desempeñe su encomienda permanente o temporalmente, con o sin remuneración. También incluye a cualquier contratista independiente cuyo contrato equivale a un puesto o cargo, o que entre sus responsabilidades esté la de intervenir directamente en la formulación e implantación de la política pública.

"Fondos públicos" es el dinero, bonos, obligaciones, valores, sellos, comprobantes de rentas internas, comprobantes de deudas y propiedad perteneciente al gobierno del Estado Libre Asociado de Puerto Rico, sus departamentos, agencias, juntas y demás dependencias, las corporaciones públicas y sus subsidiarias, los municipios y las divisiones políticas. También incluye el dinero recaudado por personas o entidades privadas que, mediante un acuerdo o por autoridad de ley, realizan gestiones o cobro de patentes, derechos, impuestos, contribuciones, servicios, o el dinero que se adeude al Estado Libre Asociado de Puerto Rico por cualquier otra obligación u otra gestión o para el cobro de sellos o derechos para instrumentos públicos o documentos notariales. Cuando se trate de bonos, obligaciones, valores y comprobantes de deuda, el término incluye no solo el documento que evidencie la obligación, sino el dinero, bonos, valores u obligaciones que se obtengan como producto de la emisión, compra, ejecución, financiamiento, refinanciamiento o cualquier otra transacción con esas obligaciones.

"Beneficio" significa cualquier provecho, utilidad, lucro o ganancia. No se limita a una ganancia económica o material, sino que denota cualquier forma de ventaja.

"Persona privada" significa una persona natural o jurídica, bien sea una persona particular o una corporación, sin incluir las entidades públicas.

"Intencionalmente" es equivalente a actuar "a propósito", "con conocimiento" o "temerariamente".

El propósito, el conocimiento y la temeridad son estados mentales.

Una persona actúa "a propósito" cuando su objetivo consciente es la producción de un resultado o cuando cree que una circunstancia existe.

Una persona actúa "con conocimiento" cuando es consciente que la producción del resultado es una consecuencia prácticamente segura de su conducta o cuando es consciente que la existencia de una circunstancia es prácticamente segura.

Una persona actúa "temerariamente" cuando es consciente de que su conducta genera un riesgo sustancial e injustificado de que se produzca el resultado o la circunstancia prohibida por ley, y a pesar de conocer el riesgo, la persona continúa con su acción u omisión. Al evaluar si era consciente del riesgo, deberán determinar si había previsto la posibilidad de que existiese ese riesgo. Al momento de evaluar si un riesgo fue sustancial, deberán considerar la probabilidad de que se produjera el daño, el resultado o la circunstancia, y la magnitud del daño. Al evaluar si un riesgo fue injustificado, deberán considerar lo que motivó a la persona a asumirlo.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no a propósito, con conocimiento o temerariamente. Pueden inferir o deducir razonablemente de la prueba presentada y admitida el propósito, el conocimiento o la temeridad. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por violar el Artículo 4.2(b) de la Ley Orgánica de la Oficina de Ética Gubernamental.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por violar el Artículo 4.2(b) de la Ley Orgánica de la Oficina de Ética Gubernamental.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 1.2 (*Definiciones*), el Artículo 4.1 (*Jurisdicción y alcance*), el Artículo 4.2(b) (*Prohibiciones éticas de carácter general*), el Artículo 4.7 (*Sanciones y penalidades*) y el Artículo 4.8 (*Normas de conducta aplicables a los servidores y ex servidores públicos de la Rama Judicial y la Rama Legislativa*) de la Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico, Ley 1-2012, según

enmendada, 3 LPRA secs. 1854, 1857, 1857a, 1857f y 1857g; el Artículo 14 (*Definiciones*), el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*) y el Artículo 22 (*Elementos subjetivos del delito*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5014, 5034 y 5035).

**COMENTARIO:**

El Artículo 4.7 de la Ley 1-2012, *supra*, establece el elemento mental que aplica a este delito. Nótese que penaliza como delito grave la violación de forma intencional de las prohibiciones de los incisos (b), (c), (d), (e), (f), (m), (n), (o), (p) y (q) del Artículo 4.2, al igual que las prohibiciones de los incisos (b) y (c) del Artículo 4.3.

Por su parte, la Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico, ahora forma parte integral del Código Anticorrupción para el Nuevo Puerto Rico (Código Anticorrupción), Ley 2-2018 (3 LPRA sec. 1881 *et seq.*), en su Título II (Subcapítulo II en Leyes de Puerto Rico Anotadas).

El Código Anticorrupción, en su Artículo 3.1(m), define "persona jurídica" y establece que el término "incluye las corporaciones, corporaciones profesionales, sociedades civiles y mercantiles, sociedades especiales, cooperativas y cualquier entidad definida como tal en cualquier ley aplicable, asociaciones, sociedades o corporaciones de facto, incluyendo aquellas que constituyan para estos fines un alter ego de la persona jurídica, afiliadas o subsidiarias de la misma". 3 LPRA sec. 1883(m).

En *Pueblo v. Arlequín Vélez*, 204 DPR 117 (2020), el Tribunal Supremo reconoció que entre los beneficios y ventajas contrarios a la ley están los de índole sexual.

Toda instrucción de los delitos particulares debe ir precedida de la Instrucción 4.15, que alude a la definición del concepto "elementos del delito".

Adviértase que se recogen en la Instrucción los elementos subjetivos del delito, por lo que no es necesario impartir también la Instrucción 4.5.

### 19.2   Aceptar o Solicitar un Beneficio como Pago por los Deberes y las Responsabilidad del Empleo (Art. 4.2(c))

Contra la persona acusada se ha presentado una acusación por violación al Artículo 4.2(c) de la Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico.

La ley prohíbe que un(a) servidor(a) público intencionalmente solicite o acepte de una persona privada o un negocio, bien sea directa o indirectamente, un beneficio como pago por realizar, acelerar, dilatar o dejar de hacer los deberes y las responsabilidades de su empleo.

Los elementos de este delito son los siguientes:

(1) Que un(a) servidor(a) público,
(2) intencionalmente,

(3) acepte o solicite, directa o indirectamente, un beneficio de una persona privada o de un negocio;

(4) como pago por realizar, acelerar, dilatar o dejar de hacer los deberes y las responsabilidades de su empleo.

"Servidor(a) público(a)" es la persona en el gobierno que interviene o no en la formulación e implantación de la política pública, aunque desempeñe su encomienda permanente o temporalmente, con o sin remuneración. También incluye a cualquier contratista independiente cuyo contrato equivale a un puesto o cargo, o que entre sus responsabilidades esté la de intervenir directamente en la formulación e implantación de la política pública.

"Beneficio" significa cualquier provecho, utilidad, lucro o ganancia. No se limita a una ganancia económica o material, sino que denota cualquier forma de ventaja.

"Persona privada" es una persona natural o jurídica, particular o corporación, sin incluir las entidades públicas.

"Intencionalmente" es equivalente a actuar "a propósito", "con conocimiento" o "temerariamente".

El propósito, el conocimiento y la temeridad son estados mentales.

Una persona actúa "a propósito" cuando su objetivo consciente es la producción de un resultado o cuando cree que una circunstancia existe.

Una persona actúa "con conocimiento" cuando es consciente de que la producción del resultado es una consecuencia prácticamente segura de su conducta o cuando es consciente de que la existencia de una circunstancia es prácticamente segura.

Una persona actúa "temerariamente" cuando es consciente de que su conducta genera un riesgo sustancial e injustificado de que se produzca el resultado o la circunstancia prohibida por ley, y a pesar de conocer el riesgo, la persona continúa con su acción u omisión. Al evaluar si era consciente del riesgo, deberán determinar si había previsto la posibilidad de que existiese ese riesgo. Al momento de evaluar si un riesgo fue sustancial, deberán considerar la probabilidad de que se produjera el daño, el resultado o la circunstancia y la magnitud del daño. Al evaluar si un riesgo fue injustificado, deberán considerar lo que motivó a la persona a asumirlo.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no a propósito, con conocimiento o temerariamente. Pueden inferir o deducir razonablemente de la prueba presentada y admitida el propósito, el conocimiento o la temeridad. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por violar el Artículo 4.2(c) de la Ley Orgánica de la Oficina de Ética Gubernamental.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por violar el Artículo 4.2(c) de la Ley Orgánica de la Oficina de Ética Gubernamental.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 1.2 (*Definiciones*), el Artículo 4.1 (*Jurisdicción y alcance*), el Artículo 4.2(c) (*Prohibiciones éticas de carácter general*), el Artículo 4.7 (*Sanciones y penalidades*) y el Artículo 4.8 (*Normas de conducta aplicables a los servidores y ex servidores públicos de la Rama Judicial y la Rama Legislativa*) de la Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico, Ley 1-2012, según enmendada, 3 LPRA secs. 1854, 1857, 1857a, 1857f y 1857g; el Artículo 14 (*Definiciones*), el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*) y el Artículo 22 (*Elementos subjetivos del delito*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5014, 5034 y 5035).

**COMENTARIO:**

El Artículo 4.7 de la Ley 1-2012, *supra*, establece el elemento mental que aplica a este delito. Nótese que penaliza como delito grave la violación de forma intencional de las prohibiciones de los incisos (b), (c), (d), (e), (f), (m), (n), (o), (p) y (q) del Artículo 4.2, al igual que las prohibiciones de los incisos (b) y (c) del Artículo 4.3.

Por su parte, la Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico, ahora forma parte integral del Código Anticorrupción para el Nuevo Puerto Rico (Código Anticorrupción), Ley 2-2018 (3 LPRA sec. 1881 *et seq.*), en su Título II (Subcapítulo II en Leyes de Puerto Rico Anotadas).

El Código Anticorrupción, en su Artículo 3.1(m), define "persona jurídica" y establece que el término "incluye las corporaciones, corporaciones profesionales, sociedades civiles y mercantiles, sociedades especiales, cooperativas y cualquier entidad definida como tal en cualquier ley aplicable, asociaciones, sociedades o corporaciones de facto, incluyendo aquellas que constituyan para estos fines un alter ego de la persona jurídica, afiliadas o subsidiarias de la misma". 3 LPRA sec. 1883(m).

Toda instrucción de los delitos particulares debe ir precedida de la Instrucción 4.15, que alude a la definición del concepto "elementos del delito".

Adviértase que se recogen en la Instrucción los elementos subjetivos del delito, por lo que no es necesario impartir también la Instrucción 4.5.

**19.3   Aceptar o Solicitar un Beneficio a Cambio de que sus Actos estén Influenciados a Favor de una Persona o de un Negocio (Art. 4.2(d))**

Contra la persona acusada se ha presentado una acusación por violación al Artículo 4.2(d) de la Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico.

La ley prohíbe que un(a) servidor(a) público(a) intencionalmente acepte o solicite de una persona privada o negocio, bien sea directa o indirectamente, un beneficio para sí o para una persona, negocio o entidad a cambio de que los actos que lleve a cabo estén influenciados a favor de esa u otra persona privada o negocio.

Los elementos de este delito son los siguientes:

(1) Que un (a) servidor (a) público(a),

(2) intencionalmente,

(3) acepte o solicite, directa o indirectamente, un beneficio para sí o para otra persona, negocio o entidad

(4) de una persona privada o negocio

(5) a cambio de que los actos que lleve a cabo estén influenciados a favor de esa u otra persona privada o negocio.

"Servidor(a) público(a)" es la persona en el gobierno que interviene o no en la formulación e implantación de la política pública, aunque desempeñe su encomienda permanente o temporalmente, con o sin remuneración. También incluye a cualquier contratista independiente cuyo contrato equivale a un puesto o cargo, o que entre sus responsabilidades esté la de intervenir directamente en la formulación e implantación de la política pública.

"Beneficio" significa cualquier provecho, utilidad, lucro o ganancia. No se limita a una ganancia económica o material, sino que denota cualquier forma de ventaja.

"Persona privada" es una persona natural o jurídica, particular o corporación, sin incluir las entidades públicas.

"Intencionalmente" es equivalente a actuar "a propósito", "con conocimiento" o "temerariamente".

El propósito, el conocimiento y la temeridad son estados mentales.

Una persona actúa "a propósito" cuando su objetivo consciente es la producción de un resultado o cuando cree que una circunstancia existe.

Una persona actúa "con conocimiento" cuando es consciente de que la producción del resultado es una consecuencia prácticamente segura de su conducta o cuando es consciente de que la existencia de una circunstancia es prácticamente segura.

Una persona actúa "temerariamente" cuando es consciente de que su conducta genera un riesgo sustancial e injustificado de que se produzca el resultado o la circunstancia prohibida por ley, y a pesar de conocer el riesgo, la persona continúa con su acción u omisión. Al evaluar si era consciente del riesgo, deberán determinar si había previsto la posibilidad

de que existiese ese riesgo. Al momento de evaluar si un riesgo fue sustancial, deberán considerar la probabilidad de que se produjera el daño, el resultado o la circunstancia, y la magnitud del daño. Al evaluar si un riesgo fue injustificado, deberán considerar lo que motivó a la persona a asumirlo.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no a propósito, con conocimiento o temerariamente. Pueden inferir o deducir razonablemente de la prueba presentada y admitida el propósito, el conocimiento o la temeridad. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por violar el Artículo 4.2(d) de la Ley Orgánica de la Oficina de Ética Gubernamental.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por violar el Artículo 4.2(d) de la Ley Orgánica de la Oficina de Ética Gubernamental.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 1.2 (*Definiciones*), el Artículo 4.1 (*Jurisdicción y alcance*), el Artículo 4.2(d) (*Prohibiciones éticas de carácter general*), el Artículo 4.7 (*Sanciones y penalidades*) y el Artículo 4.8 (*Normas de conducta aplicables a los servidores y ex servidores públicos de la Rama Judicial y la Rama Legislativa*) de la Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico, Ley 1-2012, según enmendada, 3 LPRA secs. 1854, 1857, 1857a, 1857f y 1857g, y el Artículo 14 (*Definiciones*), el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*) y el Artículo 22 (*Elementos subjetivos del delito*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5014, 5034 y 5035).

**COMENTARIO:**

El Artículo 4.7 de la Ley 1-2012, *supra*, establece el elemento mental que aplica a este delito. Nótese que penaliza como delito grave la violación de forma intencional de las prohibiciones de los incisos (b), (c), (d), (e), (f), (m), (n), (o), (p) y (q) del Artículo 4.2, al igual que las prohibiciones de los incisos (b) y (c) del Artículo 4.3.

Por su parte, la Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico, ahora forma parte integral del Código Anticorrupción para el Nuevo Puerto Rico (Código Anticorrupción), Ley 2-2018 (3 LPRA sec. 1881 *et seq.*), en su Título II (Subcapítulo II en Leyes de Puerto Rico Anotadas).

El Código Anticorrupción, en su Artículo 3.1(m), define "persona jurídica" y establece que el término "incluye las corporaciones, corporaciones profesionales, sociedades civiles y mercantiles, sociedades especiales, cooperativas y cualquier entidad definida como tal en cualquier ley aplicable, asociaciones, sociedades o corporaciones de facto, incluyendo aquellas que constituyan para estos fines un alter ego de la persona jurídica, afiliadas o subsidiarias de la misma". 3 LPRA sec. 1883(m).

Toda instrucción de los delitos particulares debe ir precedida de la Instrucción 4.15, que alude a la definición del concepto "elementos del delito".

Adviértase que se recogen en la Instrucción los elementos subjetivos del delito, por lo que no es necesario impartir también la Instrucción 4.5.

## 19.4 Asegurar o Pretender Tener Influencia en el Ejercicio de las Funciones de otro(a) Servidor(a) Público(a) a Cambio de un Beneficio (Art. 4.2(e))

Contra la persona acusada se ha presentado una acusación por violación al Artículo 4.2(e) de la Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico.

La ley prohíbe que un(a) servidor(a) público(a) intencionalmente asegure o pretenda que tiene influencia en el ejercicio de las funciones de otro(a) servidor(a) público(a) a cambio de obtener o tratar de obtener un beneficio.

Los elementos de este delito son los siguientes:

(1) Que un(a) servidor(a) público(a),

(2) intencionalmente,

(3) asegure o pretenda tener influencia en el ejercicio de las funciones de otro(a) servidor(a) público(a)

(4) a cambio de obtener o tratar de obtener un beneficio.

"Servidor(a) público(a)" es la persona en el gobierno que interviene o no en la formulación e implantación de la política pública, aunque desempeñe su encomienda permanente o temporalmente, con o sin remuneración. También incluye a cualquier contratista independiente cuyo contrato equivale a un puesto o cargo, o que entre sus responsabilidades esté la de intervenir directamente en la formulación e implantación de la política pública.

"Beneficio" significa cualquier provecho, utilidad, lucro o ganancia. No se limita a una ganancia económica o material, sino que denota cualquier forma de ventaja.

"Intencionalmente" es equivalente a actuar "a propósito", "con conocimiento" o "temerariamente".

El propósito, el conocimiento y la temeridad son estados mentales.

Una persona actúa "a propósito" cuando su objetivo consciente es la producción de un resultado o cuando cree que una circunstancia existe.

Una persona actúa "con conocimiento" cuando es consciente de que la producción del resultado es una consecuencia prácticamente segura de su conducta o cuando es consciente de que la existencia de una circunstancia es prácticamente segura.

Una persona actúa "temerariamente" cuando es consciente de que su conducta genera un riesgo sustancial e injustificado de que se produzca el resultado o la circunstancia prohibida por ley, y a pesar de conocer el riesgo, la persona continúa con su acción u omisión. Al evaluar si era consciente del riesgo, deberán determinar si había previsto la posibilidad de que existiese ese riesgo. Al momento de evaluar si un riesgo fue sustancial, deberán considerar la probabilidad de que se produjera el daño, el resultado o la circunstancia, y la magnitud del daño. Al evaluar si un riesgo fue injustificado, deberán considerar lo que motivó a la persona a asumirlo.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no a propósito, con conocimiento o temerariamente. Pueden inferir o deducir razonablemente de la prueba presentada y admitida el propósito, el conocimiento o la temeridad. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por violar el Artículo 4.2(e) de la Ley Orgánica de la Oficina de Ética Gubernamental.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por violar el Artículo 4.2(e) de la Ley Orgánica de la Oficina de Ética Gubernamental.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 1.2 (*Definiciones*), el Artículo 4.1 (*Jurisdicción y alcance*), el Artículo 4.2(e) (*Prohibiciones éticas de carácter general*), el Artículo 4.7 (*Sanciones y penalidades*) y el Artículo 4.8 (*Normas de conducta aplicables a los servidores y ex servidores públicos de la Rama Judicial y la Rama Legislativa*) de la Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico, Ley 1-2012, según enmendada, 3 LPRA secs. 1854, 1857, 1857a, 1857f y 1857g; el Artículo 14 (*Definiciones*), el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*) y el Artículo 22 (*Elementos subjetivos del delito*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5014, 5034 y 5035).

**COMENTARIO:**

El Artículo 4.7 de la Ley 1-2012, *supra*, establece el elemento mental que aplica a este delito. Nótese que penaliza como delito grave la violación de forma intencional de las prohibiciones

de los incisos (b), (c), (d), (e), (f), (m), (n), (o), (p) y (q) del Artículo 4.2, al igual que las prohibiciones de los incisos (b) y (c) del Artículo 4.3.

Por su parte, la Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico, ahora forma parte integral del Código Anticorrupción para el Nuevo Puerto Rico (Código Anticorrupción), Ley 2-2018 (3 LPRA sec. 1881 *et seq.*), en su Título II (Subcapítulo II en Leyes de Puerto Rico Anotadas).

Toda instrucción de los delitos particulares debe ir precedida de la Instrucción 4.15, que alude a la definición del concepto "elementos del delito".

Adviértase que se recogen en la Instrucción los elementos subjetivos del delito, por lo que no es necesario impartir también la Instrucción 4.5.


### 19.5    Revelar o Usar Información o Documento Confidencial para Obtener un Beneficio (Art. 4.2(f))

Contra la persona acusada se ha presentado una acusación por violación al Artículo 4.2(f) de la Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico.

La ley prohíbe que un(a) servidor(a) público(a) intencionalmente revele o use información o un documento confidencial adquirido por razón de su empleo para obtener, directa o indirectamente, un beneficio para sí, para una persona privada o negocio.

Los elementos de este delito son los siguientes:

> (1) Que un(a) servidor(a) público(a),
> (2) Intencionalmente,
> (3) revele o use información o un documento confidencial
> (4) adquirido por razón de su empleo
> (5) para obtener, directa o indirectamente, un beneficio para sí, para otra persona privada o negocio.

"Servidor(a) público(a)" es la persona en el gobierno que interviene o no en la formulación e implantación de la política pública, aunque desempeñe su encomienda permanente o temporalmente, con o sin remuneración. También incluye a cualquier contratista independiente cuyo contrato equivale a un puesto o cargo, o que entre sus responsabilidades esté la de intervenir directamente en la formulación e implantación de la política pública.

"Beneficio" significa cualquier provecho, utilidad, lucro o ganancia. No se limita a una ganancia económica o material, sino que denota cualquier forma de ventaja.

"Información o Documento Confidencial" son aquellos así declarados por ley; que estén protegidos por alguno de los privilegios evidenciarios; cuando revelarlos puede lesionar derechos fundamentales de terceros o el derecho a la intimidad y vida privada de funcionarios públicos; cuando revelarlos pueda constituir una violación del privilegio

ejecutivo; incluye informes, memorandos o cualquier escrito preparado por un(a) empleado(a) u oficina pública en el ejercicio de su cargo o empleo para su superior o para fines internos de las decisiones y actuaciones departamentales; cuando el documento o información sea parte del proceso deliberativo en la formulación de la política pública; y cuando divulgar la misma puede poner en peligro la vida o integridad física del  (de la) funcionario(a) público(a) o de otra persona, la seguridad del país o afectar transacciones de negocios o gestiones oficiales del Estado en proceso durante la solicitud.

"Persona privada" significa una persona natural o jurídica, bien sea una persona particular o una corporación, sin incluir las entidades públicas.

"Intencionalmente" es equivalente a actuar "a propósito", "con conocimiento" o "temerariamente".

El propósito, el conocimiento y la temeridad son estados mentales.

Una persona actúa "a propósito" cuando su objetivo consciente es la producción de un resultado o cuando cree que una circunstancia existe.

Una persona actúa "con conocimiento" cuando es consciente de que la producción del resultado es una consecuencia prácticamente segura de su conducta o cuando es consciente de que la existencia de una circunstancia es prácticamente segura.

Una persona actúa "temerariamente" cuando es consciente de que su conducta genera un riesgo sustancial e injustificado de que se produzca el resultado o la circunstancia prohibida por ley, y a pesar de conocer el riesgo, la persona continúa con su acción u omisión. Al evaluar si era consciente del riesgo, deberán determinar si había previsto la posibilidad de que existiese ese riesgo. Al momento de evaluar si un riesgo fue sustancial, deberán considerar la probabilidad de que se produjera el daño, el resultado o la circunstancia, y la magnitud del daño. Al evaluar si un riesgo fue injustificado, deberán considerar lo que motivó a la persona a asumirlo.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no a propósito, con conocimiento o temerariamente. Pueden inferir o deducir razonablemente de la prueba presentada y admitida el propósito, el conocimiento o la temeridad. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por violar el Artículo 4.2(f) de la Ley Orgánica de la Oficina de Ética Gubernamental.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por violar el Artículo 4.2(f) de la Ley Orgánica de la Oficina de Ética Gubernamental.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 1.2 (*Definiciones*), el Artículo 4.1 (*Jurisdicción y alcance*), el Artículo 4.2(f) (*Prohibiciones éticas de carácter general*), el Artículo 4.7 (*Sanciones y penalidades*) y el Artículo 4.8 (*Normas de conducta aplicables a los servidores y ex servidores públicos de la Rama Judicial y la Rama Legislativa*) de la Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico, Ley 1-2012, según enmendada, 3 LPRA secs. 1854, 1857, 1857a, 1857f y 1857g; el Artículo 3(j) del Reglamento de Ética Gubernamental, Reglamento Núm. 4827 de 23 de noviembre de 1992, según enmendado; el Artículo 14 (*Definiciones*), el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*) y el Artículo 22 (*Elementos subjetivos del delito*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5014, 5034 y 5035).

**COMENTARIO:**

El Artículo 4.7 de la Ley 1-2012, *supra*, establece el elemento mental que aplica a este delito. Nótese que penaliza como delito grave la violación de forma intencional de las prohibiciones de los incisos (b), (c), (d), (e), (f), (m), (n), (o), (p) y (q) del Artículo 4.2, al igual que las prohibiciones de los incisos (b) y (c) del Artículo 4.3.

Por su parte, la Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico, ahora forma parte integral del Código Anticorrupción para el Nuevo Puerto Rico (Código Anticorrupción), Ley 2-2018 (3 LPRA sec. 1881 *et seq.*), en su Título II (Subcapítulo II en Leyes de Puerto Rico Anotadas).

El Código Anticorrupción, en su Artículo 3.1(m), define "persona jurídica" y establece que el término "incluye las corporaciones, corporaciones profesionales, sociedades civiles y mercantiles, sociedades especiales, cooperativas y cualquier entidad definida como tal en cualquier ley aplicable, asociaciones, sociedades o corporaciones de facto, incluyendo aquellas que constituyan para estos fines un alter ego de la persona jurídica, afiliadas o subsidiarias de la misma". 3 LPRA sec. 1883(m).

Toda instrucción de los delitos particulares debe ir precedida de la Instrucción 4.15, que alude a la definición del concepto "elementos del delito".

Adviértase que se recogen en la Instrucción los elementos subjetivos del delito, por lo que no es necesario impartir también la Instrucción 4.5.

## 19.6 Exigir o Solicitar a otro(a) Servidor(a) Público(a) que Haga Contribución Económica o Emplee su Tiempo en una Actividad Política (Art. 4.2(m))

Contra la persona acusada se ha presentado una acusación por violación al Artículo 4.2(m) de la Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico.

La ley prohíbe que un(a) servidor(a) público(a), intencionalmente y mientras se encuentre en funciones de su trabajo, exija o solicite a los(as) demás servidores(as) público(as) que hagan contribuciones económicas o que empleen de su tiempo para realizar o participar en una actividad política.

Los elementos de este delito son los siguientes:

(1) Que un(a) servidor(a) público(a),

(2) intencionalmente

(3) y mientras se encuentre en funciones de su trabajo,

(4) exija o solicite a otros(as) servidores(as) público(as)

(5) que contribuyan económicamente o que empleen de su tiempo para realizar o participar de una actividad política.

"Servidor(a) público(a)" es la persona en el gobierno que interviene o no en la formulación e implantación de la política pública, aunque desempeñe su encomienda permanente o temporalmente, con o sin remuneración. También incluye a cualquier contratista independiente cuyo contrato equivale a un puesto o cargo, o que entre sus responsabilidades esté la de intervenir directamente en la formulación e implantación de la política pública.

"Actividad política" es un acontecimiento en el que una o más personas promueven, a favor o en contra, una candidatura determinada, partido político o asunto que será considerado por el electorado.

"Intencionalmente" es equivalente a actuar "a propósito", "con conocimiento" o "temerariamente".

El propósito, el conocimiento y la temeridad son estados mentales.

Una persona actúa "a propósito" cuando su objetivo consciente es la producción de un resultado o cuando cree que una circunstancia existe.

Una persona actúa "con conocimiento" cuando es consciente de que la producción del resultado es una consecuencia prácticamente segura de su conducta o cuando es consciente de que la existencia de una circunstancia es prácticamente segura.

Una persona actúa "temerariamente" cuando es consciente de que su conducta genera un riesgo sustancial e injustificado de que se produzca el resultado o la circunstancia prohibida por ley, y a pesar de conocer el riesgo, la persona continúa con su acción u omisión. Al evaluar si era consciente del riesgo, deberán determinar si había previsto la posibilidad de que existiese ese riesgo. Al momento de evaluar si un riesgo fue sustancial, deberán considerar la probabilidad de que se produjera el daño, el resultado o la circunstancia, y la magnitud del daño. Al evaluar si un riesgo fue injustificado, deberán considerar lo que motivó a la persona a asumirlo.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no a propósito, con conocimiento o temerariamente. Pueden inferir o deducir razonablemente de la prueba presentada y admitida el propósito, el conocimiento o la temeridad. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona

acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por violar el Artículo 4.2(m) de la Ley Orgánica de la Oficina de Ética Gubernamental.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por violar el Artículo 4.2(m) de la Ley Orgánica de la Oficina de Ética Gubernamental.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 1.2 (*Definiciones*), el Artículo 4.1 (*Jurisdicción y alcance*), el Artículo 4.2(m) (*Prohibiciones éticas de carácter general*), el Artículo 4.7 (*Sanciones y penalidades*) y el Artículo 4.8 (*Normas de conducta aplicables a los servidores y ex servidores públicos de la Rama Judicial y la Rama Legislativa*) de la Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico, Ley 1-2012, según enmendada, 3 LPRA secs. 1854, 1857, 1857a, 1857f y 1857g; el Artículo 14 (*Definiciones*), el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*) y el Artículo 22 (*Elementos subjetivos del delito*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5014, 5034 y 5035).

**COMENTARIO:**

El Artículo 4.7 de la Ley 1-2012, *supra*, establece el elemento mental que aplica a este delito. Nótese que penaliza como delito grave la violación de forma intencional de las prohibiciones de los incisos (b), (c), (d), (e), (f), (m), (n), (o), (p) y (q) del Artículo 4.2, al igual que las prohibiciones de los incisos (b) y (c) del Artículo 4.3.

Por su parte, la Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico, ahora forma parte integral del Código Anticorrupción para el Nuevo Puerto Rico (Código Anticorrupción), Ley 2-2018 (3 LPRA sec. 1881 *et seq.*), en su Título II (Subcapítulo II en Leyes de Puerto Rico Anotadas).

Toda instrucción de los delitos particulares debe ir precedida de la Instrucción 4.15, que alude a la definición del concepto "elementos del delito".

Adviértase que se recogen en la Instrucción los elementos subjetivos del delito, por lo que no es necesario impartir también la Instrucción 4.5.

**19.7   Solicitar o Aceptar un Beneficio para una Actividad Política (Art. 4.2(n))**

Contra la persona acusada se ha presentado una acusación por violación al Artículo 4.2(n) de la Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico.

La ley prohíbe que un(a) servidor(a) público(a) intencionalmente solicite o acepte, por sí o a través de una persona privada o negocio, un beneficio de un contratista o de una entidad reglamentada por su agencia para una actividad política.

Los elementos de este delito son los siguientes:

> (1) Que un(a) servidor(a) público(a),
>
> (2) intencionalmente,
>
> (3) solicite o acepte un beneficio,
>
> (4) por sí o a través de una persona privada o negocio,
>
> (5) de un contratista o de una entidad reglamentada por su agencia
>
> (6) para una actividad política.

"Servidor(a) público(a)" es la persona en el gobierno que interviene o no en la formulación e implantación de la política pública, aunque desempeñe su encomienda permanente o temporalmente, con o sin remuneración. También incluye a cualquier contratista independiente cuyo contrato equivale a un puesto o cargo, o que entre sus responsabilidades esté la de intervenir directamente en la formulación e implantación de la política pública.

"Beneficio" significa cualquier provecho, utilidad, lucro o ganancia. No se limita a una ganancia económica o material, sino que denota cualquier forma de ventaja.

"Persona privada" significa una persona natural o jurídica, bien sea una persona particular o una corporación, sin incluir las entidades públicas.

"Intencionalmente" es equivalente a actuar "a propósito", "con conocimiento" o "temerariamente".

El propósito, el conocimiento y la temeridad son estados mentales.

Una persona actúa "a propósito" cuando su objetivo consciente es la producción de un resultado o cuando cree que una circunstancia existe.

Una persona actúa "con conocimiento" cuando es consciente de que la producción del resultado es una consecuencia prácticamente segura de su conducta o cuando es consciente de que la existencia de una circunstancia es prácticamente segura.

Una persona actúa "temerariamente" cuando es consciente de que su conducta genera un riesgo sustancial e injustificado de que se produzca el resultado o la circunstancia prohibida por ley, y a pesar de conocer el riesgo, la persona continúa con su acción u omisión. Al evaluar si era consciente del riesgo, deberán determinar si había previsto la posibilidad de que existiese ese riesgo. Al momento de evaluar si un riesgo fue sustancial, deberán considerar la probabilidad de que se produjera el daño, el resultado o la circunstancia, y la

magnitud del daño. Al evaluar si un riesgo fue injustificado, deberán considerar lo que motivó a la persona a asumirlo.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no a propósito, con conocimiento o temerariamente. Pueden inferir o deducir razonablemente de la prueba presentada y admitida el propósito, el conocimiento o la temeridad. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por violar el Artículo 4.2(n) de la Ley Orgánica de la Oficina de Ética Gubernamental.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por violar el Artículo 4.2(n) de la Ley Orgánica de la Oficina de Ética Gubernamental.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 1.2 (*Definiciones*), el Artículo 4.1 (*Jurisdicción y alcance*), el Artículo 4.2(n) (*Prohibiciones éticas de carácter general*), el Artículo 4.7 (*Sanciones y penalidades*) y el Artículo 4.8 (*Normas de conducta aplicables a los servidores y ex servidores públicos de la Rama Judicial y la Rama Legislativa*) de la Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico, Ley 1-2012, según enmendada, 3 LPRA secs. 1854, 1857, 1857a, 1857f y 1857g; el Artículo 14 (*Definiciones*), el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*) y el Artículo 22 (*Elementos subjetivos del delito*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5014, 5034 y 5035).

**COMENTARIO:**

El Artículo 4.7 de la Ley 1-2012, *supra*, establece el elemento mental que aplica a este delito. Nótese que penaliza como delito grave la violación de forma intencional de las prohibiciones de los incisos (b), (c), (d), (e), (f), (m), (n), (o), (p) y (q) del Artículo 4.2, al igual que las prohibiciones de los incisos (b) y (c) del Artículo 4.3.

Por su parte, la Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico, ahora forma parte integral del Código Anticorrupción para el Nuevo Puerto Rico (Código Anticorrupción), Ley 2-2018 (3 LPRA sec. 1881 *et seq.*), en su Título II (Subcapítulo II en Leyes de Puerto Rico Anotadas).

Toda instrucción de los delitos particulares debe ir precedida de la Instrucción 4.15, que alude a la definición del concepto "elementos del delito".

Adviértase que se recogen en la Instrucción los elementos subjetivos del delito, por lo que no es necesario impartir también la Instrucción 4.5.

### 19.8 Usurpar un Cargo o una Encomienda, o Ejercer Obstinadamente Funciones después de Cumplido el Término (Art. 4.2(o))

**[El tribunal debe impartir la instrucción de acuerdo con la modalidad que aplique].**

#### A. Usurpar un cargo o una encomienda

Contra la persona acusada se ha presentado una acusación por violación al Artículo 4.2(o) de la Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico.

La ley prohíbe que un(a) servidor(a) público(a) intencionalmente usurpe un cargo o encomienda para el que no ha sido nombrado o designado ni ejercerlo sin poseer las debidas calificaciones.

Los elementos de este delito son los siguientes:

(1) Que un(a) servidor(a) público(a),

(2) intencionalmente,

(3) **[El tribunal debe leer la modalidad que aplique según lo alegado en el pliego acusatorio:**
   (a) [usurpe un cargo o una encomienda para el que la persona no ha sido nombrada o designada] [se apropie o asuma un cargo o encomienda sin tener derecho a ello]
   (b) ejerza un cargo o encomienda sin poseer las debidas calificaciones**].**

"Servidor(a) público(a)" es la persona en el gobierno que interviene o no en la formulación e implantación de la política pública, aunque desempeñe su encomienda permanente o temporalmente, con o sin remuneración. También incluye a cualquier contratista independiente cuyo contrato equivale a un puesto o cargo, o que entre sus responsabilidades esté la de intervenir directamente en la formulación e implantación de la política pública.

"Persona privada" significa una persona natural o jurídica, bien sea una persona particular o una corporación, sin incluir las entidades públicas.

"Intencionalmente" es equivalente a actuar "a propósito", "con conocimiento" o "temerariamente".

El propósito, el conocimiento y la temeridad son estados mentales.

Una persona actúa "a propósito" cuando su objetivo consciente es la producción de un resultado o cuando cree que una circunstancia existe.

Una persona actúa "con conocimiento" cuando es consciente de que la producción del resultado es una consecuencia prácticamente segura de su conducta o cuando es consciente de que la existencia de una circunstancia es prácticamente segura.

Una persona actúa "temerariamente" cuando es consciente de que su conducta genera un riesgo sustancial e injustificado de que se produzca el resultado o la circunstancia prohibida por ley, y a pesar de conocer el riesgo, la persona continúa con su acción u omisión. Al evaluar si era consciente del riesgo, deberán determinar si había previsto la posibilidad de que existiese ese riesgo. Al momento de evaluar si un riesgo fue sustancial, deberán considerar la probabilidad de que se produjera el daño, el resultado o la circunstancia, y la magnitud del daño. Al evaluar si un riesgo fue injustificado, deberán considerar lo que motivó a la persona a asumirlo.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no a propósito, con conocimiento o temerariamente. Pueden inferir o deducir razonablemente de la prueba presentada y admitida el propósito, el conocimiento o la temeridad. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por violar el Artículo 4.2(o) de la Ley Orgánica de la Oficina de Ética Gubernamental.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por violar el Artículo 4.2(o) de la Ley Orgánica de la Oficina de Ética Gubernamental.

## B. Ejercer obstinadamente un cargo o una encomienda

Contra la persona acusada se ha presentado una acusación por violación al Artículo 4.2(o) de la Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico.

La ley prohíbe que un(a) servidor(a) público(a) intencionalmente ejerza de forma obstinada las funciones de su cargo o encomienda después de cumplido su término o de recibir una comunicación oficial que ordene la terminación o suspensión de sus funciones.

Los elementos de este delito son los siguientes:

(1) Que un(a) servidor(a) público(a),
(2) intencionalmente,
(3) ejerza de forma obstinada las funciones de su cargo o encomienda

(4) después de [cumplido su término] [recibir una comunicación oficial que ordene la terminación o suspensión de sus funciones].

"Servidor(a) público(a)" es la persona en el gobierno que interviene o no en la formulación e implantación de la política pública, aunque desempeñe su encomienda permanente o temporalmente, con o sin remuneración. También incluye a cualquier contratista independiente cuyo contrato equivale a un puesto o cargo, o que entre sus responsabilidades esté la de intervenir directamente en la formulación e implantación de la política pública.

"Persona privada" significa una persona natural o jurídica, bien sea una persona particular o una corporación, sin incluir las entidades públicas.

"Intencionalmente" es equivalente a actuar "a propósito", "con conocimiento" o "temerariamente".

El propósito, el conocimiento y la temeridad son estados mentales.

Una persona actúa "a propósito" cuando su objetivo consciente es la producción de un resultado o cuando cree que una circunstancia existe.

Una persona actúa "con conocimiento" cuando es consciente de que la producción del resultado es una consecuencia prácticamente segura de su conducta o cuando es consciente de que la existencia de una circunstancia es prácticamente segura.

Una persona actúa "temerariamente" cuando es consciente de que su conducta genera un riesgo sustancial e injustificado de que se produzca el resultado o la circunstancia prohibida por ley, y a pesar de conocer el riesgo, la persona continúa con su acción u omisión. Al evaluar si era consciente del riesgo, deberán determinar si había previsto la posibilidad de que existiese ese riesgo. Al momento de evaluar si un riesgo fue sustancial, deberán considerar la probabilidad de que se produjera el daño, el resultado o la circunstancia, y la magnitud del daño. Al evaluar si un riesgo fue injustificado, deberán considerar lo que motivó a la persona a asumirlo.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no a propósito, con conocimiento o temerariamente. Pueden inferir o deducir razonablemente de la prueba presentada y admitida el propósito, el conocimiento o la temeridad. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por violar el Artículo 4.2(o) de la Ley Orgánica de la Oficina de Ética Gubernamental.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su

culpabilidad, deberán rendir un veredicto de no culpable por violar el Artículo 4.2(o) de la Ley Orgánica de la Oficina de Ética Gubernamental.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 1.2 (*Definiciones*), el Artículo 4.1 (*Jurisdicción y alcance*), el Artículo 4.2(o) (*Prohibiciones éticas de carácter general*), el Artículo 4.7 (*Sanciones y penalidades*) y el Artículo 4.8 (*Normas de conducta aplicables a los servidores y ex servidores públicos de la Rama Judicial y la Rama Legislativa*) de la Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico, Ley 1-2012, según enmendada, 3 LPRA secs. 1854, 1857, 1857a, 1857f y 1857g; el Artículo 14 (*Definiciones*), el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*) y el Artículo 22 (*Elementos subjetivos del delito*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5014, 5034 y 5035).

**COMENTARIO:**

El Artículo 4.7 de la Ley 1-2012, *supra*, establece el elemento mental que aplica a este delito. Nótese que penaliza como delito grave la violación de forma intencional de las prohibiciones de los incisos (b), (c), (d), (e), (f), (m), (n), (o), (p) y (q) del Artículo 4.2, al igual que las prohibiciones de los incisos (b) y (c) del Artículo 4.3.

Por su parte, la Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico, ahora forma parte integral del Código Anticorrupción para el Nuevo Puerto Rico (Código Anticorrupción), Ley 2-2018 (3 LPRA sec. 1881 *et seq.*), en su Título II (Subcapítulo II en Leyes de Puerto Rico Anotadas).

Toda instrucción de los delitos particulares debe ir precedida de la Instrucción 4.15, que alude a la definición del concepto "elementos del delito".

Adviértase que se recogen en la Instrucción los elementos subjetivos del delito, por lo que no es necesario impartir también la Instrucción 4.5.

### 19.9 Alterar, Destruir, Mutilar, Remover u Ocultar Propiedad Pública Bajo Custodia (Art. 4.2(p))

Contra la persona acusada se ha presentado una acusación por violación al Artículo 4.2(p) de la Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico.

La ley prohíbe que un(a) servidor(a) público(a) intencionalmente altere, destruya, mutile, remueva u oculte, en todo o en parte, la propiedad pública bajo su custodia.

Los elementos de este delito son los siguientes:

(1) Que un(a) servidor(a) público(a),
(2) intencionalmente,

(3) altere, destruya, mutile, remueva u oculte, en todo o en parte, la propiedad pública bajo su custodia.

"Servidor(a) público(a)" es la persona en el gobierno que interviene o no en la formulación e implantación de la política pública, aunque desempeñe su encomienda permanente o temporalmente, con o sin remuneración. También incluye a cualquier contratista independiente cuyo contrato equivale a un puesto o cargo, o que entre sus responsabilidades esté la de intervenir directamente en la formulación e implantación de la política pública.

"Persona privada" significa una persona natural o jurídica, bien sea una persona particular o una corporación, sin incluir las entidades públicas.

"Intencionalmente" es equivalente a actuar "a propósito", "con conocimiento" o "temerariamente".

El propósito, el conocimiento y la temeridad son estados mentales.

Una persona actúa "a propósito" cuando su objetivo consciente es la producción de un resultado o cuando cree que una circunstancia existe.

Una persona actúa "con conocimiento" cuando es consciente de que la producción del resultado es una consecuencia prácticamente segura de su conducta o cuando es consciente de que la existencia de una circunstancia es prácticamente segura.

Una persona actúa "temerariamente" cuando es consciente de que su conducta genera un riesgo sustancial e injustificado de que se produzca el resultado o la circunstancia prohibida por ley, y a pesar de conocer el riesgo, la persona continúa con su acción u omisión. Al evaluar si era consciente del riesgo, deberán determinar si había previsto la posibilidad de que existiese ese riesgo. Al momento de evaluar si un riesgo fue sustancial, deberán considerar la probabilidad de que se produjera el daño, el resultado o la circunstancia, y la magnitud del daño. Al evaluar si un riesgo fue injustificado, deberán considerar lo que motivó a la persona a asumirlo.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no a propósito, con conocimiento o temerariamente. Pueden inferir o deducir razonablemente de la prueba presentada y admitida el propósito, el conocimiento o la temeridad. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por violar el Artículo 4.2(p) de la Ley Orgánica de la Oficina de Ética Gubernamental.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su

culpabilidad, deberán rendir un veredicto de no culpable por violar el Artículo 4.2(p) de la Ley Orgánica de la Oficina de Ética Gubernamental.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 1.2 (*Definiciones*), el Artículo 4.1 (*Jurisdicción y alcance*), el Artículo 4.2(p) (*Prohibiciones éticas de carácter general*), el Artículo 4.7 (*Sanciones y penalidades*) y el Artículo 4.8 (*Normas de conducta aplicables a los servidores y ex servidores públicos de la Rama Judicial y la Rama Legislativa*) de la Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico, Ley 1-2012, según enmendada, 3 LPRA secs. 1854, 1857, 1857a, 1857f y 1857g; el Artículo 14 (*Definiciones*), el Artículo 21 (*Formas de culpabilidad: Requisito general del elemento subjetivo*) y el Artículo 22 (*Elementos subjetivos del delito*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5014, 5034 y 5035).

**COMENTARIO:**

El Artículo 4.7 de la Ley 1-2012, *supra*, establece el elemento mental que aplica a este delito. Nótese que penaliza como delito grave la violación de forma intencional de las prohibiciones de los incisos (b), (c), (d), (e), (f), (m), (n), (o), (p) y (q) del Artículo 4.2, al igual que las prohibiciones de los incisos (b) y (c) del Artículo 4.3.

La Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico, ahora forma parte integral del Código Anticorrupción para el Nuevo Puerto Rico (Código Anticorrupción), Ley 2-2018 (3 LPRA sec. 1881 *et seq*.), en su Título II (Subcapítulo II en Leyes de Puerto Rico Anotadas).

Toda instrucción de los delitos particulares debe ir precedida de la Instrucción 4.15, que alude a la definición del concepto "elementos del delito".

Adviértase que se recogen en la Instrucción los elementos subjetivos del delito, por lo que no es necesario impartir también la Instrucción 4.5.


## 19.10 Expedir como Verdadera una Certificación o Documento que Contenga Declaraciones que le Conste que son Falsas (Art. 4.2(q))

Contra la persona acusada se ha presentado una acusación por violación al Artículo 4.2(q) de la Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico.

La ley prohíbe que un(a) servidor(a) público(a) autorizado(a) por ley para expedir certificaciones y otros documentos, intencionalmente expida como verdadera una certificación o un documento que contenga declaraciones que le consten que son falsas.

Los elementos de este delito son los siguientes:

(1) Que un(a) servidor(a) público(a)

(2) autorizado(a) por ley para expedir certificaciones y otros documentos,

(3) intencionalmente,

(4) expida como verdadera una certificación o un documento que contenga declaraciones que le consten que son falsas.

"Servidor(a) público(a)" es la persona en el gobierno que interviene o no en la formulación e implantación de la política pública, aunque desempeñe su encomienda permanente o temporalmente, con o sin remuneración. También incluye a cualquier contratista independiente cuyo contrato equivale a un puesto o cargo, o que entre sus responsabilidades esté la de intervenir directamente en la formulación e implantación de la política pública.

"Persona privada" significa una persona natural o jurídica, bien sea una persona particular o una corporación, sin incluir las entidades públicas.

"Intencionalmente" es equivalente a actuar "a propósito", "con conocimiento" o "temerariamente".

El propósito, el conocimiento y la temeridad son estados mentales.

Una persona actúa "a propósito" cuando su objetivo consciente es la producción de un resultado o cuando cree que una circunstancia existe.

Una persona actúa "con conocimiento" cuando es consciente de que la producción del resultado es una consecuencia prácticamente segura de su conducta o cuando es consciente de que la existencia de una circunstancia es prácticamente segura.

Una persona actúa "temerariamente" cuando es consciente de que su conducta genera un riesgo sustancial e injustificado de que se produzca el resultado o la circunstancia prohibida por ley, y a pesar de conocer el riesgo, la persona continúa con su acción u omisión. Al evaluar si era consciente del riesgo, deberán determinar si había previsto la posibilidad de que existiese ese riesgo. Al momento de evaluar si un riesgo fue sustancial, deberán considerar la probabilidad de que se produjera el daño, el resultado o la circunstancia, y la magnitud del daño. Al evaluar si un riesgo fue injustificado, deberán considerar lo que motivó a la persona a asumirlo.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no a propósito, con conocimiento o temerariamente. Pueden inferir o deducir razonablemente de la prueba presentada y admitida el propósito, el conocimiento o la temeridad. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por violar el Artículo 4.2(q) de la Ley Orgánica de la Oficina de Ética Gubernamental.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su

culpabilidad, deberán rendir un veredicto de no culpable por violar el Artículo 4.2(q) de la Ley Orgánica de la Oficina de Ética Gubernamental.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 1.2 (*Definiciones*), el Artículo 4.1 (*Jurisdicción y alcance*), el Artículo 4.2(q) (*Prohibiciones éticas de carácter general*), el Artículo 4.7 (*Sanciones y penalidades*) y el Artículo 4.8 (*Normas de conducta aplicables a los servidores y ex servidores públicos de la Rama Judicial y la Rama Legislativa*) de la Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico, Ley 1-2012, según enmendada, 3 LPRA secs. 1854, 1857, 1857a, 1857f y 1857g; el Artículo 14 (*Definiciones*), el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*) y el Artículo 22 (*Elementos subjetivos del delito*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5014, 5034 y 5035).

**COMENTARIO:**

El Artículo 4.7 de la Ley 1-2012, *supra*, establece el elemento mental que aplica a este delito. Nótese que penaliza como delito grave la violación de forma intencional de las prohibiciones de los incisos (b), (c), (d), (e), (f), (m), (n), (o), (p) y (q) del Artículo 4.2, al igual que las prohibiciones de los incisos (b) y (c) del Artículo 4.3.

Por su parte, la Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico, ahora forma parte integral del Código Anticorrupción para el Nuevo Puerto Rico (Código Anticorrupción), Ley 2-2018 (3 LPRA sec. 1881 *et seq.*), en su Título II (Subcapítulo II en Leyes de Puerto Rico Anotadas).

Toda instrucción de los delitos particulares debe ir precedida de la Instrucción 4.15, que alude a la definición del concepto "elementos del delito".

Adviértase que se recogen en la Instrucción los elementos subjetivos del delito, por lo que no es necesario impartir también la Instrucción 4.5.

## 19.11 Aceptar o Mantener un Empleo o unas Relaciones Contractuales con una Persona o un Negocio que tenga Relaciones con la Agencia (Art. 4.3(b))

Contra la persona acusada se ha presentado una acusación por violación al Artículo 4.3(b) de la Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico.

La ley prohíbe que un(a) servidor(a) público(a) intencionalmente acepte o mantenga un empleo o unas relaciones contractuales, de las que derive una ventaja indebida, con una persona privada o un negocio que esté reglamentado por lo que tenga relaciones contractuales, comerciales o financieras con la agencia para la que trabaja cuando el (la) servidor(a) público(a) tenga facultad para decidir o influenciar las acciones oficiales de la agencia que tengan relación con esa persona privada o negocio.

Los elementos de este delito son los siguientes:

(1) Que un(a) servidor(a) público(a),

(2) intencionalmente,

(3) acepte o mantenga un empleo o relaciones contractuales con una persona privada o negocio,

(4) que el servidor público (la servidora pública) derive una ventaja indebida del empleo o relación contractual;

(5) que la persona privada o negocio esté reglamentado por o tenga relaciones contractuales, comerciales o financieras con la agencia para la cual el (la) servidor(a) público(a), trabaja y

(6) que el servidor público (la servidora pública) este(a) último(a) tenga la facultad para decidir o influenciar las acciones oficiales de la agencia, que tengan relación con la persona o negocio que le emplea o con quien mantiene relaciones contractuales.

"Servidor(a) público(a)" es la persona en el gobierno que interviene o no en la formulación e implantación de la política pública, aunque desempeñe su encomienda permanente o temporalmente, con o sin remuneración. También incluye a cualquier contratista independiente cuyo contrato equivale a un puesto o cargo, o que entre sus responsabilidades esté la de intervenir directamente en la formulación e implantación de la política pública.

"Beneficio" significa cualquier provecho, utilidad, lucro o ganancia. No se limita a una ganancia económica o material, sino que denota cualquier forma de ventaja.

"Persona privada" significa una persona natural o jurídica, bien sea una persona particular o una corporación, sin incluir las entidades públicas.

"Intencionalmente" es equivalente a actuar "a propósito", "con conocimiento" o "temerariamente".

El propósito, el conocimiento y la temeridad son estados mentales.

Una persona actúa "a propósito" cuando su objetivo consciente es la producción de un resultado o cuando cree que una circunstancia existe.

Una persona actúa "con conocimiento" cuando es consciente de que la producción del resultado es una consecuencia prácticamente segura de su conducta o cuando es consciente de que la existencia de una circunstancia es prácticamente segura.

Una persona actúa "temerariamente" cuando es consciente de que su conducta genera un riesgo sustancial e injustificado de que se produzca el resultado o la circunstancia prohibida por ley, y a pesar de conocer el riesgo, la persona continúa con su acción u omisión. Al evaluar si era consciente del riesgo, deberán determinar si había previsto la posibilidad de que existiese ese riesgo. Al momento de evaluar si un riesgo fue sustancial, deberán considerar la probabilidad de que se produjera el daño, el resultado o la circunstancia, y la magnitud del daño. Al evaluar si un riesgo fue injustificado, deberán considerar lo que motivó a la persona a asumirlo.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no a propósito, con conocimiento o temerariamente. Pueden inferir o deducir razonablemente de la prueba presentada y admitida el propósito, el conocimiento o la temeridad. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por violar el Artículo 4.3(b) de la Ley Orgánica de la Oficina de Ética Gubernamental.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por violar el Artículo 4.3(b) de la Ley Orgánica de la Oficina de Ética Gubernamental.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 1.2 (*Definiciones*), el Artículo 4.1 (*Jurisdicción y alcance*), el Artículo 4.3(b) (*Prohibiciones relacionadas con otros empleos, contratos o negocios*), el Artículo 4.7 (*Sanciones y penalidades*) y el Artículo 4.8 (*Normas de conducta aplicables a los servidores y ex servidores públicos de la Rama Judicial y la Rama Legislativa*) de la Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico, Ley 1-2012, según enmendada, 3 LPRA secs. 1854, 1857b y 1857f, y el Artículo 14 (*Definiciones*), el Artículo 21 (*Formas de culpabilidad: Requisito general del elemento subjetivo*) y el Artículo 22 (*Elementos subjetivos del delito*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5014, 5034 y 5035).

**COMENTARIO:**

El Artículo 4.7 de la Ley 1-2012, *supra*, establece el elemento mental que aplica a este delito. Nótese que penaliza como delito grave la violación de forma intencional de las prohibiciones de los incisos (b), (c), (d), (e), (f), (m), (n), (o), (p) y (q) del Artículo 4.2, al igual que las prohibiciones de los incisos (b) y (c) del Artículo 4.3.

Por su parte, la Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico, ahora forma parte integral del Código Anticorrupción para el Nuevo Puerto Rico (Código Anticorrupción), Ley 2-2018 (3 LPRA sec. 1881 *et seq.*), en su Título II (Subcapítulo II en Leyes de Puerto Rico Anotadas).

El Código Anticorrupción, en su Artículo 3.1(m), define "persona jurídica" y establece que el término "incluye las corporaciones, corporaciones profesionales, sociedades civiles y mercantiles, sociedades especiales, cooperativas y cualquier entidad definida como tal en cualquier ley aplicable, asociaciones, sociedades o corporaciones de facto, incluyendo

aquellas que constituyan para estos fines un alter ego de la persona jurídica, afiliadas o subsidiarias de la misma". 3 LPRA sec. 1883(m).

Toda instrucción de los delitos particulares debe ir precedida de la Instrucción 4.15, que alude a la definición del concepto "elementos del delito".

Adviértase que se recogen en la Instrucción los elementos subjetivos del delito, por lo que no es necesario impartir también la Instrucción 4.5.

## 19.12 Intervención o Participación en el Perfeccionamiento del Contrato en que se tenga un Interés Pecuniario (Art. 4.3(c))

Contra la persona acusada se ha presentado una acusación por violación al Artículo 4.3(c) de la Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico.

La ley prohíbe que un(a) servidor(a) público(a), autorizado(a) para contratar o facultado(a) para aprobar o recomendar el otorgamiento de un contrato en nombre de la agencia para la cual trabaja, intencionalmente intervenga o participe en el perfeccionamiento de un contrato con una persona privada o negocio en el que él (ella), un(a) miembro de su unidad familiar, su pariente, su socio o una persona que comparta su residencia, tenga o haya tenido, directa o indirectamente, un interés pecuniario durante los últimos dos años anteriores a su nombramiento. Ese(a) servidor(a) público(a) no puede intervenir ni participar en el perfeccionamiento del contrato hasta pasados dos años desde su nombramiento.

Los elementos de este delito son los siguientes:

(1) Que un(a) servidor(a) público(a),

(2) autorizado(a) para contratar o facultado(a) para aprobar o recomendar el otorgamiento de un contrato en nombre de la agencia para la cual trabaja,

(3) intencionalmente

(4) intervenga o participe en el proceso de contratación con una persona privada o negocio

(5) con quien el (la) servidor(a) público(a), cualquier miembro de su unidad familiar, su pariente, su socio o una persona que comparta su residencia tenga o haya tenido, directa o indirectamente, un interés económico durante los últimos dos años anteriores a su nombramiento.

"Servidor(a) público(a)" es la persona en el gobierno que interviene o no en la formulación e implantación de la política pública, aunque desempeñe su encomienda permanente o temporalmente, con o sin remuneración. También incluye a cualquier contratista independiente cuyo contrato equivale a un puesto o cargo, o que entre sus responsabilidades esté la de intervenir directamente en la formulación e implantación de la política pública.

"Beneficio" significa cualquier provecho, utilidad, lucro o ganancia. No se limita a una ganancia económica o material, sino que denota cualquier forma de ventaja.

"Persona privada" significa una persona natural o jurídica, bien sea una persona particular o una corporación, sin incluir las entidades públicas.

"Unidad familiar" implica aquellos(as) cuyos asuntos financieros están bajo el control del (de la) servidor(a) público(a).

"Nombramiento" es la designación oficial de cualquier naturaleza para realizar determinadas funciones.

"Intencionalmente" es equivalente a actuar "a propósito", "con conocimiento" o "temerariamente".

El propósito, el conocimiento y la temeridad son estados mentales.

Una persona actúa "a propósito" cuando su objetivo consciente es la producción de un resultado o cuando cree que una circunstancia existe.

Una persona actúa "con conocimiento" cuando es consciente de que la producción del resultado es una consecuencia prácticamente segura de su conducta o cuando es consciente de que la existencia de una circunstancia es prácticamente segura.

Una persona actúa "temerariamente" cuando es consciente de que su conducta genera un riesgo sustancial e injustificado de que se produzca el resultado o la circunstancia prohibida por ley, y a pesar de conocer el riesgo, la persona continúa con su acción u omisión. Al evaluar si era consciente del riesgo, deberán determinar si había previsto la posibilidad de que existiese ese riesgo. Al momento de evaluar si un riesgo fue sustancial, deberán considerar la probabilidad de que se produjera el daño, el resultado o la circunstancia, y la magnitud del daño. Al evaluar si un riesgo fue injustificado, deberán considerar lo que motivó a la persona a asumirlo.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no a propósito, con conocimiento o temerariamente. Pueden inferir o deducir razonablemente de la prueba presentada y admitida el propósito, el conocimiento o la temeridad. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por violar el Artículo 4.3(c) de la Ley Orgánica de la Oficina de Ética Gubernamental.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por violar el Artículo 4.3(c) de la Ley Orgánica de la Oficina de Ética Gubernamental.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 1.2 (*Definiciones*), el Artículo 4.1 (*Jurisdicción y alcance*), el Artículo 4.3(c) (*Prohibiciones relacionadas con otros empleos, contratos o negocios*), el Artículo 4.7 (*Sanciones y penalidades*) y el Artículo 4.8 (*Normas de conducta aplicables a los servidores y ex servidores públicos de la Rama Judicial y la Rama Legislativa*) de la Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico, Ley 1-2012, según enmendada, 3 LPRA secs. 1854, 1857, 1857b, 1857f y 1857g; el Artículo 14 (*Definiciones*), el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*) y el Artículo 22 (*Elementos subjetivos del delito*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5014, 5034 y 5035).

**COMENTARIO:**

El Artículo 4.7 de la Ley 1-2012, *supra*, establece el elemento mental que aplica a este delito. Nótese que penaliza como delito grave la violación de forma intencional de las prohibiciones de los incisos (b), (c), (d), (e), (f), (m), (n), (o), (p) y (q) del Artículo 4.2, al igual que las prohibiciones de los incisos (b) y (c) del Artículo 4.3.

Por su parte, la Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico, ahora forma parte integral del Código Anticorrupción para el Nuevo Puerto Rico (Código Anticorrupción), Ley 2-2018 (3 LPRA sec. 1881 *et seq.*), en su Título II (Subcapítulo II en Leyes de Puerto Rico Anotadas).

Toda instrucción de los delitos particulares debe ir precedida de la Instrucción 4.15, que alude a la definición del concepto "elementos del delito".

Adviértase que se recogen en la Instrucción los elementos subjetivos del delito, por lo que no es necesario impartir también la Instrucción 4.5.

### 19.13 Falsificar o Dejar de Presentar o de Divulgar la Información Requerida en el Informe Financiero (Art. 5.7)

Contra la persona acusada se ha presentado una acusación por violación al Artículo 5.7 de la Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico.

La ley prohíbe que un(a) servidor(a) público(a) de la Rama Ejecutiva, a sabiendas y voluntariamente, falsifique o deje de presentar o de divulgar (o comunicar) cualquier información que se le requiera en el informe financiero o que le solicite la Oficina de Ética Gubernamental.

Los elementos de este delito son los siguientes:

(1) Que un(a) servidor(a) público(a) de la Rama Ejecutiva,
(2) a sabiendas y voluntariamente,

(3) falsifique o deje de presentar o de divulgar cualquier información que se le requiera en el informe financiero, o que le solicite la Oficina de Ética Gubernamental.

"Servidor(a) público(a)" es la persona en el gobierno que interviene o no en la formulación e implantación de la política pública, aunque desempeñe su encomienda permanente o temporalmente, con o sin remuneración. También incluye a cualquier contratista independiente cuyo contrato equivale a un puesto o cargo, o que entre sus responsabilidades esté la de intervenir directamente en la formulación e implantación de la política pública.

"Rama Ejecutiva" incluye todas las agencias del gobierno de Puerto Rico.

"Informe financiero" es el formulario oficial electrónico adoptado y provisto por la Oficina de Ética Gubernamental, así como cualquier información adicional que requiera la Oficina o que suministre el (la) servidor(a) o ex servidor(a) público(a). Incluye el informe financiero anual, de toma de posesión o de cese.

"Voluntariamente" significa que el acto nace de la voluntad y no por fuerza o necesidad extraña a ella.

"A sabiendas" es sinónimo de "con conocimiento". Una persona actúa "con conocimiento" cuando es consciente de que la producción del resultado o la existencia de la circunstancia prohibida por ley es prácticamente segura.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó voluntariamente y con conocimiento. Pueden inferir o deducir razonablemente de la prueba presentada y admitida la voluntariedad y el conocimiento. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por violar el Artículo 5.7 de la Ley Orgánica de la Oficina de Ética Gubernamental.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por violar el Artículo 5.7 de la Ley Orgánica de la Oficina de Ética Gubernamental.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 1.2 (*Definiciones*), el Artículo 5.4 (*Contenido de los informes*) y el Artículo 5.7 (*Sanciones y penalidades aplicables a los servidores públicos de la Rama Ejecutiva*) de la Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico, Ley 1-2012, según enmendada, 3 LPRA secs. 1854, 1858c y

1858f); el Artículo 14 (*Definiciones*), el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*) y el Artículo 22 (*Elementos subjetivos del delito*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5014, 5034 y 5035).

**COMENTARIO:**

Si bien todo el Capítulo V de la Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico de 2011 trata de la materia de los informes financieros, la definición del término "informe financiero" proviene del Artículo 1.2(t) de esta ley, *supra*. Por otra parte, su Artículo 5.4, *supra*, detalla los requerimientos del contenido de los informes financieros.

La Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico ahora forma parte integral del Código Anticorrupción para el Nuevo Puerto Rico, Ley 2-2018, en su Título II (Subtítulo II en Leyes de Puerto Rico Anotadas).

Toda instrucción de los delitos particulares debe ir precedida de la Instrucción 4.15, que alude a la definición del concepto "elementos del delito".

Adviértase que se recogen en la Instrucción los elementos subjetivos del delito, por lo que no es necesario impartir también la Instrucción 4.5.

CAPÍTULO 20
**CÓDIGO ANTICORRUPCIÓN PARA EL NUEVO PUERTO RICO**

**20.1 Ofrecer o Entregar Regalos a un(a) Servidor(a) Público(a) de una Agencia Ejecutiva (Art. 3.2(f))**

Contra la persona acusada se ha presentado una acusación por violación al Artículo 3.2(f) del Código Anticorrupción para el Nuevo Puerto Rico.

La ley prohíbe que una persona intencionalmente ofrezca o entregue regalos, bienes de valor monetario, contribuciones, gratificaciones, favores, servicios, donativos, préstamos o participación en alguna entidad mercantil o en un negocio jurídico a un(a) servidor(a) público(a) o ex servidor(a) público(a) de una agencia ejecutiva, o a miembros de la unidad familiar de estos(as), con la que interese establecer o haya establecido una relación contractual, comercial o financiera, bien sea directa o indirectamente. [En los casos que se refieren a un(a) ex servidor(a) público(a), la prohibición se extiende por un año a partir del cese de sus funciones en la agencia ejecutiva]. Esta obligación se extiende a la etapa previa y posterior a la perfección del contrato, negocio o transacción, así como a su duración.

Los elementos de este delito son los siguientes:

(1) Que una persona,

(2) intencionalmente,

(3) ofrezca o entregue, directa o indirectamente, regalos, bienes de valor monetario, contribuciones, gratificaciones, favores, servicios, donativos, préstamos o participación en alguna entidad mercantil o negocio jurídico

(4) [a un(a) servidor(a) público(a) en una agencia ejecutiva o a miembros de su unidad familiar] [a un(a) ex servidor(a) público(a) o miembros de su unidad familiar dentro del año del cese de sus funciones] y

(5) que interese establecer, o haya establecido, una relación contractual, comercial o financiera con la agencia ejecutiva.

"Persona" es cualquier persona natural o jurídica, o grupos de personas o asociaciones que interesen entablar con las agencias ejecutivas una relación contractual, comercial o financiera, o que han perfeccionado un contrato para la prestación de bienes o servicios con el Estado, así como las entidades que reciban o interesen recibir algún incentivo económico de las agencias ejecutivas del gobierno. Incluye también a las personas naturales o jurídicas que son o vayan a ser afectadas por alguna reglamentación establecida por las agencias ejecutivas del gobierno de Puerto Rico.

"Persona natural" es toda persona definida como tal en cualquier ley aplicable, incluyendo el Código Civil de Puerto Rico, e incluye, pero no se limita, a toda persona que funja como presidente(a), vicepresidente(a), director(a), director(a) ejecutivo(a) o cualquier miembro de una junta de oficiales o junta de directores(as) o persona que desempeñe funciones equivalentes.

"Persona jurídica" incluye a las corporaciones, corporaciones profesionales, sociedades civiles y mercantiles, sociedades especiales, cooperativas y cualquier entidad definida como tal en cualquier ley aplicable, asociaciones, sociedades o corporaciones *de facto*, incluso las que constituyan para estos fines un *alter ego* de la persona jurídica, incluidas las afiliadas o subsidiarias. Una corporación *de facto* ha sido definida como una corporación creada de forma tan defectuosa como para no poder ser considerada como una corporación. *Alter ego* es una persona que puede actuar por otra sin restricciones.

"Regalo" es un pago o enriquecimiento sin una contraprestación equivalente o recibiéndose una de menor valor. Incluye, entre otros, dinero, bienes o cualquier objeto, oportunidades económicas favorables, propinas, concesión, beneficio, descuentos, privilegios o atenciones especiales.

"Servidor(a) público(a)" comprende a los(as) funcionarios(as) y los(as) empleados(as) público(a).

"Funcionario(a)" es la persona investida con parte de la soberanía del Estado, por lo que interviene en la formulación e implantación de política pública y ocupa un cargo o está empleada en el gobierno de Puerto Rico.

"Empleado(a) público(a)" es la persona que ocupa un cargo o está empleada en las agencias ejecutivas del gobierno de Puerto Rico, en la Rama Legislativa o en la Rama Judicial y que no está investida con parte de la soberanía del Estado. Comprende a empleados(as) público(as) regulares e irregulares, los(as) que prestan servicios por contrato que equivalen a un puesto o cargo regular, los(as) de nombramiento transitorio y los(as) que se encuentran en período probatorio.

"Ex servidor(a) público(a)" es la persona que haya fungido como funcionario(a) o empleado(a) público(a) en las agencias ejecutivas del gobierno de Puerto Rico, en la Rama Legislativa o en la Rama Judicial.

"Agencias ejecutivas" son los organismos y las entidades de la Rama Ejecutiva del gobierno de Puerto Rico, incluyendo a las corporaciones públicas, los departamentos, las agencias, las oficinas, los municipios u otras divisiones instrumentales.

"Unidad familiar" está compuesta por el (la) cónyuge del (de la) servidor(a) o ex servidor(a) público(a), los(as) hijos(as) dependientes de este(a), los familiares que sin ser dependientes ni residir con el (la) servidor(a) o ex servidor(a) público(a) estén dentro del cuarto grado de consanguinidad o segundo de afinidad, o las personas que comparten con el (la) servidor(a) o ex servidor(a) público(a) su residencia legal o cuyos asuntos financieros están bajo el control *de jure* o *de facto* del (de la) servidor(a) o ex servidor(a) público.

"Contrato" es un pacto, convenio o negocio jurídico en el que las partes se obligan a dar alguna cosa o a hacer o dejar de hacer determinado acto y que se otorga con el consentimiento de los(as) contratantes en relación con un objeto cierto, con la materia del contrato y en virtud de la causa que se establezca.

"Intencionalmente" es equivalente a actuar "a propósito", "con conocimiento" o "temerariamente".

El propósito, el conocimiento y la temeridad son estados mentales.

Una persona actúa "a propósito" cuando su objetivo consciente es la producción de un resultado o cuando cree que una circunstancia existe.

Una persona actúa "con conocimiento" cuando es consciente que la producción del resultado es una consecuencia prácticamente segura de su conducta o cuando es consciente que la existencia de una circunstancia es prácticamente segura.

Una persona actúa "temerariamente" cuando es consciente de que su conducta genera un riesgo sustancial e injustificado de que se produzca el resultado o la circunstancia prohibida por ley, y a pesar de conocer el riesgo, la persona continúa con su acción u omisión. Al evaluar si era consciente del riesgo, deberán determinar si había previsto la posibilidad de que existiese ese riesgo. Al momento de evaluar si un riesgo fue sustancial, deberán considerar la probabilidad de que se produjera el daño, el resultado o la circunstancia y la magnitud del daño. Al evaluar si un riesgo fue injustificado, deberán considerar lo que motivó a la persona a asumirlo.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no a propósito, con conocimiento o temerariamente. Pueden inferir o deducir razonablemente de la prueba presentada y admitida el propósito, el conocimiento o la temeridad. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por violar el Artículo 3.2(f) del Código Anticorrupción.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por violar el Artículo 3.2(f) del Código Anticorrupción.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 3.1 (*Definiciones*), el Artículo 3.2(f) (*Obligaciones y responsabilidades éticas*) y el Artículo 3.7 (*Sanciones y penalidades*) del Código Anticorrupción para el Nuevo Puerto Rico, Ley 2-2018 (3 LPRA secs. 1883, 1883a y 1883f); el Artículo 14 (*Definiciones*), el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*) y el Artículo 22 (*Elementos subjetivos del delito*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5014, 5034 y 5035).

**COMENTARIO:**

El Artículo 3.2 de la Ley 2-2018, *supra*, se enmarca en el Título III de este estatuto, nombrado "Código de ética para contratistas, suplidores, y solicitantes de incentivos económicos del gobierno de Puerto Rico". Por otra parte, el Artículo 3.7 de la Ley 2-2018, *supra*, penaliza

como delito grave la violación intencional de las prohibiciones de los incisos (f), (j), (k), (l), (o) y (p) del Artículo 3.2, *supra*.

En cuanto a la definición de "unidad familiar", se ilustran a continuación los conceptos "familiares dentro del cuarto grado de consanguinidad" y "familiares dentro del segundo de afinidad". Se entiende que son parientes por consanguinidad hasta el cuarto grado el padre, la madre, los(as) abuelos(as), los(as) nietos(as), los(as) hermanos(as), los(as) tíos(as), los(as) sobrinos(as), y los(as) primos(as). Por su parte, son parientes por afinidad hasta el segundo grado las personas con quien se hayan casado estos(as) parientes de sangre y los(as) hijastros(as), los(as) hermanastros(as) y los(as) nietos(as) políticos(as). Igualmente lo será la familia política, tales como los(as) cuñados(as), los yernos y las nueras*.

La definición de "corporación *de facto*" proviene del caso *Asoc. de Res. Est. Cidra v. Future Dev.*, 152 DPR 54 (2000). Por su parte, la definición de "*alter ego*" emana del diccionario de la Real Academia Española.

Toda instrucción de los delitos particulares debe ir precedida de la Instrucción 4.15, que alude a la definición del concepto "elementos del delito".

Adviértase que se recogen en la Instrucción los elementos subjetivos del delito, por lo que no es necesario impartir también la Instrucción 4.5.

## 20.2   Hacer Gestiones para la Concesión Indebida de Ventajas (Art. 3.2(j))

Contra la persona acusada se ha presentado una acusación por violación al Artículo 3.2(j) del Código Anticorrupción para el Nuevo Puerto Rico.

La ley prohíbe que una persona intencionalmente entable gestiones con los(as) secretarios(as), jefes(as) de agencias, ejecutivos(as) municipales o directores(as) ejecutivos(as) de corporaciones públicas conducentes a la concesión indebida de ventajas, privilegios o favores para el beneficio de estas o de cualquier otra persona representadas por estas. También prohíbe que se requieran los servicios de terceras personas para estos fines.

Los elementos de este delito son los siguientes:

(1) Que una persona,

(2) directamente o a través de terceras personas,

(3) intencionalmente,

(4) haga gestiones con los secretarios(as), jefes(as) de agencias, ejecutivos(as) municipales o directores(as) ejecutivos(as) de corporaciones públicas

(5) dirigidas a la concesión indebida de ventajas, privilegios o favores para su beneficio personal o para el de cualquier otra persona que represente.

"Persona" es cualquier persona natural o jurídica, o grupos de personas o asociaciones que interesen entablar con las agencias ejecutivas una relación contractual, comercial o financiera, o que han perfeccionado un contrato para la prestación de bienes o servicios con el Estado, así como las entidades que reciban o interesen recibir algún incentivo económico de las agencias ejecutivas del gobierno. Incluye también a las personas naturales

o jurídicas que son o vayan a ser afectadas por alguna reglamentación establecida por las agencias ejecutivas del gobierno de Puerto Rico.

"Persona natural" es toda persona definida como tal en cualquier ley aplicable, incluyendo el Código Civil de Puerto Rico, e incluye, pero no se limita, a toda persona que funja como presidente(a), vicepresidente(a), director(a), director(a) ejecutivo(a) o cualquier miembro de una junta de oficiales o junta de directores(as) o persona que desempeñe funciones equivalentes.

"Persona jurídica" incluye a las corporaciones, corporaciones profesionales, sociedades civiles y mercantiles, sociedades especiales, cooperativas y cualquier entidad definida como tal en cualquier ley aplicable, asociaciones, sociedades o corporaciones *de facto*, incluso las que constituyan para estos fines un *alter ego* de la persona jurídica, incluidas las afiliadas o subsidiarias. Una corporación *de facto* ha sido definida como una corporación creada de forma tan defectuosa como para no poder ser considerada como una corporación. *Alter ego* es una persona que puede actuar por otra sin restricciones.

"Intencionalmente" es equivalente a actuar "a propósito", "con conocimiento" o "temerariamente".

El propósito, el conocimiento y la temeridad son estados mentales.

Una persona actúa "a propósito" cuando su objetivo consciente es la producción de un resultado o cuando cree que una circunstancia existe.

Una persona actúa "con conocimiento" cuando es consciente que la producción del resultado es una consecuencia prácticamente segura de su conducta o cuando es consciente que la existencia de una circunstancia es prácticamente segura.

Una persona actúa "temerariamente" cuando es consciente de que su conducta genera un riesgo sustancial e injustificado de que se produzca el resultado o la circunstancia prohibida por ley, y a pesar de conocer el riesgo, la persona continúa con su acción u omisión. Al evaluar si era consciente del riesgo, deberán determinar si había previsto la posibilidad de que existiese ese riesgo. Al momento de evaluar si un riesgo fue sustancial, deberán considerar la probabilidad de que se produjera el daño, el resultado o la circunstancia y la magnitud del daño. Al evaluar si un riesgo fue injustificado, deberán considerar lo que motivó a la persona a asumirlo.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no a propósito, con conocimiento o temerariamente. Pueden inferir o deducir razonablemente de la prueba presentada y admitida el propósito, el conocimiento o la temeridad. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por violar el Artículo 3.2(j) del Código Anticorrupción.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada

cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por violar el Artículo 3.2(j) del Código Anticorrupción.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 3.1 (*Definiciones*), el Artículo 3.2(j) (*Obligaciones y responsabilidades éticas*) y el Artículo 3.7 (*Sanciones y penalidades*) del Código Anticorrupción para el Nuevo Puerto Rico, Ley 2-2018 (3 LPRA secs. 1883, 1883a y 1883f); el Artículo 14 (*Definiciones*), el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*) y el Artículo 22 (*Elementos subjetivos del delito*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5014, 5034 y 5035).

**COMENTARIO:**

El Artículo 3.2 de la Ley 2-2018, *supra*, se enmarca en el Título III de este estatuto, nombrado "Código de ética para contratistas, suplidores, y solicitantes de incentivos económicos del gobierno de Puerto Rico". Por otra parte, el Artículo 3.7 de la Ley 2-2018, *supra*, penaliza como delito grave la violación intencional de las prohibiciones de los incisos (f), (j), (k), (l), (o) y (p) del Artículo 3.2, *supra*.

La definición de "corporación *de facto*" proviene del caso *Asoc. de Res. Est. Cidra v. Future Dev.*, 152 DPR 54 (2000). Por su parte, la definición de "*alter ego"* emana del diccionario de la Real Academia Española.

Toda instrucción de los delitos particulares debe ir precedida de la Instrucción 4.15, que alude a la definición del concepto "elementos del delito".

Adviértase que se recogen en la Instrucción los elementos subjetivos del delito, por lo que no es necesario impartir también la Instrucción 4.5.


**20.3  Utilizar Información Confidencial para Fines Ajenos a la Encomienda Contratada (Art. 3.2(k))**

Contra la persona acusada se ha presentado una acusación por violación al Artículo 3.2(k) del Código Anticorrupción para el Nuevo Puerto Rico.

La ley prohíbe que una persona intencionalmente utilice la información confidencial, adquirida en el curso o como consecuencia de alguna gestión que el gobierno de Puerto Rico le haya encomendado mediante contrato, para fines ajenos a la encomienda contratada o para obtener, directa o indirectamente, ventaja o beneficio económico para sí, para un miembro de su unidad familiar o para cualquier otra persona, negocio o entidad.

Los elementos de este delito son los siguientes:

(1) Que una persona,
(2) intencionalmente,

(3) utilice información confidencial

(4) obtenida en el curso o como consecuencia de alguna gestión encomendada por el gobierno de Puerto Rico mediante contrato

(5) [para fines ajenos a la encomienda contratada] [para obtener directa o indirectamente ventaja o beneficio económico para sí, para un miembro de su unidad familiar o para cualquier otra persona, negocio o entidad].

"Persona" es cualquier persona natural o jurídica, o grupos de personas o asociaciones que interesen entablar con las agencias ejecutivas una relación contractual, comercial o financiera, o que han perfeccionado un contrato para la prestación de bienes o servicios con el Estado, así como las entidades que reciban o interesen recibir algún incentivo económico de las agencias ejecutivas del gobierno. Incluye también a las personas naturales o jurídicas que son o vayan a ser afectadas por alguna reglamentación establecida por las agencias ejecutivas del gobierno de Puerto Rico.

"Persona natural" es toda persona definida como tal en cualquier ley aplicable, incluyendo el Código Civil de Puerto Rico, e incluye, pero no se limita, a toda persona que funja como presidente(a), vicepresidente(a), director(a), director(a) ejecutivo(a) o cualquier miembro de una junta de oficiales o junta de directores(as) o persona que desempeñe funciones equivalentes.

"Persona jurídica" incluye a las corporaciones, corporaciones profesionales, sociedades civiles y mercantiles, sociedades especiales, cooperativas y cualquier entidad definida como tal en cualquier ley aplicable, asociaciones, sociedades o corporaciones *de facto*, incluso las que constituyan para estos fines un *alter ego* de la persona jurídica, incluidas las afiliadas o subsidiarias. Una corporación *de facto* ha sido definida como una corporación creada de forma tan defectuosa como para no poder ser considerada como una corporación. *Alter ego* es una persona que puede actuar por otra sin restricciones.

"Información confidencial" es la información declarada así por ley; la que está protegida por alguno de los privilegios evidenciarios; la que, si se revelara, puede lesionar los derechos fundamentales de terceros o el derecho a la intimidad y a la vida privada; la que está cobijada por el privilegio ejecutivo; la información que sea parte del proceso deliberativo en la formulación de la política pública; la información cuya divulgación pueda poner en peligro la vida o la integridad de alguna persona; la información cuya divulgación pueda afectar investigaciones criminales o administrativas en curso, y la información cuya divulgación pueda afectar la seguridad del país o afectar transacciones de negocios o gestiones oficiales del Estado que están en proceso durante la solicitud.

"Contrato" es el pacto, convenio o negocio jurídico en el que las partes se obligan a dar alguna cosa o a hacer o dejar de hacer determinado acto, y que se otorga con el consentimiento de los(las) contratantes en relación con un objeto cierto, con la materia del contrato y en virtud de la causa que se establezca.

"Unidad familiar" está compuesta por el (la) cónyuge del (de la) servidor(a) o ex servidor(a) público(a), los(as) hijos(as) dependientes de este(a), los familiares que sin ser dependientes ni residir con el (la) servidor(a) o ex servidor(a) público(a) estén dentro del cuarto grado de consanguinidad o segundo de afinidad, o las personas que comparten con el

(la) servidor(a) o ex servidor(a) público(a) su residencia legal o cuyos asuntos financieros están bajo el control *de jure* o *de facto* del (de la) servidor(a) o ex servidor(a) público.

"Intencionalmente" es equivalente a actuar "a propósito", "con conocimiento" o "temerariamente".

El propósito, el conocimiento y la temeridad son estados mentales.

Una persona actúa "a propósito" cuando su objetivo consciente es la producción de un resultado o cuando cree que una circunstancia existe.

Una persona actúa "con conocimiento" cuando es consciente que la producción del resultado es una consecuencia prácticamente segura de su conducta o cuando es consciente que la existencia de una circunstancia es prácticamente segura.

Una persona actúa "temerariamente" cuando es consciente de que su conducta genera un riesgo sustancial e injustificado de que se produzca el resultado o la circunstancia prohibida por ley, y a pesar de conocer el riesgo, la persona continúa con su acción u omisión. Al evaluar si era consciente del riesgo, deberán determinar si había previsto la posibilidad de que existiese ese riesgo. Al momento de evaluar si un riesgo fue sustancial, deberán considerar la probabilidad de que se produjera el daño, el resultado o la circunstancia y la magnitud del daño. Al evaluar si un riesgo fue injustificado, deberán considerar lo que motivó a la persona a asumirlo.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no a propósito, con conocimiento o temerariamente. Pueden inferir o deducir razonablemente de la prueba presentada y admitida el propósito, el conocimiento o la temeridad. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por violar el Artículo 3.2(k) del Código Anticorrupción.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por violar el Artículo 3.2(k) del Código Anticorrupción.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 3.1 (*Definiciones*), el Artículo 3.2(k) (*Obligaciones y responsabilidades éticas*) y el Artículo 3.7 (*Sanciones y penalidades*) del Código Anticorrupción para el Nuevo Puerto Rico, Ley 2-2018 (3 LPRA secs. 1883, 1883a y 1883f); el Artículo 14 (*Definiciones*), el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*) y el Artículo 22 (*Elementos subjetivos del delito*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5014, 5034 y 5035).

**COMENTARIO:**

El Artículo 3.2 de la Ley 2-2018, *supra*, se enmarca en el Título III de este estatuto, nombrado "Código de ética para contratistas, suplidores, y solicitantes de incentivos económicos del gobierno de Puerto Rico". Por otra parte, el Artículo 3.7 de la Ley 2-2018, *supra*, penaliza como delito grave la violación intencional de las prohibiciones de los incisos (f), (j), (k), (l), (o) y (p) del Artículo 3.2, *supra*.

La Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico, Ley 1-2012, en su Artículo 1.2(i), define "beneficio" como "[c]ualquier provecho, utilidad, lucro o ganancia, sin limitar el término a una ganancia pecuniaria o material, sino que denota cualquier forma de ventaja". 3 LPRA sec. 1854(i).

En cuanto a la definición de "unidad familiar", se ilustran a continuación los conceptos "familiares dentro del cuarto grado de consanguinidad" y "familiares dentro del segundo de afinidad". Se entiende que son parientes por consanguinidad hasta el cuarto grado el padre, la madre, los(as) abuelos(as), los(as) nietos(as), los(as) hermanos(as), los(as) tíos(as), los(as) sobrinos(as) y los(as) primos(as). Por su parte, son parientes por afinidad hasta el segundo grado las personas con quien se hayan casado estos(as) parientes de sangre y los(as) hijastros(as), los(as) hermanastros(as) y los(as) nietos(as) políticos(as). Igualmente lo será la familia política, tales como los(as) cuñados(as), los yernos y las nueras.

La definición de "corporación *de facto*" proviene del caso *Asoc. de Res. Est. Cidra v. Future Dev.*, 152 DPR 54 (2000). Por su parte, la definición de "*alter ego*" emana del diccionario de la Real Academia Española.

Toda instrucción de los delitos particulares debe ir precedida de la Instrucción 4.15, que alude a la definición del concepto "elementos del delito".

Adviértase que se recogen en la Instrucción los elementos subjetivos del delito, por lo que no es necesario impartir también la Instrucción 4.5.

**20.4   Solicitar que un(a) Funcionario(a), Servidor(a) o Empleado(a) Público(a) Represente sus Intereses Privados o Ejerza Influencia (Art. 3.2(o))**

Contra la persona acusada se ha presentado una acusación por violación al Artículo 3.2(o) del Código Anticorrupción para el Nuevo Puerto Rico.

La ley prohíbe que una persona intencionalmente solicite directa o indirectamente que un(a) funcionario(a), servidor(a) o empleado(a) público(a) represente sus intereses privados, realice esfuerzos o ejerza influencia para obtener un contrato, el pago de una reclamación, permiso, licencia, autorización o en cualquier otro asunto, transacción o propuesta en la cual dicha persona o su unidad familiar tenga intereses privados, aun cuando se trate de actuaciones oficiales del (de la) funcionario(a), servidor(a) o empleado(a) público(a) dentro del ámbito de su autoridad oficial.

Los elementos de este delito son los siguientes:

(1) Que una persona,

(2) intencionalmente,

(3) solicite, directa o indirectamente, que un(a) funcionario(a), servidor(a) o empleado(a) público(a) represente sus intereses privados, realice esfuerzos o ejerza influencia

(4) para obtener un contrato, el pago de una reclamación, permiso, licencia, autorización o en cualquier otro asunto, transacción o propuesta en la cual la persona o su unidad familiar tenga intereses privados, aun cuando se trate de actuaciones oficiales del (de la) funcionario(a), servidor(a) o empleado(a) público(a) dentro del ámbito de su autoridad oficial.

"Persona" es cualquier persona natural o jurídica, o grupos de personas o asociaciones que interesen entablar con las agencias ejecutivas una relación contractual, comercial o financiera, o que han perfeccionado un contrato para la prestación de bienes o servicios con el Estado, así como las entidades que reciban o interesen recibir algún incentivo económico de las agencias ejecutivas del gobierno. Incluye también a las personas naturales o jurídicas que son o vayan a ser afectadas por alguna reglamentación establecida por las agencias ejecutivas del gobierno de Puerto Rico.

"Persona natural" es toda persona definida como tal en cualquier ley aplicable, incluyendo el Código Civil de Puerto Rico, e incluye, pero no se limita, a toda persona que funja como presidente(a), vicepresidente(a), director(a), director(a) ejecutivo(a) o cualquier miembro de una junta de oficiales o junta de directores(as) o persona que desempeñe funciones equivalentes.

"Persona jurídica" incluye a las corporaciones, corporaciones profesionales, sociedades civiles y mercantiles, sociedades especiales, cooperativas y cualquier entidad definida como tal en cualquier ley aplicable, asociaciones, sociedades o corporaciones *de facto*, incluso las que constituyan para estos fines un *alter ego* de la persona jurídica, incluidas las afiliadas o subsidiarias. Una corporación *de facto* ha sido definida como una corporación creada de forma tan defectuosa como para no poder ser considerada como una corporación. *Alter ego* es una persona que puede actuar por otra sin restricciones.

"Servidor(a) público(a)" comprende a los(as) funcionarios(as) y los(as) empleados(as) público(a).

"Funcionario(a)" es la persona investida con parte de la soberanía del Estado, por lo que interviene en la formulación e implantación de política pública y ocupa un cargo o está empleada en el gobierno de Puerto Rico.

"Empleado(a) público(a)" es la persona que ocupa un cargo o está empleada en las agencias ejecutivas del gobierno de Puerto Rico, en la Rama Legislativa o en la Rama Judicial y que no está investida con parte de la soberanía del Estado. Comprende a empleados(as) público(as) regulares e irregulares, los(as) que prestan servicios por contrato que equivalen a un puesto o cargo regular, los(as) de nombramiento transitorio y los(as) que se encuentran en periodo probatorio.

"Intencionalmente" es equivalente a actuar "a propósito", "con conocimiento" o "temerariamente".

El propósito, el conocimiento y la temeridad son estados mentales.

Una persona actúa "a propósito" cuando su objetivo consciente es la producción de un resultado o cuando cree que una circunstancia existe.

Una persona actúa "con conocimiento" cuando es consciente que la producción del resultado es una consecuencia prácticamente segura de su conducta o cuando es consciente que la existencia de una circunstancia es prácticamente segura.

Una persona actúa "temerariamente" cuando es consciente de que su conducta genera un riesgo sustancial e injustificado de que se produzca el resultado o la circunstancia prohibida por ley, y a pesar de conocer el riesgo, la persona continúa con su acción u omisión. Al evaluar si era consciente del riesgo, deberán determinar si había previsto la posibilidad de que existiese ese riesgo. Al momento de evaluar si un riesgo fue sustancial, deberán considerar la probabilidad de que se produjera el daño, el resultado o la circunstancia y la magnitud del daño. Al evaluar si un riesgo fue injustificado, deberán considerar lo que motivó a la persona a asumirlo.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no a propósito, con conocimiento o temerariamente. Pueden inferir o deducir razonablemente de la prueba presentada y admitida el propósito, el conocimiento o la temeridad. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por violar el Artículo 3.2(o) del Código Anticorrupción.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por violar el Artículo 3.2(o) del Código Anticorrupción.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 3.1 (*Definiciones*), el Artículo 3.2(o) (*Obligaciones y responsabilidades éticas*) y el Artículo 3.7 (*Sanciones y penalidades*) del Código Anticorrupción para el Nuevo Puerto Rico, Ley 2-2018 (3 LPRA secs. 1883, 1883a y 1883f); el Artículo 14 (*Definiciones*), el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*) y el Artículo 22 (*Elementos subjetivos del delito*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5014, 5034 y 5035).

**COMENTARIO:**

El Artículo 3.2 de la Ley 2-2018, *supra*, se enmarca en el Título III de este estatuto, nombrado "Código de ética para contratistas, suplidores, y solicitantes de incentivos económicos del gobierno de Puerto Rico". Por otra parte, el Artículo 3.7 de la Ley 2-2018, *supra*, penaliza como delito grave la violación intencional de las prohibiciones de los incisos (f), (j), (k), (l), (o) y (p) del Artículo 3.2, *supra*.

La Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico, Ley 1-2012, en su Artículo 1.2(i), define "beneficio" como "[c]ualquier provecho, utilidad, lucro o ganancia, sin limitar el término a una ganancia pecuniaria o material, sino que denota cualquier forma de ventaja". 3 LPRA sec. 1854(i).

La definición de "corporación *de facto*" proviene del caso *Asoc. de Res. Est. Cidra v. Future Dev.*, 152 DPR 54 (2000). Por su parte, la definición de "*alter ego*" emana del diccionario de la Real Academia Española.

Toda instrucción de los delitos particulares debe ir precedida de la Instrucción 4.15, que alude a la definición del concepto "elementos del delito".

Adviértase que se recogen en la Instrucción los elementos subjetivos del delito, por lo que no es necesario impartir también la Instrucción 4.5.


## 20.5 Prohibición de Represalias contra Personas que Denuncien Actos de Corrupción (Art. 4.2)

**[El tribunal debe impartir la Instrucción de acuerdo con la modalidad que aplique].**


### A. Modalidad del inciso (a) del Artículo 4.2

Contra la persona acusada se ha presentado una acusación por violación al Artículo 4.2(a) del Código Anticorrupción para el Nuevo Puerto Rico.

La ley prohíbe hostigar, discriminar, despedir, amenazar o suspender algún beneficio, derecho o protección a otra persona por el hecho de que esta provea información, coopere o funga como testigo en cualquier investigación que conduzca a alguna denuncia, acusación, convicción, acción civil o administrativa, por conducta relacionada con el uso ilegal de propiedad o de fondos públicos.

Los elementos de este delito son los siguientes:

(1) Hostigar, discriminar, despedir, amenazar o suspender algún beneficio, derecho o protección a otra persona

(2) por proveer información, cooperar o servir como testigo en cualquier investigación,

(3) que conduzca a alguna denuncia, acusación, condena, acción civil o administrativa

(4) por conducta relacionada con el uso ilegal de propiedad o fondos públicos.

"Persona" es cualquier individuo(a), sociedad, corporación, asociación, así como cualquier otra entidad jurídica o agente de estas.

No se cometerá este delito cuando quien denuncia, se querella o es testigo de alegados actos constitutivos de corrupción ha sido acusado(a) o convicto(a) como coautor(a) de los mismos actos ilegales sobre los que está ofreciendo información o prestando declaración, y se inician o se han iniciado los procedimientos administrativos para imponerle medidas disciplinarias, separarle del servicio público o destituirle del cargo conforme a las normas y reglamentos que rigen la administración de recursos humanos y el debido proceso de ley. Tampoco se cometerá este delito cuando las declaraciones sean difamatorias, sin fundamentos, frívolas o constituyan información privilegiada establecida por ley.

**[El tribunal debe impartir esta Instrucción acompañada de la Instrucción 4.5].**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por violar el Artículo 4.2(a) del Código Anticorrupción.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por violar el Artículo 4.2(a) del Código Anticorrupción.

### B. Modalidad del inciso (b) del Artículo 4.2

Contra la persona acusada se ha presentado una acusación por violación al Artículo 4.2(b) del Código Anticorrupción para el Nuevo Puerto Rico.

La ley prohíbe despedir, amenazar, discriminar o, en alguna forma, tomar represalias contra otra persona con relación a los términos, condiciones, compensación, ubicación, beneficios, protecciones o privilegios del empleo porque ofrezca o intente ofrecer, verbalmente o por escrito, cualquier testimonio, expresión o información sobre alegados actos impropios o ilegales en el uso de propiedad y de fondos públicos o actos constitutivos de corrupción ante cualquier funcionario(a) o empleado(a) con funciones investigativas o ante un foro legislativo, administrativo o judicial, estatal o federal, cuando tales declaraciones no sean difamatorias, infundadas o frívolas ni constituyan información privilegiada bajo las Reglas de Evidencia o alguna ley.

Los elementos de este delito son los siguientes:

(1) Despedir, amenazar, discriminar o en alguna forma tomar represalias contra otra persona,

(2) en relación con los términos, condiciones, compensación, ubicación, beneficios, protecciones o privilegios del empleo,

(3) por ofrecer o intentar ofrecer, verbalmente o por escrito, cualquier testimonio, expresión o información,

(4) sobre alegados actos impropios o ilegales en el uso de propiedad y fondos públicos o actos constitutivos de corrupción,

(5) ante cualquier funcionario(a) o empleado(a) con funciones investigativas o ante un foro legislativo, administrativo o judicial, estatal o federal.

"Persona" es cualquier individuo(a), sociedad, corporación, asociación, así como cualquier otra entidad jurídica o agente de estas.

No se cometerá este delito cuando quien denuncia, se querella o es testigo de alegados actos constitutivos de corrupción ha sido acusado(a) o convicto(a) como coautor(a) de los mismos actos ilegales sobre los que está ofreciendo información o prestando declaración, y se inician o se han iniciado los procedimientos administrativos para imponerle medidas disciplinarias, separarle del servicio público o destituirle del cargo conforme a las normas y reglamentos que rigen la administración de recursos humanos y el debido proceso de ley. Tampoco se cometerá este delito cuando las declaraciones sean difamatorias, sin fundamentos, frívolas o constituyan información privilegiada establecida por ley.

**[El tribunal debe impartir esta Instrucción acompañada de la Instrucción 4.5].**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por violar el Artículo 4.2(b) del Código Anticorrupción.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por violar el Artículo 4.2(b) del Código Anticorrupción.

## C. Modalidad del inciso (c) del Artículo 4.2

Contra la persona acusada se ha presentado una acusación por violación al Artículo 4.2(c) del Código Anticorrupción para el Nuevo Puerto Rico.

La ley prohíbe que un(a) funcionario(a) o empleado(a) público(a), que tenga autoridad para influir, recomendar o aprobar cualquier acción, tome decisiones adversas o discriminatorias con respecto a cualquier empleado(a) o funcionario(a) público(a) por **[especifique el elemento aplicable según lo alegado en el pliego acusatorio]**:

(a) Ofrecer o intentar ofrecer cualquier información o declaración verbal o escrita en contra de un(a) funcionario(a) o empleado(a) público(a) ante cualquier otro(a) semejante con funciones investigativas, o cualquier foro administrativo, legislativo o judicial, estatal o federal, que el (la)

funcionario(a) o empleado(a) público(a) que ofrece la información o el testimonio razonablemente pueda creer que es prueba de violación a una ley, regla o reglamento, mal uso de fondos públicos, uso ilegal de propiedad pública, pérdida de fondos, abuso de autoridad o violaciones a las leyes y reglamentos que rigen la conducta ética en el servicio público, aunque de dicha conducta no se constituya un delito de corrupción propiamente;

(b) ejercer el derecho de denunciar, querellarse, demandar o apelar garantizado por cualquier ley, regla o reglamento vigente en nuestro ordenamiento jurídico,

(c) rehusar obedecer una orden para realizar una acción u omisión que conllevaría la violación de una ley o reglamento.

Los elementos de este delito son los siguientes:

(1) Que un(a) funcionario(a) o empleado(a) público(a),

(2) con autoridad para influir, recomendar o aprobar cualquier acción,

(3) tome decisiones adversas desfavorables o discriminatorias con respecto a cualquier empleado(a) o funcionario(a) público(a)

(4) por **[especifique el elemento aplicable según lo alegado en el pliego acusatorio]**:

(a) ofrecer o intentar ofrecer cualquier información o declaración verbal o escrita en contra de un(a) funcionario(a) o empleado(a) público(a) ante cualquier otro(a) semejante con funciones investigativas, o cualquier foro administrativo, legislativo o judicial, estatal o federal, que el (la) funcionario(a) o empleado(a) público(a) que ofrece la información o el testimonio razonablemente pueda creer que es prueba de violación a una ley, regla o reglamento, mal uso de fondos públicos, uso ilegal de propiedad pública, pérdida de fondos, abuso de autoridad o violaciones a las leyes y reglamentos que rigen la conducta ética en el servicio público, aunque de dicha conducta no se constituya un delito de corrupción propiamente;

(b) ejercer el derecho de denunciar, querellarse, demandar o apelar garantizado por cualquier ley, regla o reglamento vigente en nuestro ordenamiento jurídico,

(c) rehusar obedecer una orden para realizar una acción u omisión que conllevaría la violación de una ley o reglamento.

"Funcionario(a) público(a)" es la persona investida de parte de la soberanía del Estado, por lo que interviene en la formulación e implantación de política pública y ocupa un cargo, o está empleada, en el gobierno de Puerto Rico.

"Empleado(a) público(a)" es la persona que ocupa un cargo o está empleada en las agencias ejecutivas del gobierno de Puerto Rico, en la Rama Legislativa o en la Rama Judicial y no está investida con parte de la soberanía del Estado. Comprende a los(as) empleados(as) públicos(as) regulares e irregulares, los(as) que prestan servicios por contrato que

equivalen a un puesto o cargo regular, los(as) de nombramiento transitorio y los(as) que se encuentran en periodo probatorio.

No se cometerá este delito cuando quien denuncia, se querella o es testigo de alegados actos constitutivos de corrupción ha sido acusado(a) o convicto(a) como coautor(a) de los mismos actos ilegales sobre los que está ofreciendo información o prestando declaración, y se inician o se han iniciado los procedimientos administrativos para imponerle medidas disciplinarias, separarle del servicio público o destituirle del cargo conforme a las normas y reglamentos que rigen la administración de recursos humanos y el debido proceso de ley. Tampoco se cometerá este delito cuando las declaraciones sean difamatorias, sin fundamentos, frívolas o constituyan información privilegiada establecida por ley.

**[El tribunal debe impartir esta Instrucción acompañada de la Instrucción 4.5].**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les he impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por violar el Artículo 4.2(c) del Código Anticorrupción.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por violar el Artículo 4.2(c) del Código Anticorrupción.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 4.1 (*Definiciones*), el Artículo 4.2 (*Prohibición de represalias contra personas que denuncien actos de corrupción*), el Artículo 4.3 (*Excepciones*) y el Artículo 4.4 (*Penalidades*) del Código Anticorrupción para el Nuevo Puerto Rico, Ley 2-2018.

**COMENTARIO:**

El Artículo 4.2 de la Ley 2-2018, *supra*, se enmarca en el Título IV de la Ley 2-2018, catalogado "Protecciones Contra Represalias". Se incorporan a la instrucción las excepciones a la prohibición dispuestas de forma expresa en el Artículo 4.3.

Toda instrucción de los delitos particulares debe ir precedida de la Instrucción 4.15, que alude a la definición del concepto "elementos del delito".

**20.6    Proveer Información Falsa con respecto a Condenas para fines del Registro de Personas Convictas por Corrupción (Art. 6.7)**

Contra la persona acusada se ha presentado una acusación por violación al Artículo 6.7 del Código Anticorrupción para el Nuevo Puerto Rico.

La ley prohíbe que una persona ofrezca o provea información falsa respecto a una condena con la intención de evadir los propósitos del Registro de Personas Convictas por Corrupción.

Los elementos de este delito son los siguientes:

(1) Que una persona convicta por un delito que requiera la inscripción en el Registro de Personas Convictas por Corrupción
(2) provea información falsa respecto a la condena
(3) con la intención de evadir el Registro.

"Persona" es cualquier individuo(a), sociedad, corporación, asociación, así como cualquier otra entidad jurídica o agente de estas.

"Persona natural" es toda persona definida como tal en cualquier ley aplicable, incluyendo el Código Civil de Puerto Rico, e incluye, pero no se limita, a toda persona que funja como presidente(a), vicepresidente(a), director(a), director(a) ejecutivo(a) o cualquier miembro de una junta de oficiales o junta de directores(as), o una persona que desempeñe funciones equivalentes.

 "Persona jurídica" incluye a las corporaciones, corporaciones profesionales, sociedades civiles y mercantiles, sociedades especiales, cooperativas y cualquier entidad definida como tal en cualquier ley aplicable, asociaciones, sociedades o corporaciones *de facto*, incluso las que constituyan para estos fines un *alter ego* de la persona jurídica, incluidas las afiliadas o subsidiarias. Una corporación *de facto* ha sido definida como una corporación creada de forma tan defectuosa como para no poder ser considerada como una corporación. *Alter ego* es una persona que puede actuar por otra sin restricciones.

**[El tribunal debe adecuar esta Instrucción al (a los) delito(s) que aplique(n)].**

Actuar con "intención" equivale a actuar "a propósito", "con conocimiento" o "temerariamente".

El propósito, el conocimiento y la temeridad son estados mentales.

Una persona actúa "a propósito" cuando su objetivo consciente es la producción de un resultado o cuando cree que una circunstancia existe.

Una persona actúa "con conocimiento" cuando es consciente que la producción del resultado es una consecuencia prácticamente segura de su conducta o cuando es consciente que la existencia de una circunstancia es prácticamente segura.

Una persona actúa "temerariamente" cuando es consciente de que su conducta genera un riesgo sustancial e injustificado de que se produzca el resultado o la circunstancia prohibida por ley, y a pesar de conocer el riesgo, la persona continúa con su acción u omisión.

Al evaluar si era consciente del riesgo, deberán determinar si había previsto la posibilidad de que existiese ese riesgo. Al momento de evaluar si un riesgo fue sustancial, deberán considerar la probabilidad de que se produjera el daño, el resultado o la circunstancia y la magnitud del daño. Al evaluar si un riesgo fue injustificado, deberán considerar lo que motivó a la persona a asumirlo.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no a propósito, con conocimiento o temerariamente. Pueden inferir o deducir razonablemente de la prueba presentada y admitida el propósito, el conocimiento o la temeridad. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por violar el Artículo 6.7 del Código Anticorrupción.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por violar el Artículo 6.7 del Código Anticorrupción.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 6.1 (*Definiciones*), el Artículo 6.2 (*Creación del Registro*) y el Artículo 6.7 (*Penalidades*) del Código Anticorrupción para el Nuevo Puerto Rico, Ley 2-2018 (3 LPRA secs. 1886, 1886a y 1886f); el Artículo 14 (*Definiciones*), el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*) y el Artículo 22 (*Elementos subjetivos del delito*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5014, 5034 y 5035).

**COMENTARIO:**

El Artículo 6.7 de la Ley 2-2018, *supra*, se enmarca en el Subcapítulo VI de esta ley denominado Registro de Personas Convictas por Corrupción y Delitos Relacionados. Véase 3 LPRA sec. 1881a.

La ley requiere que se inscriba en el Registro de Personas Convictas por Corrupción la persona convicta por delitos establecidos en el Capítulo IV de la Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico de (3 LPRA secs. 1857-1857g) en los Artículos 3.7 (3.2) y 4.4 (4.2) del Código Anticorrupción para el Nuevo Puerto Rico, y en los Artículos 250 a 266 del Código Penal de 2012, según enmendado, 31 LPRA secs. 5341-5357, o delitos análogos, así como los delitos enumerados en el Artículo 6.8 (*Habilitación en el servicio público*) de la Ley para la Administración y Transformación de los Recursos Humanos en el Gobierno de Puerto Rico, 3 LPRA sec. 1472h(3).

La definición de "corporación *de facto*" proviene del caso *Asoc. de Res. Est. Cidra v. Future Dev.*, 152 DPR 54 (2000). Por su parte, la definición de "*alter ego*" emana del diccionario de la Real Academia Española.

Toda instrucción de los delitos particulares debe ir precedida de la Instrucción 4.15, que alude a la definición del concepto "elementos del delito".

Adviértase que se recogen en la Instrucción los elementos subjetivos del delito, por lo que no es necesario impartir también la Instrucción 4.5.

CAPÍTULO 21
## LEY PARA EL BIENESTAR Y LA PROTECCIÓN DE LOS ANIMALES

### 21.1   Abandono de Animal (Cap. II, Art. 1)

Contra la persona acusada se ha presentado una acusación por el delito de Abandono de Animal.

La ley dispone que comete este delito la persona que intencionalmente, a sabiendas, descuidadamente o con negligencia criminal deja un animal en algún lugar con la intención de desampararlo.

Los elementos de este delito son los siguientes:

(1) Intencionalmente, a sabiendas, descuidadamente o con negligencia criminal;
(2) dejar un animal en algún lugar
(3) con la intención de desampararlo.

**[Si se alega una circunstancia agravante, debe impartirse la instrucción siguiente:**

Además de los elementos anteriores, corresponde a ustedes evaluar y determinar si como consecuencia del abandono [el animal sufrió una lesión física severa] [se le causó la muerte al animal].

["Lesión física severa" significa una lesión física que ocasione un riesgo de muerte o cause desfiguración, impedimento de salud prolongado o pérdida prolongada o discapacidad de la función de una extremidad u órgano corporal]]**.**

"Abandono" significa la dejadez o el descuido voluntario, temporal o permanente, de las responsabilidades que tiene el guardián (la guardiana) del animal.

"Guardián (guardiana)" es la persona natural o jurídica con el control, custodia, posesión o el título sobre un animal.

"Intencionalmente" es equivalente a actuar "a propósito", "con conocimiento" o "temerariamente".

"A sabiendas" es sinónimo de "con conocimiento".

Una persona actúa "a propósito" cuando su objetivo consciente es la producción de un resultado o cuando cree que una circunstancia existe. La persona actúa "con conocimiento" cuando es consciente de que la producción del resultado o la existencia de una circunstancia prohibida por ley es prácticamente segura. La persona actúa "temerariamente" cuando es consciente de que su conducta genera un riesgo sustancial e injustificado de que se produzca el resultado o la circunstancia prohibida por ley, y a pesar de conocer el riesgo, la persona continúa con su acción u omisión.

La ley dispone que un delito se comete por negligencia cuando la persona debió saber que su conducta ocasionaría un riesgo sustancial e injustificado de que se produjera el resultado dañino o la circunstancia prohibida por ley.

El riesgo debe de ser de tal grado que, considerando la naturaleza y el propósito de la conducta y las circunstancias conocidas, la acción u omisión de la persona constituye una desviación crasa del estándar de cuidado que observaría una persona razonable en su misma posición.

La negligencia criminal es el incumplimiento del deber de cuidado que la ley impone; no es una mera falta de cuidado. Se falta a ese deber cuando la persona ni siquiera se da cuenta del riesgo o peligro que se le exigía advertir o cuando, a pesar de haberlo reconocido, confía imprudentemente en que no se producirá el resultado. La negligencia de la víctima no es suficiente para exonerar o librar de culpa a la persona acusada a menos que esta sea la única causa del resultado.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no a propósito, con conocimiento, temeraria o negligentemente. Pueden inferir o deducir razonablemente de la prueba presentada y admitida el propósito, el conocimiento, la temeridad o la negligencia. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Abandono de Animal.

**[Cuando se alegue una circunstancia agravante, el tribunal debe añadir la instrucción siguiente:**

Si ustedes consideran, luego de un análisis cuidadoso de toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, que el Ministerio Público probó más allá de duda razonable la comisión del delito, pero no que **[indique la circunstancia agravante]**, deberán rendir un veredicto de culpable por el delito de abandono de un animal sin esa circunstancia**]**.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Abandono de Animal.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 2 (*Definiciones*) del Capítulo I y el Artículo 1 (*Abandono de animal*) del Capítulo II de la Ley para el Bienestar y la Protección de los Animales, Ley 154-2008, según enmendada por la Ley 208-2011 (5 LPRA secs. 1660 y

1664); el Artículo 14 (*Definiciones*), el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*) y el Artículo 22 (*Elementos subjetivos del delito*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5014, 5034 y 5035).

**COMENTARIO:**

Se destaca la necesidad de adaptar las instrucciones presentadas en este capítulo a las circunstancias alegadas en el pliego acusatorio debido a la variedad de estados mentales que admite la Ley para el Bienestar y la Protección de los Animales. Debe brindarse una atención particular a la tipificación del delito de Abandono de Animal establecido en el Artículo 1 del Capítulo II de la Ley 154-2008, *supra*, el cual dispone un elemento de intención específica ("con la intención de desampararlo") pero comprende, entre las alternativas posibles, el elemento subjetivo de negligencia criminal al cometer los actos proscritos. Un supuesto similar puede observarse en la tipificación del delito de Maltrato Agravado de Animales dispuesto en el Artículo 7 del Capítulo II de la Ley 154-2008 (5 LPRA sec. 1670). Se recomienda un análisis caso a caso para la elaboración de una instrucción al Jurado acorde con los cargos presentados contra una persona acusada de un delito al amparo de esta legislación.

En el Artículo 2(b) del Capítulo I de la Ley 154-2008 se define "animal" como "cualquier animal mamífero, aves, reptiles, anfibios, peces, cetáceos y cualquier otro animal de los tipos (*phyla*) superiores o que esté en cautiverio o bajo el control de cualquier persona, o cualquier animal protegido por leyes federales o estatales u ordenanzas municipales". 5 LPRA sec. 1660(b).

En torno a la comisión por omisión, refiérase a la Instrucción 4.4.

Toda instrucción de los delitos particulares debe ir precedida de la Instrucción 4.15, que alude a la definición del concepto "elementos del delito".

Adviértase que se recogen en la Instrucción los elementos subjetivos del delito, por lo que no es necesario impartir también las Instrucciones 4.5 y 4.6.

## 21.2   Negligencia Agravada contra Animales (Cap. II, Art. 4)

Contra la persona acusada se ha presentado una acusación por el delito de Negligencia Agravada contra Animales.

La ley dispone que comete este delito la persona que intencionalmente, a sabiendas, descuidadamente o con negligencia criminal falla en proveer cuidado mínimo a un animal en su posesión y el fallo de proveer tal cuidado resulta en una lesión física severa o en la muerte del animal.

Los elementos de este delito son los siguientes:

(1) Intencionalmente, a sabiendas, descuidadamente o con negligencia criminal,

(2) fallar en proveer cuidado mínimo

(3) a un animal en su posesión

(4) lo que causa una lesión física severa o la muerte del animal.

"Guardián (guardiana)" es la persona natural o jurídica con el control, custodia, posesión o el título sobre un animal.

"Cuidado mínimo" significa el cuidado suficiente para preservar la salud y el bienestar de un animal, exceptuando emergencias o circunstancias más allá del control razonable del guardián o guardiana.

"Lesión física severa" significa una lesión física que ocasione un riesgo de muerte o cause desfiguración, impedimento de salud prolongado o pérdida prolongada o discapacidad de la función de una extremidad u órgano corporal.

"Intencionalmente" es equivalente a actuar "a propósito", "con conocimiento" o "temerariamente".

"A sabiendas" es sinónimo de "con conocimiento".

Una persona actúa "a propósito" cuando su objetivo consciente es la producción de un resultado o cuando cree que una circunstancia existe. La persona actúa "con conocimiento" cuando es consciente de que la producción del resultado o la existencia de la circunstancia prohibida por ley es prácticamente segura. La persona actúa "temerariamente" cuando es consciente de que su conducta genera un riesgo sustancial e injustificado de que se produzca el resultado o la circunstancia prohibida por ley, y a pesar de conocer el riesgo, la persona continúa con su acción u omisión.

La ley dispone que un delito se comete por negligencia cuando la persona debió saber que su conducta ocasionaría un riesgo sustancial e injustificado de que se produjera el resultado dañino o la circunstancia prohibida por ley.

El riesgo debe de ser de tal grado que, considerando la naturaleza y el propósito de la conducta y las circunstancias conocidas por la persona acusada, la acción u omisión de la persona constituye una desviación crasa del estándar de cuidado que observaría una persona razonable en su misma posición.

La negligencia criminal es el incumplimiento del deber de cuidado que la ley impone; no es una mera falta de cuidado. Se falta a ese deber cuando la persona ni siquiera se da cuenta del riesgo o peligro que se le exigía advertir o cuando, a pesar de haberlo reconocido, confía imprudentemente en que no se producirá el resultado. La negligencia de la víctima no es suficiente para exonerar o librar de culpa a la persona acusada a menos que esta sea la única causa del resultado.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no a propósito, con conocimiento, temeraria o negligentemente. Pueden inferir o deducir razonablemente de la prueba presentada y admitida el propósito, el conocimiento, la temeridad o la negligencia. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona

acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Negligencia Agravada contra Animales.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Negligencia Agravada contra Animales.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 2 (*Definiciones*) del Capítulo I y el Artículo 4 (*Negligencia agravada contra animales*) del Capítulo II de la Ley para el Bienestar y la Protección de los Animales, Ley 154-2008, según enmendada por la Ley 208-2011 (5 LPRA secs. 1660 y 1667); el Artículo 14 (*Definiciones*), el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*) y el Artículo 22 (*Elementos subjetivos del delito*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5014, 5034 y 5035).

**COMENTARIO:**

En el Artículo 2(b) del Capítulo I de la Ley 154-2008 se define "animal" como "cualquier animal mamífero, aves, reptiles, anfibios, peces, cetáceos y cualquier otro animal de los tipos (*phyla*) superiores o que esté en cautiverio o bajo el control de cualquier persona, o cualquier animal protegido por leyes federales o estatales u ordenanzas municipales". 5 LPRA sec. 1660(b).

La Instrucción incorpora la definición de "cuidado mínimo" provista en el Artículo 2(f) del Capítulo I de la Ley 154-2008, *supra*. Asimismo, provee ejemplos de cuidado mínimo requerido, lista que no es taxativa:

> (f) *Cuidado mínimo.*—Significa el cuidado suficiente para preservar la salud y bienestar de un animal, exceptuando emergencias o circunstancias más allá del control razonable del guardián. Incluye, pero no se limita a, los requerimientos a continuación:
> (1) Cantidad y calidad de alimento suficiente para permitir el crecimiento o mantenimiento de peso corporal normal para el animal.
> (2) Acceso abierto o adecuado a agua potable, de temperatura apta para tomar en cantidad suficiente para satisfacer las necesidades del animal.
> (3) Acceso a un establo, casa o cualquier otra estructura que pueda proteger al animal de las inclemencias del tiempo, y que tenga un lugar apropiado para dormir que lo proteja del frío, calor excesivo y la humedad.
> (4) Proveer el cuidado veterinario que una persona prudente estime necesario para proteger al animal de sufrimiento; incluye vacunación y cuidado preventivo.
> (5) *Acceso continuo a un área.*—Acceso continuo a un área es:
> (a) Que el animal tenga el espacio adecuado para ejercicio necesario para su salud. Espacio inadecuado puede ser evidenciado por debilidad, estrés o patrones anormales de comportamiento.
> (b) Temperatura apta para la salud del animal en atención a su hábitat natural.
> (c) Ventilación adecuada.

(d) Ciclos de luz diurna regular, ya sea por luz natural o artificial.

(e) Un medioambiente limpio y libre de exceso de desecho u otros contaminantes que puedan afectar la salud del animal. 5 LPRA sec. 1660(f).

El Artículo 2(o) del Capítulo I de la Ley 154-2008 define "negligencia" como "un tipo de maltrato que consiste en faltar a los deberes o dejar de ejercer las facultades de proveer adecuadamente el cuidado mínimo y continuo a un animal; faltar al deber de cuidado y supervisión". 5 LPRA sec. 1660(o).

Toda instrucción de los delitos particulares debe ir precedida de la Instrucción 4.15, que alude a la definición del concepto de "elementos del delito".

Adviértase que se recogen en la Instrucción los elementos subjetivos del delito, por lo que no es necesario impartir también las Instrucciones 4.5 y 4.6.

## 21.3   Maltrato de Animales (Cap. II, Art. 5)

Contra la persona acusada se ha presentado una acusación por el delito de Maltrato de Animales.

La ley dispone que comete este delito la persona que intencionalmente, a sabiendas, descuidadamente o por negligencia criminal causa alguna lesión física o sufrimiento a un animal.

Los elementos de este delito son los siguientes:

(1) Intencionalmente, a sabiendas, descuidadamente o con negligencia criminal

(2) causar alguna lesión física o sufrimiento a un animal.

**[El tribunal solamente debe impartir esta Instrucción cuando se alegue que el delito se cometió en presencia de una persona menor de edad:**

Además de los elementos anteriores, corresponde a ustedes evaluar y determinar si la persona, a sabiendas, cometió el maltrato de animales en la presencia de una persona menor de edad.

Una persona menor de edad está en presencia inmediata del maltrato de animales cuando ve el abuso o lo percibe directamente de cualquier manera.

"Menor de edad" es una persona que al momento de los hechos no ha cumplido 18 años**].**

**[Cuando no se acepte una condena previa por alguna ley relacionada con la protección de animales o con cualquier estatuto sobre violencia doméstica, maltrato a menores o a personas de edad avanzada, el tribunal debe leer el párrafo siguiente:**

Además, corresponde a ustedes determinar si la persona fue convicta anteriormente por **[indique el delito]].**

"Maltrato" significa todo acto u omisión en el que incurre una persona, sea o no guardián (guardiana), que ocasione o ponga a un animal en riesgo de sufrir daño a su salud e integridad física o emocional.

"Lesión física" significa trauma físico, pérdida o disminución de funciones, o dolor incompatible con técnicas razonables de entrenamiento o de manejo.

"Intencionalmente" es equivalente a actuar "a propósito", "con conocimiento" o "temerariamente".

"A sabiendas" es sinónimo de "con conocimiento".

Una persona actúa "a propósito" cuando su objetivo consciente es la producción de un resultado o cuando cree que una circunstancia existe. La persona actúa "con conocimiento" cuando es consciente de que la producción del resultado o la existencia de una circunstancia prohibida por ley es prácticamente segura. La persona actúa "temerariamente" cuando es consciente de que su conducta genera un riesgo sustancial e injustificado de que se produzca el resultado o la circunstancia prohibida por ley, y a pesar de conocer el riesgo, la persona continúa con su acción u omisión.

La ley dispone que un delito se comete por negligencia cuando la persona debió saber que su conducta ocasionaría un riesgo sustancial e injustificado de que se produjera el resultado dañino o la circunstancia prohibida por ley.

El riesgo debe de ser de tal grado que, considerando la naturaleza y el propósito de la conducta y las circunstancias conocidas, la acción u omisión de la persona constituye una desviación crasa del estándar de cuidado que observaría una persona razonable en su misma posición.

La negligencia criminal es el incumplimiento del deber de cuidado que la ley impone; no es una mera falta de cuidado. Se falta a ese deber cuando la persona ni siquiera se da cuenta del riesgo o peligro que se le exigía advertir o cuando, a pesar de haberlo reconocido, confía imprudentemente en que no se producirá el resultado. La negligencia de la víctima no es suficiente para exonerar o librar de culpa a la persona acusada a menos que esta sea la única causa del resultado.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no a propósito, con conocimiento, temeraria o negligentemente. Pueden inferir o deducir razonablemente de la prueba presentada y admitida el propósito, el conocimiento, la temeridad o la negligencia. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Maltrato de Animales.

**[Cuando se alegue una circunstancia agravada, el tribunal debe añadir la instrucción siguiente:**

Si ustedes consideran, luego de un análisis cuidadoso de toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, que el Ministerio Público probó más allá de duda razonable la comisión del delito, pero no que **[indique la circunstancia agravada]**, deberán rendir un veredicto de culpable por el delito de Maltrato de Animales sin esa circunstancia**].**

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Maltrato de Animales.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 2 (*Definiciones*) del Capítulo I y el Artículo 5 (*Maltrato de animales*) del Capítulo II de la Ley para el Bienestar y la Protección de los Animales, Ley 154-2008, según enmendada por la Ley 208-2011 (5 LPRA secs. 1660 y 1668); el Artículo 14 (*Definiciones*), el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*) y el Artículo 22 (*Elementos subjetivos del delito*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5014, 5034 y 5035).

**COMENTARIO:**

"Sufrimiento innecesario" significa causar sufrimiento que no es necesario para la seguridad, la salud o el bienestar del animal o de otros seres en su ambiente. Artículo 2, Capítulo I, de la Ley 154-2008, según enmendada, *supra*.

En el Artículo 2(b) del Capítulo I de la Ley 154-2008 se define "animal" como "cualquier animal mamífero, aves, reptiles, anfibios, peces, cetáceos y cualquier otro animal de los tipos (*phyla*) superiores o que esté en cautiverio o bajo el control de cualquier persona, o cualquier animal protegido por leyes federales o estatales u ordenanzas municipales". 5 LPRA sec. 1660(b).

Para propósitos del Código Penal, se considera menor de edad cualquier persona que no haya cumplido 18 años. Refiérase a los Artículos 39 (*Minoridad*), 88 (*Delitos que no prescriben*) y 130 (*Agresión sexual*), entre otros, del Código Penal de 2012 (33 LPRA secs. 5062, 5133 y 5191). La doctora Nevares-Muñiz aduce que desde el Código Penal de 2004 se aumentó la edad de protección para cubrir todo el periodo en que la persona sea menor de 18 años. D. Nevares-Muñiz, *Código Penal de Puerto Rico*, 4ta ed. rev., San Juan, Ed. Instituto para el Desarrollo del Derecho, 2019, págs. 194-195.

Toda instrucción de los delitos particulares debe ir precedida de la Instrucción 4.15, que alude a la definición del concepto "elementos del delito".

Adviértase que se recogen en la Instrucción los elementos subjetivos del delito, por lo que no es necesario impartir también las Instrucciones 4.5 y 4.6.

### 21.4   Maltrato de Animales de Tercer Grado (Cap. II, Art. 6)

Contra la persona acusada se ha presentado una acusación por el delito de Maltrato de Animales de Tercer Grado.

La ley dispone que comete este delito la persona que intencionalmente, a sabiendas, descuidadamente o por negligencia criminal causa alguna lesión física severa o la muerte de un animal.

Los elementos de este delito son los siguientes:

(1) Intencionalmente, a sabiendas, descuidadamente o con negligencia criminal

(2) causar [alguna lesión física severa a] [la muerte de] un animal.

**[El tribunal solamente debe impartir esta Instrucción cuando se alegue que el delito se cometió en presencia de una persona menor de edad:**

Además de los elementos anteriores, corresponde a ustedes evaluar y determinar si la persona, a sabiendas, cometió el maltrato de animales en la presencia de una persona menor de edad.

Una persona menor de edad está en presencia inmediata del maltrato de animales cuando ve el abuso o lo percibe directamente de cualquier manera.

"Menor de edad" es una persona que al momento de los hechos no ha cumplido 18 años**].**

**[Cuando no se acepte una condena previa por alguna ley relacionada con la protección de animales o con cualquier estatuto sobre violencia doméstica, maltrato a menores o a personas de edad avanzada, el tribunal debe leer el párrafo siguiente:**

Además, corresponde a ustedes determinar si la persona fue convicta anteriormente por **[indique el delito]].**

"Maltrato" significa todo acto u omisión en el que incurre una persona, sea o no guardián (guardiana), que ocasione o ponga a un animal en riesgo de sufrir daño a su salud e integridad física o emocional.

"Lesión física" significa trauma físico, pérdida o disminución de funciones, o dolor incompatible con técnicas razonables de entrenamiento o de manejo.

"Intencionalmente" equivale a actuar "a propósito", "con conocimiento" o "temerariamente".

"A sabiendas" es sinónimo de "con conocimiento".

Una persona actúa "a propósito" cuando su objetivo consciente es la producción de un resultado o cuando cree que una circunstancia existe. La persona actúa "con conocimiento" cuando es consciente de que la producción del resultado o la existencia de una circunstancia prohibida por ley es prácticamente segura. La persona actúa "temerariamente" cuando es consciente de que su conducta genera un riesgo sustancial e injustificado de que se produzca el resultado o la circunstancia prohibida por ley, y a pesar de conocer el riesgo, la persona continúa con su acción u omisión.

La ley dispone que un delito se comete por negligencia cuando la persona debió saber que su conducta ocasionaría un riesgo sustancial e injustificado de que se produjera el resultado dañino o la circunstancia prohibida por ley.

El riesgo debe de ser de tal grado que, considerando la naturaleza y el propósito de la conducta y las circunstancias conocidas por la persona acusada, la acción u omisión de la persona constituye una desviación crasa del estándar de cuidado que observaría una persona razonable en su misma posición.

La negligencia criminal es el incumplimiento del deber de cuidado que la ley impone; no es una mera falta de cuidado. Se falta a ese deber cuando la persona ni siquiera se da cuenta del riesgo o peligro que se le exigía advertir o cuando, a pesar de haberlo reconocido, confía imprudentemente en que no se producirá el resultado. La negligencia de la víctima no es suficiente para exonerar o librar de culpa a la persona acusada a menos que esta sea la única causa del resultado.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no a propósito, con conocimiento, temeraria o negligentemente. Pueden inferir o deducir razonablemente de la prueba presentada y admitida el propósito, el conocimiento, la temeridad o la negligencia. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Maltrato de Animales de Tercer Grado.

**[Cuando se alegue una circunstancia agravada, el tribunal debe añadir la instrucción siguiente:**

Si ustedes consideran, luego de un análisis cuidadoso de toda la prueba presentada y admitida y en conformidad con las instrucciones que les impartí, que el Ministerio Público probó más allá de duda razonable la comisión del delito, pero no que **[indique la circunstancia agravada]**, deberán rendir un veredicto de culpable por el delito de Maltrato de Animales de Tercer Grado sin esa circunstancia**]**.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su

culpabilidad, deberán rendir un veredicto de no culpable por el delito de Maltrato de Animales de Tercer Grado.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 2 (*Definiciones*) del Capítulo I y el Artículo 6 (*Maltrato de animales como delito grave de tercer grado*) de la Ley para el Bienestar y la Protección de los Animales, Ley 154-2008, según enmendada por la Ley 208-2011 (5 LPRA secs. 1660 y 1669); el Artículo 14 (*Definiciones*), el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*) y el Artículo 22 (*Elementos subjetivos del delito*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5014, 5034 y 5035).

**COMENTARIO:**

En el Artículo 2(b) del Capítulo I de la Ley 154-2008 se define "animal" como "cualquier animal mamífero, aves, reptiles, anfibios, peces, cetáceos y cualquier otro animal de los tipos (*phyla*) superiores o que esté en cautiverio o bajo el control de cualquier persona, o cualquier animal protegido por leyes federales o estatales u ordenanzas municipales". 5 LPRA sec. 1660(b).

Para propósitos del Código Penal, se considera menor de edad cualquier persona que no haya cumplido 18 años. Refiérase a los Artículos 39 (*Minoridad*), 88 (*Delitos que no prescriben*) y 130 (*Agresión sexual*), entre otros, del Código Penal de 2012 (33 LPRA secs. 5062, 5133 y 5191). La doctora Nevares-Muñiz aduce que desde el Código Penal de 2004 se aumentó la edad de protección para cubrir todo el periodo en que la persona sea menor de 18 años. D. Nevares-Muñiz, *Código Penal de Puerto Rico*, 4ta ed. rev., San Juan, Ed. Instituto para el Desarrollo del Derecho, 2019, págs. 194-195.

Toda instrucción de los delitos particulares debe ir precedida de la Instrucción 4.15, que alude a la definición del concepto "elementos del delito".

Adviértase que se recogen en la Instrucción los elementos subjetivos del delito, por lo que no es necesario impartir también las Instrucciones 4.5 y 4.6.

En aquellos casos que aplique, debe impartirse la Instrucción 25.1 de legítima defensa.

## 21.5   Maltrato Agravado de Animales (Cap. II, Art. 7)

Contra la persona acusada se ha presentado una acusación por el delito de Maltrato Agravado de Animales.

La ley dispone que comete este delito la persona que, intencionalmente o a sabiendas, tortura a un animal o mata a un animal bajo circunstancias que demuestren malicia premeditada o grave menosprecio por la vida.

Los elementos de este delito son los siguientes:

(1) Intencionalmente o a sabiendas;

(2) [torturar] [matar] a un animal

(3) [bajo circunstancias que demuestren malicia premeditada] [bajo circunstancias que demuestren grave menosprecio por la vida].

"Maltrato" significa todo acto u omisión en el que incurre una persona, sea o no guardián (guardiana), que ocasione o ponga a un animal en riesgo de sufrir daño a su salud e integridad física o emocional.

"Tortura" es una acción tomada para el propósito primordial de infligir o prolongar el dolor.

"Intencionalmente" es equivalente a actuar "a propósito", "con conocimiento" o "temerariamente".

"A sabiendas" es sinónimo de "con conocimiento".

Una persona actúa "a propósito" cuando su objetivo consciente es la producción de un resultado o cuando cree que una circunstancia existe. La persona actúa "con conocimiento" cuando es consciente de que la producción del resultado o la existencia de una circunstancia prohibida por ley es prácticamente segura. La persona actúa "temerariamente" cuando es consciente de que su conducta genera un riesgo sustancial e injustificado de que se produzca el resultado o la circunstancia prohibida por ley, y a pesar de conocer el riesgo, la persona continúa con su acción u omisión.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no a propósito, con conocimiento o temerariamente. Pueden inferir o deducir razonablemente de la prueba presentada y admitida el propósito, el conocimiento o la temeridad. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Maltrato Agravado de Animales.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Maltrato Agravado de Animales.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 2 (*Definiciones*) del Capítulo I y el Artículo 7 (*Maltrato agravado de animales*) del Capítulo II de la Ley para el Bienestar y la Protección de los Animales, Ley 154-2008, según enmendada por la Ley 208-2011 (5 LPRA

secs. 1660 y 1670); el Artículo 14 (*Definiciones*), el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*) y el Artículo 22 (*Elementos subjetivos del delito*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5014, 5034 y 5035).

**COMENTARIO:**

La Ley 154-2008 no define los conceptos "malicia premeditada" y "grave menosprecio por la vida". No obstante, a modo persuasivo, son referencias algunos casos del Tribunal de Apelaciones donde se han contemplado supuestos análogos. "Conforme la transcrita disposición, el estado de derecho estima como punible todo acto intencional que demuestre un claro propósito de infligir o prolongar el dolor del animal sometido a la tortura del actor, así como aquella conducta premeditada que, en muestra de un claro menosprecio por la vida, ocasiona o pone a un animal en riesgo de sufrir daño a su salud e integridad física. 5 LPRA sec. 1660 (n)". *Pueblo v. López Vigo,* KLAN201100018, pág. 18, Sentencia de 19 de diciembre de 2011.

El concepto "malicia premeditada" implica la ausencia de justa causa o excusa cuando se ocasiona la muerte a otro ser e implica, además, la existencia de la intención de ocasionar la muerte. Esta intención puede manifestarse de dos formas: intención específica de matar o quitar la vida, y la intención de realizar un acto cuya consecuencia natural o probable sea la muerte de una persona. *Pueblo v. Reyes Lara*, 100 DPR 676 (1972); *Pueblo v. Martínez Padró*, 91 DPR 536 (1964); *Pueblo v. Méndez*, 74 DPR 913, 921-922 (1953).

En torno a la negligencia criminal, consistente en conducta que manifieste menosprecio por la vida y la seguridad de las demás personas, refiérase a *Pueblo v. Rivera Rivera*, KLAN20070810, Sentencia de 26 de noviembre de 2008; *Pueblo v. Torres Matos*, KLAN201100442, Sentencia de 28 de septiembre de 2012.

En el Artículo 2(b) del Capítulo I de la Ley 154-2008 se define "animal" como "cualquier animal mamífero, aves, reptiles, anfibios, peces, cetáceos y cualquier otro animal de los tipos (*phyla*) superiores o que esté en cautiverio o bajo el control de cualquier persona, o cualquier animal protegido por leyes federales o estatales u ordenanzas municipales". 5 LPRA sec. 1660(b).

Toda instrucción de los delitos particulares debe ir precedida de la Instrucción 4.15, que alude a la definición del concepto "elementos del delito".

Adviértase que se recogen en la Instrucción los elementos subjetivos del delito, por lo que no es necesario impartir también las Instrucciones 4.5 y 4.6.

En aquellos casos que aplique, debe impartirse la Instrucción 25.1 de legítima defensa.

### 21.6  Peleas de Animales (Cap. II, Art. 8)

Contra la persona acusada se ha presentado una acusación por el delito de Peleas de Animales.

La ley dispone que una persona que cause, patrocine, organice, lleve a cabo o promueva que cualquier animal pelee, amenace o lesione a otro animal con propósito deportivo, de entretenimiento, ganancia económica o cualquier otro propósito, a excepción de los gallos de peleas, comete el delito de incitar o participar en peleas de animales.

Los elementos de este delito son los siguientes:

(1) Causar, patrocinar, organizar, llevar a cabo o promover

(2) que cualquier animal pelee, amenace o lesione a otro animal

(3) con propósito deportivo, de entretenimiento, ganancia económica o cualquier otro propósito.

Una persona promueve que un animal pelee, amenace o lesione otro animal con propósito deportivo, de entretenimiento o ganancia económica, entre otros propósitos, si **[refiérase solamente a la(s) circunstancia(s) que aplique(n) según lo alegado en el pliego acusatorio]**:

(a) A sabiendas, está presente o apuesta en un acontecimiento de pelea, amenaza o lesión a otro animal con propósito deportivo, de entretenimiento, ganancia económica, entre otros propósitos.

(b) El guardián (la guardiana) entrena, transporta, posee, reproduce o equipa un animal con la intención de que esté involucrado en un acontecimiento de pelea, amenaza o lesión a otro animal con propósito deportivo, de entretenimiento, ganancia económica, entre otros. "Guardián o guardiana" es la persona natural o jurídica quien tiene control, custodia, posesión o título sobre un animal.

(c) A sabiendas, permite cualquier tipo de acontecimiento de pelea, amenaza o lesión a otro animal con propósito deportivo, de entretenimiento, ganancia económica, que ocurra en cualquier localidad que sea propiedad de o controlada por la persona, entre otros.

(d) A sabiendas, permite que un animal, utilizado para un acontecimiento de pelea, amenaza o lesión a otro animal con propósito deportivo, de entretenimiento o ganancia económica, entre otros, se mantenga, se aloje, se entrene o se trasporte en cualquier lugar o vehículo que sea propiedad de o controlada por la persona.

(e) A sabiendas, utilice cualquier medio de comunicación con el propósito de promover un acontecimiento de pelea, amenaza o lesión a otro animal con propósito deportivo, de entretenimiento, ganancia económica, entre otros.

(f) A sabiendas, posea un animal utilizado para pelear, amenazar o lesionar a otro animal con propósito deportivo, de entretenimiento, ganancia económica, entre otros, o posea cualquier mecanismo intencionado que

refuerce la habilidad de un animal para pelear, amenazar o lesionar con propósito deportivo, de entretenimiento, ganancia económica, entre otros.

**[El tribunal solamente debe impartir esta Instrucción cuando se alegue que el delito se cometió en presencia de una persona menor de edad:**

Además de los elementos anteriores, corresponde a ustedes evaluar y determinar si la persona, a sabiendas, cometió el maltrato de animales en la presencia de una persona menor de edad.

Una persona menor de edad está en presencia inmediata del maltrato de animales cuando ve el abuso o lo percibe directamente de cualquier manera.

"Menor de edad" es una persona que al momento de los hechos no ha cumplido 18 años**]**.

**[El tribunal solamente debe impartir esta Instrucción cuando se alegue que, como consecuencia de la pelea, un animal muere:**

Además de los elementos anteriores, les corresponde evaluar y determinar si la persona, a sabiendas, promovió que un animal peleara, amenazara o lesionara otro animal y que, como consecuencia de ello, el animal murió**]**.

**[Cuando no se acepte una condena previa por alguna ley relacionada con la protección de animales, o con cualquier estatuto sobre violencia doméstica, maltrato a menores o a personas de edad avanzada, el tribunal debe leer el párrafo siguiente:**

Además, corresponde a ustedes determinar si la persona fue convicta anteriormente por **[indique el delito]]**.

Una persona actúa "a propósito" cuando su objetivo consciente es la producción de un resultado o cuando cree que una circunstancia existe.

"A sabiendas" es sinónimo de "con conocimiento". Una persona actúa "con conocimiento" cuando es consciente de que la producción del resultado o la existencia de la circunstancia prohibida por ley es prácticamente segura.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no a propósito o con conocimiento. Pueden inferir o deducir razonablemente de la prueba presentada y admitida el propósito o conocimiento. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Peleas de Animales.

**[En los casos en que se alegue alguna circunstancia agravante, el tribunal debe añadir la instrucción siguiente:**

Si ustedes consideran, luego de un análisis cuidadoso de toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, que el Ministerio Público probó más allá de duda razonable la comisión del delito, pero no que **[indique la circunstancia agravante]**, deberán rendir un veredicto de culpable por el delito de Peleas de Animales sin esa circunstancia**]**.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Peleas de Animales.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 2 (*Definiciones*) del Capítulo I y el Artículo 8 (*Peleas de animales*) de la Ley para el Bienestar y la Protección de los Animales, Ley 154-2008, según enmendada por la Ley 208-2011 (5 LPRA secs. 1660 y 1671); el Artículo 14 (*Definiciones*), el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*) y el Artículo 22 (*Elementos subjetivos del delito*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5014, 5034 y 5035).

**COMENTARIO:**

En el Artículo 2(b) del Capítulo I de la Ley 154-2008 se define "animal" como "cualquier animal mamífero, aves, reptiles, anfibios, peces, cetáceos y cualquier otro animal de los tipos (*phyla*) superiores o que esté en cautiverio o bajo el control de cualquier persona, o cualquier animal protegido por leyes federales o estatales u ordenanzas municipales". 5 LPRA sec. 1660(b).

Para propósitos del Código Penal, se considera menor de edad cualquier persona que no haya cumplido 18 años. Refiérase a los Artículos 39 (*Minoridad*), 88 (*Delitos que no prescriben*) y 130 (*Agresión sexual*), entre otros, del Código Penal de 2012 (33 LPRA secs. 5062, 5133 y 5191). La doctora Nevares-Muñiz aduce que desde el Código Penal de 2004 se aumentó la edad de protección para cubrir todo el periodo en que la persona sea menor de 18 años. D. Nevares-Muñiz, *Código Penal de Puerto Rico*, 4ta ed. rev., San Juan, Ed. Instituto para el Desarrollo del Derecho, 2019, págs. 194-195.

Toda instrucción de los delitos particulares debe ir precedida de la Instrucción 4.15, que alude a la definición del concepto "elementos del delito".

### 21.7   Envenenamiento (Cap. II, Art. 11)

**[El tribunal debe impartir la instrucción de acuerdo con la modalidad que aplique].**

####   A.   Reincidencia posterior

Contra la persona acusada se ha presentado una acusación por el delito de Envenenamiento.

La ley dispone que comete este delito una persona que usa cualquier tipo de veneno, aunque para eso contrate a un tercero, sin tomar las medidas necesarias para evitar una lesión física a un animal que no sea plaga.

No será defensa que el animal haya penetrado en sus predios.

**[Cuando no se acepten las condenas previas por el mismo delito, el tribunal, además, debe leer el párrafo siguiente:**

Además, corresponde a ustedes determinar si la persona acusada fue convicta anteriormente, en dos ocasiones distintas, por el mismo delito**].**

"Lesión física" significa un trauma físico, pérdida o disminución de funciones o dolor incompatible con técnicas razonables de entrenamiento o de manejo.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Envenenamiento.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Envenenamiento.

####   B.   Lesión física severa o muerte

Contra la persona acusada se ha presentado una acusación por el delito de Envenenamiento.

La ley dispone que comete este delito la persona que usa cualquier tipo de veneno, aunque para eso contrate a un tercero, sin tomar las medidas necesarias para evitar una lesión física a un animal que no sea plaga.

No será defensa que el animal haya penetrado en sus predios.

Además de los elementos anteriores, corresponde a ustedes evaluar y determinar si la persona **[refiérase solamente a la(s) circunstancia(s) que aplique(n) según lo alegado en el pliego acusatorio]**:

(1) puso un veneno sin tomar las debidas precauciones y el animal que lo ingirió sufrió una lesión física severa.

(2) administró al animal, con intención, cualquier veneno o sustancia venenosa.

(3) administró al animal, con intención, cualquier veneno o sustancia venenosa que le causó una lesión física severa o la muerte.

"Lesión física" significa un trauma físico, pérdida o disminución de funciones o dolor incompatible con técnicas razonables de entrenamiento o de manejo.

"Lesión física severa" significa una lesión física que ocasione un riesgo de muerte o cause desfiguración, impedimento de salud prolongado o pérdida prolongada o discapacidad de la función de una extremidad u órgano corporal.

"Intención" es equivalente a actuar "a propósito", "con conocimiento" o "temerariamente".

Una persona actúa "a propósito" cuando su objetivo consciente es la producción de un resultado o cuando cree que una circunstancia existe. La persona actúa "con conocimiento" cuando es consciente de que la producción del resultado o la existencia de la circunstancia prohibida por ley es prácticamente segura. La persona actúa "temerariamente" cuando es consciente de que su conducta genera un riesgo sustancial e injustificado de que se produzca el resultado o la circunstancia prohibida por ley, y a pesar de conocer el riesgo, la persona continúa con su acción u omisión.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no a propósito, con conocimiento o temerariamente. Pueden inferir o deducir razonablemente de la prueba presentada y admitida el propósito, el conocimiento o la temeridad. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Envenenamiento.

Si ustedes consideran, luego de un análisis cuidadoso de toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, que el Ministerio Público probó más allá de duda razonable la comisión del delito de Envenenamiento pero no que **[indique la(s) circunstancia(s) que corresponda(n):**

(a) el veneno se puso sin la precaución debida y que eso le ocasionó una lesión física severa al animal;

(b) el veneno o la sustancia venenosa se administró con intención;

(c) el veneno o la sustancia venenosa se administró con intención y que eso le ocasionó una lesión física severa o la muerte del animal;**]**

deberán rendir un veredicto de culpable por el delito de Envenenamiento en su modalidad menos grave.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Envenenamiento.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 2 (*Definiciones*) del Capítulo I y el Artículo 11 (*Envenenamiento*) del Capítulo II de la Ley para el Bienestar y la Protección de los Animales, Ley 154-2008, según enmendada por la Ley 208-2011 (5 LPRA secs. 1660 y 1674); el Artículo 14 (*Definiciones*), el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*) y el Artículo 22 (*Elementos subjetivos del delito*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5014, 5034 y 5035).

**COMENTARIO:**

"Veneno" es cualquier sustancia que, al introducirse en un ser vivo, es capaz de producir graves alteraciones funcionales e, incluso, la muerte. Refiérase a la Instrucción 5.2.

En el Artículo 2(b) del Capítulo I de la Ley 154-2008 se define "animal" como "cualquier animal mamífero, aves, reptiles, anfibios, peces, cetáceos y cualquier otro animal de los tipos (*phyla*) superiores o que esté en cautiverio o bajo el control de cualquier persona, o cualquier animal protegido por leyes federales o estatales u ordenanzas municipales". 5 LPRA sec. 1660(b).

Toda instrucción sobre los delitos particulares debe ir precedida de la Instrucción 4.15, que alude a la definición del concepto "elementos del delito".

## 21.8   Trampas para Capturar Animales (Cap. II, Art. 12)

**[El tribunal debe impartir la instrucción de acuerdo con la modalidad que aplique].**

### A.  Reincidencia posterior

Contra la persona acusada se ha presentado una acusación por el delito de Trampas para Capturar Animales.

La ley dispone que comete este delito una persona que usa cualquier tipo de trampa o artefacto para capturar animales que no sean plaga, sin tomar las medidas necesarias para evitar una lesión o sufrimiento innecesario a un animal.

**[Cuando no se acepten las condenas previas por el mismo delito, el tribunal debe leer el párrafo siguiente:**

Además, corresponde a ustedes determinar si la persona fue convicta anteriormente en dos ocasiones distintas por el mismo delito].**

**[El tribunal debe impartir esta Instrucción acompañada de la Instrucción 4.5].**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Trampas para Capturar Animales.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Trampas para Capturar Animales.

## B. Lesión severa o muerte

Contra la persona acusada se ha presentado una acusación por el delito de Trampas para Capturar Animales.

La ley dispone que comete este delito la persona que usa cualquier tipo de trampa o artefacto para capturar animales, que no sean plaga, sin tomar las medidas necesarias para evitar una lesión o sufrimiento innecesario a un animal.

Corresponde a ustedes, miembros del Jurado, determinar si se probó más allá de duda razonable los elementos anteriormente descritos y, además, si se le ocasionó una lesión severa o la muerte al animal.

"Lesión física severa" significa una lesión física que ocasione un riesgo de muerte o cause desfiguración, impedimento de salud prolongado o pérdida prolongada o discapacidad de la función de una extremidad u órgano corporal.

**[El tribunal debe impartir esta Instrucción acompañada de la Instrucción 4.5].**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Trampas para Capturar Animales.

Si ustedes consideran, luego de un análisis cuidadoso de toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, que el Ministerio Público probó más allá de duda razonable la comisión del delito de Uso de Trampas para Capturar

Animales pero no que [se le ocasionó una lesión severa al animal] [se le ocasionó la muerte al animal], deberán rendir un veredicto de culpable por el delito de Trampas para Capturar Animales en su modalidad menos grave.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Trampas para Capturar Animales.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 2 (*Definiciones*) del Capítulo I y el Artículo 12 (*Trampa para capturar animales*) del Capítulo II de la Ley para el Bienestar y la Protección de los Animales, Ley 154-2008, según enmendada por la Ley 208-2011 (5 LPRA secs. 1660 y 1675).

**COMENTARIO:**

En el Artículo 2(b) del Capítulo I de la Ley 154-2008 se define "animal" como "cualquier animal mamífero, aves, reptiles, anfibios, peces, cetáceos y cualquier otro animal de los tipos (*phyla*) superiores o que esté en cautiverio o bajo el control de cualquier persona, o cualquier animal protegido por leyes federales o estatales u ordenanzas municipales". 5 LPRA sec. 1660(b).


## 21.9   Eutanasia (Cap. II, Art. 13)

**[El tribunal debe impartir la instrucción de acuerdo con la modalidad que aplique].**

### A.  Modalidad de tercer grado

Contra la persona acusada se ha presentado una acusación por el delito de Eutanasia.

La ley dispone que comete este delito la persona que da muerte a un animal sin estar autorizada.

Solo un(a) veterinario(a) o su personal adiestrado puede terminar con la vida de un animal mediante técnicas aprobadas por la Asociación Americana de Médicos Veterinarios y cumpliendo con las disposiciones de ley.

"Eutanasia" significa muerte rápida y sin dolor, un método de muerte humanitario.

"Veterinario(a)" es una persona con el grado de doctor(a) en medicina veterinaria, licenciado(a) por la Junta Examinadora de Médicos Veterinarios y colegiado(a) por el Colegio de Médicos Veterinarios.

**[El tribunal debe impartir esta Instrucción acompañada de la Instrucción 4.5].**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Eutanasia.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Eutanasia.

### B. Modalidad de cuarto grado

Contra la persona acusada se ha presentado una acusación por el delito de Eutanasia.

La ley dispone que comete este delito la persona que, sin estar autorizada, pero ante una emergencia, da muerte a un animal que, por su tamaño, no se puede transportar.

Solo un(a) veterinario(a) o su personal adiestrado puede terminar con la vida de un animal mediante técnicas aprobadas por la Asociación Americana de Médicos Veterinarios y cumpliendo con las disposiciones de ley.

"Eutanasia" significa muerte rápida y sin dolor, un método de muerte humanitario.

"Veterinario(a)" es una persona con el grado de doctor(a) en medicina veterinaria, licenciado(a) por la Junta Examinadora de Médicos Veterinarios y colegiado(a) por el Colegio de Médicos Veterinarios.

**[El tribunal debe impartir esta Instrucción acompañada de la Instrucción 4.5].**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Eutanasia.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Eutanasia.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 2 (*Definiciones*) del Capítulo I y el Artículo 13 (*Eutanasia*) del Capítulo II de la Ley para el Bienestar y la Protección de los Animales, Ley 154-2008, según enmendada por la Ley 208-2011 (5 LPRA secs. 1660 y 1676).

**COMENTARIO:**

En el Artículo 2(b) del Capítulo I de la Ley 154-2008 se define "animal" como "cualquier animal mamífero, aves, reptiles, anfibios, peces, cetáceos y cualquier otro animal de los tipos (*phyla*) superiores o que esté en cautiverio o bajo el control de cualquier persona, o cualquier animal protegido por leyes federales o estatales u ordenanzas municipales". 5 LPRA sec. 1660(b).

Toda instrucción de los delitos particulares debe ir precedida de la Instrucción 4.15, que alude a la definición del concepto "elementos del delito".

## 21.10 Cirugías cosméticas (Cap. II, Art. 14)

Contra la persona acusada se ha presentado una acusación por el delito de Cirugías Cosméticas.

La ley dispone que comete este delito la persona que, sin ser un(a) veterinario(a) licenciado(a) y colegiado(a), practica una cirugía cosmética a un animal.

"Veterinario(a)" es una persona con el grado de doctor(a) en medicina veterinaria, licenciado(a) por la Junta Examinadora de Médicos Veterinarios y colegiado(a) por el Colegio de Médicos Veterinarios.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Cirugías Cosméticas a un Animal.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Cirugías Cosméticas a un Animal.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 2 (*Definiciones*) del Capítulo I y el Artículo 14 (*Cirugías cosméticas*) del Capítulo II de la Ley para el Bienestar y la Protección de los Animales, Ley 154-2008, según enmendada por la Ley 208-2011 (5 LPRA secs. 1660 y 1677) (Supl. 2018).

**COMENTARIO:**

En el Artículo 2(b) del Capítulo I de la Ley 154-2008 se define "animal" como "cualquier animal mamífero, aves, reptiles, anfibios, peces, cetáceos y cualquier otro animal de los tipos (*phyla*) superiores o que esté en cautiverio o bajo el control de cualquier persona, o cualquier

animal protegido por leyes federales o estatales u ordenanzas municipales". 5 LPRA sec. 1660(b).

### 21.11  Órdenes de Protección (Cap. II, Art. 15)

Contra la persona acusada se ha presentado una acusación por el delito de Violar una Orden de Protección.

La ley dispone que comete este delito la persona que viole una orden de protección expedida en conformidad con la Ley para el Bienestar y la Protección de los Animales.

"Orden de protección" es el mandato expedido por escrito bajo el sello de un tribunal que dicta las medidas a una persona que maltrata a un animal para que no incurra o lleve a cabo determinados actos o conductas constitutivas de maltrato o negligencia.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable el delito de Violar una Orden de Protección.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Violar una Orden de Protección.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 2 (*Definiciones*) del Capítulo I y el Artículo 15 ([*Ó*]*rdenes de protección*) del Capítulo II de la Ley para el Bienestar y la Protección de los Animales, Ley 154-2008, según enmendada por la Ley 208-2011 (5 LPRA secs. 1660 y 1678).

**COMENTARIO:**

En el Artículo 2(b) del Capítulo I de la Ley 154-2008 se define "animal" como "cualquier animal mamífero, aves, reptiles, anfibios, peces, cetáceos y cualquier otro animal de los tipos (*phyla*) superiores o que esté en cautiverio o bajo el control de cualquier persona, o cualquier animal protegido por leyes federales o estatales u ordenanzas municipales". 5 LPRA sec. 1660(b).

## 21.12  Criadores de Animales (Cap. II, Art. 17)

Contra la persona acusada se ha presentado una acusación por el delito de [Vender Animales] [Criar Animales sin Licencia].

**[Cuando se alegue en el pliego acusatorio la modalidad de vender animales, el tribunal debe impartir la instrucción siguiente:**

La ley prohíbe la venta de animales en las calles, carreteras y lugares públicos del país. La persona que venda animales en las calles, carreteras o lugares públicos del país comete el delito de Vender Animales**].**

**[Cuando se alegue en el pliego acusatorio la modalidad de criar animales sin licencia, el tribunal debe impartir la instrucción siguiente:**

La ley dispone que todo(a) criador(a) de animales debe estar licenciado(a) por el Estado Libre Asociado de Puerto Rico. El Departamento de Salud es la agencia responsable de emitir las licencias y establecer los requisitos. El (la) criador(a) de animales que opere sin licencia del Departamento de Salud comete el delito de Criar Animales sin Licencia**].**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de [Vender Animales] [Criar Animales sin Licencia].

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de [Vender Animales] [Criar Animales sin Licencia].

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 17 (*Criadores de animales*) del Capítulo II de la Ley para el Bienestar y la Protección de los Animales, Ley 154-2008, según enmendada por la Ley 208-2011 (5 LPRA secs. 1680).

**COMENTARIO:**

En el Artículo 2(b) del Capítulo I de la Ley 154-2008 se define "animal" como "cualquier animal mamífero, aves, reptiles, anfibios, peces, cetáceos y cualquier otro animal de los tipos (*phyla*) superiores o que esté en cautiverio o bajo el control de cualquier persona, o cualquier animal protegido por leyes federales o estatales u ordenanzas municipales". 5 LPRA sec. 1660(b).

CAPÍTULO 22
**LEY DE REGISTRO DE EXISTENCIAS DE MATERIALES METÁLICOS**

### 22.1 Dejar de Llevar y de Anotar en el Registro (Art. 4(a))

Contra la persona acusada se ha presentado una acusación por violación al Artículo 4(a) de la Ley de Registro de Existencias de Materiales Metálicos, que prohíbe dejar de llevar un registro o dejar de anotar en él la información que requiere la ley.

La ley dispone que la persona natural o jurídica, propietario(a), representante o encargado(a) de un taller, tienda, solar o vehículo de motor que se dedique total o parcialmente a la compraventa, permuta, depósito, recogido, almacenaje, transporte, distribución de alambres o materiales de cobre, aluminio, estaño, platino o plomo, o una mezcla o aleación de estos (metales) para propósitos de reciclaje, reventa, exportación o reúso en cualquier forma o estado en que se encuentren, llevará y anotará en un registro, el cual deberá conservarse por 5 años, la información siguiente:

(1) El nombre, la dirección y el número del documento oficial utilizado para la identificación de la persona de quien adquiera metales, incluyendo el número de colegiado (licencia de ingeniero(a), perito(a) electricista, maestro(a) plomero(a) o de técnico(a) de refrigeración para poder vender el material para reúso, reventa, exportación o reciclaje; se exceptuarán del requisito de licencia profesional antes mencionado cuando se trate de latas de aluminio o material de origen doméstico, siempre y cuando se cumpla con los demás requisitos establecidos por ley), así como una fotocopia de una identificación vigente expedida por el Estado que contenga una fotografía de la persona. En los casos que la persona de quien se adquieran los metales no posea una identificación con foto, deberá formar parte del Registro una foto de la persona que realizó la venta o entregó los metales, y deberá acreditar que es propietario del metal o que está autorizado por su dueño(a) o su representante para realizar el negocio.

(2) La fecha y el lugar de la compra de los metales.

(3) El número de la tablilla del vehículo de motor en que se entregaron los metales y una descripción del vehículo de motor, marca, modelo, color y año.

(4) Una descripción legible y detallada que indique el tipo de metal, según se trate de alambre, cable, barras, varillas, paneles, planchas, postes, catalíticos, tubería, o cualquier otro objeto que contenga componentes de los metales o que se utilicen para la provisión de servicios públicos.

(5) Una información detallada y verificable sobre la procedencia de los metales, incluyendo, pero sin limitarse a, la dirección física del lugar donde se obtuvo y el nombre del comercio o de la entidad. Esta información se requerirá al (a la) vendedor(a) o a la persona que efectúa la entrega.

(6) El precio pagado por libra de cada metal, el total pagado y el número del cheque con el que se hizo el pago. En estos casos, el pago por la adquisición de los metales no podrá realizarse en efectivo, por lo que se tiene que

emitir un cheque. El cheque se emitirá a nombre de la persona que efectúa la entrega y no podrá ser emitido en efectivo (*cash*).

**[Cuando se trate de una persona jurídica, el tribunal debe referirse al Artículo 46 del Código Penal de 2012].**

**[El tribunal debe impartir esta Instrucción acompañada de la Instrucción 4.5].**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Dejar de Llevar un Registro o Dejar de Anotar en él la Información.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Dejar de Llevar un Registro o Dejar de Anotar en él la Información.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 1 (*Registro*), el Artículo 2 (*Acreditación y licencia*) y el Artículo 4(a) (*Penalidades*) de la Ley de Registro de Existencias de Materiales Metálicos, Ley Núm. 41 de 3 de junio de 1982, según enmendada, 25 LPRA secs. 1101, 1101a y 1103.

## 22.2   Dejar de Suministrar Información a la Policía (Art. 4(b))

Contra la persona acusada se ha presentado una acusación por violación al Artículo 4(b) de la Ley de Registro de Existencias de Materiales Metálicos, que prohíbe dejar de suministrar semanalmente al cuartel de la Policía de Puerto Rico, en o antes del lunes a las 4:00 p. m., las operaciones realizadas durante la semana que terminó el sábado anterior.

La ley dispone que la persona,  propietario(a), representante o encargado(a) de un taller, tienda, solar o vehículo de motor que se dedique total o parcialmente a la compraventa, permuta, depósito, recogido, almacenaje, transporte, distribución de alambres o materiales de cobre, aluminio, estaño, platino o plomo, o una mezcla o aleación de estos (metales), para propósitos de reciclaje, reventa, exportación o reúso en cualquier forma o estado en que se encuentren, suministrará a la Policía la información siguiente:

> (1) El nombre, la dirección y el número del documento oficial utilizado para la identificación de la persona de quien adquiera metales, incluyendo el número de colegiado (licencia de ingeniero(a), perito(a) electricista, maestro(a) plomero(a) o de técnico(a) de refrigeración para poder vender el material para reúso, reventa, exportación o reciclaje; se exceptuarán del requisito de licencia profesional antes mencionado cuando se trate de latas

de aluminio o material de origen doméstico, siempre y cuando se cumpla con los demás requisitos establecidos por ley), así como una fotocopia de una identificación vigente expedida por el Estado que contenga una fotografía de la persona. En los casos que la persona de quien se adquieran los metales no posea una identificación con foto, deberá formar parte del Registro una foto de la persona que realizó la venta o entregó los metales, y deberá acreditar que es propietario del metal o que está autorizado por su dueño(a) o su representante para realizar el negocio.

(2) La fecha y el lugar de la compra de los metales.

(3) El número de la tablilla del vehículo de motor en que se entregaron los metales y una descripción del vehículo de motor, marca, modelo, color y año.

(4) Una descripción legible y detallada que indique el tipo de metal, según se trate de alambre, cable, barras, varillas, paneles, planchas, postes, catalíticos, tubería, o cualquier otro objeto que contenga componentes de los metales o que se utilicen para la provisión de servicios públicos.

(5) Una información detallada y verificable sobre la procedencia de los metales, incluyendo, pero sin limitarse a, la dirección física del lugar donde se obtuvo o el nombre del comercio o de la entidad. Esta información se le requerirá al (a la) vendedor(a) o a la persona que efectúa la entrega.

(6) El precio pagado por libra de cada metal, el total pagado y el número del cheque con el que se hizo el pago. En estos casos, el pago por la adquisición de los metales no podrá realizarse en efectivo, por lo que se tiene que emitir un cheque. El cheque se emitirá a nombre de la persona que efectúa la entrega y no podrá emitirse en efectivo (*cash*).

**[Cuando se trate de una persona jurídica, el tribunal debe referirse al Artículo 46 del Código Penal de 2012].**

**[El tribunal debe impartir esta Instrucción acompañada de la Instrucción 4.5].**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Dejar de Suministrar Información al Cuartel de la Policía.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Dejar de Suministrar Información al Cuartel de la Policía.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 1 (*Registro*), el Artículo 2 (*Acreditación y licencia*), el Artículo 3(b) (*Supervisión por la Policía*) y el Artículo 4(b) (*Penalidades*) de la Ley de Registro de Existencias de Materiales Metálicos, Ley Núm. 41 de 3 de junio de 1982, según enmendada, 25 LPRA secs. 1101, 1101a, 1102 y 1103).

## 22.3 Anotar Información Falsa en el Registro o Remitir Información Falsa a la Policía (Art. 4(c))

Contra la persona acusada se ha presentado una acusación por violación al Artículo 4(c) de la Ley de Registro de Existencias de Materiales Metálicos, que prohíbe que se anote información falsa en el Registro o remita información falsa en la notificación al cuartel de la Policía del contenido del Registro.

La ley dispone que la persona, propietario(a), representante o encargado (a) de un taller, tienda, solar o vehículo de motor que se dedique total o parcialmente a la compraventa, permuta, depósito, recogido, almacenaje, transporte, distribución de alambres o materiales de cobre, aluminio, estaño, platino o plomo, o una mezcla o aleación de estos (metales), para propósitos de reciclaje, reventa, exportación o reúso en cualquier forma o estado en que se encuentren, deberá llevar y anotar en un registro la información siguiente:

(1) El nombre, la dirección y el número del documento oficial utilizado para la identificación de la persona de quien adquiera metales, incluyendo el número de colegiado (licencia de ingeniero(a), perito(a) electricista, maestro(a) plomero(a) o de técnico(a) de refrigeración para poder vender el material para reúso, reventa, exportación o reciclaje; se exceptuarán del requisito de licencia profesional antes mencionado cuando se trate de latas de aluminio o material de origen doméstico, siempre y cuando se cumpla con los demás requisitos establecidos por ley), así como una fotocopia de una identificación vigente expedida por el Estado que contenga una fotografía de la persona. En los casos que la persona de quien se adquieran los metales no posea una identificación con foto, deberá formar parte del Registro una foto de la persona que realizó la venta o entregó los metales, y deberá acreditar que es propietario del metal o que está autorizado por su dueño(a) o su representante para realizar el negocio.

(2) La fecha y el lugar de la compra de los metales.

(3) El número de la tablilla del vehículo de motor en que se entregaron los metales y una descripción del vehículo de motor, marca, modelo, color y año.

(4) Una descripción legible y detallada que indique el tipo de metal, según se trate de alambre, cable, barras, varillas, paneles, planchas, postes, catalíticos, tubería, o cualquier otro objeto que contenga componentes de los metales o que se utilicen para la provisión de servicios públicos.

(5) Una información detallada y verificable sobre la procedencia de los metales, incluyendo, pero sin limitarse a, la dirección física del lugar donde

se obtuvo o el nombre del comercio o de la entidad. Esta información se le requerirá al (a la) vendedor(a) o a la persona que efectúa la entrega.

(6) El precio pagado por libra de cada metal, el total pagado y el número del cheque con el que se hizo el pago. En estos casos, el pago por la adquisición de los metales no podrá realizarse en efectivo, por lo que se tiene que emitir un cheque. El cheque se emitirá a nombre de la persona que efectúa la entrega y no podrá emitirse en efectivo (*cash*).

**[Cuando se trate de una persona jurídica, el tribunal debe referirse al Artículo 46 del Código Penal de 2012].**

**[El tribunal debe impartir esta Instrucción acompañada de la Instrucción 4.5].**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Anotar Información Falsa en el Registro o Remitir Información Falsa a la Policía.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Anotar Información Falsa en el Registro o Remitir Información Falsa a la Policía.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 1 (*Registro*) y el Artículo 4(c) (*Penalidades*) de la Ley de Registro de Existencias de Materiales Metálicos, Ley Núm. 41 de 3 de junio de 1982, según enmendada, 25 LPRA secs. 1101 y 1103.

## 22.4   No colocar ni Exhibir Anuncios (Art. 4(d))

Contra la persona acusada se ha presentado una acusación por violación al Artículo 4(d) de la Ley de Registro de Existencias de Materiales Metálicos, que obliga a toda persona a colocar y exhibir de manera conspicua y visible los anuncios y las advertencias legales en cuanto a los metales en sus formas originales, alteradas o modificadas.

La ley dispone que la persona, propietario(a), representante o encargado(a) de un taller, tienda, solar o vehículo de motor que se dedique total o parcialmente a la compraventa, permuta, depósito, recogido, almacenaje, transporte, distribución de alambres o materiales de cobre, aluminio, estaño, platino o plomo, o una mezcla o aleación de estos (metales), para propósitos de reciclaje, reventa, exportación o reúso en cualquier forma o estado en que se encuentren, está obligada a colocar y exhibir en forma sobresaliente y

visible los anuncios y las advertencias legales en cuanto a los metales en sus formas originales, alteradas o modificadas.

**[Cuando se trate de una persona jurídica, el tribunal debe referirse al Artículo 46 del Código Penal de 2012].**

**[El tribunal debe impartir esta Instrucción acompañada de la Instrucción 4.5].**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de No Colocar ni Exhibir los Anuncios y las Advertencias Legales.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de No Colocar ni Exhibir los Anuncios y las Advertencias Legales.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 1 (*Registro*), el Artículo 2 (*Acreditación y licencia*) y Artículo 4(d) (*Penalidades*) de la ley de Registro de Existencias de Materiales Metálicos, Ley Núm. 41 de 3 de junio de 1982, según enmendada, 25 LPRA secs. 1101, 1101a y 1103.

## 22.5   Apropiación Ilegal de Metales (Art. 4(e))

Contra la persona acusada se ha presentado una acusación por violación al Artículo 4(e) de la Ley de Registro de Existencias de Materiales Metálicos.

La ley prohíbe que una persona se apropie ilegalmente de metales pertenecientes a otra persona. Los metales apropiados pueden ser propiedad pública o que, siendo privados, hayan estado instalados o se hayan usado para proveer o recibir servicios de electricidad, telecomunicaciones, cable TV, agua potable o cualquier otro servicio público.

Los elementos de este delito son los siguientes:

(1) apropiarse ilegalmente de metales

(2) pertenecientes a otra persona.

**[Cuando proceda, el tribunal debe leer la modalidad que aplique según lo alegado en el pliego acusatorio:**

Además, corresponde a ustedes determinar si los metales [son propiedad pública] [siendo privados, están instalados o se usaban para proveer o recibir servicios de electricidad, telecomunicaciones, cable TV, agua potable o cualquier otro servicio público**].**

"Apropiar" incluye malversar, defraudar, ejercer control ilegal, usar, sustraer, apoderarse o, en cualquier forma, hacer propio temporal o permanente cualquier bien o cosa que no le pertenece.

"Ilegalmente" es todo acto contrario a alguna ley, norma, reglamento, ordenanza u orden promulgada por una autoridad competente del Estado en el ejercicio de sus funciones.

"Metales" son los alambres o materiales de cobre, aluminio, estaño, platino o plomo, o una mezcla o aleación de estos.

"Persona" incluye las personas naturales y las personas jurídicas.

**[Cuando se trate de una persona jurídica, el tribunal debe referirse al Artículo 46 del Código Penal de 2012].**

**[El tribunal debe impartir esta Instrucción acompañada de la Instrucción 4.5].**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Apropiación Ilegal de Metales.

**[Cuando se alegue alguna de las circunstancias enumeradas en el tercer elemento del delito, el tribunal debe impartir esta Instrucción adicional:**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable la comisión del delito pero no que los metales apropiados ilegalmente [son propiedad pública] [se utilizaban para proveer o recibir servicios de electricidad, telecomunicaciones, cable TV, agua potable, o cualquier otro servicio público], deberán rendir un veredicto de culpable por el delito de Apropiación Ilegal de Metales sin esa circunstancia**].**

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Apropiación Ilegal de Metales.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 1 (*Registro*) y el Artículo 4(e) (*Penalidades*) de la Ley de Registro de Existencias de Materiales Metálicos, Ley Núm. 41 de 3 de junio de 1982, según enmendada, 25 LPRA secs. 1101 y 1103, y el Artículo 14 del Código Penal de 2012, según enmendado por la Ley 246-2014 (33 LPRA sec. 5014).

### 22.6 Poseer Metales a Sabiendas de que Fueron Obtenidos Mediante Apropiación Ilegal o Mediante Cualquier Forma Ilícita (Art. 4(f))

Contra la persona acusada se ha presentado una acusación por violación al Artículo 4(f) de la Ley de Registro de Existencias de Materiales Metálicos, que prohíbe la posesión de metales a sabiendas de que fueron obtenidos mediante apropiación ilegal o cualquier forma ilícita.

La ley dispone que comete este delito la persona natural o jurídica, propietario(a), representante o encargado(a) de un taller, tienda, solar o vehículo de motor que se dedique total o parcialmente a la compraventa, permuta, depósito, recogido, almacenaje, transporte o distribución de metales para propósitos de reciclaje, reventa, exportación o reúso, en cualquier forma o estado que aparezcan, y que posea, compre, reciba, almacene, oculte, transporte, retenga o disponga mediante venta, permuta, trueque o de otro modo, metales en cualquier forma o estado en que aparezcan, a sabiendas de que fueron obtenidos mediante apropiación ilegal, robo, extorsión o cualquier forma ilícita.

Los elementos de este delito son los siguientes **[adapte la instrucción en conformidad con la(s) modalidad(es) o circunstancia(s) que aplique(n) según lo alegado en el pliego acusatorio]**:

(1) Que una persona [natural] [jurídica], propietario(a), representante o encargado(a) de un taller, tienda, solar o vehículo de motor que se dedique total o parcialmente a la compraventa, permuta, depósito, recogido, almacenaje, transporte o distribución de metales para propósitos de reciclaje, reventa, exportación o reúso, en cualquier forma o estado que aparezcan,

(2) posea, compre, reciba, almacene, oculte, transporte, retenga o disponga mediante venta, permuta, trueque o de otro modo, metales en cualquier forma o estado en que aparezcan

(3) a sabiendas de que fueron obtenidos mediante [apropiación ilegal] [robo] [extorsión] [cualquier forma ilícita].

**[Cuando se trate de una persona jurídica, el tribunal debe referirse al Artículo 46 del Código Penal de 2012].**

"A sabiendas" es sinónimo de "con conocimiento". Una persona actúa "con conocimiento" cuando es consciente de que la producción del resultado es una consecuencia prácticamente segura de su conducta o cuando es consciente de que la existencia de la

circunstancia es prácticamente segura. Actuar "a sabiendas" no requiere el conocimiento de la ilegalidad del acto u omisión.

Ustedes podrán inferir que una persona actuó a sabiendas o que tenía conocimiento personal de que los metales se obtuvieron mediante apropiación ilegal, robo, extorsión o cualquier otra forma ilícita cuando **[refiérase solamente a la(s) circunstancia(s) que aplique(n) según lo alegado en el pliego acusatorio]**:

(a) no hizo constar el nombre, la dirección y el documento oficial con foto utilizado para la identificación de la persona de quien adquirió o a quien entregó los metales, ni la fecha y el lugar de la compra o negocio;

(b) no hizo constar el número de la tablilla, la descripción del vehículo de motor en el que se entregaron los metales ni una descripción legible y detallada;

(c) no anotó la cantidad de los metales adquiridos ni especificó si consistían en alambres, cables, varas, varillas, paneles, planchas, postes, catalíticos, tuberías o cualquier otro objeto que contenga componentes de los metales o que se utilicen para la provisión de servicios públicos;

(d) el precio pagado por los metales adquiridos sea tan irrisorio o las condiciones de pago sean tan ventajosas o en circunstancias tales que quien los adquirió debió concluir razonablemente que se obtuvieron ilegalmente;

(e) el vendedor de los metales o quien los entregó fuera una persona menor de edad y su padre, madre, tutores(as) o custodios(as) no hayan prestado su consentimiento al negocio realizado;

(f) por sus conocimientos, experiencia, profesión, trabajo u oficio, la persona razonablemente debió haber conocido que se trataba de metales adquiridos en forma ilegal;

(g) la adquisición de los metales se hizo fuera del horario de operación establecido en esta ley, en un lugar o establecimiento de una persona que se desempeñara como comerciante y que no estuviera autorizada por ley, o cuando no se identificaran debidamente las partes en el negocio realizado ni se cumpliera con los requisitos de esta ley;

(h) los metales se adquieran de una persona que estuviera o hubiera estado relacionada con actividades delictivas y, por las circunstancias en las cuales se adquirieron, una persona prudente y razonable debiera conocer que se trataba de una propiedad adquirida ilegalmente;

(i) los metales se encontrasen en posesión y control de una persona que no pudiera probar su derecho a tenerlos consigo, cuando se hubiesen informado como desaparecidos, robados, apropiados ilegalmente o, en cualquier otra forma, sustraídos ilegalmente de la persona a quien pertenezcan,

(j) los metales muestren modificaciones o alteraciones en su cobertura protectora exterior o en sus elementos internos, o de cualquier otra forma dificultasen o impidieran identificar su dueño, origen, procedencia o fabricante original.

**[El tribunal debe impartir esta Instrucción acompañada de la Instrucción 3.39].**

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o con conocimiento (a sabiendas). Pueden inferir o deducir razonablemente de la prueba presentada y admitida el conocimiento. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Poseer Metales a Sabiendas de que Fueron Obtenidos de Forma Ilícita.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Poseer Metales a Sabiendas de que Fueron Obtenidos de Forma Ilícita.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 4(f) (*Penalidades*), el Artículo 5 (*Inferencias permisibles*) y el Artículo 8 (Prohibición) de la Ley de Registro de Existencias de Materiales Metálicos, Ley Núm. 41 de 3 de junio de 1982, según enmendada, 25 LPRA secs. 1103, 1105 y 1108; el Artículo 14 (*Definiciones*), el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*) y el Artículo 22 (*Elementos subjetivos del delito*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5014, 5034 y 5035).

**COMENTARIO:**

En general, sobre las presunciones y sus efectos, particularmente el problema constitucional, véase E.L. Chiesa Aponte*, Procedimiento criminal y la Constitución: etapa adjudicativa*, San Juan, Ed. Situm, 2018, Sec. 1.4, págs. 45-50.

Sobre la validez constitucional de las inferencias establecidas en el Artículo 16 de la Ley para la Protección de la Propiedad Vehicular, 9 LPRA sec. 3215, véase *Pueblo v. Sánchez Molina*, 134 DPR 577, 589-592 (1993). Véanse, además, Instrucción 3.39 (*Presunciones (presunción particular aplicable)*); Regla 303 (*Efecto de las presunciones en casos criminales*) y Regla 304 (*Presunciones específicas*) de Evidencia de 2009 (32 LPRA Ap. VI).

**22.7   Comprar Material que no esté en su Forma Original (Art. 4(g))**

Contra la persona acusada se ha presentado una acusación por violación al Artículo 4(g) de la Ley de Registro de Existencias de Materiales Metálicos, que prohíbe la compra de material de reciclaje o metales que no estén en su forma original.

La ley prohíbe que la persona natural o jurídica, propietario(a), representante o encargado(a) de un taller, tienda, solar o vehículo de motor que se dedique total o parcialmente a la compraventa, permuta, depósito, recogido, almacenaje, transporte o distribución de metales para propósitos de reciclaje, reventa, exportación o reúso, en cualquier forma o estado que aparezcan, y posea, compre, reciba, almacene, oculte, transporte, retenga o disponga mediante venta, permuta, trueque o de otro modo, metales que no estén en su forma original.

Los cables no pueden estar con sus cubiertas derretidas o quemadas. Para reciclar productos quemados no solo tendrá que establecer su procedencia y la identidad del vendedor, sino que el comprador acreditará cómo se destruyó y transformó el material.

Ustedes podrán inferir que el material fue obtenido y procesado ilícitamente cuando no hay justificación de por qué no estaba en su estado original al momento de la compra.

Se prohíbe la compraventa, permuta, depósito, recogido, almacenaje, transporte, distribución o cualquier otro tipo de intercambio de alambres o materiales de cobre, aluminio, estaño o plomo, o una mezcla de estos, que no tengan la cobertura protectora exterior que identifica y garantiza su procedencia y legalidad.

"Metales" son alambres o materiales de cobre, aluminio, estaño, platino o plomo, o una mezcla o aleación de estos.

**[Cuando se trate de una persona jurídica, el tribunal debe referirse al Artículo 46 del Código Penal de 2012].**

**[El tribunal debe impartir esta Instrucción acompañada de la Instrucción 4.5].**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Comprar Material de Reciclaje o Metales que no estén en su Forma Original.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de Comprar Material de Reciclaje o Metales que no estén en su Forma Original.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 1 (*Registro*), el Artículo 4(g) (*Penalidades*) y el Artículo 8 (*Prohibición*) de la Ley de Registro de Existencias de Materiales Metálicos, Ley Núm. 41 de 3 de junio de 1982, según enmendada, 25 LPRA secs. 1101, 1103 y 1108.

## 22.8   Operar un Negocio fuera del Horario Establecido (Art. 4(h))

Contra la persona acusada se ha presentado una acusación por violación al Artículo 4(h) de la Ley de Registro de Existencias de Materiales Metálicos, que prohíbe la operación del negocio fuera del horario establecido.

La ley establece que la persona natural o jurídica, propietario(a), representante o encargado(a) de un taller, tienda, solar o vehículo de motor que se dedique total o parcialmente a la compraventa, permuta, depósito, recogido, almacenaje, transporte, distribución de metales, solo podrá operar de 7 a. m. a 7 p. m.

**[Cuando se trate de una persona jurídica, el tribunal debe referirse al Artículo 46 del Código Penal de 2012].**

**[El tribunal debe impartir esta instrucción acompañada de la Instrucción 4.5].**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de Operar su Negocio fuera del Horario Establecido.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 1-A (*Horario*) y el Artículo 4(h) (*Penalidades*) de la Ley de Registro de Existencias de Materiales Metálicos, Ley Núm. 41 de 3 de junio de 1982, según enmendada, 25 LPRA secs. 1101-1 y 1103.

CAPÍTULO 23
## LEY PARA ESTABLECER RESTRICCIONES AL USO DE TELÉFONOS CELULARES A PERSONAS CONFINADAS EN LAS INSTITUCIONES PENALES DE PUERTO RICO

### 23.1 Restricción de Comunicaciones: posesión de un equipo de telecomunicaciones por persona ingresada en una institución penal (Art. 2)

Contra la persona acusada se ha presentado una acusación por el delito de posesión de equipo de telecomunicaciones no autorizado.

La ley prohíbe que una persona ingresada en una institución penal o juvenil posea un equipo de telecomunicaciones no autorizado, incluyendo teléfonos celulares o cualquier equipo que permita la transmisión de señales radiales, el acceso a la red de celulares o la conexión a Internet.

Los elementos de este delito son los siguientes:

(1) Que una persona que se encuentra ingresada en una institución penal o juvenil,
(2) posea sin autorización un equipo de telecomunicaciones o un teléfono celular.

La "posesión" constituye delito solamente cuando la persona voluntariamente adquirió o recibió la cosa o conocía que estaba en su posesión y tuvo tiempo suficiente para terminar la posesión.

Corresponde a ustedes, miembros del Jurado, determinar si la persona ingresada en la institución penal o juvenil poseyó de manera voluntaria [equipo de telecomunicaciones] [teléfono celular] o fue consciente de que lo tuvo por un tiempo suficiente para dar por terminada la posesión. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta y las manifestaciones, si alguna, de la persona acusada.

**[El tribunal debe impartir esta Instrucción acompañada de la Instrucción 4.5].**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de posesión de equipo de telecomunicaciones no autorizado.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de posesión de equipo de telecomunicaciones no autorizado.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 2 (*Restricción de comunicaciones; delitos y penalidades*) de la Ley para Establecer Restricciones al Uso de Teléfonos Celulares a Personas Confinadas en las Instituciones Penales de Puerto Rico, Ley 15-2011 (4 LPRA sec. 1632), y el Artículo 18 (*Formas de comisión*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA sec. 5031). Véase *Pueblo v. Cordero Meléndez,* 193 DPR 701 (2015) (Sentencia).

**COMENTARIO:**

En *Pueblo v. Cordero Meléndez,* supra (Sentencia), el Tribunal Supremo interpretó el Artículo 277 del Código Penal de 2012, según enmendado, 33 LPRA sec. 5370, y el Artículo 2 de la Ley 15-2011, *supra*, a la luz del principio de especialidad. En la opinión de conformidad del Juez Asociado Señor Kolthoff Caraballo, a la cual se unieron los Jueces Asociados Martínez Torres y Feliberti Cintrón, el Juez establece que existen dos conductas proscritas por el referido Artículo 2, a saber: (1) que una persona confinada posea un equipo de telecomunicaciones, incluso un teléfono celular, y (2) que una persona confinada posea un equipo o aditamento que permita la transmisión de señales radiales, el acceso a la red celular de comunicaciones o el acceso a una conexión inalámbrica a Internet que no sea la provista por la institución.

En cuanto a la especie de equipo de telecomunicaciones no autorizados, el Juez Asociado Señor Kolthoff Caraballo señala que el Artículo 2 de la Ley 15-2011, *supra*, como ejemplo los teléfonos celulares. Señaló que, además de los teléfonos celulares, el legislador quiso prohibir cualquier artefacto que haga las mismas funciones que un teléfono celular, por lo que incluyó la frase " 'cualquier tipo de equipo o aditamento que permita transmisión de señales radiales o acceso a la red celular de comunicaciones o a una conexión inalámbrica a Internet que no sea el acceso provisto por la institución' ". *Pueblo v. Cordero Meléndez,* supra, pág. 712. Es decir, si la persona se encontraba en posesión de un artefacto —que no sea el teléfono celular— y se pretende acusar bajo este estatuto, el Estado no solo tendrá que probar la posesión del artefacto, sino también la capacidad del artefacto de ejercer las funciones típicas del teléfono celular*. Pueblo v. Cordero Meléndez,* supra, pág. 713.

En la opinión de conformidad mencionada se concluye que en los casos donde el Ministerio Público alegue la posesión de un equipo de telecomunicaciones, como lo es el teléfono celular, no tiene discreción alguna en cuanto a qué estatuto aplicar. Frente a unos hechos que imputen la posesión por parte de un(a) confinado(a) de un teléfono celular o de un equipo de telecomunicaciones, el Estado está obligado a aplicar las disposiciones contenidas en el Artículo 2 de la Ley 15-2011, *supra*, en virtud del principio de especialidad, y no el delito general contenido en el Artículo 277 del Código Penal de 2012, según enmendado, *supra*.

La Jueza Presidenta Maite D. Oronoz Rodríguez, entonces Jueza Asociada, también suscribió una opinión de conformidad, donde coincidió en cierta medida con el análisis precedente, pero al amparo del principio de favorabilidad. Por su parte, el Juez Asociado Señor Estrella Martínez emitió una opinión disidente, donde favoreció la prelación de la Ley 15-2011 en virtud del principio de especialidad. No obstante, a diferencia de la mayoría del Tribunal, hubiese desestimado el pliego acusatorio por ausencia total de prueba.

En torno a los elementos subjetivos aplicables, la doctora Nevares-Muñiz, al discutir los delitos a título de posesión, señala que "el elemento mental asumirá las formas de propósito o conocimiento". D. Nevares-Muñiz, *Derecho penal puertorriqueño: parte general*, 7ma ed. rev., San Juan, Ed. Instituto para el Desarrollo del Derecho, 2015, Sec. 5.6.5, pág. 204.

Toda instrucción de los delitos particulares debe ir precedida de la Instrucción 4.15, que alude a la definición del concepto "elementos del delito".

### 23.2  Restricción de Comunicaciones: posesión de un equipo o aditamento por persona ingresada en una institución penal (Art. 2)

Contra la persona acusada se ha presentado una acusación por el delito de posesión de equipo o aditamento no autorizado.

La ley prohíbe que una persona ingresada en una institución penal o juvenil posea un equipo o aditamento que permita la transmisión de señales radiales, el acceso a la red de celulares o la conexión a Internet.

Los elementos de este delito son los siguientes:

(1) Que una persona que se encuentra ingresada en una institución penal o juvenil,
(2) posea sin autorización un equipo o aditamento (accesorio) y
(3) que el equipo o aditamento (accesorio) permita [la transmisión de señales radiales] [el acceso a la red celular de comunicaciones] [conectarse a Internet]**.**

La "posesión" constituye delito solamente cuando la persona voluntariamente adquirió o recibió la cosa o conocía que estaba en su posesión y tuvo tiempo suficiente para terminar la posesión.

Corresponde a ustedes, miembros del Jurado, determinar si la persona ingresada en la institución penal o juvenil poseyó de manera voluntaria [equipo de telecomunicaciones] [teléfono celular] o si fue consciente de que lo tuvo por un tiempo suficiente para dar por terminada la posesión. A estos fines, se le permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta y las manifestaciones, si alguna, de la persona acusada.

**[El tribunal debe impartir esta Instrucción acompañada de la Instrucción 4.5].**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de posesión de equipo o aditamento no autorizado.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran

que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de posesión de equipo o aditamento no autorizado.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 2 (*Restricción de comunicaciones; delitos y penalidades*) de la Ley para Establecer Restricciones al Uso de Teléfonos Celulares a Personas Confinadas en las Instituciones Penales de Puerto Rico, Ley 15-2011 (4 LPRA sec. 1632), y el Artículo 18 (*Formas de comisión*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA sec. 5031). Véase *Pueblo v. Cordero Meléndez,* 193 DPR 701 (2015) (Sentencia).

**COMENTARIO:**

Refiérase al comentario que acompaña la Instrucción 23.1.

Toda instrucción de los delitos particulares debe ir precedida de la Instrucción 4.15, que alude a la definición del concepto "elementos del delito".

### 23.3 Restricción de Comunicaciones: transferencia no autorizada de un equipo de t elecomunicación por persona ajena a la institución penal (Art. 2)

Contra la persona acusada se ha presentado una acusación por el delito de transferencia no autorizada de un equipo de telecomunicación.

La ley prohíbe que una persona transfiera sin autorización un equipo de telecomunicación a una persona que se encuentre ingresada o confinada en una institución penal o juvenil.

Los elementos de este delito son los siguientes:

(1) Que una persona ajena a la institución penal o juvenil o que no esté confinada,

(2) transfiera o ceda a una persona ingresada un equipo de telecomunicaciones sin autorización.

**[Cuando se alegue la modalidad agravada, el tribunal debe impartir la instrucción siguiente:**

Además, corresponde a ustedes determinar si [recibió o solicitó pago o se le prometió una compensación por el equipo de telecomunicación] [la persona que transfirió o cedió el equipo es empleada o contratista del Departamento de Corrección y Rehabilitación o agente del orden público].

["Agente del orden público" significa aquel (aquella) miembro u oficial del gobierno de Puerto Rico o de Estados Unidos de América, así como cualquier subdivisión política de

Puerto Rico o de Estados Unidos, entre cuyos deberes se encuentra el proteger a las personas y la propiedad, mantener el orden y la seguridad pública; y efectuar arrestos. Esto incluye, pero sin limitarse, a todo miembro del Negociado de la Policía de Puerto Rico, de la Policía Municipal, del Negociado de Investigaciones Especiales del Cuerpo de Vigilantes del Departamento de Recursos Naturales y Ambientales, Oficiales de Custodia del Departamento de Corrección, del Programa de Servicios con Antelación al Juicio, de la Administración de Instituciones Juveniles, de la Guardia Nacional, Agente de Seguridad de la Autoridad de Puertos, mientras se encuentren en funciones o ejercicios oficiales, los(as) Inspectores(as) del Negociado de Transporte y Otros Servicios Públicos, los(as) Agentes Especiales Fiscales y los(as) Agentes e Inspectores(as) de Rentas Internas del Departamento de Hacienda y los(as) Alguaciles de la Rama Judicial de Puerto Rico y del tribunal federal con jurisdicción en todo Puerto Rico.]**].**

"Transferir" significa ceder o renunciar a favor de otro el derecho, el dominio o la atribución que se tiene sobre la cosa.

**[El tribunal debe impartir esta Instrucción acompañada de la Instrucción 4.5].**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de transferencia no autorizada de un equipo de telecomunicación.

**[Cuando se alegue la modalidad agravada, el tribunal debe añadir la instrucción siguiente:**

Si ustedes consideran, luego de un análisis cuidadoso de toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, que el Ministerio Público probó más allá de duda razonable la comisión del delito, pero no que **[indique la modalidad agravada]**, deberán rendir un veredicto de culpable por el delito de transferencia no autorizada de un equipo de telecomunicación sin esa circunstancia**].**

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de transferencia no autorizada de un equipo de telecomunicación.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 2 (*Restricción de comunicaciones; delitos y penalidades*) de la Ley para Establecer Restricciones al Uso de Teléfonos Celulares a Personas Confinadas en las Instituciones Penales de Puerto Rico, Ley 15-2011 (4 LPRA sec. 1632), y el Artículo 1.02 (*Definiciones*) de la Ley de Armas de Puerto Rico de 2020, Ley 168-2019. Véase *Pueblo v. Cordero Meléndez,* 193 DPR 701 (2015) (Sentencia).

**COMENTARIO:**

La definición de "agente del orden público" tiene su origen en el Artículo 1.02(a) de la Ley de Armas de Puerto Rico de 2020, *supra*.  Refiérase, a su vez, a la Exposición de Motivos de la Ley 43-2010 (2010 [Parte 1] Leyes de Puerto Rico 200).

Toda instrucción de los delitos particulares debe ir precedida de la Instrucción 4.15 que alude a la definición del concepto "elementos del delito".


**23.4    Restricción de Comunicaciones: posesión de un equipo de telecomunicación por persona ajena con la intención de transferirlo a la institución penal (Art. 2)**

Contra la persona acusada se ha presentado una acusación por el delito de posesión de un equipo de telecomunicación con la intención de transferirlo a persona ingresada.

La ley prohíbe que una persona que no está ingresada posea dentro de la institución penal o juvenil un equipo de telecomunicaciones con la intención de transferirlo sin autorización a persona confinada.

Los elementos de este delito son los siguientes:

> (1) Que una persona que no se encuentre confinada,
> (2) posea un equipo de telecomunicaciones dentro de la institución penal o juvenil,
> (3) con la intención de transferirlo sin autorización a una persona que se encuentre confinada.

**[Cuando se alegue la modalidad agravada, el tribunal debe impartir la instrucción siguiente:**

Además, corresponde a ustedes determinar si [recibió o solicitó pago o se le prometió una compensación por el equipo de telecomunicación] [la persona que transfirió o cedió el equipo es empleada o contratista del Departamento de Corrección y Rehabilitación o agente del orden público].

["Agente del orden público" significa aquel (aquella) miembro u oficial del gobierno de Puerto Rico o de Estados Unidos de América, así como cualquier subdivisión política de Puerto Rico o de Estados Unidos, entre cuyos deberes se encuentra el proteger a las personas y la propiedad, mantener el orden y la seguridad pública; y efectuar arrestos. Esto incluye, pero sin limitarse, a todo miembro del Negociado de la Policía de Puerto Rico, de la Policía Municipal, del Negociado de Investigaciones Especiales del Cuerpo de Vigilantes del Departamento de Recursos Naturales y Ambientales, Oficiales de Custodia del Departamento de Corrección, del Programa de Servicios con Antelación al Juicio, de la Administración de Instituciones Juveniles, de la Guardia Nacional, Agente de Seguridad de la Autoridad de Puertos, mientras se encuentren en funciones o ejercicios oficiales, los(as) Inspectores(as) del Negociado de Transporte y Otros Servicios Públicos, los(as) Agentes Especiales Fiscales y los(as) Agentes e Inspectores(as) de Rentas Internas del Departamento de Hacienda y

los(as) Alguaciles de la Rama Judicial de Puerto Rico y del tribunal federal con jurisdicción en todo Puerto Rico.]**].**

La "posesión" constituye delito solamente cuando la persona voluntariamente adquirió o recibió la cosa o conocía que estaba en su posesión y tuvo tiempo suficiente para terminar la posesión.

"Transferir" significa ceder o renunciar a favor de otro el derecho, el dominio o la atribución que se tiene sobre la cosa.

Corresponde a ustedes, miembros del Jurado, determinar si la persona ingresada en la institución penal o juvenil poseyó de manera voluntaria equipo de telecomunicaciones o fue consciente de que lo tuvo por un tiempo suficiente para dar por terminada la posesión, y que lo hacía con la intención de transferirlo sin autorización a una persona confinada. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta y las manifestaciones, si alguna, de la persona acusada.

**[El tribunal debe impartir esta Instrucción acompañada de la Instrucción 4.5].**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por el delito de posesión de un equipo de telecomunicación con la intención de transferirlo a persona ingresada.

**[Cuando se alegue la modalidad agravada, el tribunal debe añadir la instrucción siguiente:**

Si ustedes consideran, luego de un análisis cuidadoso de toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, que el Ministerio Público probó más allá de duda razonable la comisión del delito, pero no que **[indique la modalidad agravada]**, deberán rendir un veredicto de culpable por el delito de posesión de un equipo de telecomunicación con la intención de transferirlo a persona ingresada sin esa circunstancia**].**

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por el delito de posesión de un equipo de telecomunicación con la intención de transferirlo a persona ingresada.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 2 (*Restricción de comunicaciones; delitos y penalidades*) de la Ley para Establecer Restricciones al Uso de Teléfonos Celulares a Personas Confinadas en las Instituciones Penales de Puerto Rico, Ley 15-2011 (4 LPRA sec. 1632); el Artículo 18 (*Formas de comisión*) del Código Penal de 2012, Ley 146-2012,

según enmendada por la Ley 246-2014 (33 LPRA sec. 5031), y el Artículo 1.02 (*Definiciones*) de la Ley de Armas de Puerto Rico de 2020, Ley 168-2019. Véase *Pueblo v. Cordero Meléndez,* 193 DPR 701 (2015) (Sentencia).

**COMENTARIO:**

Refiérase al comentario que acompaña la Instrucción 23.1.

La definición de "agente del orden público" tiene su origen en el Artículo 1.02(a) de la Ley de Armas de Puerto Rico de 2020, *supra*.  Refiérase, a su vez, a la Exposición de Motivos de Ley 43-2010 (2010 [Parte 1] Leyes de Puerto Rico 200).

Toda instrucción de los delitos particulares debe ir precedida de la Instrucción 4.15 que alude a la definición del concepto "elementos del delito".

CAPÍTULO 24
**LEY DE VEHÍCULOS Y TRÁNSITO DE PUERTO RICO**

**24.1    No detener el vehículo o no prestar ayuda a la víctima en un accidente de tránsito (Art. 4.02)**

Contra la persona acusada se ha presentado una acusación por violación al Artículo 4.02 de la Ley de Vehículos y Tránsito de Puerto Rico.

La Ley de Vehículos y Tránsito dispone, como regla general, que el conductor de un vehículo involucrado en un accidente del que resulten daños a otro vehículo o a otra propiedad, o en el que resulte lesionada o muerta una persona, deberá detener inmediatamente su vehículo en el lugar del accidente —o tan cerca como sea posible— de tal forma que no obstruya el tránsito.

Específicamente, la ley prohíbe que una persona involucrada en un accidente de tránsito no detenga su vehículo ni preste ayuda a una persona lesionada.

Los elementos de este delito son los siguientes:

> (1) Conducir un vehículo,
>
> (2) verse involucrado en un accidente de tránsito,
>
> (3) no detener inmediatamente el vehículo en el lugar del accidente o tan cerca como sea posible, o no prestar ayuda a cualquier persona herida, y
>
> (4) como consecuencia del accidente, resulte la persona con una lesión o muerte.

La persona que conduce un vehículo involucrado en un accidente está obligada a prestar ayuda a los heridos, si los hay, incluso llevarlos a un hospital o a donde se les pueda dar ayuda médica, salvo que sea peligroso mover a la persona herida o que el herido no lo consienta expresamente o la persona que lo acompañe. El(la) conductor(a) del vehículo no tendrá esta obligación si, como resultado del accidente, su condición física se lo impide.

"Conductor(a)" es quien conduce o tiene el control físico de un vehículo o un vehículo de motor en el área del volante. Se considerará un(a) conductor(a) autorizado(a) cuando haya obtenido el certificado de licencia de conducir y este se encuentre vigente.

"Vehículo" es el artefacto o animal en el cual o por medio del cual cualquier persona o propiedad es o puede ser transportada por una vía pública, exceptuando los vehículos que se usen exclusivamente sobre vías férreas.

**[El tribunal debe impartir esta Instrucción acompañada de la Instrucción 4.5].**

**[El tribunal debe incorporar la siguiente instrucción como delito menor incluido, cuando la prueba lo justifique:**

Este delito también tiene una modalidad menos grave, que consiste en no detenerse en el lugar del accidente o tan cerca como sea posible cuando se causa daño a otro vehículo o

a otra propiedad mientras se conduce un vehículo, pero sin que resulte lesionada o muerta una persona.

Los elementos de este delito, en su modalidad menos grave, son los siguientes:

      (1) Conducir un vehículo,

      (2) verse involucrado en un accidente de tránsito,

      (3) no detener inmediatamente el vehículo en el lugar del accidente o tan cerca como sea posible, y

      (4) como consecuencia del accidente, resulte con daños un vehículo o propiedad.**].**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por violación al Artículo 4.02 de la Ley de Vehículos y Tránsito.

**[Cuando la prueba justifique instruir sobre la modalidad menos grave como delito menor incluido, el tribunal debe añadir la instrucción siguiente:**

Si ustedes consideran, luego de un análisis cuidadoso de toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, que el Ministerio Público probó más allá de duda razonable que la persona acusada se vio involucrada en un accidente de tránsito mientras conducía un vehículo, que no se detuvo inmediatamente y que resultó con daños otro vehículo o propiedad, pero no probó más allá de duda razonable que hubo lesión o muerte de alguna persona, deberán rendir un veredicto de culpable por violación al Artículo 4.02 de la Ley de Vehículos y Tránsito en su modalidad menos grave**].**

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por violación del Artículo 4.02 de la Ley de Vehículos y Tránsito.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 1.33 (*Definiciones*), el Artículo 1.102 (*Definiciones*), el Artículo 4.01 (*Regla general*), el Artículo 4.02 (*Acto ilegal y penalidades*) y el Artículo 4.03 (*Obligaciones de todo conductor involucrado en un accidente*) de la Ley de Vehículos y Tránsito de Puerto Rico, Ley 22-2000, según enmendada por la Ley 24-2017 (9 LPRA secs. 5001 y 5101-5103).

**COMENTARIO:**

Refiérase al Artículo 18(3)(b) del Código Penal de 2012, según enmendado por la Ley 246-2014 (33 LPRA sec. 5031(3)(b)), sobre el deber de garante.

Toda instrucción de los delitos particulares debe ir precedida de la Instrucción 4.15 que alude a la definición del concepto "elementos del delito".

### 24.2   Causar daño corporal o grave daño corporal durante carreras de competencia, concursos de velocidad o de aceleración (Art. 5.06)

Contra la persona acusada se ha presentado una acusación por violación al Artículo 5.06 de la Ley de Vehículos y Tránsito de Puerto Rico.

La ley dispone que comete este delito la persona que participa en carreras de competencia, concursos de velocidad y concursos de aceleración en las carreteras estatales y municipales de Puerto Rico sin la autorización del (de la) Secretario(a) de Transportación y Obras Públicas y cause [daño corporal] [grave daño corporal] a otra persona.

Los elementos de este delito son los siguientes:

(1) Participar en carreras de competencia, concursos de velocidad o de aceleración,

(2) en las carreteras estatales y municipales de Puerto Rico,

(3) sin autorización del (de la) Secretario(a) del Departamento de Transportación y Obras Públicas, y

(4) causar [daño corporal] [grave daño corporal] a otra persona.

Constituye "grave daño corporal" el que resulta en mutilación, incapacidad física o mental, ya sea parcial o total, temporera o permanente, o que afecte severamente el funcionamiento fisiológico o mental de una persona.

**[El tribunal debe impartir esta Instrucción acompañada de la Instrucción 4.5].**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por violación al Artículo 5.06 de la Ley de Vehículos y Tránsito.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por violación al Artículo 5.06 de la Ley de Vehículos y Tránsito.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 5.06 (*Carreras de competencia o regateo, concursos de velocidad y concursos de aceleración*) de la Ley de Vehículos y Tránsito de Puerto Rico, Ley 22-2000, según enmendada por la Ley 24-2017 (9 LPRA sec. 5126).

**COMENTARIO:**

Toda instrucción de los delitos particulares debe ir precedida de la Instrucción 4.15 que alude a la definición del concepto "elementos del delito".

## 24.3    Imprudencia o Negligencia (Art. 5.07)

**[El tribunal debe impartir la Instrucción de acuerdo con la modalidad que aplique].**

### A.    Ocasionar una lesión corporal que requiera hospitalización o tratamiento prolongado, o que genere daño permanente o lesiones mutilantes

Contra la persona acusada se ha presentado una acusación por violación al Artículo 5.07 de la Ley de Vehículos y Tránsito de Puerto Rico.

La ley establece que comete este delito la persona que conduzca un vehículo de forma imprudente o negligente, con menosprecio a la seguridad de los demás, y ocasione una lesión corporal a otra persona que requiera hospitalización, tratamiento prolongado, o genere un daño permanente o lesiones mutilantes.

Los elementos de este delito son los siguientes:

>    (1) Conducir un vehículo,
>    (2) de forma imprudente o negligente con menosprecio a la seguridad de los demás,
>    (3) causar a otra persona una lesión corporal,
>    (4) [que requiera hospitalización] [que requiera tratamiento prolongado] [que cause un daño permanente o lesiones mutilantes].

**[El tribunal solamente debe impartir la Instrucción siguiente cuando se alegue la circunstancia agravante:**

Además de los elementos anteriores, corresponde a ustedes evaluar y determinar si la persona se dio a la fuga**].**

La ley dispone que un delito se comete por negligencia cuando la persona debió saber que su conducta ocasionaría un riesgo sustancial e injustificado de que se produjera el resultado dañino o la circunstancia prohibida por ley.

El riesgo debe de ser de tal grado que, considerando la naturaleza, el propósito de la conducta y las circunstancias conocidas por la persona acusada, la acción u omisión de la persona constituye una desviación crasa del estándar de cuidado que observaría una persona razonable en su misma posición.

La negligencia criminal es el incumplimiento del deber de cuidado que la ley impone; no es una mera falta de cuidado. Se falta a ese deber cuando la persona ni siquiera se da cuenta del riesgo o peligro que le era exigible advertir, o cuando, a pesar de haberlo reconocido, confía imprudentemente en que no se producirá la muerte. La negligencia de la víctima no es suficiente para exonerar o librar de culpa a la persona acusada, a menos que esta sea la única causa del resultado.

"Menosprecio a la seguridad" implica actuar con absoluta indiferencia del bienestar de los demás bajo circunstancias que probablemente producirían daños a otras personas. No es una mera falta de cuidado.  Significa un total abandono de las reglas de diligencia.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no negligentemente. Pueden inferir o deducir razonablemente de la prueba presentada y admitida la negligencia. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por violación al Artículo 5.07 de la Ley de Vehículos y Tránsito.

**[Cuando se alegue la circunstancia agravada, el tribunal debe añadir la instrucción siguiente:**

Si ustedes consideran, luego de un análisis cuidadoso de toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, que el Ministerio Público probó más allá de duda razonable la comisión del delito, pero no que se dio a la fuga, deberán rendir un veredicto de culpable por violación al Artículo 5.07 de la Ley de Vehículos y Tránsito sin esa circunstancia**].**

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por violación al Artículo 5.07 de la Ley de Vehículos y Tránsito.

### B. Muerte ocasionada de forma imprudente o negligente

Contra la persona acusada se ha presentado una acusación por violación al Artículo 5.07 de la Ley de Vehículos y Tránsito de Puerto Rico.

La ley establece que comete este delito la persona que conduzca un vehículo de forma imprudente o negligente con menosprecio a la seguridad de los demás y ocasione la muerte a otra persona.

Los elementos de este delito son los siguientes:

     (1) Conducir un vehículo,

     (2) de forma imprudente o negligente con menosprecio a la seguridad de los demás, y

     (3) causar la muerte a otra persona.

**[El tribunal solamente debe impartir esta Instrucción cuando se alegue la circunstancia agravada:**

Además de los elementos anteriores, corresponde a ustedes evaluar y determinar si la persona se dio a la fuga].

La ley dispone que un delito se comete por negligencia cuando la persona debió saber que su conducta ocasionaría un riesgo sustancial e injustificado de que se produjera el resultado dañino o la circunstancia prohibida por ley.

El riesgo debe de ser de tal grado que, considerando la naturaleza y el propósito de la conducta y las circunstancias conocidas por la persona acusada, la acción u omisión de la persona constituye una desviación crasa del estándar de cuidado que observaría una persona razonable en su misma posición.

La negligencia criminal es el incumplimiento del deber de cuidado que la ley impone; no es una mera falta de cuidado. Se falta a ese deber cuando la persona ni siquiera se da cuenta del riesgo o peligro que le era exigible advertir, o cuando, a pesar de haberlo reconocido, confía imprudentemente en que no se producirá la muerte. La negligencia de la víctima no es suficiente para exonerar o librar de culpa a la persona acusada, a menos que esta sea la única causa del resultado.

"Menosprecio a la seguridad" implica actuar con absoluta indiferencia del bienestar de los demás bajo circunstancias que probablemente producirían daños a otras personas. No es una mera falta de cuidado. Significa un total abandono de las reglas de diligencia.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no negligentemente. Pueden inferir o deducir razonablemente de la prueba presentada y admitida la negligencia. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona

acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por violación al Artículo 5.07 de la Ley de Vehículos y Tránsito.

**[Cuando se alegue la circunstancia agravada, el tribunal debe añadir la instrucción siguiente:**

Si ustedes consideran, luego de un análisis cuidadoso de toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, que el Ministerio Público probó más allá de duda razonable la comisión del delito, pero no que se dio a la fuga, deberán rendir un veredicto de culpable por violación al Artículo 5.07 de la Ley de Vehículos y Tránsito sin esa circunstancia].

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por violación al Artículo 5.07 de la Ley de Vehículos y Tránsito.

## C. Muerte ocasionada de forma temeraria

Contra la persona acusada se ha presentado una acusación por violación al Artículo 5.07 de la Ley de Vehículos y Tránsito de Puerto Rico.

La ley establece que comete este delito la persona que conduzca un vehículo de forma temeraria, con claro menosprecio a la seguridad de los demás y ocasione la muerte a otra persona.

Los elementos de este delito son los siguientes:

(1) Conducir un vehículo,
(2) de forma temeraria con claro menosprecio a la seguridad de los demás, y
(3) causar la muerte a otra persona.

Una persona actúa "temerariamente" cuando es consciente de que su conducta genera un riesgo sustancial e injustificado de que se produzca el resultado, y a pesar de conocer el riesgo, la persona continúa con su acción u omisión. Al evaluar si era consciente del riesgo, deberán determinar si la persona acusada había previsto la posibilidad de que existiese ese riesgo. Al momento de evaluar si un riesgo fue sustancial, deberán considerar la probabilidad de que se produjera el daño o resultado y la magnitud del daño. Al evaluar si un riesgo fue injustificado, deberán considerar lo que motivó a la persona a asumir el riesgo que produjo tal daño o resultado.

"Menosprecio a la seguridad" implica actuar con absoluta indiferencia del bienestar de los demás bajo circunstancias que probablemente producirían daños a otras personas. No es una mera falta de cuidado. Significa un total abandono de las reglas de diligencia.

Corresponde a ustedes, miembros del Jurado, determinar si la persona actuó o no temerariamente. Pueden inferir o deducir razonablemente de la prueba presentada y admitida la temeridad al producir la muerte. A estos fines, se les permite considerar las circunstancias relacionadas con los hechos, la capacidad mental, la conducta o las manifestaciones, si alguna, de la persona acusada.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por violación Artículo 5.07 de la Ley de Vehículos y Tránsito.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por violación al Artículo 5.07 de la Ley de Vehículos y Tránsito.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 5.07 (*Imprudencia o negligencia*) de la Ley de Vehículos y Tránsito de Puerto Rico, Ley 22-2000, según enmendada por la Ley 24-2017 (9 LPRA sec. 5127); el Artículo 21 (*Formas de culpabilidad: requisito general del elemento subjetivo*) y el Artículo 22 (*Elementos subjetivos del delito*) del Código Penal de 2012, Ley 146-2012, según enmendada por Ley 246-2014 (33 LPRA secs. 5034 y 5035).

**COMENTARIO:**

En cuanto a la definición del concepto "menosprecio a la seguridad", esta surge de los pronunciamientos del Tribunal Supremo en *Pueblo v. Barrio*, 57 DPR 942, 947-48 (1941) y en *Pueblo v. Ortiz*, 60 DPR 536, 540 (1942), que a su vez guarda relación con el Artículo 87 del derogado Código Penal de 1974 (33 LPRA sec. 4006 (ed. 2001).

En el Artículo 109 del Código Penal de 2012 se define "lesión mutilante" como un daño permanente en cualquier parte del cuerpo de una persona, la desfiguración de su rostro o la inutilización permanente de su capacidad de oír, ver o hablar.

Toda instrucción de los delitos particulares debe ir precedida de la Instrucción 4.15, que alude a la definición del concepto "elementos del delito".

Adviértase que se recogen en la instrucción los elementos subjetivos del delito, por lo que no es necesario impartir también las Instrucciones 4.5 y 4.6.

**24.4** **Causar daño corporal al manejar un vehículo de motor bajo los efectos de bebidas embriagantes, drogas o sustancias controladas (Art. 7.05)**

**[El tribunal debe impartir la Instrucción de acuerdo con la modalidad que aplique].**

**A. Daño corporal a otra persona al conducir un vehículo de motor bajo los efectos de bebidas embriagantes**

Contra la persona acusada se ha presentado una acusación por violación al Artículo 7.05 de la Ley de Vehículos y Tránsito de Puerto Rico.

La ley dispone que comete este delito quien maneje un vehículo de motor bajo los efectos de bebidas embriagantes y que, como consecuencia, cause daño corporal a otra persona.

Los elementos de este delito son los siguientes:

(1) Conducir un vehículo de motor,

(2) bajo los efectos de bebidas embriagantes, y

(3) como consecuencia, causar daño corporal a otra persona.

"Conductor(a)" es quien conduce o tiene el control físico de un vehículo o un vehículo de motor en el área del volante. Se considerará un(a) conductor(a) autorizado(a) cuando haya obtenido el certificado de licencia de conducir y este se encuentre vigente.

"Vehículo de motor" es todo vehículo movido por fuerza propia diseñado para operar en las vías públicas, excepto los vehículos o vehículos similares siguientes:

(a) máquinas de tracción

(b) rodillos de carretera

(c) tractores utilizados para fines agrícolas exclusivamente, siempre que no transiten por la vía pública

(d) palas mecánicas de tracción

(e) equipo para la construcción o el mantenimiento de carreteras

(f) máquinas para la perforación de pozos

(g) vehículos con ruedas pequeñas utilizados en fábricas, almacenes y estaciones de ferrocarriles

(h) vehículos que se muevan sobre vías férreas, por el mar o por el aire

(i) vehículos operados en una propiedad privada

(j) vehículos diseñados por el manufacturero o fabricante para usarse fuera de la vía pública.

"Bajo los efectos de bebidas embriagantes" significa disminución o pérdida de las facultades físicas y mentales de la persona causada por la presencia de alcohol en el cuerpo.

Para determinar si una persona conducía bajo los efectos de bebidas embriagantes, ustedes podrán considerar que la Ley de Vehículos y Tránsito prohíbe que **[refiérase solamente a la(s) circunstancia(s) que aplique(n) según lo alegado en el pliego acusatorio]**:

(a) cualquier persona de 21 años o más conduzca o haga funcionar un vehículo de motor con concentración de alcohol en la sangre de ocho centésimas del uno por ciento (0.08%) o más,

(b) las personas entre los 18 y 20 años, inclusive, conductoras de camiones, motocicletas, ómnibus escolares, vehículos pesados de motor o vehículos todo terreno, conduzcan o hagan funcionar un vehículo de motor con concentración de alcohol en la sangre de dos centésimas del uno por ciento (0.02%) o más.

(c) cualquier persona menor de 18 años conduzca o haga funcionar un vehículo de motor con cualquier concentración de alcohol en su sangre,

(d) cualquier empleado(a) o funcionario(a) público(a) maneje o haga funcionar un vehículo de motor que pertenezca al gobierno de Puerto Rico, con concentración de alcohol en su sangre de dos centésimas del uno por ciento (.02%) o más.

[La prueba de alcohol que se le realizó a la persona acusada tuvo un resultado de **[indique el porciento]** de concentración de alcohol en la sangre. Sin embargo, esto no significa que ustedes tienen la obligación de inferir que esta persona conducía o no bajo los efectos de bebidas embriagantes. Para esa determinación, ustedes pueden considerar otros factores, entre ellos, la forma como esta persona conducía su vehículo hasta el momento del accidente; la condición que mostró después del accidente en cuanto a sus destrezas físicas y motoras; su dominio del habla; el olor de su aliento; la condición y apariencia de sus ojos, así como cualquier otro factor que refleje el estado de sus facultades físicas y mentales y el grado de control que esta persona ejercía sobre sí].

**[El tribunal debe impartir esta Instrucción acompañada de la Instrucción 4.5].**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por violación al Artículo 7.05 de la Ley de Vehículos y Tránsito.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por violación al Artículo 7.05 de la Ley de Vehículos y Tránsito.

**B. Daño corporal a otra persona al conducir un vehículo de motor bajo los efectos de drogas o sustancias controladas**

Contra la persona acusada se ha presentado una acusación por violación al Artículo 7.05 de la Ley de Vehículos y Tránsito de Puerto Rico.

La ley dispone que comete este delito quien maneje un vehículo de motor bajo los efectos de drogas o sustancias controladas y que, como consecuencia, cause daño corporal a otra persona.

Los elementos de este delito son los siguientes:

(1) Conducir un vehículo de motor,

(2) bajo los efectos de drogas o sustancias controladas, y

(3) como consecuencia, causar daño corporal a otra persona.

"Conductor(a)" es quien conduce o tiene el control físico de un vehículo o un vehículo de motor en el área del volante. Se considerará un(a) conductor(a) autorizado(a) cuando haya obtenido el certificado de licencia de conducir y este se encuentre vigente.

"Vehículo de motor" es todo vehículo movido por fuerza propia diseñado para operar en las vías públicas, excepto los vehículos o vehículos similares siguientes:

(a) máquinas de tracción

(b) rodillos de carretera

(c) tractores utilizados para fines agrícolas exclusivamente, siempre que no transiten por la vía pública

(d) palas mecánicas de tracción

(e) equipo para la construcción o el mantenimiento de carreteras

(f) máquinas para la perforación de pozos

(g) vehículos con ruedas pequeñas utilizados en fábricas, almacenes y estaciones de ferrocarriles

(h) vehículos que se muevan sobre vías férreas, por el mar o por el aire

(i) vehículos operados en una propiedad privada

(j) vehículos diseñados por el manufacturero o fabricante para usarse fuera de la vía pública.

"Sustancia controlada" es una droga o sustancia prohibida o regulada por la Ley de Sustancias Controladas de Puerto Rico.

"Bajo los efectos de sustancias controladas" significa una disminución o pérdida de las facultades físicas y mentales de la persona causada por la presencia de sustancias controladas en el cuerpo.

Para determinar si la persona conducía bajo los efectos de drogas o sustancias controladas, ustedes podrán considerar que la Ley de Vehículos y Tránsito establece que "[s]erá ilegal que cualquier persona que esté bajo los efectos de cualquier droga narcótica,

marihuana, cannabis medicinal, sustancia estimulante o deprimente, o cualquier sustancia química o sustancia controlada, capaz de incapacitarlo para conducir un vehículo con seguridad, conduzca o tenga el control físico y real de un vehículo de motor por las vías públicas". No es defensa que la persona acusada tuviera autorización para utilizar cualquiera de ellas.

**[Cuando se presente prueba de que existe prescripción o receta médica, debe impartirse la instrucción siguiente:**

El hecho de que una persona tuviera o haya tenido derecho a usar una sustancia controlada no necesariamente le libra de responsabilidad respecto al delito por el que se le acusa].

**[El tribunal debe impartir esta Instrucción refiriéndose solamente a la(s) circunstancia(s) que aplique(n) a su caso particular, según lo alegado en el pliego acusatorio.**

La prueba de sustancia controlada que se le realizó a la persona acusada reflejó que se encontraba bajo los efectos de **[especifique la droga o sustancia controlada]**. Sin embargo, esto no significa que ustedes tienen la obligación de inferir que esta persona conducía o no bajo los efectos de drogas o sustancias controladas, ya que en dicha determinación ustedes pueden considerar otros factores, según la prueba desfilada].

Para declarar culpable a la persona del delito de causar daño corporal a un ser humano al conducir un vehículo de motor bajo los efectos de drogas o de sustancias controladas, ustedes deberán tener el convencimiento más allá de duda razonable de que esta persona, al momento de los hechos, conducía su vehículo bajo los efectos de drogas o sustancias controladas. Además, deberán tener el mismo convencimiento, más allá de duda razonable, de que el daño corporal se produjo como consecuencia del riesgo creado por esta persona al conducir en esas condiciones.

**[El tribunal debe impartir esta Instrucción acompañada de la Instrucción 4.5].**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por violación al Artículo 7.05 de la Ley de Vehículos y Tránsito.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por violación al Artículo 7.05 de la Ley de Vehículos y Tránsito.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 1.103 (*Definiciones* [vehículo de motor]), el Artículo 7.01 (*Declaración de propósitos y regla básica*), el Artículo 7.02 (*Manejo de vehículos de motor bajo los efectos de bebidas embriagantes*), el Artículo 7.03 (*Manejo de vehículos de motor bajo los efectos de drogas o sustancias controladas*) y el Artículo 7.05 (*En caso de daño personal a otra persona*) de la Ley de Vehículos y Tránsito de Puerto Rico, Ley 22-2000, según enmendada por la Ley 24-2017 y la Ley 42-2017 (9 LPRA secs. 5001, 5201-5203 y 5205).

**COMENTARIO:**

La definición de "sustancia controlada" proviene del Artículo 102(7) de la Ley de Sustancias Controladas de Puerto Rico, 24 LPRA sec. 2102(7), mientras que la explicación del concepto "bajo los efectos de sustancias controladas" emana de *Pueblo v. Figueroa Pomales*, 172 DPR 403, 430 (2007).

La definición de "bajo los efectos de bebidas embriagantes" proviene del Artículo 7.02 de la Ley de Vehículos y Tránsito de Puerto Rico, *supra*. Véase la jurisprudencia pertinente a la Ley de Vehículos y Tránsito de Puerto Rico, en particular, *Pueblo v. Montalvo Petrovich*, 175 DPR 932 (2009), y *Pueblo v. Caraballo Borrero*, 187 DPR 265 (2012).

Toda instrucción de los delitos particulares debe ir precedida de la Instrucción 4.15, que alude a la definición del concepto "elementos del delito".

**24.5 Causar grave daño corporal al manejar un vehículo de motor bajo los efectos de bebidas embriagantes, drogas o sustancias controladas (Art. 7.06)**

**[El tribunal debe impartir la Instrucción de acuerdo con la modalidad que aplique].**

**A. Grave daño corporal a otra persona al conducir un vehículo de motor bajo los efectos de bebidas embriagantes**

Contra la persona acusada se ha presentado una acusación por violación al Artículo 7.06 de la Ley de Vehículos y Tránsito de Puerto Rico.

La ley dispone que comete este delito quien maneje un vehículo de motor bajo los efectos de bebidas embriagantes y, como consecuencia de ello, cause grave daño corporal a otra persona.

Los elementos de este delito son los siguientes:

(1) Conducir un vehículo de motor,
(2) bajo los efectos de bebidas embriagantes, y
(3) como consecuencia, causar grave daño corporal a otra persona.

"Conductor(a)" es quien conduce o tiene el control físico de un vehículo o un vehículo de motor en el área del volante. Se considerará un(a) conductor(a) autorizado(a) cuando haya obtenido el certificado de licencia de conducir y este se encuentre vigente.

"Vehículo de motor" es todo vehículo movido por fuerza propia diseñado para operar en las vías públicas, excepto los vehículos o vehículos similares siguientes:

(a) máquinas de tracción

(b) rodillos de carretera

(c) tractores utilizados para fines agrícolas exclusivamente, siempre que no transiten por la vía pública

(d) palas mecánicas de tracción

(e) equipo para la construcción o el mantenimiento de carreteras

(f) máquinas para la perforación de pozos

(g) vehículos con ruedas pequeñas utilizados en fábricas, almacenes y estaciones de ferrocarriles

(h) vehículos que se muevan sobre vías férreas, por el mar o por el aire

(i) vehículos operados en una propiedad privada

(j) vehículos diseñados por el manufacturero o fabricante para usarse fuera de la vía pública.

Para los efectos de la Ley de Vehículos y Tránsito, "grave daño corporal" significa el daño que resulte en la incapacidad física o mental, parcial, total, temporal o permanente, que afecte severamente el funcionamiento fisiológico, físico o mental de una persona. También incluye el daño corporal que implique un riesgo sustancial de muerte, pérdida de la conciencia, dolor físico extremo, desfiguración prolongada y obvia o pérdida prolongada o incapacidad de la función de un miembro del cuerpo, órgano o facultad mental.

"Bajo los efectos de bebidas embriagantes" significa una disminución o pérdida de las facultades físicas y mentales de la persona, causada por la presencia de alcohol en el cuerpo.

Para determinar si una persona conducía bajo los efectos de bebidas embriagantes, ustedes podrán considerar que la Ley de Vehículos y Tránsito prohíbe que **[refiérase solamente a la(s) circunstancia(s) que aplique(n) según lo alegado en el pliego acusatorio]**:

(a) cualquier persona de 21 años o más conduzca o haga funcionar un vehículo de motor con concentración de alcohol en la sangre de ocho centésimas del uno por ciento (0.08%) o más,

(b) las personas entre los 18 y 20 años, inclusive, conductoras de camiones, motocicletas, ómnibus escolares, vehículos pesados de motor o vehículos todo terreno, conduzcan o hagan funcionar un vehículo de motor con concentración de alcohol en la sangre de dos centésimas del uno por ciento (0.02%) o más.

(c) cualquier persona menor de 18 años conduzca o haga funcionar un vehículo de motor con cualquier concentración de alcohol en su sangre,

(d) cualquier empleado(a) o funcionario(a) público(a) maneje o haga funcionar

un vehículo de motor que pertenezca al gobierno de Puerto Rico, con concentración de alcohol en su sangre de dos centésimas del uno por ciento (.02%) o más.

[La prueba de alcohol que se le realizó a la persona acusada tuvo un resultado de **[indique el porciento]** de concentración de alcohol en la sangre. Sin embargo, esto no significa que ustedes tienen la obligación de inferir que esta persona conducía o no bajo los efectos de bebidas embriagantes. Para esa determinación, ustedes pueden considerar otros factores, entre ellos, la forma como esta persona conducía su vehículo hasta el momento del accidente; la condición que mostró después del accidente en cuanto a sus destrezas físicas y motoras; su dominio del habla; el olor de su aliento; la condición y apariencia de sus ojos, así como cualquier otro factor que refleje el estado de sus facultades físicas y mentales y el grado de control que esta persona ejercía sobre sí].

**[El tribunal debe impartir esta Instrucción acompañada de la Instrucción 4.5].**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por violación al Artículo 7.06 de la Ley de Vehículos y Tránsito.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por violación al Artículo 7.06 de la Ley de Vehículos y Tránsito.

### B. Grave daño corporal a otra persona al conducir un vehículo de motor bajo los efectos de drogas o sustancias controladas

Contra la persona acusada se ha presentado una acusación por violación al Artículo 7.06 de la Ley de Vehículos y Tránsito de Puerto Rico.

La ley dispone que comete este delito quien maneje un vehículo de motor bajo los efectos de drogas o sustancias controladas y, como consecuencia de ello, cause grave daño corporal a otra persona.

Los elementos de este delito son los siguientes:

(1) Conducir un vehículo de motor,

(2) bajo los efectos de drogas o sustancias controladas y

(3) como consecuencia, causar grave daño corporal a otra persona.

"Conductor(a)" es quien conduce o tiene el control físico de un vehículo o un vehículo de motor en el área del volante. Se considerará un(a) conductor(a) autorizado(a) cuando haya obtenido el certificado de licencia de conducir y este se encuentre vigente.

"Vehículo de motor" es todo vehículo movido por fuerza propia diseñado para operar en las vías públicas, excepto los vehículos o vehículos similares siguientes:

(a) máquinas de tracción

(b) rodillos de carretera

(c) tractores utilizados para fines agrícolas exclusivamente, siempre que no transiten por la vía pública

(d) palas mecánicas de tracción

(e) equipo para la construcción o el mantenimiento de carreteras

(f) máquinas para la perforación de pozos

(g) vehículos con ruedas pequeñas utilizados en fábricas, almacenes y estaciones de ferrocarriles

(h) vehículos que se muevan sobre vías férreas, por el mar o por el aire

(i) vehículos operados en una propiedad privada

(j) vehículos diseñados por el manufacturero o fabricante para usarse fuera de la vía pública.

Para los efectos de la Ley de Vehículos y Tránsito, "grave daño corporal" significa el daño que resulte en la incapacidad física o mental, parcial, total, temporal o permanente, que afecte severamente el funcionamiento fisiológico, físico o mental de una persona. También incluye el daño corporal que implique un riesgo sustancial de muerte, pérdida de la conciencia, dolor físico extremo, desfiguración prolongada y obvia o pérdida prolongada o incapacidad de la función de un miembro del cuerpo, órgano o facultad mental.

"Sustancia controlada" es una droga o sustancia prohibida o regulada por la Ley de Sustancias Controladas de Puerto Rico.

"Bajo los efectos de sustancias controladas" significa una disminución o pérdida de las facultades físicas y mentales de la persona causada por la presencia de sustancias controladas en el cuerpo.

Para determinar si la persona conducía bajo los efectos de drogas o sustancias controladas, ustedes podrán considerar que la Ley de Vehículos y Tránsito establece que "[s]erá ilegal que cualquier persona que esté bajo los efectos de cualquier droga narcótica, marihuana, cannabis medicinal, sustancia estimulante o deprimente, o cualquier sustancia química o sustancia controlada, capaz de incapacitarlo para conducir un vehículo con seguridad, conduzca o tenga el control físico y real de un vehículo de motor por las vías públicas". No es defensa que la persona acusada tuviera autorización para utilizar cualquiera de ellas.

**[Cuando se presente prueba de que existe prescripción o receta médica, debe impartirse la instrucción siguiente:**

El hecho de que una persona tuviera o haya tenido derecho a usar una sustancia controlada no necesariamente le libra de responsabilidad respecto al delito por el que se le acusa].

La prueba de sustancia controlada que se le realizó a la persona acusada reflejó que se encontraba bajo los efectos de **[especifique la droga o sustancia controlada]**. Sin embargo, esto no significa que ustedes tienen la obligación de inferir que esta persona conducía o no bajo los efectos de drogas o sustancias controladas, ya que en dicha determinación ustedes pueden considerar otros factores, según la prueba desfilada.

Para declarar culpable a la persona acusada del delito de causar grave daño corporal a un ser humano al conducir un vehículo de motor bajo los efectos de drogas o de sustancias controladas, ustedes deberán tener el convencimiento más allá de duda razonable de que esta persona, al momento de los hechos, conducía su vehículo bajo los efectos de drogas o sustancias controladas. Además, deberán tener el mismo convencimiento, más allá de duda razonable, de que el grave daño corporal se produjo como consecuencia del riesgo creado por esta persona al conducir en esas condiciones.

**[El tribunal debe impartir esta Instrucción acompañada de la Instrucción 4.5].**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable cada uno de los elementos del delito y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por violación al Artículo 7.06 de la *Ley de Vehículos y Tránsito*.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por violación al Artículo 7.06 de la *Ley de Vehículos y Tránsito*.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 1.103 (*Definiciones* [vehículo de motor]), el Artículo 7.01 (*Declaración de propósitos y regla básica*), el Artículo 7.02 (*Manejo de vehículos de motor bajo los efectos de bebidas embriagantes*), el Artículo 7.03 (*Manejo de vehículos de motor bajo los efectos de drogas o sustancias controladas*) y el Artículo 7.06 (*Penalidades en caso de grave daño corporal a un ser humano*) de la *Ley de Vehículos y Tránsito de Puerto Rico*, Ley 22-2000, según enmendada por la Ley 24-2017 y la Ley 42-2017 (9 LPRA secs. 5001, 5201-5203 y 5206).

**COMENTARIO:**

La definición de "sustancia controlada" proviene del Artículo 102(7) de la *Ley de Sustancias Controladas de Puerto Rico*, 24 LPRA sec. 2102(7), mientras que la explicación del concepto "bajo los efectos de sustancias controladas" emana de *Pueblo v. Figueroa Pomales*, 172 DPR 403, 430 (2007).

La definición de "bajo los efectos de bebidas embriagantes" proviene del Artículo 7.02 de la *Ley de Vehículos y Tránsito de Puerto Rico*, *supra*. Véase la jurisprudencia pertinente a la

Ley de Vehículos y Tránsito de Puerto Rico, en particular, *Pueblo v. Montalvo Petrovich*, 175 DPR 932 (2009), y *Pueblo v. Caraballo Borrero*, 187 DPR 265 (2012).

Toda instrucción de los delitos particulares debe ir precedida de la Instrucción 4.15 que alude a la definición del concepto "elementos del delito".

CAPÍTULO 25
**DEFENSAS**

A.    CAUSAS DE EXCLUSIÓN DE RESPONSABILIDAD PENAL

**25.1    Legítima Defensa; muerte**

**A. En defensa de su propia persona o de otra(s) persona(s)**

La persona acusada presentó como defensa que al realizar los hechos actuó en legítima defensa de [su persona] [otra(s) persona(s)].

La ley establece que no incurre en responsabilidad penal la persona que actúe en legítima defensa; es decir, que no es responsable penalmente quien defiende [su persona] [otra(s) persona(s)] en circunstancias que hagan creer razonablemente que al dar muerte protegía [su vida] [la(s) vida(s) que defendió] de un peligro inminente o inmediato de muerte o de grave daño corporal. Por lo tanto, para que proceda la legítima defensa deben darse todas las circunstancias siguientes:

En primer lugar: Es necesario creer razonablemente que, al dar muerte, [su persona] [la(s) persona(s) que defendió] se encontraba(n) en inminente o inmediato peligro de muerte o de grave daño corporal. "Inminente" quiere decir que está a punto de suceder o de producirse. Las circunstancias deben ser de tal naturaleza que lleven al ánimo de una persona prudente y razonable a la creencia o al temor de que [ella] [otra(s) persona(s)] se encontraba(n) en peligro de muerte o de recibir grave daño.

El peligro que justifica la actuación de una persona acusada en esta defensa puede ser real o aparente, pero tiene que haber ocurrido algún acto que haga pensar (temer) (creer) a una persona prudente y razonable que [su vida] [la vida de otra(s) persona(s)] estaba en peligro o que podía(n) sufrir grave daño corporal. Ustedes no tienen que considerar si [la persona acusada] [la(s) otra(s) persona(s)] estaba(n) en verdadero peligro, sino evaluar si las circunstancias eran tales que hicieran pensar (temer) (creer) a una persona prudente, que [su vida] [la vida de otra(s) persona(s)] estaba(n) expuesta a tal peligro y si razonablemente podía creerlo así.

En segundo lugar: Que se use un medio razonablemente necesario para impedir o repeler (evitar) el daño. Es necesario que la persona acusada no haya tenido ningún otro modo de evitar el ataque que dando muerte a la persona adversaria. En otras palabras, que la persona acusada no tenía a su alcance ningún otro medio razonable ni probable de evitar esa muerte. Habrá que considerar, entonces, la gravedad del ataque, la naturaleza e importancia del bien jurídico protegido (lo que se estaba protegiendo), las condiciones personales de las partes, la naturaleza del medio empleado, que el medio sea apropiado en relación con el tipo o la gravedad del ataque y la calidad del bien defendido. Una persona que es atacada por otra no está obligada a huir, a esconderse o a abandonar el sitio para ponerse a salvo de quien le agrede, sino que puede permanecer en el sitio y defenderse.

En tercer lugar: No debe haber provocación de quien alega la defensa.

En cuarto lugar: Que no se causó más daño que el necesario para impedir o repeler (evitar) el daño. La defensa [propia] [de otra(s) persona(s)] en ninguna manera permite

causar más daño que el necesario para defenderse. Solo podrán usarse medios proporcionales a la naturaleza o a la clase de ataque que se alega y no se justifica emplear un mayor grado de fuerza que la necesaria para repeler o evitar el daño. Es decir, el daño causado al [defenderse] [defender a otra(s) persona(s)] tiene que ser en proporción a la inminencia del daño que se intentaba evitar o impedir.

Al considerar la prueba sobre legítima defensa deben recordar que corresponde al Ministerio Público probar la culpabilidad de la persona acusada más allá de duda razonable. La persona acusada no está obligada a probar la defensa propia, sino que es suficiente con que la prueba presentada al respecto genere duda razonable.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable que la persona acusada cometió los hechos por los que se le acusa y que no actuó en legítima defensa, deberán rendir un veredicto de culpable.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, tienen duda razonable sobre algún elemento del delito o duda razonable en cuanto a si la persona acusada actuó o no en legítima defensa, deberán rendir un veredicto de no culpable.

### B. En defensa de la morada, del vehículo, del lugar de negocios o de empleo; en ciertas circunstancias

La persona acusada presentó como defensa que al realizar los hechos actuó en legítima defensa de [su persona] [otra(s) persona(s)].

La ley establece que no incurre en responsabilidad penal la persona que actúe en legítima defensa; es decir, que no es responsable penalmente quien defiende [su persona] [otra(s) persona(s)] en circunstancias que hagan creer razonablemente que al dar muerte protegía [su vida] [la(s) vida(s) que defendió] de un peligro inminente o inmediato de muerte o de grave daño corporal. Por lo tanto, para que proceda la legítima defensa deben darse todas las circunstancias siguientes:

En primer lugar: Es necesario creer razonablemente que, al dar muerte, [su persona] [la(s) persona(s) que defendió] se encontraba(n) en inminente o inmediato peligro de muerte o de grave daño corporal. "Inminente" quiere decir que está a punto de suceder o de producirse. Las circunstancias deben ser de tal naturaleza que lleven al ánimo de una persona prudente y razonable a la creencia o al temor de que [ella] [otra(s) persona(s)] se encontraba(n) en peligro de muerte o de recibir grave daño.

El peligro que justifica la actuación de una persona acusada en esta defensa puede ser real o aparente, pero tiene que haber ocurrido algún acto que haga pensar (temer) (creer) a una persona prudente y razonable que [su vida] [la vida de otra(s) persona(s)] estaba en peligro o que podía(n) sufrir grave daño corporal. Ustedes no tienen que considerar si [la persona acusada] [la(s) otra(s) persona(s)] estaba(n) en verdadero peligro, sino evaluar si las circunstancias eran tales que hicieran pensar (temer) (creer) a una persona prudente, que [su vida] [la vida de otra(s) persona(s)] estaba(n) expuesta a tal peligro y si razonablemente podía creerlo así.

En segundo lugar: Que se use un medio razonablemente necesario para impedir o repeler (evitar) el daño. Habrá que considerar, entonces, la gravedad del ataque, la naturaleza e importancia del bien jurídico protegido (lo que se estaba protegiendo), las condiciones personales de las partes, la naturaleza del medio empleado, que el medio sea apropiado en relación con el tipo o a gravedad del ataque y la calidad del bien defendido. Una persona que es atacada por otra no está obligada a huir, a esconderse o a abandonar el sitio para ponerse a salvo de quien le agrede, sino que puede permanecer en el sitio y defenderse. No puede tomarse en consideración la posibilidad de que la persona haya podido evitar la confrontación con la persona a quien se causó la muerte.

En tercer lugar: No debe haber provocación de quien alega la defensa.

En cuarto lugar: Que no se causó más daño que el necesario para impedir o repeler (evitar) el daño. La defensa [propia] [de otra(s) persona(s)] en ninguna manera permite causar más daño que el necesario para defenderse. Solo podrán usarse medios proporcionales a la naturaleza o a la clase de ataque que se alega y no se justifica emplear un mayor grado de fuerza que la necesaria para repeler o evitar el daño. Es decir, el daño causado al [defenderse] [defender a otra(s) persona(s)] tiene que ser en proporción a la inminencia del daño que se intentaba evitar o impedir.

Al considerar la prueba sobre legítima defensa, deben recordar que corresponde al Ministerio Público probar la culpabilidad de la persona acusada más allá de duda razonable. La persona acusada no está obligada a probar la defensa propia; es suficiente con que la prueba presentada al respecto genere duda razonable.

**[Cuando aplique la Doctrina del Castillo, el tribunal debe impartir esta Instrucción adicional:**

Cuando se da muerte a un ser humano en defensa de [la morada] [del vehículo] [del lugar de negocios o de empleo] se presumirá que para la persona era razonable creer que al dar muerte se encontraba en un inminente o inmediato peligro de muerte o de grave daño corporal, cuando sabía o tenía razón para creer que la persona a quien se le causó la muerte **[indique la circunstancia aplicable:**

(1) penetró o intentaba penetrar ilegalmente al interior de [la morada] [el vehículo] [el lugar de negocios o de empleo] que la persona acusada o a quien se protege ocupaba en el momento, o

(2) secuestró o intentó secuestrar a alguna persona del interior de [la morada] [del vehículo] [del lugar de negocios o de empleo] que la persona acusada o a quien se protege ocupaba en ese momento**].**

El Ministerio Público puede demostrar con prueba que a la persona acusada no le aplica la presunción.

No se presumirá que la persona acusada tenía la creencia razonable de que estaba en inminente o inmediato peligro de muerte o grave daño corporal cuando la persona **[indique la circunstancia que aplique:**

(a) a quien se causó la muerte tenía derecho a permanecer, residir, habitar u ocupar legalmente [la morada] [el vehículo] [el lugar de negocio o empleo]

(por ejemplo, cuando la persona a quien causó la muerte era la dueña, la titular o quien alquilaba);

(b) a quien se secuestró o intentó secuestrar era un menor o incapaz bajo la custodia o tutela legal de la persona a quien se causó la muerte;

(c) provocó a quien se causó la muerte;

(d) cometía algún delito o utilizaba [la morada] [el vehículo] [el lugar de negocios o de empleo] para promover una actividad delictiva al momento de causar la muerte,

(e) a quien se causó la muerte era un(a) funcionario(a) del orden público**].**

["Morada" es cualquier casa, estructura, barco, vagón, vehículo, construcción diseñada o adaptada para albergar o capaz de dar abrigo a seres humanos, o que pueda usarse para guardar cosas o animales, o para negocios. Comprende, además, sus anexos, dependencias y el solar donde esté localizada].

["Vehículo" es todo artefacto o animal en el cual o por medio del cual cualquier persona o propiedad es transportada o puede serlo por cualquier vía, terrestre, acuática o aérea, mediante propulsión propia o arrastre].

["Menor de edad" es la persona que al momento de los hechos no había cumplido 18 años].

["Funcionario(a) del orden público" es la persona que tiene a su cargo proteger a las personas y a la propiedad, y mantener el orden y la seguridad públicos. Esto incluye, pero sin limitarse, a las y los miembros de la Policía de Puerto Rico, de la Policía Municipal, a Agentes del Negociado de Investigaciones Especiales del Departamento de Justicia y a las y los Alguaciles de la Rama Judicial. Se considera también un(a) funcionario(a) del orden público de carácter limitado los(as) empleado(as) público(as) estatales o federales con autoridad expresa en ley para efectuar arrestos en el desempeño de sus funciones y responsabilidades especiales].

**[El tribunal debe impartir esta Instrucción acompañada de la Instrucción 3.39(b)].**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable que la persona acusada cometió los hechos por los que se le acusa y que no actuó en legítima defensa, deberán rendir un veredicto de culpable.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, tienen duda razonable sobre algún elemento del delito o duda razonable en cuanto a si la persona acusada actuó o no en legítima defensa, deberán rendir un veredicto de no culpable.

**REFERENCIA:**

Esta Instrucción proviene, en parte, de la Instrucción 4.5 del Proyecto de Libro de Instrucciones al Jurado de 2008 y de las Instrucciones al Jurado para el Tribunal Superior de Puerto Rico de 1976, págs. 47-49.  Guarda relación con el Artículo 14 (*Definiciones*), el

Artículo 25 (*Legítima defensa*) y el Artículo 25A (*Presunciones y disposiciones sobre legítima defensa en la morada, vehículo, lugar de negocios o de empleo*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 y por la Ley 92-2018 (33 LPRA secs. 5014, 5038 y 5038a); el Artículo 26 (*Legítima defensa*) del Código Penal de 2004, Ley 149-2004 (33 LPRA sec. 4654), y el Artículo 22 (*Legítima defensa*) del Código Penal de 1974, Ley Núm. 115 de 22 de julio de 1974 (1974 [Parte 1] Leyes de Puerto Rico 457).

Véanse *Reyes Salcedo v. Policía de P.R.,* 143 DPR 85 (1997)*; Pueblo v. González Román*, 138 DPR 691 (1995); *Pueblo v. González Román*, 129 DPR 933 (1992); *Pueblo v. Martínez Solís*, 128 DPR 135 (1991); *Pueblo v. Ortiz González*, 111 DPR 408 (1981); *Pueblo v. Rosario Villafañe*, 102 DPR 528 (1974); *Pueblo v. De Jesús Santana*, 100 DPR 791 (1972); *Pueblo v. Román Marrero*, 96 DPR 796 (1968); *Pueblo v. Díaz Alicea*, 91 DPR 786 (1965); *Pueblo v. Túa*, 84 DPR 39 (1961).

**COMENTARIO:**

La Ley 92-2018, al enmendar el Artículo 25 del Código Penal de 2012, *supra*, sustituyó el criterio de "falta de provocación suficiente del que ejerce la defensa" por "falta de provocación del que ejerce la defensa". Si bien se adoptó la Doctrina del Castillo en defensa de la morada, del vehículo o del lugar de negocios o de empleo, se exceptúa su aplicación y garantías en los supuestos en que media provocación de quien invoca la legítima defensa. Véase el Artículo 25A(b)(3) y (d)(3), incorporado al Código Penal de 2012 mediante la Ley 92-2018 (33 LPRA sec. 5038a(b)(3) y (d)(3)).

La Ley 92-2018 también definió el concepto "morada" equiparándola al término "edificio" del Artículo 14 del Código Penal de 2012 (33 LPRA secs. 5014(o) y (cc.1)). A su vez, incorporó la definición de "vehículo". 33 LPRA sec. 5014(tt).

Esta instrucción podría aplicar en aquellos casos de maltrato de animales de tercer grado y maltrato agravado de animales, de la Ley para el Bienestar y la Protección de los Animales, Ley 154-2008, según enmendada, en los que se invoque esta defensa.

### 25.2   Legítima Defensa; agresión

La persona acusada presentó como defensa que al realizar los hechos por los que actuó en legítima defensa de [su persona] [otra(s) persona(s)].

La ley establece que no incurre en responsabilidad penal la persona que actúe en legítima defensa. En otras palabras, no es responsable penalmente quien defiende [su persona] [otra(s) persona(s)] en circunstancias que hagan creer razonablemente que se ha de sufrir un daño inminente, siempre que utilice un medio razonablemente necesario para impedir o repeler el daño, no hubo provocación de quien alega la defensa y que no se cause más daño que el necesario para repeler o evitar el daño. Por lo tanto, para que proceda esta defensa deben darse todas las circunstancias siguientes:

En primer lugar: La persona acusada tiene que creer razonablemente que [su persona] [la(s) persona(s) a quienes defendió] sufrirá(n) un daño inminente o inmediato. "Inminente" quiere decir que está a punto de suceder o de producirse. Las circunstancias

deben ser de tal naturaleza que lleven a una persona prudente y razonable a creer o temer que [ella] [otra(s) persona(s)] ha(n) de sufrir un daño inminente.

El peligro que justifica la actuación de una persona acusada en esta defensa puede ser real o aparente, pero tiene que haber ocurrido algún acto que haga pensar (temer) (creer) a una persona prudente y razonable que [su vida] [la vida de otra(s) persona(s)] estaba en peligro o que podía(n) sufrir grave daño corporal. Ustedes no tienen que considerar [si la persona acusada] [la(s) otra(s) persona(s)] estaba(n) en verdadero peligro, sino evaluar si las circunstancias eran tales que hicieran pensar (temer) (creer) a una persona prudente, que [su vida] [la vida de otra(s) persona(s)] estaba(n) expuesta a tal peligro y si razonablemente podía creerlo así.

En segundo lugar: Que se use un medio razonablemente necesario para impedir o repeler (evitar) el daño. Es necesario que la persona acusada no haya tenido ningún otro medio para evitar el ataque que no sea agredir a su adversario(a). En otras palabras, que no estaba a su alcance ningún otro medio razonable ni probable de evitar esa agresión. Habrá que considerar, entonces, la gravedad del ataque, la naturaleza y la importancia del bien jurídico protegido (lo que se estaba protegiendo), las condiciones personales de las partes y la naturaleza del medio empleado, así como que este medio sea apropiado en relación con el tipo o gravedad del ataque y en relación con la calidad del bien o de lo defendido. Una persona que es atacada por otra no está obligada a huir, a esconderse ni a abandonar el sitio para ponerse a salvo de quien le agrede, sino que puede permanecer en el sitio y defenderse.

En tercer lugar: No debe haber provocación de quien alega la defensa.

En cuarto lugar: Que no se causó más daño que el necesario para impedir o repeler (evitar) el daño. La defensa [propia] [de otra(s) persona(s)] de ninguna manera permite causar más daño que el necesario para defenderse. Solo podrá hacerse uso de medios proporcionales a la naturaleza o a la clase de ataque que se alega y se justifica emplear un mayor grado de fuerza que la necesaria para repeler o evitar el daño. Es decir, el daño causado al defenderse tiene que ser proporcional a la inminencia del daño que se intentaba evitar o impedir.

**[En casos de legítima defensa de terceros, debe añadirse lo siguiente:**

La justificación de una agresión en defensa de otra(s) persona(s) depende de las mismas condiciones que excusarían a la(s) persona(s) defendida. Por tal razón, los principios de legítima defensa aplican igualmente a los casos de agresión en defensa de otra(s) persona(s)**].**

Al considerar la prueba sobre legítima defensa, deben recordar que corresponde al Ministerio Público probar la culpabilidad de la persona acusada más allá de duda razonable. La persona acusada no está obligada a probar la defensa propia; es suficiente con que la prueba presentada al respecto genere duda razonable.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable que la persona acusada cometió los hechos por los que se le acusan y que no actuó en legítima defensa [de su persona] [de otra(s) persona(s)], deberán rendir un veredicto de culpable.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, tienen duda razonable sobre algún elemento del delito o duda razonable en cuanto a si la persona acusada actuó o no en legítima defensa [de su persona] [de otra(s) persona(s)], deberán rendir un veredicto de no culpable.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 4.4 del Proyecto de Libro de Instrucciones al Jurado de 2008 y de las Instrucciones al Jurado para el Tribunal Superior de Puerto Rico de 1976, págs. 70-72. Guarda relación con el Artículo 25 (*Legítima defensa*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 y por la Ley 92-2018 (33 LPRA sec. 5038); el Artículo 26 (*Legítima defensa*) del Código Penal de 2004, Ley 149-2004 (33 LPRA sec. 4654) (2010), y el Artículo 22 (*Legítima defensa*) del Código Penal de 1974, Ley Núm. 115 de 22 de julio de 1974 (1974 [Parte 1] Leyes de Puerto Rico 457). Véanse *Pueblo v. Rosario Villafañe*, 102 DPR 528 (1974); *Pueblo v. De Jesús Santana*, 100 DPR 791 (1972); *Pueblo v. Martínez Padró*, 91 DPR 536 (1964).

**COMENTARIO:**

Sobre la provocación o iniciación de la contienda, véase *Pueblo v. Iturrino de Jesús*, 90 DPR 706 (1964). En cuanto al temor fundado de una persona razonable, véanse *Pueblo v. Morales*, 45 DPR 191 (1933); *Pueblo v. Martínez Padró*, supra.

### 25.3 Legítima Defensa; agresión en defensa de la morada, del vehículo o del lugar de negocios o de empleo; cuando no se causa la muerte

La persona acusada presentó como defensa que al realizar los hechos por los cuales actuó en defensa de [su morada o vivienda] [la morada o vivienda de otra(s) persona(s)] [su vehículo] [el vehículo de otra(s) persona(s)] [su lugar de negocios o de empleo] [el lugar de negocios o de empleo de otra(s) persona(s)].

La ley establece que no incurre en responsabilidad penal la persona que actúe en defensa de [su morada o vivienda] [la morada o vivienda de otra(s) persona(s)] [su vehículo] [el vehículo de otra(s) persona(s)] [su lugar de negocios o de empleo] [el lugar de negocios o de empleo de otra(s) persona(s)] en circunstancias que hagan creer razonablemente que se sufrirá un daño inminente, siempre que razonablemente sea necesario emplear el medio para impedir o repeler (evitar) el daño, no hubo provocación de quien alega la defensa y que no se cause más daño que el necesario para repeler o evitar el daño.

Para justificar la defensa de la morada, del vehículo o del lugar de negocios o de empleo, las circunstancias indicarán una penetración ilegal o con el fin de cometer algún delito. Por lo tanto, para que proceda la defensa de [su morada o vivienda] [la morada o vivienda de otra(s) persona(s)] [su vehículo] [el vehículo de otra(s) persona(s)] [su lugar de negocios o de empleo] [el lugar de negocios o de empleo de otra(s) personas] deben darse todas las circunstancias siguientes:

En primer lugar: Es necesario que las circunstancias indiquen que la persona acusada creía razonablemente que la entrada en [su morada o vivienda] [la morada o vivienda de otra(s) persona(s)] [su vehículo] [el vehículo de otra(s) persona(s)] [su lugar de negocios o de empleo] [el lugar de negocios o de empleo de otra(s) persona(s)] era ilegal o con el propósito de cometer algún delito.

En segundo lugar: La persona acusada tiene que creer razonablemente que se ha de sufrir un daño inminente e inmediato. "Inminente" quiere decir que está a punto de suceder o de producirse. Las circunstancias deben ser de tal naturaleza que lleven al ánimo de una persona prudente y razonable la creencia o el temor de que [su morada o vivienda] [la morada o vivienda de otra(s) persona(s)] [su vehículo] [el vehículo de otra(s) persona(s)] [su lugar de negocios o de empleo] [el lugar de negocios o de empleo de otra(s) persona(s)] se encontraba en peligro de sufrir un daño inminente, creyendo que la entrada era ilegal o con el propósito de cometer algún delito.

El peligro que justifica la actuación de una persona acusada en esta defensa puede ser real o aparente, pero tiene que haber ocurrido algún acto que haga pensar (temer) (creer) a una persona prudente y razonable que [su morada o vivienda] [la morada o vivienda de otra(s) persona(s)] [su vehículo] [el vehículo de otra(s) persona(s)] [su lugar de negocios o de empleo] [el lugar de negocios o de empleo de otra(s) persona(s)] se encuentra en peligro o que podía sufrir daño debido a una entrada ilegal o con el propósito de cometer algún delito. Ustedes no tienen que considerar si la morada o vivienda estaba en verdadero peligro de sufrir un daño, sino evaluar si las circunstancias eran tales que hicieran pensar (temer) (creer) a una persona prudente que [su morada o vivienda] [la morada o vivienda de otra(s) persona(s)] [su vehículo] [el vehículo de otra(s) persona(s)] [su lugar de negocios o de empleo] [el lugar de negocios o de empleo de otra(s) persona(s)] estaba expuesta a tal peligro y si razonablemente podía creerlo así.

En tercer lugar: Que se use un medio razonablemente necesario para impedir o repeler (evitar) el daño. Habrá que considerar, entonces, la gravedad del ataque, la naturaleza y la importancia del bien jurídico protegido (lo que se estaba protegiendo), las condiciones personales de las partes y la naturaleza del medio empleado, así como que este medio sea apropiado en relación con el tipo o gravedad del ataque, y en relación con la calidad del bien defendido. Una persona que es atacada por otra no está obligada a huir, a esconderse o a abandonar el sitio para ponerse a salvo de quien le agrede, sino que puede permanecer en dicho sitio y defenderse. Ustedes no pueden considerar la posibilidad de que la persona haya podido evitar la confrontación.

En cuarto lugar: No debe haber provocación de quien alega la defensa.

En quinto lugar: Que no se causó más daño que el necesario para evitar o impedir el daño. El derecho a la defensa de morada, de vehículo o de lugar de negocios o de empleo de ninguna manera permite causar más daño que el necesario para defenderla. Solo podrá hacerse uso de medios proporcionales a la naturaleza o a la clase de ataque que se alega y no se justifica emplear un mayor grado de fuerza que la necesaria para impedir o evitar el ataque contra [su morada o vivienda] [la morada o vivienda de otra(s) persona(s)] [su vehículo] [el vehículo de otra(s) persona(s)] [su lugar de negocios o de empleo] [el lugar de negocios o de empleo de otra(s) persona(s)]. El daño causado tiene que ser proporcional al grado de inminencia del daño que se intentaba evitar o impedir.

Al considerar la prueba sobre legítima defensa, deben recordar que corresponde al Ministerio Público probar la culpabilidad de la persona acusada más allá de duda razonable. La persona acusada no está obligada a probar la defensa propia; es suficiente con que la prueba presentada al respecto genere duda razonable.

**[Cuando aplique la Doctrina del Castillo, el tribunal debe impartir esta Instrucción adicional:**

Cuando se actúa en defensa [de la morada] [del vehículo] [del lugar de negocios o de empleo] se presumirá que para la persona era razonable creer que se encontraba en riesgo de sufrir un daño inminente a su integridad corporal. También se presumirá que no hubo provocación por parte de la persona acusada, que el medio utilizado y el daño causado fueron razonablemente necesarios para impedir o repeler el daño, cuando sabía o tenía razón para creer que la persona contra quien usó la fuerza o la violencia **[indique la circunstancia que aplique:**

(1) penetró o intentaba penetrar ilegalmente al interior de [la morada] [el vehículo] [el lugar de negocios o de empleo] que la persona acusada o a quien se protege ocupaba en el momento, o

(2) secuestró o intentó secuestrar a alguna persona del interior de [la morada] [del vehículo] [del lugar de negocios o de empleo] que la persona acusada o a quien se protege ocupaba en ese momento**].**

El Ministerio Público puede demostrar con prueba que a la persona acusada no le aplica la presunción.

No se presumirá que la persona acusada tenía la creencia razonable de que se encontraba en riesgo de sufrir daño inminente a su integridad corporal, que no hubo provocación de su parte y que el medio que empleó para impedir o evitar y el daño causado eran razonablemente necesarios cuando la persona **[indique la circunstancia que aplique:**

(a) contra quien se usó fuerza o violencia tenía derecho a permanecer, residir, habitar u ocupar legalmente [la morada] [el vehículo] [el lugar de negocio o de empleo], (por ejemplo, cuando la persona a quien causó la muerte era la dueña, la titular o quien alquilaba);

(b) a quien se secuestró o se intentó secuestrar era menor o incapaz bajo la custodia o tutela legal de la persona contra quien se usó fuerza o violencia;

(c) provocó a la persona contra quien se usó fuerza o violencia;

(d) cometía algún delito o utilizaba [la morada] [el vehículo] [el lugar de negocios o de empleo] para promover una actividad delictiva al momento de usar la fuerza o violencia,

(e) contra quien se usó la fuerza o la violencia era un(a) funcionario(a) del orden público**].**

["Morada" es cualquier casa, estructura, barco, vagón, vehículo, construcción diseñada o adaptada para albergar o capaz de dar abrigo a seres humanos, o que pueda usarse para guardar cosas o animales, o para negocios. Comprende, además, sus anexos, dependencias y el solar donde esté localizada].

["Vehículo" es todo artefacto o animal en el cual o por medio del cual cualquier persona o propiedad es transportada o puede serlo por cualquier vía, terrestre, acuática o aérea, mediante propulsión propia o arrastre].

["Menor de edad" es la persona que al momento de los hechos no había cumplido 18 años].

["Funcionario(a) del orden público" es la persona que tiene a su cargo proteger a las personas y a la propiedad, y mantener el orden y la seguridad públicos. Esto incluye, pero sin limitarse, a las y los miembros de la Policía de Puerto Rico, de la Policía Municipal, a Agentes del Negociado de Investigaciones Especiales del Departamento de Justicia y a las y los Alguaciles de la Rama Judicial. Se considera también un(a) funcionario(a) del orden público de carácter limitado los(as) empleado(as) público(as) estatales o federales con autoridad expresa en ley para efectuar arrestos en el desempeño de sus funciones y responsabilidades especiales].

**[El tribunal debe impartir esta Instrucción acompañada de la Instrucción 3.39(b)].**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable que la persona acusada cometió los hechos por los que se le acusa y que no actuó en legítima defensa de [su morada] [la morada de otra(s) persona(s)] [su vehículo] [el vehículo de otra(s) persona(s)] [su lugar de negocios o de empleo] [el lugar de negocios o de empleo de otra(s) persona(s)], deberán rendir un veredicto de culpable.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, tienen duda razonable sobre algún elemento del delito o duda razonable en cuanto a si la persona acusada actuó o no en legítima defensa de [su morada] [la morada de otra(s) persona(s)] [su vehículo] [el vehículo de otra(s) persona(s)] [su lugar de negocios o empleo] [el lugar de negocios o empleo de otra(s) persona(s)], ustedes deberán rendir un veredicto de no culpable.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 4.7 del Proyecto de Libro de Instrucciones al Jurado de 2008 y de las Instrucciones al Jurado para el Tribunal Superior de Puerto Rico de 1976, págs. 73-75. Guarda relación con el Artículo 14 (*Definiciones*), el Artículo 25 (*Legítima defensa*) y el Artículo 25A (*Presunciones y disposiciones sobre legítima defensa en la morada, vehículo, lugar de negocios o empleo*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 y la Ley 92-2018 (33 LPRA sec. 5014 y 5038a); el Artículo 26 (*Legítima defensa*) del Código Penal de 2004, Ley 149-2004 (33 LPRA sec. 4654), y el Artículo 22 (*Legítima defensa*) del Código Penal de 1974, Ley Núm. 115 de 22 de julio de 1974 (1974 [Parte 1] Leyes de Puerto Rico 457). Véanse *Pueblo v. Rosario Centeno*, 90 DPR 874 (1964); *Pueblo v. Mediavilla*, 54 DPR 565 (1939).

**COMENTARIO:**

La Ley 92-2018 también definió el concepto "morada" equiparándola al término "edificio" del Artículo 14 del Código Penal de 2012 (33 LPRA secs. 5014(o) y (cc.1)). A su vez, incorporó la definición de "vehículo". 33 LPRA sec. 5014(tt).

## 25.4   Legítima Defensa; defensa de bienes o de derechos

La persona acusada presentó como defensa que al realizar los hechos por los que se actuó en defensa de [sus bienes] [sus derechos] [los bienes de otra(s) persona(s)] [los derechos de otra(s) persona(s)].

La ley permite a las personas que defiendan [sus bienes] [sus derechos] [los bienes de otra(s) persona(s)] [los derechos de otra(s) persona(s)] contra cualquier ataque que constituya delito o contra cualquier ataque que los ponga en grave peligro de deterioro o de pérdida inminente. Esto quiere decir que no incurre en responsabilidad quien defienda sus bienes o derechos, o los de otra(s) persona(s), en circunstancias que hagan creer razonablemente que sufrirá un daño inminente, siempre que utilice un medio razonablemente necesario para impedir o repeler (evitar) el daño, no hubo provocación de quien alega la defensa y que no se causa más daño que el necesario para repeler o evitar el daño. Para justificar la defensa de bienes o derechos, las circunstancias indicarán un ataque a estos que constituya delito o que los ponga en grave peligro de deterioro o pérdida inminente. Por lo tanto, para que proceda la defensa de [bienes] [derechos] deben darse todas las circunstancias siguientes:

En primer lugar: La persona acusada tiene que creer razonablemente que sufrirá un daño inminente. "Inminente" quiere decir que está a punto de suceder o de producirse. Las circunstancias deben ser de tal naturaleza que lleven el ánimo de una persona prudente y razonable a la creencia o al temor de que [sus bienes] [sus derechos] [los bienes de otra(s) persona(s)] [los derechos de otra(s) persona(s)] se encontraban en grave peligro de deterioro o de pérdida inminente, o que eran objeto de un ataque que constituía delito.

El peligro que justifica la actuación de la persona acusada en esta defensa puede ser real o aparente, pero tiene que haber ocurrido algún acto que haga pensar (temer) (creer) a una persona prudente y razonable que [sus bienes] [sus derechos] [los bienes de otra(s) persona(s)] [los derechos de otra(s) persona(s)] estaban en peligro inminente de deterioro o de pérdida, o que eran objeto de un ataque que constituía delito. Ustedes no tienen que considerar si [los bienes] [los derechos] [los bienes de otra(s) persona(s)] [los derechos de otra(s) persona(s)] estaban en verdadero peligro, sino evaluar si las circunstancias eran tales que hicieran pensar (temer) (creer) a una persona prudente que [sus bienes] [sus derechos] [los bienes de otra(s) persona(s)] [los derechos de otra(s) persona(s)] estaban expuestos a tal peligro y si la persona razonablemente podía creerlo así.

En segundo lugar: Que se use un medio razonablemente necesario para impedir o repeler (evitar) el daño. Es necesario que la persona acusada no haya tenido ningún otro medio para evitar el ataque que no sea agredir a su adversario(a). Es decir, que no estaba a su alcance ningún otro medio razonable ni probable de evitar esa agresión. Habrá que considerar, entonces, la gravedad del ataque, la naturaleza y la importancia del bien jurídico

protegido (lo que se estaba protegiendo), las condiciones personales de las partes y la naturaleza del medio empleado, así como que este medio sea apropiado en relación con el tipo o gravedad del ataque y en relación con la calidad del bien o de lo defendido. Una persona que es atacada por otra no está obligada a huir, a esconderse ni a abandonar el sitio para ponerse a salvo de quien le agrede, sino que puede permanecer en el sitio y defenderse.

En tercer lugar: No debe haber provocación de quien alega la defensa.

En cuarto lugar: Que no se causó más daño que el necesario para impedir o evitar el daño. Es necesario que la persona acusada no haya tenido ningún otro medio de evitar el ataque más que agrediendo a su adversario(a). La defensa de [bienes] [derechos], suyos o de otra(s) persona(s), en ningún caso permite causar más daño que el necesario para defenderlos. Solo podrán usarse medios proporcionales a la naturaleza o a la clase de ataque que se alega y no se justifica emplear un mayor grado de fuerza que la necesaria para impedir o evitar el ataque. El daño causado en defenderlos tiene que ser proporcional a la inminencia del daño que se intentaba impedir o evitar.

Al considerar la prueba sobre legítima defensa de [bienes] [derechos], ustedes deben recordar que corresponde al Ministerio Público probar la culpabilidad de la persona acusada más allá de duda razonable. La persona acusada no está obligada a probar la defensa [bienes] [derechos]; es suficiente con que la prueba presentada al respecto genere duda razonable.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable que la persona acusada cometió los hechos por los que se le acusa y que no actuó en legítima defensa de [bienes] [derechos], deberán rendir un veredicto de culpable.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, tienen duda razonable sobre algún elemento del delito o duda razonable en cuanto a si la persona acusada actuó o no en legítima defensa de [bienes] [derechos], deberán rendir un veredicto de no culpable.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 4.8 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con el Artículo 25 (*Legítima defensa*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 y por la Ley 92-2018 (33 LPRA sec. 5038); el Artículo 26 (*Legítima defensa*) del Código Penal de 2004, Ley 149-2004 (33 LPRA sec. 4654), y el Artículo 22 (*Legítima defensa*) del Código Penal de 1974, Ley Núm. 115 de 22 de julio de 1974 (1974 [Parte 1] Leyes de Puerto Rico 457).

### 25.5   Legítima Defensa; síndrome de la mujer maltratada

La acusada presentó como defensa que al realizar los hechos que se le imputan actuó en legítima defensa de su persona. Como complemento a esta defensa ha presentado, además, testimonio pericial sobre el síndrome de la mujer maltratada.

De acuerdo con el síndrome de la mujer maltratada, una acusada que demuestre haber sido abusada física y sicológicamente de forma repetitiva por la alegada víctima, puede reclamar que lo hizo en legítima defensa, aunque haya dado muerte a su agresor en un período de relativa calma o durante un ataque (una agresión) que aparentemente no era mortal. El patrón de abuso físico y sicológico puede tener el efecto en una persona prudente y razonable de llevarle a creer que es necesario matar o atacar a su agresor. Esto puede ocurrir en circunstancias en las que aparentemente no era razonable creer que estaba en peligro inminente de muerte o de grave daño corporal. También, en circunstancias en las que aparentemente no se usó un medio razonablemente necesario para impedir o repeler (evitar) el daño.

En este caso se presentó prueba para demostrar que la acusada fue maltratada por la alegada víctima y que actuó bajo la creencia de que era necesario [agredir] [dar muerte] a su agresor. Esta condición es un factor que deben considerar en cuanto a la razonabilidad de su creencia de que, al momento de atacar a la víctima, la acusada se encontraba en peligro inminente de muerte o de recibir grave daño corporal. Al considerar esta prueba, ustedes deben recordar que corresponde al Ministerio Público probar la culpabilidad de la acusada más allá de duda razonable. La acusada no tiene la obligación de probar la defensa propia, sino que es suficiente que la prueba presentada al respecto genere duda razonable.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable que la acusada cometió los hechos por los que se le acusa, deberán rendir un veredicto de culpable.

Si, por el contrario, después de analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, tienen duda razonable sobre algún elemento del delito o duda razonable en cuanto a si la acusada actuó o no en legítima defensa, ustedes deberán rendir un veredicto de no culpable.

**REFERENCIA:**

Esta Instrucción proviene esencialmente de la Instrucción 2.14 del Proyecto de Libro de Instrucciones al Jurado de 2008. Véanse *Pueblo v. González Román*, 138 DPR 691 (1995); *Pueblo v. González Román*, 129 DPR 933 (1992).

**COMENTARIO:**

La evidencia sobre el síndrome de la mujer maltratada, presentada mediante testimonio pericial, ha sido reconocida como complemento a la prueba sobre legítima defensa en los casos en que la víctima demuestra ser una mujer maltratada y que el patrón de abuso la condujo a creer, en circunstancias que no configuran plenamente la legítima defensa, que fue necesario dar muerte a su agresor en protección de su vida o su integridad corporal.

*Pueblo v. González Román*, 129 DPR 933 (1992). El propósito del testimonio pericial sobre este síndrome es ayudar al (a la) juzgador(a) a entender el efecto del patrón de abuso en la mujer.

El síndrome de la mujer maltratada no constituye una defensa que exima de responsabilidad a la mujer que lo invoca. Se trata de un elemento importante para determinar, en ciertos casos, si la acusada actuó en legítima defensa. Se aplica en los casos en que la actuación de la mujer maltratada "no caiga dentro del marco tradicional de la legítima defensa, por la aparente inaplicabilidad de los requisitos de inminencia y razonabilidad que exige el Artículo 22 del Código Penal […]". *Pueblo v. González Román*, 138 DPR 691, 702 (1995).

### 25.6   Estado de Necesidad

La persona acusada presentó la defensa de Estado de Necesidad. Esta defensa consiste en que la persona acusada alega que se vio obligada a causar un mal para evitar un mal mayor. De ahí que se hable de escoger, entre dos males, el menor de ellos. Así, es legítimo causar un daño a la propiedad de otro para salvar una vida.

La ley exige que el mal causado sea considerablemente inferior al mal evitado. La defensa no aplica si se trata de males más o menos iguales, como, por ejemplo, salvar una vida a costa de otra, no importa lo desigual que le pudiera parecer a la persona que cometió el delito. Tampoco se justifica causar grave daño corporal a una persona para evitar que otra sufra ese tipo de daño. Ustedes deberán evaluar el mal causado frente al mal evitado y considerar si está presente el requisito de que el mal causado sea considerablemente inferior al mal evitado.

El bien o derecho protegido puede ser propio o ajeno. El daño o mal que se quiere evitar debe ser inminente (esto es, que está a punto de producirse) y solamente puede evitarse con la conducta en la que incurrió la persona acusada. Es decir, la ley no permite la defensa cuando el daño que se quiere evitar no está a punto de producirse o cuando se hubiera podido evitar de otra manera sin causar el daño. La ley permite que se cause un daño menor para evitar un daño mayor. También se exige que el mal que se quiere evitar no haya sido provocado por quien plantea la defensa.

La defensa de estado de necesidad incluye la situación en que exista un conflicto entre deberes. Ocurre cuando no se cumple con alguno de los deberes para evitar un mal mayor.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, y que no se trata de un estado de necesidad, deberán rendir un veredicto de culpable.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, tienen duda razonable sobre algún elemento del delito o duda razonable en cuanto a si la persona acusada actuó o no en estado de necesidad, ustedes deberán rendir un veredicto de no culpable.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 4.9 del Proyecto de Libro de Instrucciones al Jurado de 2008 y de las Instrucciones al Jurado para el Tribunal Superior de Puerto Rico de 1976, págs. 79-80. Guarda relación con el Artículo 26 (*Estado de necesidad*) del Código Penal de 2012, Ley 146-2012, según enmendada (33 LPRA sec. 5039); el Artículo 27 (*Estado de necesidad*) del Código Penal de 2004, Ley 149-2004 (33 LPRA sec. 4655), y el Artículo 23 (*Estado de necesidad*) del Código Penal de 1974, Ley Núm. 115 de 22 de julio de 1974 (1974 [Parte 1] Leyes de Puerto Rico 457).

**COMENTARIO:**

La defensa no está disponible cuando se imputa causar la muerte de una persona o el causarle lesiones graves y permanentes. Esto es una determinación legítima que probablemente no requiera instruir al Jurado, sino que el tribunal denegará la instrucción solicitada dado el delito imputado. Sin embargo, si hay dudas sobre la naturaleza de las lesiones, el asunto debe pasar al Jurado con una instrucción:

> Si ustedes determinan que las lesiones sufridas por la víctima fueron causadas por la persona acusada y que son de naturaleza grave y permanente, rechazarán la defensa de estado de necesidad.

El tribunal deberá determinar también si por razón del cargo, oficio o actividad de la persona acusada, esta no puede invocar estado de necesidad exculpatorio, pues tenía la obligación por ley de afrontar el riesgo y sus consecuencias, en conformidad con el párrafo final del Artículo 26 del Código Penal de 2012, *supra*. Con toda probabilidad el tribunal denegará impartir la instrucción. En caso de una controversia genuina sobre si el cargo, la actividad o la función de la persona acusada le obliga a afrontar el riesgo, habría que instruir al Jurado en los términos correspondientes. La ley obliga a ciertas personas a afrontar los riesgos que implica su cargo, actividad o función, con el efecto de no poder invocar la defensa de estado de necesidad. Por ejemplo, al (a la) bombero(a) a quien se le acusa de incumplir con su deber de combatir un incendio no puede invocar la defensa de estado de necesidad a base del peligro que implicaba para su vida el cumplir con los deberes de su cargo. Lo mismo ocurre con el capitán o la capitana del barco que abandona la nave para salvar su vida ante su inminente hundimiento mientras quedaban personas a quienes socorrer en la nave. Igual ocurre con el o la policía que incumple con su deber de intervenir en un motín invocando el riesgo que ello implica para su vida o para su integridad física.

Adviértase, que el mencionado Artículo 26 no incluye el estado de necesidad exculpatorio, pues se exige que el mal causado sea considerablemente inferior al mal evitado. Para esos casos (bienes o males de igual o casi igual magnitud) habría que recurrir al Artículo 32 (*Intimidación o violencia*), 33 LPRA sec. 5045, y al Artículo 33 (*Temor Insuperable*), 33 LPRA sec. 5046.

Para las diversas circunstancias en que podría plantearse la defensa de estado de necesidad se ofrecen los ejemplos siguientes:

1. Cuando es legítimo causar un daño a la propiedad de otro para salvar una vida. Por ejemplo, para salvar a alguien de morir en un fuego, la persona se ve obligada a romper una

puerta o una ventana de una casa ajena.  Sin embargo, no procede la defensa si el mal que se quiere evitar fue provocado por quien la plantea.  Así, quien causa daño a la propiedad ajena para salvar la vida de quien va a perecer en el incendio, no puede invocar esta defensa, cuando ha sido quien provocó el incendio.  Distinto es el caso, por ejemplo, cuando se desata una tormenta en el mar y se arroja propiedad ajena de una embarcación para evitar su hundimiento y la pérdida de vidas.

2. Cuando no se cumple con un deber para evitar un mal mayor al que causaría si se cumpliera con ese deber.  Por ejemplo, es legítimo que el médico abandone los pacientes que están en su oficina para irse al hospital a atender una emergencia y salvar una vida.

Véanse *Pueblo v. Medina Lugo*, 126 DPR 734 (1990); *Pueblo v. Morales Roque*, 113 DPR 876 (1983); *El Pueblo v. Franco et al.*, 23 DPR 549 (1916).  En palabras de la Dra. Dora Nevares-Muñiz en cuanto al estado de necesidad dispuesto en el Artículo 26 del Código Penal de 2012:

> Esta causa de exclusión de responsabilidad penal aplica en aquellas situaciones de peligro donde surge un conflicto o colisión entre deberes o bienes jurídicos distintos, en cuyo caso se sacrifica uno de ellos en beneficio de aquel bien jurídico o deber que se reputa de mayor valor a los fines de la protección jurídica. […]
>
> .         .         .         .         .         .         .         .         .         .
>
> El daño que se trata de evitar, cuando una persona realiza conducta delictiva invocando un estado de necesidad, tiene que ser inmediato y su ocurrencia segura (inevitable), y el mismo de la única manera que podía ser evitado fue por la actuación rápida de la persona. Si hubiera una forma de evitar el peligro sin que fuera necesario causar daño a los bienes jurídicos de otro, habría que hacerlo de ese modo y no procedería la defensa. Además, el daño al bien jurídico, que se pretende evitar, debe ser real y conocido por la persona que invoca la defensa de estado de necesidad. Tampoco quien invoca la defensa puede haber provocado el peligro o la situación de necesidad.
>
> En situaciones donde los bienes jurídicos tienen igual valor, la defensa de estado de necesidad como causa de justificación no estaría disponible D. Nevares-Muñiz, *Código Penal de Puerto Rico,* 4ta ed. rev., San Juan, Ed. Instituto para el Desarrollo del Derecho, 2019, págs. 61-62.

En resumen, el tribunal debe evaluar si la prueba desfilada en el juicio justifica impartir esta Instrucción sin usurpar las funciones del Jurado. Para ello cabe recordar los requisitos para que se configure esta defensa:

> (1) Que se actuó para proteger algún derecho propio o ajeno.
> (2) Que se actuó bajo una situación de peligro inminente e inevitable.
> (3) Que el peligro no fue provocado por la persona.
> (4) Que el daño causado sea a los bienes jurídicos de otra persona.
> (5) Que el daño causado sea inferior al daño evitado y que no supone la muerte o lesión grave y permanente de la integridad física de una persona.

En cuanto al concepto "bienes jurídicos", el tratadista Santiago Mir Puig indica que "[l]os intereses sociales que por su importancia merecen la protección del Derecho se denominan 'bienes jurídicos'". (Énfasis suprimido). S. Mir Puig, *Derecho Penal: Parte General*, 10mo ed., Barcelona, Reppertor, 2016, pág. 130. En el sentido dogmático, se refiere al "'objeto de tutela jurídica': [por ejemplo,] la vida, la propiedad, la libertad, el honor, la [a]dministración de la

[j]usticia, la seguridad interior del Estado, etc., en cuanto el Código Penal castiga determinados ataques contra estos bienes". Íd., pág. 172.


### 25.7    Ejercicio de un Derecho o el Cumplimiento de un Deber

La persona acusada presentó como defensa que, al realizar los hechos, actuó en el cumplimiento de un deber jurídico o en el ejercicio legítimo de un derecho, autoridad o cargo.

La ley dispone que no incurre en responsabilidad la persona que obra en cumplimiento de un deber jurídico o en el ejercicio legítimo de un derecho, autoridad o cargo. Esto significa que no responde penalmente quien actúa dentro de los límites del deber impuesto o del derecho que se le reconoce por ley.

El ejercicio legítimo de un derecho, autoridad o cargo conlleva en ocasiones la ejecución de actos que realizados por otras personas constituirían delito. La ley establece que está exenta o libre de responsabilidad penal la persona que causa daño al actuar en cumplimiento de sus funciones legítimas con la debida diligencia y utilizando los medios racionalmente necesarios. Basta que la persona actúe con moderación y prudencia en cumplimiento de su deber o que su conducta se ajuste al ejercicio legal y legítimo de su derecho.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa y que no actuó en el ejercicio de un derecho o en el cumplimiento de un deber, deberán rendir un veredicto de culpable.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, tienen duda razonable sobre algún elemento del delito o duda razonable en cuanto a si la persona acusada actuó o no en el ejercicio de un derecho o en el cumplimiento de un deber, deberán rendir un veredicto de no culpable.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 4.11 del Proyecto de Libro de Instrucciones al Jurado de 2008 y de las Instrucciones al Jurado para el Tribunal Superior de Puerto Rico de 1976, págs. 81-82. Guarda relación con el Artículo 27 (*Ejercicio de un derecho o cumplimiento de un deber*) del Código Penal de 2012, Ley 146-2012, según enmendada, 33 LPRA sec. 5040; el Artículo 28 (*Ejercicio de un derecho o cumplimiento de un deber*) del Código Penal de 2004, Ley 149-2004 (33 LPRA sec. 4656), y el Artículo 24 (*Ejercicio de un derecho o cumplimiento de un deber*) del Código Penal de 1974, Ley Núm. 115 de 22 de julio de 1974 (1974 [Parte 1] Leyes de Puerto Rico 457).

**COMENTARIO:**

Por ser una defensa afirmativa, para que proceda la instrucción sobre esta exclusión de responsabilidad se requiere que quien la invoque acepte que cometió el acto que se le imputa.

Sobre la corrección usando métodos físicos por parte de un maestro hacia un estudiante, véase *Pueblo v. Ponce Ávila*, 105 DPR 213 (1976). Sobre un arresto legal en cumplimiento de una orden de cualquier magistrado(a) o tribunal y cuando es necesario vencer la resistencia de la persona que será arrestada, véase *Pueblo v. Santiago*, 78 DPR 659 (1955).

Los(as) agentes del orden público que cumplen con sus funciones siguiendo los parámetros impuestos por su ley orgánica y los reglamentos administrativos de la Policía de Puerto Rico, no tendrán que responder penalmente por cualquier actuación que resulte del ejercicio legítimo de su autoridad o cargo. Sobre el particular, el Código Penal de 2012 dispone que "no incurre en responsabilidad quien obra en cumplimiento de un deber jurídico o en el legítimo ejercicio de un derecho, autoridad o cargo". 33 LPRA sec. 5040. No obstante, este privilegio legislativo no puede ser invocado por los y las policías si, al cumplir con los deberes de su cargo, ejercen un grado de fuerza excesivo e injustificado. *Pueblo v. Sustache Sustache*, 176 DPR 250 (2009).

## 25.8 Obediencia Jerárquica

La persona acusada presentó como defensa que, al realizar los hechos, actuó según la obediencia jerárquica dadas las órdenes recibidas de sus superiores(as) en el desempeño de su función pública.

La ley establece que no tiene responsabilidad penal la persona que [obra] [actúa] en virtud de la obediencia jerárquica en la función pública, siempre que la orden figure dentro de la autoridad del (de la) superior(a) respecto de su subordinado(a), que no tenga apariencia de ser ilegal y que la persona subordinada esté obligada a cumplirla. En este caso será responsable del hecho delictivo la persona quien emitió la orden.

Para que proceda esta defensa deben darse todas las circunstancias siguientes:

(1) Que la persona realizó la acción u omisión en cumplimiento de una orden dada por su superior(a).

(2) Que la orden se encontraba dentro de la autoridad del (de la) superior(a) respecto a su subordinado(a), quien es funcionario(a) o empleado(a) público(a).

(3) Que la persona subordinada estaba obligada a cumplir la orden.

(4) Que la orden no tenía la apariencia de ser ilegal, y

(5) Que la orden se dio dentro del desempeño de la función pública y se ejerció por funcionarios(as) o empleados(as) de gobierno.

Funcionario(a) o empleado(a) público(a) es la persona que ejerce un cargo o desempeña una función o encomienda, con o sin pago, permanente o temporeramente, debido a cualquier tipo de nombramiento, contrato o designación, para la Rama Legislativa,

Ejecutiva o Judicial, o para el gobierno municipal del Estado Libre Asociado de Puerto Rico. Incluye a quienes representan el interés público y sean designadas para ocupar un cargo en una junta, corporación pública, entidad gubernamental y sus subsidiarias del Estado Libre Asociado de Puerto Rico, así como a los(as) notarios(as). El término "funcionario(a) público(a)" incluye las personas que ocupan cargos o empleos en el gobierno del Estado Libre Asociado y que están investidas de parte de la soberanía del gobierno, por lo que intervienen en la formulación e implantación de la política pública.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa y que no los cometió en virtud de obediencia jerárquica alguna, deberán rendir un veredicto de culpable.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, tienen duda razonable sobre algún elemento del delito o duda razonable en cuanto a si la persona acusada actuó o no por obediencia jerárquica, deberán rendir un veredicto de no culpable.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucciones 4.2 del Proyecto de Libro de Instrucciones al Jurado de 2008 y de las Instrucciones al Jurado para el Tribunal Superior de Puerto Rico de 1976, pág. 42. Guarda relación con el Artículo 28 (*Obediencia jerárquica*) del Código Penal de 2012, Ley 146-2012, según enmendada, 33 LPRA sec. 5041; el Artículo 29 (*Obediencia jerárquica*) del Código Penal de 2004, Ley 149-2004 (33 LPRA sec. 4657), y el Artículo 20 (*Obediencia jerárquica*) del Código Penal de 1974, Ley Núm. 115 de 22 de julio de 1974 (1974 [Parte 1] Leyes de Puerto Rico 456).

## 25.9   Error Acerca de un Elemento del Delito

La persona acusada presentó como defensa que, cuando realizó los hechos **[indique cuál es el delito]**, actuó respondiendo a un error acerca de un elemento del delito que excluye **[especifique el elemento mental que aplique]** [el propósito] [el conocimiento [la temeridad] [la negligencia] que requiere el delito imputado.

La ley dispone que no incurre en responsabilidad penal la persona cuya conducta responde a un error que excluye el propósito, el conocimiento, la temeridad o la negligencia, elemento requerido por el delito imputado. En este caso, la persona acusada no sería responsable (culpable) si, a base de las circunstancias en las que ocurrieron los hechos, actuó respondiendo a un error respecto a **[indique el criterio justificativo aplicable al caso]**.

**[El tribunal debe referirse a la Instrucción 4.5 para la definición del elemento subjetivo que aplique].**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable que la persona acusada cometió los hechos por los que se

le acusa consciente de los actos que realizaba **[especifique el elemento mental que aplique]** [a propósito] [con conocimiento] [temerariamente] [negligentemente] sin que haya obedecido a error alguno (ni a temeridad o negligencia), deberán rendir un veredicto de culpable.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, tienen duda razonable sobre algún elemento del delito o duda razonable de si la persona acusada actuó o no respondiendo a un error acerca de un elemento del delito, deberán rendir un veredicto de no culpable.

**[Cuando se alegue un error producto de la temeridad:**

Si ustedes entienden que la persona acusada actuó temerariamente, según se ha definido este elemento, y que el error alegado fue el resultado de la temeridad, la defensa de error no procede**].**

**[Cuando se alegue un error producto de la negligencia:**

Si ustedes entienden que una persona prudente y razonable, empleando el debido cuidado se hubiese percatado del error, la defensa de error no procede**].**

**[Cuando la defensa de error recae sobre las circunstancias agravantes o una modalidad más grave:**

Si ustedes tienen el convencimiento más allá de duda razonable que la persona acusada cometió el delito pero consideran que [la circunstancia agravante] [la modalidad más grave] obedeció a un error en el sentido antes explicado, deberán rendir un veredicto de culpable sin [la circunstancia agravante] [la modalidad más grave**].**

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 4.1 del Proyecto de Libro de Instrucciones al Jurado de 2008 y de las Instrucciones al Jurado para el Tribunal Superior de Puerto Rico de 1976, pág. 41. Guarda relación con el Artículo 29 (*Error acerca de un elemento del delito*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA sec. 5042), y el Artículo 19 (*Error de hecho*) del Código Penal de 1974, Ley Núm. 115 de 22 de julio de 1974 (1974 [Parte 1] Leyes de Puerto Rico 456). Véanse *Pueblo v. García Pomales*, 94 DPR 224 (1967); *Pueblo v. Hernández*, 93 DPR 435 (1966).

**COMENTARIO:**

Esta modalidad de error tiene el efecto de negar el tipo subjetivo del delito (intención o negligencia). Nótese que el Artículo 29 del Código Penal, *supra*, dispone que "[n]o incurre en responsabilidad penal la persona cuyo hecho responde a un error acerca de un elemento del delito que excluye el propósito, conocimiento, temeridad o negligencia requerido por el delito imputado".

No se trata del error de prohibición, que es la causa de exculpación codificada en el Artículo 30 (*Ignorancia de la ley penal*), 33 LPRA sec. 5043. Tampoco aplica al error en la persona, el cual se atiende en el Artículo 24 del Código Penal, 33 LPRA sec. 5037.

En el caso del error acerca de un elemento del delito (error de tipo), la persona acusada conoce cuál es la conducta proscrita por la ley penal, pero por error cree que con su acción u omisión no incurre en él. Por ejemplo, cree que el bien mueble apropiado le pertenece; que la persona con quien tiene relaciones sexuales tiene 16 años y no es una pariente; que a quien le disparó no es un ser humano, entre otros ejemplos.

Los párrafos segundo y tercero del Artículo 29 regulan el efecto del error mediante el tipo subjetivo requerido para el delito.

- Si el tipo solo requiere temeridad y el error obedece a la temeridad, el sujeto responde penalmente, pero si el error obedece solo a la negligencia, el sujeto no incurre en responsabilidad penal, pues el tipo requiere temeridad.
- Si el tipo requiere negligencia, hay responsabilidad penal si el error se debe a la negligencia. Por supuesto que solo hay responsabilidad penal por negligencia si el tipo permite la negligencia como elemento subjetivo.

El Tribunal Supremo discutió estos temas de acuerdo con la figura del error de hecho en el Código Penal de 1974. Véanse *Pueblo v. Carmona, Rivera*, 143 DPR 907 (1997); *Pueblo v. Ruiz Ramos*, 125 DPR 365 (1990). Además, véanse *Pueblo v. García Pomales*, supra, y *Pueblo v. Hernández*, 93 DPR 435 (1966), sobre el error esencial. La jurisprudencia interpretativa de esta figura requería que el error fuera esencial y que operara como "un elemento indispensable del delito" que incide sobre la forma de culpabilidad, de manera que no se logre configurar el delito. *Pueblo v. García Pomales*, supra, pág. 229. Posteriormente, en *Pueblo v. Ruiz Ramos,* supra*, el Tribunal Supremo añadió que, además de ser esencial, el error tiene que ser invencible. En otras palabras, no bastaría con la equivocación, sino que, para que prospere la defensa, debe demostrarse que, a pesar de que la persona acusada realizó todas las diligencias necesarias para evitar caer en el error, el resultado no se podía evitar o la persona no hubiera actuado bajo tal creencia equivocada. En forma consecuente, el Tribunal Supremo concluyó: "[e]n casos de delitos de negligencia la defensa de error de hecho no está disponible si precisamente la esencia de la negligencia consiste en no percatarse del error o en la falta de previsión". *Pueblo v. Ruiz Ramos*, supra, pág. 395. Los efectos de la invencibilidad del error durante la comisión del delito se elaboraron luego en *Pueblo v. Carmona, Rivera*, supra.

Aunque estos casos ilustran el efecto del error aplicable al tipo subjetivo requerido para cometer el delito (temeridad o negligencia), cabe resaltar que el Artículo 29 vigente no distingue entre el error vencible o invencible, ni entre el error razonable o irrazonable que se desarrolló basado en las disposiciones del Código Penal de 1974. Reiteramos que el Código Penal vigente regula el error de tipo atendiendo a cuál es el tipo subjetivo del delito y se limita a evaluar si el error que alega el imputado obedece al tipo subjetivo suficiente para el delito.

El último párrafo del Artículo 29 del Código Penal de 2012, *supra*, incluye una disposición especial sobre el error en circunstancias agravantes. Si el error acerca de un elemento del delito recae sobre un agravante o sobre un elemento que da lugar a una modalidad más grave del delito, no procede imponer la pena o modalidad más grave.

En fin, la ley dispone que una persona actúa temerariamente cuando es consciente de que su conducta genera un riesgo sustancial e injustificado de que se produzca el resultado o la circunstancia prohibida por ley. Artículo 22(3) del Código Penal de 2012, según enmendado, 33 LPRA sec. 5035. Cuando se trata de delitos cuyo elemento mental es la temeridad, el error no excluye la responsabilidad si se debió a la temeridad de la persona acusada.

En cuanto al elemento mental de la negligencia, la ley dispone que una persona actúa negligentemente cuando debió haber sabido que su conducta generará un riesgo sustancial e injustificado de que se produzca el resultado lesivo o la circunstancia prohibida por ley. El riesgo debe ser de tal grado que, considerando la naturaleza y el propósito de la conducta y las circunstancias conocidas por quien actúa, la acción u omisión de la persona constituye una desviación crasa del estándar de cuidado que observaría una persona razonable en la posición de la persona acusada. Artículo 22(4) del Código Penal, *supra*.

Cuando se trata de delitos cuyo elemento mental es la negligencia, el error no excluye responsabilidad si se debió a la negligencia o a la temeridad del sujeto.

### 25.10  Ignorancia de la Ley Penal

La persona acusada presentó como defensa que su acción está excluida de responsabilidad penal porque cuando realizó los hechos actuó por ignorancia de la ley.

La ley dispone que la ignorancia de la ley penal no es excusa para su incumplimiento. No obstante, la persona no incurrirá en responsabilidad penal cuando **[refiérase solamente a la(s) modalidad(es) que corresponda(n)]**:

    (a) la ley que establece el delito no se publicó antes que se realizara la conducta por la que se le acusa,

    (b) la conducta de la persona acusada se debió a una declaración oficial que posteriormente fue invalidada o se determinó que era errónea y que estaba contenida en:

        (1) una ley u otra norma,

        (2) una decisión u opinión judicial,

        (3) una orden administrativa o concesión de permiso, o

        (4) una interpretación oficial de la entidad responsable de la interpretación, administración o aplicación de la ley que define el delito.

En este caso la persona acusada alega que su error consistió en **[especifique la(s) modalidad(es) que aplique(n)]** desconocer la ley que establece el delito porque no se había publicado con anterioridad a la conducta realizada o en confiar en la interpretación previa oficial de la norma, que posteriormente se invalidó.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable que la persona acusada cometió los hechos por los que se le acusa, consciente de los actos que realizaba **[especifique el elemento mental aplicable:**

[a propósito] [con conocimiento] [temerariamente] [negligentemente]**]** sin que ello haya obedecido a la ignorancia de la ley penal, deberán rendir un veredicto de culpable.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, tienen duda razonable sobre algún elemento del delito o duda razonable en cuanto a si la persona acusada actuó o no por ignorancia de la ley, deberán rendir un veredicto de no culpable.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Artículo 30 (*Ignorancia de la ley penal*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA sec. 5043), y la Sección 2.04 (*Ignorance or Mistake*) del Código Penal Modelo.

**COMENTARIO:**

Cuando el error esencial recae sobre la antijuricidad de la conducta se denomina "error de prohibición". En el Código Penal de 2004 se había abandonado la distinción entre "error de prohibición" y "error de tipo" del Código Penal de 1974. Véanse los Artículos 19(a) y (b) del Código Penal de 2004 (33 LPRA secs. 3092a y 3092b). Sin embargo, el Artículo 30 del Código Penal de 2012, según enmendado por la Ley 246-2014, *supra*, lo denominó "Ignorancia de la ley penal".

La defensa de "error de prohibición" se relaciona con la defensa de "error excusable". El Artículo 29 del Código Penal de 2012 (33 LPRA sec. 5042), relativo al "Error acerca de un elemento del delito", se enmendó en el 2014, para sustituir su anterior nombre "error excusable". La Ley 246-2014 sustituyó "un error esencial e invencible que excluye la intención" con "un error acerca de un elemento del delito que excluye el propósito, conocimiento, temeridad o negligencia requerido por el delito imputado". Este es el "error de tipo" o "error de hecho", en el que la persona imputada conoce cuál es la prohibición, pero por error cree que con su acción u omisión no incurre en el delito. Se reguló la figura y no se menciona el "error de hecho–error de derecho", "error vencible–error invencible", "error razonable–error irrazonable", etc.

El "error de prohibición" se refiere a una creencia equivocada de que se está actuando conforme con la ley o a una causa de justificación que en realidad no existía. Por otro lado, "invencibilidad" se refiere a la imposibilidad de evitar la acción a pesar del empleo de las debidas diligencias por parte de quien actúa de acuerdo con el estándar de la persona prudente y razonable. *Pueblo v. Carmona, Rivera,* 143 DPR 907 (1997).

## 25.11 Entrampamiento

La persona acusada presentó como defensa que al realizar los hechos actuó provocada o inducida por las actuaciones de un (una) agente del orden público.

La ley establece que no incurre en responsabilidad penal quien realiza el hecho delictivo cuando se induce o se provoca en su mente la intención criminal mediante engaño,

persuasión o fraude de cualquier agente del orden público o por una persona privada que actúa en colaboración con el (la) agente del orden público.

Cuando un(a) agente del orden público logra que una persona cometa un delito que, de lo contrario, no hubiera cometido, eso se considera entrampamiento. En estos casos, será responsable del hecho delictivo quien haya inducido, obligado o forzado a una persona a cometer el hecho.

Cuando surge la controversia de si hubo o no entrampamiento, ustedes deberán determinar si el delito cometido fue el producto de la intención y del deseo criminal de la persona acusada o si fue el producto de la incitación o del estímulo ofrecido por el (la) agente del orden público.

Si ustedes consideran que la persona acusada estaba predispuesta o inclinada a cometer el delito, el mero hecho de que un(a) agente del orden público u otra persona le ofreciera una oportunidad para cometerlo no constituiría entrampamiento y esta defensa no aplicaría.

Si, por otro lado, ustedes consideran que el delito fue provocado o inducido por las actuaciones del (de la) agente del orden público hasta el punto de que la conducta del (de la) agente fue la causa principal que produjo el delito, y sin la cual este no hubiera sido cometido, esta defensa procedería.

Por lo tanto, si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa y que no actuó por entrampamiento, deberán rendir un veredicto de culpable.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, tienen duda razonable sobre algún elemento del delito o duda razonable en cuanto a si la persona acusada actuó o no por entrampamiento, ustedes deberán rendir un veredicto de no culpable.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 4.3 del Proyecto de Libro de Instrucciones al Jurado de 2008 y de las Instrucciones al Jurado para el Tribunal Superior de Puerto Rico de 1976, pág. 43. Guarda relación con el Artículo 31 (*Entrampamiento*) del Código Penal de 2012, Ley 146-2012, según enmendada, 33 LPRA sec. 5044; el Artículo 31 (*Entrampamiento*) del Código Penal de 2004, Ley 149-2004 (33 LPRA sec. 4659); el Artículo 21 (*Entrampamiento*) del Código Penal de 1974, Ley Núm. 115 de 22 de julio de 1974 (1974 [Parte 1] Leyes de Puerto Rico 456). Véanse *Pueblo v. Kravitz,* 105 DPR 158 (1976); *Pueblo v. García*, 92 DPR 573 (1965); *Pueblo v. Verdejo Meléndez*, 88 DPR 207 (1963); *Pueblo v. Seda*, 82 DPR 719 (1961); *Pueblo v. Pérez*, 72 DPR 865, 869 (1951).

**COMENTARIO:**

La defensa de entrampamiento, reconocida en el Artículo 31 del Código Penal de 2012, *supra*, es *sui generis*, por cuanto no es una causa de justificación ni de exculpación; si hubiera que clasificarla como una de esas dos, tendría que ser como exculpación, pues se trata de una

conducta antijurídica. No obstante, se trata, más bien, de una defensa no exculpatoria. Esta defensa se reconoce en Puerto Rico desde el Código Penal de 1974 (mediante el Artículo 21) y se ha mantenido en los Códigos de 2004 y 2012.

Se reconocen dos teorías principales de entrampamiento y una tercera de dimensión constitucional, vinculada al debido proceso de ley. Véase L.E. Chiesa Aponte, *Derecho penal sustantivo*, 2da ed., San Juan, Publicaciones JTS, 2013, págs. 289-294. En Puerto Rico, en la jurisdicción federal y en la mayoría de las jurisdicciones estatales prevalece la teoría subjetiva, centrada en la intención de la persona que actúa. Conforme a esta teoría, la defensa no procede cuando quien actúa tenía la predisposición de cometer el delito y los(as) agentes del Estado solo facilitaron o le instigaron a que se cometiera. Esto implica que no importa cuán agresiva y hasta censurable sea la conducta de los(as) agentes, la defensa no progresa si la persona imputada estaba predispuesta a cometer el delito. La persona acusada que se vale de esta defensa, según la teoría subjetiva vigente, se expone a que, para refutarla, el Ministerio Público presente prueba de la conducta delictiva de la persona acusada (*uncharged misconduct evidence*) para establecer la predisposición de la persona acusada a incurrir en el tipo de conducta por el que se le acusa. Esto lo permite expresamente la Regla 404(b) de Evidencia: evidencia admisible de otros delitos "para establecer o refutar una defensa". 32 LPRA Ap. VI. De ahí que la persona acusada que invoca el entrampamiento cuando se le imputa una infracción a la Ley de Sustancias Controladas de Puerto Rico se expone a que el Ministerio Público, para refutar esa defensa, presente prueba de delitos anteriores —o posteriores—a la persona imputada.

La teoría objetiva, favorecida en algunas jurisdicciones estatales, por muchas autoridades y plasmada en la Sección 2.13 del Código Penal Modelo, está centrada en la conducta de los(as) agentes y no en la predisposición de la persona acusada. Según esta teoría objetiva, la defensa progresa, aunque la persona acusada estuviera predispuesta a cometer el delito, si la conducta de los(as) agentes es tan agresiva que hasta la persona no predispuesta probablemente lo hubiera cometido. Esta conducta de los(as) agentes se condena como intolerable y hasta repugnante.

Una tercera teoría, parecida a la teoría objetiva pero de dimensión constitucional, se afirma en el debido proceso de ley. Cuando las autoridades del gobierno, al investigar un crimen particularmente mediante agentes encubiertos, traspasan el juego limpio que exige nuestro sistema de gobierno valiéndose de medios que estremecen la conciencia, puede haber una violación al debido proceso de ley que conlleve, no solo la exclusión de evidencia, sino el reconocer la defensa como derecho penal sustantivo, aunque la persona acusada estuviera predispuesta a cometer el delito. En un famoso *dictum*, en *United States v. Russell*, 411 US 423, 431-432 (1973), la Corte Suprema de Estados Unidos reconoce que pudiera haber casos en los que la conducta de los(as) agentes fuera tan repugnante que se configuraría una violación al debido proceso de ley:

> While we may some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial process to obtain a conviction, cf. *Rochin* v. *California*, 342 U.S. 165 (1952), the instant case is distinctly not of that breed.

Ahora bien, la Corte Suprema de Estados Unidos no abandonó la teoría subjetiva, aun en los casos en que la conducta de los(as) agentes sea a todas luces repugnante o indignante (*outrageous*), como se aprecia en *Jacobson v. United States*, 503 US 540 (1992). Véanse, además, *Hampton v. United States,* 425 US 484 (1976); *Sherman v. United States*, 354 US 911 (1957), *cert.* denegado; *Sorrells v. United States*, 287 US 435 (1932). Una precaria mayoría de cinco Jueces resolvió que el acusado fue entrampado, pero se mantuvo la teoría subjetiva interpretada extensivamente.

La jurisprudencia del Tribunal Supremo de Puerto Rico sigue la teoría subjetiva. Véanse *Pueblo v. Kravitz*, 105 DPR 158 (1976); *Pueblo v. Verdejo Meléndez*, 88 DPR 207 (1963); *Pueblo v. Seda*, 82 DPR 719 (1961). La defensa progresó en *Pueblo v. García*, 92 DPR 573 (1965). Aunque en esta última opinión hubo expresiones compatibles con la teoría objetiva y hasta con la teoría de debido proceso de ley, el caso se resolvió bajo la teoría subjetiva, pues lo decisivo fue que el acusado no estaba predispuesto a delinquir.

En *Pueblo v. Pérez*, 72 DPR 865 (1951), el Tribunal Supremo expresó que la defensa de entrampamiento solamente puede invocarse cuando la persona acusada admite que cometió el delito sin justificación ni excusa; muchas jurisdicciones estatales comparten esta postura. Sin embargo, en *Mathews v. United States*, 485 US 58 (1988), la Corte Suprema de Estados Unidos resolvió que en la jurisdicción federal la persona acusada puede negar la comisión del delito sin renunciar a la defensa de entrampamiento. El Prof. Luis E. Chiesa Aponte favorece la norma de que la persona acusada que invoca la defensa de entrampamiento debe aceptar la conducta imputada y que la persona acusada tenga el peso de la prueba para establecer la defensa. Chiesa Aponte, *op. cit.*, págs. 295-296. Como no se trata de materia constitucional, los estados y Puerto Rico no están obligados por *Mathews*. También se ha favorecido que la cuestión de entrampamiento debe ser adjudicada por el tribunal sin someterla al Jurado. Véase Chiesa Aponte, *op. cit.*, pág. 296.

En Puerto Rico no se ha atendido lo relativo a peso de la prueba ni si se trata de una defensa que el tribunal debe adjudicar sin la intervención del Jurado. De ahí que pueda decirse que prevalece la norma general: someter el asunto al Jurado y absolver ante duda razonable. No obstante, se trata de una materia debatible.

Por otro lado, refiérase al Artículo 14(w) del Código Penal de 2012 (33 LPRA sec. 5014(w)) para la definición del concepto de "funcionario del orden público".

## 25.12  Intimidación o Violencia

La persona acusada presentó como defensa que al realizar los hechos actuó por intimidación o violencia.

La ley dispone que no incurre en responsabilidad penal la persona que, al momento de realizar la conducta constitutiva de delito, actúa obligada por intimidación o violencia debido:

(a) a la amenaza física o sicológica de un peligro inmediato, grave e inminente, siempre que exista una proporcionalidad racional entre el daño causado y el que conlleva la amenaza;

(b) a una fuerza física irresistible de tal naturaleza que anule por completo la libertad de actuar de la persona que invoca la defensa, o

(c) al empleo de medios hipnóticos, sustancias narcóticas deprimentes o estimulantes, u otros medios o sustancias similares.

**[El tribunal debe impartir la instrucción de acuerdo con la modalidad que aplique:**

### A. Modalidad del inciso (a)

La amenaza física o sicológica alegada debe generar un peligro inminente o inmediato, o que está a punto de suceder o de producirse. Si es otra la razón la que movió a la persona acusada a realizar el acto, entonces esta no puede valerse de esta defensa.

La ley requiere también que exista una proporción entre el daño causado y el que conlleva la amenaza. No procede esta defensa cuando el daño que se causa es considerablemente superior al daño que se pretende evitar.

La persona acusada no comete el delito si se le obligó a realizar el acto mediante intimidación o violencia.

Quien haya inducido, obligado o forzado a la persona que alega la defensa será responsable del delito.

### B. Modalidad del inciso (b)

La violencia a la que se refiere esta Instrucción es una fuerza física irresistible de tal naturaleza que el acto no se debe a la libre voluntad de la persona acusada, sino a la imposición de una voluntad ajena que anula completamente la suya.

### C. Modalidad del inciso (c)

El concepto violencia incluye el empleo de medios hipnóticos, sustancias narcóticas deprimentes o estimulantes u otros medios o sustancias similares, siempre que estas circunstancias provengan de la voluntad criminal de otra persona y no de la voluntad de la persona acusada. El daño que resulta de esas circunstancias no es voluntario y, por lo tanto, la persona no está sujeta a responsabilidad penal**].**

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa y que no los cometió como consecuencia **[refiérase solamente a la(s) alterativa(s) que aplique(n), según los hechos del caso:**

[(a) de una amenaza física o sicológica de un peligro inmediato, grave e inminente, racionalmente proporcional entre el daño causado y el que conllevó la amenaza deberán rendir un veredicto de culpable].

[(b) de una fuerza física irresistible de tal naturaleza que anuló por completo la libertad de actuar de la persona acusada deberán rendir un veredicto de culpable].

[(c) del uso de medios hipnóticos, sustancias narcóticas deprimentes o estimulantes, u otros medios o sustancias similares deberán rendir un veredicto de culpable**]**.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que existe duda razonable de que la persona acusada cometió los hechos por los cuales se le acusa o duda razonable de si la persona acusada actuó o no como consecuencia **[refiérase solamente a la(s) alterativa(s) que aplique(n) según los hechos del caso:**

[(a) de la amenaza física o sicológica de un peligro inmediato, grave e inminente, racionalmente proporcional entre el daño causado y el que conllevó la amenaza deberán rendir un veredicto de no culpable].

[(b) de una fuerza física irresistible de tal naturaleza que anuló por completo la libertad de actuar de la persona acusada deberán rendir un veredicto de no culpable].

[(c) del uso de medios hipnóticos, sustancias narcóticas deprimentes o estimulantes, u otros medios o sustancias similares, deberán rendir un veredicto de no culpable**]**.

**REFERENCIA**:

Esta Instrucción proviene de las Instrucciones 4.12 y 4.14 del Proyecto de Libro de Instrucciones al Jurado de 2008 y de las Instrucciones al Jurado para el Tribunal Superior de Puerto Rico de 1976, págs. 83-85. Guarda relación con el Artículo 32 (*Intimidación o violencia*) y el Artículo 35 (*Definición de la tentativa*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA secs. 5045 y 5048); el Artículo 32 (*Intimidación o violencia*) y el Artículo 35 (*Definición de la tentativa*) del Código Penal de 2004, Ley 149-2004 (33 LPRA secs. 4660 y 4663); el Artículo 25 (*Intimidación o violencia*) y el Artículo 26 (*Definición de tentativa*) del Código Penal de 1974, Ley 115 de 22 de julio de 1974 (1974 [Parte 1] Leyes de Puerto Rico 458).

**COMENTARIO:**

El concepto intimidación se refiere a la coacción sicológica y no a la de naturaleza física. Esta causa de exclusión está disponible en los casos de delitos por omisión, donde la persona, por causa de la intimidación, no actúa cuando el ordenamiento jurídico se lo requiere. También está disponible cuando la amenaza o el temor insuperable es hacia terceras personas y la persona acusada actúa en su protección.

La ley requiere que se actúe bajo amenaza de un peligro grave e inminente. Es decir, se exige un requisito de contemporaneidad cuando la amenaza de peligro sea grave, inminente o actual. Si al momento de los hechos imputados había cesado la amenaza de peligro o la persona pudo acudir a las autoridades y no lo hizo, no puede valerse de esta defensa.

La ley requiere también que exista una proporcionalidad racional entre el daño causado y el que conlleva la amenaza. Es decir, si el daño que causa la persona acusada es superior a la amenaza de peligro grave que recibió o al daño que hubiese recibido si la amenaza se llevara a cabo, entonces la persona acusada no puede valerse de esta defensa.

### 25.13 Intimidación en Caso de Fuga

La persona acusada presentó como defensa que, al fugarse de una institución penitenciaria o de la institución que tenía su custodia legal, actuó por intimidación.

Para que proceda esta defensa se tendrá que establecer lo siguiente:

(1) Que la amenaza era inminente, es decir, que estaba a punto de ocurrir o de producirse,

(2) que la fuga era la única alternativa razonable, y

(3) las razones que justifiquen no haber regresado inmediatamente después de cesar (finalizar) la intimidación.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa y no los cometió como consecuencia de intimidación alguna, deberán rendir un veredicto de culpable.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, tienen duda razonable sobre algún elemento del delito o duda razonable de si la persona acusada actuó o no por intimidación, deberán rendir un veredicto de no culpable.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 4.10 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con el Artículo 33 (*Temor insuperable*) y el Artículo 275 (*Fuga*) del Código Penal de 2012, Ley 146-2012, según emendada, 33 LPRA secs. 5046 y 5368; el Artículo 32 (*Intimidación o violencia*) y el Artículo 281 (*Fuga*) del Código Penal de 2004, Ley 149-2004 (33 LPRA secs. 4660 y 4909); el Artículo 25 (*Intimidación o violencia*) y el Artículo 232 (*Fuga*) del Código Penal de 1974, Ley 115 de 22 de julio de 1974 (1974 [Parte 1] Leyes de Puerto Rico 458 y 518).

**COMENTARIO:**

En *Pueblo v. Morales Roque*, 113 DPR 876, 882 (1983), el Tribunal Supremo resolvió que la defensa de intimidación en casos de fuga aplica en Puerto Rico bajo determinadas condiciones. Específicamente, el Tribunal estableció que un recluso que se evade de una institución penal y permanece evadido por un período prolongado de tiempo no puede reclamar con éxito la defensa de intimidación o del estado de necesidad ante una acusación de fuga. No obstante, en el citado caso el Tribunal no especificó cuáles son esas condiciones en que la persona acusada puede invocar con éxito "la defensa de intimidación" cuando se le imputa haberse evadido de una institución penal. Es en *Pueblo v. Medina Lugo,* 126 DPR 734 (1990), que el Tribunal Supremo establece los tres requisitos mínimos por los cuales la persona que plantea esta defensa deberá presentar prueba, y que se incorporan en esta Instrucción.

### 25.14 Temor Insuperable

La persona acusada presentó como defensa que actuó por un temor insuperable.

La ley dispone que no es responsable penalmente la persona que al momento de realizar la conducta delictiva o prohibida actuó [obligada] [compelida] por un miedo invencible ante la fundada creencia de que sería víctima de un daño inmediato e inevitable, si la situación era tal que ante ella [cedería] [sucumbiría] una persona promedio respetuosa de la ley en las circunstancias de la persona acusada.

Para que esta defensa proceda y no se responda penalmente es necesario cumplir con dos requisitos:

(1) que la persona cometió el delito como reacción a un estado emocional de temor o miedo de sufrir un mal, y

(2) que una persona promedio, respetuosa de la ley, hubiera de igual manera [cedido] [sucumbido] al temor o miedo.

En este análisis pueden preguntarse si la persona promedio hubiera podido resistir la amenaza y actuar de otra manera, y si era razonable exigir que así lo hiciera. Esta defensa no requiere que el mal temido sea real, pero requiere que la persona razonablemente así lo haya creído.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa y que no actuó por un temor insuperable, deberán rendir un veredicto de culpable.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, tienen duda razonable sobre algún elemento del delito o duda razonable de si la persona acusada actuó o no por un temor insuperable, deberán rendir un veredicto de no culpable.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 4.12 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con el Artículo 33 (*Temor insuperable*) del Código Penal de 2012, Ley 146-2012, según enmendada, 33 LPRA sec. 5046; el Artículo 32 (*Intimidación o violencia*) del Código Penal de 2004, Ley 149-2004 (33 LPRA sec. 4660), y el Artículo 25 (*Intimidación o violencia*) del Código Penal de 1974, Ley Núm. 115 de 22 de julio de 1974 (1974 [Parte 1] Leyes de Puerto Rico 458).

**COMENTARIO:**

El Prof. Luis E. Chiesa Aponte aclara que la defensa de "temor insuperable" opera en ausencia de otros criterios de exclusión de responsabilidad penal. En particular, aduce que "el temor insuperable constituye una defensa de naturaleza residual o supletoria mediante la cual se puede eximir a aquellos que no satisfacen los criterios del resto de l[o]s eximentes reconocid[o]s en el ordenamiento jurídico". L.E. Chiesa Aponte, *Derecho penal sustantivo,* 2da ed., San Juan, Publicaciones JTS, 2013, pág. 273.

Esta defensa responde a la causa de exclusión de responsabilidad por razón de "coacción o temor insuperable", incluida por primera vez en el Código Penal de 2004. Se asocia con el concepto de "no exigibilidad de otra conducta", lo que implica que el sujeto no responde a la norma, por lo que no tiene un fin legítimo la imposición de la pena. S. Mir Puig, *Derecho penal: parte general*, 10ma ed., Barcelona, Ed. Reppertor, 2016, págs. 623-624.

## 25.15  Conducta Insignificante

La persona acusada presentó la defensa de conducta insignificante.

La ley dispone que no incurre en responsabilidad penal la persona cuya conducta es tan insignificante que no amerita que se le procese o condene. Se trata de casos en que la conducta realmente no causa el daño que la ley quiere evitar. Es decir, que la acción de la persona acusada causó un daño tan superficial que no justifica imponerle una condena.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa y que no se trata de una conducta insignificante, deberán rendir un veredicto de culpable.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, tienen duda razonable sobre algún elemento del delito o duda razonable de si la actuación la persona acusada constituye o no una conducta insignificante, deberán rendir un veredicto de no culpable.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 4.4 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con el Artículo 34 (*Conducta insignificante*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA sec. 5047); el Artículo 33 (*Conducta insignificante*) del Código Penal de 2004, Ley 149-2004 (33 LPRA sec. 4661), y los Comentarios a la Sección 2.12 del Código Penal Modelo.

**COMENTARIO**:

La defensa de conducta insignificante, conocida como *de minimis defense* en el Código Penal Modelo, tiene el propósito de limitar el ámbito de aplicación del delito a aquellas conductas que verdaderamente ameritan la imposición de responsabilidad penal. Esta defensa está fundamentada tanto en consideraciones morales como en consideraciones de política pública. En cuanto al aspecto moral, vale decir que las conductas que quedan impunes al amparo de esta defensa no son consideradas por la sociedad como ocasiones de comportamientos reprochables. En cuanto al aspecto de política pública, la defensa de conducta insignificante también tiene el propósito de evitar que el Estado utilice sus limitados recursos para procesar a personas por actos triviales que no desestabilizan el orden público.

En última instancia, la defensa tiene el fin de impedir que se procese a personas por actos que no producen el daño o el peligro que la ley que define el delito pretende evitar. Se trata, por lo tanto, de acciones que, a pesar de que técnicamente satisfacen los elementos de una ofensa, no estaban comprendidas dentro del cúmulo de conductas que el legislador había previsto que fueran castigadas como delito.

**B.      CAUSAS DE INIMPUTABILIDAD**

### 25.16  Incapacidad Mental

La persona acusada presentó como defensa que al momento de los hechos padecía de incapacidad mental.

La ley dispone que no incurre en responsabilidad penal la persona que al momento del hecho, debido a enfermedad o defecto mental, actuó sin tener capacidad suficiente para comprender la criminalidad del acto o para conducirse de acuerdo con el mandato de ley.

La conducta delictiva o antisocial reiterada de una persona no constituye por sí sola una "enfermedad" o un "defecto mental". Para que la incapacidad mental libere de responsabilidad por la comisión de un delito, tendrá que cumplirse con los dos requisitos siguientes:

(1) Que el acto delictivo se debió a enfermedad o defecto mental, y

(2) que por esta condición, la persona no tenía capacidad para comprender la criminalidad del acto o para cumplir con la ley.

**[Cuando la evidencia trate sobre una conducta delictiva o antisocial reiterada, el tribunal debe añadir a la instrucción el párrafo siguiente:**

La persona acusada presentó evidencia de conducta delictiva o antisocial repetitiva. El hecho de que la persona acusada demuestre que ha cometido varios delitos o varios actos representativos de conducta antisocial no es por sí solo suficiente para establecer que actuó debido a enfermedad o defecto mental. Es necesario que demuestre que su conducta delictiva o antisocial reiterada fue causada por enfermedad o defecto mental que le impidió comprender la criminalidad del acto o cumplir con lo dispuesto en la ley**].**

Para que la defensa por incapacidad mental proceda, tiene necesariamente que referirse al momento específico de la comisión de los hechos. Es en ese momento que tiene aplicación o vigencia, no antes o después de la comisión de los hechos.

La ley presume la capacidad mental como el estado normal del ser humano y, por consiguiente, que la persona acusada estaba capacitada mentalmente al momento de cometer el acto. Siendo así, el Ministerio Público no tiene que presentar prueba alguna para demostrar que la persona acusada estaba capacitada mentalmente en ese momento. Corresponde a la persona acusada evidenciar la alegada incapacidad, aunque para ello no es necesario que la persona acusada presente prueba documental que muestre historial de incapacidad mental previo al hecho. La evidencia para establecer la defensa también puede

surgir de la prueba del Ministerio Público. Al evaluar si la persona acusada demostró la alegada incapacidad, ustedes deberán considerar toda la prueba presentada en el juicio.

En este caso, si ustedes consideran que la persona acusada no pudo demostrar que al momento de ocurrir la conducta delictiva padecía enfermedad o defecto mental que le impidió comprender la criminalidad del acto o cumplir con la ley, deberán concluir que estaba capacitada mentalmente en el momento en que se cometió el acto.

En cambio, si tienen duda razonable sobre algún elemento del delito o si la prueba establece, a satisfacción de ustedes, que por razón de enfermedad o defecto mental la persona acusada no tenía capacidad suficiente para comprender la criminalidad del acto o para cumplir con la ley, deberán rendir un veredicto de no culpable por incapacidad mental.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 4.15 del Proyecto de Libro de Instrucciones al Jurado de 2008 y de las Instrucciones al Jurado para el Tribunal Superior de Puerto Rico de 1976, págs. 84-88. Guarda relación con el Artículo 40 (*Incapacidad mental*) del Código Penal de 2012, Ley 146-2002, según enmendada por la Ley 246-2014 (33 LPRA sec. 5063); el Artículo 39 (*Incapacidad mental*) del Código Penal de 2004, Ley 149-2004 (33 LPRA sec. 4667); el Artículo 30 (*Incapacidad mental*) del Código Penal de 1974, Ley Núm. 115 de 22 de julio de 1974 (1974 [Parte 1] Leyes de Puerto Rico 459), y la Sección 401 del Código Penal Modelo. Véanse, además, Secretariado de la Conferencia Judicial y Notarial, *Taller de Reglas de Procedimiento Criminal (documento de trabajo): insanidad mental–procesabilidad*, Tribunal Supremo de Puerto Rico, mayo de 1989; Secretariado de la Conferencia Judicial y Notarial, *El incapacitado mental en el proceso criminal*, Tribunal Supremo de Puerto Rico, noviembre de 1983; J.L. Skeem y S.L. Golding, *Describing Jurors' Personal Conceptions of Insanity and Their Relationship to Case Judgments* 7 Psychol. Pub. Pol'y & L. 561 (2001); C.F. Roberts, E.L. Sargent y A.S. Chan, *Verdict Selection Processes in Insanity Cases: Juror Construals and the Effects of Guilty but Mentally Ill Instructions*, 17 (Núm. 3) Law and Human Behavior 261 (1993).

**COMENTARIO:**

El lenguaje del Artículo 30 del Código Penal de 1974 y el del Artículo 39 del Código Penal de 2004 son muy similares. El Artículo 40 del Código Penal de 2012 cambió la primera oración eliminando la defensa en aquellos casos en los que la persona al momento del hecho y por enfermedad o defecto mental, no pudiera conducirse de acuerdo con el mandato de la ley. No obstante, las enmiendas de la Ley 246-2014 incorporaron la disposición nuevamente para que dijera "o para conducirse de acuerdo con el mandato de ley". 33 LPRA sec. 5063.

Otra enmienda sustancial introducida por el Código Penal de 2012 fue añadir el requisito de que, para efectos de la prueba de incapacidad mental, la persona imputada debe evidenciar la alegada incapacidad. Esta disposición no se modificó con las enmiendas del 2014, por lo que está vigente.

Esta es la causa de exculpación más invocada. La defensa es quien tiene la obligación de presentar primeramente la prueba, pues el Ministerio Público descansa en la presunción de

cordura. *Pueblo v. Alsina*, 79 DPR 46 (1956). El Artículo 40 del Código Penal de 2012, *supra*, dispone que le corresponde al acusado "evidenciar la alegada incapacidad".

Sobre este lenguaje existe un debate en la doctrina puertorriqueña, en cuanto a la vigencia de *Pueblo v. Alsina,* supra. Por un lado, puede interpretarse que este artículo del Código Penal alteró la norma establecida en *Alsina*, la cual disponía que procedía la absolución ante la duda razonable sobre la imputabilidad de la persona acusada. En otras palabras, el caso *Alsina* establecía que recaía sobre el Ministerio Público la carga de persuadir, mientras que el Artículo 40 vigente impone a la defensa ambas cargas probatorias: la de presentar evidencia y la de persuadir. En cuanto al estándar de la prueba, el Prof. Luis E. Chiesa Aponte expone que la defensa debe demostrar la incapacidad mental mediante la preponderancia de la prueba. Véase L.E. Chiesa Aponte, *Derecho penal sustantivo*, 2da ed., San Juan, Publicaciones JTS, 2013, pág. 257.   En iguales términos, véase D. Nevares-Muñiz, *Derecho penal puertorriqueño: parte general*, 7ma ed., San Juan, Ed.  Instituto para el Desarrollo del Derecho, 2015, pág. 295.

La Regla 157 de Procedimiento Criminal de 1963 establece lo siguiente:

> En un proceso por asesinato, una vez probado que la muerte fue causada por el acusado, recaerá sobre éste la obligación de probar que han mediado circunstancias atenuantes o circunstancias que excusen o justifiquen el hecho de la muerte, a menos que la propia prueba de El Pueblo tienda a demostrar que el delito cometido es un homicidio [ahora asesinato atenuado] o que el acusado tenía justificación o excusa para haber cometido el hecho. 34 LPRA Ap. II, pág. 682 (ed. 2016).

Pese la divergencia de criterios, esta Instrucción procura un lenguaje claro que establezca directrices precisas al Jurado a la hora de evaluar la prueba presentada y determinar si existe o no una duda razonable en cuanto a la imputabilidad de la persona acusada.

Por otro lado, en la Instrucción se distinguen dos fundamentos para la defensa:

(1) Capacidad insuficiente para comprender la criminalidad del acto.

(2) Incapacidad para conducirse de acuerdo con el mandato de ley.

El primer fundamento implica una enfermedad o un defecto de la capacidad cognitiva; el segundo, una enfermedad o un defecto de la capacidad volitiva. En el segundo fundamento, la persona imputada puede conocer que su conducta es criminal, pero carece de capacidad para cumplir con la ley.

Se aclara que solo procede impartir esta Instrucción cuando la persona acusada admite los hechos y presenta esta defensa según la Regla 74 de Procedimiento Criminal, 34 LPRA Ap. II.

Finalmente, en *Pueblo v. Cotto García*, 205 DPR 237 (2020), el Tribunal Supremo de Puerto Rico clarificó que la regla 74 de procedimiento criminal no requiere prueba documental que muestre historial de incapacidad mental previo al hecho. A su vez, reiteró que la evidencia para establecer la defensa también puede surgir de la prueba de cargo.

### 25.17  Trastorno Mental Transitorio

La persona acusada presentó como defensa que al momento de los hechos padecía un trastorno mental transitorio.

La ley dispone que no responde penalmente la persona que al momento de cometer el hecho delictivo se encontraba afectada por un estado mental transitorio (momentáneo o pasajero). que le impidió tener capacidad suficiente para: (1) comprender la criminalidad del acto o (2) cumplir con la ley.

El trastorno mental transitorio no libera de responsabilidad penal cuando se provocó con el propósito de realizar los hechos delictivos. Esto significa que, si la persona voluntariamente se causó un estado de trastorno mental transitorio, sería responsable del acto delictivo y no puede alegar como defensa que cometió el acto en tal estado.

Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa y que no se encontraba en un estado de trastorno mental transitorio que le impidió tener capacidad suficiente para comprender la criminalidad del acto o para cumplir con la ley, deberán rendir un veredicto de culpable.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, tienen duda razonable sobre algún elemento del delito o duda razonable de si la persona acusada actuó o no debido a un trastorno mental transitorio, deberán rendir un veredicto de no culpable por trastorno mental transitorio.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 4.14 del Proyecto de Libro de Instrucciones al Jurado de 2008 y del libro de Instrucciones al Jurado para el Tribunal Superior de Puerto Rico de 1976, pág. 90.  Guarda relación con el Artículo 41 (*Trastorno mental transitorio*) del Código Penal de 2012, Ley 146-2012, según enmendada (33 LPRA sec. 5064); el Artículo 40 (*Trastorno mental transitorio*) del Código Penal de 2004, Ley 149-2004 (33 LPRA sec. 4668); el Artículo 31 (*Inconsciencia*), y el Artículo 32 (*Trastorno mental transitorio*) del Código Penal de 1974, Ley Núm. 115 de 22 de julio de 1974 (1974 [Parte 1] Leyes de Puerto Rico 459).

**COMENTARIO:**

El Código Penal de 2004 incorporó en un solo artículo el trastorno mental transitorio y la inconsciencia. Esta fusión responde a la naturaleza transitoria del estado de inconsciencia, el cual se entiende incluido en el trastorno mental transitorio.  Sobre el historial legislativo, véase Informe del Senado sobre el P. del S. 2302, de 22 de junio de 2003, pág. 30. El Artículo 41 del Código Penal de 2012, *supra*, vigente mantuvo el mismo lenguaje del Artículo 40 del Código Penal de 2004, *supra*.

A diferencia de la defensa que alega incapacidad mental, la defensa que se basa en el trastorno mental transitorio no se circunscribe a las circunstancias donde media una enfermedad o un defecto mental.  Asimismo, ambas defensas se distinguen porque al

plantearse el trastorno mental transitorio, el efecto del trastorno ha desaparecido luego de los hechos, mientras que subsiste en los casos de incapacidad mental. Para argumentar esta defensa, el estado mental no pudo haberse causado a propósito.

### 25.18 Intoxicación Voluntaria

La ley dispone que la intoxicación voluntaria por drogas, sustancias narcóticas, estimulantes o deprimentes, o sustancias similares no exime de responsabilidad penal y no es fundamento de inimputabilidad.

Como regla general, la intoxicación voluntaria no constituye defensa para la comisión de un delito. Sin embargo, cuando la ley exige como elemento esencial de un delito que se actúe a propósito o con conocimiento, podrá considerarse la intoxicación voluntaria para determinar si la persona acusada actuó a propósito o con conocimiento.

La intoxicación voluntaria debe ser de tal grado o carácter que elimine la facultad mental para actuar a propósito o con el conocimiento que requiera la ley.

El delito por el cual se juzga a la persona acusada exige que haya actuado **[especifique si es "a propósito" o "con conocimiento"]**. Ustedes deberán examinar toda la evidencia presentada sobre la intoxicación voluntaria de la persona acusada y decidir si actuó a propósito o con conocimiento.

Si al evaluar la evidencia ustedes consideran que la persona acusada al realizar el acto no estaba intoxicada a tal grado que le impidió actuar a propósito o con el conocimiento requerido para la comisión del delito de **[especifique el delito]**, deberán rendir un veredicto de culpable.

Por el contrario, si al evaluar la evidencia ustedes consideran que la persona acusada al realizar el acto estaba intoxicada a tal grado que le impidió actuar a propósito o con el conocimiento requerido para la comisión del delito de **[especifique el delito]**, deberán rendir un veredicto de no culpable.

**[Si la evidencia establece la comisión de un delito menor incluido para el cual es suficiente el elemento subjetivo de temeridad, el tribunal debe impartir la instrucción sobre ese delito y su elemento subjetivo. En tal caso, el tribunal también debe impartir la instrucción siguiente:**

En este caso, ustedes podrán rendir un veredicto por el delito menor incluido de **[indique el delito]** si entienden que la persona acusada actuó temerariamente y el Ministerio Público probó más allá de duda razonable la comisión del delito**]**.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 4.18 del Proyecto de Libro de Instrucciones al Jurado de 2008 y de las Instrucciones al Jurado para el Tribunal Superior de Puerto Rico de 1976, págs. 92-93. Guarda relación con el Artículo 42 (*Intoxicación voluntaria; excepción*) del Código Penal de 2012, Ley 146-2012, según enmendada por la Ley 246-2014 (33 LPRA sec. 5065); el Artículo 41 (*Intoxicación voluntaria; excepción*) del Código Penal de 2004,

Ley 149-2004 (33 LPRA sec. 4669), y el Artículo 33 (*Embriaguez o intoxicación voluntaria*) del Código Penal de 1974, Ley Núm. 115 de 22 de julio de 1974 (1974 [Parte 1] Leyes de Puerto Rico 459).

**COMENTARIO:**

El texto vigente del Artículo 42 del Código Penal de 2012, *supra*, excluye la embriaguez voluntaria que justifique la negación de que la persona intoxicada actuó "a propósito o con conocimiento". Establece que la intoxicación voluntaria se considera lo suficientemente reprochable como para considerarse equivalente a comportarse con "temeridad o negligencia", pero no equivalente al elemento subjetivo de "a propósito" o "con conocimiento". Por lo tanto, se prohíbe el uso de la intoxicación voluntaria para negar temeridad o negligencia. Esta alegación se permite para negar el propósito o el conocimiento, según se definen estos términos en el Artículo 22 del Código Penal de 2012 (33 LPRA sec. 5035). D. Nevares-Muñiz, *Código Penal de Puerto Rico*, 4ta ed. rev., San Juan, Ed. Instituto para el Desarrollo del Derecho, 2019, pág. 87.

Hay que distinguir tres situaciones:

> (1) La intoxicación fue voluntaria.
> (2) La intoxicación fue voluntaria y el elemento subjetivo del tipo es a propósito o con conocimiento.
> (3) La intoxicación fue voluntaria y el elemento subjetivo del tipo es la temeridad o la negligencia.

Si la intoxicación fue voluntaria, aplica el Artículo 42, *supra*, independientemente del elemento subjetivo del tipo. Si la prueba lo justifica, habría que instruir al Jurado sobre este Artículo 42.

Si la intoxicación fue voluntaria no es causa de exculpación, como se dispone en la primera parte del Artículo 42. No obstante, hay que considerar el elemento subjetivo del tipo. Aquí hay un cambio debido a la Ley 246-2014 enmendadora del Código Penal. Se debe instruir al Jurado sobre el efecto de la intoxicación para negar "a propósito" o "con conocimiento" cuando se acusa por un asesinato en primer grado al amparo del Artículo 93(a) de la Ley 146-2012 (33 LPRA sec. 5142).

Si se trata de asesinato en primer grado en la modalidad de "a propósito o con conocimiento", hay que impartir al Jurado la instrucción sobre intoxicación voluntaria (si la prueba lo justifica), pues se admiten para negar el propósito o el conocimiento, los elementos subjetivos de ese delito en conformidad con el Artículo 93(a), *supra*. Es necesario examinar cuáles delitos requieren el elemento de "a propósito o con conocimiento".

## C. COARTADA

### 25.19 Coartada

La persona acusada ofreció evidencia con el propósito de demostrar que no estaba presente en el sitio al momento en que se cometió el alegado delito. Esto es lo que se conoce en derecho como "prueba de coartada".

La prueba de coartada no tiene que establecer que era imposible que la persona acusada hubiese cometido el delito. Solo constituye prueba que tiende a establecer que no participó en la comisión del delito porque no estuvo presente o crear duda razonable de si es o no culpable.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 4.19 del Proyecto *de Libro de Instrucciones al Jurado* de 2008 y de las Instrucciones al Jurado para el Tribunal Superior de Puerto Rico de 1976, pág. 94. Guarda relación con la Regla 74 (*Alegación de no culpable; notificación defensa de incapacidad mental o coartada*) de Procedimiento Criminal de 1963 (34 LPRA Ap. II) Véanse, además, *Pueblo en interés del menor GRS*, 149 DPR 1 (1999); *Pueblo v. Rosario Reyes*, 138 DPR 591 (1995); *Pueblo v. Rosaly Soto*, 128 DPR 729 (1991); *Pueblo v. De Jesús Rivera*, 113 DPR 817 (1983); *Pueblo v. Millán Meléndez*, 110 DPR 171 (1980); *Pueblo v. Acosta Acosta*, 107 DPR 68 (1978); *Pueblo v. Tribunal Superior*, 101 DPR 133 (1973); *Pueblo v. Delgado Meléndez*, 101 DPR 79 (1973); *Pueblo v. Cruz Jiménez*, 99 DPR 565 (1971); *Pueblo v. Martínez Brito*, 99 DPR 493 (1970); *Pueblo v. Moreu Pérez*, 96 DPR 60 (1968).

CAPÍTULO 26
**CLAUSURA**

### 26.1    Resumen de la Evidencia

**[Esta Instrucción debe impartirse exclusivamente cuando se le requiera al tribunal un resumen de la evidencia].**

La ley dispone que en este momento el tribunal haga un resumen de la evidencia admitida. El resumen en sí no constituye evidencia y su único propósito es recapitular los hechos presentados ante ustedes.

Si en este resumen el tribunal no menciona alguna prueba admitida, no significa que carezca de importancia, deberán considerarla junto al resto de la evidencia.

**REFERENCIA:**

Esta Instrucción proviene de la Instrucción 22.4 del Proyecto de Libro de Instrucciones al Jurado de 2008. Adopta principios de la Instrucción 3530 (*Judge's Comment on the Evidence*) de las *Judicial Council of California Criminal Jury Instructions*, CALCRIM, 2016. Guarda relación con la Regla 137 (*Juicio; instrucciones*) de Procedimiento Criminal de 1963 (34 LPRA Ap. II).

**COMENTARIO:**

Esta Instrucción se preserva para los casos extraordinarios en el que las partes no estipulen que se omita hacer el resumen de la evidencia. Conviene que se consigne en el registro y para la minuta, en ausencia del Jurado, cuando las partes estipulan omitir el resumen de la evidencia.

### 26.2    Deliberación y Veredicto

En este momento, el tribunal designará a un(a) miembro del Jurado para dirigir el proceso de deliberación. Se nombra Presidente(a) del Jurado a **[indique el nombre de la persona]**. Esta designación es solo para dirigir y ordenar el proceso deliberativo, por lo que no confiere mayores derechos de los que tienen ustedes como jueces y juezas de los hechos.

Les entrego la evidencia para que ustedes la examinen y le den el valor que consideren apropiado. **[El tribunal detallará los *exhibits* correspondientes].**

**[En supuestos de declaraciones juradas o documentos con testimonios, el tribunal debe impartir la instrucción siguiente:**

Por disposición de ley, [la(s) declaración(es) jurada(s)] [el (los) documento(s)] donde consta [la manifestación] [el testimonio] de **[indique el nombre de la persona]** no se les entregará(n) para que la(s) lleven al cuarto de deliberación. Sin embargo, si desean

examinarla(s) nuevamente, el tribunal podría mostrársela(s) o leérsela(s) en corte abierta**].** Además, les entrego copia de la(s) acusación(es), recordándoles que no constituye(n) prueba en el caso.

Para que sea válido un veredicto, tiene que ser unánime. Es decir, todos y todas deben estar de acuerdo en declarar no culpable o culpable a la persona acusada (en cada uno de los cargos). Indicarán en el formulario el resultado de la votación final, pero en ningún momento deberán explicar cómo votaron individualmente.

**[En los casos con múltiples cargos, el tribunal debe añadir la instrucción siguiente:**

De acuerdo con la apreciación que ustedes hagan de la evidencia, pueden decidir si la persona acusada es culpable o no culpable de todos los cargos que se le imputan, o pueden decidir si es culpable en unos cargos y no culpable en otros**].**

**[En casos con varias personas coacusadas, el tribunal debe añadir la instrucción siguiente:**

En este caso hay más de una persona acusada. Ustedes deberán evaluar la evidencia de forma independiente para cada persona acusada, por lo que los veredictos no tienen que ser iguales para todas ellas**].**

De ser necesario, pueden solicitar el regreso a sala para escuchar un testimonio o parte de este, o para que se les repita o clarifique alguna instrucción. En fin, de mediar cualquier duda o razón justificada relacionada con el proceso deliberativo, el (la) Presidente(a) del Jurado hará constar la pregunta o solicitud en el formulario provisto para ese propósito (Comunicación del Jurado con el Tribunal durante el Proceso de Deliberación), se lo entregará al (a la) alguacil, y este(a) lo entregará al tribunal. **[Muestre el documento].**

Una vez determinen el veredicto, se hará constar el resultado de la votación en el formulario provisto por el tribunal **[si son varias acusaciones,** para cada delito imputado**] [si son varias las personas acusadas,** para cada persona acusada**].**

El (La) Presidente(a) del Jurado firmará la(s) hoja(s) con el (los) veredicto(s) y la(s) colocará en el sobre suministrado. **[Muestre al Jurado el (los) formulario(s) de veredicto y el sobre]**. Entonces el (la) Presidente(a) notificará al (a la) alguacil encargado(a) el deseo del Jurado de regresar a sala. Una vez en sala, se limitará a informar que han llegado a un veredicto sin revelar su contenido.

**[Pregunte a las partes si tienen alguna objeción a las instrucciones impartidas o si requieren alguna instrucción adicional].**

Con estas instrucciones, el caso queda sometido a ustedes para la deliberación.

En este momento, el tribunal excusa a los (las) jurados(as) suplentes. A nombre de las partes y del tribunal, se agradece su servicio y el tiempo dedicado.

**[Toma de juramento al (a la) alguacil]**

Señor(a) alguacil identifíquese para fines de registro.

Señor(a) secretario(a), proceda con la toma de juramento al (a la) señor(a) alguacil.

**[Proceda con la toma de juramento].**

Pueden retirarse a deliberar.

**REFERENCIA:**

Esta Instrucción proviene de las Instrucciones 22.1 y 22.5 del Proyecto de Libro de Instrucciones al Jurado de 2008. Guarda relación con la Regla 112 (*Jurado; número que lo compone; veredicto*), la Regla 137 (*Juicio; instrucciones*), la Regla 139 (*Jurado; deliberación; juramento del alguacil*), la Regla 140 (*Jurado; deliberación; uso de evidencia*), la Regla 141 (*Jurado; deliberación; regreso a sala a su solicitud*), la Regla 145 (*Jurado; veredicto; su rendición*), la Regla 146 (*Jurado; veredicto; forma*), la Regla 150 (*Jurado; veredicto parcial*) y la Regla 151 (*Jurado; comprobación del veredicto rendido*) de Procedimiento Criminal de 1963 (34 LPRA Ap. II), y el Artículo II, Sección 11 de la Constitución del Estado Libre Asociado de Puerto Rico, LPRA, Tomo 1.

**COMENTARIO:**

Se incorpora el trámite que se seguirá en los supuestos en que el Jurado interese una aclaración o una explicación de alguna instrucción. También se incluye una referencia al juramento que se tomará al personal del alguacilazgo y las instrucciones al (a la) juez(a) sobre los trámites que requieren nuestras reglas. Asimismo, se incorporan y simplifican los principios recogidos en la Instrucción 22.1 del Proyecto de Libro de Instrucciones al Jurado de 2008 referente a los casos donde median varios cargos o acusaciones.

En lo que respecta a la exclusión de confesiones y declaraciones juradas del salón de deliberaciones, véanse *Pueblo v. Vélez Rodríguez*, 186 DPR 621 (2012); *Pueblo v. Martínez Díaz*, 90 DPR 467 (1964); *Pueblo v. Ramos Cruz*, 84 DPR 563 (1962).

Se desprende de la jurisprudencia que en los casos aplicables se debe instruir al Jurado para que continúe deliberando y trate de llegar a un veredicto. Sólo se debe disolver cuando el tribunal se convenza de que es muy poco probable que se pongan de acuerdo. *Pueblo v. Reyes Herrans*, 105 DPR 658, 665 (1977); *Pueblo v. Vélez Díaz*, 105 DPR 386 (1976).

En *Ramos v. Louisiana*, 590 U.S. ___ (2020), el Tribunal Supremo de los Estados Unidos decretó la inconstitucionalidad de un veredicto no unánime de culpabilidad. Con posterioridad, en *Pueblo v. Torres Rivera*, 204 DPR 288 (2020), el Tribunal Supremo de Puerto Rico hizo extensiva la doctrina a nuestra jurisdicción. Más adelante, en *Pueblo v. Centeno*, 2021 TSPR 133, el Tribunal Supremo de Puerto Rico resolvió que solo será válida la instrucción al Jurado que explique que tanto el veredicto de culpabilidad como el de no culpabilidad deberá ser unánime.

## 26.3   Agravantes

Aceptado el veredicto contra **[nombre de la persona acusada]** por los delitos de **[indique los delitos],** corresponde ahora a ustedes, miembros del Jurado, decidir si el Ministerio Público probó más allá de duda razonable las circunstancias agravantes que alega en este caso.

El Ministerio Público alega la(s) siguiente(s) circunstancia(s) como agravante(s):
(1)…
(2)…
(3)…

Para que su determinación sea válida, tiene que ser unánime. Es decir, todos y todas ustedes tienen que estar de acuerdo en que se probó la circunstancia agravante más allá de duda razonable. El (la) Presidente(a) del Jurado hará constar el resultado de la votación en el (los) formulario(s) provisto(s) por el tribunal para [el] [cada] agravante, el cual firmará y colocará en el sobre que se le suministra. Entonces, el (la) Presidente(a) notificará al (a la) alguacil encargado(a) el deseo del Jurado de regresar a sala.

Si media cualquier duda o razón justificada relacionada con el proceso deliberativo, el (la) Presidente(a) del Jurado hará constar la pregunta o solicitud en el documento que se provee para ese propósito (Comunicación del Jurado con el Tribunal durante el Proceso de Deliberación) y lo entregará al (a la) alguacil quien a su vez lo entregará al tribunal. **[Muestre el documento].**

Pueden retirarse a deliberar.

**REFERENCIA:**

Esta Instrucción es nueva. Guarda relación con el Formulario de Veredicto del Jurado - Solicitud de Imposición de Agravantes (OAT 988). Véanse *Pueblo v. Pagán Rojas et al.,* 187 DPR 465 (2012); *Pueblo v. Bonilla Peña*, 183 DPR 335 (2011); *Pueblo v. Santana Vélez*, 177 DPR 61 (2009); *Alleyne v. United States*, 133 S. Ct. 2151 (2013); *Southern Union Co. v. United States*, 567 US 343 (2012); *Cunningham* v. *California*, 549 US 270 (2007); *United States v. Booker*, 543 US 220 (2005); *Blakely v. Washington*, 542 US 296 (2004); *Apprendi v. New Jersey*, 530 US 466 (2000).